1) Defendants were notified in advance of our intent to seek injunction.
2) Defendants had refused numerous attempts for them to produce any material evidence to refute our evidence based statements of fact.
3) Defendants were notified our our intent and desire for an Ex Parte Hearing -- to adjudicate our facts and then...
4) Seek judgment based on the facts because the Defendants had been provided months of opportunity and have failed to offer up any material evidence.
5) Defendants have explicitly been told the Federal Maryland District court was the venue, and they have spent their time fabricating a court record to what was the court record.
RDC has completed the requirements for an Ex Parte Hearing seeking injunctive relief and partial judgment on numerous counts.

|  |  |
|---|---|
| *Plaintiff,* | CIRCUIT COURT |
| vs. | FOR |
| **RYAN DILLON-CAPPS** | BALTIMORE COUNTY |
| *Defendant.* | CASE NO: C-03-CV-24-002264 |

## REQUEST FOR PREHEARING CONFERENCE TO DISCUSS INJUNCTIVE RELIEF

**Comes Now,** Ryan Dillon-Capps request that this Honorable Court schedule a prehearing conference to address matters related to injunctive relief.  This conference is requested under Maryland Rule 2-504.1 and is intended to facilitate an efficient and comprehensive discussion of both filed and potential injunctive relief. In support of this request, Defendant states as follows:

1      **Purpose of Conference**: A prehearing conference would provide the opportunity to discuss all issues related to injunctive relief that has already been filed, as well as additional injunctive relief that may be sought. This would allow the Court and the parties to clarify the scope of relief in question, ensuring both fairness and procedural efficiency.

2      **Judicial Efficiency and Reduced Future Litigation**: This request is made in the interest of judicial economy and efficiency. Despite efforts to engage in good-faith negotiations on matters concerning both current and potential litigation, attempts to resolve these issues outside of court have been ignored or not responded to in good faith by opposing counsel. By holding a prehearing conference, the Court can streamline the process and reduce the need for future litigation steps on these matters, as key issues will already have been addressed.

3       **Opportunity for Resolution**: The prehearing conference may also facilitate constructive

dialogue between the parties, potentially leading to an agreement on aspects of injunctive relief.

Such a discussion could narrow the issues in dispute and address any concerns in advance, thus

minimizing further litigation.

## I  LEGAL ARGUMENT

### A  Prehearing Conference Necessity due to Plaintiff's Pattern of Misleading Conduct and Procedural Abuse

4       Over the past five months, Plaintiff has approached this Court with unclean hands, using

misleading arguments to obtain a **no-notice Temporary Restraining Order (TRO)** and

securing only two days' notice for a hearing on constructive civil contempt, which was

improperly merged with the preliminary injunction hearing. During this process, Defendant's

rights under the **Family and Medical Leave Act (FMLA)**, **Americans with Disabilities Act

(ADA)**, and constitutionally protected rights were unlawfully disregarded. Plaintiff's tactics have

led to procedural imbalances that have delayed case progress and severely prejudiced Defendant.

5       The June 26th, 2024, transcript reflects Defendant's first in-person appearance before the

Baltimore County Circuit Court, where the treatment Defendant received was not only

unprofessional and unethical but also unlawful. This mistreatment has gone unaddressed, with no

reasonable explanation provided by Judge Michael Barranco, the courthouse, or the state of

Maryland. Plaintiff's counsel, **Miles & Stockbridge (M&S)**, has continuously misled the Court,

abusing the legal process, and this conduct must be addressed to prevent further procedural

abuse.

### B  Need for Judicial Oversight to Counteract Misleading and Frivolous Conduct

.    Ex Parte Judgement Summary Page # 2 of 65                                    EXHIBIT   110

6     Defendant has brought forward serious and well-substantiated allegations that M&S and Plaintiff have engaged in **abuse of process, fraud, and malicious prosecution**. Defendant is the only party who has sought to explain the conduct of Judge Barranco, arguing that it is the direct result of M&S's actions, which include sanctionable misconduct aimed at reframing and deflecting responsibility for their own unlawful behavior. The record—including the transcript from June 26th—speaks to this wrongdoing, and neither M&S nor Plaintiff has provided a rebuttal or counter-evidence to contradict these documented instances of misconduct.

7     Instead of accountability, Plaintiff and M&S have attempted to divert the Court's focus from the substantive issues by using misleading statements. These statements lack a factual basis, and the entirety of Plaintiff's case appears constructed on speculative or distorted claims. Defendant's statements and conclusions about the conduct, motives, and intentions behind Plaintiff's actions remain unchallenged, as they are grounded in truth and are verifiable upon review of the Court's record.

### C  Judicial Economy and Prevention of Further Procedural Abuse

8     The requested prehearing conference will ensure that all injunctive matters—both filed and potential—are reviewed in a structured setting to prevent further delays and additional misuse of judicial resources. Defendant has faced significant harm, compounded by the procedural delays resulting from Plaintiff's actions. Unlike the expedited TRO and two-day show cause hearing obtained by Plaintiff with minimal notice to Defendant, Defendant's request for injunctive relief has been pending without resolution. This discrepancy further suggests undue influence by M&S, potentially contributing to a bias in procedural handling.

9       The prehearing conference serves a dual purpose. First, it clarifies the scope, necessity,

and terms of the injunctive relief sought by Defendant, reducing any potential for Plaintiff to

later claim confusion or grounds for delay. Second, it acts as a proactive measure against

contempt, ensuring that Plaintiff understands its compliance obligations clearly and fully before

injunctive orders are issued. This clarity will mitigate any attempts by Plaintiff to delay

compliance, reducing the need for post-order contempt proceedings.

### D    Addressing the Court's Authority and Judicial Responsibility

10      This request is supported by **Maryland Rule 2-504**, which allows the Court discretion to

manage and expedite proceedings in the interest of judicial efficiency. Furthermore, **Maryland**

**Rule 1-201** permits the Court to interpret procedural rules to secure "simplicity in procedure,

fairness in administration, and elimination of unjustifiable expense and delay." The ongoing

procedural abuse in this case makes judicial intervention through a prehearing conference

essential to prevent further exploitation of the Court's processes.

11      Additionally, under **Maryland Rule 15-206**, prehearing conferences on injunctive relief

or contempt issues provide parties a clear understanding of their obligations, reducing the risk of

inadvertent noncompliance. By holding this prehearing conference, the Court creates an

opportunity for Plaintiff to address compliance requirements directly, eliminating any basis for

future delay tactics or claims of misunderstanding.

### II   CONCLUSION

12      For these reasons, and pursuant to Maryland Rules 2-504, 1-201, and 15-206, Defendant

respectfully requests that this Honorable Court schedule a prehearing conference to address all

matters relating to both filed and potential injunctive relief. This conference will provide clarity

on compliance obligations, prevent procedural evasion, and protect judicial resources from further abuse. By proactively addressing these issues in a structured prehearing conference, the Court can ensure that any relief granted is clearly understood and enforceable, reducing the need for Defendant to file subsequent contempt petitions or show-cause motions and promoting an efficient and fair resolution to this protracted litigation.

13    This Motion for Prehearing Conference is being filed with a Motion to Expedite to provide Plaintiff and Counsel the opportunity to address these issues promptly. Defendant reminds the Court that this current action and the seven counterclaims against the Plaintiff's fraudulent conduct are likely to be the first of multiple legal proceedings arising from this matter. In addition to Defendant, other parties—including MXT3, LLC, Darren Koritzka, and potentially others—have standing to bring claims based on Plaintiff's retaliatory conduct, ongoing procedural abuses, and other resulting harm.

14    The scope of litigation is anticipated to expand as other injured parties, potentially as a class, bring claims addressing the Plaintiff's unethical and unlawful actions, including but not limited to abuse of process, perjury, and malicious prosecution. The prehearing conference aims to clarify current injunctive relief expectations while reducing the burden on the Baltimore County Circuit Court. By establishing procedural guidelines now, the Court can mitigate the anticipated strain of future litigation and lay the groundwork for efficiently managing claims that may arise in subsequent cases.

15    Therefore, Defendant respectfully requests that this Court grant both the Motion for Prehearing Conference and the Motion to Expedite, ensuring that compliance expectations and

injunctive relief matters are defined and clarified to prevent further delay and judicial inefficiency.

### III  PRAYER FOR RELIEF

**WHEREFORE,** Defendant respectfully requests that this Honorable Court:

1.      Schedule a prehearing conference at the Court's earliest convenience to address both filed and potential injunctive relief in this matter; and

2.      Ensure the Court retains jurisdiction to issue any further orders or relief deemed necessary to enforce compliance with this Order; and

3.      Grant any other relief deemed appropriate to assist in the efficient and just resolution of these issues.

RESPECTFULLY SUBMITTED

November 1, 2024                            /s/ Ryan Dillon-Capps

                                           Ryan Dillon-Capps (Pro Se)
                                           Email : ryan@mxt3.com
                                           1334 Maple Avenue
                                           Essex, Maryland 21221
                                           Telephone: (703) 303-1113

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 1, 2024, a copy of **Request for Prehearing Conference to**

**Discuss Injunctive Relief** via email to rbrennen@milesstockbridge.com and served on via first-class

mail, postage prepaid on:

        Robert S. Brennen
        Miles & Stockbridge P.C.
        100 Light Street
        Baltimore, Maryland 21202

                                           /s/Ryan Dillon-Capps
                                           Ryan Dillon-Capps (Pro Se)

| | |
|---|---|
| **OHANA GROWTH PARTNERS, LLC**<br><br>*Plaintiff,*<br><br>vs.<br><br>**RYAN DILLON-CAPPS**<br><br>*Defendant.* | **IN THE**<br><br>**CIRCUIT COURT**<br><br>**FOR**<br><br>**BALTIMORE COUNTY**<br><br>**CASE NO: C-03-CV-24-002264** |

## REQUEST FOR MANDATORY JUDICIAL NOTICE HEARING ON MATERIAL FACTS

1    Defendant, Ryan Dillon-Capps, respectfully moves this Honorable Court to conduct a hearing for the purpose of taking judicial notice of certain material facts, which are documented through verified affidavits, exhibits, and the Plaintiff's own filings. This request is made pursuant to Maryland Rule 5-201(b), (d), and (e), as the Defendant asserts that these facts meet the requirements for judicial notice: they are clearly documented, not subject to reasonable dispute, and are central to resolving the current matter.

### I    GROUNDS FOR JUDICIAL NOTICE

2    **Judicial Notice Standard (Maryland Rule 5-201(b)):** Under Maryland Rule 5-201(b), the Court may take judicial notice of facts that are "not subject to reasonable dispute" and can be verified by reliable sources. I, the Defendant, submit that the facts listed below—documented through verified affidavits, communications, and Plaintiff's own filings—are supported by a preponderance of evidence and remain unchallenged, as the Plaintiff has presented no evidence to refute them. These facts are therefore specific, readily verifiable, and central to resolving this case.

This is an Ex Parte Hearing -- Just like any Ex Parte hearing (Except the one RDC had) the Defendants are able to respond within the defined time. Requirements were met, and they have had enough time. RDC has been denied their rights for too long -- it is time for judgment on the counts ready.

3    **Requirement for Mandatory Judicial Notice (Maryland Rule 5-201(d)):** Maryland

Rule 5-201(d) mandates that the Court must take judicial notice when a party provides sufficient

supporting evidence. I have already submitted clear and reliable documentation substantiating

the facts in question, rendering them indisputable and meeting the standard for mandatory

judicial notice. Recognizing these facts will ensure an efficient and fair resolution of this matter,

consistent with the intent of Rule 5-201(d) to avoid unnecessary disputes over verified

information.

4    **Opportunity to Be Heard (Maryland Rule 5-201(e)):** Pursuant to Maryland Rule 5-

201(e), I recognize Plaintiff's right to be heard regarding the propriety of judicial notice. Judicial

notice, as case law has established, "renders inappropriate any limitation in the form of

indisputability, any formal requirements of notice other than those already inherent in affording

opportunity to hear and be heard," and allows for additional evidence to be introduced through

regular channels when necessary (*United States v. Gould*, 536 F.2d 216, 219 (8th Cir. 1976)). By

granting Plaintiff this opportunity, the Court will ensure fairness and transparency in its

consideration of these undisputed, verified facts.

## II  INCORPORATED AND ADOPTED

5    Ryan Dillon-Capps incorporates and adopts by reference all factual averments,

arguments, and documents contained in all of the Defendant's motions, affidavits, petitions,

notices, amendments, exhibits, and other papers filed or submitted in this case, regardless of their

current status (pending, denied, granted, or otherwise), pursuant to Md. Rule 2-303(d)

("Statements in a pleading or other paper of record may be adopted by reference in a different

part of the same pleading or paper of record or in another pleading or paper of record."). This

incorporation includes, but is not limited to, any filings made contemporaneously with or subsequent to this motion, ensuring that all submissions are considered as part of the record for purposes of this proceeding, in real time.

6    **Reservation of Rights:** The Defendant reserves the right to amend, withdraw, or exclude any specific filing, document, or factual averment from this comprehensive incorporation at any point, by submitting a formal notice or motion to the Court.

## III   MATERIAL FACTS TO BE NOTICED

1    Based on the court record, common sense, common knowledge, and evidence submitted by the Defendant the following facts are beyond debate:

1) **Motion for Directed Verdict**:

   a. **Section II:** No Reasonable Jury (A-E)

   b. **Section VII:** Additional Argument and Fact (A-D)

2) From **Amended Affidavit of Plaintiff's Abusive Use of the Judicial System**

   a. **Section II:** The 3 Core Arguments (A-C)

   b. **Section III:** Rules of Purpose (A-B)

   c. **Section VI:** Additional Facts and Arguments (A-F)

## SUMMARY OF KEY STATEMENTS:

7    **No Breach of Duty**: I did not breach any duty, but Ohana did breach their duty of care.

8    **No Breach of Contract**: I breached no contractual obligations. Unlike Ohana who breached the written agreement with me from June 7, 2024, and who wanted to breach a dozen agreement they made in multiple Franchise Disclosure Documents (FDD)

9      **No Refusal**: I complied with all lawful directives and provided lawful and compliant solutions to unlawful and non-compliant ones.

10     **False Pretense – No Emergency Injunction Needed**: Justin Drummond evaded satisfaction on June 10th and 11th and didn't have access because of it. Drummond did not ask for access for himself a single time on June 13th. Drummond could have given access to anyone he wanted he had satisfied the accord and received the access.

11     **No Risk**: Ohana and Counsel have affirmed and stated under oath what they demanded. They wanted to violated PCI Compliance, breach a dozen contractual agreements, and violate roughly 20 laws over 5 states, DC, and federally. Furthermore, Ryan Brooks was caught trying to gain unauthorized access and the results of his work were discovered and placed systems, data, and the business at risk.

12     **No Harm**: The only harm Ohana has suffered is from their own doing. Ohana affirmed in Richard Hartman's affidavit and Robert Brennen has confirmed under oath on June 26, 2024. Ohana willingly and knowingly violated my FMLA leave rights on June 13, 2024. Ohana and Counsel's actions have exacerbated my PTSD. I now suffer from catatonia, which has worsened since June 17 and now presents as malignant, and I have severe memory issues because of Ohana and M&S.

13     **No Claim of Authority**: No claim of authority beyond my own was ever made, but Ohana has made several false claims of authority involving PCI Compliance, contractual obligation, and ownership of planet fitness health clubs.

14     **No Exclusive Control of Systems**: Roles and responsibilities were distributed,

    1.     Billing Administrator: LeeAnn Hartman (Richard Hartman's Wife)

2.      Viva Goals Administrator: Justin Drummond

3.      Support Administrators: Cielo IT: Managed by Dante Martinez (Ohana Terminated Sept 15)

4.      Systems, Database, and Reporting Administrator: Ann Pinera

5.      Cloud Administrator: Ryan Brooks (RDC Terminated May 20 || Ohana Rehired)

6.      Security Administrator: Ryan Brooks (RDC Terminated May 20 || Ohana Rehired)

7.      Backup Administrator: Darren Koritzka (Ohana Suspended June 13)

8.      Compliance Administrator: Ryan Dillon-Capps (Ohana Suspended June 13)

15    **Maintained Compliance**: I followed all lawful directives and maintained compliance with all applicable requirements, standards, contractual obligations, and policies.

16    **No GoDaddy/Domain Registrar Access Requested**: Ohana doesn't know what GoDaddy is and never mentioned it before they filed this lawsuit.

17    **Speculative Harm**: The lawsuit lacked a clear harm, explanation of Dillon-Capps's role, or evidence of contractual breach.

18    Hartman Retaliated after reading the 2.05 Email.

19    Daniel Levett worked with the Help Desk and affirmed as much, contradicting the Plaintiff's previous claims that there were no other admins.

20    Justin Drummond and Richard Hartman are lay persons who provided technical statements without any personal knowledge.

21    Phil Leadore and Daniel Levett did not respond to my emails.

22    **Judge Barranco:**

1.      Refused to hear arguments on multiple motions involving FMLA, ADA, Supremacy, Continuance, and Jurisdiction.

2.      Determine that I was not "disabled enough"

3.      Prevented Cross-Examination of Randall Romes

4.      Imposed a $2500 daily fined on conflicting orders

5.      Was informed of my memory issues, placed me under oath, and then induced misleading responses from me

23      **Health and Mental Wellbeing**:

1.      Exacerbation of PTSD, resulting in malignant catatonia, which presents a life-threatening condition.

2.      Development of severe memory issues, worsening since June 17, 2024.

3.      Increased mental distress due to ongoing retaliation, hostile work environment, and procedural misconduct by Ohana and Counsel.

24      **Career Harm**:

1.      Loss of promotion to the C-suite, which deprived you of professional advancement and stature within the industry.

2.      Loss of associated increases in salary, benefits, and bonuses tied to this promotion.

3.      Damage to professional reputation and career standing due to wrongful suspension and eventual termination.

25      **Financial Harm**:

1.      Defaulting on financial obligations as a result of income loss.

2.     Loss of investor opportunities for MXT3, LLC due to the ongoing legal conflict.

3.     Significant financial losses tied to a 15-year investment, which was funded by

proceeds from prior successful business ventures.

## IV  JUSTIFICATION FOR JUDICIAL NOTICE HEARING

26    The above facts are substantiated by verified evidence, including admissions from

Plaintiff's representatives and affidavits filed by both parties. Judicial notice of these facts will:

1.     Facilitate fair proceedings by establishing a clear factual record,

2.     Counteract Plaintiff's strategy of procedural obstruction,

3.     Preserve judicial resources by focusing on verified and relevant facts.

## V  RELIEF REQUESTED

27   **WHEREFORE,** Defendant, Ryan Dillon-Capps, respectfully requests that this
Honorable Court:

1.     Schedule a hearing for the purpose of taking **Judicial Notice** of the material facts

listed herein;

2.     Optionally, formally recognize these facts per Maryland Rules 5-201(b), (d), and

(e) to clarify the record, prevent further procedural abuse, and expedite resolution; and

3.     Retains jurisdiction to issue any further orders or relief deemed necessary to

enforce compliance with this Order; and

4.     Grant any other relief deemed appropriate by this Court.

<u>RESPECTFULLY SUBMITTED</u>

November 1, 2024                               <u>/s/ Ryan Dillon-Capps</u>

Ryan Dillon-Capps (Pro Se)
Email : ryan@mxt3.com
1334 Maple Avenue
Essex, Maryland 21221
Telephone: (703) 303-1113

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on November 1, 2024, a copy of **Request for Mandatory Judicial**

**Notice Hearing on Material Facts** via email to rbrennen@milesstockbridge.com and served on via

first-class mail, postage prepaid on:

Robert S. Brennen
Miles & Stockbridge P.C.
100 Light Street
Baltimore, Maryland 21202

<u>/s/Ryan Dillon-Capps</u>
Ryan Dillon-Capps (Pro Se)

| OHANA GROWTH PARTNERS, LLC | IN THE |
|---|---|
| Plaintiff, | CIRCUIT COURT |
| | FOR |
| vs. | BALTIMORE COUNTY |
| **RYAN DILLON-CAPPS** | CASE NO: C-03-CV-24- |
| Defendant. | **002264** |

## MOTION FOR DIRECTED VERDICT

**COMES NOW**, Ryan Dillon-Capps ("Defendant" or "Dillon-Capps" or "RDC") respectfully moves this Honorable Court for Judgement as a Matter of Law pursuant to Maryland Rule 2-519, stating as follows:   Under any name, this motion is for immediate judgment.

1    A Directed Verdict("JWOL") is typically performed at a trial, but the stage nor the trial are material to the motion for directed verdict.  The Plaintiff has (1) submitted their evidence, the court has (2) admitted the Plaintiff's evidence, the Plaintiff has (3) argued the merits of their evidence, and Voluntary Dismissal represents the (4) announcement to the court concluding this process for them.

2    Upholding the legal intention and purpose for Maryland Rule 2-519 is the Plaintiff's:

    1.    submission and courts acceptance of evidence;

    2.    merit arguments have been presented to the court;

    3.    **notice is the closing of the evidence offered and resting of their case**.

3    Maryland Rule 2-519(a) says "a party may move for judgement on any or all of the issues in any action at the close of the evidence offered by an opposing party."  Historically, the

directed verdict was requested before a case is submitted to a jury for ruling with arguments presented that **no reasonable jury could find for the opposing party**.

## I  INCORPORATED AND ADOPTED

4    Ryan Dillon-Capps incorporates and adopts by reference all factual averments, arguments, and documents contained in all of the Defendant's motions, affidavits, petitions, notices, amendments, exhibits, and other papers filed or submitted in this case, regardless of their current status (pending, denied, granted, or otherwise), pursuant to Md. Rule 2-303(d) ("Statements in a pleading or other paper of record may be adopted by reference in a different part of the same pleading or paper of record or in another pleading or paper of record."). This incorporation includes, but is not limited to, any filings made contemporaneously with or subsequent to this motion, ensuring that all submissions are considered as part of the record for purposes of this proceeding, in real time.

5    **Reservation of Rights:** The Defendant reserves the right to amend, withdraw, or exclude any specific filing, document, or factual averment from this comprehensive incorporation at any point, by submitting a formal notice or motion to the Court.

## II  NO REASONABLE JURY

6    See the Additional Facts and Arguments section VI of the **Amended Affidavit of Plaintiff's Abusive Use of the Judicial System** for additional Insights and Clarifications, and Exhibit B of the Affidavit for comments for the complaint.

7    **No Breach of Duty**: I did not breach any duty, but Ohana did breach their duty of care.

8    **No Breach of Contract**: I breached no contractual obligations. Unlike Ohana who breached the written agreement with me from June 7, 2024, and who wanted to breach a dozen agreement they made in multiple Franchise Disclosure Documents (FDD)

9    **No Refusal**: I complied with all lawful directives and provided lawful and compliant solutions to unlawful and non-compliant ones.

10    **No Risk**: Ohana and Counsel have affirmed and stated under oath what they demanded. They wanted to violated PCI Compliance, breach a dozen contractual agreements, and violate roughly 20 laws over 5 states, DC, and federally.  Furthermore, Ryan Brooks was caught trying to gain unauthorized access and the results of his work were discovered and placed systems, data, and the business at risk.

11    **No Harm**: The only harm Ohana has suffered is from their own doing. Ohana affirmed in Richard Hartman's affidavit and Robert Brennen has confirmed under oath on June 26, 2024. Ohana willingly and knowingly violated my FMLA leave rights in June 13, 2024. Ohana and Counsel's actions have exacerbated my PTSD. I now suffer from catatonia, which has worsened since June 17 and now presents as malignant, and I have severe memory issues because of Ohana and M&S.

12    **No Claim of Authority**: No claim of authority beyond my own was ever made, but Ohana has made several false claims of authority involving PCI Compliance, contractual obligation, and ownership of planet fitness health clubs.

13    **No Exclusive Control of Systems**: Roles and responsibilities were distributed,

    1.    Billing Administrator: LeeAnn Hartman (Richard Hartman's Wife)

    2.    Viva Goals Administrator: Justin Drummond

3.      Support Administrators: Cielo IT: Managed by Dante Martinez (Ohana Terminated Sept 15)

4.      Systems, Database, and Reporting Administrator: Ann Pinera

5.      Cloud Administrator: Ryan Brooks (RDC Terminated May 20 || Ohana Rehired)

6.      Security Administrator: Ryan Brooks (RDC Terminated May 20 || Ohana Rehired)

7.      Backup Administrator: Darren Koritzka (Ohana Suspended June 13)

8.      Compliance Administrator: Ryan Dillon-Capps (Ohana Suspended June 13)

14    **Maintained Compliance**: I followed all lawful directives and maintained compliance with all applicable requirements, standards, contractual obligations, and policies.

15    **No GoDaddy/Domain Registrar Access Requested**: Ohana doesn't know what GoDaddy is and never mentioned it before they filed this lawsuit.

### A   Confession: FMLA Violation

16    Richard Hartman on June 14th, page 4 of his affidavit, and Robert Brennen from Miles & Stockbridge confirmed on June 26th and counsel have admitted to violating Dillon-Capps FMLA leave rights, and this alone is sufficient basis to meet that standard; furthermore

### B   Material Statements and Claims

17    Plaintiff and counsel have produced no evidence contradicting the evidence or material statements and claims of the Defendant, including but not limited to:

1.      Plaintiff material claims and the statements made in support are perjured statements;

2.      No evidence or reasonable basis for belief has been established truthfully to support the Plaintiff's claim that Dillon-Capps was a risk to any of Ohana's technology solutions or systems;

3.      No evidence or reasonable basis for belief has been established truthfully to support the Plaintiff's claim that Dillon-Capps refused compliance with a lawful order;

4.      No evidence or reasonable basis for belief has been established truthfully to support the Plaintiff's claim that Dillon-Capps acted in violation of Section I of the employment agreement submitted;

5.      No evidence or reasonable basis for belief has been established truthfully to support the Plaintiff's claim that Dillon-Capps acted in violation of their duty of loyalty to Ohana Growth Partners, LLC ("Ohana"),

6.      No evidence or reasonable basis for belief has been established truthfully to support the Plaintiff's claim that Dillon-Capps violated any part of Md Code Ann., Crim. Law., §7-302; furthermore

## C   Perjured Statements

18      The Plaintiff's Notice of Voluntary Dismissal in response to deposition and document production request to compel the Plaintiff's into producing supporting evidence to substantiate material claims demonstrates evasion.  This supports Dillon-Capps claims of perjured statements and the claims of, including but not limited to:

1.      Richard Hartman did not lose access at 2:05 PM on June 13, 2024;

2.      Richard Hartman did not lose access to all personnel records on June 13, 2024, because Richard Hartman is the admin of Paycom which was the primary centralized location for payroll records on June 13, 2024;

3.      Richard Hartman contorted and patched together parts of statements from a small business Microsoft webpage to mislead the Court on Microsoft Best Practices;

4.      Daniel Levett was not involved "the entire time";

5.      Daniel Levett's Affidavit contains sufficient information to contradict Ohana's claims of no other administrators.

6.      Daniel Levett's Affidavit contains sufficient information to contradict Ohana's claims of no access to accounts with the Global Administrator role.

7.      Ohana is fully aware of their legal and contractual obligations related to PCI Compliance;

8.      Ohana had an entire team of Administrators on June 13, 2024, working in the Help Desk;

9.      The Plaintiff has experienced no harm that can be attributed to Dillon-Capps;

10.     Dillon-Capps did not refuse any lawful order;

11.     The Plaintiff's demands were unlawful, and Dillon-Capps found and offered legal solutions;

12.     Ohana did not ask or discuss GoDaddy access prior to the commencement of action;

13.     Drummond breached the written accord from June 7, 2024;

14.    Drummond evaded satisfaction on June 10th and 11th, and this is why the President, CFO, and CEO, or anyone else did not have access on June 13th.

15.    June 13th was pretext and Ohana had no legitimate reason to send the 9 AM email except to use it to mislead and Drummond's evasion days before establishes this as fact not conjecture.

16.    Hartman Executive Advisors ("HEA") were unresponsive and engaged in Estoppel;

17.    Dillon-Capps actively pursued HEA to provide them access because Dillon-Capps wanted them to have access.

18.    Drummond received updates from Dillon-Capps and was requested to aid Dillon-Capps in reaching HEA for the purpose of giving them access on June 13, 2024;

19.    Drummond's text messages reveal that he was aware of the 9 AM email during that conversation.

20.    Circumstantial evidence strongly suggests that Drummond with conspiring with additional people at the time of Dillon-Capps text messages to Drummond

21.    Glenn Norris ("Norris" or "CFO"), not Richard Hartman ("Hartman" or "VP of HR" or "Head of HR") or Justin Drummond ("Drummond" or "President)", is responsible for the order and subsequent email from Richard Hartman on June 13, 2024.

22.    Darren Koritzka ("Koritzka") was placed on a leave of absence at 2:20 because Richard Hartman was retaliating against Dillon-Capps' 2:05 PM email;

23.    Drummond either engaged in Estoppel or was an accessory after the fact on June 13, 2024;

24.     Miles & Stockbridge ("M&S") had Dillon-Capps personal email and mobile number, and the law firm intentionally mislead the court by providing and using the ohanagp.com email address;

25.     Miles & Stockbridge did not file this lawsuit on behalf of a client, but instead as co-conspirator with their own benefit and interest in an adverse outcome for Dillon-Capps;

26.     Drummond, Hartman, Norris, and Brick's legal and technical knowledge is insufficient to explain all unlawful and unethical conduct in this lawsuit, strongly suggesting that M&S had to have engaged in some of the conduct of their own free will and discretion;

27.     The proceedings reflect M&S abuse of professional courtesy and ongoing unlawful and unethical conduct;

28.     Ohana and M&S filed the lawsuit to evade accountability and consequences;

29.     Ohana and M&S filed the Notice of Voluntary Dismissal to evade accountability and consequences; furthermore

### D   Evading Accountability

19    The Plaintiff's attempts to evade accountability instead of defending themselves from any allegations of wrongdoing support Dillon-Capps claims that the Ohana and M&S engaged in additional unlawful conduct, including but limited to:

1.     Engaging in and then covering up the companies Hostile Work Environment that impacting Dillon-Capps and others, including but not limited to:

1.1     Gender and disability-based discrimination;

1.2    FMLA and ADA Retaliation.

1.3    Accounting and Fraud related Whistleblowing retaliation; additionally

2.    Covering up Irregular Accounting Practices;

3.    Covering up the fraudulent activities of their vendors;

4.    Intentionally misleading and/or witness tampering Randall Romes and Daniel Levett;

5.    Engaging in and then covering up Spoliation; furthermore

### E  Opposing Position

20    The Defendant engagement in protected acts like whistleblowing is why the Plaintiff has taken an opposing position to Dillon-Capps which has resulted in:

1.    Ohana's unlawful and unethical treatment of Dillon-Capps for over a year; furthermore

2.    Dillon-Capps lost promotion to the C-suite,

2.1    Depriving Dillon-Capps increased stature in the organization and the fitness industry;

2.2    Depriving Dillon-Capps of significant increases to salary, benefits, bonus', and other compensation;

2.3    Depriving Dillon-Capps of opportunities that are commiserate with the position; additionally

3.    The baseless and fraudulent lawsuit that has resulted in severe and irreparable harm that includes, but is not limited to:

3.1    Exacerbated Dillon-Capps PTSD resulting in Dillon-Capps suffering from catatonic episodes, including malignant catatonic episodes which can be fatal and present a life-threatening risk to Dillon-Capps;

3.2    Exacerbated Dillon-Capps PTSD resulting in Dillon-Capps suffering from severe memory issues;

3.3    Dillon-Capp defaulting on financial obligations;

3.4    MXT3, LLC suffering the loss of critical investor opportunities;

3.5    Dillon-Capps loss of a 15-year investment, including the substantial financial investment from multiple successful business ventures that were invested into it.

### III    KEY ELEMENTS OF THE "REASONABLE JURY" STANDARD:

#### A    Objective Basis for Jury Decision:

21    Courts examine if a **reasonable jury, viewing evidence most favorably to the non-moving party**, could reach a verdict for that party. If the evidence is so one-sided that no reasonable jury could rule in favor of one side, courts may grant Directed Verdict/JWOL or summary judgment, removing the issue from jury determination. This was articulated in cases like *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986), which established that a reasonable jury standard requires more than a "mere scintilla of evidence" for a claim to survive in court.

22    In the plaintiff's complaint and the seven counter complaints, with Plaintiff resting their case and ending the submission of evidence AFTER the countercomplaints were filed, there is no evidence in support of the Plaintiff, and a preponderance of evidence in favor of Dillon-Capps Defense of the Complaint and in support of the Seven Countercomplaints.

### B  Constitutional Implications:

23      This standard aligns with the **Seventh Amendment's** right to a jury trial in civil cases

and the **Sixth Amendment's** guarantee of a fair trial in criminal cases by preserving the integrity

of "fact-finding" and maintaining strict evidentiary rules. By enforcing these protections, the

court safeguards the proper use of evidence, ensuring it serves legitimate defense or counterclaim

purposes rather than supporting fraudulent schemes. This balance between the jury's "fact-

finding" role and judicial oversight prevents baseless cases from moving forward, upholding

procedural fairness and protecting both the rights of the parties involved and the judicial process

from misuse.

### C  Preventing Unjust or Unsupported Verdicts:

24      The "reasonable jury" standard is intended to prevent verdicts based on **speculation,**

**prejudice, or unsupported inferences**. In *Bose Corp. v. Consumers Union of U.S., Inc.*, 466

U.S. 485 (1984), the Court held that an appellate court has the duty to ensure that findings of fact

by a jury are supported by substantial evidence, consistent with what a reasonable jury could

decide.

### D  Factual Interpretation and Jury Discretion:

25      The "reasonable jury" concept allows a jury to interpret facts and draw reasonable

inferences, but within the limits of evidence and reason. It acknowledges that **juries have broad**

**discretion** in interpreting evidence, but judicial oversight ensures this interpretation doesn't stray

beyond reasonable conclusions. The standard recognizes jurors' role as fact-finders who are

expected to apply common sense and reason.

26    The Plaintiff has no substantive evidence because it is fraudulent lawsuit with no basis of

truth, and even the harm they claimed was speculative.  In essence, *Bose Corp.* reinforces that

courts, at both trial and appellate levels, must ensure that claims are founded on substantial

evidence to proceed—protecting against the risk of verdicts influenced by factors other than

clear, credible evidence.  The lawsuit and everything done within it is the counterclaim, and the

Defense has several times that this lawsuit is also the body of evidence because their pursuit,

words, and action therein are the evidence off malicious prosecution, abuse of process, perjury,

and everything else laid out in the counterclaims and body of filings that was incorporated under

Md. Rule 2-303(d).

### PURPOSE AND INTENT FOR "REASONABLE JURY" STANDARD

27    The **"reasonable jury" standard** is a vital checkpoint in the legal process, balancing the

jury's role as the factfinder with the court's duty to prevent legally unsupported or irrelevant

claims from affecting verdicts. This standard ensures that only reasonable interpretations of

supported facts reach the jury, upholding procedural fairness by filtering out speculative or

baseless arguments.

28    The intent and purpose of a **Directed Verdict** extend further by addressing concerns like

**Abuse of Process, Perjury, and Unclean Hands**. This motion is a safeguard, ensuring that only

reasonable, fact-based conclusions are considered in reaching a verdict. Directed Verdict

requires that only facts supported by admissible evidence are used to draw legally sound

conclusions, discarding unsupported assertions. It plays a unique role in American jurisprudence

by preventing unchallenged or misleading evidence from impacting the trial stage.

29    The Directed Verdict motion is fundamental to **procedural fairness**, especially where abuse of process is alleged. U.S. courts have consistently ruled that due process safeguards ensure that trials focus on merit-based claims and evidence admitted through rigorous pre-trial procedures. The Directed Verdict motion is the final safeguard and discards unsubstantiated arguments and guards against a corrupted court record. By focusing on admissible, verified facts, it prevents misuse of process and upholds the integrity of the judicial process.

30    This motion, therefore, is the **only appropriate mechanism** to reach a verdict without requiring further litigation, and for any of the counter complaints that need further review this motion allows for them to proceed forward unaffected by forced affirmation of false facts. It ensures that all parties are judged solely on supported facts, affirming procedural fairness and protecting the court's function as a fair arbitrator of justice.

## SUPPORTING OPINIONS

**Jewish Hospital & St. Mary's Healthcare, Inc. v. House, 563 S.W.3d 626 (Ky. 2018)**

*Opinion by Judge Venters*:

> "A directed verdict is appropriate when (1) the non-moving party's evidence is so deficient that no reasonable jury could return a verdict in its favor, or (2) the evidence overwhelmingly favors one side. This procedural tool ensures that cases based on speculative or unsubstantiated claims do not proceed to a jury, preserving the integrity of judicial proceedings."

**Unitherm Food Systems, Inc. v. Swift-Eckrich, Inc., 546 U.S. 394 (2006)**

*Opinion by Justice Thomas*:

> "Rule 50 requires a party to file for judgment as a matter of law before a case goes to the jury. The Rule 50(a) motion assesses whether there is a 'legally sufficient evidentiary basis' for a jury to find for the non-moving party, preventing unsupported claims from unduly burdening a jury's function."

**Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133 (2000)**

*Opinion by Justice O'Connor:*

> "In entertaining a motion for judgment as a matter of law, the court should review all of the evidence in the record… This requirement ensures that the jury, as the finder of fact, determines credibility and weight of the evidence presented."

**Johnson v. New York, N. H. & H. R. Co., 344 U.S. 48 (1952)**

*Opinion by Justice Frankfurter:*

> "A Rule 50 motion is no idle formality, but a crucial mechanism to prevent juries from deliberating on claims that lack substantial evidence. The directed verdict protects the jury's function and ensures the integrity of judicial economy, as it checks against unfounded claims proceeding to deliberation."

**Cone v. West Virginia Pulp & Paper Co., 330 U.S. 212 (1947)**

*Opinion by Justice Murphy:*

> "Rule 50(b) offers a last opportunity for the trial judge to apply his firsthand knowledge in appraising the trial and weighing whether only substantiated claims reach the jury. It ensures that unsupported assertions do not override the judge's discretion, guarding the court record from speculative or meritless claims."

### THE HARMFUL EFFECTS OF MOOTNESS

31    The **Doctrine of Mootness**, rooted in the **U.S. Constitution's Article III "case or controversy" requirement**, reflects the **intent of** judicial restraint, limiting courts to active disputes with live stakes. The **purpose is to** prevent the judiciary from issuing advisory opinions or ruling on hypothetical scenarios, ensuring that courts only decide cases where their rulings hold practical, immediate significance. This preserves judicial resources and focuses on relevant and reliable evidence. Critical to this case is that the Doctrine of Mootness is a limitation imposed upon the Judiciary not a tool for crafting opinion.

32    Six days before Plaintiff and Counsel filed the Notice of Voluntary Dismissal in response

to the Defendant's answer of complaint and seven counterclaims from the same day, October 24,

2024. Ohana and M&S filed an opposition to a motion for expedited discovery and on ¶15 it says

> "On **July 17, 2024**, Ohana therefore **filed a Notice of Withdrawal of Petition for Constructive Civil Contempt** that it had filed against Dillon-Capps. But **Ohana reserved its right** to seek judgment against Dillon-Capps **in an amount equal to the contempt fines accrued against him**, as well as the legal fees, consultant fees and other expenses relating to Ohana's claims against Dillon-Capps."

33    Two months earlier on August 20, Judge Mayer ruled on the Motion to Vacate the Show

Cause Order of June 21, 2024 *"Moot. Plaintiff withdrew Petition for Constructive Civil*

*Contempt."*

34    By deeming this matter moot, the court dismissed Dillon-Capps's objections to the

contempt charge without addressing the ongoing reputational and financial consequences of this

unresolved contempt order. Dismissing a motion while leaving legal implications from contempt

fines intact is why **collateral consequences** prevent moot rulings in cases like this one.

35    On **October 28, 2024**, Judge Stringer "**Denied as moot. Plaintiff has filed a Voluntary**

**Dismissal of this case**." This ruling disregarded Dillon-Capps's answer and counterclaims,

which were timely filed to contest the plaintiff's allegations and demand accountability. Labeling

his defense "moot" negated Dillon-Capps's right to challenge both reputational and financial

harm that would continue without judicial review.

36    Judge Barranco's ruling of Moot toward Motion to Assert Rights and Request Immediate

Rulings, the pre-amended document for this motion, is an inappropriate personal attack, and the

original motion included arguments that were relevant to address a premature entry of default to

which the Judge ruled Moot on. However, inside this document also contains arguments that the

Plaintiff has evaded entirely and is a review of the exhibits which reflect the insufficiency of this lawsuit. Any number, or none, of these could have been ruled upon instead of becoming a platform for attacking Dillon-Capps disability, overexplaining being directly linked to the Defendant's PTSD trauma response. The same trauma response may be linked to the common Pro Se behavior of over explaining.

### IV    PREVENTION OF FURTHER HARM

37      On September 30, 2024, Dillon Capps filed the **Motion to Assert Rights and request for Immediate Rulings**. The plan was to file the Motion for Directed Verdict on October 30, 2024, but an unexpected ruling of Moot required adjustment to the timeline. This section title has always been titled **Prevention of Further Harm,** and the Defense singular focus is to turn their own harm into the **prevention of harm** for others.

38      On October 23. 2024 at 10:45 AM Ryan Dillon-Capps files 15 documents. The Lead document may have been titled Reply to Opposition to Defendant's Motion for Expedited Discovery, but the motion for expedited discovery was already ruled on and it was not **answer**ing the motion's opposition. Here is a summary of the document:

   1.      **Incorporated Herein:** The entirety of all the Defendant filings regardless of status. The document combines with all other filings which have provided every defense of law and fact to a claim that I will be using.

   2.      **109 Page Answer:** Since the commencement of this matter on June 14, 2024, 109 pages responding to the Plaintiff's Complaint.

3.      **Counterclaims:** The filing includes seven counterclaims, each seeking **equitable relief** to **P**rotect, **R**estore, **E**nforce, **V**erify, **E**nsure, **N**eutralize, and **T**erminate the ongoing harm caused by the plaintiff's actions and court inaction.

The **equitable relief** requested is urgent, as the defendant faces ongoing harm from the fraudulent lawsuit, exacerbated by delays in court rulings. The prolonged inaction has deepened Dillon-Capps's financial and psychological damage, leading to life-threatening conditions like catatonia, worsened by financial hardship and a lack of medical care due to employment loss. The plaintiff's actions, allegedly supported by Miles & Stockbridge, have hindered Dillon-Capps's defense, leaving them at severe risk of default on obligations, loss of stability, and irreversible harm.

**Each aspect of PREVENT serves to counteract the sustained harm:**

**P – Protects**

**Motion to Disqualify Miles & Stockbridge for Ethical Violations and Misconduct**

Disqualification is not about punishment; it is about protection. Disqualification protects the judicial process by removing counsel who allegedly engaged in unethical conduct, creating liability and risk to their clients and others. Disqualification ensures fair representation and upholds court integrity. Protects Dillon-Capps from further misconduct and delays that have resulting compounding severe and irreparable harm.

**Equitable Claim**: Designed to protect Dillon-Capps and the court from compounded harm due to ongoing delays and alleged misconduct by opposing counsel.

**R – Restores**

**Motion to Vacate the Temporary Restraining Order (TRO)**

Restores the status quo by vacating a TRO allegedly obtained through fraudulent claims and perjury. This motion seeks to correct an unjust restriction and remove an unlawful order restoring part of the status quo.

**Equitable Claim**: This claim seeks to restore Dillon-Capps's rights and protections removed by an improper order.

## E – Enforces

**Motion to Impose Sanctions Not Sanction Fraudulent Lawsuits**

Enforces judicial standards by requesting sanctions against the plaintiff and their counsel for filing a fraudulent lawsuit. Sanctions deter future misuse of the legal system and reinforce accountability, those who are held accountable are deterred and it deters others as well. The resulting deterrence reduces harm and protects others.

**Equitable Claim**: Seeks accountability that deters misconduct and safeguards against future harm.

## V – Verifies

**Motion of Referral for Criminal and Ethical Investigation**

Verifies accountability by referring the plaintiff and their counsel for criminal and ethical investigation. This referral ensures thorough examination and adherence to ethical standards, holding people accountable is a deterrent to them and to others, and deterrents double as a form of protection.

**Equitable Claim**: A referral reinforces accountability as a preventive measure to protect others from similar harm.

## E – Ensures

**Motion for Injunction to Prevent Future Abuse of Court Process**

Ensures future protection by requesting an injunction requiring judicial approval for any future litigation by the plaintiff. This measure prevents repeat abuse and shields against vexatious litigation.

**Equitable Claim**: This injunction prevents vexatious litigation, offering future protection to Dillon-Capps and others.

## N – Neutralizes

**Motion for a Better Maryland with Reciprocal Relief**

Neutralizes harm by imposing financial penalties and requiring reimbursement for legal costs incurred due to bad-faith litigation. By holding each responsible party accountable, this motion seeks to balance harm with reciprocal consequences for those involved. The current Count is fourteen to one. (1)Glenn Norris, (2)Richard Hartman, (3)Justin Drummond, (4)Victor Brick, (5)Robert Brennen, (6)Steven Frenkil, (7)Holly Butler, (8)Kim Edwards, (9)Victoria Hoffberger, (10)Jessica Duval, (11)Ryan Brooks, (12)Phil Leadore, (13)Daniel Levett, (14)Randall Romes. Neutralizing the effects of all 14 through the per person and per day reciprocal relief.

**Equitable Claim**: This motion is designed to equalize the financial impact inflicted by the plaintiff's alleged misconduct, deterring similar actions.

## T – Terminates

**Motion**: **Motion to Dismiss with Prejudice for a June 13th Worth of Reasons**

Terminates the plaintiff's claims permanently, preventing re-filing of similar abusive claims. This motion, based on doctrines like unclean hands and abuse of process.

**Equitable Claim**: A permanent dismissal halts ongoing harm and safeguards against future fraudulent actions.

## SETTLE

39    The 109-page **answer to** the **Plaintiff compliant** and all seven counterclaims seek **equitable relief** designed to **P**rotect, **R**estore, **E**nforce, **V**erify, **E**nsure, **N**eutralize, and **T**erminate [PREVENT] the harm caused by the plaintiff's actions.

40    The **Motion for Directed Verdict** aims to **S**ettle **this lawsuit** and become the precedence that PREVENT**S** further harm.

## V  CONCLUSION

41    For the reasons stated, the Motion for Directed Verdict is appropriate and necessary in this case. The evidence provided by Plaintiff is insufficient to support its claims, and substantial, verified facts overwhelmingly support the Defendant's position. A directed verdict serves to uphold procedural fairness and judicial integrity by ensuring that only substantiated claims reach further adjudication. Granting this motion aligns with established legal standards and case law cited in Defendant's arguments, which confirm the importance of filtering unsupported claims from further proceedings and ensures that cases are decided based on substantial evidence rather than conjecture.

## VI  PRAYER FOR RELIEF

42    **WHEREFORE,** Defendant respectfully requests that this Honorable Court:

**Grant the Motion for Directed Verdict** under Maryland Rule 2-519, as no reasonable jury could find in favor of the Plaintiff based on the evidence presented.

**Grant the following seven counterclaims in full** as part of this directed verdict:

1.  **Motion to Dismiss with Prejudice for a June 13th Worth of Reasons**
2.  **Motion to Disqualify Miles & Stockbridge for Ethical Violations and Misconduct**
3.  **Motion for A Better Maryland with Reciprocal Relief**
4.  **Motion to Impose Sanctions Instead of Sanction Fraudulent Lawsuits**
5.  **Motion to Vacate the Temporary Restraining Order**
6.  **Motion for Injunction to Prevent Future Abuse of the Court Process**
7.  **Motion of Referral for Criminal and Ethical Investigation**

**Grant any further relief** this Court deems just and appropriate to maintain judicial integrity and prevent further procedural abuses.

## VII   ADDITIONAL ARGUMENT AND FACT

### A   Key Points Supporting Necessity for Urgency & Relief

43   **Insufficiency of Lawsuit**: The lawsuit lacked a clear harm, explanation of Dillon-Capps's role, or evidence of contractual breach. Plaintiff's admission of FMLA violations should have led to immediate dismissal given the evidence provided by Dillon-Capps on June 18, 2024.

44   **Retaliation Against Darren Koritzka**: On June 13, 2024, Richard Hartman retaliated against Dillon-Capps and Koritzka. Koritzka's suspension, which evolved into a termination, evidences harm to both individuals due to plaintiff's retaliatory conduct.

45   **Unnecessary Access Requests**: If system access was critical, Ohana's CEO, Justin Drummond, should have acted on the June 7 accord. Dillon-Capps, in compliance, actively attempted to facilitate access for HEA, underscoring the lack of any refusal to cooperate.

46   **Right to Hearing on TRO Modification**: Judge Truffer, under **Md. Rule 15-504(f)**, was required to grant Dillon-Capps a hearing upon receiving his request to modify the TRO, with the burden on the plaintiff, who had admitted ineligibility for relief.

47    **Technical Claims Without Personal Knowledge**: Non-technical personnel such as Hartman, lacking firsthand knowledge of system access, gave unreliable testimony in violation of **Md. Rule 5-602**.

48    **Incomplete Employment Contract**: The breach claim rests on an incomplete contract missing sections and critical pricing details, making it unenforceable under **Md. Rules 2-303, 2-305**, and **2-322(b)(2)**.

49    **FMLA Retaliation Acknowledgment**: Hartman admitted that the lawsuit was retaliation for Dillon-Capps's FMLA use, directly violating **29 U.S.C. § 2615(a)(1)** and **29 C.F.R. § 825.220(c)**.

### B   Evidence of Misconduct and Inconsistent Affidavits

### JUNE 25, 2024: RANDALL ROMES'S AFFIDAVIT

50    **Misrepresentation**: Romes included misleading hyperlinks, violating **Md. Rule 1-311** and **Md. Rule 1-341**.

51    **False PCI Compliance Claims**: Romes falsely argued that laws don't enforce PCI compliance, disregarding Nevada's **NRS 603A** and federal standards, contrary to the extensive evidence provided by the defense.

### JULY 3, 2024: DANIEL LEVETT'S AFFIDAVIT

52    **Contradictions in Injunctive Relief**: Levett confirmed that other administrators held Global Admin access, invalidating plaintiff's claims for injunctive relief.

53    **Non-Expert Opinions**: Levett's testimony exposed unreliable statements from non-technical staff who lacked personal knowledge, violating **Md. Rules 5-602** and **5-701**.

54     **Estoppel Evidence**: Levett's account showed a delay in providing access, supporting estoppel under **Md. Rule 2-322** by demonstrating misleading conduct.

55     **Irrelevant Hyperlinks and Bad Faith**: Hyperlinks to unrelated Microsoft webpages were irrelevant and confusing, violating **Md. Rules 5-401** and **5-403**, and demonstrate bad faith under **Md. Rule 1-341**.

### C    June 26-27, 2024: Hearing To Show Cause And Preliminary Injunction

56     **Motions to Dismiss for Federal Jurisdiction**: On June 26, 2024, Dillon-Capps argued that federal laws governing **FMLA**, **ADA**, and **PCI compliance** under the FTC take priority. Judge Barranco's refusal to fully consider these arguments limited Dillon-Capps's defense.

57     **Court's Denial and Restriction of Defense**: Judge Barranco denied arguments relating to **FTC v. Wyndham** and blocked further discussions on **FMLA** and **ADA** protections, undermining the completeness of Dillon-Capps's defense.

### D    June 27, 2024: Second Hearing Day

58     **Contradictory Contempt Orders**: Judge Barranco imposed a $2,500 daily contempt fine based on conflicting orders, creating an impossible compliance standard for Dillon-Capps.

    1.     **Motion for Continuance**: Denied without allowing further argument.

    2.     **Prohibition on Cross-Examination**: Cross-examination of the plaintiff's expert was denied, further limiting defense rights.

    3.     **ADA Dismissal**: Judge Barranco dismissed Dillon-Capps's ADA-based arguments for accommodations, contradicting federal protections.

59    **Continuation of Harm**: From June 14 to June 27, evidence heavily favored Dillon-Capps, yet punitive measures have persisted, causing undue financial and emotional harm.

## VIII   ATTORNEY MISCONDUCT

60    In **Attorney Grievance Commission of Maryland v. Steinhorn (2018)**, Judge Keith Truffer established criteria for evaluating attorney misconduct. These criteria apply directly to Miles & Stockbridge's actions:

1.    **Credibility of the Attorney**: Miles & Stockbridge's alignment with fraudulent claims and lack of ethical conduct reflects a severe credibility deficit.

2.    **Intent to Deceive**: Evidence shows intent to deceive, as Miles & Stockbridge misled the court to harm Dillon-Capps.

3.    **Conflict of Interest and Personal Benefit**: The firm's decisions prioritized internal interests, compromising their duty to the court and client.

4.    **Permanent Harm**: Miles & Stockbridge's actions inflicted irreversible harm on Dillon-Capps, including financial and health consequences, amounting to reckless endangerment under **Md. Code, Criminal Law § 3-204**.

5.    **Lack of Remorse**: Despite opportunities to correct course, the firm intensified its pursuit of a fraudulent lawsuit.

6.    **Necessity of Judicial Intervention**: Judge Truffer's criteria confirm that Miles & Stockbridge's conduct warrants judicial disqualification to protect the court's integrity.

<u>RESPECTFULLY SUBMITTED</u>

November 1, 2024                             <u>/s/ Ryan Dillon-Capps</u>

Ryan Dillon-Capps (Pro Se)
Email : ryan@mxt3.com
1334 Maple Avenue
Essex, Maryland 21221
Telephone: (703) 303-1113

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on November 1, 2024, a copy of **Motion for Directed Verdict** via email

to rbrennen@milesstockbridge.com and served on via first-class mail, postage prepaid on:

Robert S. Brennen
Miles & Stockbridge P.C.
100 Light Street
Baltimore, Maryland 21202

<u>/s/Ryan Dillon-Capps</u>
Ryan Dillon-Capps (Pro Se)

| OHANA GROWTH PARTNERS, LLC | IN THE |
| *Plaintiff,* | CIRCUIT COURT |
| vs. | FOR |
| RYAN DILLON-CAPPS | BALTIMORE COUNTY |
| *Defendant.* | CASE NO: C-03-CV-24-002264 |

## MEMORANDUM OF LAW IN SUPPORT OF ESTABLISHED FACTS AND CLAIMS

### I   INTRODUCTION

1        This memorandum supports the principle of equal application of evidentiary standards, specifically regarding the impartial role of the trier of fact in evaluating evidence. Maryland and federal law require that each party's evidence receives an unbiased assessment at every procedural stage, whether during affidavits, summary judgment, trial, or appeals. This duty of neutrality ensures that neither party has an advantage, preserving fairness and due process.

2        Maryland courts have consistently upheld this approach, mandating that factual assertions are presumed accurate unless effectively contested. This presumption of truth in affidavit statements, coupled with the uniform evidentiary standards applied by the trier of fact, is essential to maintain impartiality in the judicial process. This memorandum provides the legal framework and case support for applying fact-finding standards equitably, thus reinforcing the fair administration of justice.

### II   TIER OF FACT

### FEDERAL RULE OF EVIDENCE 201

**Citation:** Fed. R. Evid. 201(b).

3  Rule 201 allows courts to take judicial notice of facts that are "not subject to reasonable dispute," supporting the presumption that certain statements are taken as true unless successfully challenged.

## PRESUMPTION OF TRUTH IN AFFIDAVIT STATEMENTS

**Case Example:** *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

4  This case illustrates that affidavit statements are presumed true unless the opposing party provides specific counter-evidence.

## BURDEN OF PRODUCTION AND REBUTTAL

**Case Example:** *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

5  In this case, the Supreme Court held that unchallenged factual statements are treated as accurate until rebutted, reinforcing the "tier of fact" principle.

## USE OF AFFIDAVIT TESTIMONY AS PRIMA FACIE EVIDENCE

**Case Example:** *United States v. One 1987 Mercedes Benz 560 SEL*, 919 F.2d 327, 331 (5th Cir. 1990).

6  This ruling emphasizes that affidavit statements, when uncontested, serve as prima facie evidence, presumed true unless effectively challenged.

## AFFIDAVITS AND SUMMARY JUDGMENT STANDARDS

**Citation:** Fed. R. Civ. P. 56(e).

7  Rule 56 provides that facts in affidavits are accepted as true unless effectively challenged by the opposing party, underscoring the importance of equal treatment in the assessment of each party's factual claims.

### III    MARYLAND STANDARDS AND UNIFORM INTERPRETATION

### MARYLAND CODE, GENERAL PROVISIONS ARTICLE, § 1-201 (UNIFORMITY OF INTERPRETATION)

**Citation:** Md. Code, Gen. Prov. Art., § 1-201.

8    Maryland law mandates that statutes aligned with federal standards be interpreted consistently with federal interpretations, fostering uniformity across jurisdictions.

### MARYLAND CASE LAW SUPPORTING UNIFORM INTERPRETATION AND EQUAL APPLICATION

**Citation:** *Kaczorowski v. City of Baltimore*, 309 Md. 505 (1987).

9    The Maryland Court of Appeals emphasized that Maryland statutes modeled after federal laws should align with federal interpretations to maintain consistency.

**Citation:** *Office & Professional Employees Int'l Union, Local 2 v. MTA*, 295 Md. 88 (1983).

10    The court noted that when Maryland law closely parallels federal law, Maryland courts should consider federal interpretations to foster a cohesive legal framework.

### IV    MARYLAND CASE LAW ON EQUAL APPLICATION OF TRIER OF FACT IMPARTIALITY OF TRIER OF FACT

**Citations:** *Owens-Illinois, Inc. v. Hunter*, 162 Md. App. 385, 396 (2005).

11    The Maryland Court of Special Appeals ruled that the trier of fact must evaluate evidence impartially, underscoring the principle that both parties are entitled to a fair trial under equal evidentiary standards.

### EQUAL WEIGHT TO EVIDENCE PRESENTED BY BOTH PARTIES

**Citations:** *Salisbury Beauty Schools v. State Board of Cosmetologists*, 268 Md. 32 (1973).

12    The Maryland Court of Appeals established that equal treatment of evidence is essential to preserve fairness, reinforcing impartial fact-finding.

## STANDARD OF PROOF AND BURDEN OF PROOF APPLIED EQUALLY

**Citations:** *Jacobs v. Flynn*, 131 Md. App. 342, 353 (2000).

13    The court affirmed that both parties are subject to the same evidentiary standard, ensuring impartial weighing of evidence.

## FEDERAL STANDARDS ON EQUAL APPLICATION OF TRIER OF FACT

## NEUTRALITY OF TRIER OF FACT

**Citations:** *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

14    The U.S. Supreme Court highlighted that the same standard applies to evidence from both parties, ensuring impartial fact-finding.

## FEDERAL RULES OF EVIDENCE 401 AND 403 (RELEVANCE AND PREJUDICE)

**Citations:** *Fed. R. Evid. 401, 403.*

15    These rules require the trier of fact to evaluate relevance and prejudice equally, ensuring both parties' evidence meets the same admissibility criteria.

## EQUAL TREATMENT IN SUMMARY JUDGMENT

**Citations:** *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

16    The Court held that the trier of fact applies the summary judgment standard uniformly, allowing both parties equal opportunity to present facts.

## V  IMPORTANCE OF SUMMARY JUDGEMENT

17      The focus on summary judgment in discussing the impartiality and equal application of

fact-finding standards arises because summary judgment motions are a common context where

courts explicitly outline how they treat evidence from both parties. During summary judgment,

courts must decide if there's enough factual evidence for a case to proceed to trial, which requires

impartial evaluation of the presented evidence from each side.

18      However, the principles of impartiality and equal application of fact-finding standards are

broader than summary judgment alone. They apply across various stages of litigation, including

at trial, in evidentiary rulings, and in the final assessment of facts by the trier of fact, be it judge

or jury. This means:

19      **Impartial Evaluation**: Courts are bound to apply the same standards to evidence

presented by both parties across all stages of a case, not just in summary judgment.

20      **Burden of Proof**: At trial, the principle that each party's evidence is weighed equally by

the trier of fact is fundamental to ensuring fairness in establishing burdens of proof and burdens

of production.

21      **Evidentiary Standards**: Maryland and federal courts maintain that evidentiary standards

should be uniformly applied in all situations, including during motions, trials, and appeals, to

prevent bias.

## VI  APPLICATION BEYOND SUMMARY JUDGMENT

22      While summary judgment often highlights the principle of equal treatment, these

standards extend through all litigation stages, maintaining fairness from trial to appeals.

Maryland and federal courts recognize that fact-finding impartiality is integral to every stage,

ensuring neither party is disadvantaged by biased assessments.

## VII  OPENING THE DOOR

### A  Federal Rules of Evidence and Procedure

23      **Federal Rule of Evidence 611(b) – Scope of Cross-Examination**: This rule permits cross-examination on "matters affecting the witness's credibility." Once a witness introduces a topic, the opposing party may explore related questions to challenge credibility or clarify details.

24      **Federal Rule of Evidence 611(a) – Control by the Court:** This rule gives judges broad discretion to control the mode and order of questioning, ensuring effective interrogation for truth-finding, time efficiency, and protection of witnesses from harassment. Courts often invoke this rule to allow expanded questioning on topics introduced by the opposing party's witness.

### B  Key Cases on "Opening the Door" and Expanding Scope Due to Opposing Party's Evidence

25      ***Ohler v. United States*, 529 U.S. 753 (2000):** In *Ohler*, the Supreme Court addressed the "opening the door" doctrine, holding that if one party introduces a topic, it may allow otherwise inadmissible evidence to be explored by the opposing party.

26      ***United States v. Lum*, 466 F. Supp. 328 (D. Del. 1979)**: The court held that if one party introduces certain evidence, it opens the door for the opposing party to explore that evidence further, either on cross-examination or by introducing additional evidence. This is especially relevant with hostile witnesses, where the defense may expand questioning based on the prosecution's initial inquiries.

27      ***United States v. Robinson*, 485 U.S. 25 (1988)**: The Supreme Court ruled that the prosecution may introduce otherwise inadmissible evidence in rebuttal to clarify or contradict

misleading statements made by the defense. This established that once a topic is introduced, the opposing party may respond to or clarify it.

28    *Michelson v. United States*, **335** U.**S. 469 (1948)**: *Michelson* is a foundational case allowing parties to respond to character evidence or similar topics once introduced by the opposing party. The Court observed that some evidence, initially inadmissible, may become admissible if introduced by the other side.

29    *Harris v. New York*, **401 U.S. 222 (1971)**: The Supreme Court held that statements otherwise inadmissible in the prosecution's case-in-chief may be used to impeach the defendant's credibility if the defendant "opens the door" to that line of questioning. This reinforces that parties can be questioned on topics they themselves introduce.

### C    State-Level Case Law on Hostile Witnesses and "Opening the Door"

30    *People v. Steele*, 47 Cal. 4th 1173 (Cal. 2010)

In *Steele*, the California Supreme Court held that when a witness testifies on a particular subject, they "open the door" for the opposing party to cross-examine on related issues. This principle is especially relevant with hostile witnesses, as it permits a party to clarify or challenge statements introduced by the witness.

31    *State v. Gardner*, 371 S.C. 18 (S.C. 2006)

The South Carolina Supreme Court held that the "opening the door" doctrine allows the opposing party to introduce evidence or delve into issues raised by the other side. This doctrine is particularly significant in cases involving witnesses whose statements might otherwise be limited or restricted.

## D  Application in Practice

32      The "opening the door" doctrine is widely recognized across jurisdictions. When an

opposing party or hostile witness introduces a particular topic, the court often permits broader

questioning on that topic—questions that might otherwise be inadmissible had the issue not first

been raised by the opposing party. This principle promotes fairness by allowing both parties the

opportunity to fully address and explore any issues introduced.

## VIII  CONCLUSION

33      The application of uniform evidentiary standards by the trier of fact is central to

preserving the fairness and neutrality of judicial proceedings. Whether at summary judgment or

trial, Maryland and federal law uphold the requirement that factual assessments remain impartial,

guaranteeing equal treatment to all parties and upholding due process in the administration of

justice.

RESPECTFULLY SUBMITTED

November 8, 2024                          /s/ Ryan Dillon-Capps

                                         Ryan Dillon-Capps (Pro Se)
                                         Email : ryan@mxt3.com
                                         1334 Maple Avenue
                                         Essex, Maryland 21221
                                         Telephone: (703) 303-1113

CERTIFICATE OF SERVICE

I hereby certify that on November 8, 2024, a copy of **Memorandum of Law in Support of Established Facts and Claims** was **served by email** to rbrennen@milesstockbridge.com and via first-class mail to:

        Robert S. Brennen
        Miles & Stockbridge P.C.
        100 Light Street
        Baltimore, Maryland 21202

                              /s/Ryan Dillon-Capps
                              Ryan Dillon-Capps (Pro Se)

|  |  |
|---|---|
| **OHANA GROWTH PARTNERS, LLC**<br><br>*Plaintiff,*<br><br>vs.<br><br>**RYAN DILLON-CAPPS**<br><br>*Defendant.* | **IN THE**<br><br>**CIRCUIT COURT**<br><br>**FOR**<br><br>**BALTIMORE COUNTY**<br><br>**CASE NO: C-03-CV-24-002264** |

## AFFIDAVIT OF FACTUAL BASIS

1    I, Ryan Dillon-Capps, am over the age of eighteen (18), competent to testify, and have personal knowledge of the facts stated herein.

2    I, Ryan Dillon-Capps, declare that the following statements are factual based on my knowledge and expertise. These statements are presumed accurate unless and until rebutted by competent evidence, in accordance with the principles under Federal Rule of Evidence 201 and relevant case law, including *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, and *Celotex Corp. v. Catrett*, 477 U.S. 317.

3    I appreciate the Honorable Judge Robinson's ruling and opinions, but it remains unclear what specifically is being classified as "not factually supported."

4    Statements such as "there is no factual basis to any material statement that supports Ohana Growth Partners, LLC ('Ohana')" have been sufficiently stated and quoted. I will assume this has been treated as an adjudicated fact.

5    Any statements related to Miles and Stockbridge ('M&S') or their attorneys should also be considered adjudicated facts, as determined by the trier of fact. The court's previous use of the mootness doctrine as a basis for ruling, rather than an acknowledgment of the court's lack of

<span style="color:red">Page **1** of **12**</span>

jurisdiction over certain filings, suggests that recent references to "not factually supported" statements are likely unrelated to these issues.

6      Two material statements appear repeatedly in filings associated with this ruling. One or both may be the source of the opinion, but I believe these statements have been assessed in error for the following reasons:

1. **Presumption of Truth:** My statements should be presumed true unless effectively challenged.

2. **Lack of Challenge:** No substantive challenge has been made against these statements.

3. **Affidavits as Prima Facie Evidence:** My affidavits should serve as prima facie evidence of these elements.

7      Applying the same standard used for the Plaintiff's complaint to my own statements and filings would clarify these points. I challenge this inconsistency, as it appears a different standard may have been applied to my statements, leading to unnecessary confusion.

## I   FACTS OF THE CASE

8      Legally, my statements are based on personal knowledge and are submitted as admissible evidence, with no contrary evidence presented. All material statements—including those made by the opposing party—support my position.

9      Even if nothing else were known about me, and no one has inquired about my expertise, that alone would be enough to justify a favorable ruling on every issue. The opposing party has committed perjury, engaged in fraud, and pursued a baseless, unsupported case for nearly five months. As a result, the facts of this case establish that I am experiencing catatonia and severe

memory loss, with the catatonia manifesting in malignant symptoms. Additionally, I am in financial default.

10      We are in the United States of America, where my FMLA, ADA, and Constitutional rights have been repeatedly violated. These are the facts of the case. I have consistently denied and presented strong evidence against each claim made. Everything I have stated is true to the best of my knowledge, belief, and ability. When inaccuracies do appear, they are not intentional misrepresentations but rather evidence supporting my documented severe memory loss.

11      In preparing for upcoming litigation, I discovered this morning that my dissociative states began on June 17, while my episodes of catatonia actually started slightly earlier in May. This was the result of nearly a month-long effort by the Plaintiff to push my mental health to its limits.

12      Does the court genuinely believe that Glenn Norris is unaware of the process for granting access? By a Reasonable Jury standard, it is unlikely anyone would believe that the entire Baltimore County Supreme Court Bench truly thinks the Chief Financial Officer of Ohana Growth Partners, LLC was repeatedly asked the simple question, "What is the access for?" and reminded of its necessity. Norris also assured Geoff VanMaastrich from Planet Fitness that he would provide me with the information. Yet, he never once followed through. A Reasonable Jury is expected to conclude that Glenn Norris was intentionally withholding this basic information.

13      From May 20 until now—five and a half months of psychological manipulation, gaslighting, and what felt like torture. They intended to harm me, and they wanted that harm to be severe. Even throughout the litigation, they continued to escalate this harm. Robert Brennen didn't need to make threats, via text message, to have me incarcerated on July 17—he chose to,

deliberately. He wanted to intimidate me, knowing I had already been physically harmed. His actions showed he wanted to ensure the harm was as severe as possible.

14      They waited until the very last moment, when they would be forced to present evidence to support their claims, and then they withdrew to avoid accountability—not liability, but accountability.

15      You could impose a $10 million penalty, and it would mean nothing to them because, comparatively, that amount is insignificant to them. They have a saying they repeat about "stepping over dollars to pick up pennies." Their goal is to evade accountability, and they are unconcerned with what they consider the "pennies" of millions of dollars, at least for now.

## II  EVADING ACCOUNTABILITY

16      The Plaintiff has no case and never had a case because none of their statements are accurate. They presented their claims in a way deliberately intended to mislead the court. If they believed their claims were truthful, why did they avoid the hearing, fail to present evidence, and not charge me with making false statements? Pursuing these actions would have been an instant win for them if their position were genuine. It defies logic for an honest party to suddenly withdraw nearly five months into litigation.

17      Even after filing their notice of dismissal, they attacked a source I had cited incorrectly, which I have since replaced with two properly cited sources supporting the same conclusion. They framed this as evidence of dishonesty, yet ignored all other statements in my filings. Would a Reasonable Jury conclude they withdrew because they ran out of funds or lost interest? They pursued a cancer survivor over a $500 debt, only to refile the suit to increase the amount to

approximately $630. Meanwhile, they publicly celebrated her at a company event, encouraging applause for her fight against cancer.

18      No Reasonable Jury would believe the Plaintiff dismissed this case for any reason other than to evade accountability.

## III  A DIFFERENT STANDARD

19      The Plaintiff has presented no evidence, made no attempt to refute my statements and claims, and has evaded accountability. So why am I being denied hearings? Why are denials citing a lack of evidence or legal basis? They submitted a contract with a missing section, admitted to violating FMLA in their initial filing, cited a webpage with a quote so fragmented that it's nonsensical, and even misrepresented the text, which explicitly states "least" yet they argue it says "more." Additionally, there are conflicting statements about who ordered certain actions—an email at 9 a.m. claims Glenn Norris gave the order, while Harman's affidavit attributes it to him, and Drummond's affidavit says Hartman was ordered by someone else.

20      How is this applying the same standard? I can't even obtain a hearing to determine what the court requires from me. How was the ex parte hearing granted with this incomplete and contradictory submission, especially given that the suspension letter clearly states that I cannot use the **ohanagp.com** email—the only email listed? There was no notice or attempt at notice, even based on what little information is available. Yet, I continue to be denied hearings despite the undisputed facts established by the trier of fact.

## IV  SAFEGUARDING MY CASE

21      If I were represented by counsel, would you expect my attorney not to aggressively defend my civil rights, disability rights, and rights to protected leave? I have done nothing less in

representing myself, yet it seems decisions are being made under the assumption that, because I am Pro Se, I am motivated by a personal grudge. In fact, I want to conduct my litigation at the Baltimore County Circuit Court with the same professionalism and focus on the law as any represented party. This case is inappropriate, and I responded more appropriately and professionally then it was given.  The concept is no different than responding to a hostile witness, or asking questions and pursuing topics that are opened up through the other party's inclusion.

22      A Reasonable Jury would not interpret the differences in treatment, due process violations, and discriminatory statements as justifiable. They would not conclude that the court acted appropriately by slowing down and prolonging the case when one party has suffered no harm while the other faces severe harm to career, company, finances, and health. As nother Pro Se litigant passionately stated during her filing and at her hearing, "they F@k3D up, they F@k3D up bad".

23      Mistakes were made, and then compounded. The court granted the opposing party's requests without agreement, even when I have fully answered with redacted complaint showing what I denied and agreed to, and by motion in accordance with the statute.

24      I am not concerned fact sheet because I knew there would never be a trial of merits.  I have made my claims known and was preparing to formally remove them. Until that order was granted, my intention was to defer certain claims to allow the court to focus on achieving something meaningful for Maryland. I would benefit equally from the protections and relief provided under the PREVENT framework.

25    Attempting to litigate the remainder of this case without relief only worsens my situation. I will likely face homelessness before the case concludes. It will take 4–6 weeks to finalize my diagnosis, and it could take three months to over a year to establish a prognosis.

26    I urgently need treatment, but I cannot proceed without relief. Relief includes sanctions, disqualification, prevention of further abusive conduct, and financial support for necessary treatment. Without it, I am facing what feels like a death sentence because I cannot work. Last night, I had an episode, and this morning my wife's account of the evening raised serious concerns about what might happen if I were alone in an office or other setting. My wife cannot work while also caring for me, and I am unable to work. During a rare moment when I wasn't focused on this case, we were lying down together when I suddenly became confused, unable to understand how I got downstairs, and was asking about a file folder I thought I had misplaced.

27    My actions in this litigation are intended to safeguard my case, secure relief for my family, and achieve a resolution before my condition deteriorates further. I am also acting in trust, hoping that the court will recognize the sincerity of my intentions—to genuinely support and help others, including the court itself. Every part of my damaged brain wants to react out of fear, but I am doing everything I can to stay focused, to act consistently, and to think about the greater good. I hope to help protect and PREVENT others from enduring this same destructive and life-altering harm.

28    Each day, I hope that purposefully omitting certain key facts from a complaint or related actions to protect this case does not lead to irreversible consequences, and that someone will see the situation clearly. I am balancing the need to safeguard the integrity of this case while minimizing harm to others who are also victims. At one point, both Ohana and M&S were

victims, too; however, once they recognized the true nature of the situation, they each made the choice to become malicious participants.

29      The Honorable Judge Keith Truffer is the first person in this process to make an ethical choice. Based on the available information, it appears that Judge Truffer has recused himself from the case in accordance with his ethical obligations. I would consider myself fortunate to present this case, or any case, in his courtroom, as well as in Judge Stacey Mayer's courtroom.

30      I am committed to adapting my actions and statements based on any new information as it becomes available—nothing less should be expected. My actions and words consistently demonstrate my intention to safeguard this case. When mistakes occur, my hope is that each new decision will improve upon the last, and I am prepared to move forward with protective measures if my assumptions prove to be incorrect.

## V  EXPERT STATEMENT NOT LAY PERSON OPINION

31      Despite my wife and I both qualifying as experts in support of the diagnosis, neither of us can legally diagnose or treat My wife holds a master's degree in social work, an active LCSW-C license, and has eight years of experience in social work and therapy.

32      My own qualifications span neurology, sociology, psychology, biochemistry, pharmacology, and psychiatry. I also hold trade secret intellectual property for a selective extracellular hemoglobin crystallization and lipid-protein desiccation reagent, one of more than a dozen intellectual properties in my portfolio.

33      My work on the Holistic Cognitive Integration (HCI) model offers a groundbreaking advancement in the fields of psychology and neurology. HCI aligns cognitive (thought-based)

and behavioral (action-based) interventions, providing an integrated approach for personal development.

34    For example:

1. **NLP and CBT Integration**: HCI combines NLP techniques with CBT thought-modification exercises, enabling users to reframe thoughts while developing behavior patterns that reinforce new cognitive perspectives.

2. **Improved Decision-Making**: Drawing from behavioral economics, HCI helps individuals recognize biases and mental shortcuts, empowering them to make more deliberate, informed choices. This component aids in identifying when emotional, cognitive, or environmental factors may be influencing judgment.

3. **Assertive Communication and Boundaries**: HCI incorporates negotiation skills and NLP to help users communicate assertively, set boundaries, and positively influence their environments. This approach empowers individuals to actively shape their circumstances in alignment with their values and goals.

4. **Acceptance and Mindfulness**: Drawing from DBT, HCI emphasizes acceptance and mindfulness as core components, helping individuals build resilience and tolerate distress without impulsive reactions. This focus promotes balanced, long-term growth.

5. **Structured Reflection Tools**: HCI includes reflection tools like structured journaling prompts, encouraging users to learn continuously. Regular reflection on progress and setbacks fosters ongoing personal growth.

35      HCI is not a one-size-fits-all model; it's a flexible framework that tailors techniques to various contexts, from workplace dynamics to personal relationships, allowing individuals to choose and adapt tools that best suit their unique situations.

36      My statements regarding mental capacity are grounded in Cognitive Load Theory (CLT) and supported by expert analysis. These statements are not merely personal opinion; they are substantiated by expert evaluations that have twice confirmed the conditions in this case, establishing these as facts.

37      Likewise, the inclusion of the copy-and-pasted hyperlink quote, along with overwhelming evidence that contradicts the statements made by Randall Romes, establishes my interpretation of PCI Compliance as a fact in this case.

38      Statements made by Daniel Levette, asserting his continuous involvement, support an argument for estoppel. The delay in action until late June, combined with the Plaintiff's conflicting statements regarding Phil Leadore's involvement—followed by another individual from HEA claiming involvement throughout—significantly undermines the credibility of both the Plaintiff and Daniel Levette.

39      These issues, combined with numerous other credibility concerns—such as the breach of accord, violations of FMLA, conflicting statements about who ordered the June 13th, 9 a.m. email, and many others—lead to the conclusion that my statements are the only ones rooted in fact in this case.

40      The Plaintiff has acknowledged me as their expert, and my ongoing work with them supports this assertion. I have provided evidence of years of PCI compliance and the legal basis for relevant contractual obligations, along with citations to applicable laws for each requirement.

These practices were established as standard operations at Ohana, whereas the Plaintiff's actions since May 20 have deviated from these norms. I, however, have consistently upheld the same contractual and legal obligations, refuting all claims of breach of contract, violation of duty, or criminal statute.

## VI  CONCLUSION

41    Given the overwhelming preponderance of evidence and conclusions firmly grounded in law, legal truth, legal fact, and objective truth, I am left questioning: what is going on? Why do the rulings continue to favor the unethical and unlawful actions of the Plaintiff and their counsel? I have provided opportunities to address these issues and have consistently demonstrated my genuine purpose and intent. All I ask is for the restoration of the rule of law and for the court's actions toward the Plaintiff and Counsel to reflect the true nature of their conduct—their intent, the harm they've caused, their lack of remorse, their refusal to accept accountability, and their complete disregard for everyone involved, including the court itself. This conduct risks undermining the integrity of the judicial system.

42    I respectfully urge the court to change course and take the right action. Please, with humility and sincerity, do this not only for me but, more importantly, for the greater impact this case has on the rule of law, judicial integrity, the careers of dedicated colleagues, and the public's trust in a system that must be safeguarded against the actions of Ohana Growth Partners, LLC, Miles & Stockbridge, P.C., and anyone else who might attempt similar conduct.

## DECLARATION OF AFFIRMATION

I solemnly declare and affirm under penal ties of perjury and upon personal knowledge that the contents of the foregoing paper and exhibits thereto are true.

November 8, 2024

s/ Ryan Dillon-Capps
Ryan Dillon-Capps (Pro Se)
Email: ryan@mxt3.com
1334 Maple Avenue
Essex, Maryland 21221
Telephone: (703) 303-1113

## RESPECTFULLY SUBMITTED

November 8, 2024

/s/ Ryan Dillon-Capps
Ryan Dillon-Capps (Pro Se)
Email : ryan@mxt3.com
1334 Maple Avenue
Essex, Maryland 21221
Telephone: (703) 303-1113

## CERTIFICATE OF SERVICE

I hereby certify that on November 8, 2024, a copy of **Affidavit of Factual Basis** was **served by email** to rbrennen@milesstockbridge.com and via first-class mail to:

Robert S. Brennen
Miles & Stockbridge P.C.
100 Light Street
Baltimore, Maryland 21202

/s/Ryan Dillon-Capps
Ryan Dillon-Capps (Pro Se)

**Page 12 of 12**

| OHANA GROWTH PARTNERS, LLC | IN THE |
|---|---|
| *Plaintiff,* | CIRCUIT COURT |
| vs. | FOR |
| RYAN DILLON-CAPPS | BALTIMORE COUNTY |
| *Defendant.* | CASE NO: C-03-CV-24-002264 |

## MOTION TO PRESERVE COURT RECORDS

1    **Comes now** Defendant, Ryan Dillon-Capps, and respectfully moves this Honorable Court to preserve the complete court records for the above-captioned civil action. Defendant anticipates that additional future litigation will be necessary to fully adjudicate matters arising from this case, especially regarding events that occurred from the end of May through the recent proceedings under Rule 2-605.

### I   BASIS FOR PRESERVATION AND ANTICIPATED FUTURE LITIGATION

2    Due to **jurisdictional limitations**, **missing parties**, and other factors, complete adjudication of all relevant claims is not feasible in the Baltimore County Circuit Court at this time.

3    Defendant intends to pursue related claims in the **United States District Court for the District of Maryland**, where the court records in this matter will be essential to substantiate claims and provide a complete procedural history.

### II   REQUEST FOR CERTIFIED COPIES AND COSTS INCLUSION

4    Pursuant to **Maryland Rule 2-311**, Defendant requests that the Court preserve the entire case record, including all filings, orders, and related evidence.

5     Defendant further requests that **certified copies** of the preserved records be included in the final costs, specifically as part of the costs to be borne by the Plaintiff following its voluntary dismissal of this case, in accordance with **Maryland Rule 2-632** and **Maryland Code, Courts and Judicial Proceedings, § 10-204**. These certified records will ensure proper authentication for use in federal court proceedings.

### III  JUDICIAL NOTICE FOR RECORDS

6     For purposes of both **Maryland Rule 5-201** and **Federal Rule of Evidence 201**, Defendant requests that the Court take **judicial notice** of the preserved records in this case, establishing their authenticity and reliability as public records necessary for related and anticipated litigation.

### IV  PRESERVATION FOR FEDERAL COURT USE

7     This Motion to Preserve Court Records is also intended to support anticipated proceedings in the **Federal District Court of Maryland**, where the records will serve as a critical basis for related claims and defenses.

**WHEREFORE,** Defendant respectfully requests that this Honorable Court:

1.    **Order the Preservation of Complete Court Records**: Direct the Clerk of the Court to preserve all filings, orders, motions, and related records in this case;

2.    **Authorize Certified Copies and Assign Costs to Plaintiff**: Include the cost of certified copies of these records in the final costs to be paid by the Plaintiff, as part of the voluntary dismissal, in accordance with Md. Rule 2-632 and Md. Code, Cts. & Jud. Proc. § 10-204;

3.    **Grant Judicial Notice**: Take judicial notice of these preserved records under Md. Rule 5-201 and Federal Rule of Evidence 201 for their anticipated use in federal proceedings; and

4.    **Grant any other relief** deemed just and appropriate to maintain the integrity and availability of these court records for future proceedings.

RESPECTFULLY SUBMITTED

November 7, 2024                              /s/ Ryan Dillon-Capps
                                             Ryan Dillon-Capps (Pro Se)
                                             Email : ryan@mxt3.com
                                             1334 Maple Avenue
                                             Essex, Maryland 21221
                                             Telephone: (703) 303-1113

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 7, 2024, a copy of **Motion to Preserve Court Records** via

email to rbrennen@milesstockbridge.com and served on via first-class mail, postage prepaid on:

            Robert S. Brennen
            Miles & Stockbridge P.C.
            100 Light Street
            Baltimore, Maryland 21202

                                             /s/Ryan Dillon-Capps
                                             Ryan Dillon-Capps (Pro Se)