# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| RYAN DILLON-CAPPS<br><br>*Plaintiff,*<br>vs.<br><br>OHANA GROWTH PARTNERS, LLC *et al*<br><br>*Defendants* | Civil Action<br><br>No. **1:24-CV-3744**<br><br>Hon. **Judge Hurson** |

---

### AFFIDAVIT OF RYAN DILLON-CAPPS IN SUPPORT OF CONSUMER PROTECTION VIOLATIONS & DECEPTIVE AND UNFAIR TRADE PRACTICES

1    I, Ryan Dillon-Capps, being over the age of eighteen (18) and competent to testify, and having personal knowledge of the facts contained herein, state as follows:

2    Submitted to the Court on February 17, 2025, The **Affidavit of Ryan Dillon-Capps in Support of Plaintiff's Emergency Motion for Reconsideration of Denial of Temporary Restraining Order and Preliminary Injunction and Request for Expedited Review** (ECF 34-0) addressed many of the issues directly connected to the injunctive relief and shows that the lawsuit itself was fraudulent with the pretext of refusal shown to be based on perjured statements.

3    What is not addressed is that the order itself was unlawful because it violated a dozen contractual agreements, violated consumer protection rights, and because it was intentionally being done violated deceptive and unfair trade practice laws in Washington, California, Tennessee, Florida, District of Columbia, and Maryland.

4    Filed in digital form on December 27, 2024, was the 707 pages of original exhibits filed with the Affidavit of Legal Obligations which was filed to the Circuit Court of Baltimore County on September 25, 2024. (see ECF 31-2, at 120)

5       ECF 31-2 was filed originally in paper form on December 27, 2024, with the original

complaint and was docketed on January 3, 2025 (See ECF 16-12) but was missing pages.

(Comparing ECF 16-12 of 115 numbered pages to ECF 31-2 of 120 numbered  pages) ECF 31-2

was filed with a Notice of Filing Error and Request for Correction of ECF 16-12 on February 13,

2025. See ECF 31-0.

6       With this affidavit, I am filing the omitted 707 pages of exhibits from the original

Affidavit of Legal Obligations, also known as Exhibit 109, as Exhibit 109A.  Exhibit 109A still

shows the original exhibit identifiers that was submitted to the Circuit Court of Baltimore

County, but I will reference them herein as E109A.

7       The original submission to the Court on December 27, 2024, also contained 22 additional

documents filed in digital form as supplemental evidence.  They were submitted in digital form

due to financial limitations that prevented me from printing them out and requested print services

with my in-forma-paupers (IFP) request. I lack access to ECF 2, but I assume the IFP request has

been docketed as ECF 2.  They include full versions of clean contracts, documents supporting

the history of consumer protection, other documents that may be truncated in the original

exhibits, and additional supplemental exhibits.

8       I submit the following Statement of Facts in support of the claims connected with

violations of consumer protection rights & deceptive and unfair trade practices.  The facts set

forth below are material to the issues before the Court and are presented in an objective manner

to aid in the fair and just resolution of this dispute.

Affidavit of Ryan Dillon-Capps in Support of Consumer Protection Violations & Deceptive and Unfair trade
Practices
Page # 2 of 33

2025-02-19

## CONTRACTUAL OBLIGATION

9       Ohana Growth Partners, LLC is a Planet Fitness (PLNT:NYSE) franchisee with locations in Washington, California, Florida, Tennessee, District of Columbia, and Maryland. See ECF 23-1, at 2.

10      Franchisees are required to sign a Franchise Disclosure Document (FDD) in every jurisdiction that they operate in, and the Franchise Disclosure Documents are regulated in accordance with local and federal oversight. Some jurisdictions require additional disclosures, amendments, or changes to the Franchisor's FDD. See E109A, at 428-441.

11      The franchisor, Planet Fitness (Pla-Fit Franchise LLC), has a merchant account with ABC Financial Solutions (ABC Fitness Solutions, LLC) for payment processing. Inside every Planet Fitness FDD, the franchisee signs a contract with ABC Financial Solutions that joins the franchisee to Planet Fitness' merchant account as a sub-merchant.  See E109A, at 403-427.

12      The franchisee contractually agrees to be in full compliance with all laws, statutes, and regulations applicable to under federal and state jurisdiction. To be in full compliance with all rules and operating regulations and bylaws set forth by the credit card companies. To do all of this without limitation to all state and federal consumer credit  and consume protection statutes and regulations.  Explicitly including the security procedures adopted by the Payment Card Industry (PCI). Requiring the franchisee to maintain PCI compliance and regularly validate compliance of PCI Standards as part of a self-assessment questionnaire (SAQ). Requiring any violation of PCI compliance to be investigated and remediated to mitigate any real or potential effects of the violation. See E109, at 423.

13      The franchisee is prohibited from appointing an agent to engage in any effort to violate the ABC agreement.  The franchisee is required to seek authorization from the franchisor in writing, and the franchisor is required to seek the consent of ABC Fitness Solutions LLC and/or

Trisource Solutions, LLC to take any action that would otherwise act to breach the agreement. Any violations of the agreement by an agent of the franchisee are held as a liability of the franchisee, and the franchisor is liable for any breach by the franchisee. See E109, at 424.

| FACTS |
| --- |
| Ohana Growth Partners, LLC, as the franchisee, agrees to the FDD as one contract with the franchisor, Planet Fitness, and to ABC Financial Solutions as a second contract |
| Ohana Growth Partners, LLC signed at least one FDD per Washington, California, Tennessee, Florida, District of Columbia, and Maryland |
| Ohana Growth Partners, LLC has at least twelve contractual obligations connected to PCI Compliance, two in each jurisdiction. |

## STATE AND FEDERAL LEGAL REQUIREMENTS

14      Payment Card Industry (PCI) DSS v4 Standards are broken down into twelve (12) requirements, and each requirement is broken down into sub requirements. See E109A, at 58-384.

15      Every requirement, and nearly every sub-requirement, is linked to a statutory requirement in Washington, California, Tennessee, Florida, District of Columbia, and Maryland. See ECF 31-2, at 18-95.

Affidavit of Ryan Dillon-Capps in Support of Consumer Protection Violations & Deceptive and Unfair trade Practices
Page # 4 of 33

2025-02-19

| FACTS |
|---|
| PCI Compliance is the Payment Card Industry (PCI) attempt to self-regulate state and federal laws.  Including, but not limited to, Consumer Protection Laws & Unfair and Deceptive Trade Practices |
| Washington, California, Tennessee, Florida, District of Columbia, and Maryland all have Consumer Protection laws which companies maintain compliance with through standards like PCI DSS v4 |
| Washington, California, Tennessee, Florida, District of Columbia, and Maryland all have laws that prohibit unfair and/or deceptive trade practices which companies maintain through standards like PCI DSS v4 |
| Planet Fitness (NYSE:PLNT), Pla-Fit Franchisee, LLC, is a publicly traded company |
| The FTC, and other federal agencies, enforce federal laws like the Sarbanes-Oxley Act (SOX), Gramm-Leach-Bliley Act (GLBA), and FTC Act which companies maintain compliance with through standards like PCI DSS v4 |

## LEAST PRIVILEGED ACCESS

16    As set forth herein through the section titled **Contractual Obligation,** Ohana Growth Partners, LLC is contractually obligated to maintain PCI Compliance.

17    PCI DSS v4 Standards Requirement 7 requires user access to be restricted to systems, applications, and data on a "need to know" basis and the "minimum level of privileges needed".

This applies to all accounts: every person and non-entity, like service accounts. Requiring access be assigned based on the information provided as to what the access is needed for. See E109A, at 181.

18      Starting on May 21, 2024, Glenn Norris used the granting of access to Ryan Brooks as the basis of the refusal pretext. Refusing to provide Ryan Dillon-Capps information on what the access for Ryan Brooks was needed for. See ECF 16-2, at 159.

19      On May 21, 2024, at 4:59 PM, Glenn Norris threatened to write up Ryan Dillon-Capps for not providing access to Ryan Brooks.

20      On May 21, 2024, at 5:02 PM, Ryan Dillon-Capps responds to Glenn Norris and reiterates that reinstating Ryan Brooks access without compliance to the PCI DSS requirements posed a serious legal and security risk to Ohana Growth Partners, LLC. Ryan Dillon-Capps proposed to Glenn Norris that they both meet with Geoff VanMaastricht tomorrow morning to find a solution. See ECF 16-2, at 136.

21      On May 21, 2024, at 5:50 PM, Glenn Norris instructs Richard Hartman to prepare a write up. See ECF 16-2, at 139.

22      On May 21, 2024, at 5:10 PM, Ryan Dillon-Capps emails Geoff VanMaastricht, CCing Glenn Norris and Justin Drummond, to request a meeting tomorrow morning to discuss PCI Compliance concerns connected to Ryan Brooks reinstatement. See ECF 16-2, at 140.

23      On May 21, 2024, at 5:22 PM, Ryan Dillon-Capps escalates the email thread to Victor Brick to inform him that Glenn Norris is making coercive threats to compel Ryan Dillon-Capps to violate Ohana Growth Partners, LLC legal and contractual obligations to maintain PCI Compliance. See ECF 16-2, at 141.

24      On May 21, 2024, at 5:37 PM, Ryan Dillon-Capps emails Glenn Norris, Justin

Drummond, Richard Hartman, Karen Debus, and Matt Norris and informs them that he is

experiencing severe stress and anxiety that has induced a panic attack which is causing Ryan

Dillon-Capps to shake badly and hyperventilate.  As a result, Ryan Dillon-Capps tells Glenn

Norris that he will comply.  See ECF 16-2, at 142.

25      On May 21, 2024, at 5:59 PM, Glenn Norris disregards the information and continues to

email Ryan Dillon-Capps to ask him more questions.  See ECF 16-2, at 145.

26      On May 21, 2024, at 6:27 PM, Ryan Dillon-Capps replies to Glenn Norris to provide

answers to his email, and Ryan Dillon-Capps says that he doesn't deserve to be threatened for

being a good steward for the company, performing the duties of his job as PCI Compliance

officer, and maintaining PCI Compliance. See ECF 16-2, at 146-147.

27      On May 22, 2024, at 2:05 AM, Ryan Dillon-Capps decides that breaching contractual

obligations, violating consumer protection, and deceptive and unfair trade practice laws is not

something he is going to do.  Emailing Victor Brick, Earl Ihle, Terry Woods, Justin Drummond,

Lynne Brick, and Terry Woods to notify them of Glenn Norris rehiring of Ryan Broks and

inform them that Ryan Brooks had previously refused to comply with PCI DSS Compliance.

Ryan Brooks refusal to comply with PCI DSS Compliance was the reason he was previously

removed.  See ECF 16-2, at 149-151.

28      On May 23, 2024, at 4:55 PM, Karen Debus emails Ryan Dillon-Capps to respond to

Ryan Dillon-Capps statements regarding the severe stress and anxiety inducing a panic attack

from Glenn Norris coercive threats on May 21, 2024.  See ECF 16-2, at 146-147. Karen Debus

told Ryan Dillon-Capps that he is approve for intermittent FMLA leave and allowed to take time

off. Ohana Growth Partners, LLC only requires Ryan Dillon-Capps to notify Ohana Growth Partners, LLC that the time being taken off is for FMLA.  See ECF 16-2, at 18.

29      On May 23, 2024, Karen Debus, on behalf of Glenn Norris and Richard Hartman, filed a formal "write-up" for Ryan Dillon-Capps not granting Ryan Brooks access without information on what the access was needed for.  See ECF 16-2, at 152-153.

30      On May 23, 2024, at 11:59 PM, Victor Brick repeats Glenn Norris coercive demand on Ryan Dillon-Capps raising the insubordination to gross insubordination.  Ryan Dillon-Capps received this language as a threat to terminate, an escalation from write up. See ECF 16-2, at 154.  Victor Brick never requested access for himself, Richard Hartman (See ECF 23-5, at 3) and Justin Drummond's (See ECF 23-6, at 1) affidavits both falsely state that Ryan Dillon-Capps refused to provide access to Victor Brick (CEO). Robert Brennen, Steven Frenkil, and Victoria Hoffberger filed on behalf of Ohana Growth Partners, LLC the complaint (See ECF 23-1, at 4), motion for tro/pi (See ECF 23-3, at 2), and memorandum in support of tro/pi (See ECF 23-4, at 4) that falsely stated Ryan Dillon-Capps refused to provide access to Victor Brick (CEO).

31      Glenn Norris, Justin Drummond, Ryan Dillon-Capps, and Geoff VanMaastricht have a meeting to discuss PCI Compliance.  Ryan Dillon-Capps provided several work arounds to all known issues, except one  – Glenn Norris providing information on what Ryan Brooks access was for (least privilege requirement).  Geoff VanMaastricht agrees with Ryan Dillon-Capps, and Glenn Norris promises to provide the information after the meeting is over.  After the meeting ends Glenn Norris refuses to provide Ryan Dillon-Capps what the access is needed for.  See ECF 16-2, at 155.

32      On June 5, 2024, at 10:26 AM, Glenn Norris emails Ryan Dillon-Capps to reiterate that

Ohana Growth Partners, LLC, namely Glenn Norris', demand is for Ryan Brooks to be given

Global Administrator access.  See ECF 16-2, at 158.

33      On June 5, 2024, at 10:51 AM, Ryan Dillon-Capps replies to Glenn Norris, CCing Justin

Drummond, Richard Hartman, Matt Norris, Stacey Wittelsberger, Victor Brick, Lynne Brick,

Terry Woods, and Earl Ihle.  Ryan Dillon-Capps repeating that he cannot comply with an

unlawful or unethical order, and re-requests the information on what the access is for.  See ECF

16-2, at 155.

34      On June 6, 2024, at 6:00 PM, Ryan Dillon-Capps emails Rolando Pedraza to inquire if he

would be available to meet to become a holder of a Global Administrator emergency "break-

glass" account. They plan is to meet at the end of the following week on June 13-14, 2024. See

ECF 16-2, at 89.

35      On June 7, 2024, at 5:35 PM, Ryan Dillon-Capps texted Justin Drummond to arrange for

Justin Drummond to receive Global Administrator access in the form of an emergency "break-

glass" account, and Justin Drummond agreed to receive access on October 10-11, 2024. See ECF

16-0, at 42-43.  Richard Hartman (See ECF 23-5, at 3) and Justin Drummond (See ECF 23-6, at

1) falsely state that Ryan Dillon-Capps was refusing to provide Global Administrator access to

Justin Drummond. The complaint (See ECF 23-1, at 4), motion for tro/pi (See ECF 23-3, at 2),

and memo in support of the tro/pi (See ECF 23-4, at 4) repeat the false statement.

36      On June 7, 2024, at 5:29 PM, Ryan Dillon-Capps contacts Karen Cepress to inquire if she

would be available to meet on Monday or Tuesday to become a holder of a Global Administrator

emergency "break-glass" account. See ECF 16-2, at 91.  Karen Cepress replies on June 11, 2024,

at 11:48 AM, and Ryan Dillon-Capps replies later that day at 6:54 PM to say that he would sync

with Karen Cepress later in the week.  See ECF 16-2, at 91.

37    On June 10, 2024, at 1:17 PM via text message (See ECF 16-0, 44) and then again on

June 11, 2024, at 7:45 PM, through Microsoft Teams chat, Justin Drummond delayed receiving

Global Administrator access. Telling Ryan Dillon-Capps that he would be traveling from

tomorrow until the end of the week; indicating that he would be available the following week to

receive Global Administrator access.  See ECF 16-2, at 92.

38    Ohana Growth Partners, LLC issues approximately six coercive demands to compel Ryan

Dillon-Capps to provide access to Ryan Brook from May 21, 2024, until June 14, 2024. See ECF

23-1, at 4.

39    Ryan Dillon-Capps notified Geoff VanMaastricht that he had been unlawfully suspended

under false pretense and in violations of his FMLA leave rights.  Providing a details breakdown

of the applicable standards to ensure that Planet Fitness was aware of the risk to their PCI

Compliance on June 17, 2024, at 7:22 PM via his personal email address. See ECF 16-2, at 160-

163.

| FACTS |
|---|
| Glenn Norris intentionally withheld an answer knowing that it was required for PCI Compliance |
| Glenn Norris intentional withholding of what the access was needed for prevented Ryan Dillon-Capps from granting the access request because granting access without a basis of what it was needed for is a violating of PCI DSS v4 requirement 7 |

| |
|---|
| Glenn Norris used coercive threats to compel Ryan Dillon-Capps to violate PCI DSS v4 requirements. |
| The lawsuit filed in the Circuit Court for Baltimore County falsely reframed the events as a refusal of a lawful order to provide access to Victor Brick, Glenn Norris, and Justin Drummond. |

### PHIL LEADORE: HARTMAN EXECUTIVE ADVISORS

40      On May 23, 2024, at 4:55 PM, Karen Debus emails Ryan Dillon-Capps to respond to Ryan Dillon-Capps statements regarding the severe stress and anxiety inducing a panic attack from Glenn Norris coercive threats on May 21, 2024.  See ECF 16-2, at 146-147. Karen Debus told Ryan Dillon-Capps that he is approve for intermittent FMLA leave and allowed to take time off. Ohana Growth Partners, LLC only requires Ryan Dillon-Capps to notify Ohana Growth Partners, LLC that the time being taken off is for FMLA.  See ECF 16-2, at 18.

41      On June 11, 2024, at 5:48 PM, Phil Leadore of Hartman Executive Advisors emailed Ryan Dillon-Capps a meeting invite for Wednesday June 12, 2024, between 12:30 and 1:30 PM. Phil Leadore introduced himself, Dan Levett, and Hartman Executive Advisors as being hired by Ohana Growth Partners, LLC to engage in a PCI DSS assessment, calling it a "review".  See ECF 16-2, at 79-80. PCI Security Standards Counsel has specialized training and maintains a list of all registered Qualified Security Assessors (QSAs) that are qualified to perform PCI DSS v4 assessments.  See ECF 16-2, at 78.

42      At 9:17 PM on June 11, 2024, Ryan Dillon-Capps emailed Phil Leadore, Daniel Levett, Glenn Norris, and Justin Drummond that he was unable to locate either of them or Hartman Executive Advisors as an authorized and registered QSA, and requests that they provide a

clarification on their standing with the Payment Card Industry (PCI) Security Standards Counsel to show that they are a legitimate QSA that is authorized by the PCI Security Standards Counsel to perform an assessment.   Ryan Dillon-Capps informs the recipients that he has a regularly scheduled meeting that conflicts with the proposed time, and requests an alternative time to meet. See ECF 16-2, at 79.

43      At 9:32 PM on June 11, 2024, Ryan Dillon-Capps forwarded the email thread to Justin Drummond, Victor Brick, Lynne Brick, Terry Woods, Earl Ihle, and Stacey Wittelsberger to reiterate that Glenn Norris was refusing to hire Finchloom claiming that they were not "adequately vetted" to support Microsoft Cloud solutions despite Microsoft had personally recommended Finchloom  to support Ohana Growth Partners, LLC Microsoft Cloud solutions. (See E109A, at 706-707) However, Glenn Norris hired Hartman Executive Advisors, a company that lacked the required qualification of being a registered QSA company, to perform a PCI DSS assessment. See ECF 16-2, at 78.

44      On June 12, 2024, at 7 AM, Ryan Dillon-Capps informed Richard Hartman, Glenn Norris, and Justin Drummond that he was going to use his approved intermittent FMLA leave for the day.  See ECF 16-2, at 85.

45      At 7:59 AM on June 12, 2024, Glenn Norris intentionally interferes with Ryan Dillon-Capps FMLA leave and changes Hartman Executive Advisor's purpose from performing a PCI DSS assessment, which has nothing to do with nor would it provide them with Global Administrator access, to being hired by Glenn Norris to receive Global Administrator access. Falsely claiming that Ohana Growth Partners, LLC (OGP) is out of PCI Compliance because there are not 2 users with Global Administrator access.  See ECF 16-2, at 84-85.

46      Ryan Dillon-Capps followed-up with Phil Leadore and Daniel Levett at 12:48 PM to inquire clarification on what they were hired for and what they had been told by Glenn Norris. See ECF 16-2, at 82-83. Phil Leadore cancels the meeting and never makes any attempt to reschedule.

47      At 1:28 PM on June 12, 2024, Phil Leadore sent his final communication with Ryan Dillon-Capps to inform him that Glenn Norris would follow up with clarification shortly. See ECF 16-2. At 82.  Glenn Norris never followed up or communicated with Ryan Dillon-Capps before the lawsuit was filed on June 14, 2024.

48      Ryan Dillon-Capps notified Richard Hartman, Glenn Norris, and Justin Drummond via emailed on June 13, 2024, at 7:12 AM that he was taking the day off and using FMLA leave. See ECF 16-0, at 14.

49      Richard Hartman emailed Ryan Dillon-Capps on June 13, 2024, at 9:01 AM demanding that he immediately come off FMLA leave to give Phil Leadore Global Administrator access by June 13, 2024, at 3 PM, and if Ryan Dillon-Capps does not complete the task by 3 PM that it will result in adverse employment consequences.  See ECF 23-5, at 14.

50      Ryan Dillon-Capps complies, attempting to provide Global Administrator access to Phil Leadore and Daniel Levett; Ryan Dillon-Capps emails both on June 13, 2024, at 11:48 AM, (See ECF 16-2, at 81) and again at 3:10 PM. See ECF 16-2, at 86. Phil Leadore and Daniel Levett never respond to receive Global Administrator access. Glenn Norris, Justin Drummond, Stacey Wittelsberger, C. Victor Brick, Lynne Brick, Terry Woods, and Earl Ihle are included in the 11:48 AM email.  Ryan Dillon-Capps forwards the 3:10 PM email to Justin Drummond at 4:26 PM.  See ECF 16-2, at 86.

51      Ryan Dillon-Capps replies to Richard Hartman's email on June 13, 2024, at 12:03 PM, and informs him that Ryan Dillon-Capps has reached out to Phil Leadore and Dan Levett and is waiting for them to reply. The  email is also sent to Karen Debus, Justin Drummond, Stacey Wittelsberger, C. Victor Brick, Lynne Brick, Terry Woods, Earl Ihle, and Glenn Norris.  See ECF 23-5, at 11.

52      On June 13, 2024, at 4:25 PM, Ryan Dillon-Capps informed Justin Drummond via text message that Phil Leadore and Daniel Levett are unresponsive, and then forwards the email to Justin Drummond.  Ryan Dillon-Capps tells Justin Drummond that he wishes they would respond and is eager to provide them with Global Administrator access.  See ECF 16-0, at 48-49.

53      On June 13, 2024, at 5:06 PM, Justin Drummond replies to Ryan Dillon-Capps text messages and says Phil Leadore and Daniel Levett will be in touch.  See ECF 16-0, at 56.

54      On June 13, 2024, between 5:07 and 5:08 PM, Ryan Dillon-Capps request Justin Drummond to contact Phil Leadore and Daniel Levett and ask them to respond so that they can get started with setting up their accounts and giving them Global Administrator access.  See ECF 16-0, at 57.

55      On June 14, 2024, at 12:18 PM, Robert Brennen, Steven Frenkil, and Victoria Hoffberger filed a complaint with count I falsely stating a refusal to provide access to Phil Leadore (See ECF 23-1, at 7), count II falsely stating a refusal to provide access to Phil Leadore (See ECF 23-1, at 8), count III falsely stating a refusal to provide access to Phil Leadore (See ECF 23-1, at 8).

56       On June 17, 2024, at 11:24 AM, Ryan Dillon-Capps is personally served (See ECF 23-10) for the lawsuit filed on June 14, 2024, at 12:18 PM.  See ECF 23-1, at 1. Personal service included the unsigned proposed order for the temporary restraining order and directed Ryan

Dillon-Capps to provide access to Phil Leadore of Hartman Executive Advisors.  See ECF 16-5, at 3-4.

57      At 6:40 PM on June 17, 2024, Ryan Dillon-Capps emailed Phil Leadore and stated that Ryan Dillon-Capps

> 1.      Was informed that Phil Leadore may still be interested in receiving Global Administrator access
>
> 2.      Phil Leadore's misleading introduction under the guise of a PCI DSS assessment had unnecessarily delayed and hindered his ability to grant any access to him because Hartman Executive Advisors was not an authorized QSA who could perform the assessment.
>
> 3.      Justin Drummond had been offered access on June 7, 2024, and was supposed to receive access on June 10/11, but Justin Drummond didn't meet to receive access.
>
> 4.      Repeats Ryan Dillon-Capps desire to provide Phil Leadore access and requests that they have a recorded meeting or arrange the access via written communication to ensure there is a clear record of access being provided.

See 16-2, at 173-174.  Phil Leadore never responds and is never involved in the state court proceedings.

58      On June 26, 2024, at 2:13 PM, Judge Barranco granted the changed proposed order for the preliminary injunction that directed Ryan Dillon-Capps to facilitate access to Randall Romes. It was docketed on June 27, 2024, at 12:01 PM.  See ECF 16-5, at 11-14.

## LETTER TO JUDGE TRUFFER

59      At 10:50 AM on June 17, 2024, Judge Marc DeSimone Jr. granted an ex parte TRO without notice. See ECF 34-0, at 14-20.

60      Ryan Dillon-Capps received personal service of the lawsuit filed by Ohana Growth Partners, LLC at 11:24 AM on June 17, 2024.  Learning about the lawsuit for the first time, 34 Minutes after the ex parte TRO had been entered.  See ECF 16-5, at 5.

61      Robert Brennen replied at 10:29 PM on June 17, 2024 , to Ryan Dillon-Capps email that Ryan Dillon-Capps had sent earlier that night, and informed Ryan Dillon-Capps that the Temporary Restraining Order had been granted.  See ECF 16-14 at 8.

62      At 10:59 PM (shown as 9:59 due to time zone) on June 17, 2024, Ryan Dillon-Capps asked Robert Brennen to logistically comply with conflicting orders of the TRO.  Robert Brennen replied to Ryan Dillon-Capps at 11:33 PM (shown as 10:33 due to time zone) stating that he would provide Ryan Dillon-Capps instructions on how to comply with the order.  See ECF 16-14, at 10.

63      At 8:39 AM on June 18, 2024, Robert Brennen, Steven Frenkil, and Victoria Hoffberger emailed Ryan Dillon-Capps with technical steps that did not address the logistical issues and stated that Miles & Stockbridge P.C. would be seeking contempt of the court if compliance was not met by noon on June 18, 2024.  The email states that the petition for show cause for civil contempt would ask the state court to take up the issue during the Preliminary Injunctive hearing that was scheduled for June 26, 2024. See ECF 16-24, at 11.  No other attempts were made to notify Ryan Dillon-Capps, and Ryan Dillon-Capps did not learn of this until after 11 AM with less than an hour remaining.

64      At 1:12 PM on June 18, 2024, Robert Brennen, Steven Frenkil, and Victoria Hoffberger emailed Ryan Dillon-Capps to inform him that they would be filing a petition for show cause seeking civil contempt.  See ECF 16-14, at 13.

65    Excluding a few pages which are inclusive of events that occurred after June 13, 2024,

Pages 1-160 are part of the evidence attached to the letter to Judge Truffer that was filed on June

18, 2024, at 1:18 PM. The letter to Judge Truffer, from Ryan Dillon-Capps states

    1.    Ohana Growth Partners, LLC received notice of his FMLA leave at 7:12 AM on

June 13, 2024;

    2.    Ryan Dillon-Capps was last confirmed and validated by Karen Debus (HR

Generalist) of his approved intermittent FMLA standing on May 23, 2024;

    3.    Ohana Growth Partners, LLC intentionally interfered with Ryan Dillon-Capps

FMLA leave by issuing a coercive demand letter to work at 9:01 AM on June 13, 2024;

    4.    Referenced Richard Hartman's Affidavit Exhibit B which showed Richard

Hartman's receipt of a cease-and-desist letter and includes Richard Hartman stating Ryan

Dillon-Capps was entitled to FMLA Leave;

    5.    Ohana Growth Partners, LLC retaliated to the cease-and-desist letter [first] by

placing Darren Koritzka (IT Coordinator) on a leave of absence;

    6.    Ryan Dillon-Capps legal counsel had a death in his family and a prescheduled

conference which has rendered him unavailable to act as his legal counsel;

    7.    Ohana Growth Partners, LLC had failed to disclose their legal obligations to

maintain PCI Compliance, and that arbitrarily granting access would be a violation of

those legal obligations;

    8.    Ryan Dillon-Capps requested:

        8.1    Hearing to provide clarification on Ohana Growth Partners, LLC legal

        obligations to modify the TRO/PI to allow Ryan Dillon-Capps to provide access

        without violating PCI Compliance Standards;

8.2    Protection from further retaliation by Ohana Growth Partners, LLC for

exercising his FMLA leave rights;

8.3    Adequate time to secure new legal representation.

See ECF 16-5, at 8-9.

66    At 1:12 PM on June 18, 2024, Ryan Dillon-Capps informed Robert Brennen of the Letter

to Judge Truffer and requested time for the judge to review.  See ECF 16-14, at 15.

67    On June 20, 2024, at 12:24 PM, Robert Brennen, Steven Frenkil, and Victoria Hoffberger

filed a Petition for Show Cause Order and Constructive Civil Contempt, on behalf of Ohana

Growth Partners, LLC. See ECF 16-14, at 18. Judge Keith R. Truffer granted the petition and

signed the proposed order on June 21, 2024.  It was docketed at 12:23 PM, and scheduled the

Show Cause hearing for June 26, 2024, at 9 AM. See ECF 16-5, at 10.

68    On June 24, 2024, Robert Brennen notified Ryan Dillon-Capps of the ruling denying

Ryan Dillon-Capps motion/letter and granting/scheduling of show cause for June 26, 2024. See

ECF 16-14, at 24.  Robert Brennen claims that the Judicial Assistant of Judge Truffer had

emailed Ryan Dillon-Capps, but the only record of such an email appears to be an illegitimate

email.

| FACTS |
|---|
| Ryan Dillon-Capps filed to modify/dissolve the June 17, 2024, ex parte TRO on June 18, 2024 |
| Judge Truffer's rulings are inclusive of the flaws and defects shared with Judge DeSimone Jr's ruling (Summary: ECF 34-0, at 19-20) |

| |
|---|
| Judge Truffer received additional supporting evidence that showed Justin Drummond's affidavit contained more perjured statements.  Including, perjured statements of being refused access, and not receiving updates about HEA |
| Judge Truffer's show cause order scheduled the hearing 5 days after it was granted and docketed; without a prehearing conference.  Ryan Dillon-Capps was notified less than 2 days before the hearing |
| Judge Truffer granted and docketed Ryan Dillon-Capps denial and granted Ohana Growth Partner, LLC petition at the same time in the same envelope |
| Judge Truffer's denial exceeded his judicial discretion because it violated Md. Rule 15-504(f) which mandates a hearing when a party effected by the TRO files to dissolve or modify the TRO within 2 days |
| Judge Truffer's order granting the show cause exceeded his judicial discretion because it violated the scheduling requirements set forth in Md. Rule 15-206(c)(2) which requires a minimum of 20 days after a prehearing conference |

PCI COMPLIANCE: HEARING ON JUNE 26, 2024

69    As affirmed by Ryan Dillon-Capps and supported by evidence in the previous sections of this affidavit, Ryan Dillon-Capps was not refusing to comply with the June 17, 2024, temporary restraining order.

70      Robert Brennen and Victoria Hoffberger represented Ohana Growth Partners, LLC at the joint Show Cause for Civil Contempt and Preliminary Injunction hearing on June 26, 2024.  See ECF 23-11, at 3.

71      Judge Barranco adjudicated the hearing on June 26, 2024, and immediately noticed that the schedule of the hearing on contempt and preliminary injunction was scheduled far more quickly than is normal. See ECF 23-11, at 10-11. Acknowledging that the order for the show cause was entered on June 21, 2024.  See ECF 23-11, at 13.

72      Robert Brennen brings to the Court's attention that Ryan Dillon-Capps received notice of the June 17, 2024, order granting the temporary restraining order as evident for Ryan Dillon-Capps motion to modify/dissolve the order on June 18, 2024. See ECF 23-11, at 12.

73      Robert Brennen falsely states to Judge Barranco that Ryan Dillon-Capps was intentionally disobeying the court's order.  See ECF 23-11.

74      Ryan Dillon-Capps responds to Judge Barranco's question about Ryan Dillon-Capps duty of loyalty to Ohana Growth Partners, LLC by informing Judge Barranco that Ryan Dillon-Capps was meeting his duty of loyalty by upholding Ohana Growth Partners, LLC contractual obligation to maintain compliance with PCI DSS Standards.  See ECF 23-11, at 15-16.

75      Judge Barranco redirects the topic from an employee's duty of loyalty to compliance with the court order and incorrectly asserts that the order is to give access back to Ohana Growth Partners, LLC. See ECF 23-11, at 16.

76      Ryan Dillon-Capps responds to Judge Barranco and explicitly states that the request is not asking to give access back to Ohana Growth Partners, LLC.  Stating that is a misunderstanding of the facts and is inclusive of several other statement that Ohana Growth Partners, LLC said which are also misleading.  See ECF 23-11, at 17.

77      Judge Barranco asks why Ryan Dillon-Capps has not complied with the court order, and Ryan Dillon-Capps tells the court that it would violate Ohana Growth Partners, LLC contractual obligations (Franchise Disclosure Document).  See ECF 23-11, at 18.

78      Judge Barranco asks Ryan Dillon-Capps what the work around is, but incorrectly asserts that Ohana Growth Partners, LLC does not have access. See ECF 23-11, at 18.

79       Ryan Dillon-Capps tells Judge Barranco that there have been plenty of opportunities/work arounds offered, and Ryan Dillon-Capps says that Justin Drummond was supposed to receive access on Monday June 10, 2024.  However, Justin Drummond didn't meet with Ryan Dillon-Capps as planned.  See ECF 23-11, at 18-19.

80      Judge Barranco asks Ryan Dillon-Capps why Justin Drummond would have to meet to receive access, and Ryan Dillon-Capps responds to inform Judge Barranco that Justin Drummond isn't de facto qualified and that there is a process to follow to qualify Justin Drummond.  See ECF 23-11, at 19.

81      Judge Barranco asks Ryan Dillon-Capps what reason Ryan Dillon-Capps would have to care if Ohana Growth Partners, LLC complies with their legal/contractual obligations.  Ryan Dillon-Capps informs Judge Barranco that Ohana Growth Partners, LLC is legally obligated to follow and maintain PCI Compliance standards.  See ECF 23-11, at 19-20.

82      Judge Barranco tells Ryan Dillon-Capps that Ohana Growth Partners, LLC is his employer and that he is an employee. Ryan Dillon-Capps agrees that he is an employee of Ohana Growth Partners, LLC. See ECF 23-11, at 20-21.

83      Judge Barranco repeats the question from before and asks Ryan Dillon-Capps why he should be concerned if Ohana Growth Partners, LLC is violating their legal obligations.   Ryan Dillon-Capps informs the court that Ryan Dillon-Capps name is on the compliance paperwork ,

Ryan Dillon-Capps is responsible for Ohana Growth Partners, LLC PCI Compliance (as their PCI Compliance Officer), and has certified Ohana Growth Partners, LLC compliance to the company's PCI Compliance accessors.  See ECF 23-11, at 21.

84    Judge Barranco asks if the accessors are the federal government.  Ryan Dillon-Capps informs Judge Barranco that Ohana Growth Partners, LLC contractually mandated PCI Compliance requirements come from their agreement with ABC Financial Services, as part the master agreement (and addendum).  Stating that the federal government is involved in the oversight and enforcement of the agreement.  See ECF 23-11, at 22.

85    Judge Barranco asks Ryan Dillon-Capps if the issue is in a violation of federal law, and incorrectly asserts that the order is to give access back to Ohana Growth Partners, LLC.  Ryan Dillon-Capps tells Judge Barranco that there is a misunderstanding and that the way it is being mandated is the issue.  Ryan Dillon-Capps repeats that he is not refusing many attempts have occurred and emphasized that one of those attempts was to give access to Justin Drummond.  See ECF 23-11, at 22.

86    Judge Barranco repeats the question to ask Ryan Dillon-Capps why Justin Drummond must meet with Ryan Dillon-Capps.  Ryan Dillon-Capps informs Judge Barranco that there are two ways to give someone access to the system.  The first is that their job requires and justifies access to the system (as mandated by Ohana Growth Partners, LLC legal obligations to maintain PCI Compliance), per least privilege (requirement 7 of PCI DSS v4 Standards).  Judge Barranco interrupts Ryan Dillon-Capps to never receive the second way.  See ECF 23-11, at 22-23.

87    Judge Barranco redirects questioning to Robert Brennen and asks Robert Brennen to explain the process to Judge Barranco.  Robert Brennen tells Judge Barranco that the step-by-step technical instructions have been provided.  See ECF 23-11, at 23-25.

88    Judge Barranco asks Ryan Dillon-Capps why he can't give access as directed. Ryan

Dillon-Capps states that as written the instructions tell Ryan Dillon-Capps to create accounts and

access for Phil Leadore without meeting least privilege requirements. Ryan Dillon-Capps

continues to say that there is a logistical issue with creating an account in a system that the order

explicitly states he can not access. See ECF 23-11, at 25-26.

89    Instead of addressing the conflicting orders issue, Judge Barranco changes the topic back

to violations of federal law and violation. Pressing Ryan Dillon-Capps to cite the basis of a

violation against a federal regulation or statute. See ECF 23-11, at 27.

90    Ryan Dillon-Capps says he would need time to review his notes, and Judge Barranco

says there is no time. Pushing for an immediate answer from Ryan Dillon-Capps. See ECF 23-

11, at 27.

91    Robert Brennen recites a step to Judge Barranco and Judge Barranco asks for a legal

argument against each individual step.

    1.    How does creating an account violate federal law? – Ryan Dillon-Capps says he

can't think of a violation off the top of his head to only create an account (not assign it to

someone or anything else – just simply create an account).

    2.    How does assigning the account created the Global Administrator group? – Ryan

Dillon-Capps says there is no such thing as a global administrator group. It is a role.

    3.    Why can't you send the password to Robert Brennen of an account you created

and assigned the Global Administrator Role? – Ryan Dillon Capps says that the issue is

giving access to someone else's account.

    4.    What concern is it of Ryan Dillon-Capps? Ryan Dillon-Capps says he would have

to give access to Phil Leadore's account to Phil Leadore.

5.    Judge Barranco asks who Phil Leadore is?  Ryan Dillon-Capps says Phil Leadore

is the person named on the order and adds that Phil Leadore has not responded to Ryan

Dillon-Capps attempts to reach him to provide access.

See ECF 23-11, at 27-29.

92    Judge Barranco asks Ryan Dillon-Capps if he is refusing to provide Ohana Growth

Partners, LLC access to their own account.  Ryan Dillon-Capps informs Judge Barranco that

Ohana Growth Partners, LLC has access to their account.  Robert Brennen interjects Global

Admin access, and Ryan Dillon-Capps states that Ohana Growth Partners, LLC already has

access to their account through their other administrators.  See ECF 23-11, at 29-30.

93    Judge Barranco asks why Ryan Dillon-Capps thinks Ryan Dillon-Capps should have

global admin access.  Ryan Dillon-Capps says he doesn't believe that he should have Global

Admin access and states that the documents (filed with letter to Judge Truffer) shows that he has

been trying to give Global Administrator access to other people (Rolando Pedraza(See ECF 16-2,

at 89-90), Karen Cepress(See ECF 16-2, at 91), Geoff VanMaastricht (See ECF 16-2, at 88), and

Justin Drummond (See ECF 16-2, at 39-40)).  See ECF 23-11, at 30.

94    Judge Barranco directs Ryan Dillon-Capps to give it away.  Ryan Dillon-Capps says that

he has no right to violate Ohana Growth Partners, LLC contractual obligations.  Judge Barranco

responds to Ryan Dillon-Capps to tell him that not violating Ohana Growth Partners, LLC

contractual obligations will result in Ryan Dillon-Capps being found in contempt of court.  See

ECF 23-11, at 30-31.

95    Judge Barranco redirects the topic back to Ryan Dillon-Capps required to provide a

violation of federal law.  See ECF 23-11, at 31-32.  Ryan Dillon-Capps says it is a complex issue

and begins to reference the FTC safeguard rule, but Judge Barranco interrupts and says that means nothing to him.  See ECF 23-11, at 32.

96      Ryan Dillon-Capps cites Federal Trade Commission v. Wyndham Worldwide Corporation, 799 F.3d 236 (3d Cir. 2015) as an example of violating least privileges by creating access to which there is no justification resulted in federal FTC enforcement, and that insecurely sharing account access is similarly problematic. See ECF 23-11, at 32-33.

97      After a recess, Robret Brennen states that Miles & Stockbridge looked up FTC v Wyndham and that the case is about Wyndham is because they failed to properly protect consumer data, and Judge Barranco adds that the case resulted from Wyndam improperly granting access without proper justification. Ryan Dillon-Capps informs the court that what they just states is the basis of least privileged access. See ECF 23-11, at 50-52.  The Third Circuit Court held that when a company is claiming to follow data security practices, like PCI Compliance, but then fails to implementing them; it constitutes a violation of unfair and deceptive trade practice laws to which the company can be held liable for.

98      Ignoring the applicability of the case, Judge Barranco reframes it as a question to Ryan Dillon-Capps and repeats the question about Ryan Dillon-Capps having a legitimate business need.  Ryan Dillon-Capps repeats that he doesn't believe he has a need for access and adds that he is not accessing the system.  See ECF 23-11, at 52.

99      The loop of Judge Barranco asking for Ryan Dillon-Capps to justify his access and Ryan Dillon-Capps asserting that he has given up his access continues. See ECF 23-11, at 53-54.

100      Judge Barranco asks who does have access, and Ryan Dillon-Capps says that Ohana Growth Partners, LLC Help Desk (See E109A, at 519-525) provides support to Ohana Growth Partners, LLC and  has access. See ECF 23-11, at 54-55.

101     Judge Barranco then remands Ryan Dillon-Capps claims to federal court.  See ECF 23-11, at 56.

RANDALL ROMES AFFIDAVIT

102     On June 14, 2024, at 12:18 PM, Robert Brennen, Steven Frenkil, and Victoria Hoffberger filed a complaint with count I falsely stating a refusal to provide access to Phil Leadore (See ECF 23-1, at 7), count II falsely stating a refusal to provide access to Phil Leadore (See ECF 23-1, at 8), count III falsely stating a refusal to provide access to Phil Leadore (See ECF 23-1, at 8).

103     On June 17, 2024, at 11:24 AM, Ryan Dillon-Capps is personally served (See ECF 23-10) for the lawsuit filed on June 14, 2024, at 12:18 PM.  See ECF 23-1, at 1. Personal service included the unsigned proposed order for the temporary restraining order and directed Ryan Dillon-Capps to provide access to Phil Leadore of Hartman Executive Advisors.  See ECF 16-5, at 3-4.

104     Excluding a few pages which are inclusive of events that occurred after June 13, 2024, Pages 1-160 are part of the evidence attached to the letter to Judge Truffer that was filed on June 18, 2024, at 1:18 PM. Among other things, Ryan Dillon-Capps letter to Judge Truffer stated Ohana Growth Partners, LLC had failed to disclose their legal obligations to maintain PCI Compliance, and that arbitrarily granting access would be a violation of those legal obligations. Ryan Dillon-Capps requested a hearing to provide clarification on Ohana Growth Partners, LLC legal obligations to modify the TRO/PI to allow Ryan Dillon-Capps to provide access without violating PCI Compliance Standards;

105     On June 20, 2024, at 12:24 PM, Robert Brennen, Steven Frenkil, and Victoria Hoffberger filed a Petition for Show Cause Order and Constructive Civil Contempt, on behalf of Ohana Growth Partners, LLC. See ECF 16-14, at 18. Judge Keith R. Truffer granted the petition and

signed the proposed order on June 21, 2024. It was docketed at 12:23 PM, and scheduled the

Show Cause hearing for June 26, 2024, at 9 AM. See ECF 16-5, at 10.

106     On June 24, 2024, Robert Brennen notified Ryan Dillon-Capps of the ruling denying

Ryan Dillon-Capps motion/letter and granting/scheduling of show cause for June 26, 2024. See

ECF 16-14, at 24. Robert Brennen claims that the Judicial Assistant of Judge Truffer had

emailed Ryan Dillon-Capps, but the only record of such an email appears to be an illegitimate

email.

107     On June 25, 2024, at 11:33 AM, (See ECF 16-15, at 36) Robert Brennen files a notice of

line filing for Randall Romes Affidavit, omitting all other attorneys in the filing. See ECF 16-

15, at 16. Randall Romes affidavit was filed without a signature. See ECF 16-15, at 22.

108     At 11:56 AM, on June 25, 2024, Robert Brennen emails Lauren Prinkey, Judicial

Assistant to the Honorable Keith R. Truffer, (See ECF 16-14, at 37) to file to the court Randall

Romes affidavit with an Adobe Certified signature that is generated through the Adobe

application locally. (See ECF 16-15, at 34) All other affidavits filed by Miles & Stockbridge P.C.

signed through DocuSign with a 3rd party verifiable signature, or a real ink signature:

    1.      DocuSign: Richard Hartman's June 14, 2024, Affidavit (See ECF 23-5, at 5);

    2.      DocuSign: Justin Drummond's June 14, 2024, Affidavit (See ECF 23-6, at 4);

    3.      DocuSign: Daniel Levett's July 3, 2024, Affidavit (See ECF 16-15, at 62);

    4.      Ink: Richard Hartman's August 19, 2024, Affidavit (See ECF 16-15, at 75)[1].

---

1

[1] Not materially relevant, and often forgot about. It is a statement of military service that ran the lookup using the wrong name. Unless explicitly included all other statements about affidavits are not inclusive of this affidavit.

109    Randall Romes Affidavit raises contains several other irregularities which are either

perjured statements, based on witness tampering, or reflect that Randall Romes did not write,

some or all, of the affidavit.  Including, but not limited to:

    1.    States that Randall Romes has reviewed Ryan Dillon-Capps letter to Judge

Truffer and that Ryan Dillon-Capps did not identify any specific PCI DSS requirements.

(See ECF 16-15, at 31)  Contradictory to the evidence attached to the letter to Judge

Truffer.  See ECF 16-2, at 67-69.

    2.    Copy and pasted recitation (See ECF 16-15, at 32) of Richard Hartman's affidavit

statement that Microsoft recommends Ohana have one more Global Admin and provides

a hyperlink to a Microsoft webpage that says Microsoft recommends having as few

global administrators as possible.  Additionally, the words that Richard Hartman was

quoting contained fragmented language and when matched to the webpage it says that

Microsoft recommends using a Privileged Authentication Administrator role instead of

the Global Administrator role. See ECF 23-5, at 2.

    3.    Copy and pasted recitation (See ECF 16-15, at 32) of Richard Hartman's affidavit

statement that Ohana Growth Partners, LLC is unable to manage any of it's Microsoft

365 application and data. See ECF 23-5, at 5.

    4.    There are no federal, state, or local law or regulations associated with PCI

Compliance. (See ECF 16-15, at 31)  A self-contradiction to Randall Romes previous

statement that PCI Compliance is contractually obligated. (See ECF 16-15, at 30)

Additionally, contradictory to:

        4.1    Consumer Protection Laws

2025-02-19

4.2     **Nevada (Nev. Rev. Stat. § 603A.215(1))** which codified enforcement of PCI Compliance: "A data collector that accepts a payment card in connection with the sale of goods or services shall comply with the current version of the Payment Card Industry Data Security Standards, as adopted by the Payment Card Industry Security Standards Council or its successor organization."

**4.3**     **Washington (Rev. Code Wash. § 19.255.020(2))** which provides liability protection for maintaining PCI DSS Compliance: *"A processor, business, or vendor that is certified compliant with the Payment Card Industry Data Security Standards by an annual security assessment conducted no more than one year prior to the breach is not liable under this section."*

4.4     In Massachusetts, **201 CMR 17.03(2)(b) and 201 CMR 17.04(1)** which codified enforcement of cyber security standards like PCI DSS:

> *(A)*     **201 CMR 17.03(2)(b):** *"every comprehensive information security program shall be consistent with the safeguards for protection of personal information and shall contain administrative, technical, and physical safeguards appropriate to...the size, scope, and type of business"*

> **(B)**     **201 CMR 17.04(1):** *"implementing and maintaining a comprehensive information security program."*

See ECF 31-2, at 18 -98 for more information of the applicable statutes for Washington, California, Tennessee, Florida, District of Columbia, Maryland, and the federal government.

110     During the June 27, 2024, hearing, Ryan Dillon-Capps asked Randall Romes to provide clarification on his affidavit, where it talked about not reading any statements or emails that

contains PCI Compliance regulatory codes.  The question was interrupted by Judge Barranco and

Ryan Dillon-Capps stated that he had provided multiple analysis to Ohana.  Stating Randall

Romes affidavit affirmed that he had not seen any of those. Ryan Dillon-Capps informed the

court that his question to Randall Romes was seeking clarification on what Randall Romes was

saying in his affidavit when he affirmed, Randall Romes did not see any of them when Randall

Romes reviewed the letter to Judge Truffer. Judge Barranco terminated Ryan Dillon-Capps

cross-examination of Randall Romes and redirected to Judge Barranco direct questioning of

Ryan Dillon-Capps.  See ECF 23-12, at 49-50.

111    The Affidavit of Legal Obligations was filed to the Circuit Court of Baltimore County on

September 25, 2024. (see ECF 31-2, at 120) Attached was 707 pages of supporting exhibits that

are cited in the affidavit.  Now attached to this affidavit as Exhibit 109A (E109A) and being filed

to the Court.

112    On October 22, 2024, at 7:07 PM, Ryan Dillon-Capps filed a Deposition request for the

Agents of Ohana Growth Partners, LLC.  See ECF 16-1, at 5

113    On October 24, 2024, at 8:53 AM, Robert Brennen, Steven Frenkil, Victoria Hoffberger,

and Jessica Duvall filed a Notice of Voluntary Withdrawal on behalf of Ohana Growth Partners,

LLC. See ECF 16-1, at 6; See ECF 16-5, at 55. The notice was filed after Ryan Dillon-Capps had

fully answered by motion, including an Affidavit of Plaintiff's Abusive Use of the Judicial

System with Exhibit A showing a line-by-line redaction of what Ryan Dillon-Capps disagreed

with; filed on September 23, 2024, at 11:43 PM in envelope 18126911.  See ECF 16-1, at 4.

114    Judge Stringer granted the Notice of Voluntary Withdrawal on November 2, 2024, and it

was docketed on November 6, 2024.  See ECF 16-5, at 55.  Judge Stringers granting of the

voluntary withdrawal, after Ryan Dillon-Capps had answered the complaint, was without

agreement from Ryan Dillon-Capps, and after Ryan Dillon-Capps had objected to it[ motion to strike filed 10/25/2024 at 8:17 AM in envelope 18554103; opposition filed 10/30/2024 at 9:02 AM in envelope 18611023] (See ECF 16-1, at 7).  Judge Stringers ruling is only within his judicial discretion pursuant to Md Rule 2-506(c) if Ryan Dillon-Capps claims, including those against the judiciary and the state of Maryland, can remain available for independent adjudication.

115    On November 15, 2024, Judge Stringer ruled Ryan Dillon-Capps deposition request was moot because the case had been dismissed.  See ECF 16-5, at 62.

116    On December 27, 2024, Ryan Dillon-Capps filed his remanded (See ECF 23-11, at 56) claims in the United Stated District Court for the District of Maryland.

## SUMMARY

117    In this affidavit, I focus on claims related to consumer protection and unfair and deceptive trade practices, separate from the issues addressed in my previous affidavit supporting reconsideration. Due to the complexity of my case and the risk of factual misinterpretation, I have segmented my claims to help the Court understand how they relate to the events. There are still additional violations that need to be addressed separately.

118    I want to make it clear that I had no control over the Defendants' actions. They made these choices on their own and against the advice of their own PCI Compliance Officer. As a direct result of their conduct, I have suffered harm. Additionally, there are criminal and ethical violations that warrant separate investigation beyond my personal claims, which should be addressed.

119    Several key claims remain unresolved, including state-based violations of the Americans with Disabilities Act (ADA), interference with my Family and Medical Leave Act (FMLA)

rights for two separate reasons, obstruction of evidence by Miles & Stockbridge P.C., misclassification of my exempt status resulting in unpaid overtime, and harm caused to my business, MXT3, LLC.

120    Judge Barranco remanded my claims to federal court, and Judge Stringer's dismissal guarantees that all my claims remain free and clear for adjudication by the federal district court. It was no secret that I had counterclaims against the Judiciary/State of Maryland. The Judiciary and the State of Maryland cannot selectively remand parts of my case while attempting to retain others to avoid adjudication. Moreover, by voluntarily remanding my claims to federal court, Maryland has waived its Eleventh Amendment immunity, as established in *Lapides v. Board of Regents of the University System of Georgia*, 535 U.S. 613 (2002).

121    Jurisdictional issues,  exceeding judicial discretion, and acts of judicial bias, favoritism, and fraud upon the court—none of which are protected under judicial, magisterial, or state immunity.  These are claims dismissed by the Court without an evidentiary hearing.

122    The Case was filed on December 27, 2024, with over 2,000 pages of exhibits that were accepted into the court docket, but I have yet to see the Court issue summons for the U.S. Marshals to serve any of the defendants.

123    The Defendants' egregious actions are well-documented through statements and supporting evidence. The ongoing harm I am experiencing is severe and irreparable, as detailed in my affidavit in support of reconsideration (*See* ECF 34-0), the firsthand expert affidavit of Caroline Dillon-Capps (*See* ECF 7-1), and the Affidavit of Financial Harm (*See* ECF 7-2)

124    I respectfully request the opportunity to clarify any remaining misunderstandings before the Court through an evidentiary hearing. I also reiterate that I have no control over the personal

service of process, as I have been granted in forma pauperis (IFP) status. I request that the Court

not punish me for the personal service that is beyond my control.

125    As a direct result of the Defendants' actions, I lost my vehicle on February 18, 2025, and

at imminent risk of losing my utilities, email access, bank account, phone service, and are

running low of food. Immediate intervention is necessary to restore the financial and

employment status quo before their actions lead to further compounding irreparable harm to

myself, my business, and others.

## DECLARATION OF AFFIRMATION

I solemnly declare and affirm under penalty of perjury, based on my personal knowledge, that
the contents of the foregoing affidavit and all accompanying exhibits are true and correct to
the best of my knowledge.

**February 19, 2025**

/s/ Ryan Dillon-Capps
**Ryan Dillon-Capps**

1334 Maple Avenue
Essex, Maryland 21221
ryan@mxt3.com
703-303-1113

Affidavit of Ryan Dillon-Capps in Support of Consumer Protection Violations & Deceptive and Unfair trade
Practices
Page # 33 of 33

2025-02-19