# IN THE
# UNITED STATES DISTRICT COURT
# FOR THE
# DISTRICT OF MARYLAND

| *Propria Persona* **RYAN DILLON-CAPPS** | Civil Action No. _____ |
|---|---|
| *Plaintiff,* vs. | Hon. _____ |
| **Ohana Growth Partners, LLC et al** | |
| *Defendants* | |

## AFFIDAVIT OF RYAN DILLON-CAPPS FINANCIAL HARM

I, Ryan Dillon-Capps, declare under penalty of perjury under the laws of the United States of America that the following statements are true and correct to the best of my knowledge and belief:

## INTRODUCTION

1 I submit this affidavit to provide a detailed account of the severe financial harm I have suffered as a direct result of the Defendants' actions. Their conduct has caused a substantial and devastating decline in my credit score, creating a trajectory I am unable to reverse without relief. This ongoing deterioration threatens foreclosure, bankruptcy, and other severe financial consequences. Compounding this crisis, I am the sole provider for my elderly mother and disabled brother, with no external support to counteract these escalating financial challenges.

2 Specifically, my credit score has plummeted from 750 to 450 within a six-month period and is projected to decline further to 300 within the next six months. This rapid and catastrophic credit degradation has resulted in estimated financial losses of between $2.96 million and $3.28 million under an immediate recovery scenario (450 credit score). If the delayed recovery scenario materializes (300 credit score), my financial losses are projected to increase to approximately $4.33 million.

3 The delayed recovery scenario exacerbates my financial damages by an additional $1.05 million to $1.37 million. This increase is driven by significantly higher borrowing costs, the total loss of credit access, and missed financial opportunities that would otherwise have been available to me. The ongoing impact of these losses has created an unsustainable financial situation that must be urgently addressed.

## CREDITWORTHINESS HARM

4       The Defendants' actions have inflicted catastrophic financial harm upon me, creating a cascade of losses that affect every facet of my financial stability. At a 450-credit score, I am subjected to an oppressive 14% interest rate for mortgage refinancing or new financing, compared to the 4% rate I previously qualified for. On a $400,000 mortgage, this disparity increased my monthly payments from $1,910 to $4,725, imposing an annual penalty of $33,780 and a cumulative three-year penalty of $101,340. For a $700,000 mortgage, the three-year penalty skyrockets to $177,345.

5       If my credit score were to fall further to 300, I would be entirely excluded from mortgage financing. This exclusion not only denies me the opportunity for homeownership but also forfeits $245,000 in potential home appreciation over seven years—an irreversible financial loss.

6       Simultaneously, my available credit lines are being slashed, with a 50% reduction dropping them from $200,000 to $100,000. This significant loss of financial flexibility imposes a 10% interest penalty on the remaining accessible credit, resulting in $30,000 in additional costs over three years. If my credit score declines further to 300, I lose all access to unsecured credit, leaving me entirely dependent on predatory alternatives such as payday loans at exorbitant 30% interest rates. Over seven years, this reliance accrues $420,000 in borrowing costs—an unsustainable and devastating financial burden.

7       The financial strain caused by the Defendants' actions has also led to two years of unemployment. Adjusted for a 3% annual inflation rate, the lost income is staggering. Furthermore, the inability to invest 25% of my lost income at a 5% annual return over a 10-year period has cost me $402,496 in missed investment growth under an immediate recovery scenario and $201,248 under a delayed recovery scenario.

8       The harm extends further, as I am unable to claim tax benefits such as mortgage interest deductions, depriving me of critical financial offsets. Now, as a result of sustained instability, I face imminent bankruptcy and foreclosure, with associated costs totaling $5,338.

9       In total, the Defendants' actions have inflicted financial losses ranging from $2.96 million to $4.33 million, depending on the recovery scenario. While immediate recovery might mitigate some damages, it would still leave me in a precarious financial position. A delayed recovery compounds these losses, permanently stripping me of credit access, increasing borrowing costs, and foreclosing financial opportunities.

10      "The total financial harm I have suffered from credit-related losses is currently estimated at $3.645 million under an immediate recovery scenario. However, if my financial trajectory worsens as projected over the next six months, this figure will increase to $4.33 million under a delayed recovery scenario. These losses include increased borrowing costs, complete loss of credit access, and missed financial opportunities, which have compounded to create a catastrophic and unsustainable financial burden."

## EMPLOYMENT

11      I am unable to travel more than five minutes away from home alone due to debilitating catatonia, dissociative episodes, and dissociative amnesia. These conditions have effectively ended my career and irreversibly altered my life. Without immediate and sustained treatment, the risk of malignant catatonia becoming fatal continues to escalate. Over recent months, I have experienced three distinct episodes, each signaling a worsening of my condition.

12      Data from numerous sources, supported by AI-aggregated analysis, indicates a 20-40% probability that I will not recover. Put plainly, there is a 20-40% likelihood that I will die within the next 10 years as a direct consequence of the Defendants' actions. However, focusing on recovery for the next five years could significantly improve my prognosis.

13      Assuming uninterrupted employment and a 10% annual salary increase, I would have earned $188,705.20 in 2024, $207,575.72 in 2025, $228,333.29 in 2026, $251,166.62 in 2027, and $276,283.28 in 2028, for a total of **$1,152,064.11** over five years. This represents a devastating loss of compensation directly attributable to my inability to work as a result of the harm inflicted upon me.

## MEDICAL COSTS

14      The medical costs associated with my conditions are challenging to predict with precision, but based on publicly available data, the following estimates provide a realistic range for anticipated expenses. I have limited the projections to five years, as the goal is to focus intensively on recovery during this period, with the hope that the outcomes beyond five years will be more within my control.

15      **Dissociative Amnesia** typically requires treatment for 1–5+ years, or potentially lifelong monitoring in severe cases. Annual costs for care include psychotherapy ($5,000–$25,000), medications ($600–$3,600), and

hospitalization if needed ($10,500–$70,000 per episode). Over five years, the total cost ranges from $28,000 to $493,000.

16    **Dissociative Episodes** generally persist for 2–10+ years, with annual expenses for psychotherapy ($5,000–$25,000), emergency interventions such as ER visits or crisis stabilization ($1,000–$10,000 per episode), and supportive services ($1,000–$10,000 annually). The five-year cost projection for dissociative episodes ranges from $12,000 to $90,000.

17    **Malignant Catatonia**, a potentially life-threatening condition, may require treatment lasting from six months to lifelong care. Annual costs include ICU stays ($25,000–$100,000 per episode), electroconvulsive therapy (ECT) at $15,000–$60,000 for 6–12 sessions, medications ($1,200–$6,000 annually), rehabilitation ($5,000–$20,000 annually), and long-term care if necessary ($48,000–$96,000 annually). The five-year cost projection ranges from $241,000 to $1,410,000.

18    When all conditions are considered together, with overlapping treatments and management strategies, the annual cost of care is estimated between $30,000 and $200,000. Over five years, this amounts to a total cost of $150,000 to $1,000,000, with a midpoint estimate of **$575,000**. These costs underscore the immense financial burden imposed by the Defendants' actions, compounding the devastating impact on my health and stability.

## CREDIT, EMPLOYMENT, AND MEDICAL COMBINED

19    The combined impact of diminished creditworthiness, lost employment opportunities, and overwhelming medical costs has resulted in an estimated total financial burden of $5.372 million. This figure represents the cumulative effect of intertwined consequences that have irreparably harmed my financial stability and overall quality of life.

20    The erosion of my **creditworthiness** has imposed severe restrictions on my ability to access affordable financial resources, resulting in exorbitant borrowing costs and the complete elimination of unsecured credit. This, in turn, has forced reliance on predatory lending practices that compound long-term debt obligations.

21    Simultaneously, the disruption to my **employment** has inflicted substantial lost income. My inability to work due to the physical and psychological toll of the Defendants' actions has not only deprived me of immediate earnings but has also robbed me of future career advancement and the financial growth that accompanies it. The projected income losses over the next five years, assuming uninterrupted employment, total $1.152 million.

22      Moreover, the **medical costs** associated with managing dissociative amnesia, dissociative episodes, and malignant catatonia are staggering. These conditions require intensive, multifaceted treatment including psychotherapy, medications, emergency interventions, and in some cases long-term care. The projected costs for managing these conditions over a five-year period range from $150,000 to $1,000,000, with a midpoint estimate of $575,000.

23      When combined, the estimated financial toll of these three intertwined factors—creditworthiness, employment, and medical costs—reaches an overwhelming total of ==$5.372 million==. This figure starkly illustrates the profound and compounding damages I have endured as a direct result of the Defendants' actions.

## UNPAID COMPENSATION

24      An additional component of the damages includes unpaid compensation, which has been a direct and quantifiable loss. Specifically:

- **Underpaid Compensation (January to July):** $13,753.90
- **Underpaid Compensation (August to December):** $94,352.60
- **Holiday Bonus:** $12,000
- **Refinance Bonus:** $100,000

25      In total, ==unpaid compensation amounts to $220,106.50==. This sum represents earnings I was contractually or customarily entitled to but did not receive due to the Defendants' actions.  This includes no calculations for unpaid overtime. They were just underpaying me.

## OTHER COSTS

26      The total damages, considering additional factors not previously covered, could significantly increase the overall financial and emotional toll to an even greater degree. A rough calculation of these additional impacts is outlined below:

**Impact on Retirement Savings**

27      The inability to work has halted contributions to retirement funds, typically around 10-15% of annual income. Assuming an average annual salary of $200,000, this translates to $20,000–$30,000 in missed contributions each year. With an expected investment growth rate of 5% annually, the compounded five-year loss amounts to approximately $110,000–$165,000 in diminished retirement savings.

**Non-Economic Damages**

28      Psychological trauma, emotional distress, and loss of quality of life are significant but harder to quantify. In comparable cases, non-economic damages often range from two to five times the value of direct economic losses. Using the midpoint of $575,000 in medical costs and $1.152 million in lost wages, non-economic damages could range between $3 million and $5.8 million based on severity and long-term effects.

**Legal and Administrative Costs**

29      Legal fees, expert testimony, and related administrative costs can average 10-20% of the total claimed damages. For a claim of $5.372 million, legal expenses are estimated between $537,000 and $1.07 million.

**Lost Opportunities**

30      Missed opportunities for career advancement, education, or entrepreneurial ventures represent an intangible yet valuable loss. If such opportunities could conservatively contribute an additional 20% income boost annually, this translates to $40,000 per year on a $200,000 salary, or $200,000 over five years, plus compounded opportunity costs.

**Future Risks and Long-Term Costs**

31      If treatment and recovery are delayed, ongoing medical expenses and financial instability could increase the total financial burden by an additional 20-30%. This could add $1–$1.6 million over a decade, particularly if the conditions worsen and necessitate more expensive long-term care solutions.

**Rough Estimate of Additional Losses**

Combining the above, the rough additional damages include:

  $110,000–$165,000 for retirement losses.

  $3 million–$5.8 million for non-economic damages.

  $537,000–$1.07 million for legal and administrative costs.

  $200,000 for lost opportunities.

  $1–$1.6 million for future risks.

==This results in a range of $4.847 million to $8.835 million in additional damages==.

## SUMMARY FINANCIAL HARM

32      The financial harm I have suffered as a direct result of the Defendants' actions is extensive, multifaceted, and continues to escalate.

CREDIT-RELATED LOSSES:

1. Current estimated harm: **$3.645 million** (immediate recovery scenario).

2. Projected harm within six months: **$4.33 million** (delayed recovery scenario).

These damages include exorbitant borrowing costs, loss of credit access, and missed financial opportunities.

EMPLOYMENT LOSSES:

33    Over the next five years, the inability to work due to my condition will result in lost wages totaling **$1.152 million**, compounded by missed retirement contributions and career growth opportunities.

MEDICAL COSTS:

34    The ongoing treatment for dissociative amnesia, dissociative episodes, and malignant catatonia is estimated at **$150,000 to $1,000,000** over five years, with a midpoint of **$575,000**.

UNPAID COMPENSATION:

35    I am owed **$220,106.50** in unpaid compensation, including underpaid wages, a holiday bonus, and a refinance bonus.

COMBINED TOTAL:

36    Including credit harm, lost employment, medical costs, and unpaid compensation, the total damages range from **$5.372 million** (midpoint estimate) to **$6.277 million**, depending on the recovery scenario.

## CLARIFICATION ON CALCULATIONS

37    It is important to clarify that the calculations and damages outlined above are solely related to the personal harm I have suffered. These figures do not account for any losses, damages, or impacts experienced by other individuals connected to me, such as my mother, brother, or wife, nor do they include any financial harm sustained by my company, MXT3 LLC. The estimates are specific to my own financial, medical, and emotional circumstances because of the Defendants' actions.

## EXHIBITS

38    All exhibits are presented in good faith. Any superfluous pages have been removed, and the remaining documents are marked with comments and highlights to aid the reader. The material content, however, remains intact and unaltered. It must be unequivocally stated that *any* material evidence presented against me is either taken

out of context, tampered with, or outright fabricated. Let me be clear: I am not claiming to be infallible. When I make a mistake, I acknowledge and correct it. That is a world apart from intentionally misleading, lying, or causing harm.

39      When I refer to "Defendants," it is entirely contextual. I expect the reader to possess the basic capacity to understand context—just as a parent referring to "the kids" differs from a school principal doing the same. Similarly, when a principal discusses "the kids" on a field trip versus "the kids" causing trouble in a hallway, the difference is obvious to anyone with basic reading comprehension skills. Unfortunately, Robert Brennen and the Maryland Judiciary have repeatedly demonstrated either a willful ignorance of these distinctions or an outright refusal to apply fundamental legal reasoning. We are left with only two conclusions: either these individuals lack even the most elementary understanding of context and legal concepts, or their statements serve as blatant evidence of misconduct.

40      Let me be explicit: there is only one type of evidence in this case—evidence that supports my position. My position is clear: everyone deserves the opportunity to demonstrate their intentions. Anything less is a distortion of justice.

## DEFENDANTS

41      Most of the Defendants have had ample opportunities to address these matters, and they should consider refraining from further comments, as financial, career, and reputational consequences are now among the least of their concerns. I encourage Randall Romes, Daniel Levett, Tanya Bernstein, and Thomas DeGonia II to engage with me directly to discuss the situation. While I am not the arbiter of truth or justice, I strongly support trust in the legal process and the professionals who facilitate it. If I lacked such trust, I might have opted to address these issues in the media, where public attention and outcry could have quickly mitigated my financial emergency. I remain open to discussion with any Defendant, but I caution that any outreach must be made with genuine good faith intentions.

## DECLARATION OF AFFIRMATION

I solemnly declare and affirm under penalty of perjury, based on my personal knowledge, that the contents of the foregoing affidavit and all accompanying exhibits are true and correct to the best of my knowledge.

| **December 24, 2024** | 1334 Maple Avenue<br>Essex, Maryland 21221 |
|---|---|
| /s/ Ryan Dillon-Capps<br>**Ryan Dillon-Capps** | ryan@mxt3.com<br>703-303-1113 |