### In the United States Court of Appeals for the Fourth Circuit

RYAN DILLON-CAPPS

**_Plaintiff-Appellant,_**

vs.

OHANA GROWTH PARTNERS, LLC _et al_

**_Defendants-Appellees._**

No. **25-1162**

On Appeal from the
U.S. District Court
Northern District of Maryland
No. 1:24-CV-3744

---

Plaintiff-Appellant Motion to Disqualify the Honorable Brendan Abel
Hurson with Vacatur and Reassignment

## Table of Contents

Table of Contents ................................................................................1
Table of Authorities ...........................................................................2
Introduction ........................................................................................3
Incorporated by Reference .................................................................4
Factual Background and Procedural Narrative leading to Statutory Disqualification
............................................................................................................4
Arguments ..........................................................................................10
  I    FRCP 60 ..................................................................................10
  II   28 U.S.C. § 455(A) ...............................................................12
  III  28 U.S.C. § 455(B)(1)-(5) ....................................................13
  IV  Due Process ...........................................................................16
  V    Abstention & Harm ...............................................................17
  VI  Extraordinary Circumstances ...............................................19
Conclusion ..........................................................................................20
Prayer for Relief..................................................................................22
Respectfully Submitted .......................................................................23

# Table of Authorities

## CASES

Aetna Life Insurance Co. v. Lavoie, 475 U.S. 813 (1986) --------------------------- 16

Aiken County v. BSP Division of Envirotech Corp.,866 F.2d 661 (4th Cir. 1989) 16

Berger v. United States, 295 U.S. 78 (1935) --------------------------------------- 20, 21

Caperton v. A.T. Massey Coal Co., 556 U.S. 868 (2009) -------------------- 14, 16, 19

Chicot County v. Sherwood, 148 U.S. 529 (1893) ------------------------------------- 18

Cohens v. Virginia, 6 Wheat. 264 (1821) ---------------------------------------------- 17

FTC v. Cement Inst., 333 U.S. 683 (1948) -------------------------------------------- 16

In re Murchison, 349 U.S. 133 (1955) --------------------------------------- 16, 17, 20

Kline v. Burke Constr. Co., 260 U.S. 226 (1922). ----------------------------------- 18

Liljeberg v. Health Servs. Acquisition Corp., 486 U.S. 847 (1988) -------- 11, 12, 20

Marshall v. Jerrico, Inc., 446 U.S. 238 (1980) -------------------------------- 15, 19

New Orleans Public Service, Inc. v. Council of City of New Orleans, 491 U.S. 350
     (1989) -------------------------------------------------------------------------- 17

Puckett v. United States, 556 U.S. 129 (2009) -------------------------------------- 20

Quackenbush v. Allstate Ins. Co., 517 U.S. 706 (1996) ------------------------------ 17

Tumey v. Ohio, 273 U.S. 510 (1927) ------------------------------------------- 14, 19

Willcox v. Consolidated Gas Co., 212 U.S. 19 (1909) ------------------------------- 18

Williams v. Pennsylvania, 579 U.S. 1 (2016) -------------------------------- 15, 16, 19

## STATUTES

18 U.S.C. § 1001 ------------------------------------------------------------------------ 14

18 U.S.C. § 1519 ------------------------------------------------------------------------ 15

18 U.S.C. § 1621 ------------------------------------------------------------------------ 14

18 U.S.C. § 2071 --------------------------------------------------------------------- 14, 15

28 U.S.C. § 144 --------------------------------------------------------------------------- 3

28 U.S.C. § 453 ------------------------------------------------------------------------ 14

28 U.S.C. § 455 ----------------------------------------------------------------- 3, 12, 15, 16

## RULES

FRCP 10 ------------------------------------------------------------------------------------ 4

FRCP 60 ------------------------------------------------------------------------------ 10, 11

## OTHER AUTHORITIES

The Federalist No. 10 (James Madison) (J. Cooke ed., 1961) ------------------------ 14

## Introduction

Pursuant to 28 U.S.C. § 455 and FRCP 60, Plaintiff-Appellant Ryan Dillon-Capps moves to disqualify the Honorable Brendan Abel Hurson from all further proceedings in this matter and for reassignment beyond the District of Maryland and the reputational range of the parties and institutions implicated. In support of this motion, Plaintiff-Appellant submits three sworn affidavits, each containing material factual conclusions substantiated by dozens of exhibits. These affidavits independently establish that Judge Hurson is both legally and ethically disqualified under § 455. Taken together, the record surpasses any reasonable threshold for mandatory disqualification.

Plaintiff-Appellant further notes that he is presently unable to file a motion for disqualification pursuant to 28 U.S.C. § 144, as proceedings in the U.S. District Court for the District of Maryland remain stayed pending resolution of this interlocutory appeal. Should those proceedings resume or the stay be lifted, Appellant hereby gives formal notice of his intent to promptly file a motion under § 144 and to formally name Brendan Abel Hurson as a defendant in this action, without judicial immunity. This notice is provided to preserve procedural integrity and ensure timely compliance with applicable disqualification statutes.

Incorporated by Reference

Pursuant to FRCP 10(c), the following affidavits are incorporated by

reference as though fully set forth herein:

(1)     Affidavit of Ryan Dillon-Capps in Support of Brendan Abel Hurson
        Mandatory Disqualification;
(2)     Affidavit of Ryan Dillon-Capps in Support of Court Record Tampering and
        Obstruction;
(3)     Affidavit of Ryan Dillon-Capps in Opposition to Brendan Hurson
        Plausibility;
(4)     Affidavit Ryan Dillon-Capps in Support of Injunction Pending Appeal
        (Circuit ECF 4-2);
(5)     Affidavit of Caroline Dillon-Capps (Circuit ECF 22-5);
(6)     Affidavit of Ryan Dillon-Capps Financial Harm (Circuit ECF 22-6);
(7)     Affidavit of Ryan Dillon-Capps in Support of Motion to Reconsider partial
        Dismissed Claims on 2025 January 8th (Circuit ECF 19-2).
(8)     Affidavit of Ryan Dillon-Capps in Support of Plaintiff's Emergency Motion
        for Reconsideration of Denial of Temporary Restraining Order and Preliminary
        Injunction and Request for Expedited Review (District ECF 34-0)
(9)     Affidavit of Ryan Dillon-Capps in Support of Consumer Protection
        Violations & Deceptive and Unfair Trade Practices (District ECF 38-1)
(10)    Affidavit of Ryan Dillon-Capps in Support of Abusive use of the Judicial
        System (District ECF 40-1)

Factual Background and Procedural Narrative
leading to Statutory Disqualification

When I, Ryan Dillon-Capps, first read the January 8, 2025, ruling (*District

ECF 18-0*), my initial reaction was not to question whether Judge Hurson was

biased against me, but whether he was biased in my favor. The ruling contained

self-contained, irreconcilable contradictions that suggested one of two possibilities: either Judge Hurson was a legal strategist deliberately ruling poorly in order to provoke a response that would strengthen my legal position as he understood it, or he had conducted only a superficial review of the record—relying almost entirely on *District ECF 1-0*—and concluded that while I had a legitimate case, I was exaggerating its scope, and he was attempting to limit the claims for what he perceived Both possibilities seemed influenced by what I came to refer to as an unknown X factor—an external or unspoken force preventing Judge Hurson from ruling on the actual filings and their merits. By the time this case reached the Court of Appeals, the X factor had become my leading theory. X either represented a frustrated Judge Hurson, who believed the case was exaggerated and had become so committed to that belief that his own professional pride obstructed any meaningful engagement with the claims, or it represented a message: that whatever X was, it rendered Maryland structurally incapable of adjudicating this case, and that appeal was inevitable because the rulings themselves could not survive review.

The problem, however, is that one cannot litigate around an unknown variable. I could not construct legal argument around motivations that could only be inferred—such as judicial pride or silent institutional pressure—while knowing that the substantive result was a case that could not receive a fair trial in Maryland.

Refining my arguments as I progressed, I focused on reducing the page count and distilling the issues as concisely as possible. That effort culminated in a near 30-page informal brief that resulted in the appointment of counsel, joined filings, and the vacatur of all rulings—multiple times. However, this did not address the structural issue of Maryland itself, and I deliberately avoided drawing attention to the X factor without knowing what it was. Instead, I deconstructed the rulings and reframed them as contradictions—so voluminous and internally inconsistent—that I could present a neutral, structured argument supporting reassignment out of Maryland without ever needing to identify X directly.

During that process, previous arguments were also refined. I was able to present five arguments in under ten pages, resulting in appointment of counsel, joinder, vacatur, and potentially even reassignment. My argument against Judge Hurson's invocation of the *Rooker-Feldman* doctrine consisted of a single paragraph, followed by a second paragraph that pointed out the irony—not as an accusation, but as a subtle strike against the overall plausibility of the ruling. The tone remained extremely neutral throughout.

In the final days leading up to the deadline, I began identifying issues that I could no longer explain through a neutral lens. As I worked to resolve loose ends and complete the filing, the document ballooned in size while I analyzed and reanalyzed each issue—trying to find a way to explain the record without

concluding that Judge Hurson was acting intentionally and maliciously against me. By that point, however, I had already moved beyond neutrality in several arguments—not because I wanted to escalate, but because continued restraint would have been toothless, and I was finding it increasingly difficult to excuse away the facts.

After filing the informal brief, I continued working to reconcile Judge Hurson's rulings in a way that would not require me to fundamentally alter my posture and assert formal accusations. The amended formal complaint, which does contain such formal allegations, is evidence that I ultimately failed in that effort. In attempting to resolve the rulings in good faith, I reviewed and synthesized thousands of pages of draft materials—each containing variations of facts and interpretations that had been revised, merged, and tested against newly discovered facts. That process produced more than what was submitted in the amended informal brief. In the end, only one set of possibilities remained, and each required the conclusion that Judge Hurson had acted in violation of his Judicial Oath. Because that conclusion was so substantively tied to the known facts and the procedural posture, it was filed as completely and carefully as possible.

This process has since produced the three attached affidavits, each continuing the work of refining prior conclusions into the most accurate, factually supported narrative possible—one that fits all known facts and excludes none.

Each affidavit reflects conclusions that evolved only in response to evidence. At every stage, I remained open to correction. Had even a single fact emerged that would have altered the course of those conclusions, I would have revised the argument accordingly—as I had done before.

The facts concerning Judge Hurson's connections with his alma mater, former employer, and his institutional relationships with Robert S. Brennen and the Maryland Chapter of the Federal Bar Association are individually and collectively sufficient to warrant disqualification, vacatur, and reassignment of this case. However, Brendan Hurson went far beyond issuing a few favorable rulings to a former colleague or institutional peer. At minimum, there must be a set of facts— known or not yet known—that explains how and why he would immediately engage in conduct so severe that it places him at serious risk of criminal liability and incarceration.

One plausible explanation is that Judge Hurson owes his appointment to the District Court to one or more of the named defendants. That possibility alone could explain the motivation behind rulings and conduct that would otherwise defy explanation. But as more details surfaced—particularly the four clerks' internal objections, their efforts to mitigate the impact of Judge Hurson's actions, and the visible signs of institutional resistance under apparent duress.

Therefore, the updated analysis of the situation must account for why Judge Hurson would engage in overt acts involving multiple individuals, any one of whom could testify or corroborate what occurred. To evaluate that possibility, I reviewed the financial disclosure reports for every federal judge in Maryland, Virginia, West Virginia, North Carolina, and South Carolina, and then expanded my review through random sampling from other circuits nationwide to establish a neutral reference point for evaluating reporting patterns and identifying anomalies.

In hindsight, that broader sampling may not have been necessary—because Judge Hurson's own financial disclosures reflect a seven-figure number of reasons for his conduct. The anomaly aligns with a plausible explanation: that Robert S. Brennen and Miles & Stockbridge not only had the means and influence, but also stood to benefit directly from placing another judge of their choosing in a position of institutional authority.

After completing the rigorous scrutiny required for his appointment and being sworn in as a district judge in October 2023, it is not unreasonable to infer that the final months of that year—November and December—received minimal oversight, creating a golden opportunity for Judge Hurson to receive a substantial, undisclosed payment and immediately invest it, thereby avoiding the appearance of a sudden influx or spike in new account activity on his 2024 disclosure.

At this stage, we have established a who, what, when, where, and why—a framework developed entirely from the available facts, without contradiction or omission. Importantly, I already had multiple pathways to success on appeal without needing to allege misconduct or add another defendant. Pursuing formal accusations against a sitting federal judge carries real personal and legal risks, and the marginal benefit to my case from doing so—absent overwhelming evidence— would have been negligible.

The liberty and financial freedom of the defendants is in the balance. The proverbial snowball has grown so large that a single material loss at this stage will begin a cascade of consequences that will be irreversible for many of them— spanning this civil action, potential class action litigation, and eventual criminal exposure, all under increasing public scrutiny. That creates a powerful incentive for defendants to exert pressure on anyone they can—including judicial officers— to prevent this case from progressing any further.

## Arguments

### I    FRCP 60

FRCP 60(a) permits a court to correct clerical mistakes, oversights, and omissions, but any such correction made during the pendency of an appeal requires leave of the appellate court. By contrast, FRCP 60(b)(1) allows a party to seek relief from a judgment based on "mistake, inadvertence, surprise, or excusable

neglect," without imposing a similar requirement for leave. Moreover, FRCP

60(d)(1) affirms that FRCP 60 "does not limit a court's power to entertain an

independent action to relieve a party from a judgment, order, or proceeding," and

FRCP 60(d)(3) expressly authorizes a court to "set aside a judgment for fraud on

the court." This power exists independently of FRCP 60(b)(3), which also

recognizes "fraud" as a valid basis for relief.

Taken together, these provisions demonstrate that FRCP 60 operates

independently of an appeal, and that Congress has limited a district court's ability

to alter records during an appeal in some circumstances but has not imposed

similar limits on a court's duty to address fraud. FRCP 60(d)(3) in particular

establishes that courts may—and indeed must—act on their own to correct

judgments tainted by fraud on the court, regardless of whether a party has filed a

formal FRCP 60(b) motion.

In Liljeberg v. Health Services Acquisition Corp., 486 U.S. 847 (1988), the

petitioner reached the Supreme Court following a motion under FRCP 60(b),

despite the absence of any allegation of fraud on the court. By contrast, in this

case, I have arrived at this Court with fraud on the court established during the

appellate process. If the Court is reluctant to act independently under FRCP

60(d)(3), I respectfully move for relief pursuant to FRCP 60(b)(2) and FRCP

60(b)(6). The Supreme Court in Liljeberg confirmed that FRCP 60(b)(6) may be

applied where the underlying conduct involves the district court judge, further

affirming its availability as a remedy in circumstances such as these.

## II    28 U.S.C. § 455(a)

> "Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned."

The Supreme Court held in *Liljeberg v. Health Servs. Acquisition Corp.,* 486

U.S. 847, 848-849 (1988) that "[a] violation of § 455(a)—which requires a judge

to disqualify himself in any proceeding in which his impartiality might reasonably

be questioned—is established when a reasonable person, knowing the relevant

facts, would expect that a judge knew of circumstances creating an appearance of

partiality, notwithstanding a finding that the judge was not actually conscious of

those circumstances." The Supreme Court determined that vacatur was a proper

remedy for the § 455(a) violation.

The Supreme Court also cautioned against vacating judgments after they

have become final but explained that where the "appearance of partiality" is

"convincingly established" and the "motion to vacate was filed as promptly as

possible" then the "appropriate remedy [is] to vacate the [] judgment." See

*Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 852 (1988).

FRCP 60(c)(1) requires motions under FRCP 60(b)(1), (2), and (3) must be

filed within one year, while no specific time limit is imposed for motions under

FRCP 60(b)(4), (5), or (6), so long as they are filed within a reasonable time. This motion—seeking disqualification with resulting vacatur based on either fraud on the court or under FRCP 60(b)(2) and (6)—has been filed within days or weeks of discovering the relevant facts. The speed of this filing reflects diligence, not delay. Given the volume of affidavits and supporting evidence submitted, it is not reasonable to argue that the standard of "convincingly established" has not been met.

## III    28 U.S.C. § 455(b)(1)-(5)

If the connections in question were limited to Judge Hurson's time as a student—or even to his years as an adjunct professor—concerns about impartiality might still fall short of mandatory disqualification. However, Judge Hurson served as the keynote speaker at the University of Maryland School of Law's 2024 commencement during the same period of time as the state litigation and overlapping defendants tenure at the university.

From 2021 onward, Judge Hurson's rapid elevation from federal attorney to magistrate judge to Article III district judge occurred in parallel with his active professional collaboration with Robert S. Brennen, Miles & Stockbridge P.C., and the Maryland Chapter of the Federal Bar Association. That rise also coincided with the rapid elimination of significant personal liabilities and then the commencement

of substantial new investments, all within weeks of being sworn in—without any documented or accounted source of income to explain the funds.

In *Tumey v. Ohio*, 273 U.S. 510, 523 (1927), the Court concluded that the Due Process Clause incorporates the common-law rule that a judge must recuse himself when he has "a direct, personal, substantial, pecuniary interest" in a case. As the Court later explained in *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 876 (2009), this rule reflects the enduring constitutional maxim that "[n]o man is allowed to be a judge in his own cause; because his interest would certainly bias his judgment, and, not improbably, corrupt his integrity." *The Federalist No. 10*, at 59 (James Madison) (J. Cooke ed., 1961).

More concerning still, Judge Hurson took direct actions to protect the defendants, including:

(1)  Falsifying the official docket by altering the contents of the court record, in violation of 18 U.S.C. § 2071;

(2)  Falsifying the official docket by introducing materials recovered from a trash receptacle into the court record via the means of providing them to be added, in violation of 18 U.S.C. § 1001;

(3)  Intentionally making materially false statements in judicial orders that misrepresented facts, procedural history, and claims in violation of his judicial oath under 28 U.S.C. § 453 and subsequently 18 U.S.C. § 1621;

(4)  Directly manipulating the court record by instructing the Clerk's Office to omit properly submitted filings from the electronic docket without a court order, in further violation of 18 U.S.C. § 2071;

(5)  Destroying, altering, or falsifying court records with the intent to impede or obstruct the commencement of investigations into the concealment of systemic corruption, in violation of 18 U.S.C. § 1519.

The actions taken by Judge Brendan A. Hurson not only demonstrate a clear and favorable bias toward the defendants and suggest that he has a personal interest in the outcome of these proceedings, but they also constitute an independent basis for mandatory disqualification under 28 U.S.C. § 455. Judge Hurson is now both a material witness to disputed facts and a pending defendant, which renders his continued involvement in this case procedurally impermissible and structurally prejudicial.

The Supreme Court held in *Williams v. Pennsylvania*, 579 U.S. 1, 16 (2016), that when a judge has had prior significant, personal involvement in a case, the risk of actual bias rises to a level that violates due process. The Court emphasized that due process entitles a litigant to "a proceeding in which he may present his case with assurance" that no member of the court is "predisposed to find against him." *Marshall v. Jerrico, Inc.*, 446 U.S. 238, 242 (1980).

## IV     Due Process

In *Williams v. Pennsylvania*, 579 U.S. 1, 13 (2016), the Supreme Court held

that "It is important to note that due process 'demarks only the outer boundaries of

judicial disqualifications,'" quoting *Aetna Life Insurance Co. v. Lavoie*, 475 U.S.

813, 828 (1986).

In Caperton v. A.T. Massey Coal Co., 556 U.S. 868, 876 (2009), the

Supreme Court reaffirmed that "[a] fair trial in a fair tribunal is a basic requirement

of due process." See *In re Murchison*, 349 U.S. 133, 136 (1955). However, the

Court also recognized that "most matters relating to judicial disqualification [do]

not rise to a constitutional level." *FTC v. Cement Inst*., 333 U.S. 683, 702 (1948).

The Caperton Court made clear that while the statutory grounds for disqualification

under 28 U.S.C. § 455 remain broad, a due process violation occurs where a

judge's interest poses a "serious risk of actual bias."

In *Aiken County v. BSP Division of Envirotech Corp.*, the Fourth Circuit

acknowledged that "[t]he Due Process Clause protects not only against express

judicial improprieties but also against conduct that threatens the 'appearance of

justice.'" 866 F.2d 661, 678 (4th Cir. 1989) (citing *Aetna Life Ins. Co. v. Lavoie*,

475 U.S. 813, 825 (1986)). In *Aetna*, the Supreme Court emphasized that the

Clause "may sometimes bar trial by judges who have no actual bias and who

would do their very best to weigh the scales of justice equally between contending parties," quoting its earlier ruling in *In re Murchison*, 349 U.S. 133, 136 (1955).

It cannot be understated that Judge Hurson violated my Right to Petition the Government for Redress, Right to Impartial Tribunal, Right to Equal Protection Under the Law, Right to Due Process.

## V    Abstention & Harm

Generally, "federal courts have a strict duty to exercise the jurisdiction that is conferred upon them by Congress*." Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716 (1996). In *New Orleans Public Service, Inc. v. Council of City of New Orleans*, 491 U.S. 350, 358–59 (1989), the Supreme Court reaffirmed that "federal courts lack the authority to abstain from the exercise of jurisdiction that has been conferred." A federal court has "no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given. The one or the other would be treason to the Constitution." Id. (quoting *Cohens v. Virginia*, 6 Wheat. 264, 404 (1821)).

In this case, Judge Hurson did not merely refuse to exercise jurisdiction over Plaintiff's properly presented claims. He also ruled in the complete absence of jurisdiction, improperly overturning a voluntary dismissal that had vitiated the underlying state court action. See District ECF 18-0, at 16. Either abdication or usurpation of jurisdiction independently violates constitutional principles. To

commit both simultaneously constitutes the type of extraordinary circumstance warranting vacatur and reassignment under controlling law.

Federal courts are "bound to proceed to judgment and to afford redress to suitors before them in every case to which their jurisdiction extends. They cannot abdicate their authority or duty in any case in favor of another jurisdiction." *Chicot County v. Sherwood*, 148 U.S. 529, 534 (1893) (citations omitted). Once properly invoked, a federal court's duty to exercise jurisdiction is non-discretionary: "When a Federal court is properly appealed to in a case over which it has by law jurisdiction, it is its duty to take such jurisdiction.... The right of a party plaintiff to choose a Federal court where there is a choice cannot be properly denied." *Willcox v. Consolidated Gas Co*., 212 U.S. 19, 40 (1909) (citations omitted).

Underlying these principles is the fundamental constitutional maxim that it is Congress—not the Judiciary—that defines the scope of federal jurisdiction within the constitutional bounds. See *Kline v. Burke Constr. Co.*, 260 U.S. 226, 234 (1922).

Brendan Abel Hurson's actions were not merely erroneous; they were unconstitutional. Despite being fully aware of the catastrophic financial, physical, mental, and reputational harm already sustained, Judge Hurson continued to protect the defendants, knowingly causing new and escalating harm. His rulings disregarded my fundamental rights, ignored the severity of the ongoing injuries,

and ultimately placed my own life at further risk. Such conduct represents not only a fundamental breach of judicial duty but a structural violation of due process that minimally demands disqualification, vacatur, and reassignment to preserve the integrity of these proceedings. See Circuit ECF 4-2, 33-42; Circuit ECF 22-5; Circuit ECF 22-6; District ECF 34-0;

## VI    Extraordinary Circumstances

In *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 874 (2009), the Court found it impermissible that Justice Benjamin denied a motion to recuse despite serious concerns about bias.  Similarly, in *Williams v. Pennsylvania*, 579 U.S. 1, 14–16 (2016), the Court held that Chief Justice Castille's participation in deliberations concerning a case in which he had prior personal involvement violated due process.

In both cases, the Supreme Court deemed such conduct inexcusable, emphasizing that fairness, equal protection, and procedural due process require "an opportunity to present [one's] claims to a court unburdened by any 'possible temptation.'" *Tumey v. Ohio*, 273 U.S. 510, 532 (1927). Due process further guarantees the right to "a proceeding in which [one] may present [one's] case with assurance that no member of the court is predisposed to find against him." *Marshall v. Jerrico, Inc.*, 446 U.S. 238, 242 (1980).

The Supreme Court has also made clear that a due process violation arising from the participation of an interested judge is a structural defect "not amenable" to harmless-error review, regardless of whether the judge's vote was dispositive. Puckett v. United States, 556 U.S. 129, 141 (2009) (emphasis deleted).

<u>Conclusion</u>

"[J]ustice must satisfy the appearance of justice." *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 864 (1988) (citing *In re Murchison*, 349 U.S. 133, 136 (1955)).

This principle inherently assumes that justice is not merely aspirational—it is recognizable. And just as we can identify justice when it is present, we are equally capable of recognizing when it is absent. When I believed there was a possibility of prejudice against the defendants, I faced an ethical challenge. Had that belief proven true, I would have been compelled to act, even at the expense of my own legal position. I find myself increasingly burdened by obligations that others appear too willing to ignore.

In *Berger v. United States*, 295 U.S. 78, 88 (1935), the Supreme Court emphasized that a United States Attorney is a representative of a sovereign "whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done." The Court described the government attorney

as "the servant of the law," whose duty is to ensure that "guilt shall not escape or innocence suffer." While a prosecutor may act with "earnestness and vigor," he "is not at liberty to strike foul blows." Rather, "it is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one."

The same ethical standard applies to every attorney. All are servants of the law. And when an attorney is elevated by the sovereign to adjudicate disputes—whether as a prosecutor, public official, or judicial officer—that position carries no entitlement to personal benefit. The duty is not owed to the judge, the judiciary, or private interests, but to the sovereign itself, whose highest obligation is to the people and the rule of law.

As in *Berger*, the circumstances here demonstrate that prejudice to the cause is so highly probable that there is no justification for assuming its nonexistence. The misconduct by Judge Hurson and the defendants is neither slight nor confined to a single instance. Rather, it is pronounced and persistent, with a cumulative effect that is both substantial and disqualifying—an effect that cannot be disregarded as inconsequential. *See Berger v. United States*, 295 U.S. 78, 89 (1935).

Accordingly, Plaintiff-Appellant respectfully requests that this case be reassigned outside of the Second, Third, Fourth, Fifth, District of Columbia, and

Federal Circuits to a neutral circuit with recognized experience in adjudicating cases involving civil rights, conspiracy, labor and employment retaliation, judicial misconduct, and fraud on the court. Preferably, this case should be reassigned to the Northern District of California (Ninth Circuit), or the Northern District of Illinois (Seventh Circuit) to ensure the integrity and impartiality of further proceedings.

<u>Prayer for Relief</u>

**WHEREFORE**, for the foregoing reasons, Plaintiff-Appellant Ryan Dillon-Capps respectfully requests that this Court:

(1) **Order the disqualification** of Judge Brendan Abel Hurson pursuant to 28 U.S.C. § 455;

(2) **Order the preservation** of Plaintiff-Appellant's in forma pauperis status and **vacate all other rulings** entered by Judge Hurson;

(3) **Order the reassignment** of this case to the United States District Court for the Northern District of California (Ninth Circuit), or the Northern District of Illinois (Seventh Circuit) to ensure the integrity and impartiality of further proceedings;

(4) **Grant such other and further relief** as may be necessary and appropriate to fully remedy the constitutional violations, structural defects, and extraordinary circumstances established in this record, and to preserve the

integrity of these proceedings and the public's confidence in the administration of justice.

<u>Respectfully Submitted</u>

**April 29, 2025**

/s/ Ryan Dillon-Capps
**Ryan Dillon-Capps**

1334 Maple Avenue
Essex, Maryland 21221
ryan@mxt3.com
703-303-1113