# Bylaws - Federal Bar Association MD

 fbamd.org/bylaws



## Bylaws

**MARYLAND CHAPTER OF THE FEDERAL BAR ASSOCIATION, INC.**

**BYLAWS**

ARTICLE 1

NAME AND NATURE OF ORGANIZATION

Section 1. <u>Name</u>. The name of this organization is the Maryland Chapter of the Federal Bar Association, Inc.

Section 2. <u>Charter</u>. The Maryland Chapter of the Federal Bar Association, Inc. is chartered by the Federal Bar Association (hereinafter called the "**Association**").

Section 3. <u>Adoption of Constitution and Bylaws</u>.   The Constitution and Bylaws of the Association hereby is adopted and incorporated herein by reference insofar as it may be applicable to the business of the Maryland Chapter of the Federal Bar Association, Inc.

ARTICLE II

OFFICES

Section 1. <u>Principal Office</u>. The principal office of the Maryland Chapter of the Federal Bar Association, Inc., a Maryland non-stock corporation, (hereinafter called the "**Corporation**") shall be located in the State of Maryland.

Section 2. <u>Other Offices</u>. The Corporation may also have offices at such other places, both within and without the State of Maryland, as the Board of Directors may from time to time determine or the business of the Corporation may require.

ARTICLE III

MEMBERS

Section 1. <u>Number of Members</u>. There shall be no restriction upon the number of members who may belong to the Corporation.

Section 2. <u>Active Members</u>. Any person eligible for membership under Section 1 of Article IV of the Constitution of the Association may become an active member of the Corporation provided that the person (i) is admitted to the practice of law before a Federal court or a court of record in any of the several states, commonwealths, territories, or possessions of the United States or in the District of Columbia, and (ii) is or has been an officer or employee of the United States or the District of Columbia and, while so serving, performs or performed the work of a legislator, judge, lawyer, or member of a quasi-judicial board or commission, or has a substantial interest in or participates in the area of Federal law. The Corporation shall not refuse membership to any member of the Association who is in good standing and who resides, practice, or is employed in the Corporation's geographic area. Active members shall be entitled to all the rights and privileges of this Corporation, including the right to vote and hold elective offices, unless otherwise provided.

Section 3. <u>Associate Members</u>. Any person admitted to practice law before a court or administrative tribunal of a country other than the United States and any law student who actively is enrolled at an accredited law school may become an associate member of the Corporation. Associate members shall be entitled to all rights and privileges of the Corporation except that of voting or holding office.

Section 4. <u>Honorary Members</u>. The following individuals are eligible for honorary membership: (i) the Chief Justice of the Supreme Court of the United States and Associate Justices of the Supreme Court of the United States; (ii) any person who has rendered conspicuous service to the United States Government or to the Association who is selected by a vote of three-fourths of the members of the Board of Directors of the Association; and

(iii) any judge of the Federal courts established under Article III of the Constitution of the United States, any United States Bankruptcy Judge, and any United States Magistrate Judge that services in Maryland in active, senior, or retired status that is selected by a vote of two-thirds of the members of the Corporation. Honorary members shall be exempt from payment of any fees whatever and shall be entitled to all rights and privileges of the Corporation except that of holding office.

Section 5. <u>Application for Membership</u>. A person may become a member by an application to the National Council of the Association, with an indication on such application that the person desires to become a member of the Corporation, and the payment of applicable dues and admission fees as required by the Constitution and Bylaws of the Association.

Section 6. <u>Resignation</u>. Any member may withdraw from the Corporation by giving written notice of such intention to the Secretary, which notice shall be presented to the Board of Directors by the Secretary, at the first meeting after receipt thereof.

Section 7. <u>Expulsion</u>. A member may be expelled for cause such as a violation of any of the Bylaws or rules of the Corporation or conduct prejudicial to the best interest of the Corporation, as well as any conduct that satisfies the definition of good cause in Section 3.A of the Bylaws of the Association. Expulsion shall be by two-thirds vote of the membership of the Board of Directors at any meeting called for such purposes. Such member shall be notified of the intention of the Board of Directors to consider that member's expulsion and shall be given the opportunity to present a defense before the Board of Directors. Such notice shall have been mailed by registered mail to the member under consideration for expulsion at his or her last recorded address at least fifteen (15) days before final action is taken thereon; this statement shall be accompanied by a notice of the time and place where the Board of Directors is to take action. Any member expelled from the Association shall be expelled automatically from the Corporation.

Section 8. <u>Annual Meeting</u>. The Corporation shall hold an annual meeting of its members in June of each calendar year for the purpose of the transaction of the Corporation's business as the President may direct and for the transaction of other business as may be recommended by the Board of Directors, the membership, the Association, or as may be required by the Bylaws. If the day designated falls upon a legal holiday, the meeting shall be held on the next succeeding secular day not a holiday. Except as otherwise provided herein

or by statute, any business may be considered at an annual meeting without the purpose of the meeting having been specified in the notice. Failure to hold an annual meeting does not invalidate the Corporation's existence or affect any otherwise valid corporate acts.

Section 9. <u>Special Meeting</u>. At any time in the interval between annual meetings, a special meeting of the members may be called by the Chair of the Board, by the President, by a majority of the members of the Board of Directors, or by vote of one-fourth of the members of the Corporation. A call by the Directors or members may be by vote at a meeting or in writing (addressed to the Secretary of the Corporation) with or without a meeting.

Section 10. <u>Place of Meetings</u>. Meetings of members shall be held at such place as is set from time to time by the Board of Directors.

Section 11. <u>Notice of Meetings; Waiver of Notice</u>. Not less than ten (10) nor more than ninety (90) days before each members' meeting, the Secretary shall give written notice to each member. The notice shall state the time and place of the meeting and, if the meeting is a special meeting or notice of the purpose is required by statute, the purpose of the meeting. Notice is given to a member when it is personally delivered to him or her, left at his or her residence or usual place of business, or mailed or emailed to him or her at his or her address as it appears on the records of the Corporation. Notwithstanding the foregoing provisions, each person who is entitled to notice waives notice if he or she before or after the meeting signs a waiver of the notice which is filed with the records of members' meetings, or is present at the meeting in person or by proxy. Any meeting of members, annual or special, may adjourn from time to time to reconvene at the same or some other place, and no notice need be given of any such adjourned meeting other than by announcement.

Section 12. <u>Quorum; Voting</u>. Unless a statute or the Bylaws provides otherwise, at a meeting of members the presence in person or by proxy of members entitled to cast a majority of all the votes entitled to be cast at the meeting constitutes a quorum and a majority of all the votes cast at a meeting at which a quorum is present is sufficient to approve any matter which properly comes before the meeting. In the absence of a quorum, the members present in person or by proxy, by majority vote and without notice other than by announcement, may adjourn the meeting from time to time until a quorum shall attend. At any such adjourned meeting at which a quorum shall be present, any business may be transacted which might have been transacted at the meeting as originally notified.

Section 13. <u>Informal Action by Members</u>. Any action required or permitted to be taken at a meeting of members may be taken without a meeting by vote by mail or electronic transmission as the President or Board of Directors may direct.


ARTICLE IV

DUES

Section 1. <u>Annual Dues</u>. The Board of Directors may determine from time to time the amount of annual dues, if any, payable to the Corporation by its members.


Section 2. <u>Payment of Dues</u>. The dues shall be payable by the last day of May in each fiscal year.


Section 3. <u>Default and Termination of Membership</u>. When any member shall be in default in the payment of dues for a period of three months from the beginning of the fiscal year or period when such dues became payable, his or her membership may thereupon be terminated by the Board of Directors immediately.


ARTICLE V

BOARD OF DIRECTORS

Section 1. <u>Powers</u>. The business and affairs of the Corporation shall be managed by or under the direction of the Board of Directors, which may exercise all such powers of the Corporation and do all such lawful acts and things as are not prohibited by statute or by the Articles of Incorporation or these Bylaws.


Section 2. <u>Number and Election</u>. The Board of Directors shall consist of the Officers described in Article VI below and elected Directors, all of whom shall be Active or Honorary Members as defined in Article III above. The number of elected Directors initially shall be up to thirty (30) which may be increased or decreased as provided herein, provided that there shall never be less than the minimum number of directors required by the general laws of the State of Maryland now or hereafter in force. A majority of the entire Board of Directors may

alter the number of Directors set by these Bylaws. In June of each year, in accordance with the process described in Article VII, Section 7.A below, the members shall elect Directors to hold office until the next annual election and until their successors are elected and qualify.

Section 3. <u>Chair of the Board</u>. The Chair of the Board, if one be elected, shall, in the President's absence, preside at all meetings of the Board of Directors at which he or she shall be present; and in general he or she shall perform all such duties as are from time to time assigned to him or her by the Board of Directors.

Section 4. <u>Removal of Director</u>. Unless statute or these Bylaws provides otherwise, the members may remove any Director, with or without cause, by the affirmative vote of a majority of all the votes entitled to be cast for the election of Directors. As a condition of continued membership for the following year on the Board of Directors, no member of the Board, other than Honorary Members, members of the judiciary, or members serving as the Federal Public Defender or the United States Attorney, shall incur more than three (3) unexcused absences from regularly scheduled Board meetings during each fiscal year of the Corporation. "Excused absence" means that a Board member, in advance of the scheduled meeting, shall have

provided the President or Secretary an e-mail or telephonic notice that the Board member cannot attend. Should any member of the Board of Directors (other than other than Honorary Members, members of the judiciary, or members serving as the Federal Public Defender or the United States Attorney) absent himself or herself unreasonably from three consecutive meetings of the Board without notifying the President or Secretary stating his or her reason for so doing, and if his or her excuse should not be accepted by the members of the Board, his or her seat on the Board may be declared vacant, and the President may proceed to fill the vacancy in accordance with Section 4 of Article V.

Section 5. <u>Vacancies</u>.   The members may elect a successor to fill a vacancy on the Board of Directors which results from the removal of a Director elected by them.   If the office of any member of the Board of Directors becomes vacant and is not filled by action of the membership, the remaining members of the Board of Directors, by a majority vote of the entire Board of Directors, may elect a successor who shall hold office until the next annual election of Directors and Officers.

Section 6. <u>Regular Meetings</u>. The Board of Directors shall conduct no less than nine (9) regular meetings during the Corporation's fiscal year. One such meeting shall be held in June at which election results shall be announced and a Chairperson of the Board shall be elected for the next Chapter fiscal year. The date, time and place of such meetings shall be fixed by the President upon consultation with the Board of Directors Notice of the meeting shall be given to each Director at least twenty (20) days before the time appointed for the meeting.

Section 7. <u>Special Meetings</u>. Special meetings of the Board of Directors may be called by the Chair of the Board or by a majority vote of the members of the Board of Directors at their discretion. The Secretary shall send notice describing the business to be discussed to the members of the Board five days before the special meeting. Such meeting shall be held on such date and at such time and place as shall be designated in the notice of the meeting by the person or persons calling the meeting.

Section 8. <u>Notice; Waiver of Notice</u>. Whenever any notice of a meeting of the Board of Directors is required to be given under provisions of the Articles of Incorporation or these Bylaws, (i) such notice shall be given either personally, by telephone, by mail, by email or by facsimile, addressed to the Director at his or her address as it appears on the records of the Corporation, and unless otherwise provided in these Bylaws, at least ten (10) days before the date designated for such meeting, or (ii) a waiver thereof in writing, signed by the person or persons entitled to such notice and filed with the records of the meeting, whether before or after the holding thereof, shall be equivalent to the giving of such notice. Notice shall be deemed given at the time when the same is personally delivered, deposited in the United States mail, with postage thereon prepaid, or duly sent by facsimile or email. Neither the business to be transacted at, nor the purpose of, any regular meeting of the Board of Directors need be specified in the notice or waiver of notice of such meeting. Presence at any meeting without objection also shall constitute waiver of any required notice.

Section 9. <u>Quorum and Vote at Meetings</u>. At any meeting of the Board of Directors, a majority of the Directors in office shall be necessary and sufficient to constitute a quorum for the transaction of all business. A majority of the votes cast at a meeting of the Board of Directors, duly called and at which a quorum is present, shall be sufficient to take or authorize action upon any matter which may properly come before the meeting, unless the concurrence of a greater proportion is required for such action by statute, the Articles of

Incorporation, or these Bylaws. If, at any meeting of the Board of Directors, there shall be less than a quorum present, a majority of those present may adjourn the meeting to a later day, not more than ten (10) days later.

Section 10. <u>Proxies</u>. Each member who shall be entitled to vote at any Board meeting thereof may vote by proxy. A proxy shall be in writing and revocable at the pleasure of the member executing it. Unless the duration of the proxy is specified, it shall be invalid after thirty days from the date of execution.

Section 11. <u>Meeting by Conference Telephone</u>. Members of the Board of Directors may participate in a meeting by means of a conference telephone or similar communications equipment if all persons participating in the meeting can hear each other at the same time. Participation in a meeting by these means constitutes presence in person at a meeting.

Section 12. <u>Informal Action by Directors</u>. Any action required or permitted to be taken at a meeting of the Board of Directors may be taken without a meeting if there is filed with the records of members meetings a unanimous written consent which sets forth the action and is signed by each Director.

ARTICLE VI

OFFICERS

Section 1. <u>Positions</u>. The voting Officers of the Corporation shall be a President, a President-Elect, a First Vice-President, a Second Vice President, a Secretary, a Treasurer, a National Delegate, a Younger Lawyers Chair, and an Immediate Past President, and such other Officers as the Board of Directors may appoint, including additional Vice-Presidents and, who shall exercise such powers and perform such duties as shall be determined from time to time by the Board. In addition, the Clerk of the United States District Court for the District of Maryland shall serve as a honorary, non-voting officer. The Board shall not be obligated to fill all Officer positions, except where required by law. Any number of offices may be held by the same persons, unless the Articles of Incorporation or these Bylaws otherwise provide; provided, however, that in no event shall the President and the Secretary be the same person. Officers may be members of the Board of Directors. The Corporation also may have a Chair of the Board; the Chair of the Board shall be an Officer if he or she is designated as the chief executive officer of the Corporation.

Section 2. <u>Election and Term of Office</u>. Each Officer of the Corporation, except the President and the Immediate Past President, shall be elected annually each June by majority vote of ballots cast by those members eligible to vote.   The President-Elect of the prior term shall automatically become the President for the succeeding term. All Officers shall be elected for a term of one (1) year. At the expiration of the term, any Officer may be reelected.

Section 3. <u>President</u>. The President shall be the Chief Executive Officer of the Corporation and shall enforce due observance of its Bylaws. The President shall schedule and preside at the meetings of the Corporation and of the Board of Directors. The President shall also, at the annual meeting of the Corporation and such other times as he/she deems proper, communicate to the Corporation or to the Board of Directors such matters and make such suggestions as may in his/her opinion tend to promote the prosperity and welfare and increase the usefulness of the Corporation and shall perform such other duties as are necessarily incident to the Office of the President. In addition, the President (a) shall be a member of the National Council of the Association along with the National Delegate; (b) shall have the power to appoint all standing committees and other committees as may be deemed necessary or requisite to carry out the objectives of the Corporation; (c) shall be an ex-officio member of all committees and sub-committees thereof, except the Nominations and Elections Committee; (d) shall, from time to time, as required by the Board of Directors, provide the members of the Corporation information as to the State of the Corporation; (e) shall, pursuant to the authority granted by the Board of Directors, have the authority to sign for and on behalf of the Corporation all written contracts and obligations, and the President's signature shall bind the Corporation to fulfill the terms and conditions of such contracts and obligations; and (f) shall appoint the Corporation's delegate to the national Council meetings other than the one held at the Association's annual national convention.

Section 4. <u>President-Elect</u>. The President-Elect shall perform such duties as are delegated by the President. In the absence of the President or in the event of the President's inability or refusal to act, the President-Elect shall perform the duties of the President. The President-Elect shall succeed automatically to the Office of the President after expiration of the President's term.

Section 5. <u>Vice-Presidents</u>. In the absence of the President or the President-Elect or in the event of the President's or the President-Elect's inability or refusal to act, the First Vice-President (or, in the event of his or her absence, inability or refusal to act, The Second Vice-President) shall perform the duties of the President, and when so acting shall have all the

powers of, and be subject to all the restrictions upon, the President. The Vice-Presidents shall perform such other duties and have such other powers as the Board of Directors may from time to time prescribe.

Section 6. <u>Secretary</u>. The Secretary shall give notice of and attend all Board meetings of the Corporation and keep a record of its doings, and carry into execution all orders, votes, and resolutions not otherwise committed. The Secretary shall have custody of the corporate seal of the Corporation and have authority to affix the same to any instrument requiring it, and when so affixed it may be attested by the signature of the Secretary. The Board of Directors may give general authority to any other Officer to affix the seal of the Corporation and to attest the affixing by such Officer's signature, and the Secretary may also attest all instruments signed by the other Officers. The Secretary shall, in coordination with the other Directors, maintain an archive of all records of the Corporation and shall perform such other duties and have such other powers as the Board of Directors may from time to time prescribe. The Secretary also shall furnish to the Association notice of election results.

Section 7. <u>Treasurer</u>. The Treasurer shall have charge of and be responsible for all funds, securities, receipts, and disbursements of the Corporation, and shall deposit, or cause to be deposited, in the name of the Corporation, all moneys or other valuable effects in such banks, trust companies, or other depositories as shall, from time to time, be selected by the Board of Directors; he shall render to the President and to the Board of Directors, whenever requested, an account of the financial condition of the Corporation; and, in general, he or she shall perform all the duties incident to the office of a treasurer of a corporation, and such other duties as are from time to time assigned to him or her by the Board of Directors or the President.

Section 8. <u>National Delegate</u>. The National Delegate shall be the Corporation's delegate to the National Council meeting held at the Association's annual national convention. The National Delegate also shall perform such other duties as are from time to time assigned to him or her by the Board of Directors or the President.

Section 9. <u>Younger Lawyers Chair</u>. The Younger Lawyers Chair shall be the liaison with the young members of the Corporation and act as their representative. The Younger Lawyers Chair also shall perform such other duties as are from time to time assigned to him or her by the Board of Directors or the President.

Section 10. <u>Immediate Past President</u>. The Immediate Past President shall perform such other duties as are from time to time assigned to him or her by the Board of Directors or the President.

Section 11. <u>Clerk of the Court</u>. The Clerk of the Court shall perform such other duties as are from time to time assigned to him or her by the Board of Directors or the President.

Section 12. <u>Removal and Resignation</u>. Any Officer may be removed, with or without cause, by a majority of the members at any regular or special meeting of the members. Any Officer removed as a Director pursuant to Article V, Section 4 above shall be simultaneously removed as an Officer. Any Officer may resign at any time by providing written notice to the Board and any such resignation shall take effect on the date of the receipt of such notice, or at any later time specified therein, and unless otherwise specified therein, the acceptance of such resignation shall not be necessary to make it effective.

Section 13. <u>Vacancies</u>. If any officer position becomes vacant by reason of the death, resignation or removal of such officer, the Board shall elect a successor who shall hold such office for the unexpired term and until his or her successor is duly elected and qualifies.

ARTICLE VII

COMMITTEES

Section 1. <u>Committees</u>. The Board of Directors may, by a resolution adopted by a majority of the Directors present at a meeting at which a quorum is present, appoint from among the membership one or more other committees, composed of at least one (1) Director, for such purposes and with such powers as the Board of Directors may provide, except that no such committee or committees shall have or exercise the authority of the Board of Directors in the management of the Corporation. The members of such committees shall hold office until their successors are appointed by the Board of Directors.

Section 2. <u>Meetings and Notices</u>. Regular meetings of committees of the Board of Directors may be held without notice at such times and places as such committees may determine from time to time by resolution. Special meetings of committees may be called by any member thereof upon not less than one day's notice stating the place, date, and hour of the meeting, which notice may be written or by telephone or electronically. The notice of a special meeting of a committee need not state the business proposed to be transacted at the meeting. Any member of a committee may waive notice of any meeting thereof, either before or after the meeting, by signing a waiver of notice which shall be filed with the records of such meeting, or by attendance at such meeting.

Section 3. <u>Quorum</u>. Except as provided otherwise by a majority vote of the committee, a majority of the members of a committee shall constitute a quorum for the transaction of business at any meeting thereof. The vote of a majority of the members of a committee present at a meeting at which a quorum is present shall constitute action of the committee.

Section 4. <u>Action Without a Meeting</u>. Any action required or permitted to be taken at a meeting of a committee may be taken without a meeting if a written consent, setting forth the action so taken, shall be signed by all of the members of the committee and filed with the minutes of proceedings of the committee.

Section 5. <u>Participation in Meetings</u>. Members of committees may participate in a meeting by means of audio or video conference, similar communications equipment, or other electronic means by which all persons participating in the meeting can communicate with each other. Participation in a meeting pursuant to this Article VII shall constitute presence in person at the meeting.

Section 6. <u>Procedure</u>. All committees established by the Board of Directors shall report any actions taken to the Board of Directors at the next meeting thereof held after the committee meeting. If requested, the minutes of committee meetings shall be distributed to all members of the Board of Directors.

Section 7. <u>Standing Committees</u>. In addition to whatever other committees the Board of Directors might by resolution appoint, and subject to Sections 1 through 6 of this Article VII, the President shall, during September of each Corporation fiscal year, and subject to the approval of the Board of Directors, appoint five (5) members of the Corporation in good

standing, one of whom shall be designated Chairperson, to each of the Standing Committees of the Board of Directors. The Standing Committees of the Board of Directors shall be: (a) the Nominations and Elections Committee; (b) the Membership Committee; (c) the Audit Committee; (d) the Communications Committee; (e) the Younger Lawyers Committee; and (f) the Program Committee.

A. Nominations and Elections Committee. The Nominations and Elections Committee shall have responsibility for the nomination and election of Officers and Directors, as provided in Section 2 of Article V and Section 2 of Article VI and shall nominate one (1) candidate for each office and elected Director position, including Chairperson of the Board of Directors, except that no member of the committee shall participate in the consideration or nomination of a candidate for any office for which that person is being considered. The Committee shall report its list of nominees to the Board of Directors, which may make changes of any such selected nominees upon a two-thirds (2/3) vote of the Board of Directors present and voting. The Committee shall circulate to each member of the Corporation in good standing no later than June 1 of each year a ballot reflecting the final nominations and providing an opportunity for the submission of write-in candidates for each office or Director position. The Committee shall establish the date for return of the ballots, shall count and tally all ballots received and shall make a written report of the results to the Board of Directors on or before June 30. The election of each office shall be by a plurality of all votes cast. The Committee shall deliver the ballots to the Secretary, who shall retain the ballots for a period of thirty (30) calendar days for inspection by the membership.

B. Membership Committee. The Membership Committee shall determine the eligibility for membership of all applicants for membership of the Corporation, or, alternatively, shall forward applications of applicants to the offices of the Association for such determination.

C. Audit Committee. The Audit Committee shall audit, at such times as the Board of Directors shall direct, but not less often than annually following the conclusion of a fiscal year, the books of the Treasurer and all other Officers or committees entrusted with the funds of the Corporation. Following each audit the Audit Committee shall make a report of its findings in writing to the Board of Directors. The report following the year-end audit shall be made no later than the Board of Directors meeting in September of the following fiscal year. Subject to the approval of the Board of Directors, the Audit Committee may employ accounting professionals to conduct and report on such determination.

D. Communications Committee. The Communications Committee shall be responsible for the publication of a bi-annual newsletter and for updating the Corporation's webpage on the Association's website.

E. Younger Lawyers Committee. The Younger Lawyers Committee shall be responsible for planning and participating in events and activities to encourage young lawyers to join the Corporation and/or to participate in the Corporation's events and activities. The chair of the

Younger Lawyers Committee shall be the Younger Lawyers Representative.

F. Program Committee. The Program Committee shall be responsible for planning and participating in programs and events presented or sponsored by the

## ARTICLE VIII

## FINANCE

Section 1. <u>Checks, Drafts, etc</u>. All checks, drafts and orders for the payment of money, notes and other evidences of indebtedness, issued in the name of the Corporation, shall, unless otherwise provided by resolution of the Board of Directors, be signed by the Treasurer.

Section 2. <u>Annual Statement of Affairs</u>. There shall be prepared annually a full and correct statement of the affairs of the Corporation, to include a balance sheet and a financial statement of operations for the preceding fiscal year. The statement of affairs shall be submitted at the annual meeting of the Board of Directors and, within twenty (20) days after the meeting, placed on file at the Corporation's principal office.   Such statement shall be prepared or caused to be prepared by such executive officer of the Corporation as may be designated in an additional or supplementary bylaw adopted by the Board of Directors. If no other executive officer is so designated, it shall be the duty of the President to prepare or cause to be prepared such statement.

Section 3. <u>Fiscal Year</u>. The fiscal year of the Corporation shall be the twelve

(12) calendar months period ending May 31 in each year, unless otherwise provided by the Board of Directors.

## ARTICLE IX

## INDEMNIFICATION

Section 1.      <u>General.</u> The Corporation shall indemnify: (1) any individual who is a present or former Director or officer of the Corporation; or (2) any individual who serves or has served in another corporation, partnership, joint venture, trust, employee benefit plan or any other enterprise as a Director or officer, or as a partner or trustee of such partnership or employee benefit plan, at the request of the Corporation and who by reason of service in that capacity was, is or is threatened to be made a party to any threatened, pending or completed

action, suit or proceeding, whether civil, criminal, administrative or investigative, to the full extent permitted under the Maryland General Corporation Law. The Corporation may, with the approval of the Board, provide such indemnification for any employee or agent of the Corporation.

Section 2.   <u>Advancement of Expenses.</u> Reasonable expenses incurred by a Director or officer who is, or is threatened to be made, a party to any threatened, pending or completed action, suit or proceeding, whether civil, criminal, administrative or investigative, may be paid or reimbursed by the Corporation, upon the approval of the Board, for the costs and expenses incurred by such person in connection with such proceeding in advance of the final disposition of the proceeding upon receipt by the Corporation of: (1) a written affirmation by the party seeking indemnification that he or she has a good faith belief that the standard of conduct necessary for indemnification by the Corporation as authorized herein has been met; and (2) a written undertaking by or on behalf of the party seeking indemnification to repay the amount if it shall ultimately be determined that the standard of conduct has not been met.

Section 3. <u>Exclusivity.</u> The rights of indemnification and advancement of expenses provided by the Articles of Incorporation or these Bylaws shall not be deemed exclusive of any other rights to which a person seeking indemnification or advancement of expenses may be entitled under any law (common or statutory) or agreement, both as to action in his official capacity and as to action in another capacity while holding office or while employed by or acting as agent for the Corporation, and such rights shall continue in respect of all events occurring while a person was a Director or officer and shall inure to the benefit of the estate, heirs, executors and administrators of such person. All rights to indemnification and advancement of expenses under the Charter or these Bylaws shall be deemed to be a contract between the Corporation and each Director or officer of the Corporation who serves or served in such capacity at any time while this Section 3 is in effect. Nothing herein shall prevent the amendment of this Article IX, Section 3, provided that no such amendment shall diminish the rights of any person hereunder with respect to events occurring or claims made before its adoption or as to claims made after its adoption in respect of events occurring before its adoption. Any repeal or modification of this Article IX, Section 3 shall not in any way diminish any rights to indemnification or advancement of expenses of such Director or officer or the obligations of the Corporation arising hereunder with respect to events occurring, or claims made, while this Article IX, Section 3, or any provision hereof, is in force.

ARTICLE X

MISCELLANEOUS PROVISIONS

Section 1. <u>Liabilities</u>. To the extent permitted by law, the liability of Directors and Officers of the Corporation is eliminated with respect to any proceeding brought by or in the right of the Corporation, except that such liability shall not be eliminated if the Directors or Officers engaged in willful misconduct or a knowing violation of the criminal law.

Section 2. <u>Maintenance of Tax Exempt Status</u>.   The Corporation shall not carry on any activities not permitted to be carried on by a corporation exempt from federal income tax under Section 501(c)(6) of the Internal Revenue Code of 1986 (or corresponding provisions of any future United States Internal Revenue Law).

Section 3. <u>Books and Records</u>. The Corporation shall keep correct and complete books and records of its accounts and transactions and minutes of the proceedings of its members, its Board of Directors and of any executive or other committee when exercising any of the powers of the Board of Directors. The books and records of a Corporation may be in written form or in any other form which can be converted within a reasonable time into written form for visual inspection. Minutes shall be recorded in written form but may be maintained in the form of a reproduction. The original or a certified copy of the Bylaws shall be kept at the principal office of the Corporation.

Section 4. <u>Corporate Seal</u>. The Board of Directors may provide a suitable seal, bearing the name of the Corporation, which shall be in the charge of the Secretary. The Board of Directors may authorize one or more duplicate seals and provide for the custody thereof. If the Corporation is required to place its corporate seal to a document, it is sufficient to meet the requirement of any law, rule, or regulation relating to a corporate seal to place the word "Seal" adjacent to the signature of the person authorized to sign the document on behalf of the Corporation.

Section 5. <u>E-Mail</u>. The communication or transmission of any notice or other document which is required by these Bylaws shall be effective if communicated via email.

Section 6. <u>Execution of Documents</u>. A person who holds more than one office in the Corporation may not act in more than one capacity to execute, acknowledge, or verify an instrument required by law to be executed, acknowledged, or verified by more than one

Officer.

Section 7. <u>Conflict of Interest</u>. In the event any Director or Officer of the Corporation is or may be an officer, director, stockholder, employee, or has a financial interest in a corporation or other organization with which this Corporation shall enter into a contract or other transaction; or shall directly or indirectly be a party to or have an interest in any contract or transaction of the Corporation, he or she shall fully disclose such interest to the Board of Directors. After revealing any such interest, such Director shall abstain from voting on any question in reference to said contract or transaction. Subject to compliance with these requirements of disclosure, no contract or other transaction between this Corporation and any other corporation, partnership, or individual shall be affected by the fact that the Director or Officer of this Corporation is interested in or is a director or officer of such other corporations, provided that such contract is negotiated on an arm's length basis and is fair and reasonable to the Corporation.

Section 8. <u>Amendments</u>. Subject to statute, any and all provisions of these Bylaws may be altered or repealed and new bylaws may be adopted at any annual meeting of the members, or at any special meeting called for that purpose.   The Board of Directors shall have the power, at any regular or special meeting thereof, to make and adopt new bylaws, or to amend, alter, or repeal any of the Bylaws of the Corporation.

# Prior Chapter News

 **fbamd.org**/prior_chapter_news_2022_2023

### FBA Maryland Chapter Hears Engaging Panel on the Future of Affirmative Action

On Tuesday, June 6th the FBA Maryland Chapter hosted a panel discussion on the future of affirmative action at the University of Maryland Francis King Carey School of Law. Chief Legal Officer for Baltimore City Public Schools Joshua Civin led the discussion with esteemed panelists University of Maryland Francis Carey School of Law Dean Renee McDonald Hutchins, Patrick Strawbridge, and David Hinojosa. The discussion focused on the policy and legal issues presented in *Students for Fair Admissions, Inc. v. President and Fellows of Harvard College* and *Students for Fair Admissions, Inc. v. University of North Carolina*, and the future of affirmative action policies in the United States. Strawbridge, a partner at Consovoy McCarthy, represented Students for Fair Admissions which sued the University of North Carolina for considering an applicant's race in the admissions process, claiming that it is a violation of the Equal Protection Clause. Hinojosa, the Director of the Education Opportunities Project at the Lawyers' Committee for Civil Rights Under Law leads a team which represents multiracial groups of students and alumni defending affirmative action plans in three separate cases filed against Harvard College, the University of North Carolina at Chapel Hill and the University of Texas at Austin. Strawbridge and Hinojosa, both of whom argued the UNC case before the Supreme Court, explained their clients' respective positions. Opining on whether affirmative action was still necessary, Dean Hutchins stated "We know enough is enough when we reach some semblance of equality. We are so far from that now." The Chapter thanks the panelists for such an engaging discussion. For more pictures from the event, click here.



1/11

. Federal Bar Association - Supplemental A      Exhibit Page # 18 of 29      EXHIBIT 201-A .

## FBA Maryland Chapter Annual Luncheon Brings Together the Bench and the Bar

On Friday, May 19, 2023 the Maryland Chapter welcomed members of the Bar and Bench of the District of Maryland to the chapter's Annual Luncheon at the Baltimore Hyatt Hotel. During the pre-luncheon reception, members warmly greeted one another as they mingled and introduced one another to their networks. The atrium was abuzz with celebratory excitement for the afternoon's programming celebrating the honorees.



Judge Paul W. Grimm, who recently retired from the Bench to accept appointments from the Dean of the Duke University School of Law as the Director of the Bolch Judicial Institute and by the school's faculty as the David F. Levi Professor of Law, served magnificently as Master of Ceremonies. With his hallmark humility and wit, Judge Grimm helped the Chapter honor U.S. District Judge George Hazel and Bankruptcy Judges Thomas J. Catliota and Duncan W. Keir on their retirements from the Bench, and U.S. District Judge Julie R. Rubin and U.S. Magistrate Judge Ajmel A. Quereshi on their appointments and those honorees (with the exception of Judge Catliota who was unable to attend) responded with their own gracious remarks. Judge Grimm also gave a nod to Judges Catherine A. Blake, Richard D. Bennett and Ellen Hollander on their taking senior status and former Clerk of



the Court, Felicia Cannon on her retirement after many years of outstanding service. Chapter President Bob Brennen honored Judge Grimm on his many accomplishments, retirement from the bench and appointments at Duke, and also presented Kramon & Graham's Jim Ulwick with the Chapter's DiRito award for his service to the District and exemplary career. The Chapter would like thank Judge Grimm and the other honorees for their participation, as well as the Luncheon Committee of Adam Abelson, Francisco Carriedo, Nichole C. Gatewood, Patricia McLane, Dawn Resh, Gina M. Smith, Maria Salacuse, Bob Brennen and especially Committee Chair Mark Saudek. For more photos of the event, click here.



**Our Fireside Chats Continue: U.S. District Court Judge Theodore D. Chuang**

The FBA Maryland Chapter continued its fireside chat series by welcoming U.S. District Judge Theodore D. Chuang on April 13, 2023. Judge Chuang joined the bench in 2014. Public service is part of his fabric. His parents immigrated to the United States seeking political freedom, and they strove to give back. This played a significant role in Judge Chuang serving in all three branches of federal government—roles in the Departments of Justice and Homeland Security, as investigative counsel in the House of Representatives, and as a law clerk and now judge. The judge also gave great practice tips, such as honing written arguments, seeking reconsideration of adverse decisions, and preparing for oral argument. If you're tinkering with font size and margins, you've written too much. If a judge offers Monday or Friday as a deadline, choose Friday and enjoy your weekend. Having grown up in Massachusetts, Judge Chuang is a longtime Boston sports fan (though he noted that the Yankees are mutual rivals of the Orioles). And he shared how his clerkship experience informed how he approaches being a judge. That experience also informs how he selects and builds relationships with his own law clerks. We thank Judge Chuang for the great chat.



**A Fireside Chat with U.S. District Court Judge Stephanie A. Gallagher**

On March 23, 2023, the Maryland Chapter hosted a virtual fireside chat with U.S. District Court Judge Stephanie A. Gallagher. The chat covered a variety of topics. After graduating from law school, Judge Gallagher clerked, worked at a large law firm, became a federal prosecutor, and opened her own small firm. She did not always set out to become a lawyer. But it ended up being the perfect fit. Plus, her path gave her a solid of mix of criminal and civil experience that she now brings to the bench. Judge Gallagher discussed her practice preferences. Written submissions are very critically important for dispositive motions. For discovery disputes, she encourages litigants to meet in person or speak with each other. And she stressed ways to streamline proceedings, like flagging objections in advance, outside the presence of the jury, or streamlining the number of filings when briefing dispositive motions. We also learned more about Judge Gallagher the person: her close relationship with her law clerks, the judges she tries to emulate, and her favorite Orioles players. We thank Judge Gallagher for her time and the wonderful chat.



Hon. Judge Gallagher

**A Conversation with a Trailblazer: Judge Alexander Williams, Jr. (Ret.)**

On February 28, 2023, FBA Maryland Chapter hosted A Conversation with a Trailblazer with United States District Judge Alexander Williams, Jr. (Ret.). As part of our chapter's celebration of Black History Month, Nichole' C. Gatewood, the Immediate Past President of the Maryland Chapter of the Federal Bar Association and Chair of the Diversity and Inclusion Committee, spoke with Judge Williams about his career journey. Judge Williams has held a multitude of positions including private practitioner, state's attorney, federal judge, and founder and director of a social justice policy institute.

Throughout his career, Judge Williams has never backed down from an obstacle or been accepting of a roadblock. From being told that he was not college material, to breaking down barriers to become the first Black person elected State's Attorney for Prince George's County, MD, and the impact of this historic win simultaneously making him the first Black person to hold countywide office, he has never accepted the label of being non-qualified. Instead of allowing small-minded perspectives to deter the accomplishment of his goals, he used the naysaying to propel him forward. Taking the audience along his journey, Judge Williams imparted valuable life lessons, career advice, and civic wisdom.

Emphasizing the importance of mentorship and sponsorship, Judge Williams explained the vital role that having a network of supporters plays in breaking through barriers. He told the audience about his tough road to judicial confirmation and the pivotal role that having and nurturing relationships played in his confirmation to the federal court. For nearly 20 years, he proudly served on the Maryland federal court with distinction before retiring. After sharing some of his most memorable cases, Judge Williams stressed the value of building a strong reputation and laying a sound body of work as a foundation for judicial consideration. A nurturer of relationships, Judge Williams noted some of the highly respected jurists and elected officials that he has mentored and supported over the years.

Growing up in a strong and loving family, Judge Williams was equipped to thrive and not just survive. After retiring from the bench in continuation of his life's mission of giving back, he took on the role of change agent and founded The Judge Alex Williams Jr. Center for Education, Justice, and Ethics. In this capacity, he has come full circle and uses his life and career experiences to champion policy development and effectuates change. And as if that were not enough, he is still teaching at his alma mater Howard University, in the law school and School of Divinity. Judge Williams personifies the definition of a trailblazer, and we share more about his path and purpose in his upcoming book, "Non-Qualified."



A Conversation With A Trailblazer - Judge Alexander Williams, Jr. (Ret.) - YouTube

**Introduction to Federal Practice Program Brings New Lawyers Together with Judges**

The Maryland Chapter held its annual "Introduction to the Federal Practice" program on February 24, 2023 at the federal courthouse in Greenbelt. About 80 lawyers registered for the program held in the Court's ceremonial courtroom. After remarks by Judge Theodore D. Chuang and Chapter President Bob Brennen, and a primer on the courthouse from Chief Deputy Clerk David E. Ciambruschini, attendees received pointers on pleading, evidence, civil discovery and motions practice and criminal practice from several distinguished members of the bench and bar. In addition, Deena Hausner, Managing Attorney for the House of Ruth's Marjorie Cook Foundation Domestic Violence Legal Clinic, made a presentation regarding the various opportunities through which members of the federal bar can provide *pro bono* assistance to survivors of domestic violence and sexual assault. The program concluded with the Hon. Lydia K. Griggsby presiding over a swearing in ceremony for those attendees who were not already members of the Court's bar, followed by a reception.



**Fireside Chat Held with Peter M. Nothstein, Resident Legal Advisor with the U.S. Embassy in Doha, Qatar**

On January 18, 2023, in the latest installment of our "Fireside Chat" series Chapter President Bob Brennen sat down with fellow Chapter Board member Peter Nothstein to talk about Peter's experiences as the Resident Legal Advisor assigned to the United States Embassy in Doha, Qatar. Peter is a Maryland native and graduate of the University of Maryland School of Law. In addition to clerking for the Hon. Marvin J. Garbis (ret.) and four years in private practice with firms in Baltimore and Washington D.C. Peter has worked several years as a prosecutor with the United States Attorney's Office in Baltimore. Since 2017 he has been prosecuting cases with the Public Integrity Section of the Criminal Division of the U.S. Department of Justice in Washington D.C. In December 2021 Peter accepted an assignment through the Criminal Division's Office of Overseas Prosecutorial Development, Assistance and Training ("OPDAT") to the U.S. Department to serve as the Resident Legal Advisor at the U.S. Embassy in Doha, Qatar, where he currently resides with his wife and two-year-old son. As Resident Legal Advisor Peter's role is to work with representatives of Qatar's law enforcement and justice sector institutions to enable those institutions and their personnel to more effectively combat terrorism, organized crime, corruption, financial crimes and other types of crime, and simultaneously enable them to more effectively cooperate regionally and with the United States in combating such crime.

Peter described how he came to accept the assignment in Qatar, Qatar's legal system and how it differs from ours in the U.S., and some of the challenges he has faced in establishing relationships with Qatar's law enforcement community. He also described life in Doha (including the weather--it's hot!), the diverse population of ex-pats and migrants living and working there, and the build up to, experience of, and aftermath of the recent World Cup championship held there. It was a fascinating discussion. We thank Peter for logging in and

sharing his evening with our afternoon (with the 8-hour time difference) and for his service to our country, congratulate him on upcoming arrival of his second child, and look forward to welcoming him back to the States when his assignment concludes.



**Another Successful Fireside Chat Held on December 16th: United States Judge Lydia Kay Griggsby**

The FBA Maryland Chapter's Fireside Chat series welcomed United States District Judge Lydia Kay Griggsby on Friday, December 16, 2022.  Judge Griggsby joined the bench after a career in all three branches of federal government, including several years as a judge on the United States Court of Federal Claims, as counsel for different Senate committees, and in multiple roles for the Department of Justice.  These extraordinary experiences have contributed to how Judge Griggsby views the law today. Judge Griggsby's grandmother and mother were strong influences throughout her life.  She passes on that influence by mentoring young women in Baltimore (particularly those interested in the arts), and she encourages young people everywhere to consider careers in the law.  For others interested in eventually joining the bench, Judge Griggsby recommended that newer lawyers try different experiences and embrace new challenges.  This helped Judge Griggsby her own understanding of the law. In addition, Judge Griggsby shared her practice preferences, including her standing order for motions in civil cases, and her expectations for litigators in criminal cases.  Above all, Judge Griggsby values civility among the litigants, and she takes great pains to make sure everyone is heard. Finally, Judge Griggsby shared her love of gardening, including the great success that she's had growing pepper plants.  During the pandemic, she learned to play chess. We welcome Judge Griggsby to the bench and thank her for the wonderful chat.



**Fireside Chat Held with United States Judge Julie Rubin on October 24th**

On Monday, October 24, 2022, the FBA Maryland Chapter's Fireside Chat series featured United States District Judge Julie Rubin. Judge Rubin joined the federal bench after having previously served as an associate judge on the Baltimore City Circuit Court. Before that, she was a trial lawyer in private practice in Baltimore. Judge Rubin never let her accomplishments go to her head. She emphasized the importance of never taking herself too seriously. Lawyers could be brilliant and hardworking, while also being down to earth and personable. Those are traits she noticeably displayed throughout her chat. Judge Rubin also discussed the value of mentorship. She shared the insight other judges gave her when she first took the bench. Some lawyers may argue forcefully and passionately, but she is guided by the law and facts. She found it equally important to help the next generation of lawyers. Maryland Chapter member Jamar Brown, who led the discussion, provided a good example. Jamar had his first jury trial before Judge Rubin in the Baltimore City Circuit Court. Jamar sought Judge Rubin's feedback after that trial, and she has been a close mentor ever since. Along those same lines, Judge Rubin shared with the audience her practice preferences and tips. Finally, Judge Rubin gave a window into her life outside the law. She is an avid runner. Running, she admitted, was both a passion and necessity— because her other passion is food. It was a pleasure to hear from Judge Rubin, and she is a welcomed addition to the bench.

**Fireside Chat Held with United States Magistrate Judge Quereshi on September 21st**

In the latest installment of the Maryland Chapter's Fireside Chat series, we had the great pleasure of speaking recently with United States Magistrate Judge Ajmel Quereshi. Judge Quereshi spoke about his background as a public interest lawyer, providing insight into his

time as a Skadden Fellow with the American Civil Liberties Union of Maryland, Director of the Howard University School of Law Civil Rights Clinic, a Wasserstein Fellow at Harvard Law School, and a Rappaport Fellow with Boston College Law School. These experiences, Judge Quereshi observed, provided a foundation for his career in public service, as well as an opportunity to advocate for underserved communities. Judge Quereshi followed these experiences by working as staff counsel at the ACLU's National Prison Project, where he advocated for a population he described as often outside our public sphere of service. Judge Quereshi then served the NAACP Legal Defense Fund, where he served as Senior Counsel, until joining the Court. Judge Quereshi described how these opportunities allowed him to broaden his advocacy skills, while engaging with clients on issues of both individual and systemic justice.



Judge Quereshi spoke with candor, humility, and frankness. He described how his parents and childhood community instilled in him a strong work ethic and how he has carried that forward. In every community in which Judge Quereshi has lived and worked, he described how he has tried to dedicate himself to being a voice for positive change. Mentors have been extremely significant in Judge Quereshi's career, from judges with whom he worked to colleagues and senior lawyers. As Judge Quereshi's career has developed, he in turn has sought to provide guidance and mentoring to other lawyers. He described how he views our legal system as a critical tool for achieving our ideal of a just and fair society. While Judge Quereshi modestly deferred any discussion of his intended legacy, the qualities he brings to the bench provide the background, temperament, and skills needed for a career that will enrich our Court and serve litigants with impartiality, wisdom, and justice.

We welcome Judge Quereshi to the bench and look forward to his years of service to come.



 EXHIBIT 201-A

# United States District Court



**101 West Lombard Street**
**Chambers 7D**
**Baltimore, MD 21201**
**(410) 962-7750**

District Judge Adam B. Abelson was born and raised in Shaker Heights, Ohio. He graduated from Princeton University, *cum laude*, and the New York University School of Law, *magna cum laude*, where he was a member of the Order of the Coif. Before law school, Judge Abelson served in Santiago, Chile as a research fellow for Human Rights Watch and the Facultad Latinoamericana de Ciencias Sociales. Judge Abelson began his legal career as a law clerk to the Honorable Catherine C. Blake, U.S. District Court for the District of Maryland, and the Honorable Andre M. Davis, U.S. Court of Appeals for the Fourth Circuit (ret.).

Judge Abelson previously served as a United States Magistrate Judge in the District of Maryland since September 2023. Before joining the Court, Judge Abelson worked as a litigator with the law firm Zuckerman Spaeder LLP, where he represented clients in complex civil litigation, white collar criminal defense, and government investigations. Judge Abelson was named a Young Lawyer of the Year by The American Lawyer, one of five nationwide. He maintained an active pro bono practice and is deeply involved in the community and legal profession. He serves as Chair of the American Bar Association's Working Group on Building Public Trust in the American Justice System, for which he worked to develop the ABA's Ten Guidelines on Court Fines and Fees, and coordinated its development of the ABA's Principles on Law Enforcement Body-Worn Camera Policies. He has served on the board of the Job Opportunities Task Force since 2017, including serving as the Vice Chair, and as a board member and officer of the Maryland Chapter of the Federal Bar Association.

President Biden nominated Judge Abelson on May 8, 2024, to fill the vacancy created when the Honorable James K. Bredar assumed senior status. The Senate confirmed Judge Abelson's nomination on September 10, 2024, and President Biden signed his commission on September 12, 2024.

Judge Abelson was sworn in as a District Judge on September 16, 2024.