Friday, Dec 22, 2023



**Holly Butler**

Good morning, Mr. Wagner. My name is Holly Butler; I am an attorney with the law firm of Miles & Stockbridge. I have been engaged by Obama Growth Partners to conduct an independent investigation relating to your recent allegations regarding potential violations of the law.

I am contacting you by text as I have been informed that this is your preferred method of communication to coordinate a meeting.

Please advise as to whether you are willing to speak with me and when you would be available for a videoconference meeting during early January.

10:52 AM



**Holly Butler**

Please understand that I am an attorney for the company. I do not represent anyone, including you, in his or her individual capacity.

10:53 AM



**Holly Butler**

For confidentiality purposes, please do not respond by text as to the substance of your allegations.

I request that you only provide confirmation as to your willingness to meet and your availability in early January.

11:00 AM

Ryan Dillon-Capps

Yes, but please understand....

There appears to be a misunderstanding because it
is far too soon into the process to be making formal
allegations. I reported things that are suspicious and
with the last update provided saying that I did not
want to continue being the sole investigator.

Last known state, logging and eDiscovery holds were
in place so an investigator can see who is accessing
the system managing the hold and if changes are
made  The holds should be preserving source data
and be verifiable by a digital forensic investigator.

My last email requested to be notified if Ohana does
not want to pursue investigation.

Hopefully that clarifies things

1:02 PM

 Holly Butler

Thank you for the background information. It will be
helpful to discuss and understand the context of your
concerns.

If you are willing to discuss, please let me know when
you are available in early January.

Best wishes for the holiday season.

1:11 PM

Ryan Dillon-Capps

thank you for confirming that you understand that no
allegations have been made.  Do you have a copy of
both emails from yesterday.  They are the only two
emails that I sent out on 21 December 2023.  These
with the previous two emails should provide context,
I want to be helpful but I am not sure whatelse I can
add to them because I am have removed myself from
the investigation and requested an expert take over.
I am a little confused because even the decision to
pursue this was left to ownership, and they have not
responded to provide me with their decision.  Woudln't
it be better for a 3rd party digital forensic expert to tell
us?

My answer remains a yes

1:46 PM

---

Tuesday, Jan 2, 2024



Holly Butler

Would you please let me know your availability
for a brief call tomorrow?  We can do by phone or
videoconference. Please select a time where you can
have a private conversation. Thank you.

9:35 AM



Ryan Dillon-Capps

Tomorrow and Thursday are going to be the two most difficult days. We have people flying in today, wedding stuff tomorrow, and birthday festivities on Thursday. My partner and our families have been exceptionally understanding with me working 20+ hours a day 7 days a week since september, but I have been promising them this entire time that I would wouldn't be working constantly for this week. They understand how important Ohana is to me, and so they let me get away with working all the time - most of the time, and all they ask is that I don't make them wait 2 months to celebrate their birthday, like we did in 2022. That I take off at least 7 consecutive days for the wedding in april, and the 3 planned trips this year are not cancelled or delayed like has occurred in previous years.

Is there something that I can get for you in the meantime? I have not recieved an update on the investigation, and it isn't like us to put off investigating something.

When you didn't message me to coordinate a time last week, I hoped this was because we were bringing in a digital forensic expert to take over the investigation. We should be okay because the data should be protected with a legal hold and the expert should be able to digitally tag and categorize the data from source to ensure a clean chain. However, I am concerned that inaction coupled with our current financial restructuring could be problematic. I am not a lawyer, and not saying it is or is not a problem, but I am concerned how it will look when we have been so active, proactive, and responsive in the past I.

Please let me know, if there is an update.

I am assuming late at night when everyone is sleeping and I am sneaking in work is not an option, but it sounds like you still want to meet with me -- can we do Monday?

1:33 PM



**Holly Butler**

If Monday is the day which best suits your schedule, we can meet then. I am flexible on timing on 1/8. Please advise when a videoconference is feasible for you.

1:38 PM



**Holly Butler**

In the interim, please provide me with copies of the December 21, 2023 emails referenced above, as well as any documents in your possession which gave rise to your suspicions. My email is hbutler@milesstockbridge.com

2:24 PM

——— Wednesday .Jan 3, 2024 ———

Ryan Dillon-Capps

I think the word suspicions is one that implies assignment.  Not sure it is one I would use.

I sent you an email.

Please let me know if you still want to meet on Monday.

3:08 AM



**Holly Butler**

A videoconference meeting has been scheduled for 10 am on Monday based on your availability. I look forward to speaking with you then.

9:01 AM

| From: | Ryan Wagner <Ryan.Wagner@ohanagp.com> |
|---|---|
| Sent time: | 01/03/2024 02:58:47 AM |
| To: | hbutler@milesstockbridge.com |
| Subject: | From The Desk of Ryan Wagner at Ohana Growth Partners, LLC |
| Attachments: | image.png    Outlook-rdc5pj2e.png    ohanagrowthpartnersfinallogo_7fa8dba2-2909-40ee-839a-12ba06da3de6.png    2023Wheaton-HQCompliance.zip |

Greetings and Salutations Holly Butler,

It strikes me as unusual that on 22 December 2023 an employment lawyer reaches out to me to discuss a series of anomalies that I reported via email, but then on 2 January 2023 is asking for copies of those emails. No accusation or assignment to it because that is all it is - unusual. Unusual because my firsthand experiences with similar situations involving an employee reporting an anomaly is typically accompanied with the written record of the report. I have never had to directly engage a person who made a report via email for those emails, and the lawyer is the one who provides me with a copy of the relevant document when they are needed. Minimally, the lawyer will share with me the pertinent details of the report, and this is how we know what we are looking for. Are you able to share with me, why don't you already have a copy of these emails and their attachments?

As a measure of comparison, The first investigation that I was involved in was started by Glenn Norris and the subject of the investigation was Chuck Cavalo's brother. Glenn told me the basis of the investigation was effectively to check and make sure nothing had occurred that should not have. The cause for this concern was because that Chuck's brother left the company and joined a different fitness brand.

Here is a single example that I sent to Glenn Norris, Rich Hartman, Justin Drummond, and Ryan Brooks on 21 December 2023.

2023Wheaton-HWCompliance
Two emails
FW: changes to Compliance - New Build Tracker:3375
This email was sent by Geoff VanManstricht to me upon request and falsely says that I submitted this compliance document on 1 June 2023.
- I did not submit this document to Planet Fitness HQ. The person who submitted this document did so without my permission to attest and claim this was submitted by me.
- As legal representation for Ohana, should we be concerned about formal compliance documentation being submitted without the approval or authorization from me and yet is doing so in a manner that looks as if I submitted the document?
RE: ACTION REQUIRED - Cyber Security and In Club Media Presale Information
In this email thread at 23 October 2023 at 9:32 AM, Andrew Dinh asked Geoff to verify that he received this document. The way that I am reading this exchange is that Andrew Dinh was the person who submitted the form, and to be clear - this is what the field looks like. It is saying "Submitted By Enter your name and email below".

EXHIBIT  100
EXHIBIT 316-0

**Submitted By** *

Enter your name and email below.

**Email Address** *

☐ Send me a copy of my responses

Given the prior standard to which we investigate, I feel like this example alone exceeds the requirement.

It makes me nervous when people are essentially signing my name to a formal document submitted to the franchisor, and on its own these two emails would call for further explanation.

Has anyone told you about the irregular invoicing from Onsite Solutions? After being instructed from Glenn Norris to get cost information directly from our accounting system, I immediately encountered the first anomaly. For the vendor that we have used for years and does all of our IT/Entertainment work for the Development department the amount of money that we had paid them was woefully low. So low, that I assumed that I was pulling the report wrong and asked our senior accountant Ciera Montague how to pull the report. She did the exact same thing and got the exact same data, and after I reminded her of who this vendor was – she also was confused. We responded to this by informing Onsite Solutions of the discrepancy in our system and the manager of our account's payable team told me that what she received was unusual. Eventually we received hundreds of thousands of dollars' worth of invoices for a year-ish worth of work. To be honest, I am not sure that we got invoiced for everything that might be missing because when I pulled the reports that first night it did not seem like we were only missing this years' worth of invoices. However, my reason for finding this anomaly was limited to me searching for accurate cost for what we have been spending and since that data was not in our accounting system the entire thing was not something that I wanted to be involved in.

However, that then led to the second anomaly. After gathering lots and lots of data about what we and other groups were spending for the work that Onsite Solutions did the consistent number for cost was 130 - 160k for a new club. This number was summarily rejected by Glenn Norris and then Glenn informed me that he was using a number provided by Development and Onsite Solutions that was 70k. Weeks and many analyses later, there was no longer a doubt or a potential doubt this number was incredibly wrong because the last analysis was me going through and pulling the invoice and quotes for everything purchased at our most recent club - and the cost was 145k. The analysis was summarily accepted after two prior analysis were rejected without a deeper conversion.

Somewhere in that time period, Onsite Solutions submitted a "analysis" to us that claimed to identify ways we were overspending. I have tough time imagining anyone looking at this "analysis" and not immediately rejected it, and yet I was tasked to do two separate analyses on it. It is extremely difficult to do an analysis on something that has essentially no basis in reality. A notable example, claiming something is free and that item that is not free is also a piece of equipment that is not comparable to the thing it claims to replace, and the thing listed as what we use is also not the thing, we use.

Even before, the first anomalous email - the series of events leading up to it are unusual. Once again, I am not making any claims or asserting assumptions. It is an excess of unusual that I can't begin to explain, and I have tried so hard to rationalize what series of event would need to occur in order for just

the stuff in this email to make sense. To be something that does not warrant an investigation when compared to the current standard. Can you?

I have one more quesiton to ask you. Who or what is Onsite Solutions? We have only known of Onsite Solutions as owned by Andrew Dinh. We have worked with him and a small set of people that have identified to us as employees of Onsite Solutions. However, the company President is a person named Charles Beattie and I have worked with them for years and never heard this name before. It looks like he was a Civil Engineer for a company called EA Partners, PLC for about 2 years and then worked at the same time for a few years more at a company called E A Partners, PLC. Not a typo - it's just the same job with a space in between the E and the A. Then in 2001, he becomes President of Onsite Solutions - a company that "offer a full range of Internet services and technology products to include disaster recover planning as well as technology infrastructure and implementation"   Unusual...

Onsite Solutions: Employee Directory | ZoomInfo.com

ONSITE SOLUTIONS INC. in Lexington, KY | Company Info & Reviews (bizapedia.com)

## ONSITE SOLUTIONS INC. in Lexington, KY | Company Info & Reviews

Discover Company Info on ONSITE SOLUTIONS INC. in Lexington, KY, such as Contacts, Addresses, Reviews, and Registered Agent.

www.bizapedia.com

## Onsite Solutions: Employee Directory | ZoomInfo.com

Search our free database to find email addresses and direct dials for Onsite Solutions employees.

www.zoominfo.com

(42) Charles Beattie | LinkedIn

The man we know as Andrew Dinh appears to be very private as well, and this is the only place I can find a picture of him, or at least someone that looks close to him and has a similar name.

(42) Andy Dinh | LinkedIn

Outside of the one place that we have legitimized Onsite Solutions which appears to have resulted in a listing on the Planet Fitness website. I find it difficult to find him, Charles Beattle, or the business Onsite Solutions when I exclude our own website and self-reporting mechanisms like business registration.
Onsite Solutions Inc. | PF Independent Franchisee Council (pffranchisee.org)



## Onsite Solutions Inc. | PF Independent Franchisee Council

pffranchisee.org

However, his website lists some big names as clients and completed projects. Honestly, I have no idea why the company Facebook page, website, or online presence does not mirror what we see in similar

companies like Holt Comm which is a direct competitor and has only been around for a year or so.

Portfolio | Onsite Solutions Inc. (osisupport.com)



## Portfolio | Onsite Solutions Inc.

Onsite Solutions Inc. offices are located in Kentucky and Tennessee. View our recent projects and some of the clients we have serviced.

www.osisupport.com

There is none - zero - nothing being said here that asserts any claim or accusation. It seems unusual, and everywhere you turn the list of unusual grows, and it seems reasonable that we bring in a digital forensic expert to find out why or tells us there is nothing to be worried about.

This message may include text created with the help of natural language processing.

 Book time to meet with me

**Ryan Wagner**
**Vice President of IT**
**Ohana Growth Partners, LLC**



office 410-252-8058 x109
212 W. Padonia Rd
Timonium, MD 21093
www.planetfitness.com

**"Culture eats strategy for breakfast"**

**Ryan Dillon-Capps**

| | |
|---|---|
| **From:** | Ryan Wagner |
| **Sent:** | Thursday, January 4, 2024 12:24 PM |
| **To:** | Rich Hartman; Glenn Norris; Justin Drummond |
| **Cc:** | hbutler@milesstockbridge.com |
| **Subject:** | FMLA Notice for Mental Health |

Subject: FMLA Notice for Mental Health

Dear HR,

I am writing to inform you that I will be taking leave under the Family and Medical Leave Act (FMLA) for mental health reasons.

This letter is a follow-up to my email on 21 December 2023, in which I informed Glenn Norris, Justin Drummond, and Rich Hartman that I needed to take some time off. I asked for time off to recover, I asked for help, and I asked for some reprieve because the hostile work environment, excessive hours, and the investigation were negatively affecting me physically, emotionally, and mentally. This has not happened, and I have been experiencing daily panic attacks that sometimes last hours, severe anxiety, and every part of my life has been negatively affected.
I am re-requesting a thorough investigation into several unusual and concerning discoveries that appear to contain accounting irregularities, libel, and fraud. I request that the investigation into the allegations of a hostile work environment resume immediately. I also ask that appropriate actions be taken against those responsible in accordance with company policies and applicable laws.

I find it deeply troubling that HR has denied any knowledge of my previous reports nor any knowledge of formal reprimands against those responsible for creating a hostile work environment. This contradicts meetings with the CEO, myself, and these individuals where they were reprimanded and instructed to stop, and contradicts what I was told by the CFO when I asked if the CEO knew about the incidents that occurred after those meetings. The CFO said that the CEO had formally reprimanded the CDO in 2023. According to the email that the CFO inadvertently showed me during a shared screen video call, the head of HR immediately notified the CDO and CMO that I had filed a formal complaint against them.

After reporting the missing invoices and payments to Onsite Solutions, we notified them, and they immediately submitted hundreds of thousands of dollars worth of invoices. However, I would like to know if these invoices can account for the discrepancy extending further back than the last several months. My requests for additional team members have been denied every time despite providing detailed information about my team's workload being too high and how I was already working excessive hours to prevent my team from experiencing the entirety of the excess. After reporting the accounting irregularities and subsequent suspicious emails that appeared to contain libel and fraud, my workload began to increase dramatically, the frequency of our meetings increased, and the deadlines for these requests decreased to the point that I was being asked to provide complete analyses by the next meeting, which was sometimes the next day.

When the investigation began, I pleaded for us to bring in a digital forensic expert to take over because it overlapped the hostile work environment. I was forced to read the emails and conversations of those responsible for the hostile work environment between themselves and others. Communications explained why I had encountered so much hostility and disdain from people I never or rarely interacted with and why it was considered acceptable for a person to start yelling at me randomly. It explained how my interaction with the accounts payable manager, to which I was asking her questions about what she needed and wanted, resulted in another member of the accounts payable team yelling at me to "just get her what she wants." Since being yelled at without cause had become normalized, I responded, "That is the plan and why I am asking her questions." It explains all of those things and more because those responsible for the hostile work environment

1

EXHIBIT 316-0
Hurson District Exhibit 16-0

Monday, May 6, 2024

Ryan Dillon-Capps





Please resume weekly meetings with me. The changes to the department have put us facing the wrong direction. We need to right the ship and get us heading where we want to go and not with vendors who disagree first and further delay resolution

the text may be hard to read but it says code two...

5:31 PM

Tuesday, May 7, 2024

 Glenn Norris

Let's talk tomorrow some time. What time works for you tomorrow? Any time after 1 works for me.

1:59 PM

Ryan Dillon-Capps 

2pm est?

2:56 PM

 Glenn Norris

Ok by me

3:02 PM

Glenn Norris

Please send an invite

3:04 PM

> During the May 8th meeting, Glenn Norris
> misled RDC into believing they were once
> again head of IT.

Ryan Dillon-Capps 
sent, thank you
3:06 PM

 Justin Drummond
Received. I'll have to jump at 2:30
3:07 PM

Ryan Dillon-Capps
understood
3:15 PM

──────── Tuesday, Jun 11, 2024 ────────

Ryan Dillon-Capps 
I understand you both likely have a lot to do today. I
would like to have a unrecorded phone call today
with both of you. No one else, only the three of us
having a private unrecorded and unmonitored phone
call. I need 15 minutes to speak and do not need a
response. Let me know when we can do this today
12:00 PM

 Glenn Norris
Can you call us at 3 pm on our cell phone?
12:46 PM

Ryan Dillon-Capps
Yes. I will call you both at 3
1:43 PM

 Glenn Norris
I have been on with DC govt for 30 minutes. They are
almost done.
3:00 PM

Ryan Dillon-Capps 
okay, 3:10?
3:00 PM



**Justin Drummond**
I am still available
3:01 PM



**Glenn Norris**
I am free now
3:04 PM



**Justin Drummond**
Same
3:04 PM

**Ryan Dillon-Capps**

| | |
|---|---|
| **From:** | Ryan Dillon-Capps |
| **Sent:** | Thursday, June 13, 2024 7:12 AM |
| **To:** | IT.Support; IT.BusinessIntelligence; Glenn Norris; Rich Hartman; Justin Drummond |
| **Subject:** | FMLA Time |

Team, please prepare for tonight. Ann will confirm later today if you are available for 1ˢᵗ thing tomorrow morning checks.

I did most of the prep and testing last night, but I am going to be out for a few hours today and not sure when I will be back on. It depends on how well things go today.

@Glenn Norris @Rich Hartman @Justin Drummond This is FMLA. However, Rich, as you know from yesterday's emails, I didn't end up taking the time expected, and since Friday, I have worked every hour except for the 14 hours of sleep and roughly 10 hours of non-work related tasks, which I think is 139 hours. Not sure how you want to track that.

This message may include text created with the help of natural language processing.

 Book time to meet with me

**Ryan Dillon-Capps**
Vice President of IT
Ohana Growth Partners, LLC



office 410-252-8058 x109
212 W. Padonia Rd
Timonium, MD 21093

www.planetfitness.com

**"Culture eats strategy for breakfast"**

1

Ryan Dillon-Capps

| | |
|---|---|
| **From:** | Ryan Dillon-Capps |
| **Sent:** | Thursday, June 13, 2024 2:48 PM |
| **To:** | Justin Drummond; Stacey Wittelsberger (ESC); C. Victor Brick; Lynne Brick B.S.N. M.A.; Terry Woods (Planet Fitness); Earl Ihle |
| **Subject:** | Re: CRITICAL! READ ME NOW!! Rich Hartman Critical Situation! |
| **Attachments:** | 2023-06-16 1430 RichSuspendedDarren - ClaimingITAudit.pdf |



**OHANA**
Growth Partners

Ohana Growth Partners, LLC
212 W. Padonia Rd.
Timonium, MD 21093

June 13, 2024

Dear Darren,

Effective immediately, June 13, 2024, you are being placed on leave of
absence until further notice with full pay and full benefits while the
company undergoes a review of IT operations.

During this time, you will not have access to company systems or any of
the facilities and are not authorized to do work on behalf of the company.

We will update you once our review is complete.

Sincerely,

Rich Hartman
VP of People and Culture

This message may include text created with the help of natural language processing.

1 of 10

 Book time to meet with me

**Ryan Dillon-Capps**
Vice President of IT
Ohana Growth Partners, LLC



office 410-252-8058 x109
212 W. Padonia Rd
Timonium, MD 21093

www.planetfitness.com

"Culture eats strategy for breakfast"

---

**From:** Ryan Dillon-Capps <Ryan.DillonCapps@ohanagp.com>
**Sent:** Thursday, June 13, 2024 2:46 PM
**To:** Justin Drummond <Justin.Drummond@ohanagp.com>; Stacey Wittelsberger (ESC) <srector@exeterstreetcapital.com>; C. Victor Brick <Victor@ohanagp.com>; Lynne Brick B.S.N. M.A. <lynne@ohanagp.com>; Terry Woods (Planet Fitness) <Terry.Woods@ohanagp.com>; Earl Ihle <Earl.Ihle@ohanagp.com>
**Subject:** CRITICAL! READ ME NOW!! Rich Hartman Critical Situation!

I am writing to inform you of a critical situation that requires your immediate attention and action.

Today, Rich Hartman suspended Darren and handed him a note that Rich created and signed. This action is highly irregular and concerning. In response to this situation, I have instructed my team members to go home immediately for their safety and well-being. I have also texted a picture of the note to Victor, Lynne, and Justin for your reference. I am sending my wife to another location and am working on having security arrive at my home immediately.

In addition to these steps, Rich Hartman's account has been disabled, and all his sessions have been revoked to prevent any further unauthorized actions.

**Immediate Actions Required**

1. **Confirm Receipt and Immediate Attention**: Please confirm that you have received this email and are taking immediate action.
2. **Review of Darren's Suspension**: An urgent review of Darren's suspension and its circumstances is necessary.
3. **Security Measures**: Ensure that all necessary security measures are in place to prevent any further unauthorized actions by Rich Hartman.
4. **Legal Counsel**: If you do not currently have legal representation for this matter, please confirm this in your response and secure an attorney by the first available moment. If you do have legal representation, please provide the contact information of your attorney immediately.

**Next Steps**

We need to address this situation with the utmost urgency to prevent any further disruptions or potential liabilities. Ryan's actions continue to demonstrate attempts to limit damage, while Rich's actions are making this more difficult and continue to jeopardize Ryan's health and Ohana.

Please confirm that you are on this immediately and provide an update on the steps being taken to address this situation.

This message may include text created with the help of natural language processing.

 Book time to meet with me

**Ryan Dillon-Capps**
**Vice President of IT**
**Ohana Growth Partners, LLC**



office 410-252-8058 x109
212 W. Padonia Rd
Timonium, MD 21093
www.planetfitness.com

**"Culture eats strategy for breakfast"**

**From:** Ryan Dillon-Capps <Ryan.DillonCapps@ohanagp.com>
**Sent:** Thursday, June 13, 2024 2:05 PM
**To:** Rich Hartman <Rich.Hartman@ohanagp.com>
**Cc:** Karen Debus <karen.debus@ohanagp.com>; Justin Drummond <Justin.Drummond@ohanagp.com>; Stacey Wittelsberger (ESC) <srector@exeterstreetcapital.com>; C. Victor Brick <Victor@ohanagp.com>; Lynne Brick B.S.N. M.A. <lynne@ohanagp.com>; Terry Woods (Planet Fitness) <Terry.Woods@ohanagp.com>; Earl Ihle <Earl.Ihle@ohanagp.com>; Glenn Norris <glenn@ohanagp.com>
**Subject:** Urgent: Legal Risks Associated with Inaction and Third-Party Vendor Activities

Dear Owners,

I hope this message finds you well. I am writing to outline the significant legal risks associated with the current handling of our internal investigation into fraud and hostile workplace claims. Additionally, I want to highlight the potential liabilities arising from the actions of our third-party vendors, and to stress our duty to stop workplace harassment.

Please note that the following points address only the items we have discussed so far. We have repeatedly provided sufficient notification of these issues and have requested proper investigation with an independent third party, along with lawyers who act in good faith with transparency and honesty. We have also requested to know who is representing you in several possible matters.

**Potential Legal Risks from Inaction**

5. **Retaliation Claims**

Under both Federal and Maryland law, it is unlawful to retaliate against an employee for reporting misconduct. Our failure to adequately address Ryan's complaints could be interpreted as retaliation, particularly if adverse actions follow his reports.

- **Federal Law:** Title VII of the Civil Rights Act of 1964
- **Maryland Law:** MD Fair Employment Practices Act
- **Case Citation:** *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006).

6. **Hostile Work Environment Claims**

Ignoring the allegations of a hostile work environment, especially those involving discrimination or harassment, can lead to significant legal consequences. The allegations of fabricated documents and unauthorized use of Ryan's name may support such a claim.

- **Federal Law:** Title VII of the Civil Rights Act of 1964
- **Maryland Law:** MD Fair Employment Practices Act
- **Case Citation:** *Harris v. Forklift Systems, Inc.*, 510 U.S. 17 (1993).

7. **Whistleblower Protections**

Our obligations under the Sarbanes-Oxley Act (SOX) and Maryland's Whistleblower Law require that we properly investigate reports of fraudulent activities. Failure to do so may be construed as retaliation against Ryan for his whistleblowing activities.

- **Federal Law:** Sarbanes-Oxley Act (SOX)
- **Maryland Law:** MD Whistleblower Law
- **Case Citation:** *Lawson v. FMR LLC*, 571 U.S. 429 (2014).

8. **FMLA Interference and Retaliation**

Ryan has been on intermittent FMLA leave since January 4, 2024. Any adverse actions or failure to properly investigate his complaints during this period could constitute FMLA interference or retaliation.

- **Federal Law:** Family and Medical Leave Act (FMLA)
- **Case Citation:** *Hoge v. Honda of Am. Mfg., Inc.*, 384 F.3d 238 (6th Cir. 2004).

**Duty to Stop Harassment**

Employers have a legal duty to take reasonable steps to prevent and promptly correct any harassment in the workplace. The continued employment of Andrew Dinh, despite allegations of misconduct, creates liability for the company. Failure to address these allegations adequately could be seen as neglecting this duty.

1. **Liability for Failing to Act**

   o **Federal Law:** Title VII of the Civil Rights Act of 1964 mandates employers to maintain a workplace free of harassment and discrimination.
   o **Case Citation:** *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998) established that employers are liable for failing to exercise reasonable care to prevent and correct promptly any discriminatory or harassing behavior.
   o **Case Citation:** *Ellerth v. Burlington Industries, Inc.*, 524 U.S. 742 (1998) affirmed that an employer can be held liable if it does not take proper steps to address harassment.

**Potential Liabilities from Third-Party Vendor Activities**

The unauthorized use of Ryan's name by a third-party vendor can create significant legal liabilities for our company. Below are the relevant laws and case citations:

1. **Wire Fraud**

Submitting false attestations via an online form by third-party vendors could implicate our company if part of a scheme to defraud.

- **Federal Law:** 18 U.S.C. § 1343 (Wire Fraud)
- **Case Citation:** *Pasquantino v. United States*, 544 U.S. 349 (2005).

2. **Identity Theft**

The unauthorized use of personal identifying information by third-party vendors could lead to identity theft charges against the company.

- **Federal Law:** 18 U.S.C. § 1028A (Identity Theft)
- **Case Citation:** *United States v. Blixt*, 548 F.3d 882 (9th Cir. 2008).

3. **Unauthorized Access (Computer Fraud)**

Any unauthorized access to our computer systems by third-party vendors to submit false information could be considered computer fraud, for which the company may also be held liable.

- **Federal Law:** 18 U.S.C. § 1030 (Computer Fraud)
- **Case Citation:** *United States v. Nosal*, 676 F.3d 854 (9th Cir. 2012).

4. **Negligent Hiring and Supervision**

If a company fails to properly vet third-party vendors and those vendors engage in unlawful activities, the company can be held liable for negligent hiring and supervision. This includes the unauthorized use of an employee's personal identifying information, which can create direct liability for the company due to its negligence in hiring and oversight.

- **Maryland Law:** An employer can be held liable for negligent hiring if it fails to exercise reasonable care in selecting an independent contractor who is incompetent or unfit for the work, and this negligence causes harm.
- **Case Citation:** *Latty v. St. Joseph's Soc. of Sacred Heart, Inc.*, 198 Md. App. 254 (2011).

**Immediate Actions Required**

Given the serious nature of these issues, we require an update on the steps being taken to address them. It is now past 2 p.m., and Rich indicated action would be taken after 3 p.m. It is critical that Rich's actions are stopped immediately.

If you currently do not have legal representation for these matters, please confirm this in your response. You will have until [specific date, e.g., Monday, June 19, 2024] to secure an attorney. If you do have legal representation, please provide the contact information of your attorney by the same deadline.

**Next Steps**

We are preparing to take the next steps to ensure that these issues are addressed properly. We do not require a member of ownership to agree with the facts as presented, but we do expect acknowledgment that we will be speaking with an attorney about the items disclosed here and potentially other items that have not yet been disclosed. We need assurance that you will come to the table in good faith.

**Conclusion**

Ryan's actions continue to demonstrate attempts to limit damage, while Rich and Glenn's actions are making this more difficult and continue to jeopardize Ryan's health and Ohana. It is imperative that we take immediate and comprehensive actions to address these issues. Inaction or insufficient responses may lead to significant legal and financial liabilities for our organization.

Thank you for your attention to this critical issue.

This message may include text created with the help of natural language processing.

 Book time to meet with me

**Ryan Dillon-Capps**
Vice President of IT
Ohana Growth Partners, LLC


office 410-252-8058 x109
212 W. Padonia Rd
Timonium, MD 21093
www.planetfitness.com

**"Culture eats strategy for breakfast"**

---

**From:** Ryan Dillon-Capps <Ryan.DillonCapps@ohanagp.com>
**Sent:** Thursday, June 13, 2024 12:02 PM
**To:** Ryan Dillon-Capps <Ryan.DillonCapps@ohanagp.com>; Rich Hartman <Rich.Hartman@ohanagp.com>
**Cc:** Karen Debus <karen.debus@ohanagp.com>; Justin Drummond <Justin.Drummond@ohanagp.com>; Stacey Wittelsberger (ESC) <srector@exeterstreetcapital.com>; C. Victor Brick <Victor@ohanagp.com>; Lynne Brick B.S.N. M.A. <lynne@ohanagp.com>; Terry Woods (Planet Fitness) <Terry.Woods@ohanagp.com>; Earl Ihle <Earl.Ihle@ohanagp.com>; Glenn Norris <glenn@ohanagp.com>
**Subject:** Re: Immediate Response to Rich Hartman Addressing Illegality and Cease and Desist

@Rich Hartman Silly Forms I will try this again with the form corrected

I hope this message finds you well.

I am writing to formally address and respond to the recent directives and communications that have raised significant legal and ethical concerns.

**Illegal Directives and Retaliatory Actions**

6 of 10

The email you sent today, June 13, 2024, demanding the addition of Global Administrators within a six-hour window under threat of insubordination charges, is not only inappropriate but also illegal. These actions constitute retaliation under the Family and Medical Leave Act (FMLA) and relevant Maryland state laws. Specifically:

5. **Family and Medical Leave Act (FMLA) Violations**:

   o  Under 29 U.S.C. § 2615(a), it is unlawful for an employer to retaliate against an employee for exercising their rights under the FMLA. The directives and threats issued in your email are clear acts of retaliation against me for taking FMLA leave.

6. **Maryland Retaliation Laws**:

   o  According to Md. Code Ann., Lab. & Empl. § 3-801 et seq., retaliation against employees for reporting workplace violations or exercising their rights is prohibited. Your actions have created a hostile work environment and have directly undermined my professional responsibilities.

**Cease and Desist Demand**

Effective immediately, I demand that you cease and desist from any further retaliatory actions and coercive threats. This includes, but is not limited to, the following:

1. **Retaliatory Directives**: Any orders or demands that threaten disciplinary action or undermine my role and responsibilities.
2. **Coercive Threats**: Any communications that use threats of insubordination or other punitive measures as a means of compliance.

Failure to comply with this cease and desist demand will leave me with no option but to pursue all available legal remedies to protect my rights and ensure a safe and fair working environment.

**Notification of Request for Confirmation**  There never was any refusal

Please be aware that I have requested Hartman Executive Advisors, including Phil Leadore and Dan Levett , to confirm their qualifications and involvement in the PCI DSS v4 review. Ownership have been included in this communication thread to ensure full transparency and oversight.

**Request for Confirmation**

**Please confirm in writing by 1:30 pm EST** that you have **received this cease and desist notice** and that you **will comply with its terms**. Failure to provide this confirmation will be taken as a refusal to comply, and I will proceed accordingly.

Thank you for your immediate attention to this serious matter.

This message may include text created with the help of natural language processing.

Book time to meet with me

**Ryan Dillon-Capps**
**Vice President of IT**
**Ohana Growth Partners, LLC**

7 of 10



office 410-252-8058 x109
212 W. Padonia Rd
Timonium, MD 21093
www.planetfitness.com

**"Culture eats strategy for breakfast"**

**From:** Ryan Dillon-Capps <Ryan.DillonCapps@ohanagp.com>
**Sent:** Thursday, June 13, 2024 11:57 AM
**To:** Rich Hartman <Rich.Hartman@ohanagp.com>
**Cc:** Karen Debus <karen.debus@ohanagp.com>; Justin Drummond <Justin.Drummond@ohanagp.com>; Stacey Wittelsberger (ESC) <srector@exeterstreetcapital.com>; C. Victor Brick <Victor@ohanagp.com>; Lynne Brick B.S.N. M.A. <lynne@ohanagp.com>; Terry Woods (Planet Fitness) <Terry.Woods@ohanagp.com>; Earl Ihle <Earl.Ihle@ohanagp.com>; Glenn Norris <glenn@ohanagp.com>
**Subject:** Immediate Response to Rich Hartman Addressing Illegality and Cease and Desist

@Rich Hartman

I hope this message finds you well.

I am writing to formally address and respond to the recent directives and communications that have raised significant legal and ethical concerns.

**Illegal Directives and Retaliatory Actions**

The email you sent today, June 13, 2024, demanding the addition of Global Administrators within a six-hour window under threat of insubordination charges, is not only inappropriate but also illegal. These actions constitute retaliation under the Family and Medical Leave Act (FMLA) and relevant Maryland state laws. Specifically:

3. **Family and Medical Leave Act (FMLA) Violations**:

    o   Under 29 U.S.C. § 2615(a), it is unlawful for an employer to retaliate against an employee for exercising their rights under the FMLA. The directives and threats issued in your email are clear acts of retaliation against me for taking FMLA leave.

4. **Maryland Retaliation Laws**:

    o   According to Md. Code Ann., Lab. & Empl. § 3-801 et seq., retaliation against employees for reporting workplace violations or exercising their rights is prohibited. Your actions have created a hostile work environment and have directly undermined my professional responsibilities.

**Cease and Desist Demand**

Effective immediately, I demand that you cease and desist from any further retaliatory actions and coercive threats. This includes, but is not limited to, the following:

1. **Retaliatory Directives:** Any orders or demands that threaten disciplinary action or undermine my role and responsibilities.



office 410-252-8058 x109
212 W. Padonia Rd
Timonium, MD 21093
www.planetfitness.com

### "Culture eats strategy for breakfast"

**From:** Ryan Dillon-Capps <Ryan.DillonCapps@ohanagp.com>
**Sent:** Thursday, June 13, 2024 11:57 AM
**To:** Rich Hartman <Rich.Hartman@ohanagp.com>
**Cc:** Karen Debus <karen.debus@ohanagp.com>; Justin Drummond <Justin.Drummond@ohanagp.com>; Stacey
Wittelsberger (ESC) <srector@exeterstreetcapital.com>; C. Victor Brick <Victor@ohanagp.com>; Lynne Brick B.S.N. M.A.
<lynne@ohanagp.com>; Terry Woods (Planet Fitness) <Terry.Woods@ohanagp.com>; Earl Ihle
<Earl.Ihle@____agp.com>; Glenn Norris <glenn@ohanagp.com>
**Subject:** ____ Response to Rich Hartman Addressing Illegality and Cease and Desist

@Rich Hart__

I hope this messag_____ll.

I am writing to formally _____spond to the recent directives _____ations that have raised
significant legal and ethica_____

**Illegal Directives and Retaliat___**

The email you sent today, June 13, 20_____ th_____obal Administrators within a six-hour
window under threat of insubordination_____opriate but also illegal. These actions constitute
retaliation under the Family and Medical L_____elevant Maryland state laws. Specifically:

3. **Family and Medical Leave Act (FM___**

   o  Under 29 U.S.C. § 2615_____er to retaliate against an employee for
      exercising their right_____LA. Th_____d threats issued in your email are clear acts
      of retaliation aga_____ng FMLA leav__

4. **Maryland Retaliati___**

   o  Accord_____e Ann., Lab. & Empl. § 3-801 et se_____gainst employees for
      rep_____e violations or exercising their rights is p_____r actions have created a
      _____vironment and have directly undermined my p_____ponsibilities.

**Cease an_____nd**

Effectiv_____ly, I demand that you cease and desist from any further retaliatory a_____coercive
threats. _____udes, but is not limited to, the following:

1. **Retaliatory Directives:** Any orders or demands that threaten disciplinary action or undermine my role and
   responsibilities.



**ercive Threats:** Any communications that use threats of insubordinati... ...punitive measures as ...ns of compliance.

Failu... ...ith this cease and desist demand will leave me with n... ...pursue all available legal remedie... ...rights and ensure a safe and fair working enviro...

**Notification** ... **Confirmation**

Please be aware th... ...sted Hartman Executive A... ...ng [specific names], to confirm their qualifications and inv... ...PCI DSS v4 review. ... ...e be... ...munication thread to ensure full tran... ...oversight.

This email is a duplicate because the "specific names" were not stated.

**Request for Confirmation**

# Please confirm in writin... ...EST that you have **received this cease and desist notice** and that you **will** ...th its terms**. Failure to provide this confirmation will be taken as a refusal to comply, an... ...ngly.

Thank you for your immediate... ...s ser...

This message may includ... ...he help of natural language process...

📅 Book ti... ...th me

**Rya... ...ps**
**Vi... ...t of IT**
...wth Partners, LLC**

**OHANA**
Growth Partners
office 410-252-S0S8 x109
212 W. Padonia Rd
Timonium, MD 21093
www.planetfitness.com

*"Culture eats strategy for breakfast"*

---

**From:** Rich Hartman <Rich.Hartman@ohanagp.com>
**Sent:** Thursday, June 13, 2024 9:01 AM
**To:** Ryan Dillon-Capps <Ryan.Wagner@ohanagp.com>
**Cc:** Karen Debus <karen.debus@ohanagp.com>
**Subject:** Acknowledgement Required

Ryan,
You have received repeated and multiple demands from your supervisor, the company president, and the owner of Ohana Growth Partners (OGP) since May 21, 2024 to add them and other individuals as Global Administrators. You have repeatedly refused and failed to obey these directives. Such conduct constitutes insubordination which violates Section 1 of your January 8, 2020 Employment and Non-Disclosure Agreement requiring that you "faithfully and diligently perform . . . duties as may be assigned by management from time to time." In addition, the

2. **Coercive Threats**: Any communications that use threats of insubordination or other punitive measures as a means of compliance.

Failure to comply with this cease and desist demand will leave me with no option but to pursue all available legal remedies to protect my rights and ensure a safe and fair working environment.

**Notification of Request for Confirmation**

Please be aware that I have requested Hartman Executive Advisors, including [specific names], to confirm their qualifications and involvement in the PCI DSS v4 review. Ownership have been included in this communication thread to ensure full transparency and oversight.

**Request for Confirmation**

**Please confirm in writing by 1:30 pm EST** that you have **received this cease and desist notice** and that you **will comply with its terms**. Failure to provide this confirmation will be taken as a refusal to comply, and I will proceed accordingly.

Thank you for your immediate attention to this serious matter.

This message may include text created with the help of natural language processing.

 Book time to meet with me

**Ryan Dillon-Capps**
**Vice President of IT**
**Ohana Growth Partners, LLC**


office 410-252-8058 x109
212 W. Padonia Rd
Timonium, MD 21093
www.planetfitness.com

**"Culture eats strategy for breakfast"**

---

**From:** Rich Hartman <Rich.Hartman@ohanagp.com>
**Sent:** Thursday, June 13, 2024 9:01 AM
**To:** Ryan Dillon-Capps <Ryan.Wagner@ohanagp.com>
**Cc:** Karen Debus <karen.debus@ohanagp.com>
**Subject:** Acknowledgement Required

Ryan,
You have received repeated and multiple demands from your supervisor, the company president, and the owner of Ohana Growth Partners (OGP) since May 21, 2024 to add them and other individuals as Global Administrators. You have repeatedly refused and failed to obey these directives. Such conduct constitutes insubordination which violates Section 1 of your January 8, 2020 Employment and Non-Disclosure Agreement requiring that you "faithfully and diligently perform . . . duties as may be assigned by management from time to time." In addition, the

refusals violate Section 6.1 of the Ohana Associates Handbook ("Standards of Conduct") which prohibits the "failure to follow lawful instructions of a supervisor."

There are countless reasons why a company should have several Global Administrators, whether being tied up in business meetings, vacations, leaves of absence, or other activities that cause a single Global Administrator to be unavailable. Your communication yesterday about your need for FMLA time off, to which you are entitled, makes self-evident the reasons for the company's demand to have several Global Administrators.

Glenn has signed an agreement on behalf of OGP with Hartman Executive Advisors (HEA) and demands that you add Phil Leadore from HEA as a Global Administrator by 3 pm today. We also instruct you to hold off on any major updates or changes to the system until HEA has had a chance to evaluate Ohana's IT systems.

We have evaluated the multitude of reasons for your refusal to obey management's directives. We are not looking to debate these reasons any further, rather we require a simple acknowledgment that you will follow the directive or not and then do so immediately by 3:00 pm today. Failure to acknowledge this directive and to add Phil Leadore as a Global Administrator by 3:00 pm today will require the company to take appropriate action.

**Rich Hartman**
**VP of People and Culture**
**Ohana Growth Partners, LLC**



office 410-252-8058 x114
212 W. Padonia Rd
Timonium, MD 21093
www.planetfitness.com

**"Culture eats strategy for breakfast"**

Thursday, Jun 13, 2024



**Darren Koritzka**



2:20 PM

Delivered



**Darren Koritzka**
I'm taking this as I'm being let go
2:23 PM

**Ryan Dillon-Capps**
document what they took   who is there
2:23 PM



**Ryan Dillon-Capps**
i sent it to the owners
2:23 PM





**Darren Koritzka**
Left my computer there and they told me to sign out of
anything at home
2:25 PM

**Darren Koritzka**
And not to do any support if anybody comes bugging
me
2:25 PM

Ryan Dillon-Capps

Rich was served with a cease and desist letter not too long ago

2:27 PM



Ryan Dillon-Capps

I am sending C away for safety

2:28 PM



Ryan Dillon-Capps

was ann there?

2:28 PM



Ryan Dillon-Capps

is she okay

2:28 PM



**D** Darren Koritzka

Yes

2:28 PM

**D** Darren Koritzka

And I don't know if she was okay

2:28 PM

Ryan Dillon-Capps

i told her to go home immediately

2:31 PM



Ryan Dillon-Capps

i wonder if he believes something to be on the downstairs servers

2:32 PM



**D** Darren Koritzka

A cease and desist over what?

2:32 PM

Ryan Dillon-Capps 

legal violations, let me get to the owners and others quickly

2:34 PM

 Darren Koritzka

I'm putting in apps and resumes now, in case this goes south.

4:47 PM

Ryan Dillon-Capps 

are you awake?

11:47 PM

———— Thursday, Jun 13, 2024 ————

Ryan Dillon-Capps 

where are you.  Rich was served with a cease and
desist letter a little bit ago

2:29 PM

 Mareann Piñera

I'm in the office

2:29 PM

Ryan Dillon-Capps 

this is how he responded.  Do you have your letter

2:29 PM

 Mareann Piñera

What letter

2:30 PM

Ryan Dillon-Capps 

interesting.  Pack up your stuff and go home
immediately

2:30 PM

Ryan Dillon-Capps 

if someone engages you let me know

2:31 PM

Ryan Dillon-Capps

this is going to the owners and steps are being taken

2:31 PM

 Mareann Piñera

I'm walking out

2:32 PM

Ryan Dillon-Capps 

👍

2:32 PM

 Mareann Piñera
What's going on?
2:32 PM

Ryan Dillon-Capps 
We served rich a cease and desist letter and he
appears to be taking it poorly
2:33 PM

 Mareann Piñera
Oh ok. Thank you! I appreciate your concern. Driving
home now.
2:36 PM

Ryan Dillon-Capps 
absolutely!   let me know if anything seems even a
little unusual
2:48 PM

 Mareann Piñera
Will do
3:34 PM

Thursday, Jun 13, 2024

Ryan Dillon-Capps 



2:22 PM

Thursday, Jun 13, 2024

Ryan Dillon-Capps 



2:22 PM

Thursday, Jun 13, 2024

Ryan Dillon-Capps



This is not a joke.

At 12:02PM today Rich Hartman was served with a Cease and Desist Letter. At 2:05 a thread where Rich and ownership were informed of several key risks some of which were the basis of the cease and desist letter. With in 30 minutes, Rich had typed up, signed, and present Darren with a letter claiming he was suspended for an IT Audit. Justin, Victor, and Lynne immediately received a copy via text and a follow up email. they are all on leave and screenshot shows my attempt to get them via group chat. At this time it appears that Rich has acted alone and I have sent ann home for safety. Rich's account has been disabled and seasiona revoked. RB and Michael crowly were notified and directed to speak to jd, victor, and lynne (and chuck) Help Desk and Shannon and Ronaldo are also aware. I dont think I can disclose too much, but I need help to ensure there is oversight in decisons

4:03 PM

Ryan Dillon-Capps

I am sending my wife away because I do not know what he might do

4:04 PM

Ryan Dillon-Capps 



4:05 PM

 Karen Cepress
Keep us updated.
4:12 PM

 Allyson Ratliff
Is there anything we need to do?
4:12 PM

Ryan Dillon-Capps 
I do not know
4:13 PM

Ryan Dillon-Capps 
yet
4:13 PM

 Karen Cepress
What the heck is seasiona?
4:21 PM

Ryan Dillon-Capps 
?
4:21 PM



**Allyson Ratliff**
Sounds like a nasty cold sore!
4:21 PM



**Karen Cepress**
Ryan, you're the one who used that word!
4:22 PM

**Ryan Dillon-Capps** 
do you mean the app sessions?
4:22 PM

**Ryan Dillon-Capps** 
it is an app that people use when they want to be sneaky
4:23 PM

**Ryan Dillon-Capps** 
its encrypted
4:23 PM



**Karen Cepress**
Aahhh
4:23 PM



**Allyson Ratliff**
😊 - more IT stuff I don't understand! Shocking!
4:23 PM

**Ryan Dillon-Capps** 
haha its for sneaky snakes who want to ssssssneak around
4:36 PM



**Allyson Ratliff**
Interesting
4:50 PM

Hurson District Exhibit 16-0          Exhibit Page # 36 of 160          EXHIBIT 316-0

Ryan Dillon-Capps 

okay, victor and lynne are with vikki... nothing else was said, but it doesnt sound good. they have given justin full power

5:33 PM

Ryan Dillon-Capps 

Justin is aware of most of it now

5:33 PM

 Karen Cepress

Ryan, this is concerning.

5:33 PM

Ryan Dillon-Capps 

it is...

5:33 PM

Ryan Dillon-Capps 

i trust that it doesnt go to anyone else not victor,, lynnne, and justin

5:34 PM

Ryan Dillon-Capps 

tbh, justin is processing

5:34 PM

Ryan Dillon-Capps 

If you have't ever seen justin think about his wife... he loves her so so much. I do not even know her and can tell she is his bright sun to that allows him to find his happy space as a wallflower

I have so much respect for how much he stays out of that confort zone, but this must feel like a personal nightmare

5:38 PM

EXHIBIT   100



Ryan Dillon-Capps

If something is needed at some point, I think support
is what will be needed

5:39 PM



Karen Cepress

Understood!  I'll do my best

5:40 PM



Allyson Ratliff

Ditto

5:42 PM

Thursday, Jun 13, 2024

**Ryan Dillon-Capps**

I need someone to acknowledge they are on it and getting Rich to calm down or something

3:29 PM

**Ryan Dillon-Capps**

I am worried for my safety and my wife, I am sending her to safety and silence is not assuring me that anyone is on this

3:32 PM

**Ryan Dillon-Capps**

Michael and Ryan were notified to make decisons for BB and I directed them to seek guidance from you 3 and chuck

3:43 PM

**Ryan Dillon-Capps**

I have to assume I am alone because Beyer, Gerber, and Glenn are not people I can trust at this time.

Please Confirm! Don't leave me as the most senior executive to make decisions for Ohana

3:52 PM



**Justin Drummond**

Ryan, please know we appreciate your concern for the well-being of the company, but the company's request has been that you immediately instate the admin rights for Mr. Leodore and our owners will accept whatever consequences that may follow.

4:06 PM

Mr Leadore was not involved and remained unresponsive.

**Ryan Dillon-Capps**

Mr Leodore is unresponsive

4:07 PM

Ryan Dillon-Capps

same with ne levett

4:07 PM



Ryan Dillon-Capps

no one wants to touch this

4:07 PM

Ryan Dillon-Capps

this is not the time for this, Darren is not even involved in the investigations.  This is far beyond reasonable

4:09 PM

Ryan Dillon-Capps

whatever you have  been told or believe, I am acting like we have a man with nothing to lose who saw that email and is dangerous

4:10 PM

Ryan Dillon-Capps

sending Darren away...  no explaination

4:10 PM



Ryan Dillon-Capps

its irradic behavior

4:10 PM

Ryan Dillon-Capps

I need to assume that his actions are indicating he believes he is at risk and that is danger

4:12 PM

 Victor Brick

Ryan. Lynne and I are dealing with Vicki's cancer treatment. Please stop including me in these texts immediately. Justin is the president of the company and has complete authority to handle this situation. I must insist that you stop texting me.

4:13 PM



Ryan Dillon-Capps

understood and all my well wishes for all of you, I will ask my mom to pray for all of you

mahalo

4:14 PM

 

Victor Brick

🙏

4:14 PM

Ryan Dillon-Capps



I will pray without ceasing for Vicki brick and you and Caroline like I always do

4:21 PM - AT&T

From my mom

7:19 PM

 

Victor Brick

🙏

7:59 PM

Friday, Jun 7, 2024

Ryan Dillon-Capps

I believe that I may have found a way for you to have
access to a Global Admin account. Can you review
the PCI DSS 4 documentation before 5 pm on Monday
and talk with me on Tuesday?

5:35 PM



Justin Drummond

Hi Ryan.
I should be able to review this before Tuesday.

6:19 PM

Ryan Dillon-Capps

Sounds Great! Let me know on Monday and we can
coordinate the time for Tuesday

6:19 PM



Justin Drummond

Did you already send the documentation to review?

6:21 PM

Ryan Dillon-Capps



I sent a link in teams to the docs page which has requirements document.

here is the link
https://www.pcisecuritystandards.org/document_library/

and the first one is the primary doc
https://docs-prv.pcisecuritystandards.org/PCI%20DSS/Standard/PCI-DSS-v4_0.pdf

6:24 PM

Ryan Dillon-Capps

there are other docs that are helpful but not essential

6:24 PM



Justin Drummond

Understood

6:25 PM

Written Accord - There was no issue, there was no refusal

Ryan Dillon-Capps

have you ever heard me talk about the 3 CEO letter story before? I was just thinking about that, and this is not a coded message but just a random thought keeps popping up in my head lately

6:27 PM

Ryan Dillon-Capps

have a good weekend 🐝

6:27 PM



**Justin Drummond**
No I have not. You too
6:28 PM

———— Monday, Jun 10, 2024 ————



**Justin Drummond**
Hi Ryan. I've seen a few emails go out today from you. I've been trying to connect on Teams about the iPad that arrived last week. Let me know when is best for you.

I am out of town Wednesday through the rest of the week.
1:17 PM

Ryan Dillon-Capps
i have back to back meetings until 4
1:24 PM



Ryan Dillon-Capps
i can also do now for like20
1:25 PM



**Justin Drummond**
I stepped out to grab lunch. I'll be back in 10 min
1:26 PM

Ryan Dillon-Capps
okay, minimally we can sync on what is neeee and I can msg later tonight when we are ready to do next steps
1:27 PM





**Justin Drummond**
Ok.teams Call when I'm back at my desk?
1:29 PM

———— Thursday, Jun 13, 2024 ————

Ryan Dillon-Capps 



2:21 PM



Justin Drummond

Ryan, I cannot answer right now. I'm out of town. Is there something you can text?

3:12 PM

Ryan Dillon-Capps

We need to talk  now.. what I know puts this a  safety izHe

3:12 PM

Ryan Dillon-Capps

Rich has gone off

3:13 PM

Ryan Dillon-Capps

emminent risk

3:13 PM

Ryan Dillon-Capps

I sent my people home for their safety

3:13 PM

Ryan Dillon-Capps

read your email

3:13 PM



Ryan Dillon-Capps 

i am about to get a resteainig order.. I am sending my wife away

3:14 PM

Ryan Dillon-Capps 

he has a cease and desist and then sees the legal context and less than 30 min later is suspending darren for an it audit

3:15 PM

Ryan Dillon-Capps 

that company glenn contacted appears to  not want any part of this

3:15 PM

Ryan Dillon-Capps 

no idea what glenn said buy mine are in writing

3:15 PM

Ryan Dillon-Capps 

if I dont get contact like very soon.. I am doing whatever my attorney said no question

3:18 PM

Ryan Dillon-Capps 

i will not risk safety

3:18 PM

Ryan Dillon-Capps 

says

3:18 PM

Ryan Dillon-Capps 

to be blunt.. very very bad... no one will ever give us money again company go bye bye... that is the level of risk.  i am not an auditor, we need help now

3:19 PM

EXHIBIT  100

Ryan Dillon-Capps

tell me you are at least talking to victor , lyne, and terry

3:28 PM



Ryan Dillon-Capps

lynne

3:28 PM

Ryan Dillon-Capps

call? talk? please?

4:15 PM



Justin Drummond

Ryan, I understand that you are concerned about the company but as I stated in the text chain with the Bricks, the company has, again, requested something from you to be done. The company will handle what's to follow after you instate the representative.

Also, please know there should be no fear of danger for anyone.

4:19 PM



Justin Drummond

I am not in good cellular service location. I cannot answer the phone   He is on another Call

4:20 PM

Ryan Dillon-Capps

the people who you are asking .... for starters they appear to have no interest in being involved

4:20 PM



Ryan Dillon-Capps

anyone who whos even a tiny bit runs

4:21 PM



**Justin Drummond**

No one is running. The company is working with professionals to handle this situation. We will update you shortly

4:25 PM

Ryan Dillon-Capps

I have said over and over again. that I want help, I emailed them at the start of this and begged them to help us

4:25 PM

Ryan Dillon-Capps

they wont respond

4:25 PM

Ryan Dillon-Capps

after the email they said I will get an update from glennn . silence

4:25 PM

Ryan Dillon-Capps

i will forward you the email

4:26 PM

Ryan Dillon-Capps

two emails sent

4:29 PM

Ryan Dillon-Capps

anyone who is even semi independant, they will not want to be involved

4:29 PM

Ryan Dillon-Capps

I wish they would

4:30 PM

Ryan Dillon-Capps

i want them to be backup right ow

4:30 PM

Ryan Dillon-Capps

you think they are going to side with glenn and rich..
they will not

4:30 PM

Ryan Dillon-Capps

where is holly?

4:30 PM

Ryan Dillon-Capps

you ever seen no lawyers?

4:31 PM

Ryan Dillon-Capps

Every red flag possible and no one responds to a
cease and desist without a lawyer

4:34 PM

Ryan Dillon-Capps

let alone take action against a neutral party but who is
the only person on site who can understand tech

4:35 PM

Ryan Dillon-Capps

If the head of IT, President and CEO are not involved
in an IT audit.... and rich just suspended an employee
without cause

4:39 PM

Ryan Dillon-Capps

Call ciera and ask her why she said 1 year to leeann

4:40 PM

Ryan Dillon-Capps

I would have gone to Glenn if I were her and I would have also said 1 year if he told me to with cause

4:40 PM

Ryan Dillon-Capps

2 days later, Glenn isn't auditing onsite .. he is auditing me

4:41 PM

Ryan Dillon-Capps
maybe sooner
4:41 PM

Ryan Dillon-Capps
he notified matt 2 days later
4:41 PM

Ryan Dillon-Capps
invoices had not even come in
4:41 PM

Ryan Dillon-Capps

I can give you access to sage ... pull reports I havent since lastyear

4:42 PM

Ryan Dillon-Capps

but this week I looked at the intranet and i have never seen so many tiny 30$ invoices for them

4:43 PM

Ryan Dillon-Capps

we have backups from sept and nov, but a chunk are missing

4:44 PM

Ryan Dillon-Capps

then they used unfinished work to justify the large
prepaid amounts rolling over to avoid flag in audits

4:50 PM

Ryan Dillon-Capps

club opens and the repeat

4:50 PM

Ryan Dillon-Capps

so of they had invoices the math would be too high

4:51 PM

Ryan Dillon-Capps

auditors might notice

4:51 PM

Ryan Dillon-Capps

but no one looks at too low

4:51 PM

Ryan Dillon-Capps

i am not a forensic accountant

4:51 PM

Ryan Dillon-Capps

I do not know what bill, glenn, and i guess rich are
exactly doing

4:51 PM

Ryan Dillon-Capps

i know people

4:52 PM

Ryan Dillon-Capps

I have been around enough companies going through
the other side to know what it looks like

4:52 PM

EXHIBIT  100

Conversation between Ryan Dillon-Capps and Justin Drummond

Ryan Dillon-Capps
when josh beyer joined
4:45 PM

Ryan Dillon-Capps
the ediscory followed him
4:45 PM

Ryan Dillon-Capps
during vetting he was giving pfhq documents to glenn
4:45 PM

Ryan Dillon-Capps
phhq email to his yahoo email to glenn
4:45 PM

Ryan Dillon-Capps
i believe they could have been used to target ada and knownwhen and where to buy
4:46 PM

Ryan Dillon-Capps
i did not see victor on then
4:46 PM

Ryan Dillon-Capps
and where glenn goofed during on boarding and used the wrong email.  victors emails are consistent and correct
4:47 PM

Ryan Dillon-Capps
my guess is that bill figured something out and then however that conversation went bill then had all invoices redirected to him
4:49 PM

Ryan Dillon-Capps

no one innocent 2 days in starta to audit the
whitleblower

4:53 PM

Ryan Dillon-Capps

that is insane

4:53 PM

Ryan Dillon-Capps

no one avoids accounting for years of incorrect
numbers that at quick glance cierra knew were
impossibke

4:55 PM

Ryan Dillon-Capps

and even if I am 100% wrong... no one does this if
they are have nothing to hide

4:56 PM

Ryan Dillon-Capps

it is illegal to not do it

4:56 PM

Ryan Dillon-Capps

who commits a crime to not check numbers even
once

4:56 PM

Ryan Dillon-Capps

who accepts a 75k number when every other group
reported double

4:57 PM

Ryan Dillon-Capps

you saw him when i did the final invoice by invoice

4:57 PM

Ryan Dillon-Capps
not even a glance at it
4:57 PM

Ryan Dillon-Capps
then .. do it again for another club
4:58 PM

Ryan Dillon-Capps
you are the CFO who submitted a number half rhe
actual and you find out....
4:58 PM

Ryan Dillon-Capps
do you respond that way
4:58 PM

Ryan Dillon-Capps
he wasnt even looking at the screen
4:59 PM

Ryan Dillon-Capps
remember, he was fiddling with papers
4:59 PM

Ryan Dillon-Capps
how did I go from josh beyer trying to make him self
feel better by threatening me to day I aint C level
YET  and weeks before oct 16 the day i found but
technically Cierra reported it.. glenn approved a year
long commitment to impact the budget with a phone
call
5:01 PM

Ryan Dillon-Capps
all i said was it cost this much and he said okay let
matt know
5:01 PM

Ryan Dillon-Capps
Then 2 days after reporting... auding my invoices?
5:01 PM

Ryan Dillon-Capps
that is a massive jump
5:02 PM

Ryan Dillon-Capps
he told me infront of you... no investigation not needed
5:02 PM

Ryan Dillon-Capps
that itself is a crime
5:03 PM

Ryan Dillon-Capps
and why not
5:03 PM

Ryan Dillon-Capps
the very act to recieve invoices is validation
5:03 PM

Ryan Dillon-Capps
standard proceedure would say.  now its a audit for all years
5:03 PM

Ryan Dillon-Capps
Kris Kroona has a forensic accountant
5:04 PM

Ryan Dillon-Capps
we can get our own
5:04 PM

Ryan Dillon-Capps

disaster hits ohana if we have officials arrive before
we can establish good faith

5:04 PM

Ryan Dillon-Capps 

we cant undo the past

5:05 PM

Ryan Dillon-Capps

we can take take action to find out what did Rich freak
out about

5:05 PM

 Justin Drummond

Ryan you have laid out your allegations and claims. You
do not need to continue to text me all of this. As stated
before we are working with professionals and will be in
touch.

5:06 PM

Ryan Dillon-Capps 

i need to meet them now

5:06 PM

Ryan Dillon-Capps 

this is the start

5:06 PM

Ryan Dillon-Capps 

not all of jt

5:06 PM

Ryan Dillon-Capps 

and this is the first i am hearing this

5:07 PM

Ryan Dillon-Capps
phil and dan would have responded by now
5:07 PM

Ryan Dillon-Capps
who told you  about their status
5:07 PM

Ryan Dillon-Capps
ask them
5:07 PM

Ryan Dillon-Capps
if they say sure.. have them email me back so we can
get started
5:08 PM

Ryan Dillon-Capps
if they wont report
5:08 PM

Ryan Dillon-Capps
we need it now
5:08 PM

Ryan Dillon-Capps
we can atart with full view access to the accounting
system
5:09 PM

Ryan Dillon-Capps
I have very few options remaining that dont spiral to
oblivion
5:09 PM

Ryan Dillon-Capps
I will not be the fall guy
5:09 PM

EXHIBIT  100

Ryan Dillon-Capps

i will not be left holding liability for the actions of others

5:10 PM

Ryan Dillon-Capps

I am the one who wants help

5:10 PM

Ryan Dillon-Capps

Geoff doesnt want to be involved

5:11 PM

Ryan Dillon-Capps

dan and phil, looks like nope

5:11 PM

Ryan Dillon-Capps

holly butler is a pass toi

5:11 PM

Ryan Dillon-Capps

back to josh beyers ediscovery

5:12 PM

Ryan Dillon-Capps

looooots of attention went into the exact thing covered

5:12 PM

Ryan Dillon-Capps

never seen that here before

5:13 PM

Ryan Dillon-Capps

every other ediscovery is just given it to em

5:13 PM

Ryan Dillon-Capps

and in the thread about ediscovery is Ryan Brooks
saying that 2 day server outage ...

5:14 PM

Ryan Dillon-Capps

2 days.. it was like 2018/2019 when he came on ... fo
you recall a 2 day outage?

5:14 PM

Ryan Dillon-Capps

have we ever had a 2 day outage

5:14 PM

Ryan Dillon-Capps

every where I looked were more questions

5:15 PM

Ryan Dillon-Capps

and you saw the screenshot of our security posture
change

5:16 PM

Ryan Dillon-Capps

exactly matching when I left and returned

5:16 PM

Ryan Dillon-Capps

auditng was puuuurged from the system

5:16 PM

Ryan Dillon-Capps

microsoft can recover most if still

5:17 PM

Ryan Dillon-Capps 

the mechanism to prevent not just accidental backup
but level 2 to stop it was undone

5:17 PM

Ryan Dillon-Capps 

i turned on level3 now it is for good until it expires
naturally and it cant be reduced

5:18 PM

 Justin Drummond

Ryan
Please stop with all these texts.

5:18 PM

Drummond is trying to access files in Teams
for Rich Hartman. The text messages are
popping up and blocking what he wants to
click on.

Ryan Dillon-Capps 

You are already on the hook, all of ownership has been
since they knew about it in dec

5:18 PM

Ryan Dillon-Capps 

glenn hiring osi made is much worse

5:19 PM

Ryan Dillon-Capps 

racks falling off the wall?

5:19 PM

Ryan Dillon-Capps 

raises questions

5:19 PM

Ryan Dillon-Capps 

not taking action incurs liabilty

5:20 PM

Ryan Dillon-Capps

hence the ONLY way ohana gets out of this alive is with me

5:20 PM

Ryan Dillon-Capps

if i am removed all hope is lost

5:20 PM

Ryan Dillon-Capps

no one willl believe anything against the actions done intne wrong direction and non actions supporting the wrong conclusions

5:21 PM

Ryan Dillon-Capps

I do not use hyperbole very often...even that sentence....i qualified.  I used to say my dog was the best dog in the whole wide room

5:22 PM

Ryan Dillon-Capps

Ohana is on the brink of one bad decision and the company does not survive

5:22 PM

Ryan Dillon-Capps

back to rich... his actions are not reasonable they raise questions

5:23 PM

Ryan Dillon-Capps

they justify an investigation into him

5:23 PM

Ryan Dillon-Capps

hence, step 1 - we get an attorney that is following my lead to show an immediate course correction. You being the one at the helm

5:24 PM

Ryan Dillon-Capps

Victor and Lynne stay their course with vikki

5:24 PM

Ryan Dillon-Capps

they say what they just said non stop

5:25 PM

Ryan Dillon-Capps

2 - rich is immediately suspended pending investigation

5:26 PM

Ryan Dillon-Capps

and we work really hard together to show and abundance of good will

5:26 PM

Ryan Dillon-Capps

and if we get that knock on the door, we cooperate

5:26 PM

Ryan Dillon-Capps

we allow those responsible to be held accountable

5:27 PM

Ryan Dillon-Capps

and we do everything to show alaris and exert we are a sound investment and we are committed to this never happenig again

5:28 PM

Ryan Dillon-Capps

it is 5:28 here

5:28 PM

Ryan Dillon-Capps

you got lots to think about

final though.. did i say a single thing about me other
then not being the fall guy?

5:28 PM

Ryan Dillon-Capps

most people would have filed their lawsuit and taken
the money and not cared about Ohana

5:29 PM

Ryan Dillon-Capps

particularly after what you all have done and allowed
to be done.... no not just to me... lots of people

5:30 PM

Ryan Dillon-Capps

sara wolz has a fractured relationship with her dad
from ohana

5:30 PM

Ryan Dillon-Capps

her dad

5:30 PM

Ryan Dillon-Capps

not the key issue right now... key issue is saving
Ohana

5:31 PM

Ryan Dillon-Capps

i need to meet with my people

5:31 PM

Ryan Dillon-Capps

still not everything..

5:31 PM

Ryan Dillon-Capps

reminder, you can NOT tell exert they know this and they have to file with SEC

5:48 PM

Ryan Dillon-Capps

we tell them just not 1st

5:48 PM

Ryan Dillon-Capps

we need to investigate

5:48 PM

Ryan Dillon-Capps

verify....

5:49 PM

Ryan Dillon-Capps

does the entire thing  make sense now... why thats what i said

5:49 PM

Ryan Dillon-Capps

Please tell me that you have spoken to Rich and suspended him

8:51 PM

Ryan Dillon-Capps

We are filing for a protective order against rich

9:09 PM

Ryan Dillon-Capps

I am being told it looks better for Ohana if Ohana files a Peace Order

9:13 PM

Ryan Dillon-Capps

we are moving forward if nothing is said

9:13 PM

Ryan Dillon-Capps

the next steps are injunctions and the we are forced to file claims and notify

9:14 PM

Ryan Dillon-Capps

I cant allow harm to my people or me. trying to do least action possible

9:15 PM

Ryan Dillon-Capps

they want me to name the company saying he was acting as your agent

9:38 PM

Ryan Dillon-Capps

i need something becuse i give trust and not getting a confirmation

9:39 PM

Drummond said multiple times that someone would update RDC. the next action was suspension.

| | |
|---|---|
| **From:** | Glenn Norris <glenn@ohanagp.com> |
| **Sent time:** | 03/21/2024 08:51:19 AM |
| **To:** | Ohana Growth Office; Chuck Cavolo; Michelle Kautzman <Michelle.Kautzman@brickbodies.com> |
| **Cc:** | Stacey Wittelsberger (BB) <srector@bengurbryan.com> |
| **Subject:** | Glenn on Vacation today & tomorrow |
| **Attachments:** | ohanagplogo168x50_28f3ede9-cdd4-4688-b694-9ba23c3e09ac.png |

Hi everyone , I will not be working today or tomorrow. Please text me if there is an urgent need.

Have a great weekend . Go Houston!

Glenn

> On March 20 at 3:32 PM: RDC spoke with Glenn Norris for 25m and 16s.
> Norris told RDC that he would get a second legal opinion. The next
> morning, he is taking an unexpected day off.

**Glenn Norris**
**Chief Financial Officer**
**Ohana Growth Partners, LLC**



office 410-252-8058 x108
cell 410-365-2591
212 W. Padonia Rd
Timonium, MD 21093
www.planetfitness.com

**"Culture eats strategy for breakfast"**

| | |
|---|---|
| **From:** | Ryan Wagner <Ryan.Wagner@ohanagp.com> |
| **Sent time:** | 03/20/2024 07:38:38 PM |
| **To:** | Rich Hartman |
| **Cc:** | Glenn Norris; Justin Drummond |
| **Subject:** | Re: FMLA |
| **Attachments:** | Outlook-hv5hq5md.png    Outlook-Ohana Grow.png    Outlook-b2yu3trv.png    Outlook-t44puwl0.png<br>Outlook-rv0wxfvw.png    Outlook-Ohana Grow.png    Outlook-dyqiz2ow.png    Outlook-Ohana Grow.png<br>Outlook-Ohana Grow.png    ohanagrowthpartnersfinallogo_7fa8dba2-2909-40ee-839a-12ba06da3de6.png |

*Then RDC replies later that day -- after the call.*

@Rich Hartman

## Understanding of FMLA Leave

My understanding, based on the Family and Medical Leave Act (FMLA), is that it entitles eligible employees to up to 12 weeks of unpaid, job-protected leave per year for specific family and medical reasons, ensuring the continuation of group health insurance coverage under the same terms and conditions as if the employee had not taken leave (29 CFR §825.100). This provision underscores the act's intent to support employees through significant health-related life events without the fear of job loss.

## FMLA Recertification Frequency

In your reply, you indicated that Ohana wants to comply with FMLA regulation 29 CFR §825.308, which states:

- Employers may request recertification no more often than every 30 days, unless the medical certification indicates that the employee will require leave for a period of more than 30 days. For leave due to a condition that lasts longer than 30 days, employers must wait until that period expires before asking for recertification.
- For conditions that are certified to last longer than six months, such as chronic conditions, the regulations allow for recertification every six months in connection with an employee's absence. This is understood from the provision that recertification can be requested every six months for conditions exceeding a six-month duration.

To avoid confusion, please provide standalone communication to confirm your intentions to comply with this regulation and change my recertification frequency from 30 days to 6 months because the current paperwork provided to me by Ohana says 30 days.

This regulation was created to prevent employers from unduly burdening or harassing employees taking FMLA leave. While on FMLA leave there should not be a reduction of my role, limit my existing flexibility, impose new policies, or introduce new challenges that make it more difficult to complete my work because these are also seen as unduly burdening and harassing.

## ADA Accommodations

In the FMLA response, you also correctly clarified that FMLA is not defined as an interactive process. That phrase is used with the ADA to ensure reasonable accommodations for those with a qualifying condition. You were previously notified of my disability on multiple occasions, including the workplace harassment meeting with Karen, and it is also included in my FMLA documentation that was provided to you by my healthcare provider. You have also asked follow-up questions, received answers from my healthcare provider in a response letter, and indicated that my accommodation had been accepted. Through multiple forms of communication, I have reaffirmed my need for accommodation and, to my knowledge, the acts of notifying you and requesting accommodation meet my obligations and have initiated the ADA interactive process in accordance with 29 CFR §1630.2(o)(3)).

## Proposed Solution

I have spoken with Glenn about the intentions of FMLA and expressed concerns that these emails continue to use misleading, broad language that misrepresents me and the dedication and commitment

to excellence that has resulted in unparalleled performance and success for the IT department. Nothing said in these emails aligns with the information I am receiving from Glenn, and I followed up with him today, where I explicitly asked him if there were any tasks or issues that I need to know about because I am aware of none. Glenn has none to provide me with and has stated that the four of us need to have a call next week to discuss this process and how we can better align it with the law's intentions. He indicated that he would make these arrangements when he gets back from holiday early next week on Monday/Tuesday.

This message may include text created with the help of natural language processing.

 Book time to meet with me

**Ryan Wagner**
**Vice President of IT**
**Ohana Growth Partners, LLC**



office 410-252-8058 x109
212 W. Padonia Rd
Timonium, MD 21093
www.planetfitness.com

**"Culture eats strategy for breakfast"**

---

**From:** Rich Hartman <Rich.Hartman@ohanagp.com>
**Sent:** Wednesday, March 20, 2024 12:00 PM
**To:** Ryan Wagner <Ryan.Wagner@ohanagp.com>
**Cc:** Glenn Norris <glenn@ohanagp.com>; Justin Drummond <Justin.Drummond@ohanagp.com>
**Subject:** Re: FMLA

After this email -- is the call with Glenn

Ryan,

I have repeatedly provided very clear guidance about your use of FMLA and Ohana's expectations in that regard, but because you are continuing to question those instructions and claim you need further clarity, I will try again below to summarize this information. Please know that Glenn and I have been in contact and I am aware of your correspondence with him about your assignments and leave.

By email on February 8, 2024 (attached), you received confirmation that so long as you complied with proper notice requirements, we were prepared to designate any leave you took to attend your twice weekly therapy appointments, as well as any other therapy appointments you required, as covered by FMLA. We were also prepared to designate your time off in the event of a flare up as covered by the FMLA, which your provider estimated could occur 1-3 times per week for 1-2 days per episode. The updated healthcare provider certification you recently submitted dated March 12, 2024 does not change this designation or the amount of leave your provider believes you will need. Unless your need for leave changes, we will not need any further updates from your healthcare provider for at least six months.

Because you and your provider had indicated that you needed FMLA leave, you had been repeatedly unavailable during regular business hours, you had skipped meetings and telephone calls that you were otherwise expected to attend, you maintained an out of office email stating that you were on leave, and had deliverables that were not provided as expected, even after several responsibilities were removed from your plate in an effort to lighten your load, it was our understanding that you were taking time off from work due to FMLA. We asked you several times to specifically identify all of the time off you had taken since the start of the year for FMLA.

Unfortunately, despite our repeated requests and explanations - including at least via emails on January 25, 2024; February 8, 2024; and February 29, 2024 - you never supplied us with that information.

While you belatedly submitted a timesheet of sorts to Glenn on February 28, 2024, nearly two weeks after our deadline, it did not provide any clarity regarding the time off you had taken for FMLA dating back to the start of the year.

As a result, only your two, one-hour appointments per week with your healthcare provider, amounting to 22 hours of leave (2 hours per week since January 1, 2024 through today) will be designated as FMLA. The rest of your time off and unavailability is now considered unexcused.

Other than the 2 hours per week previously described, we lack sufficient records to know exactly what other time off you have taken. In your emails, it appears that you are claiming both that you have taken additional leave and that you have worked a regular, full-time schedule (though perhaps not always during regular business hours). Please note that if you worked a full schedule, and did not actually take any leave, then you would not be in need of or entitled to FMLA. That is not our understanding of what has occurred, but because you have not tracked and reported your actual working and leave time as required, it remains entirely unclear to us how much additional time off you actually used. We are certain, however, that your productivity, availability, and responsiveness since the beginning of the year was not as would have been expected for someone working a regular, full-time schedule but for 2 hours of FMLA per week.

While we have repeatedly explained to you what notice you must provide when taking intermittent FMLA, you still are not notifying Glenn, Karen, or I as instructed of any need to take time off during regular business hours of 7 am EST to 6 pm EST. Until and unless you provide us with proper notice of your need for leave - meaning as soon as practicable once you become aware of the need to take time off during regular business hours - any future time off will not be counted as FMLA and may be considered unexcused.

We have and will continue to accommodate you by allowing you to work from home. We also have repeatedly stated that we are willing to allow you to work a flexible schedule, within reason and so long as you are communicative about when you are working. For the reasons previously explained, because of your role and job duties, it is not acceptable or reasonable for you to be unavailable for extended periods of time during regular business hours, without any notice, and then to just work at other times of the day or night.

You have the right to request information about the amount of FMLA leave you have used every thirty (30) days, so long as you have actually used any FMLA during that 30-day period. We will gladly provide this information to you upon your request, once per thirty days as required.

Glenn will continue to work with you on our expectations regarding your job performance. We remain concerned about your productivity and responsiveness. While I remain available to answer any specific questions, I do not believe it will be productive to continue to rehash the above issues and expectations.

**Rich Hartman**
**VP of People and Culture**
**Ohana Growth Partners, LLC**



office 410 252-5058 x114
212 W. Padonia Rd
Timonium, MD 21093

www.planetfitness.com

**"Culture eats strategy for breakfast"**

---

**From:** Ryan Wagner <Ryan.Wagner@ohanagp.com>
**Sent:** Tuesday, March 12, 2024 11:03 PM    This aligns with the 1st attempt to terminate under pretext
**To:** Rich Hartman <Rich.Hartman@ohanagp.com>
**Cc:** Glenn Norris <glenn@ohanagp.com>; Justin Drummond <Justin.Drummond@ohanagp.com>
**Subject:** Fw: FMLA

@Rich Hartman

I hope this message finds you well. I am writing to seek your prompt attention and response to several outstanding inquiries regarding the Family and Medical Leave Act (FMLA) provisions and related documentation previously communicated to your office. Despite my efforts to follow up through prior emails, it appears there remains a lack of clarity on several critical points, which I outline below for your convenience and action.

Clarification on FMLA Correspondence:
 have yet to receive confirmation of your receipt and review of my previous correspondences regarding FMLA queries. Enclosed, please find the aforementioned emails for your reference. Should these communications have not reached you, I kindly request you to review them at your earliest convenience. Moreover, if a response has been provided, I would greatly appreciate it if you could re-send that communication, ensuring all parties are adequately informed and aligned.

Submission of Healthcare Provider's Certification:
Attached herewith is the FMLA certification form completed by Megan Robinson, LCSW-C, dated 12 March 2024. This documentation is submitted in an effort to address and alleviate the concerns previously mentioned and to facilitate a transparent and efficient resolution process. Furthermore, an updated letter has been obtained from my healthcare provider, aimed at supporting my ongoing needs and compliance with FMLA requirements.

Distinction Between FMLA Leave and Other Forms of Leave:
 I seek your guidance in distinguishing between FMLA leave and other leave categories to ensure my understanding and adherence to the policies are accurate. A comprehensive explanation on this matter would aid in clarifying my position and facilitating a harmonious resolution to the ongoing discussions.

Clarification on Used FMLA Leave:
There appears to be confusion regarding the allocation and categorization of my leave as per the FMLA guidelines you provided. Discrepancies in the information communicated have led to uncertainties. I respectfully request a detailed explanation and breakdown of how my leave has been classified, specifically delineating FMLA and non-FMLA leave, to rectify any misunderstandings and ensure compliance with the Act.

Here is an screenshot of two emails you sent me as an example of why I am asking for clarification.
It is not sufficient for you to track what work you are doing and when

As of today, because you have not complied with our repeated directives about providing notice regarding your time off, none of your absences or unavailability since the start of the year have been designated as FMLA or excused, with the very limited exception of your one hour appointments on Monday and Wednesday, at least for the last few weeks

After you sent me this message, I attached the email where I provided a written update to Glenn that had this information at once upon his request. I had not included you on that email because of your prior email. I am including Glenn and Justin with the hopes that together we can streamline this new

FMLA process.

Your prompt and detailed response to these points will not only aid in clarifying the necessary procedural aspects but also significantly contribute to alleviating the stress and anxiety associated with this process. Understanding the importance of adherence to FMLA guidelines, I am eager to cooperate fully and provide any additional information required to facilitate a swift and satisfactory resolution.

Thank you for your attention to these matters. I look forward to your timely response.

This message may include text created with the help of natural language processing.

 Book time to meet with me

**Ryan Wagner**
Vice President of IT
Ohana Growth Partners, LLC



office 410-252-8058 x109
212 W. Padonia Rd
Timonium, MD 21093
www.planetfitness.com

**"Culture eats strategy for breakfast"**

---

**From:** Ryan Wagner <Ryan.Wagner@ohanagp.com>
**Sent:** Friday, March 1, 2024 8:00 AM
**To:** Rich Hartman <Rich.Hartman@ohanagp.com>
**Subject:** Re: FMLA

@Rich Hartman I have consistently engaged regarding my leave and how I can accommodate Ohana while maintaining excellence for the brand, company, department, and myself. So many of us in senior leadership and executive level positions are regularly being identified by the Brand, Industry, and our Peers for our contributions toward setting a new standard for WHIM, and I am no different, having been singled out multiple times within all 3 of those arenas for things accomplished because of an analytical, detail-oriented, and data-driven approach to everything.

In your email, you said, "Please understand that a failure to adhere to these expectations moving forward may result in disciplinary action." Some of our more recent emails have also contained confusing statements that portray me in a negative context and do not align with previous communications.

My first guess is that there are times when I will promptly share information with Glenn, Justin, or you, but it doesn't get shared with everyone else, creating a delta in what we know. However, why has the volume of inaccurate, incomplete, and outdated information in emails increased so much? It also doesn't account for the unresponsiveness to some of my emails requesting clarification, which might exacerbate the problem as it appears to be leading to a misleading perception in emails like this that people are waiting on me. I am attaching some emails that have other relevant attachments as reminders and providing what was asked for in that email. Notably:

- Updated schedule and appointment information
- Timesheets showing when and what I was working on last week.
- I provided updated information on completing all unfinished tasks from the 2 January 2024 email that was copied into the 12 February post-meeting email. To be clear, the 2 January 2024 email was promptly responded to, and those tasks were either already completed and confirmed before 2 January 2024 or were promptly completed. This includes the 2024 budget,

which, in the 12 February meeting, Glenn stated he wanted to UPDATE the budget on a few lines involving IT projects. Since then, Glenn has decided that he is solely managing them and wants to avoid any involvement from IT. He similarly has said the same thing about Comcast Credits and Cielo Balance. As of today, yesterday, we are discussing it on Tuesday because he has some new questions to discuss with me and Ryan Brooks. I hope this clarifies this topic because I have made multiple attempts to obtain clarification, and based on those conversations with Glenn, there is nothing he needs or wants from me or IT on any of those items. Glenn is providing me with new tasks, and we are working on those as provided.

- Top 20 Priorities that I am working on.

However, some of this information was discussed in email threads that you were a part of, including the one attached on the topic of that email and the email thread that I replied to with requests for clarification. Please provide me with an answer to that email and its questions because I believe that relates to any misunderstanding that I currently have.

The start date of my therapy appointments with my current provider should be on the FMLA paperwork. If you don't see that field filled in, then please share with me the document that you have on file, and I will gladly send you the correct document.

About FMLA paperwork,
I know from the paperwork that it says you want my therapist to provide an updated version every 30 days, but neither of us was certain when the 30 days rolled around. My assumption from the document's language is that it is 30 days from the date the document is accepted. What date have you recorded as the date you officially accepted the FMLA paperwork? I will let them know so they can provide you with scheduled updates.

Back to your email,
I consistently go out of my way to meet the needs of Ohana to the point that my most common feedback from Glenn and JD is how it is okay if I work less and do less because the amount I give is "too much." If you or someone doesn't have something they need, it is because I did not know about it or something beyond my control prevents me from doing so. For example, we have outstanding purchases, and I have made multiple requests for the petty cash card to be refilled as it has been for years.
Glenn has decided that there will be a new process, and I will review it with Glenn on Tuesday, hoping we can implement it quickly. Still, I always deliver what he wants first, and if I feel strongly enough about something, then after I do, it is when I will try to persuade him to change his mind.

If you need something from me, I have not asked you for clarification, not replied to provide updated options/info, and it is within my power of authority to give it to you – Please attach those emails in your response to this one, and I will follow up on it as quickly as possible.
Perfect examples:
In this email, you directed me to take action to change my team's status. In an email yesterday, Glenn asked me to change my email out of the office message.
I did them promptly before even beginning to work on a reply. All I needed from Glenn was for him to clarify a request he had made previously, but he has yet to respond to the question I asked him. This was your first time making that request, and I did precisely as I interpreted it. Let me know if you or Glenn need something aligned with the resulting action. I am analytical, detail-oriented, and data-driven, which also means that I, like many other Ohanians, prefer direct, detailed information and instructions that are factual, literal, and accurate.
I don't have a better solution to offer. Still, these types of conversations where I am going through the email at what feels like a line-by-line speed to provide correct information, emails, and other data to address the incorrect information are triggering for me, and I don't feel comfortable being put into a position where I must advocate for myself like this. Are you against a chance in this process that brings these false claims to me first as a question about their factual accuracy? This would allow me to provide you with the same correct information but without it feeling like it is an accusation, and hopefully not including language about disciplinary action or another similar language that doesn't make sense considering the facts.

I have no problem sharing any of this information or completing the requested task when I understand and can do so.

About this email and the statement for Darren's prior FMLA with other "employees," While acknowledging that someone has read some of my unanswered emails, this doesn't align with our internal terminology and colloquialisms, of which you have been one of the strongest voices for the use of our language. In this example, Team Members instead of employees leads me to believe that some or all of this email may not have been written by you, which provides another possibility that best explains all of the disconnects discussed and even those not mentioned.

As a reminder, we had many conversations about Darren's FMLA leave as you guided the entire process; you looped in Barry right after you told me that Darren was on FMLA leave. Barry then provided me with examples and additional information on our FMLA process, including how we track intermittent FMLA. The first time anyone discussed a problem with Darren's FMLA paperwork was immediately before the formal sit-down that preceded his PIP. Karen and I spoke to you in your office, and it was Karen Debus who said she did not see Darren's FMLA in Paycom after you asked me if I could recall off the top of my head when the FMLA start date was. You said that the start of his FMLA was right around when Andrey was leaving the company, and you attributed the missing paperwork to something assigned to him, which must have never been added to Paycom before he left. This was potentially problematic for Ohana because we needed better HR records to know where Darren's eligibility or status was, and Darren had experienced not one but several major qualifying events along with other events that were equally unfortunate but non-qualifying. You advised me on what would be necessary to document if we decided later to terminate him based on his performance while under PIP. We all expressed that we were conflicted about what to do next because we wanted to do what was suitable for him and Ohana. The current plan was to allow him to make it through this tough time while also preparing for a situation we thought might be unavoidable.

In hindsight, the PIP was incorrect because we kicked him while he was down.

This only made things worse, and his mental health was negatively impacted, which did not align with our intention to provide a positive, yet corrective, adjustment to the documented issues put forth in the PIP nor the Ohana "Family" spirit.

The breakthrough came during our coaching sessions, where he shared something personal with me. As we discussed it and the technical issue, I suggested that he think of Ohana as a safe place away from all the heavy problems he faced outside of work. The trend of things getting worse was broken, and he started to become more and more consistent in attendance, timeliness, completion of tasks, quality of work in those tasks, etc. Discussing taking punitive action against or terminating him now does not align with that, nor does it speak to us upholding our values and ideals. I will always choose someone who has the right attitude and demonstrates a willingness and openness to improve over someone who creates a toxic atmosphere because they think they are a superstar, which I have always felt was aligned with what Ohana desires too.

I want to underscore that my intention throughout our communications has been to ensure clarity, adherence to our shared goals, and compliance with our policies and legal obligations, especially concerning the FMLA and workplace expectations. My efforts to share information, seek clarifications, and address any discrepancies are driven by a commitment to maintain the high standards we set for our team and myself. This dialogue is intended to foster a better understanding and to collaboratively navigate any challenges we might face, ensuring we continue to support each other and the overarching mission of Ohana.

I value open and constructive communication and believe that by working together, we can resolve any misunderstandings and strengthen our team dynamics. My approach, as detailed in this correspondence, aims to demonstrate my proactive and cooperative stance in aligning with both our company's expectations and legal frameworks. It's my hope that this clarity will pave the way for a productive dialogue that enhances our working relationship and affirms our mutual commitment to the principles and values that define our company.

Let's continue to engage in conversations that build understanding and trust, focusing on solutions that reflect our collective commitment to excellence and legal compliance. I remain dedicated to



contributing positively to our team and welcome any further discussions that will help us move forward together.

This message may include text created with the help of natural language processing.

⬛ Book time to meet with me

**Ryan Wagner**
**Vice President of IT**
**Ohana Growth Partners, LLC**



office 410-252-8058 x109
212 W. Padonia Rd
Timonium, MD 21093
www.planetfitness.com

**"Culture eats strategy for breakfast"**

---

**From:** Rich Hartman <Rich.Hartman@ohanagp.com>
**Sent:** Thursday, February 29, 2024 1:20 PM
**To:** Ryan Wagner <Ryan.Wagner@ohanagp.com>
**Subject:** FMLA

Hi Ryan,

Thank you for continuing to engage in this discussion regarding your need for leave and accommodation.  Although you promised to provide detailed information about your FMLA usage by February 13, 2024, it is more than two weeks after that deadline and we still have not received any information from you about your FMLA usage since the start of the year.  In addition, to the extent you have taken any time off in the last few weeks, you are still not providing proper notification regarding your time off.  As we have repeatedly explained, in order for your time off to be excused and designated as FMLA, you must notify the Company by contacting your supervisor and Human Resources to advise that you are unavailable due to FMLA and indicate when you expect to return.  This is consistent with both our practice in terms of other employees who have used intermittent FMLA and the FMLA regulations.  With respect to Darren Koritzka, he was never on approved FMLA and in fact, you were advised to terminate his employment due to, among other issues, attendance problems.  It is our understanding that you have not actually followed through on that directive, but his situation is not comparable to yours and is unrelated to FMLA.

We remain committed to trying to support you and your needs, within the confines of our policies and the law.  We need to know, and are entitled to know, when you are working and available during regular business hours and when you are not working and

on FMLA. As previously mentioned, we are willing to consider some flexibility in your working hours as a further accommodation, but it must be planned and/or approved. There remains significant confusion amongst our colleagues about your status, due in part to your ongoing Teams status being marked as "Unavailable" due to leave, and because you have led others in the organization to believe that you are on leave. As of today, because you have not complied with our repeated directives about providing notice regarding your time off, none of your absences or unavailability since the start of the year have been designated as FMLA or excused, with the very limited exception of your one hour appointments on Monday and Wednesday, at least for the last few weeks (you still have not confirmed for how long you have been attending those appointments).

We expect that you will be responsive and working during regular business hours unless we have received the required notification that you are on leave. We further expect that you will immediately modify your Teams status to "Available" during regular business hours, unless you have provided the required notice and are unavailable due to FMLA. We will continue to work with you regarding your productivity and the assignments that are incomplete, including most notably the budgets for your department, which are overdue and which must be received promptly. Please understand that a failure to adhere to these expectations moving forward may result in disciplinary action.

If you have any questions, please feel free to contact me.

**Rich Hartman**
VP of People and Culture
Ohana Growth Partners, LLC



Office 410-252-8058 x114
212 W. Padonia Rd
Timonium, MD 21093
www.planetfitness.com

**"Culture eats strategy for breakfast"**

| From: | Ryan Wagner <Ryan.Wagner@ohanagp.com> | |
|---|---|---|
| Sent time: | 03/18/2024 09:02:25 AM | |
| To: | Karen Debus; Glenn Norris; Justin Drummond | This is RDC response to the Retaliation |
| Cc: | Rich Hartman | Email (below) |
| Subject: | Re: Conclusion of Investigation | |
| Attachments: | ohanagrowthpartnersfinallogo_7fa8dba2-2909-40ee-839a-12ba06da3de6.png     Outlook-0lu5kpsi.png ohanagrowthpartnersfinallogo_7fa8dba2-2909-40ee-839a-12ba06da3de6.png | |

### @Karen Debus

On December 18, 2023, Justin Drummond directed Rich Hartman to suspend the investigation until further notice. As of now, I have yet to be informed of any change in this directive. It's concerning that the investigation proceeded without adherence to Justin's instructions and without consulting the sole named witness I provided before HR prematurely ended our meeting on November 16, 2023.

### @Glenn Norris @Justin Drummond

At the November 16 meeting, I brought a detailed document intended for discussion and review. Rich Hartman initiated the meeting by cautioning against making false allegations against C-level executives. This was after my formal complaint on November 8, where Rich Hartman claimed HR was unaware of any complaints I made to Glenn Norris, or any actions taken against Josh Gerber, Josh Beyer, Bill Flax, or Jared Flax. I've consistently offered a witness and detailed information regarding an August 3, 2021, incident reported by Shannon Anderson against Josh Beyer, involving verbal abuse and intimidation.

During the meeting, attempts to share the document were thwarted by frequent interruptions with questions and inflammatory comments, such as:

•   Karen Debus accused me of unpreparedness, only to briefly allow document discussion.
•   Rich Hartman dismissing evidence contrary to his negative view of Cielo, citing low response rates— an assertion later disproven.
•   Rich Hartman insisted on HR's lack of prior incident knowledge, portraying the situation as a misunderstanding on my part.

When I started detailing the August 3, 2021, incident, HR abruptly ended the meeting, refusing the document and opting for a form-based report instead.
Subsequently, I received an email requesting a unique form for everyone involved in any incident, a request unprecedented in my experience. Moreover, a November 8 meeting with Glenn Norris revealed an email from Rich Hartman that falsely claimed I reported four individuals for bullying and verbal abuse.

Just to let you know, neither Glenn Norris nor Justin Drummond was named in my complaint.

The individuals mentioned were Josh Gerber, Josh Beyer, Bill Flax, and Jared Flax. Despite clear distinctions, Rich Hartman and Karen Debus ambiguously referred to the "personnel you cited," while maintaining a narrative of misunderstanding on my part.

This also aligns with everything I have ever said to either of you together or individually.

•   Glenn, you know what I told you and reported to you and what actions were taken because of those reports. We also know HR did know about those incidents, and I am cautioning against the strategy where a narrative is put forth where inaction is better than the actions that were taken.
•   Justin, it would be contrary to every conversation we have had to believe that the email you received on November 8th, 2023, was truthful about me naming you. We have had conversations prior, and since then, they reflect my genuine opinions of you, and they have always been consistent with you and with everyone I have ever spoken to about you. Ask others what I have said about you to them, and it will be consistent with what you have heard

me say to you.

Furthermore, I suspect Steve Goodwin may have had similar experiences with HR, as indicated by fragments of his deleted emails that were part of his mailbox when I received them. I have not spoken to Steve nor pursued this outside of this email. I do not believe anything other than what we already have is needed to clarify this and all other topics. Please note that Karen Debus is on this email chain when responding.

I am aware of many other things that have damaged my reputation, earnings, position, and career. I humbly request that you consider my actions and words against those words said to you by others that contradict what you have seen and heard directly from me. Please consider how data-driven I am and think about the last four years and how I have validated every claim I asserted while disproving all claims against me or my assertions. All of them. My intentions and character are demonstrated in both my actions and inactions, and I hope that you can see me for who I am because I knew going into this that it would take time and consistency on my part to be seen through all of it. I continue to advocate for others.

Justin - You suspended the hostile workplace investigation despite being falsely told that I reported you, too, and it was in your personal best interest to get rid of that investigation permanently and quickly. However, you did what was right for Ohana, which speaks volumes about your character's high quality.

This message may include text created with the help of natural language processing.

 Book time to meet with me

**Ryan Wagner**
**Vice President of IT**
**Ohana Growth Partners, LLC**



office 410 252 8058 x109
212 W. Padonia Rd
Timonium, MD 21093
www.planetfitness.com

**"Culture eats strategy for breakfast"**

---

From: Karen Debus <karen.debus@ohanagp.com>
Sent: Friday, March 15, 2024 4:40 PM
To: Ryan Wagner <Ryan.Wagner@ohanagp.com>; IT External Test (DO NOT USE) <ryan@mxt3.com>
Cc: Rich Hartman <Rich.Hartman@ohanagp.com>
Subject: Conclusion of Investigation

March 15, 2024

When the pretext didn't work out (3 day clause for FMLA) this is how Rich Hartman retaliated. Karen Debus was complicit.

VIA Email: ryan@mxt3.com and ryan.wagner@ohanagp.com
Ryan Wagner
Vice President of Information Technology
1334 Maple Avenue
Essex, MD 21221

Dear Ryan,

Subject: Results of Investigation

I am writing to provide you with the results of the investigation conducted by Ohana Growth Partners, LLC into the concerns you raised regarding harassment, bullying, and a hostile work environment. It is our commitment to provide a workplace free from harassment, bullying or a hostile work environment. We take all such claims seriously and we investigate such claims.

On November 16, 2023, Rich Hartman and I had a meeting with you regarding your complaints of harassment, bullying, and hostile work environment so that we could obtain specific information that would enable us to conduct a full investigation regarding them. You provided very generalized information during that meeting. To assist in providing information demonstrating the specific events or incidents that occurred, on November 21, 2023, we emailed you a Harassment Complaint Form (the "Form"). The Form enables you to identify the incidents and pertinent information regarding each of them. We requested that you return the completed Form by the end of that week, November 24, 2023. You did not send back the completed Form. We responded to your subsequent emails in which you asked how to complete the Form. We have repeatedly requested that you complete the Form, with subsequent requests sent on November 28, 2023, December 12, 2023, and December 16, 2023. However, you have not sent us a fully completed or partially completed Form.

Although you did not provide specific details of your claims, we conducted an investigation that included interviews with the personnel you cited, a review of email documentation, and a process review.

Our investigation established that there were heated discussions in which individuals made unprofessional communications, evidently caused by frustrations. We are addressing those concerns with the individuals responsible and will be providing training on appropriate workplace behavior. However, after careful consideration and evaluation of the information that we were able to gather, we have concluded that the information provided did not establish that you were subjected to harassment, bullying, or a hostile work environment under the policies of Ohana Growth Partners.

We appreciate your willingness to bring your concerns to our attention as we understand that these situations can be challenging. Our commitment to maintaining a respectful and inclusive workplace remains steadfast and we encourage open communication without fear of retaliation or retribution. If you have any additional information, please do not hesitate to contact me directly at 410-252-8058 x117 or Rich Hartman at X114.

Sincerely,

Karen

**Karen Debus**

Sr. HR Generalist
Ohana Growth Partners, LLC



office 410-252-8058 x117
212 W. Padonia Rd
Timonium, MD 21093

www.planetfitness.com

**"Culture eats strategy for breakfast"**

| | |
|---|---|
| **Organizer:** | Glenn Norris </O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=D2472C4806144DFD9705FD1F89B8960B-GLENN NORRI> on behalf of Glenn Norris <> |
| **Location:** | Microsoft Teams Meeting |
| **Start time:** | 3/26/2024 7:00:00 PM ((UTC-05:00) Eastern Time (US & Canada)) |
| **End time:** | 3/26/2024 7:30:00 PM ((UTC-05:00) Eastern Time (US & Canada)) |
| **All day event:** | False |
| **Reminder:** | Not set |
| **Category:** | Not set |
| **Recurrence:** | Occurs Every Tuesday effective 3/26/2024 to 4/23/2024 |
| **From:** | Glenn Norris |
| **Sent time:** | 03/26/2024 10:21:12 AM |
| **To:** | Glenn Norris; C. Victor Brick |
| **Cc:** | Stacey Wittelsberger (BB) <srector@bengurbryan.com>; Stacey Wittelsberger <srector@patriot-capital.com> |
| **Subject:** | Meeting with VB & Glenn |
| **Attachments:** | Untitled |

# Microsoft Teams Need help?

## Join the meeting now

Meeting ID: 213 152 072 343
Passcode: a6Fx7X

### Dial-in by phone

+1 469-214-8508,,644781407# United States, Dallas
Find a local number
Phone conference ID: 644 781 407#
For organizers: Meeting options | Reset dial-in PIN

> Then on the 26th and 27th he is meeting with other owners. At 5:32 PM for 1m 26s RDC and Norris speak, and Norris asks about the felonies previously mentioned.

| | |
|---|---|
| **Organizer:** | Glenn Norris </O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=D2472C4806144DFD9705FD1F89B8960B-GLENN NORRI> on behalf of Glenn Norris <> |
| **Location:** | Microsoft Teams Meeting |
| **Start time:** | 3/27/2024 2:30:00 PM ((UTC-05:00) Eastern Time (US & Canada)) |
| **End time:** | 3/27/2024 3:00:00 PM ((UTC-05:00) Eastern Time (US & Canada)) |
| **All day event:** | False |
| **Reminder:** | Not set |
| **Category:** | Not set |
| **Recurrence:** | Not set |
| **From:** | Glenn Norris |
| **Sent time:** | 03/26/2024 04:52:39 PM |
| **To:** | Glenn Norris; Stacey Wittelsberger (BB) <srector@bengurbryan.com>; C. Victor Brick |
| **Cc:** | Stacey Wittelsberger <srector@patriot-capital.com> |
| **Subject:** | Update call |

# Microsoft Teams meeting

**Join on your computer, mobile app or room device**

Click here to join the meeting

Meeting ID: 216 583 105 020

Passcode: Ec2Kpf

Download Teams | Join on the web

**Or call in (audio only)**

+1 469-214-8508, 15169989#   United States, Dallas

Phone Conference ID: 151 699 89#

Find a local number | Reset PIN

Learn More | Meeting options

> March 28 at 4:43 PM 26m and 47s call between RDC and Norris where Norris misleads RDC about his alignment. He is trying to ensure RDC doesn't work so that the RDC doesn't notice the system changes.

| | |
|---|---|
| Organizer: | Glenn Norris </O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=D2472C4806144DFD9705FD1F89B8960B-GLENN NORRI> on behalf of Glenn Norris <> |
| Location: | Microsoft Teams Meeting |
| Start time: | 4/8/2024 4:30:00 PM ((UTC-05:00) Eastern Time (US & Canada)) |
| End time: | 4/8/2024 5:00:00 PM ((UTC-05:00) Eastern Time (US & Canada)) |
| All day event: | False |
| Reminder: | Not set |
| Category: | Not set |
| Recurrence: | Not set |
| From: | Glenn Norris |
| Sent time: | 04/05/2024 06:46:42 AM |
| To: | Glenn Norris; Rebecca Kell <rebecca@kelllegal.com>; Sara Grotheer <sara.grotheer@pfhq.com> |
| Subject: | Teams Call regarding Legal docs for OGP's Transaction |

# Microsoft Teams Need help?

## Join the meeting now

Meeting ID: 216 406 030 553
Passcode: FB5Dz5

---

### Dial-in by phone

+1 469-214-8508,,662077242# United States, Dallas
Find a local number
Phone conference ID: 662 077 242#
For organizers: Meeting options    Reset dial-in PIN

---

| | |
|---|---|
| **Organizer:** | Glenn Norris </O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=D2472C4806144DFD9705FD1F89B8960B-GLENN NORRI> on behalf of Glenn Norris <> |
| **Location:** | Teams Call |
| **Start time:** | 4/8/2024 5:00:00 PM ((UTC-05:00) Eastern Time (US & Canada)) |
| **End time:** | 4/8/2024 5:30:00 PM ((UTC-05:00) Eastern Time (US & Canada)) |
| **All day event:** | False |
| **Reminder:** | Not set |
| **Category:** | Not set |
| **Recurrence:** | Not set |
| **From:** | Glenn Norris |
| **Sent time:** | 04/04/2024 12:13:52 PM |
| **To:** | Glenn Norris; Stacey Wittelsberger (BB) <srector@bengurbryan.com>; Breyana Diggs |
| **Cc:** | Stacey Wittelsberger <srector@patriot-capital.com> |
| **Subject:** | Kick off Meeting to Review and Assign Legal Checklist items-UPDATED to 1PM |

# Microsoft Teams Need help?

## Join the meeting now

Meeting ID: 215 596 984 727
Passcode: 2XaqoW

### Dial-in by phone

+1 469-214-8508,,684035559# United States, Dallas
Find a local number
Phone conference ID: 684 035 559#
For organizers: Meeting options   Reset dial-in PIN

| | |
|---|---|
| **Organizer:** | Glenn Norris </O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=D2472C4806144DFD9705FD1F89B8960B-GLENN NORRI> on behalf of Glenn Norris <> |
| **Location:** | teams call |
| **Start time:** | 4/18/2024 2:00:00 PM ((UTC-05:00) Eastern Time (US & Canada)) |
| **End time:** | 4/18/2024 2:15:00 PM ((UTC-05:00) Eastern Time (US & Canada)) |
| **All day event:** | False |
| **Reminder:** | Not set |
| **Category:** | Not set |
| **Recurrence:** | Not set |
| **From:** | Glenn Norris |
| **Sent time:** | 04/17/2024 09:18:12 AM |
| **To:** | Glenn Norris; Stacey Rector <srector@exeterstreetcapital.com> |
| **Cc:** | Stacey Wittelsberger <srector@patriot-capital.com> |
| **Subject:** | meeting on ownership schedule for OGP |
| **Attachments:** | RE: Ownership Schedules for OGP- Prove out what the Cert of Interest Ledger(from T & L) & the Brick Ownership Schedule has(from PF Corp) |

# Microsoft Teams Need help?

## Join the meeting now

Meeting ID: 260 321 079 679
Passcode: aqp5Vh

### Dial-in by phone

+1 469-214-8508,,24675726# United States, Dallas
Find a local number
Phone conference ID: 246 757 26#
For organizers: Meeting options   Reset dial-in PIN

| | |
|---|---|
| **Organizer:** | Glenn Norris </O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=D2472C4808144DFD9705FD1F89B8960B-GLENN NORRI> on behalf of Glenn Norris <> |
| **Location:** | Microsoft Teams Meeting |
| **Start time:** | 4/19/2024 3:00:00 PM ((UTC-05:00) Eastern Time (US & Canada)) |
| **End time:** | 4/19/2024 3:30:00 PM ((UTC-05:00) Eastern Time (US & Canada)) |
| **All day event:** | False |
| **Reminder:** | Not set |
| **Category:** | Not set |
| **Recurrence:** | Not set |
| **From:** | Glenn Norris |
| **Sent time:** | 04/18/2024 04:11:07 PM |
| **To:** | Glenn Norris; Stasia Thomas <athomas@tandllaw.com> |
| **Subject:** | review the ownership ledger together |

Stasia can you meet tomorrow for 30 minutes?

# Microsoft Teams Need help?

## Join the meeting now

Meeting ID: 262 813 160 906
Passcode: JopQxW

### Dial-in by phone

+1 469-214-8508,,722409642# United States, Dallas
Find a local number
Phone conference ID: 722 409 642#
For organizers: Meeting options  Reset dial-in PIN

| | |
|---|---|
| **Organizer:** | Glenn Norris </O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=D2472C4806144DFD9705FD1F89B8960B-GLENN NORRI> on behalf of Glenn Norris <> |
| **Location:** | Teams Call |
| **Start time:** | 5/6/2024 5:00:00 PM ((UTC-05:00) Eastern Time (US & Canada)) |
| **End time:** | 5/6/2024 5:30:00 PM ((UTC-05:00) Eastern Time (US & Canada)) |
| **All day event:** | False |
| **Reminder:** | Not set |
| **Category:** | Not set |
| **Recurrence:** | Not set |
| **From:** | Glenn Norris |
| **Sent time:** | 05/06/2024 08:07:06 AM |
| **To:** | Glenn Norris; Jared Flax; Kimberly Kupka <kk@vintage-law.com> |
| **Cc:** | Kimberly Kupka <kk@vintagelaw.com>; Josh Beyer |
| **Subject:** | Call with Kim & Jared on Lease extract of "Change of Control" language |

# Microsoft Teams Need help?

## Join the meeting now

Meeting ID: 258 423 768 787
Passcode: 3ezGHS

### Dial-in by phone

+1 469-214-8508,,425578183# United States, Dallas
Find a local number
Phone conference ID: 425 578 183#
For organizers: Meeting options   Reset dial-in PIN

| | |
|---|---|
| **Organizer:** | Glenn Norris </O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=D2472C4806144DFD9705FD1F89B8960B-GLENN NORRI> on behalf of Glenn Norris <> |
| **Location:** | Microsoft Teams Meeting |
| **Start time:** | 5/9/2024 4:30:00 PM ((UTC-05:00) Eastern Time (US & Canada)) |
| **End time:** | 5/9/2024 5:00:00 PM ((UTC-05:00) Eastern Time (US & Canada)) |
| **All day event:** | False |
| **Reminder:** | Not set |
| **Category:** | Not set |
| **Recurrence:** | Not set |
| **From:** | Glenn Norris |
| **Sent time:** | 05/08/2024 04:47:56 PM |
| **To:** | Glenn Norris; Justin Drummond; Rich Hartman |
| **Subject:** | Meeting to fill in the ESG Questionairre |
| **Attachments:** | ESG Questionnaire (New Investment) (1).docx    Ohana ESG Questionnaire |

See attached

# Microsoft Teams Need help?

## Join the meeting now

Meeting ID: 235 517 180 700
Passcode: u4tFNs

### Dial-in by phone

+1 469-214-8508,,385987000# United States, Dallas
Find a local number
Phone conference ID: 385 987 000#
For organizers: Meeting options   Reset dial-in PIN

| | |
|---|---|
| Organizer: | Glenn Norris </O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=D2472C4806144DFD9705FD1F89B8960B-GLENN NORRI> on behalf of Glenn Norris <> |
| Location: | Teams Call |
| Start time: | 5/10/2024 4:00:00 PM ((UTC-05:00) Eastern Time (US & Canada)) |
| End time: | 5/10/2024 4:30:00 PM ((UTC-05:00) Eastern Time (US & Canada)) |
| All day event: | False |
| Reminder: | Not set |
| Category: | Not set |
| Recurrence: | Not set |
| From: | Glenn Norris |
| Sent time: | 05/09/2024 04:39:15 PM |
| To: | Glenn Norris; Matt Norris; Stacey Wittelsberger (BB) <srector@bengurbryan.com>; Breyana Diggs |
| Cc: | Stacey Wittelsberger <srector@patriot-capital.com> |
| Subject: | Teams invite for DD Call today at Noon |

# Microsoft Teams Need help?

## Join the meeting now

Meeting ID: 279 874 699 439
Passcode: fP2irx

### Dial-in by phone

+1 469-214-8508,,471729892# United States, Dallas
Find a local number
Phone conference ID: 471 729 892#
For organizers: Meeting options   Reset dial-in PIN

| | |
|---|---|
| Organizer: | Glenn Norris </O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=D2472C4806144DFD9705FD1F89B8960B-GLENN NORRI> on behalf of Glenn Norris <> |
| Location: | Teams Call |
| Start time: | 5/16/2024 1:30:00 PM ((UTC-05:00) Eastern Time (US & Canada)) |
| End time: | 5/16/2024 2:00:00 PM ((UTC-05:00) Eastern Time (US & Canada)) |
| All day event: | False |
| Reminder: | Not set |
| Category: | Not set |
| Recurrence: | Not set |
| From: | Glenn Norris |
| Sent time: | 05/15/2024 01:59:16 PM |
| To: | Glenn Norris; Stasia Thomas <athomas@tandllaw.com> |
| Cc: | Stacey Rector <srector@exeterstreetcapital.com> |
| Subject: | Ownership Ledger and Ownership Chart updated through the new LLC's |

# Microsoft Teams Need help?

## Join the meeting now

Meeting ID: 269 107 304 146
Passcode: oNniWr

---

### Dial-in by phone

+1 469-214-8508,,539838090# United States, Dallas
Find a local number
Phone conference ID: 539 838 090#
For organizers: Meeting options   Reset dial-in PIN

---

| | |
|---|---|
| **Organizer:** | Glenn Norris <glenn@ohanagp.com> on behalf of Glenn Norris <glenn@ohanagp.com> |
| **Location:** | Teams Call |
| **Start time:** | 5/16/2024 2:00:00 PM ((UTC-05:00) Eastern Time (US & Canada)) |
| **End time:** | 5/16/2024 2:30:00 PM ((UTC-05:00) Eastern Time (US & Canada)) |
| **All day event:** | False |
| **Reminder:** | Not set |
| **Category:** | Not set |
| **Recurrence:** | Not set |
| **From:** | Glenn Norris <glenn@ohanagp.com> |
| **Sent time:** | 05/16/2024 09:06:35 AM |
| **To:** | Justin Drummond; Ryan Brooks |
| **Subject:** | Due Diligence Prep call for 2PM meeting |

# Microsoft Teams Need help?

## Join the meeting now

Meeting ID: 272 560 509 724

Passcode: pb8Kea

## Dial in by phone

+1 469-214-8508,,694538448# United States, Dallas

Find a local number

Phone conference ID: 694 538 448#

For organizers: Meeting options    Reset dial-in PIN

| | |
|---|---|
| Organizer: | Glenn Norris </O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=D2472C4806144DFD9705FD1F89B8960B-GLENN NORRI> on behalf of Glenn Norris <> |
| Location: | |
| Start time: | 5/16/2024 8:30:00 PM ((UTC-05:00) Eastern Time (US & Canada)) |
| End time: | 5/16/2024 9:00:00 PM ((UTC-05:00) Eastern Time (US & Canada)) |
| All day event: | False |
| Reminder: | Not set |
| Category: | Not set |
| Recurrence: | Not set |
| From: | Glenn Norris |
| Sent time: | 05/16/2024 11:57:00 AM |
| To: | Glenn Norris |
| Subject: | Do Comp Template for Stacey |

| | |
|---|---|
| **Organizer:** | Glenn Norris </O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=D2472C4806144DFD9705FD1F89B8960B-GLENN NORRI> on behalf of Glenn Norris <> |
| **Location:** | Teams Call |
| **Start time:** | 5/21/2024 6:00:00 PM ((UTC-05:00) Eastern Time (US & Canada)) |
| **End time:** | 5/21/2024 6:30:00 PM ((UTC-05:00) Eastern Time (US & Canada)) |
| **All day event:** | False |
| **Reminder:** | Not set |
| **Category:** | Not set |
| **Recurrence:** | Not set |
| **From:** | Glenn Norris |
| **Sent time:** | 05/21/2024 09:07:37 AM |
| **To:** | Glenn Norris; Curtis Krawetz <ckrawetz@alarisequity.com>; Justin Drummond |
| **Subject:** | Call with Alaris-Curtis |

# Microsoft Teams Need help?

## Join the meeting now

Meeting ID: 284 349 069 005
Passcode: ix9EeC

### Dial in by phone

+1 469-214-8508,,974606876# United States, Dallas
Find a local number
Phone conference ID: 974 606 876#

For organizers: Meeting options    Reset dial-in PIN

| | |
|---|---|
| Organizer: | Glenn Norris </O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=D2472C4806144DFD9705FD1F89B8960B-GLENN NORRI> on behalf of Glenn Norris <> |
| Location: | |
| Start time: | 5/22/2024 2:30:00 PM ((UTC-05:00) Eastern Time (US & Canada)) |
| End time: | 5/22/2024 3:00:00 PM ((UTC-05:00) Eastern Time (US & Canada)) |
| All day event: | False |
| Reminder: | Not set |
| Category: | Not set |
| Recurrence: | Not set |
| From: | Glenn Norris |
| Sent time: | 05/22/2024 08:08:50 AM |
| To: | Glenn Norris |
| Subject: | Brooks Chilcoat |

Charlie Chilcoat

EXHIBIT  100

EXHIBIT 316-0

| From: | Butler, Holly Drumheller <hbutler@MilesStockbridge.com> |
|---|---|
| Sent time: | 06/05/2024 02:29:05 PM |
| To: | Ryan Wagner |
| Subject: | RE: Confirmation of Representation Status |
| Attachments: | image006.png    image007.png    image001.png |

**CAUTION:** This email originated from outside the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Mr. Wagner, as I expressly stated below, if you have questions—whether about legal representation or otherwise, I recommend you direct them to the company.  I will not be responding further.



**Holly Drumheller Butler** (She/Her/Hers)  *Principal*
Miles & Stockbridge
direct: +1 (410) 385-3829

**From:** Ryan Wagner <Ryan.Wagner@ohanagp.com>
**Sent:** Wednesday, June 5, 2024 2:24 PM
**To:** Butler, Holly Drumheller <hbutler@MilesStockbridge.com>
**Subject:** [EXTERNAL] Re: Confirmation of Representation Status

[EXTERNAL]

@Butler, Holly Drumheller

Good afternoon,
Thank you for your prompt reply. I understand and respect your position regarding client confidences. However, I need to clarify whether you are still representing Ohana Growth Partners in this specific matter. This information is crucial for ensuring that our communications and inquiries are properly directed and addressed.
Could you please confirm if you are currently acting as the legal counsel for Ohana Growth Partners regarding the ongoing investigation? If not, please advise to whom we should direct our future correspondence.
Thank you for your cooperation and attention to this matter. I look forward to your prompt response.

This message may include text created with the help of natural language processing.

 Book time to meet with me

**Ryan Wagner**
**Vice President of IT**
**Ohana Growth Partners, LLC**



office 410-252-8058 x109
212 W. Padonia Rd
Timonium, MD 21093
www.planetfitness.com

"Culture eats strategy for breakfast"

**From:** Butler, Holly Drumheller <hbutler@MilesStockbridge.com>
**Sent:** Wednesday, June 5, 2024 2:19 PM
**To:** Ryan Wagner <Ryan.Wagner@ohanagp.com>
**Subject:** RE: Confirmation of Representation Status

**CAUTION:** This email originated from outside the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Good afternoon, Mr. Wagner. As you know, I conducted an independent investigation on behalf of Ohana Growth Partners in connection with the concerns you identified. Out of respect for client confidences, I do not divulge the names of my clients or the extent of my representation of them. If you have questions, I recommend you direct them to the company.

Regards,
Holly



**Holly Drumheller Butler** (She/Her/Hers)   *Principal*
Miles & Stockbridge
direct: +1 (410) 385-3829

**From:** Ryan Wagner <Ryan.Wagner@ohanagp.com>
**Sent:** Wednesday, June 5, 2024 8:00 AM
**To:** Butler, Holly Drumheller <hbutler@MilesStockbridge.com>
**Subject:** [EXTERNAL] Re: Confirmation of Representation Status
**Importance:** High

[EXTERNAL]

@Butler, Holly Drumheller

I received your out of office message that said you would be returning on Monday June 3, 2024.

I am still awaiting a response to confirm your current standing and where to direct future correspondence and inquiries.

Thank you for your attention to this matter. I appreciate your prompt response.

This message may include text created with the help of natural language processing.

 Book time to meet with me

**Ryan Wagner**
**Vice President of IT**

Ryan Dillon-Capps

| | |
|---|---|
| **From:** | Ryan Wagner |
| **Sent:** | Thursday, June 6, 2024 5:14 PM |
| **To:** | Justin Drummond; Rich Hartman; Karen Debus; Matt Norris; Stacey Wittelsberger (ESC); C. Victor Brick; Lynne Brick B.S.N. M.A.; Terry Woods (Planet Fitness); Earl Ihle; Glenn Norris |
| **Subject:** | Request for Information Regarding Legal Representation |

**Importance:**    High

Aloha

I hope this message finds you well. I am writing to formally request information regarding the legal representation retained by Ohana Growth Partners LLC concerning accounting irregularities, the unauthorized use of my name to attest compliance documents, fabricated or altered emails/documents, or any matters related to my employment.

Specifically, I would like to know the name and contact information of the attorneys or law firms representing the company on any of these matters. This information is pertinent as I am seeking to engage in direct negotiations to resolve these issues amicably and efficiently.

I believe that open communication can help us reach a mutually agreeable solution and prevent the need for more formal proceedings. Therefore, I would appreciate your prompt response to this request.

Thank you for your cooperation.

This message may include text created with the help of natural language processing.

 Book time to meet with me



**Ryan Wagner**
**Vice President of IT**
**Ohana Growth Partners, LLC**

office 410-252-8058 x109
212 W. Padonia Rd
Timonium, MD 21093

www.planetfitness.com

**"Culture eats strategy for breakfast"**

1 of 1

**Ohana Growth Partners, LLC**



office 410-252-8058 x109
212 W. Padonia Rd
Timonium, MD 21093
www.planetfitness.com

**"Culture eats strategy for breakfast"**

---

**From:** Ryan Wagner <Ryan.Wagner@ohanagp.com>
**Sent:** Saturday, June 1, 2024 6:16 PM
**To:** Butler, Holly Drumheller <hbutler@MilesStockbridge.com>
**Subject:** Confirmation of Representation Status

@Butler, Holly Drumheller

I hope this message finds you well.

I am writing to inquire about your status regarding the representation of Ohana Growth Partners. We previously had communication regarding the investigation, and I would like to confirm whether you are still acting as the legal counsel for Ohana Growth Partners in this matter.

Could you please confirm your current standing and whether we should direct future correspondence and inquiries to a different representative?

Thank you for your attention to this matter. I appreciate your prompt response.

This message may include text created with the help of natural language processing.

 Book time to meet with me

**Ryan Wagner**

**Vice President of IT**
**Ohana Growth Partners, LLC**

---



office 410-252-8058 x109
212 W. Padonia Rd
Timonium, MD 21093

www.planetfitness.com

**"Culture eats strategy for breakfast"**

| | |
|---|---|
| **Organizer:** | Glenn Norris </O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=D2472C4806144DFD9705FD1F89B8960B-GLENN NORRI> on behalf of Glenn Norris <> |
| **Location:** | look for invite |
| **Start time:** | 6/5/2024 2:00:00 PM ((UTC-05:00) Eastern Time (US & Canada)) |
| **End time:** | 6/5/2024 2:30:00 PM ((UTC-05:00) Eastern Time (US & Canada)) |
| **All day event:** | False |
| **Reminder:** | Not set |
| **Category:** | Not set |
| **Recurrence:** | Not set |
| **From:** | Glenn Norris |
| **Sent time:** | 06/04/2024 06:23:06 PM |
| **To:** | Glenn Norris |
| **Subject:** | Call with Alaris-Curtis and Lincoln |

| | |
|---|---|
| **From:** | Ryan Wagner <Ryan.Wagner@ohanagp.com>    RDC Response to Hartman's Retaliation Email Below |
| **Sent time:** | 06/05/2024 03:49:15 PM |
| **To:** | Rich Hartman |
| **Cc:** | Justin Drummond; Stacey Wittelsberger (ESC); C. Victor Brick; Lynne Brick B.S.N. M.A.; Terry Woods (Planet Fitness); Earl Ihle; Glenn Norris; Karen Debus |
| **Subject:** | Re: Fraud Investigation |
| **Attachments:** | ohanagrowthpartnersfinallogo_7fa8dba2-2909-40ee-839a-12ba06da3de6.png   image.png   image.png   image.png   image.png   image.png   image.png   Outlook-e3w0bgbd.png   ohanagrowthpartnersfinallogo_7fa8dba2-2909-40ee-839a-12ba06da3de6.png   Re: Conclusion of Investigation |

@Rich Hartman

I hope this message finds you well. I am writing to express my concerns about the recent investigation, as well as the investigation into the hostile workplace report filed in November 2023. I have attached my response to the conclusion of the investigation email sent in March 2024 for your reference.

To address the recent investigation, I would like to clarify the following points.

# Hostile workplace Investigation:
- You stated that you had no knowledge of any prior events being reported, nor of any formal or informal reprimand or response.
- I provided you with the name of Shannon Anderson, who witnessed an event and reported it directly to Glenn
- 

Your email indicates that the investigation covered two out of the three reported issues:
1. Accounting Irregularities
2. Frabricated/Altered emails and documents

The third issue was the unauthorized use of my name to attest compliance documents. This issue has been the primary focus of my discussions with Glenn and Justin for months and was the topic Glenn was arranging to discuss with a new attorney.

# Unauthorized Use of My Name to Attest Compliance Documents :

- Attached is a screenshot of the compliance document submitted for Wheaton.
- Another screenshot shows Andrew Dinh asking Geoff to confirm receipt.
- At no point did I authorize Andrew Dinh to use my name.



| | |
|---|---|
| Updated BF | |
| PF Club ID | 3375 |
| Group Name | G0007-BRICK |
| Club Name/Location | Wheaton MD |
| Cardant Firewall Ordered | 03/07/23 |
| Cardant Firewall Installed | |
| Cardant Aerohive POS Switch Ordered | 03/07/23 |
| Cardant Aerohive POS Switch Installed | |
| Locking Cabinet Ordered | 03/23/23 |
| Locking Network Cabinet Installed | |
| IT/Low Voltage Installer | Non-Certified Vendor |
| Wi-Fi Solution Ordered | 03/07/23 |
| Mandatory Wi-Fi Support Vendor | Cardant |
| Rookbot Solution Ordered | 07/07/23 |
| Submitted By | Ryan Wagner |
| Email Address | Ryan.Wagner@ohanagp.com |
| Name of Wi-Fi Vendor (if other) | |

From: Andrew Dinh <adinh@osisupport.com>
Sent: Monday, October 23, 2023 9:32 AM
To: Geoff VanMaastricht <Geoff.VanMaastricht@pfhq.com>; Ryan Wagner <Ryan
Cc: Samantha Foley <Samantha.Foley@pfhq.com>; Katherine Navarro <katherin
Subject: Re: ACTION REQUIRED – Cyber Security and In Club Media Presale Inform

_____    __ _____

Geoff, Please verify that you received. It has been submitted.

Thank you.

Andrew Dinh
Onsite Solutions Inc.
adinh@osisupport.com

859.806.5520 Mobile
866.465.0330 ext 2 (Technical Support)
www.osisupport.com

Intel Gold Technology Provider 2011
Microsoft Partner – Silver Small and Midmarket Cloud Solutions
Datto Elite Partner
HP Authorized Partner
Dell Technology Partner

## Accounting Irregularities:

• After reporting the irregularities, Andrew Dinh was asked about missing invoices. Many invoices were subsequently processed and paid. However, I am not aware of any steps taken to ensure that these irregularities were confined to this period, nor any efforts to verify that every job by Onsite Solutions has an associated invoice.
• Can you confirm whether we have accounted for every job with at least one corresponding invoice relative to its cost? Accounting validated the accuracy of this report by processing and paying the invoices provided by Andrew Dinh.

# Fabricated/Altered Emails and Documents:

- The original report highlighted two email threads concerning San Bruno.
- Has anyone contacted San Bruno to obtain a copy of the contract indicated as signed in September 2020 in the first thread?
- Has there been any validation of the email chain sent on September 21, 5:31 PM, which followed the provision of the contract by Andrew 30 minutes earlier? This thread suggests they already had a signed contract in September 2020, providing it to Kristen. If validated, this email thread supports the hostile workplace claim.
- The request for a third-party investigator aimed to ensure the validation process was conducted independently.

## FIRST THREAD

From: Andrew Dinh <adinh@osisupport.com>
Sent: Tuesday, September 21, 2021 5:01 PM
To: Kristen Seiler <kristen.seiler@pfgrwth.com>
Cc: Bill Flax <bill.flax@pfgrwth.com>; Breyana Long <Breyana@pfgrwth.com>; Ryan Wagner <ryan.wagner@pfgr
Subject: Fw: Planet Fitness locations updates

Kristen, attached is the original order form submitted that shows the billing address as. Not sure how th

212 West Padonia Road
Timonium, Maryland 21093

Thank you.

Andrew Dinh
Onsite Solutions Inc.
adinh@osisupport.com

859.806.5520 Mobile
866.465.0330 ext 2 (Technical Support)
www.osisupport.com

Intel Gold Technology Provider 2011
Microsoft Partner - Silver Small and Midmarket Cloud Solutions
Datto Elite Partner
HP Authorized Partner
Dell Technology Partner



**SAN BRUNO CityNet Services**

398 El Camino Real
San Bruno, CA 94066

**San Bruno CityNet Services**
**Application for Commercial Accounts**

---

❏ TV Service     ❏ Internet Access     ❏ Dedicated Internet Bandwidth     ❏ Telephone

Account Activation Fee *(Please call for pricing and Service Levels)* Service Date Requested: (Mon. - Fri.) ___ : ___ / ___

---

### Payment Options: (Check One)

❏ Credit Card - Auto Pay ( Deducted on 15th of each month)    ❏ Credit Card by Phone
                                         Expiration Date _____

❏✗ Checking Account Auto Pay (Attach voided check - Deducted on 15th of each month)

❏ Pay On-Line at www.SBCityNet.com      ❏ Check or Cash

---

### Please Print

**Business Name**   PF Growth Partners, LLC

**Contact Name**   Bill Flax

**Business Phone** ( 410 ) 252-8058       **Contact Phone** ( ) _____

**Contact Email Address**   bill.flax@pfgrwth.com

**IT Contact**   Andrew Dinh       **IT Phone** ( 859 ) 806-5520

**Service Address**   1150 El Camino Real, Unit #209       San Bruno, CA

**Bill To Address**   212 W. Padonia Rd.

**City, State, Zip**   Timonium, MD 21093

---

**FEIN** _____ or **Business License** _____

Equipment lent or rented to subscriber must be returned upon disconnect to avoid equipment fees. Remittance due by the 15th of each month. Non-payment will result in disconnection of all services.

**Signature** *William Flax*       Today's Date 09 / 04 / 2020

---

### Office Use Only

Account # _____   Account Notes _____

Scheduled Install Date _____   Signed Quote Y   N/A    Serviceability Y   N/A

---

**Phone (650) 616-3100**     **www.SBCityNet.com**     **Fax (650) 871-5526**

---

# SECOND THREAD

From: Andrew Dinh <adinh@osisupport.com>
Sent: Tuesday, September 21, 2021 5:31 PM
To: Josh Beyer <josh.beyer@plgrwth.com>; Bill Flax <bill.flax@plgrwth.com>
Subject: Fw: PF San Bruno CA – Internet Options

Josh and Bill,

See below. We attempted to send this order request to Ryan to fill out initially without a response. So, I got permission to proceed with the construction team to fill out because we were running out of time.

I did not want publicly to throw anyone under the bus. So below is the correspondence showing why we submitted the paperwork.

Thank you.

Andrew Dinh
Onsite Solutions Inc.
adinh@osisupport.com

859.806.5520 Mobile
866.465.0330 ext 2 (Technical Support)
www.osisupport.com

Intel Gold Technology Provider 2011
Microsoft Partner – Silver Small and Midmarket Cloud Solutions
Datto Elite Partner
HP Authorized Partner
Dell Technology Partner

**********************************************************************
The information contained in this message, including attachments, may contain
privileged or confidential information that is intended to be delivered only to the
person identified above. If you are not the intended recipient, or the person
responsible for delivering this message to the intended recipient, Onsite Solutions Inc. requests
that you immediately notify the sender and asks that you do not read the message or its
attachments, and that you delete them without copying or sending to them to anyone else

From: Andrew Dinh <adinh@osisupport.com>
Sent: Tuesday, May 25, 2021 12:25 PM
To: Josh Beyer <josh.beyer@plgrwth.com>; bill.flax@plgrwth.com <bill.flax@plgrwth.com>
Subject: Fw: PF San Bruno CA – Internet Options

This was sent to Ryan with no response back in March. That why we had to move forward to getting paperwork signed for site surveys.

Thank you.

Note: Due to the coronavirus and various state orders requiring people to work from home, you may experience delays in response to emails. We are here to help and will take care of your needs as quickly as possible. Th

Andrew Dinh
Onsite Solutions Inc.
adinh@osisupport.com

859.806.5520 Mobile
866.465.0330 ext 2 (Technical Support)
www.osisupport.com

Intel Gold Technology Provider 2011
Microsoft Partner – Silver Small and Midmarket Cloud Solutions
Datto Elite Partner
HP Authorized Partner
Dell Technology Partner

**********************************************************************
The information contained in this message, including attachments, may contain
privileged or confidential information that is intended to be delivered only to the
person identified above. If you are not the intended recipient, or the person
responsible for delivering this message to the intended recipient, Onsite Solutions Inc. requests
that you immediately notify the sender and asks that you do not read the message or its
attachments, and that you delete them without copying or sending to them to anyone else

From: Andrew Dinh
Sent: Thursday, March 18, 2021 10:43 AM
To: Ryan Wagner <ryan.wagner@plgrwth.com>
Cc: bill.flax@plgrwth.com <bill.flax@plgrwth.com>; Josh Beyer <josh.beyer@plgrwth.com>; Greg Chumley <gchumley@osisupport.com>
Subject: PF San Bruno CA – Internet Options

Good morning Ryan, I wanted to send this over to you to review on internet availability results that we found for PF San Bruno CA:

PF San Bruno
Comcast has come back, and this location is not serviceable. I have checked and the City of San Bruno provides services here. I spoke to a gentleman with the City's bandwidth department, and he said this w

And here is the attachment



**SAN BRUNO CityNet Services**

398 El Camino Real
San Bruno, CA 94066

**San Bruno CityNet Services**
**Application for Commercial Accounts**

| ☐ TV Service | ☐ Internet Access | ☐ Dedicated Internet Bandwidth | ☐ Telephone |
|---|---|---|---|

Account Activation Fee *(Please call for pricing and Service Levels)*  Service Date Requested: (Mon. - Fri.) ___/___/ ___

---

**Payment Options: (Check One)**

☐ Credit Card - Auto Pay ( Deducted on 15th of each month)   ☐ Credit Card by Phone
_____   Expiration Date _____
☐ Checking Account Auto Pay (Attach voided check - Deducted on 15th of each month)
☐ Pay On-Line at www.SBCityNet.com   ☐ Check or Cash

---

*Please Print*

Business Name _____

Contact Name _____

Business Phone ( ) _____   Contact Phone ( ) _____

Contact Email Address _____

IT Contact _____   IT Phone ( ) _____

Service Address _____ San Bruno, CA

Bill To Address _____

City, State, Zip _____

---

FEIN _____ or Business License _____

Equipment lent or rented to subscriber must be returned upon disconnect to avoid equipment fees. Remittance due by the 15th of each month. Non-payment will result in disconnection of all services.

Signature _____ Today's Date _____ / _____ / _____

---

**Office Use Only**

Account # _____   Account Notes _____

Scheduled Install Date _____   Signed Quote  Y   N/A   Serviceability  Y   N/A

---

Phone (650) 616-3100   www.SBCityNet.com   Fax (650) 871-5526

In light of these points, it is challenging to understand how the investigations could conclude as they did, given the substantial evidence suggesting otherwise.

I look forward to your response and a clarification of

# these matters.

This message may include text created with the help of natural language processing.

 Book time to meet with me

**Ryan Wagner**
**Vice President of IT**
**Ohana Growth Partners, LLC**



office 410-252-8058 x109
212 W. Padonia Rd
Timonium, MD 21093
www.planetfitness.com

**"Culture eats strategy for breakfast"**

---

**From:** Rich Hartman <Rich.Hartman@ohanagp.com>
**Sent:** Wednesday, June 5, 2024 2:29 PM
**To:** Ryan Wagner <Ryan.Wagner@ohanagp.com>
**Cc:** Justin Drummond <Justin.Drummond@ohanagp.com>
**Subject:** Fraud Investigation

This is immediately after Holly Butler sent a reply to RDC. After speaking with Hartman. This is the response to asking to speak with OGP attorney.

Ryan,
In December 21, 2023, you orally raised concerns to Justin Drummond relating to potential fraud, including possible fabrication or altering of documents; potential collusion with an outside vendor; and possible insider trading within OGP. Subsequently, on January 3, 2024, you raised two additional concerns to our legal counsel who was investigating: (1) irregular/inaccurate invoicing by vendor Onsite Solutions, Inc.; and (2) the validity of Onsite as an entity, including the veracity of its leadership. Based on a preponderance of the evidence standard (more likely than not) and the information reviewed, including interviews and documents that you provided, the investigation concluded that the facts uncovered in this investigation do not demonstrate that OGP, its management, or employees engaged in any illegal conduct.

**Rich Hartman**
**VP of People and Culture**
**Ohana Growth Partners, LLC**



office 410-252-8058 x114
212 W. Padonia Rd
Timonium, MD 21093
www.planetfitness.com

**"Culture eats strategy for breakfast"**

| | |
|---|---|
| **Organizer:** | Glenn Norris </O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=D2472C4806144DFD9705FD1F89B8960B-GLENN NORRI> on behalf of Glenn Norris <> |
| **Location:** | email |
| **Start time:** | 6/7/2024 4:00:00 AM ((UTC-05:00) Eastern Time (US & Canada)) |
| **End time:** | 6/8/2024 4:00:00 AM ((UTC-05:00) Eastern Time (US & Canada)) |
| **All day event:** | True |
| **Reminder:** | Not set |
| **Category:** | Not set |
| **Recurrence:** | Occurs Every Friday effective 6/7/2024 to 7/5/2024 |
| **From:** | Glenn Norris |
| **Sent time:** | 06/07/2024 07:26:35 AM |
| **To:** | Glenn Norris |
| **Subject:** | email Brian Odonell on the Re-Fi update |

| Organizer: | Glenn Norris </O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=D2472C4806144DFD9705FD1F89B8960B-GLENN NORRI> on behalf of Glenn Norris <> |
|---|---|
| Location: | Microsoft Teams Meeting |
| Start time: | 6/11/2024 2:30:00 PM ((UTC-05:00) Eastern Time (US & Canada)) |
| End time: | 6/11/2024 2:50:00 PM ((UTC-05:00) Eastern Time (US & Canada)) |
| All day event: | False |
| Reminder: | Not set |
| Category: | Not set |
| Recurrence: | Not set |
| From: | Glenn Norris |
| Sent time: | 06/10/2024 04:11:19 PM |
| To: | Glenn Norris; Curtis Krawetz <ckrawetz@alarisequity.com>; Mike Ervin <mervin@alarisequity.com>; Rich Hartman; Steven D. Frenkil <sfrenkil@milesstockbridge.com>; Justin Drummond |
| Subject: | Alaris Teams Call |

Alaris and Steven Frenkil -- This is the meeting before Glenn and Justin last spoke to RDC.

# Microsoft Teams Need help?

## Join the meeting now

Meeting ID: 286 690 623 862
Passcode: daDWvf

### Dial in by phone

+1 469-214-8508,,405219947# United States, Dallas
Find a local number
Phone conference ID: 405 219 947#
For organizers: Meeting options    Reset dial-in PIN

| | |
|---|---|
| Organizer: | Glenn Norris </O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=D2472C4806144DFD9705FD1F89B8960B-GLENN NORRI> on behalf of Glenn Norris <> |
| Location: | |
| Start time: | 6/11/2024 3:30:00 PM ((UTC-05:00) Eastern Time (US & Canada)) |
| End time: | 6/11/2024 4:00:00 PM ((UTC-05:00) Eastern Time (US & Canada)) |
| All day event: | False |
| Reminder: | Not set |
| Category: | Not set |
| Recurrence: | Not set |
| From: | Glenn Norris |
| Sent time: | 06/11/2024 09:28:01 AM |
| To: | Glenn Norris |
| Subject: | Call with Andrew Dinh |

| From: | Ryan Wagner <Ryan.Wagner@ohanagp.com> |
|---|---|
| Sent time: | 06/12/2024 05:10:25 PM |
| To: | Rich Hartman; Glenn Norris; C. Victor Brick; Justin Drummond |
| Cc: | Stacey Wittelsberger (ESC); Lynne Brick B.S.N. M.A.; Terry Woods (Planet Fitness); Earl Ihle |
| Subject: | Re: Time off for FMLA |
| Attachments: | Outlook-jauuudss.png    ohanagrowthpartnersfinallogo_7fa8dba2-2909-40ee-839a-12ba06da3de6.png Outlook-wqp0gkak.png    Outlook-bsftvmxz.png    Outlook-1zxkl5zx.png    Outlook-e5qekdp3.png ohanagrowthpartnersfinallogo_7fa8dba2-2909-40ee-839a-12ba06da3de6.png |

@Rich Hartman @Glenn Norris @C. Victor Brick @Justin Drummond

I hope this message finds you well. I am writing to formally request information regarding the legal representation retained by Ohana Growth Partners LLC concerning any and all matters that may involve or pertain to me. This includes, but is not limited to, the following issues:

- Accounting irregularities
- Unauthorized use of my name to attest compliance documents
- Fabricated or altered emails/documents
- Any other matters related to my employment
- Any matters where I might be named or involved

Specifically, I would like to know the name and contact information of the attorneys or law firms representing the company in these matters. This information is pertinent as I am seeking to engage in direct negotiations to resolve these issues amicably and efficiently.

I believe that open communication can help us reach a mutually agreeable solution and prevent the need for more formal proceedings. Therefore, I would appreciate your prompt response to this request.

Thank you for your cooperation.

This message may include text created with the help of natural language processing.

 Book time to meet with me

**Ryan Wagner**
**Vice President of IT**
**Ohana Growth Partners, LLC**



office 410-252-8058 x109
212 W. Padonia Rd
Timonium, MD 21093
www.planetfitness.com

**"Culture eats strategy for breakfast"**

**From:** Ryan Wagner <Ryan.Wagner@ohanagp.com>
**Sent:** Wednesday, June 12, 2024 5:01 PM
**To:** Rich Hartman <Rich.Hartman@ohanagp.com>
**Cc:** Glenn Norris <glenn@ohanagp.com>; Justin Drummond <Justin.Drummond@ohanagp.com>; Stacey Wittelsberger (ESC) <srector@exeterstreetcapital.com>; C. Victor Brick <Victor@ohanagp.com>; Lynne Brick B.S.N. M.A. <lynne@ohanagp.com>; Terry Woods (Planet Fitness) <Terry.Woods@ohanagp.com>; Earl Ihle <Earl.Ihle@ohanagp.com>
**Subject:** Re: Time off for FMLA

@Rich Hartman  I appreciate your response, but I need to clarify some critical points regarding the handling of my FMLA leave information.

FMLA Notice Requirements

According to the Family and Medical Leave Act (FMLA), employees must provide notice of the need for FMLA leave as soon as practicable. Typically, this means within the same day or the next business day of learning of the need for leave, when the need is unforeseeable.

- Legal Citation: 29 C.F.R. § 825.302(a) states, "When the need for leave is not foreseeable, an employee must provide notice to the employer as soon as practicable under the facts and circumstances of the particular case. It generally should be practicable for the employee to provide notice of the need for leave either the same day or the next business day."

Confidentiality and Policy Enforcement

I am concerned that my FMLA information was shared with individuals outside the necessary scope. The company is obligated to maintain the confidentiality of FMLA-related information, similar to the handling of medical records. Sharing this information with external parties can violate FMLA confidentiality provisions.

- Legal Citation: 29 C.F.R. § 825.500(g) specifies that FMLA records must be maintained as confidential medical records and disclosed only to those with a need-to-know.

Additionally, I believe that the policies applied to my FMLA leave have been more rigid compared to other types of leave. This includes advanced notice requirements and the handling of intermittent leave.

- Legal Citation: 29 C.F.R. § 825.220(c) prohibits employers from discriminating against employees for taking FMLA leave and mandates that the terms of FMLA leave should not be more stringent than other types of leave.
- Handbook Reference:
  - Sick Leave: "Full-time associates are eligible to receive up to 40 hours of paid sick leave each year. Sick time must be taken during the year it is received" (PF Handbook 12-2022, pg. 38).
  - Personal Leave: "Personal days must be scheduled at least two weeks in advance whenever possible" (PF Handbook 12-2022, pg. 38).

Challenge to the Disclosure Justification

I would like to understand why it was necessary for the specific individuals, including those external to our organization, to know about the details of my FMLA leave. Given that FMLA information is considered confidential, it should only be shared with those who have a legitimate need to know to manage the leave appropriately.

Request for Written Policy

To address the claim that there is no special policy for FMLA notification, I request a copy of the written FMLA policy as it applies to all employees. This will help clarify if any special conditions were applied to my case and ensure consistency with federal and state laws.

Practical Notification Timing

For clarification, providing notice "as soon as practicable" typically means within the same or next business day under the FMLA when the need for leave is not foreseeable. This standard applies unless there are extenuating circumstances that prevent timely notification.

Summary
- Confidentiality: Sharing FMLA information with unauthorized individuals breaches FMLA confidentiality requirements.
- Policy Consistency: FMLA leave policies should not be more stringent than other leave policies.
- Challenge to Disclosure Justification: An explanation is needed as to why the specific

recipients were deemed necessary to know about my FMLA leave.
- **Request for Written Policy**: A formal request for the written FMLA policy to ensure compliance and consistency.

Thank you for addressing these concerns. I look forward to your response and to receiving the requested policy documentation.

This message may include text created with the help of natural language processing.

 Book time to meet with me

**Ryan Wagner**
**Vice President of IT**
**Ohana Growth Partners, LLC**



office 410-252-8058 x109
212 W. Padonia Rd
Timonium, MD 21093
www.planetfitness.com

**"Culture eats strategy for breakfast"**

---

**From:** Rich Hartman <Rich.Hartman@ohanagp.com>
**Sent:** Wednesday, June 12, 2024 4:23 PM
**To:** Ryan Wagner <Ryan.Wagner@ohanagp.com>
**Cc:** Glenn Norris <glenn@ohanagp.com>; Justin Drummond <Justin.Drummond@ohanagp.com>; Stacey Wittelsberger (ESC) <srector@exeterstreetcapital.com>; C. Victor Brick <Victor@ohanagp.com>; Lynne Brick B.S.N. M.A. <lynne@ohanagp.com>; Terry Woods (Planet Fitness) <Terry.Woods@ohanagp.com>; Earl Ihle <Earl.Ihle@ohanagp.com>
**Subject:** Re: Time off for FMLA

See response below.

**Rich Hartman**
**VP of People and Culture**
**Ohana Growth Partners, LLC**



office 410-252-8058 x114
212 W. Padonia Rd
Timonium, MD 21093
www.planetfitness.com

**"Culture eats strategy for breakfast"**

---

**From:** Ryan Wagner <Ryan.Wagner@ohanagp.com>
**Sent:** Wednesday, June 12, 2024 4:07 PM
**To:** Rich Hartman <Rich.Hartman@ohanagp.com>
**Cc:** Glenn Norris <glenn@ohanagp.com>; Justin Drummond <Justin.Drummond@ohanagp.com>; Stacey

Wittelsberger (ESC) <srector@exeterstreetcapital.com>; C. Victor Brick <Victor@ohanagp.com>; Lynne Brick B.S.N. M.A. <lynne@ohanagp.com>; Terry Woods (Planet Fitness) <Terry.Woods@ohanagp.com>; Earl Ihle <Earl.Ihle@ohanagp.com>
**Subject:** Re: Time off for FMLA

@Rich Hartman  I appreciate your response, but I need to clarify some critical points regarding the handling of my FMLA leave information.

1. **Confidentiality Breach:** The email you sent to IT.Support and IT.BusinessIntelligence, which included individuals from Cielo and other external parties, contained information about my FMLA leave. This disclosure is a violation of FMLA confidentiality requirements. According to 29 C.F.R. § 825.500(g), employers must maintain the confidentiality of FMLA records and treat them as medical records, which should be maintained separately from regular personnel files and disclosed only on a need-to-know basis. DISAGREE, NO BREACH

2. **Non-Discrimination and Equal Treatment:** Creating a special policy for my FMLA leave that is more restrictive than the standard leave policy for other employees is discriminatory. Under 29 C.F.R. § 825.220(c), employers are prohibited from discriminating against employees for taking FMLA leave and must ensure that FMLA leave terms and conditions are not more stringent than those for other types of leave. The Maryland Healthy Working Families Act (Md. Code, Labor and Employment § 3-1306) also stipulates that employers cannot implement more restrictive policies for sick and safe leave than for other types of leave, ensuring equal treatment. DISAGREE, NO SPECIAL POLICY

3. **Notification and Compliance:** I provided notification the exact minute I became aware of the need to take leave, which aligns with the requirement under 29 C.F.R. § 825.302(d) that employees must provide notice of the need for FMLA leave as soon as practicable. Any accusation of untimely notification is, therefore, baseless. AGREE FOR INITIAL NOTIFICATION, AND FMLA WAS GRANTED. YOU STILL HAVE THE RESPONSIBILITY TO NOTIFY THE COMPANY WHEN TAKING INTERMITTENT LEAVE AFTER THE INITIAL NOTIFICATION.

Requested Actions:

1. **Rectify Confidentiality Breach:** Ensure that any future communication regarding my FMLA leave is strictly confined to those who need to know, such as HR personnel and direct supervisors, to comply with federal and state confidentiality requirements.

2. **Apply Standard Policies:** Apply the same FMLA policies to me as are applied to other employees, without additional restrictions or requirements, in accordance with federal and state non-discrimination laws.

3. **Clarification of Policy:** Provide the written policy explaining how FMLA leave is tracked and used against existing hours, ensuring it aligns with standard company policies and legal requirements.

I trust that we can resolve this matter promptly and in compliance with all relevant legal standards.

This message may include text created with the help of natural language processing.

📑 Book time to meet with me

**Ryan Wagner**
**Vice President of IT**
**Ohana Growth Partners, LLC**



office 410-252-8058 x109
212 W. Padonia Rd
Timonium, MD 21093
www.planetfitness.com

**"Culture eats strategy for breakfast"**

**From:** Rich Hartman <Rich.Hartman@ohanagp.com>
**Sent:** Wednesday, June 12, 2024 4:01 PM
**To:** Ryan Wagner <Ryan.Wagner@ohanagp.com>
**Cc:** Glenn Norris <glenn@ohanagp.com>; Justin Drummond <Justin.Drummond@ohanagp.com>; Stacey
Wittelsberger (ESC) <srector@exeterstreetcapital.com>; C. Victor Brick <Victor@ohanagp.com>; Lynne Brick
B.S.N. M.A. <lynne@ohanagp.com>; Terry Woods (Planet Fitness) <Terry.Woods@ohanagp.com>; Earl Ihle
<Earl.Ihle@ohanagp.com>
**Subject:** Re: Time off for FMLA

Ryan,
I am not sure who is on those lists....I was just responding to the email you sent.  There was no
confidential information included in my response. We are not treating your FMLA request different.

**Rich Hartman**
**VP of People and Culture**
**Ohana Growth Partners, LLC**



office 410-252-8058 x114
212 W. Padonia Rd
Timonium, MD 21093
www.planetfitness.com

**"Culture eats strategy for breakfast"**

**From:** Ryan Wagner <Ryan.Wagner@ohanagp.com>
**Sent:** Wednesday, June 12, 2024 2:33 PM
**To:** Rich Hartman <Rich.Hartman@ohanagp.com>
**Cc:** Glenn Norris <glenn@ohanagp.com>; Justin Drummond <Justin.Drummond@ohanagp.com>; Stacey
Wittelsberger (ESC) <srector@exeterstreetcapital.com>; C. Victor Brick <Victor@ohanagp.com>; Lynne Brick
B.S.N. M.A. <lynne@ohanagp.com>; Terry Woods (Planet Fitness) <Terry.Woods@ohanagp.com>; Earl Ihle
<Earl.Ihle@ohanagp.com>
**Subject:** Re: Time off for FMLA

@Rich Hartman Those email lists contain both internal and external recipients. While it is necessary for
them to know that I am taking FMLA leave, they do not need to be informed about how FMLA is being
applied to me differently than to others, nor do they need to see that my policy is more rigid compared
to policies for other types of leave.

Additionally, I provided notification the exact minute I became aware that I needed to take leave. This
makes any accusation of untimely notification baseless.

Legal Citations:

Federal Law:

4.  **Family and Medical Leave Act (FMLA), 29 U.S.C. § 2615(a)**

    o  This section prohibits employers from interfering with, restraining, or denying the exercise of or the attempt to exercise any right provided under the FMLA.

5.  **Family and Medical Leave Act (FMLA) Regulations, 29 C.F.R. § 825.500(g)**

    o  This regulation requires that employers maintain the confidentiality of FMLA records and treat them as medical records, which should be maintained separately from regular personnel files and disclosed only on a need-to-know basis.

6.  **Family and Medical Leave Act (FMLA) Regulations, 29 C.F.R. § 825.220(c)**

    o  This regulation prohibits employers from discriminating against employees for taking FMLA leave and ensures that the terms and conditions of FMLA leave are not more stringent than those for other types of leave.

7.  **Family and Medical Leave Act (FMLA) Regulations, 29 C.F.R. § 825.302(d)**

    o  This regulation specifies that employees must provide notice of the need for FMLA leave as soon as practicable, typically within the same or next business day of learning of the need for leave.

Maryland Law:

1.  **Maryland Healthy Working Families Act, Md. Code, Labor and Employment § 3-1305**

    o  This state law requires that employers keep health information related to employee leave confidential and prohibits the dissemination of such information except under specific circumstances.

2.  **Maryland Healthy Working Families Act, Md. Code, Labor and Employment § 3-1306**

    o  This law stipulates that employers cannot implement policies that are more restrictive for sick and safe leave than for other types of leave, ensuring equal treatment.

3.  **Maryland Fair Employment Practices Act, Md. Code, State Government § 20-606**

    o  This act prohibits discrimination in employment on the basis of an individual's use of leave, ensuring that leave policies are applied uniformly without bias.

By failing to maintain the confidentiality of my FMLA leave details, revealing differential treatment in the application of FMLA policies, and making my FMLA policy more rigid than those for other types of leave, these actions may constitute violations of both federal and state laws regarding the confidentiality, non-discriminatory application of leave policies, and equal treatment of leave policies.

This message may include text created with the help of natural language processing.

 Book time to meet with me

**Ryan Wagner**
Vice President of IT
**Ohana Growth Partners, LLC**



office 410-252-8058 x109
212 W. Padonia Rd
Timonium, MD 21093
www.planetfitness.com

**"Culture eats strategy for breakfast"**

**From:** Rich Hartman <Rich.Hartman@ohanagp.com>
**Sent:** Wednesday, June 12, 2024 1:43 PM
**To:** Ryan Wagner <Ryan.Wagner@ohanagp.com>; IT.Support <IT.Support@ohanagp.com>;
IT.BusinessIntelligence <IT.BI@ohanagp.com>
**Cc:** Glenn Norris <glenn@ohanagp.com>; Justin Drummond <Justin.Drummond@ohanagp.com>
**Subject:** Re: Time off for FMLA

As mentioned in my email to you on January 25, 2024,

*"I want to reiterate the requirement that you provide advanced notice to Glenn and to me as soon as you become aware of the need to take leave. Our regular working hours are normally an 8 hour window between 7 am and 6 pm. If at any point during those regular working hours you realize that you are in need of leave, you can send an email, copying me and Glenn, simply stating that you are going to be taking FMLA beginning at a particular day/time and that you anticipate returning to work at a particular day/time."*

FMLA hours are tracked by HR. Email Glenn and me the date and number of hours. Thank you

**Rich Hartman**
VP of People and Culture
Ohana Growth Partners, LLC



office 410-252-8058 x114
212 W. Padonia Rd
Timonium, MD 21093
www.planetfitness.com

**"Culture eats strategy for breakfast"**

**From:** Ryan Wagner <Ryan.Wagner@ohanagp.com>
**Sent:** Wednesday, June 12, 2024 7:00 AM
**To:** IT.Support <IT.Support@ohanagp.com>; Rich Hartman <Rich.Hartman@ohanagp.com>;
IT.BusinessIntelligence <IT.BI@ohanagp.com>
**Cc:** Glenn Norris <glenn@ohanagp.com>; Justin Drummond <Justin.Drummond@ohanagp.com>
**Subject:** Time off for FMLA

@IT.Support @IT.BI Just so you know, I am taking FMLA time for leave. Please allow for extra time if you need anything from me. If there is a critical issue involving security or other imminent risk. Contact Darren. Darren will have additional instructions that will apply if necessary.

@Rich Hartman Please let me know how you want the time tracked. I assume the hours already worked will apply directly to this week? pay period? Please provide me with the written policy explaining how it is used against existing hours.

This message may include text created with the help of natural language processing.

 Book time to meet with me

**Ryan Wagner**
Vice President of IT
Ohana Growth Partners, LLC



office 410-252-8058 x109
212 W. Padonia Rd
Timonium, MD 21093
www.planetfitness.com

"Culture eats strategy for breakfast"

E-FILED; Baltimore County Circuit Court
Docket: 6/14/2024 12:18 PM; Submission: 6/14/2024 12:18 PM
Envelope: 16844353

IN THE CIRCUIT COURT FOR <u>Baltimore County</u>

(City/County)

## CIVIL – NON-DOMESTIC CASE INFORMATION SHEET

### DIRECTIONS

*Plaintiff:* This Information Report must be completed and attached to the complaint filed with the Clerk of Court unless your case is exempted from the requirement by the Chief Justice of the Supreme Court of Maryland pursuant to Rule 2-111(a).

*Defendant:* You must file an Information Report as required by Rule 2-323(h).

***THIS INFORMATION REPORT CANNOT BE ACCEPTED AS A PLEADING***

**FORM FILED BY:** ☒ PLAINTIFF ☐ DEFENDANT    CASE NUMBER <u>C-03-CV-24-002264</u>
(Clerk to insert)

**CASE NAME:** <u>Ohana Growth Partners, LLC</u>    vs.    <u>Ryan Dillon-Capps</u>
   Plaintiff                Defendant

**PARTY'S NAME:** <u>Ohana Growth Partners, LLC</u>    PHONE: _____

**PARTY'S ADDRESS:** _____

**PARTY'S E-MAIL:** _____

**If represented by an attorney:**

PARTY'S ATTORNEY'S NAME: <u>Robert Brennen (AIS# 8712010068)</u>    PHONE: 410-385-3653

PARTY'S ATTORNEY'S ADDRESS: <u>Miles & Stockbridge, 100 Light Street Baltimore, MD 212102</u>

PARTY'S ATTORNEY'S E-MAIL: <u>RBrennen@milesstockbridge.com</u>

**JURY DEMAND?** ☐ Yes ☒ No

**RELATED CASE PENDING?** ☐ Yes ☒ No If yes, Case #(s), if known: _____

**ANTICIPATED LENGTH OF TRIAL?:** _____ hours <u>1</u> days

### PLEADING TYPE

**New Case:** ☒ Original    ☐ Administrative Appeal    ☐ Appeal
**Existing Case:** ☐ Post-Judgment    ☐ Amendment
*If filing in an existing case,* skip Case Category/ Subcategory section – go to Relief section.

### IF NEW CASE: CASE CATEGORY/SUBCATEGORY (*Check one box.*)

**TORTS**
☐ Asbestos
☐ Assault and Battery
☐ Business and Commercial
☐ Conspiracy
☐ Conversion
☐ Defamation
☐ False Arrest/Imprisonment
☐ Fraud
☐ Lead Paint – DOB of Youngest Plt: _____
☐ Loss of Consortium
☐ Malicious Prosecution
☐ Malpractice-Medical
☐ Malpractice-Professional
☐ Misrepresentation
☐ Motor Tort
☐ Negligence
☐ Nuisance
☐ Premises Liability
☐ Product Liability
☐ Specific Performance
☐ Toxic Tort
☐ Trespass
☐ Wrongful Death

**CONTRACT**
☐ Asbestos
☐ Breach
☐ Business and Commercial
☐ Confessed Judgment (Cont'd)
☐ Construction
☐ Debt
☐ Fraud

☐ Government
☐ Insurance
☐ Product Liability

**PROPERTY**
☐ Adverse Possession
☐ Breach of Lease
☐ Detinue
☐ Distress/Distrain
☐ Ejectment
☐ Forcible Entry/Detainer
☐ Foreclosure
   ☐ Commercial
   ☐ Residential
   ☐ Currency or Vehicle
   ☐ Deed of Trust
   ☐ Land Installments
   ☐ Lien
   ☐ Mortgage
   ☐ Right of Redemption
   ☐ Statement Condo
☐ Forfeiture of Property / Personal Item
☐ Fraudulent Conveyance
☐ Landlord-Tenant
☐ Lis Pendens
☐ Mechanic's Lien
☐ Ownership
☐ Partition/Sale in Lieu
☐ Quiet Title
☐ Rent Escrow
☐ Return of Seized Property
☐ Right of Redemption
☐ Tenant Holding Over

**PUBLIC LAW**
☐ Attorney Grievance
☐ Bond Forfeiture Remission
☐ Civil Rights
☐ County/Mncpl Code/Ord
☐ Election Law
☐ Eminent Domain/Condemn.
☐ Environment
☐ Error Coram Nobis
☐ Habeas Corpus
☐ Mandamus
☐ Prisoner Rights
☐ Public Info. Act Records
☐ Quarantine/Isolation
☐ Writ of Certiorari

**EMPLOYMENT**
☐ ADA
☐ Conspiracy
☐ EEO/HR
☐ FLSA
☐ FMLA
☐ Worker's Compensation
☐ Wrongful Termination

**INDEPENDENT PROCEEDINGS**
☐ Assumption of Jurisdiction
☐ Authorized Sale
☐ Attorney Appointment
☐ Body Attachment Issuance
☐ Commission Issuance

**PUBLIC LAW** (continued right column)
☐ Constructive Trust
☐ Contempt
☐ Deposition Notice
☐ Dist Ct Mtn Appeal
☐ Financial
☐ Grand Jury/Petit Jury
☐ Miscellaneous
☐ Perpetuate Testimony/Evidence
☐ Prod. of Documents Req.
☐ Receivership
☐ Sentence Transfer
☐ Set Aside Deed
☐ Special Adm. – Atty
☐ Subpoena Issue/Quash
☐ Trust Established
☐ Trustee Substitution/Removal
☐ Witness Appearance-Compel

**PEACE ORDER**
☐ Peace Order

**EQUITY**
☐ Declaratory Judgment
☐ Equitable Relief
☒ Injunctive Relief
☐ Mandamus

**OTHER**
☐ Accounting
☐ Friendly Suit
☐ Grantor in Possession
☐ Maryland Insurance Administration
☐ Miscellaneous
☐ Specific Transaction
☐ Structured Settlements

**CC-DCM-002** (Rev. 12/2022)      Page 1 of 3

## IF NEW OR EXISTING CASE: RELIEF (Check All that Apply)

| | | | |
|---|---|---|---|
| ☐ Abatement | ☐ Earnings Withholding | ☐ Judgment-Default | ☐ Reinstatement of Employment |
| ☐ Administrative Action | ☐ Enrollment | ☐ Judgment-Interest | ☐ Return of Property |
| ☐ Appointment of Receiver | ☐ Expungement | ☐ Judgment-Summary | ☐ Sale of Property |
| ☐ Arbitration | ☐ Financial Exploitation | ☒ Liability | ☒ Specific Performance |
| ☐ Asset Determination | ☐ Findings of Fact | ☐ Oral Examination | ☐ Writ-Error Coram Nobis |
| ☐ Attachment b/f Judgment | ☐ Foreclosure | ☐ Order | ☐ Writ-Execution |
| ☐ Cease & Desist Order | ☒ Injunction | ☐ Ownership of Property | ☐ Writ-Garnish Property |
| ☐ Condemn Bldg | ☐ Judgment-Affidavit | ☐ Partition of Property | ☐ Writ-Garnish Wages |
| ☐ Contempt | ☐ Judgment-Attorney Fees | ☐ Peace Order | ☐ Writ-Habeas Corpus |
| ☐ Court Costs/Fees | ☐ Judgment-Confessed | ☐ Possession | ☐ Writ-Mandamus |
| ☐ Damages-Compensatory | ☐ Judgment-Consent | ☐ Production of Records | ☐ Writ-Possession |
| ☐ Damages-Punitive | ☐ Judgment-Declaratory | ☐ Quarantine/Isolation Order | |

If you indicated *Liability* above, mark one of the following. This information is not an admission and may not be used for any purpose other than Track Assignment.

☐ Liability is conceded.    ☒ Liability is not conceded, but is not seriously in dispute.    ☐ Liability is seriously in dispute.

### MONETARY DAMAGES (Do not include Attorney's Fees, Interest, or Court Costs)

| | | | |
|---|---|---|---|
| ☐ Under $10,000 | ☐ $10,000 - $30,000 | ☒ $30,000 - $100,000 | ☐ Over $100,000 |
| ☐ Medical Bills $ | ☐ Wage Loss $ | ☐ Property Damages $ | |

### ALTERNATIVE DISPUTE RESOLUTION INFORMATION

Is this case appropriate for referral to an ADR process under Md. Rule 17-101? (Check all that apply)

directive to grant Global Admin rights to Mr. Leodore. Dillon-Capps claimed that Ohana's efforts to regain control of its own systems, MS 365 Account somehow amounts to retaliation against Dillon-Capps for requesting family and medical leave. Attached as **Exhibit B** hereto is a true and correct copy of the June 13, 2024 email exchange. Dillon-Capps failed to comply with the directive by 3 p.m. As a result Dillon-Capps continues to maintain and exercise exclusive administrative rights to the Ohana Microsoft 365 Account and administrative control of the Ohana GoDaddy Account.

13.    As of 2:05 p.m. on June 13, 2024 I was unable to send or receive emails through my Ohana company email account. At 5 p.m. on June 13, 2024 I attempted to log into the Ohana Microsoft Teams account and was unable to do so. Given that Dillon-Capps is the only person currently possessing Global Admin rights it is clear to me that Dillons-Capps used those rights to lock me out of Ohana's computer systems and email. My inability, caused by Dillon-Capps, to communicate with any of Ohana's 1,472 employees or to access any of Ohana's personnel records has effectively rendered it impossible for me to perform in my critical role as Vice President of Human Resources for the company.

14.    At 8:45 p.m. on June 13, 2024, at the direction of Ohana President Justin Drummond, I sent an email, to Dillon-Capps, using my personal email account, to which I attached a letter advising Dillon-Capps of the immediate suspension of his employment with Ohana. Dillon-Capps responded with an email stating that he did not recognize my authority as Vice President of Human Resources to suspend Dillon-Capps' employment, and falsely claimed that Dillon-Capps was acting upon the authority of Ohana President Justin Drummond. Attached as **Exhibit C** hereto is a true and correct copy of that email exchange and a copy of the suspension notice letter that was attached to my email.

4

119447\000002\4859-0397-1784.v1

DocuSign Envelope ID: EC0B4CC1-E1D5-41A2-A727-A12E5CCBBF1D



# OHANA
### Growth Partners

Ohana Growth Partners, LLC
212 W. Padonia Rd.
Timonium, MD 21093

June 13, 2024

Dear Ryan,

Effective immediately, June 13, 2024, you are suspended from your employment with Ohana Growth Partners until further notice. This is due to your insubordination and failure to comply with directives from superiors, described in part to you in the email sent to you earlier today, and continuing since you received the email. The suspension is without pay. During the suspension, you will continue to have access to your medical benefits.

During this period of suspension, you are relieved of all of your duties and are not authorized to work on behalf of the company or have any electronic, internet, physical, or other access to or connection with any company property or systems, including but not limited to company IT systems and equipment. In addition, you are not authorized to enter any company facility.

You will be notified in writing of any further changes.

Sincerely,

Rich Hartman
VP of People and Culture

48

1    to any of this.

2            The facts, which are established in the

3    record that's already before the Court, and I don't

4    think there's any dispute of it is, this concept that

5    the -- a demand was made to, uh, the defendant on

6    June 13th, an hour after he'd asked for -- for FMLA

7    leave, uh, and we're forcing him to work, ignores the

8    fact that he's been asked to do this going to at

9    least May 20th, when he terminated the only -- the

10   only other admin access, uh, for the -- the

11   consultant Ryan Brooks from, erm, Baltimore

12   Consulting.

13           So this was not the first time he'd been

14   asked, uh, this was multiple times he'd been asked.

15   There's no dispute about that.

16           So the -- the concept that -- that the

17   question, erm, directive from, erm, various, uh,

18   members of senior management at Ohana to the

19   defendant, uh, is in retaliation for his request on

20   June 13th to take additional leave is completely base

21   less.

22           MR. DILLON-CAPPS:  Hmm, I can respond to

23   all of those with details, and I can provide evidence

24   in --

25           THE COURT:  Sir, I gave you your chance

56

```
 1    you right now, that the Court disagrees.

 2              The Court has jurisdiction over the

 3    State court claims.  The case hasn't, I'm not sure

 4    that the -- it's not brought under federal law.

 5              MR. DILLON-CAPPS:  Okay.

 6              THE COURT:  So even if -- even if there

 7    were -- hold on.  Even if there were federal

 8    defenses, I'm not sure the case is removable 'cause

 9    it doesn't -- the complaint doesn't, on its face

10    state any federal claim, it hasn't been removed to

11    federal court.

12              The Court has jurisdiction over the

13    claim, so that's not an argument, I'm just telling

14    you right now.

15              Erm, and I haven't heard, as far as any

16    family law leave issue, if you contend that they're

17    violating the law, and I'm not sure I even need to

18    hear about that, but if they did, then if you have a

19    federal claim, assuming they're violating the law,

20    I'm making no such finding, fine, you can pursue that

21    claim either administratively or -- or by law.

22              You can go down to federal court and

23    file a -- a, if there is such a private cause of

24    action for violation of the FLMA (sic), you can do

25    that, that's not a defense to the, uh, claims here,
```

ryan@mxt3.com

**From:** Ryan Wagner <ryan@mxt3.com>
**Sent:** Tuesday, June 18, 2024 5:30 PM
**To:** Brennen, Robert S.
**Subject:** Re: [EXTERNAL] Notification of Service for Case: C-03-CV-24-002264, Ohana Growth Partners, LLC vs. Ryan Dillon-Capps for filing Writ/Summons/Pleading – Electronic Service, Envelope Number: 16870699

I am writing to confirm that the share link to the encrypted envelope and file should have been received. The password has been texted to you separately for security purposes.

In my haste, I did not request a copy of my submission from the clerk. It was signed, and today's chamber judge was named. Due to the urgency of the situation, I was rushing, but assuming everything was printed correctly, the attachment should be what the judge has. I apologize for any delay. Earlier in the week, I informed Justin and Glenn that I could no longer sustain the current situation and required assistance. Glenn mentioned what I assume to be Hartman Executive Advisors. My recent email to Mr. Leadore reiterates my openness to support.

I should clarify that the plaintiffs are not technical experts, and their response to my concerns has consistently been, "I disagree." Throughout this process, I have provided numerous options and proactively suggested solutions to maintain PCI compliance while accommodating their requests. My current state is barely functional, and my wife, a licensed therapist with extensive trauma counseling experience, is primarily taking care of me. I have been in and out of a non-functional state for days now, and leading up to this, I have repeatedly requested contact information from their attorney. When I asked Holly Butler, her instruction was that I go through Ohana, which is confusing given that you are all part of the same law firm. They have refused to provide me with your information, and I had to obtain it from the filing.

There have been two formal written requests for your information because I want this to end. They persist, and when not targeting me, they go after Darren, Ann, and the help desk. Ann requested time off for mental health reasons yesterday. When I inquired about her well-being, she disclosed that she had experienced a panic attack but did not recognize it until she saw a doctor.

On Thursday, I sent emails about Rich's actions against Darren, spoke with Victor and Lynne, and had a lengthy text chain with Justin. At no point did anyone say I was suspended, and I believed Rich was dangerous for hours. I sent my wife away, I sent Ann home, and I reached out to two senior directors for backup before someone responded to me. I would greatly appreciate anything you could do to help us negotiate an end to this. The only condition that is not acceptable is that anyone is left unprotected, and in the last 30 days alone, it has been clearly documented in writing that they are also targeting Ann, Darren, and Cielo. There are more examples stretching back even further for all of us.

Thank you for your attention to this matter. I am doing the best I can, and technically, since I said I would tell them when I was back, my FMLA leave is still active. If they believe something else to be true, please inform them that as a result of the escalated hostility, I will be on FMLA leave until further notice. The

statement about there being no other administrators is incorrect. LeeAnn continues to hold the role of Billing Administrator, and the support team continues to hold the privileged role of User Administrator. Since Darren was removed, there have been some gaps in Azure administration. I would like to provide this access to Dante Martinez, who is the Help Desk Manager. The gap in understanding what the Global Administrator role does underscores how their statements do not qualify as expert testimony.

Thank you for your attention to this matter.

with gratitude and appreciation,

RDC

On Tue, Jun 18, 2024 at 1:41 PM Ryan Wagner <ryan@mxt3.com> wrote:
I am in my car, and I definitly can give you the letter. I do not know the proceedure for the rest of it.

I would have sent it you soon sooner, but I have been non-functioning for most of the time since the suspension. I do not think you would have filed the case at all if you had been given even the full emails where the make coercive threats and supporting emails and texts. For example, the cease and desist was because I had been on FMLA leave time for less than 2 hours before the 6hour demand letter to work or else. I cant think of a reason to not give it to you because it was supposed to be our filing against multiple people at Ohana in our own TRO, preliminary injunction, and Peace Order along with other documents supporting what we are requesting.

Please give me a moment to stop shaking and get to a computer

On Tue, Jun 18, 2024, 1:30 PM Brennen, Robert S. <RBRENNEN@milesstockbridge.com> wrote:

Are you going to send me a copy of what you presented to the Court?


**Robert Brennen** *Principal*
Miles & Stockbridge
direct: +1 (410) 385-3653


**From:** Ryan Wagner <ryan@mxt3.com>
**Sent:** Tuesday, June 18, 2024 1:26 PM
**To:** Brennen, Robert S. <RBRENNEN@MilesStockbridge.com>
**Subject:** Re: [EXTERNAL] Notification of Service for Case: C-03-CV-24-002264, Ohana Growth Partners, LLC vs. Ryan Dillon-Capps for filing Writ/Summons/Pleading – Electronic Service, Envelope Number: 16870699

[EXTERNAL]

I just left the courthouse after providing a letter to the clerk for the chambers judge. My lawyer has a death in the family and is at a preschedules conference next week and we are looking for another attorney who can received to this urgency issue. The judge also received documentation showing the suspension was illegal and the TRO is asking me to something illegal.

Please allow time for the judge to review.

On Tue, Jun 18, 2024, 1:12 PM Brennen, Robert S. <RBRENNEN@milesstockbridge.com> wrote:

As neither I nor Mr. Leadore have received the passwords as contemplated below we will be moving forward with contempt proceedings.

**Robert Brennen**  *Principal*
Miles & Stockbridge
direct: +1 (410) 385-3653

**From:** Brennen, Robert S.
**Sent:** Tuesday, June 18, 2024 8:39 AM
**To:** Ryan Wagner <ryan@mxt3.com>
**Cc:** Frenkil, Steven D. <sfrenkil@MilesStockbridge.com>; Hoffberger, Victoria (Tory)
<vhoffberger@milesstockbridge.com>
**Subject:** FW: [EXTERNAL] Notification of Service for Case: C-03-CV-24-002264, Ohana Growth Partners, LLC vs. Ryan Dillon-Capps for filing Writ/Summons/Pleading – Electronic Service, Envelope Number: 16870699
**Importance:** High

Per the attached, a hearing on Ohana Growth Partners, LLC's Motion for Preliminary Injunction is set for next Wednesday, June 26, 2024 from 9 to 11 a.m.

While Ohana is certain that you are abundantly familiar with the actions necessary to bring you into compliance with the Temporary Restraining Order entered yesterday, here are the steps that you should take:

1. Create an account in Ohana's Microsoft 365 tenant, pleadore@ohanagp.com. Add the account into the Global Administrators group and send the password to pleadore@hartmanadvisors.com via a secure

3 of 6

email. If you do not have access to send a secure email, you should send the password to me via text at 443-956-6458.

2. Provide pleadore@ohanagp.com with owner level rights to all Azure subscription plans.

3. Provide the root level administrator account password in GoDaddy to pleadore@hartmanadvisors.com via a secure email. If you do not have access to send a secure email, you should send the password to me via text at 443-956-6458. You should remove all multi-factor authentication apps, phone numbers, and/or email addresses associated with the root account.

4. Once accounts have been created in Ohana's Microsoft 365 tenant and the root level password provided for the GoDaddy account, refrain from accessing or making configuration changes to their Microsoft 365 and GoDaddy accounts.

You should take all the above actions this morning so that you are in compliance with the Temporary Restraining Order by 12 p.m. today. If you fail to do so Ohana will have no choice but to file additional papers with the Court seeking to have you held in contempt of the Order and will ask that the Court take up the issue of contempt during the hearing on June 26th.

As stated in my June 14, 2024 email, Ohana is open to a negotiated resolution to the claims it has asserted in its Complaint and any claims that you believe you may have, but will not entertain any discussions until you are in compliance with the Temporary Restraining Order. If you bring yourself into compliance and are interested in discussing a resolution, it is possible that the matter could be resolved in advance of the June 26th hearing

I look forward to receiving confirmation of your compliance.

**Robert Brennen** *Principal*
Miles & Stockbridge
direct: +1 (410) 385-3653

**From:** no-reply@efilingmail.tylertech.cloud <no-reply@efilingmail.tylertech.cloud>
**Sent:** Monday, June 17, 2024 3:42 PM
**To:** Brennen, Robert S. <RBRENNEN@MilesStockbridge.com>
**Subject:** [EXTERNAL] Notification of Service for Case: C-03-CV-24-002264, Ohana Growth Partners, LLC vs. Ryan Dillon-Capps for filing Writ/Summons/Pleading – Electronic Service, Envelope Number: 16870699

[EXTERNAL]

# Notification of Service

Case Number: C-03-CV-24-002264
Case Style: Ohana Growth Partners, LLC vs.
Ryan Dillon-Capps
Envelope Number: 16870699

This is a notification of service for the filing listed. Please click the link below to retrieve the submitted document.

| Filing Details | |
|---|---|
| Case Number | C-03-CV-24-002264 |
| Case Style | Ohana Growth Partners, LLC vs. Ryan Dillon-Capps |
| Date/Time Submitted | 6/17/2024 3:41 PM EST |
| Filing Type | Writ/Summons/Pleading – Electronic Service |
| Filing Description | Hearing Notice |
| Filed By | K S1 |
| Service Contacts | Ohana Growth Partners, LLC: <br><br> Robert Brennen (rbrennen@milesstockbridge.com) <br><br> Steven Frenkil (sfrenkil@milesstockbridge.com) <br><br> Victoria Klein (vklein@milesstockbridge.com) <br><br> Kim Edwards (kjedwards@milesstockbridge.com) |

| Document Details | |
|---|---|
| Served Document | Download Document |
| This link is active for 60 days. To access this document, you will be required to enter your email address. Click here for more information. | |

Confidentiality Notice:
This e-mail, including any attachment(s), is intended for receipt and use by the intended addressee(s), and may contain confidential and privileged information. If you are not an intended recipient of this e-mail, you are hereby notified that any unauthorized use or distribution of this e-mail is strictly prohibited, and requested to delete this communication and its attachment(s) without making any copies thereof and to contact the sender of this e-mail immediately. Nothing contained in the body and/or header of this e-mail is intended as a signature or intended to bind the addressor

or any person represented by the addressor to the terms of any agreement that may be the subject of this e-mail or its attachment(s), except where such intent is expressly indicated.

Any federal tax advice provided in this communication is not intended or written by the author to be used, and cannot be used by the recipient, for the purpose of avoiding penalties which may be imposed on the recipient by the IRS. Please contact the author if you would like to receive written advice in a format which complies with IRS rules and may be relied upon to avoid penalties.

Secure Upload/Download files click here.

ryan@mxt3.com

**From:** Ryan Wagner <ryan@mxt3.com>
**Sent:** Tuesday, June 25, 2024 10:21 PM
**To:** rosario.ivette@dol.gov
**Subject:** Ryan Dillon-Capps - FMLA Complaint

Employer:
Ohana Growtth Partners LLC
212 W Padonia Rd
Timonium MD 21093
410-252-8058

Petitioner for Complaint:
Ryan Dillon-Capps
1334 Maple Ave.
Essex MD. 21221
703-303-1113

I apologize for the delay in responding to you. After our phone conversation, I experienced a panic attack that lasted several hours. My wife and I have organized all documents containing the word "FMLA" up to June 11th, and I have added documents from the 12th and 13th. I am using this email to send you the compiled information. Please note that this is not a complete record of all relevant items; it is limited to emails containing the word "FMLA" in my mailbox.

I have been verbally and in writing informed of my approval for FMLA, but I have not received the official acceptance form. Additionally, Darren Koritzka, my IT Coordinator, never received his FMLA-approved documentation from a few years prior, and there is no record of it in the HRIS system, Paycom. In 2023, during a meeting with Rich Hartman, Karen Debus mentioned that there was no record of Darren Koritzka's FMLA in the system. Rich attributed this to a former HR team member's failure to handle the paperwork properly. Although I recall working with Rich Hartman and a different HR team member, the one Rich referenced might have sent the paperwork to Darren, but I am unsure of their involvement in the process. There are additional emails supporting Darren's FMLA due to health issues with his mother.

Despite operating nearly 1500 employees across 80 Planet Fitness gyms in five states (MD, TN, FL, WA, CA) and the District of Columbia, the HR department appears unfamiliar with FMLA regulations. In 2024, several training sessions were held, including those focused on FMLA, discrimination, retaliation, and ADA issues. My work-from-home arrangement is an ADA accommodation, though it seems the HR department might be conflating it with FMLA.

On June 10th, I had a phone conversation with Glenn and Justin, expressing that I couldn't continue enduring the harassment and retaliation without risking hospitalization. I requested to speak to their lawyer, this being the only verbal request that was in conjunction with multiple written requests, emphasizing that further retaliation was unacceptable. On June 12th, I requested intermittent use of my

FMLA, but Glenn Norris and Rich Hartman violated it by disclosing personal information internally and externally and demanding that I work, which I had complained about previously. Despite complying on June 12th, I was met with a six-hour work demand on June 13th after notifying them again at 7 am that I needed to use my FMLA time. I responded with a cease and desist letter at noon.

A follow-up email to the owners was sent out at 2:05 pm. At 12:20 pm, Rich Hartman handed Darren Koritzka a signed letter placing him on a leave of absence, describing it as "like a paid vacation." Concerned for my team's safety due to Rich's erratic behavior, I reached out to Justin Drummond and Victor and left that conversation believing Justin would resolve the issue. However, around 8:45 pm, Rich emailed me a suspension letter, which I contested, asking Justin to intervene. Justin later emailed me, noticing that this was now a sanctioned suspension, followed by Ohana Growth Partners filing a civil case with a TRO and Preliminary Injunction against me the next day. After I had notified that Justin I was going to file a Peace order when Rich emailed me the suspension letter.

Due to fear, my wife and I stayed at hotels over the weekend. On Monday, I was served the TRO after the trial had already occurred, and despite being told I was suspended and not to use the system, they notified me through my work email. Complicating matters, the first three lawyers I contacted weeks in advance had conflicts of interest. I started working with a fourth attorney earlier that week but they were unavailable to respond quickly to the TRO and Preliminary Injunction due to bereavement and a pre-scheduled conference, leading them to withdraw their assistance and refund my payment. On Monday night, I contacted their attorney, requesting information and asking them to use my personal email. I received the TRO details that evening at around 10 pm. The following morning I found an email sent at 9 with less than 90 minutes to comply before they would file a contempt charge on me.

In the next 12 hours, I plan to draft as many motions as possible, aiming to e-file them before 9 am and deliver them to opposing counsel. This is being done pro se while my PTSD severely limits my ability to function for extended periods. On Monday night, after the email exchange with their attorneys, my wife found me in a confused state under a table. My FMLA is for PTSD with Agoraphobia, typically presenting minimally, but recent events have exacerbated my condition.

Thanks to extensive therapy and my service dog, I have been able to function without significant issues since 2019, allowing me to confidently apply for the position with Ohana. However, several triggering events in 2023 led me to take time off in December and file for FMLA on January 4, 2024. My experience has been plagued with violations and retaliation, with more examples in emails not explicitly mentioning FMLA. I can provide a copy of my emails backed up in PST format or through the eDiscovery system.

During my absence from my wedding, security systems were modified, and some were reactivated just before my return. When I removed the vendor managing the M365 and Azure environment on May 20, I found significant security lapses, including the removal of auditing and advanced logging, as well as level 2 security locks on backups. I believe I prevented further damage by pure luck. One eDiscovery hold was removed from almost everyone, possibly due to a lack of awareness about other holds they appear to have not done anything against the other legal holds I had in place. When a critical issue with our database log drives was reported, Glenn Norris blocked scheduled maintenance to protect the data, which included financial information. However, he approved a different less urgent maintenance not involving the databases only a few days later.

If my suspension is not related to FMLA, it may be linked to this issue, as the rescheduled maintenance date was June 13, 2024. Glenn has never asked what the maintenance is. The only thing he knows is that

it is to safeguard the databases. Either way, my FMLA leave was necessary, as indicated to Glenn and Justin on the 10th, when I told them about my current state of mental health, and their actions on June 12th and 13th prevented me from resting.

I believe their intent was to apply so much pressure that I would end up in the hospital. Rich Hartman's response to the cease and desist at noon and the follow-up to the owners at 2:05 pm was impulsive, leading him to retaliate against Darren within 15 minutes of reading the email. This was done without proper procedure, as the supervisor typically writes and signs such letters. Justin Drummond's affidavit supports the timeline, indicating that Rich could not access his account as of 5 pm, contradicting Rich's affidavit, which also commits the 2:05 pm email. I believe Rich Hartman, who is the brother-in-law of the CEO and majority owner, was sanctioned between 5 pm and the time Justin emailed me after 9 pm as an attempt to justify Rich's actions earlier that day. The case never mentioned Darren.

I am aware this email serves as a complaint, but not acceptance of said complaint

 All Emails Search FMLA.zip

Thank you for your attention to this matter.

With gratitude and appreciation,
RDC

**Subject**: Re: [EXTERNAL] REdwards, Kimale J. <kjedwards@MilesStockbridge.com>equest for Copy of Transcript
**From**: "Brennen, Robert S." <RBRENNEN@MilesStockbridge.com>
**To**: "ryan@mxt3.com" <ryan@mxt3.com>
**Cc**: "Edwards, Kimale J." <kjedwards@MilesStockbridge.com>
**Date Sent**: Tuesday, July 2, 2024 4:56:43 PM GMT-04:00
**Date Received**: Tuesday, July 2, 2024 4:56:54 PM GMT-04:00

The filings also show that you now owe Ohana $12,500 in fines. Have you paid any of that?

I think I can get authority to provide the transcript that Ohana paid for if you provide me the password for administrative control of Ohana's GoDaddy account, which Ohana also paid for.

Sent from my iPhone

On Jul 2, 2024, at 16:18, Ryan Wagner <ryan@mxt3.com> wrote:

[EXTERNAL]

Thank you for the 27th. I show in the filings that there is one for the 26th. Do you have the one from the 26th?

On Mon, Jul 1, 2024 at 8:27 AM Brennen, Robert S. <RBRENNEN@milesstockbridge.com> wrote:

As you requested.        Court Transcript

<image001.png>    **Robert Brennen**  *Principal*
Miles & Stockbridge
direct: +1 (410) 385-3653

**From**: Ryan Wagner <ryan@mxt3.com>
**Sent**: Friday, June 28, 2024 4:17 PM
**To**: Brennen, Robert S. <RBRENNEN@MilesStockbridge.com>; Edwards, Kimale J.
<kjedwards@MilesStockbridge.com>
**Subject**: [EXTERNAL] Request for Copy of Transcript

[EXTERNAL]

@Brennen, Robert S. @Edwards, Kimale J. My wife said you asked for a transcript during court yesterday. Do you have a transcript of any of the last two hearings? Could you email them to me?

-RDC

Confidentiality Notice:
This e-mail, including any attachment(s), is intended for receipt and use by the intended addressee(s), and may contain confidential and privileged information. If you are not an intended recipient of this e-mail, you are hereby notified that any unauthorized use or distribution of this e-mail is strictly prohibited, and requested to delete this communication and its attachment(s) without making any copies thereof and to contact the sender of this e-mail immediately. Nothing contained in the body and/or header of this e-mail is intended as a signature or intended to bind the addressor or any person represented by the addressor to the terms of any agreement that may be the subject of this e-mail or its attachment(s), except where such intent is expressly indicated.

Any federal tax advice provided in this communication is not intended or written by the author to be used, and cannot be used by the recipient, for the purpose of avoiding penalties which may be imposed on the recipient by the IRS. Please contact the author if you would like to receive written advice in a format which complies with IRS rules and may be relied upon to avoid penalties.

Secure Upload/Download files click here.

EXHIBIT  100

**Subject**: Ohana Growth Partners, LLC v Ryan Dillon-Capps. Possible path to ending contempt
**From**: "Brennen, Robert S." <RBRENNEN@MilesStockbridge com>
**To**: Ryan Wagner <ryan@mx13.com>
**Date Sent**: Monday, July 8, 2024 7:22:49 AM GMT-04:00
**Date Received**: Monday, July 8, 2024 7:23:02 AM GMT-04:00



Daniel Levitt Affidavit was Filed on July 3rd -- The Help Desk has access and everyone knows this on July 8

Good morning.

As of 2 p.m. yesterday you have accrued $25,000 in fines as a result of your continuing contempt of the Court's June 27th Preliminary Injunction.

Ohana believes that it may be able to achieve the establishment of Global Admin rights in its Microsoft 365 Tenant and administrative rights in its GoDaddy account if you provided photographs (1) of you holding your Maryland drivers license next to your face; (2) the front of your driver's license; and (3) the back of your driver's license. If you provide the photographs and Ohana is successful in regaining administrative rights over its accounts Ohana will consider you contempt as ended and will advise the Court. If you refuse Ohana will present that fact to the Court at your upcoming second contempt hearing as evidence of your continued bad faith and willful violation of the Court's orders.

**Robert Brennen**
*Principal*
100 Light Street  Baltimore, MD 21202
D: +1 410.365.3653  O: +1 410.727.6464  F: +1 410.698.1352

Seeking Incarceration


MILES &
STOCKBRIDGE

[bio] | [vCard] | [rbrennen@milesstockbridge.com]

[in] [y] [f]

Confidentiality Notice

This e-mail, including any attachment(s), is intended for receipt and use by the intended addressee(s), and may contain confidential and privileged information. If you are not an intended recipient of this e-mail, you are hereby notified that any unauthorized use or distribution of this e-mail is strictly prohibited, and requested to delete this communication and its attachment(s) without making any copies thereof and to contact the sender of this e-mail immediately. Nothing contained in the body and/or header of this e-mail is intended as a signature or intended to bind the addressor or any person represented by the addressor to the terms of any agreement that may be the subject of this e-mail or its attachment s  except where such intent is expressly indicated.

Any federal tax advice provided in this communication is not intended or written by the author to be used, and cannot be used by the recipient, for the purpose of avoiding penalties which may be imposed on the recipient by the IRS. Please contact the author if you would like to receive written advice in a format which complies with IRS rules and may be relied upon to avoid penalties.

Secure Upload/Download files click here.

> They will repeat multiple times in the filings that Microsoft provided access, and every one is perjury.

**Subject**: Ohana Growth Partners, LLC v. Ryan Dillon-Capps
**From**: "Brennen, Robert S." <RBRENNEN@MilesStockbridge.com>
**To**: Ryan Wagner <ryan@mxt3.com>
**Cc**: "Hoffberger, Victoria (Tory)" <vhofberger@milesstockbridge.com>, "Frenkil, Steven D." <sfrenkil@MilesStockbridge.com>
**Date Sent**: Monday, July 15, 2024 9:10:33 AM GMT-04:00
**Date Received**: Monday, July 15, 2024 9:10:53 AM GMT-04:00

Notwithstanding your continued contempt of Court and failure to comply with the Court's Preliminary Injunction, Ohana has succeeded in regaining Global Admin rights in its Microsoft 365 tenant and has disabled access via your account, the Null account and the Breakglass account.

Ohana has not regained administrative access to its GoDaddy account and you remain in contempt of the Preliminary Injunction by failing to transfer administrative control of that account and thus subject to daily fines of $2,500 (which, as of yesterday afternoon, amount to $42,500.00). If you transfer that control today, Ohana will agree that your contempt of Court has ended, such that no further fines will accrue, and Ohana will withdraw its pending motion to have you placed in jail until you comply with the injunction. You have nothing to gain from refusing to cooperate with the transfer of control of the GoDaddy account and Ohana's domain name registrations, so we hope that you will choose to cooperate.

**Robert Brennen**
Principal

100 Light Street   Baltimore, MD 21202
D: +1.410.385.3653   O: +1.410.727.6464   F: +1.410.698.1352



> Prior to lawsuit - never once asked for GoDaddy access

[in] [y] [f]

Confidentiality Notice:
This e-mail, including any attachment(s), is intended for receipt and use by the intended addressee(s), and may contain confidential and privileged information. If you are not an intended recipient of this e-mail, you are hereby notified that any unauthorized use or distribution of this e-mail is strictly prohibited, and requested to delete this communication and its attachment(s) without making any copies thereof and to contact the sender. If this e-mail contains any contract terms, such terms are not binding unless confirmed in a separate written contract...

Any federal tax advice provided in this communication is not intended or written by the author to be used, and cannot be used by the recipient, for the purpose of avoiding penalties which may be imposed on the recipient by the IRS...

Secure Upload/Download files click here.

**Subject:** Ohana v Dillon-Capps
**From:** "Brennen, Robert S." <RBRENNEN@MilesStockbridge com>
**To:** "ryan@mxt3.com" <ryan@mxt3 com>
**Date Sent:** Wednesday, July 17, 2024 6:32:48 AM GMT-04:00
**Date Received:** Wednesday, July 17, 2024 6:32:58 AM GMT-04:00

Between 8 and 8:30 this morning you will receive a text message from GoDaddy in connection with another attempt to reset the password on the Ohana GoDaddy account. The text will c

Sent from my iPhone

Confidentiality Notice

This e-mail, including any attachment(s), is intended for receipt and use by the intended addressee(s), and may contain confidential and privileged information. If you are not an intended recipient of this e-mail, you are hereby notified that any unauthorized use or distribution of this e-mail is strictly prohibited, and requested to delete this communication and its attachment(s) without making any copies thereof and to contact the sender of this e-mail immediately. Nothing contained in the body and/or header of this e-mail is intended as a signature or intended to bind the addressee or any person represented by the addressee to the terms of any agreement that may be the subject of this e-mail or its attachment(s), except where such intent is expressly indicated.

Any federal tax advice provided in this communication is not intended or written by the author to be used, and cannot be used by the recipient, for the purpose of avoiding penalties which may be imposed on the recipient by the IRS. Please contact the author if you would like to receive written advice in a format which complies with IRS rules and may be relied upon to avoid penalties

Secure Upload/Download files click here.

───────────────── Wednesday, Jul 3, 2024 ─────────────────

 Glenn Norris

Ryan, I am texting you right now to get a code to get our GoDaddy account activated. Can you send me that code?

Thank you, Glenn

12:47 PM

Conversation between Ryan Dillon-Capps and Robert Steven Brennan

─────────── Tuesday, Jun 18, 2024 ───────────

**Ryan Dillon-Capps**

Follow up to the email. I gave the circuit court clerk a letter for the Judge. My former attorney is unavailable to respond this quickly and we need to find a new one. The judge also received documents showing the suspension was illegal and the TRO asks me to do something illegal.

Please allow time for the Judge to respond.

1:29 PM

**Ryan Dillon-Capps**

Mr Leodore has been unresponsive to all of my emails starting before thursday

1:30 PM

**Ryan Dillon-Capps**

C-03-CV-24-002264

4:41 PM

─────────── Monday, Jun 24, 2024 ───────────

**R** **Robert S. Brennan**

You should have received an email to ryan@mxt3.com with a limited time proposal regarding the motion for contempt.

1:42 PM

─────────── Wednesday, Jun 26, 2024 ───────────

**Ryan Dillon-Capps**

Where am I supposed to be?

9:01 AM

**R** **Robert S. Brennan**

Court Room 8 on the 3rd floor of the Courthouse

9:02 AM

Ryan Dillon-Capps 
Thank you, brt
9:02 AM

——————— Wednesday, Jul 3, 2024 ———————

 Robert S. Brennan

It was unfortunate that you chose not to cooperate with Glenn Norris' effort today to restore Ohana's access to the Ohana GoDaddy account. As your email inbox will reflect your continued willful contempt of the Court's orders has compelled Ohana to pursue additional measures to encourage your compliance.
3:32 PM

——————— Monday, Jul 8, 2024 ———————

 Robert S. Brennan

Good morning.

As of 2 p.m. yesterday you have accrued $25,000 in fines as a result of your continuing contempt of the Court's June 27th Preliminary Injunction.

Ohana believes that it may be able to achieve the establishment of Global Admin rights in its Microsoft 365 Tenant and administrative rights in its GoDaddy account if you provided photographs (1) of you holding your Maryland drivers license next to your face; (2) the front of your driver's license; and (3) the back of your driver's license. If you provide the photographs and Ohana is successful in regaining administrative rights over its accounts Ohana will consider you contempt as ended and will advise the Court. If you refuse Ohana will present that fact to the Court at your upcoming second contempt hearing as evidence of your continued bad faith and willful violation of the Court's orders.
7:25 AM

——————— Wednesday, Jul 17, 2024 ———————

> Motion to Reconsider the continuation is filed twice on July 1 and two more times on July 2. and again on the 5th.
>
> Denied before the evidence is accepted. Entered on the 12th.
>
> The Defendants Plan was to strategically remove material evidence, and create a communication record to support their lie while furthering their fraud, perjury, and defamation.
>
> Evidence, Immunity, and Judgment are once again not in their favor.



**Robert S. Brennan**

Between 8 and 8:30 this morning you will receive a text message from GoDaddy in connection with another attempt to reset the password on the Ohana GoDaddy account. The text will communicate a numerical code needed to authenticate the reset request. You should immediately send the code to me and Glenn Norris via text so that Ohana can complete the reset and acquire administrative control over the account as required by the injunction. If you comply we will file a notice with the Court confirming that your contempt has ended and that the August 7th hearing, for the purposes of determining whether you should be incarcerated in the Baltimore County Detention Center, should be canceled. If you fail to comply, this text, and my earlier texts providing you easy opportunities to end your contempt, will be presented to the Court on August 7th and you will have an opportunity to explain to Judge Barranco why you refused this easy solution and why you should not be jailed without access to your cellphone and other devices until you are ready to comply.

6:26 AM

> Jailed where access to resources to defend themselves is forcibly removed from them.
> The case was never real. The motive was never real.
>
> The same way they were going to "win" this lawsuit is what they were going to try and repeat as Defendants.



**Robert S. Brennan**

You should have just received the text from GoDaddy

8:12 AM



**Robert S. Brennan**

Please send the verification code

8:13 AM

**Ryan Dillon-Capps**

633059

8:13 AM



**Ryan Dillon-Capps**

you are lucky i just checked my phone. you need to give more notice

8:13 AM



> Brennen did NOT expect a response and this is why they kept giving no notice. Just like the TRO.

 Robert S. Brennan

You should have just received a second code

8:15 AM

Ryan Dillon-Capps 

804930

8:15 AM

 Robert S. Brennan

Thank you for your cooperation.

8:21 AM

**Via Email to ryan@mxt3.com and Federal Express**
Ryan Dillon-Capps
1334 Maple Avenue
Essex, MD 21221

July 30, 2024

Dear Ryan:

This letter is to notify you that your employment with Ohana Growth Partners (the "Company") is being terminated effective immediately.

Attached is a copy of the Employment and Non-Disclosure Agreement that you signed on January 8, 2020 (the "Agreement"). Please be certain that you carefully review and fully comply with each and every obligation set forth in the Agreement, including but not limited to the provisions regarding:

- Non-solicitation (Section 4)
- Agreement to Not Disclose Confidential Information and Trade Secrets (Section 5)
- Work Product (Section 6)
- Non-Disparagement (Section 7)

You have property belonging to (1) the Company or any affiliate, entity, or person associated with the Company, or (2) investors in the Company, or (3) Brick Bodies Fitness Services, Inc. ("BBFSI") or any affiliate, entity, or person associated with BBSFI (collectively, the "Companies.") . This letter demands that you immediately return of all property belonging to the Companies. This includes, but is not limited to the following:

- All electronic and hard copies of any documents or information.
- All email or other electronic records downloaded, transferred, or otherwise obtained directly or indirectly from the Companies.
- All devices belonging to or provided by, on behalf of, or through the Companies, directly or indirectly:

  - Dell Latitude 3520
    - Device Name: 2023-BRN91B3
    - Device Serial Number: BRN91B3
  - Dell Latitude 3520
    - Device Name: DESKTOP-F2FLT9M
    - Device Serial Number: DLZ9S93
  - Dell Latitude 7730
    - Device Name: 2023-FBTY1Z2
    - Device Serial Number: FBTY1Z2
  - Microsoft Surface Pro

> This looks like a list from intune. These are the devices that were setup by the Plaintiff.
>
> This isn't a reliable resource for determining who was assigned the asset.

- Device Name: PFMD-SURFACE-04
- Device Serial Number: 005300684253
  ○ Microsoft Surface Laptop 5
    - Device Name: 2023-FK10MIU
    - Device Serial Number: 0F00WRJ23263FB
  ○ Mobile Device
    - Phone number: +1 703-303-1113

Please contact me immediately to arrange for the return of all of these items.

The Company expects strict compliance with these and all other pertinent provisions of the Agreement. The Company will seek injunctive relief and full attorneys' fees, costs, and expenses, including but not limited to those expressly provided in Sections 9 and 10 of the Agreement if you fail to strictly comply with your obligations under the Agreement.

Sincerely,

Rich Hartman
Vice President of People and Culture

ryan@mxt3.com

| | |
|---|---|
| **From:** | Darren Koritzka <darren.koritzka@gmail.com> |
| **Sent:** | Friday, August 9, 2024 9:43 AM |
| **To:** | ryan@mxt3.com |
| **Subject:** | Fwd: Severance |
| **Attachments:** | ohanagrowthpartnersfinallogo_<br>7fa8dba2-2909-40ee-839a-12ba06da3de6.png |

Got a response back.

---------- Forwarded message ---------
From: **Rich Hartman** <Rich.Hartman@ohanagp.com>
Date: Fri, Aug 9, 2024 at 9:20 AM
Subject: Re: Severance
To: Darren Koritzka <darren.koritzka@gmail.com>
Cc: Karen Debus <karen.debus@ohanagp.com>

> Contradicts the
> language in the
> contract.

Hi Darren,

I was out of the office all day yesterday and am just seeing your letter. The short answer is no, we won't modify the terms of the severance package. Feel free to call me if you like but I want to make sure you received your response before the end of day so that you can make your decision. Take care.


**Rich Hartman**
VP of **People and Culture**
Ohana Growth Partners, LLC



office 410-252-8058 x114
212 W. Padonia Rd
Timonium, MD 21093

www.planetfitness.com

"Culture eats strategy for breakfast"

---

From: Darren Koritzka <darren.koritzka@gmail.com>
Sent: Thursday, August 8, 2024 6:02 PM
To: Rich Hartman <Rich.Hartman@ohanagp.com>

1 of 2

**Cc:** Karen Debus <karen.debus@ohanagp.com>
**Subject:** Re: Severance

**CAUTION:** This email originated from outside the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Attention all,

Attached are questions and concerns I have with all of this.

This PDF will be sent tomorrow Via USPS.

On Wed, Aug 7, 2024 at 8:52 AM Rich Hartman <Rich.Hartman@ohanagp.com> wrote:

Hi Darren,

Just a friendly reminder, as I mentioned when we spoke last week, your severance agreement will expire this Friday. Feel free to reach out if you have any questions.

**Rich Hartman**
**VP of People and Culture**
**Ohana Growth Partners, LLC**



office 410-252-8058 x114
212 W. Padonia Rd
Timonium, MD 21093

www.planetfitness.com

**"Culture eats strategy for breakfast"**

August 2, 2024      Days After RDC

Darren Koritzka
1737 Eastern Boulevard
Essex, Maryland 21221

I regret to inform you that your position as IT Coordinator is being eliminated, effective today, August 2, 2024. The elimination of your position is the result of a department review and subsequent restructuring.

We understand that this news is difficult, and we are committed to providing some support. To assist you, we are offering the following:

1. **Severance Package**: You will receive a severance package that includes three weeks of severance pay according to your tenure with the company (one week for every year). We request that you carefully review the severance agreement and consider its terms. You have seven (7) days from the date of this letter **(August 9, 2024)** to decide whether you accept the terms and sign the agreement and return it to us. We encourage you to seek legal advice before making your decision.

2. **Benefits Continuation**: Your health insurance and other benefits will continue through August 31, 2024, and you will have the option to extend coverage under COBRA.

3. **Unemployment Assistance**: You may be eligible for unemployment benefits. We encourage you to contact your local unemployment office for more information.

Attached is a copy of the Employment and Non-Disclosure Agreement that you signed on July 21, 2021 (the "Agreement"). Please be certain that you carefully review and fully comply with each and every obligation set forth in the Agreement, including but not limited to the provisions regarding:

- Non-solicitation (Section 4)
- Agreement to Not Disclose Confidential Information and Trade Secrets (Section 5)
- Work Product (Section 6)
- Non-Disparagement (Section 7)

As part of the termination process, you are required to return all company property in your possession by **August 9, 2024**. This includes, but is not limited to, your company laptop, access fobs, keys, files (both physical and electronic), and any other equipment or materials issued to you during your employment.

Please contact me if you have any questions about your severance package and/or to address any questions or concerns you may have. You can reach me by phone at 410-252-8058 x114 or by email at rich.hartman@ohanagp.com.

On behalf of Ohana Growth Partners, I want to thank you for your service during your time with us. We wish you the very best in your future endeavors.

Sincerely,

Rich Hartman
Vice President of People & Culture

This contract exist to coarse Koritzka into believing they waived their rights if they signed this. The last RDC and Koritzka discussed this agreement as part of labor negotiations Koritzka indicated they were not going to sign it. However, there was a text message where Ohana withheld compensation and that duress may have changed their decision.

## Confidential Severance Agreement, General Release, and Waiver

This **Confidential Severance Agreement, General Release, and Waiver** (the "Agreement") is entered into by and between Darren Koritzka (the "Employee") and Ohana Growth Partners, LLC ("Ohana" or the "Company") (collectively the "Parties"), who agree as follows:

**1.** **Effective Date.** This Agreement shall become effective on the calendar date on which both Parties have signed the Agreement (the "Effective Date").

**2.** **Separation from Employment.**

(a) **Separation Date.** Ohana notified Employee that Employee's position with Ohana is being eliminated and Employee is being terminated from employment with Ohana (the "Separation") effective August 2, 2024 (the "Separation Date"). Employee will perform no services for Ohana after the date Employee is notified of the Separation and Employee will thereafter have no duties or responsibilities for Ohana. Compensation earned by Employee up to and including the Separation Date, if any, will be paid on Ohana's normal pay dates for employees.

**3.** **Severance Pay and Other Matters.** In consideration of the general release and waiver set forth in Section 4 herein and the undertakings contained in this Agreement, the Parties agree to the following:

(a) **Severance Pay.** Ohana will provide severance pay to Employee (the "Severance Pay") as follows:

(1) The Severance Pay shall be in for three (3) weeks' pay in the total gross amount of **Three Thousand One Hundred and Fifty dollars ($3,150)** reduced only by taxes and any other withholdings as required by law and withholdings requested in writing by Employee and agreed to by Ohana. It is agreed that the Severance Pay is provided as post-termination severance pay as a former Ohana employee and not as salary or wages as a current Ohana employee. Ohana will issue a federal W-2 form for the Severance Pay.

(2) The Severance Pay will be paid out in one payment (the "Severance Period") on dates reasonably corresponding to Ohana's normal payroll schedule, commencing no later than the second pay period following the Effective Date.

(3) The payment of Severance Pay is not conditioned upon efforts of Employee to seek or obtain other employment. There shall not be any offset or reduction of the Severance Pay for any amount subsequently earned by Employee, except for earnings that violate the terms of this Agreement.

(b) **Consequences of Breach or Other Non-Compliance by Employee.** Employee expressly agrees that the payment of the Severance Pay is conditioned upon Employee complying with the provisions of Sections 4, 5, 6, and 7 of this Agreement and all other provisions of this Agreement. If Employee does not fulfill Employee's commitments in Sections 4, 5, 6, or 7 or any other provision in this Agreement, whether due to Employee's breach or otherwise, Ohana shall be entitled to (i) suspend

1

payment of the Severance Pay; (ii) recover the Severance Pay already paid under this Section 3; and (iii) seek injunctive and monetary relief and its reasonable attorneys' fees relating to or arising from the breach.

        **(c)**    **No Benefit Accrual.**  Employee will not be eligible for and will not accrue vacation pay, sick leave, 401(k) contributions, or any other benefit credit after the Separation Date set forth in Section 2 herein or by virtue of the Severance Pay. Employer will not make any 401(k) contributions for Employee for 2024 or thereafter and Employee waives such contributions.

        **(d)**    **No Other Payments.**  Other than the Severance Pay described above and compensation that Employee earned on or prior to the Separation Date, Ohana shall not pay or cause to be paid, and Employee waives any entitlement to, any other monetary amount or compensation to or for the benefit of Employee. Employee will not be entitled to receive any other benefits from or through Employer, including but not limited to auto allowance, discretionary allowance, or other discretionary or non-discretionary benefits. Nothing in this Agreement affects the right, if any, that Employee may have to apply for and obtain at Employee's own expense the continuation of a benefit to the extent permitted by law and by the applicable benefit plan.

        **(e)**    **References.**  Requests for references received by the Department of Human Resources of Ohana will be responded to in the manner that Ohana normally responds to such requests, i.e., Ohana will provide a "neutral" reference confirming Employee's dates of employment, job title, and, if Employee's specific written authorization is provided, confirmation of salary.

    **4.**    <u>**General Release and Waiver and Covenant Not to Sue.**</u>

        **(a)**    In consideration for Ohana's execution of this Agreement and the undertakings of Ohana set forth in this Agreement (including but not limited to Ohana's agreement to provide the Severance Pay described in Section 3 herein), **Darren Koritzka** to the maximum extent permitted by applicable law, forever waives, releases and discharges **Ohana Growth Partners, LLC,** and **Brick Bodies Fitness Services, Inc,** and **The John W. Brick Mental Health,** and **Alaris Equity Partners USA Inc.,** and **Down Under Growth Partners, LLC** (collectively, the "Releasees") from all claims, complaints, lawsuits, causes of action, administrative charges, grievances, compensation, agreements, damages, judgments, attorney's fees, and liabilities (collectively, "Claims") that **Darren** had, now has or may have in the future against any or all of the Releasees which arose or occurred from the beginning of time through the date that Employee signs this Agreement. Darren Koritzka agrees that this is a general release and waiver.

        **(b)**    Employee agrees that the Claims released and waived in this Agreement shall include, but are not limited to, those enforceable under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) et seq.; the Civil Rights Acts of 1866 and 1991; the Rehabilitation Act of 1973; the Americans With Disabilities Act, 42 U.S.C. § 12101 et, seq.; the Rehabilitation Act of 1973, 29 U.S.C. § 794; the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et seq.; the Equal Pay Act, 29 U.S.C. § 206(4) et seq.; the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601 et seq.; the Genetic Information Non-Discrimination Act; the Uniformed Services Employment and Reemployment Rights Act, 38 U.S.C. § 43; the Occupational Safety and Health Act of 1970; all Maryland, Baltimore County and other Maryland local government laws against discrimination, as well as all tort and contract claims, and any claim under any federal, state, local, or foreign law, statute,

2

regulation, ordinance, or order, or under the common law of the United States, or any of the states, territories or possessions thereof, including but not limited to the state of Maryland, and all claims arising out of Ohana policy or practice. **Darren Koritzka** agrees that this general release and waiver expressly includes Employee's termination from employment.

(c)     With respect to any claim that is not subject to the foregoing release, Employee further waives and gives up any right to become, and promises not to consent to become, a member of any class or collective action, or otherwise participate in any putative or certified class, collective or multi-party action or proceeding, in a case in which claims are asserted against Ohana or any of the Releasees that are related in any way to Employee's employment, wages or compensation, or the termination of Employee's employment. If, without Employee's prior knowledge and consent, Employee is made a member of a class in any proceeding, Employee agrees to opt out of the class at the first opportunity.

(d)     By signing this Agreement, Employee also expressly acknowledges and represents that Employee (i) has suffered no injuries or occupational diseases arising out of or in connection with Employee's employment with Ohana; (ii) has received all wages to which Employee was entitled as an employee of Ohana; (iii) has received all leave to which Employee was entitled under the Family and Medical Leave Act of 1993 ("FMLA"); and (iv) is not currently aware of any facts or circumstances constituting a violation of the FMLA or the Fair Labor Standards Act ("FLSA").

(e)     Except as provided in Paragraph 4(f) below, Employee agrees not to file, join in, or prosecute any lawsuits against Ohana or any of the other Releasees, concerning any matter, act, occurrence, or transaction which arose on or before the date Employee signs this Agreement. Employee expressly represents that as of the date that Employee signs this Agreement, Employee has not filed any claims, complaints, lawsuits, causes of action, administrative charges, or grievances against Employer or any of the other Releasees.

(f)     The Parties expressly acknowledge and agree that the General Release and Waiver set forth in this Agreement shall exclude: (1) the rights and obligations contained in or provided under this Agreement; (2) any right or entitlement that a party is not allowed by applicable law to waive or release; (3) ) any claim that may arise only after the Effective Date of this Agreement; (4) Employee's right to challenge the validity and enforceability of the Agreement's release of claims under the Age Discrimination in Employment Act of 1967, as amended; and (5) any right a party has to report, file, cooperate in or participate in a charge, investigation or proceeding with the Equal Employment Opportunity Commission, the U.S. Department of Labor, the National Labor Relations Board, or other federal, state or local government agencies ("Government Agencies"), including by providing, without advance notice to Ohana, documents or other information about Ohana that Employee has lawfully obtained, lawfully possesses, and is not otherwise prohibited by law from disclosing and that are relevant to the duties of those Government Agencies.  Employee acknowledges that should any Government Agencies or third party pursue any claims on Employee's behalf, Employee to the fullest extent permitted by law waives the right to any individual monetary recovery in connection with any such claims covered by the release and waiver herein.

(g)     Employee acknowledges that the Severance Pay that Employee will receive are in addition to the benefits Employee would otherwise be entitled to receive and that Employee accepts such payments in full satisfaction of any claims that Employee has waived in this Agreement.

3

5.    **Confidentiality, Non-Disparagement, and Non-Disclosure.**

(a)    **Confidentiality of Agreement.** To the fullest extent permitted by law, Employee agrees to keep confidential and not to disclose, directly or indirectly, to anyone this Agreement or its terms or any prior versions or their terms, or negotiations in connection with this Agreement, except that Employee may reveal the terms of this Agreement as necessary to: individuals engaged by Employee to prepare and file tax returns, Employee's attorney, and Employee's spouse or domestic partner, provided none of the foregoing further disclose the terms of the Agreement and provided all of the foregoing agree to keep the terms of the Agreement confidential; and Employee may reveal this Agreement and its terms as necessary in order to enforce Employee's rights under the terms of this Agreement.

(b)    **Non-Disparagement.** Employee agrees that Employee will not make any adverse, derogatory, libelous, slanderous, defamatory, or disparaging remarks, statements, or communications about Ohana or any of the Releasees or any of their principals, officers, directors, trustees, managers, employees, partners, fiduciaries, administrators, stockholders, or constituent parts, or their reputations, practices, products, services, operations, or vendors, or make or publish or cause to be made or published any communication that reflects adversely upon any of the foregoing, including but not limited to communications on social media websites such as (but not limited to) Facebook, Twitter, TikTok, LinkedIn, Glassdoor, or blogs, by text, email, or other electronic or other means.

(c)    **Non-Disclosure of Confidential Information and Trade Secrets.** Employee affirms that has complied with and not violated, and that Employee will abide by any and all obligations Employee heretofore has undertaken or incurred by contract, statute, or common law, including but not limited those set forth in: (i) the **Employment and Non-Disclosure Agreement** that Employee signed on July 21, 2021 (appended hereto as **Attachment A**), to safeguard the confidentiality of confidential and/or proprietary information and trade secrets of Ohana, including without limitation its trade secrets. In supplementation of any of those existing obligations, Employee hereby separately undertakes through this Agreement, whether already bound or not, to protect Ohana's confidential information consistent with the following terms:

(1)    Confidential Information and Trade Secrets. Employee acknowledges that that during Employee's employment, Ohana has provided Employee with confidential and proprietary information and trade secrets ("Confidential Information") and that in Employee's position as IT Coordinator, Employee has created and otherwise obtained Confidential Information on Ohana's behalf. Confidential Information as used in this Section is as defined in Section 5(a) and (b) of Attachment A.

(2)    Employee Commitments. Employee acknowledge that Ohana's Confidential Information is a valuable, special and unique asset, and the disclosure or misuse of such information may be materially and irreparably damaging to Ohana. Employee shall treat it as the exclusive property of Ohana, take all reasonable steps to preserve its secrecy, and further agrees to the following:

(a)    Non-Disclosure or Use. At all times both during any remaining time of Employee's employment with Ohana, and at any and all time thereafter, Employee will not use, disclose, sell, transfer or otherwise exploit any Confidential Information, other than as expressly authorized by Ohana and for the benefit of Ohana. Employee will not remove any Confidential

4

Information from Ohana's premises, computers, information technology systems or equipment, or any other location, or make copies, download, delete without permission, or transfer materials.

(b) <u>Return</u>. Employee will return promptly to Ohana all Confidential Information and copies thereof immediately. Employee will also return all property and equipment belonging to Ohana, such as laptop computers, access codes Employee has created or received to Ohana information and facilities, demonstration equipment, catalogs, mobile devices, credit cards, identification badges, and Ohana keys, prior to or at the end of Employee's employment. Upon ceasing such employment, Employee will not take with Employee or retain any recorded information, data, documents, saved emails, or materials or copies thereof containing any Confidential Information or other Ohana property, including all Ohana electronic information storage devices on which any such Confidential Information resides. Employee will also allow Ohana all necessary access to any other electronic storage devices that Employee owns or controls, or electronic storage account Employee maintains in such services as Dropbox or cloud-based storage sites, on which Employee has ever maintained Confidential Information, to permit Ohana to inspect for and remove any such Confidential Information.

(3) <u>Exceptions.</u>   Employee understands that Confidential Information does not include information that comes into the public domain through no fault of Employee or others or consists merely of Employee's knowledge of Employee's general job skills. In addition, pursuant to Section 7 of the Defend Trade Secrets Act of 2016 (which added 18 U.S.C. § 1833(b)), Employee understands that Employee shall not be criminally or civilly liable under any federal or state trade secret law for, and nothing in this Agreement prohibits, the disclosure of a trade secret or Confidential Information that (A) is made (i) in confidence to a federal, state, or local government official, either directly or indirectly, or to an attorney and (ii) solely for the purpose of reporting or investigating a suspected violation of law; or (B) is made in a complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal.

(d) **Notice.** Notwithstanding the provisions in Sections 5(a) through 5(c) above Employee understands that: (1) Employee is not prohibited under this Agreement from making honest and accurate disclosures of information (a) in compelled response to a valid court order or a validly issued subpoena upon ten days advance written notice to Ohana, or (b) as otherwise specifically required by applicable law, or (c) pursuant to specific statutory rights expressly authorizing disclosures of information that otherwise would be prohibited by these subsections. (2) Nothing in this Agreement shall be construed to limit any right Employee has under Section 7 of the National Labor Relations Act to engage in lawful concerted activity. (3) Employee is not prohibited from reporting, filing, cooperating in or participating in a charge, investigation or proceeding with any "Government Agencies," including by providing, without advance notice to Ohana, documents or other information about Ohana that Employee has lawfully obtained, lawfully possesses, and is not otherwise prohibited by law from disclosing and that are relevant to the duties of those Government Agencies. Nothing in this Agreement, however, authorizes the disclosure of information obtained through a communication that was subject to the attorney-client or other applicable privilege of Ohana, unless disclosure of the information would still be permitted by an applicable law or rule. Employee acknowledges that should any Government Agencies or third party pursue any claims on Employee's behalf, Employee to the fullest extent permitted by law waives the right to any individual monetary recovery in connection with any such claims covered by the release and waiver herein.

5

6. **Cooperation and Transition.**

(a)    **Transition.** During the longer of two (2) month period following the Separation Date or the Severance Period, Employee will provide information to Ohana as reasonably requested in order to assist with transition of Employee's responsibilities. Employee agrees to take or cause to be taken such further action as may be necessary or as may be reasonably requested in order to transition Employee's duties and to effectuate the purposes, terms, and conditions of this Agreement. This includes, but is not limited to, Employee being available after the termination of Employee's employment to respond in a timely fashion to requests for information from Ohana. Employee agrees to perform all acts and execute and deliver any documents that may be reasonably necessary to carry out the provisions of this transition process.

(b)    **Cooperation.** During the longer of two (2) month period following the Separation Date or the Severance Period, Employee agrees to cooperate fully and completely with Ohana and its legal counsel and respond to questions truthfully with respect to any internal inquiry or investigation, any federal, state, or local agency investigation, and/or any legal proceeding involving Ohana. Such cooperation shall include Employee making themself available at reasonable times and places for interviews and testimony, providing information to Ohana to assist it in the response to or defense of any pending or potential claims against Ohana, or providing other assistance needed by Ohana. Ohana agrees to reimburse Employee for all reasonable out-of-pocket expenses incurred in connection with rendering such cooperation services that are approved in advance by Ohana. If Employee is compelled by legal process to appear or participate in any non-criminal proceeding that involves or is brought against Ohana, Employee shall promptly disclose to Ohana the substance of Employee's planned testimony and production.

(c)    **Facilities.** Employee will not enter the premises of any Ohana or Brick Bodies fitness club or other facility during the three month period following the Effective Date of this Agreement. Thereafter, Employee may request that the President of Ohana and the President of Brick Bodies authorize his presence at one or more locations, and Employee will comply with the decision.

7.    **Return of Ohana Property.** Employee shall return to Ohana by the Effective Date of this Agreement any and all of the property of any kind, which is in Employee's possession, care, custody or control, whether belonging or relating to Ohana or its affiliates or any other person or entity, entrusted to, given to, acquired by, used, or created by Employee during the course of Employee's employment with Ohana, including but not limited to electronic access cards, computers, laptops, phones, books, hardware, software, keys, materials, equipment, notes, reports, files, data, documents, records, and electronically stored information, and copies of any such item. Employee agrees that the property to be returned expressly includes as well, all lists, records and information on customers, applicants, employees and all others. Employee is not entitled to the Severance Pay if Employee has not fully complied with the requirements of this Section.

8.    **Complete Agreement.** This Agreement constitutes the full and complete understanding and agreement between the Parties with respect to the subject matter hereof, except as expressly provided herein, and supersedes all prior understandings and agreements, whether oral, in writing, or otherwise, between them, except that the Parties reaffirm that Sections 4-12 and 14-18 of the Employment Agreement (**Attachment A**) survive the Separation and continue in effect. No modifications to this Agreement shall be binding or of any effect unless they are in writing and signed by both Parties.

6

Employee has not relied and is not relying on any representation by or on behalf of Ohana except as expressly set forth in this Agreement.

**9.    Non-Admission.** Neither this Agreement nor the undertaking, negotiating, execution nor consideration of this Agreement shall constitute or operate or be asserted as an acknowledgement or admission of any kind that Employee or Ohana violated or failed to comply with any provision of the laws, regulations, contracts, and statutes referred to or listed in this Agreement, or any other laws, regulations, contracts, or statutes not so listed or referred to. Ohana expressly denies that it has any liability to the Employee for any matter.

**10.    Severability.** Should any term or provision of this Agreement be determined by any court to be illegal, invalid, or incapable of being enforced, such term shall be excluded to the extent of such invalidity or unenforceability: the remainder of the Agreement (including such term to the extent not invalid or unenforceable) shall remain in full force and effect. To the extent possible, the invalid or unenforceable term shall be deemed replaced by a term that is valid and enforceable and that comes closest to expressing the intention of such invalid or unenforceable term.

**11.    Governing Law, Jurisdiction, and Venue.** The validity and construction of this Agreement and its provisions shall be determined under the internal laws of the State of Maryland, without giving effect to its conflicts of laws provisions. The Parties irrevocably consent and agree to the exclusive jurisdiction and venue of a court of competent jurisdiction in Maryland for purposes of any such action, lawsuit or proceeding, except that Ohana may also enforce the provisions of Sections 4, 5, 6, and 7 against Employee in any jurisdiction in which Employee can be found.

**12.    Jury Trial Waiver.** EMPLOYEE AND OHANA EACH WAIVES ALL RIGHTS TO A TRIAL BY JURY IN ANY LEGAL ACTION, LAWSUIT, OR PROCEEDING WITH RESPECT TO OR ARISING OUT OF THIS AGREEMENT.

**13.    Counterparts and Facsimile.** This Agreement may be executed in multiple counterparts, all of which together shall constitute one and the same instrument. Delivery of a PDF of an executed counterpart of this Agreement via email or facsimile shall have the force and effect as delivery of an original executed counterpart.

**14.    Acknowledgement.** Employee and Ohana each acknowledge and affirm that they fully understand and accept the terms of this Agreement, that they have been given ample time to consider whether to enter into this Agreement and to consult with an attorney concerning the Agreement if they chose to do so, that they enter into this Agreement knowingly, voluntarily and of their own free will, and that no promise or inducement for this Agreement has been made except as set forth in this Agreement.

**15.    Consideration Period.** Employee understands and agrees that Employee has a period of seven (7) calendar days from the date of receipt of this Agreement to consider Employee's decision to sign it, and that Employee may unilaterally waive all or part of this period if Employee elects to do so. If Employee signs this Agreement before the 7-day period expires, Employee's signature constitutes a waiver of this period. The Parties agree that subsequent to the Agreement initially being provided to Employee, any revisions or modifications to this Agreement, whether material or immaterial, do not restart the 7-day time period that Employee has to consider the Agreement. Employee must sign, date, and return this Agreement to Rich Hartman, Vice President of People and Culture, Ohana Growth

7

Partners, LLC, 212 W. Padonia Rd., Timonium, MD 21093, or via email to rich.hartman@ohanagp.com, no later than seven (7) days after receipt of the final version of this Agreement.

16.     **Section 409A.** The parties intend for this Agreement to be exempt from or to comply with Section 409A of the Internal Revenue Code, and this Agreement is to be interpreted accordingly. Regardless of intent, neither party is required to prevent, minimize, or offset any negative consequences to the other party because a payment or benefit due under this Agreement is subject to Section 409A. To the extent that any payment or benefit is subject to Section 409A, the following terms apply: The parties designate that any right to a series of installment payments be treated as the right to a series of separate payments. If payment is due upon termination of employment, "termination of employment" (however referred to) means a "separation from service" (as defined under Section 409A).

17.     **Successors and Assigns.**   Employee may not assign Employee's rights or obligations hereunder without the prior written consent of Ohana. The rights and obligations of Ohana hereunder shall inure to the benefit of and shall be binding upon and may be assigned to Ohana's successors and assigns.

18.     **Validity.**       This Agreement will be valid only if this Agreement is:

(a)     Signed by Employee and dated no earlier than the day following Employee's Separation Date, and

(b)     Returned no later than seven (7) days after receipt of this Agreement. Employee must return this Agreement to Rich Hartman, Vice President of People and Culture, Ohana Growth Partners, LLC, 212 W. Padonia Rd., Timonium, MD 21093, or via email to rich.hartman@ohanagp.com.

[Signatures on Following Page]

8

EMPLOYEE ACKNOWLEDGES THAT EMPLOYEE HAS COMPLETELY READ THIS AGREEMENT AND UNDERSTANDS IT.

EMPLOYEE HAS BEEN GIVEN SEVEN (7) DAYS TO CONSIDER THIS AGREEMENT BEFORE EMPLOYEE SIGNS IT.

**THE EMPLOYEE IS ADVISED TO CONSULT WITH AN ATTORNEY BEFORE SIGNING THIS AGREEMENT.**

Employee and Ohana are signing this Agreement on the dates written next to their respective signatures below.

---

**DARREN KORITZKA**

Date (Must be signed and dated no earlier than the day following the Separation Date)

**OHANA GROWTH PARTNERS, LLC**

Date

By: _____

Title _____

9

directive to grant Global Admin rights to Mr. Leodore. Dillon-Capps claimed that Ohana's efforts to regain control of its own systems, MS 365 Account somehow amounts to retaliation against Dillon-Capps for requesting family and medical leave. Attached as **Exhibit B** hereto is a true and correct copy of the June 13, 2024 email exchange. Dillon-Capps failed to comply with the directive by 3 p.m. As a result Dillon-Capps continues to maintain and exercise exclusive administrative rights to the Ohana Microsoft 365 Account and administrative control of the Ohana GoDaddy Account.

13.     As of 2:05 p.m. on June 13, 2024 I was unable to send or receive emails through my Ohana company email account. At 5 p.m. on June 13, 2024 I attempted to log into the Ohana Microsoft Teams account and was unable to do so. Given that Dillon-Capps is the only person currently possessing Global Admin rights it is clear to me that Dillons-Capps used those rights to lock me out of Ohana's computer systems and email. My inability, caused by Dillon-Capps, to communicate with any of Ohana's 1,472 employees or to access any of Ohana's personnel records has effectively rendered it impossible for me to perform in my critical role as Vice President of Human Resources for the company.

14.     At 8:45 p.m. on June 13, 2024, at the direction of Ohana President Justin Drummond, I sent an email, to Dillon-Capps, using my personal email account, to which I attached a letter advising Dillon-Capps of the immediate suspension of his employment with Ohana. Dillon-Capps responded with an email stating that he did not recognize my authority as Vice President of Human Resources to suspend Dillon-Capps' employment, and falsely claimed that Dillon-Capps was acting upon the authority of Ohana President Justin Drummond. Attached as **Exhibit C** hereto is a true and correct copy of that email exchange and a copy of the suspension notice letter that was attached to my email.

119447\000002\4859-0397-1784.v1

4

DocuSign Envelope ID: EC0B4CC1-E1D5-41A2-A727-A12E5CCBBF1D



# OHANA
## Growth Partners

Ohana Growth Partners, LLC
212 W. Padonia Rd.
Timonium, MD 21093

June 13, 2024

Dear Ryan,

Effective immediately, June 13, 2024, you are suspended from your employment with Ohana Growth Partners until further notice. This is due to your insubordination and failure to comply with directives from superiors, described in part to you in the email sent to you earlier today, and continuing since you received the email. The suspension is without pay. During the suspension, you will continue to have access to your medical benefits.

During this period of suspension, you are relieved of all of your duties and are not authorized to work on behalf of the company or have any electronic, internet, physical, or other access to or connection with any company property or systems, including but not limited to company IT systems and equipment. In addition, you are not authorized to enter any company facility.

You will be notified in writing of any further changes.

Sincerely,

Rich Hartman
VP of People and Culture

1    to any of this.

2            The facts, which are established in the

3    record that's already before the Court, and I don't

4    think there's any dispute of it is, this concept that

5    the -- a demand was made to, uh, the defendant on

6    June 13th, an hour after he'd asked for -- for FMLA

7    leave, uh, and we're forcing him to work, ignores the

8    fact that he's been asked to do this going to at

9    least May 20th, when he terminated the only -- the

10   only other admin access, uh, for the -- the

11   consultant Ryan Brooks from, erm, Baltimore

12   Consulting.

13           So this was not the first time he'd been

14   asked, uh, this was multiple times he'd been asked.

15   There's no dispute about that.

16           So the -- the concept that -- that the

17   question, erm, directive from, erm, various, uh,

18   members of senior management at Ohana to the

19   defendant, uh, is in retaliation for his request on

20   June 13th to take additional leave is completely base

21   less.

22           MR. DILLON-CAPPS:  Hmm, I can respond to

23   all of those with details, and I can provide evidence

24   in --

25           THE COURT:  Sir, I gave you your chance

```
 1    you right now, that the Court disagrees.

 2              The Court has jurisdiction over the

 3    State court claims.  The case hasn't, I'm not sure

 4    that the -- it's not brought under federal law.

 5              MR. DILLON-CAPPS:  Okay.

 6              THE COURT:  So even if -- even if there

 7    were -- hold on.  Even if there were federal

 8    defenses, I'm not sure the case is removable 'cause

 9    it doesn't -- the complaint doesn't, on its face

10    state any federal claim, it hasn't been removed to

11    federal court.

12              The Court has jurisdiction over the

13    claim, so that's not an argument, I'm just telling

14    you right now.

15              Erm, and I haven't heard, as far as any

16    family law leave issue, if you contend that they're

17    violating the law, and I'm not sure I even need to

18    hear about that, but if they did, then if you have a

19    federal claim, assuming they're violating the law,

20    I'm making no such finding, fine, you can pursue that

21    claim either administratively or -- or by law.

22              You can go down to federal court and

23    file a -- a, if there is such a private cause of

24    action for violation of the FLMA (sic), you can do

25    that, that's not a defense to the, uh, claims here,
```