## Ryan Dillon-Capps

| | |
|---|---|
| **From:** | **Ryan Wagner** |
| **Sent:** | **Thursday, January 4, 2024 12:24 PM** |
| **To:** | **Rich Hartman; Glenn Norris; Justin Drummond** |
| **Cc:** | **hbutler@milesstockbridge.com** |
| **Subject:** | **FMLA Notice for Mental Health** |

Subject: FMLA Notice for Mental Health

Dear HR,

I am writing to inform you that I will be taking leave under the Family and Medical Leave Act (FMLA) for mental health reasons.

This letter is a follow-up to my email on 21 December 2023, in which I informed Glenn Norris, Justin Drummond, and Rich Hartman that I needed to take some time off. I asked for time off to recover, I asked for help, and I asked for some reprieve because the hostile work environment, excessive hours, and the investigation were negatively affecting me physically, emotionally, and mentally. This has not happened, and I have been experiencing daily panic attacks that sometimes last hours, severe anxiety, and every part of my life has been negatively affected.
I am re-requesting a thorough investigation into several unusual and concerning discoveries that appear to contain accounting irregularities, libel, and fraud. I request that the investigation into the allegations of a hostile work environment resume immediately. I also ask that appropriate actions be taken against those responsible in accordance with company policies and applicable laws.

I find it deeply troubling that HR has denied any knowledge of my previous reports nor any knowledge of formal reprimands against those responsible for creating a hostile work environment. This contradicts meetings with the CEO, myself, and these individuals where they were reprimanded and instructed to stop, and contradicts what I was told by the CFO when I asked if the CEO knew about the incidents that occurred after those meetings. The CFO said that the CEO had formally reprimanded the CDO in 2023. According to the email that the CFO inadvertently showed me during a shared screen video call, the head of HR immediately notified the CDO and CMO that I had filed a formal complaint against them.

After reporting the missing invoices and payments to Onsite Solutions, we notified them, and they immediately submitted hundreds of thousands of dollars worth of invoices. However, I would like to know if these invoices can account for the discrepancy extending further back than the last several months. My requests for additional team members have been denied every time despite providing detailed information about my team's workload being too high and how I was already working excessive hours to prevent my team from experiencing the entirety of the excess. After reporting the accounting irregularities and subsequent suspicious emails that appeared to contain libel and fraud, my workload began to increase dramatically, the frequency of our meetings increased, and the deadlines for these requests decreased to the point that I was being asked to provide complete analyses by the next meeting, which was sometimes the next day.

When the investigation began, I pleaded for us to bring in a digital forensic expert to take over because it overlapped the hostile work environment. I was forced to read the emails and conversations of those responsible for the hostile work environment between themselves and others. Communications explained why I had encountered so much hostility and disdain from people I never or rarely interacted with and why it was considered acceptable for a person to start yelling at me randomly. It explained how my interaction with the accounts payable manager, to which I was asking her questions about what she needed and wanted, resulted in another member of the accounts payable team yelling at me to "just get her what she wants." Since being yelled at without cause had become normalized, I responded, "That is the plan and why I am asking her questions." It explains all of those things and more because those responsible for the hostile work environment

1 / 2

were engaging in a campaign to turn others against me and portray me as a monster who goes out of their way to make the lives of others difficult. As anyone who has spent significant time with me can tell you, this is the polar opposite of who I am.

You do not need me to be involved; I do not need to be forced to relive these events. Shannon Anderson made the complaint in August of 2021 and is available to speak to. The emails and communications provide more than enough information on everything I have already mentioned and so much more.

I appreciate your understanding and support during this time. I will contact you as soon as I have more information about my return date.

Thank you,
Ryan Wagner

This message may include text created with the help of natural language processing.

 Book time to meet with me

**Ryan Wagner**
**Vice President of IT**
**Ohana Growth Partners, LLC**



office 410-252-8058 x109
212 W. Padonia Rd
Timonium, MD 21093

www.planetfitness.com

**"Culture eats strategy for breakfast"**

# Megan Robison, LCSWC LLC

## Mental Health Therapist

January 31, 2024

Dear Mr. Hartman,

I am writing in response to your questions regarding Ryan Wagner's FMLA documentation.

Ryan has been and will continue meeting with me twice a week, on Monday and Tuesday during business hours. He has reported symptoms prior to and after appointments, lasting multiple hours, which impact his ability to complete work related tasks. He does have the ability to request urgent appointments in response to severe flare-ups, however these are not currently scheduled.

The intermittent FMLA leave is specifically for flare-ups as described. Ryan does not require a consistently reduced work schedule each week. His work capacity is directly affected by these episodic flare-ups, during which he is unable to work.

Due to the nature of Ryan's condition, working in a traditional office environment is very challenging. Accommodations such as the ability to work from home and flexible working hours are essential for Ryan to perform his job functions effectively. His condition severely limits his ability to commute to and function in a traditional office setting. Currently his symptoms severely limit his ability to work in the office, however his goal is to return to the office. Additionally, Flexible working hours allow Ryan to attend appointments, manage symptoms and continue to complete work when able.

Please contact me with any additional questions or concerns.

Thank you,

_Megan_ LCSW-C

Megan Robison, LCSW-C

MD License # 24852

5105 Thomas Avenue, Baltimore, MD 21236 | 443-814-9411 | meganrobisonlcswc@gmail.com



**Celebrating Life**
LYIE. Inc.

1628 11th Street, NW
Washington, DC 20001

Phone: 202-232-4270
Fax: 202-232-4794
E-mail: lyiehealthcare@verizon.net

November 23, 2013

To whom it may concern:

This is to provide documentation about Mr. Ryan Wagner's medical condition. Mr. Wagner is a patient under my care who I have diagnosed with Posttraumatic Stress Disorder and Panic Disorder with Agoraphobia; mental impairments that substantially limit the following major life activities as compared to most people in the general population: concentrating, interacting with others, maintaining social relationships, sleeping, eating, and the operation of the digestive system and bowel. Mr. Wagner has been under my medical care since May 2013, during which time he was evaluated and started on treatment. He receives both psychotherapy and medication management treatment. Mr. Wagner's mental impairments are permanent. Physical symptoms of his mental impairments, including sleep and appetite disturbances are episodic and recurring; they impair his major life activities when they are active. Mr. Wagner has, in the last few weeks, experienced an increase in active symptoms, resulting in Ryan requiring additional treatment sessions and emergency medical care.

Given the nature of his mental impairments, Mr. Wagner needs reasonable accommodation under the ADA or the Rehabilitation Act of 1990 and its subsequent 2008 amendment. Specifically, Mr. Wagner requires a flexible work schedule that permits him to attend regularly scheduled treatment sessions and emergency treatment sessions, and permits him to perform work from home when he experiences symptoms of his mental impairments.

Should you need additional information or questions, I may be contacted as indicated on this letter-header either by telephone or email.

Sincerely,

Maguy Destin-Jeanty, MD





NSAR SERVICE ANIMAL

NAME: BUMI
HANDLER: R. WAGNER
REG. DATE: 04/24/14
TYPE: PSD

NSAR ID: D862954

WWW.NSARCO.COM TOLL FREE: 866-737-3930

**Americans with Disabilities Act of 1990**

**Businesses May ask:**
1. Is this a Service Dog?
2. What tasks does the Service Dog perform?

**Businesses May Not:**
1. Require special ID for the dog.
2. Ask about the person's disability.
3. Charge fees because of the dog.
4. Refuse admittance, isolate, or treat this person less favorably than others.

A person with a disability cannot be asked to remove his service animal from the premises unless:
1. the animal is out of control and the animal's owner does not take effective action to control it.
2. the animal poses a direct threat to the health or safety of others.

Any business that sells or prepares food must allow service animals in public areas even if state or local health codes prohibit animals on the premises.

Refusal to provide equal access to people with disabilities with service animals is a federal civil rights violation, provided by the American Disability Act of 1990. Violators of the ADA can be required to pay money damages and penalties.

**Notice of Eligibility & Rights and Responsibilities**
**under the Family and Medical Leave Act**

**U.S. Department of Labor**
**Wage and Hour Division**



---

**DO NOT SEND TO THE DEPARTMENT OF LABOR.**
**PROVIDE TO EMPLOYEE.**

OMB Control Number: 1235-0003
Expires: 6/30/2023

In general, to be eligible to take leave under the Family and Medical Leave Act (FMLA), an employee must have worked for an employer for at least 12 months, meet the hours of service requirement in the 12 months preceding the leave, and work at a site with at least 50 employees within 75 miles. While use of this form is optional, a fully completed Form WH-381 provides employees with the information required by 29 C.F.R. §§ 825.300(b), (c) which must be provided within five business days of the employee notifying the employer of the need for FMLA leave. Information about the FMLA may be found on the WHD website at www.dol.gov/agencies/whd/fmla.

Date: 01/08/24 _____ (mm/dd/yyyy)

From: Karen Debus _____ (Employer) To: Ryan Wagner _____ (Employee)

On 01/04/24 _____ (mm/dd/yyyy), we learned that you need leave (beginning on) 01/04/24 _____ (mm/dd/yyyy)
for one of the following reasons: (Select as appropriate)

☐ The birth of a child, or placement of a child with you for adoption or foster care, and to bond with the newborn or newly-placed child

■ Your own serious health condition

☐ You are needed to care for your family member due to a serious health condition. Your family member is your:

    ☐ Spouse     ☐ Parent     ☐ Child under age 18     ☐ Child 18 years or older and incapable of self-care because of a mental or physical disability

☐ A qualifying exigency arising out of the fact that your family member is on covered active duty or has been notified of an impending call or order to covered active duty status. Your family member on covered active duty is your:

    ☐ Spouse     ☐ Parent     ☐ Child of any age

☐ You are needed to care for your family member who is a covered servicemember with a serious injury or illness. You are the servicemember's:

    ☐ Spouse     ☐ Parent     ☐ Child     ☐ Next of kin

Spouse means a husband or wife as defined or recognized in the state where the individual was married, including in a common law marriage or same-sex marriage. The terms "child" and "parent" include *in loco parentis* relationships in which a person assumes the obligations of a parent to a child. An employee may take FMLA leave to care for an individual who assumed the obligations of a parent to the employee when the employee was a child. An employee may also take FMLA leave to care for a child for whom the employee has assumed the obligations of a parent. No legal or biological relationship is necessary.

## SECTION I – NOTICE OF ELIGIBILITY

**This Notice is to inform you that you are:**

■ **Eligible** for FMLA leave. *(See Section II for any Additional Information Needed and Section III for information on your Rights and Responsibilities.)*

☐ **Not eligible** for FMLA leave because: *(Only one reason need be checked)*

    ☐ You have not met the FMLA's 12-month length of service requirement. As of the first date of requested leave, you will have worked approximately: _____ towards this requirement.
        *(months)*

    ☐ You have not met the FMLA's 1,250 hours of service requirement. As of the first date of requested leave, you will have worked approximately: _____ towards this requirement.
        *(hours of service)*

Form WH-381, Revised June 2020

**Employee Name:** Ryan Wagner

☐ You are an airline flight crew employee and you have not met the special hours of service eligibility requirements for airline flight crew employees as of the first date of requested leave (i.e., worked or been paid for at least 60% of your applicable monthly guarantee, and worked or been paid for at least 504 duty hours.)

☐ You do not work at and/or report to a site with 50 or more employees within 75-miles as of the date of your request.

If you have any questions, please contact: Karen Debus/410-252-8058 x117   *(Name of employer representative)*

at karen.debus@ohanagp.com/212 W. Padonia Rd., Timonium, MD 21093   *(Contact information).*

## SECTION II – ADDITIONAL INFORMATION NEEDED

As explained in Section I, you meet the eligibility requirements for taking FMLA leave. Please review the information below to determine if additional information is needed in order for us to determine whether your absence qualifies as FMLA leave. Once we obtain any additional information specified below we will inform you, **within 5 business days**, whether your leave will be designated as FMLA leave and count towards the FMLA leave you have available. **If complete and sufficient information is not provided in a timely manner, your leave may be denied.**

*(Select as appropriate)*

☐ No additional information requested. If no additional information requested, go to Section III.

☑ We request that the leave be supported by a certification, as identified below.

■ Health Care Provider for the Employee          ☐ Health Care Provider for the Employee's Family Member
☐ Qualifying Exigency          ☐ Serious Illness or Injury *(Military Caregiver Leave)*

Selected certification form is ■ attached / ☐ not attached.

If requested, medical certification must be returned by 01/20/24   *(mm/dd/yyyy) (Must allow at least 15 calendar days from the date the employer requested the employee to provide certification, unless it is not feasible despite the employee's diligent, good faith efforts.)*

☐ We request that you provide reasonable documentation or a statement to establish the relationship between you and your family member, including *in loco parentis* relationships (as explained on page one). The information requested must be returned to us by _____ *(mm/dd/yyyy)*. You may choose to provide a simple statement of the relationship or provide documentation such as a child's birth certificate, a court document, or documents regarding foster care or adoption-related activities. Official documents submitted for this purpose will be returned to you after examination.

☐ Other information needed *(e.g. documentation for military family leave)*: _____.

The information requested must be returned to us by _____ *(mm/dd/yyyy)*.

If you have any questions, please contact: Karen Debus/410-252-8058 x117   *(Name of employer representative)*

at karen.debus@ohanagp.com/212 W. Padonia Rd., Timonium, MD 21093   *(Contact information).*

## SECTION III – NOTICE OF RIGHTS AND RESPONSIBILITIES

### Part A: FMLA Leave Entitlement

You have a right under the FMLA to take unpaid, job-protected FMLA leave in a 12-month period for certain family and medical reasons, including up to **12 weeks** of unpaid leave in a 12-month period for the birth of a child or placement of a child for adoption or foster care, for leave related to your own or a family member's serious health condition, or for certain qualifying exigencies related to the deployment of a military member to covered active duty. You also have a right

July 1 @ 838AM: Origional Reconsider Exhibits Trimmed - No laws, Cases, Publications          Page # 7 of 185          Exhibit 101-B

Hurson District Exhibit 16-2                    Exhibit Page # 7 of 185                    EXHIBIT 316-2

**Employee Name:** Ryan Wagner

under the FMLA to take up to **26 weeks** of unpaid, job-protected FMLA leave in a single 12-month period to care for a covered servicemember with a serious injury or illness (*Military Caregiver Leave*).

The 12-month period for FMLA leave is calculated as: *(Select as appropriate)*

- ☐ The calendar year (January 1ˢᵗ - December 31ˢᵗ)
- ☐ A fixed leave year based on _____
  *(e.g., a fiscal year beginning on July 1 and ending on June 30)*
- ■ The 12-month period measured forward from the date of your first FMLA leave usage.
- ☐ A "rolling" 12-month period measured backward from the date of any FMLA leave usage. *(Each time an employee takes FMLA leave, the remaining leave is the balance of the 12 weeks not used during the 12 months immediately before the FMLA leave is to start.)*

If applicable, the single 12-month period for *Military Caregiver Leave* started on _____ *(mm/dd/yyyy)*.

*You* (**■ are / ☐ are not**) *considered a key employee* as defined under the FMLA. Your FMLA leave cannot be denied for this reason; however, we may not restore you to employment following FMLA leave if such restoration will cause substantial and grievous economic injury to us.

We (☐ have / ■ have not) determined that restoring you to employment at the conclusion of FMLA leave will cause substantial and grievous economic harm to us. Additional information will be provided separately concerning your status as key employee and restoration.

### Part B: Substitution of Paid Leave – When Paid Leave is Used at the Same Time as FMLA Leave

You have a right under the FMLA to request that your accrued paid leave be substituted for your FMLA leave. This means that you can request that your accrued paid leave run concurrently with some or all of your unpaid FMLA leave, provided you meet any applicable requirements of our leave policy. Concurrent leave use means the absence will count against both the designated paid leave and unpaid FMLA leave at the same time. If you do not meet the requirements for taking paid leave, you remain entitled to take available unpaid FMLA leave in the applicable 12-month period. Even if you do not request it, the FMLA allows us to require you to use your available sick, vacation, or other paid leave during your FMLA absence.

*(Check all that apply)*

- ■ **Some or all of your FMLA leave will not be paid.** Any unpaid FMLA leave taken will be designated as FMLA leave and counted against the amount of FMLA leave you have available to use in the applicable 12-month period.
- ☐ **You have requested to use some or all of your available paid leave** *(e.g., sick, vacation, PTO)* during your FMLA leave. Any paid leave taken for this reason will also be designated as FMLA leave and counted against the amount of FMLA leave you have available to use in the applicable 12-month period.
- ■ **We are requiring you to use some or all of your available paid leave** *(e.g., sick, vacation, PTO)* during your FMLA leave. Any paid leave taken for this reason will also be designated as FMLA leave and counted against the amount of FMLA leave you have available to use in the applicable 12-month period.
- ☐ **Other:** *(e.g., short- or long-term disability, workers' compensation, state medical leave law, etc.)* Any time taken for this reason will also be designated as FMLA leave and counted against the amount of FMLA leave you have available to use in the applicable 12-month period.

The applicable conditions for use of paid leave include: _____.

For more information about conditions applicable to sick/vacation/other paid leave usage please refer to _____
Employee Handbook _____ available at: Paycom Employee Self Service Portal _____.

Form WH-381, Revised June 2020

Employee Name: Ryan Wagner

## Part C: Maintain Health Benefits

Your health benefits must be maintained during any period of FMLA leave under the same conditions as if you continued to work. During any paid portion of FMLA leave, your share of any premiums will be paid by the method normally used during any paid leave. During any unpaid portion of FMLA leave, you must continue to make any normal contributions to the cost of the health insurance premiums. To make arrangements to continue to make your share of the premium payments on your health insurance while you are on any unpaid FMLA leave, contact Karen Debus/410-252-8058 at karen.debus@ohanagp.com .

You have a minimum grace period of (■ 30-days or ☐ _____ *indicate longer period, if applicable*) in which to make premium payments. If payment is not made timely, your group health insurance may be cancelled, provided we notify you in writing at least 15 days before the date that your health coverage will lapse, or, at our option, we may pay your share of the premiums during FMLA leave, and recover these payments from you upon your return to work.

You may be required to reimburse us for our share of health insurance premiums paid on your behalf during your FMLA leave if you do not return to work following **unpaid** FMLA leave for a reason other than: the continuation, recurrence, or onset of your or your family member's serious health condition which would entitle you to FMLA leave; or the continuation, recurrence, or onset of a covered servicemember's serious injury or illness which would entitle you to FMLA leave; or other circumstances beyond your control.

## Part D: Other Employee Benefits

Upon your return from FMLA leave, your other employee benefits, such as pensions or life insurance, must be resumed in the same manner and at the same levels as provided when your FMLA leave began. To make arrangements to continue your employee benefits while you are on FMLA leave, contact Karen Debus at karen.debus@ohanagp.com .

## Part E: Return-to-Work Requirements

You must be reinstated to the same or an equivalent job with the same pay, benefits, and terms and conditions of employment on your return from FMLA-protected leave. An equivalent position is one that is virtually identical to your former position in terms of pay, benefits, and working conditions. At the end of your FMLA leave, all benefits must also be resumed in the same manner and at the same level provided when the leave began. You do not have return-to-work rights under the FMLA if you need leave beyond the amount of FMLA leave you have available to use.

## Part F: Other Requirements While on FMLA Leave

While on leave you (■ will be / ☐ will not be) required to furnish us with periodic reports of your status and intent to return to work every month .

*(Indicate interval of periodic reports, as appropriate for the FMLA leave situation).*

**If the circumstances of your leave change and you are able to return to work earlier than expected, you will be required to notify us at least two workdays prior to the date you intend to report for work.**

### PAPERWORK REDUCTION ACT NOTICE AND PUBLIC BURDEN STATEMENT

It is mandatory for employers to provide employees with notice of their eligibility for FMLA protection and their rights and responsibilities. 29 U.S.C. § 2617; 29 C.F.R. § 825.300(b), (c). It is mandatory for employers to retain a copy of this disclosure in their records for three years. 29 U.S.C. § 2616; 29 C.F.R. § 825.500. Persons are not required to respond to this collection of information unless it displays a currently valid OMB control number. The Department of Labor estimates that it will take an average of 10 minutes for respondents to complete this collection of information, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. If you have any comments regarding this burden estimate or any other aspect of this collection information, including suggestions for reducing this burden, send them to the Administrator, Wage and Hour Division, U.S. Department of Labor, Room S-3502, 200 Constitution Avenue, N.W., Washington, D.C. 20210.

### DO NOT SEND THE COMPLETED FORM TO THE DEPARTMENT OF LABOR. EMPLOYEE INFORMATION.

July 1 @ 838AM: Origional Reconsider Exhibits Trimmed - No laws, Cases, Publications      Page # 9 of 185        Exhibit 101-B

**Certification of Health Care Provider for Employee's Serious Health Condition under the Family and Medical Leave Act**

**U.S. Department of Labor Wage and Hour Division**



DO NOT SEND COMPLETED FORM TO THE DEPARTMENT OF LABOR. RETURN TO THE PATIENT.

OMB Control Number 1235-0003
Expires 6/30/2023

The Family and Medical Leave Act (FMLA) provides that an employer may require an employee seeking FMLA protections because of a need for leave due to a serious health condition to submit a medical certification issued by the employee's health care provider. 29 U.S.C. §§ 2613, 2614(c)(3); 29 C.F.R. § 825.305. The employer must give the employee at least **15 calendar days** to provide the certification. If the employee fails to provide complete and sufficient medical certification, his or her FMLA leave request may be denied. 29 C.F.R. § 825.313. Information about the FMLA may be found on the WHD website at www.dol.gov/agencies/whd/fmla.

## SECTION I – EMPLOYER

Either the employee or the employer may complete Section I. While use of this form is optional, this form asks the health care provider for the information necessary for a complete and sufficient medical certification, which is set out at 29 C.F.R. § 825.306. **You may not ask the employee to provide more information than allowed under the FMLA regulations, 29 C.F.R. §§ 825.306-825.308.** Additionally, you **may not** request a certification for FMLA leave to bond with a healthy newborn child or a child placed for adoption or foster care.

Employers must generally maintain records and documents relating to medical information, medical certifications, recertifications, or medical histories of employees created for FMLA purposes as confidential medical records in separate files/records from the usual personnel files and in accordance with 29 C.F.R. § 1630.14(c)(1), if the Americans with Disabilities Act applies, and in accordance with 29 C.F.R. § 1635.9, if the Genetic Information Nondiscrimination Act applies.

(1) Employee name: Ryan Wagner

        _First_           _Middle_         _Last_

(2) Employer name: Ohana Growth Partners      Date: 01/08/24     _(mm/dd/yyyy)_
                                                    _(List date certification requested)_

(3) The medical certification must be returned by 01/24/24     _(mm/dd/yyyy)_
    _(Must allow at least 15 calendar days from the date requested, unless it is not feasible despite the employee's diligent, good faith efforts.)_

(4) Employee's job title: Vice President of Information Technology   Job description (☒ is / ☐ is not) attached.
Employee's regular work schedule: 40+ hours per week
Statement of the employee's essential job functions: Work w/executive leadership to develop and maintain IT roadmap and oversee day-to-day operations.
    _(The essential functions of the employee's position are determined with reference to the position the employee held at the time the employee notified the employer of the need for leave or the leave started, whichever is earlier.)_

## SECTION II - HEALTH CARE PROVIDER

Please provide your contact information, complete all relevant parts of this Section, and sign the form. Your patient has requested leave under the FMLA. The FMLA allows an employer to require that the employee submit a timely, complete, and sufficient medical certification to support a request for FMLA leave due to the serious health condition of the employee. For FMLA purposes, a "serious health condition" means an illness, injury, impairment, or physical or mental condition that involves _inpatient care_ or _continuing treatment by a health care provider_. For more information about the definitions of a serious health condition under the FMLA, see the chart on page 4.

You may, but are **not required** to, provide other appropriate medical facts including symptoms, diagnosis, or any regimen of continuing treatment such as the use of specialized equipment. Please note that some state or local laws may not allow disclosure of private medical information about the patient's serious health condition, such as providing the diagnosis and/or course of treatment.

Page 1 of 4                                      Form WH-380-E, Revised June 2020

Employee Name: Ryan Wagner

Health Care Provider's name: *(Print)* Megan Robison, LCSW-C

Health Care Provider's business address: 1045 Taylor Ave, Suite 211, Towson, MD 21286

Type of practice / Medical specialty: Mental Health Therapy

Telephone: (443) 814-9411   Fax: (   )   E-mail: meganrobisonlcswc@gmail.com

## PART A: Medical Information

Limit your response to the medical condition(s) for which the employee is seeking FMLA leave. Your answers should be your **best estimate** based upon your medical knowledge, experience, and examination of the patient. **After completing Part A, complete Part B to provide information about the amount of leave needed.** Note: For FMLA purposes, "incapacity" means the inability to work, attend school, or perform regular daily activities due to the condition, treatment of the condition, or recovery from the condition. Do not provide information about genetic tests, as defined in 29 C.F.R. § 1635.3(f), genetic services, as defined in 29 C.F.R. § 1635.3(e), or the manifestation of disease or disorder in the employee's family members, 29 C.F.R. § 1635.3(b).

(1) State the approximate date the condition started or will start: 05/15/13 _____ *(mm dd yyyy)*

(2) Provide your **best estimate** of how long the condition lasted or will last: Chronic/Permanent

(3) Check the box(es) for the questions below, as applicable. For all box(es) checked, the amount of leave needed must be provided in Part B.

☐ **Inpatient Care:** The patient (☐ has been / ☐ is expected to be) admitted for an overnight stay in a hospital, hospice, or residential medical care facility on the following date(s): _____

☐ **Incapacity plus Treatment:** *(e.g. outpatient surgery, strep throat)*
Due to the condition, the patient (☐ has been / ☐ is expected to be) incapacitated for *more than* three consecutive, full calendar days from _____ *(mm/dd/yyyy)* to _____ *(mm/dd/yyyy)*.

The patient (☐ was / ☐ will be) seen on the following date(s): _____
_____

The condition (☐ has / ☐ has not) also resulted in a course of continuing treatment under the supervision of a health care provider *(e.g. prescription medication (other than over-the-counter) or therapy requiring special equipment)*

☐ **Pregnancy:** The condition is pregnancy. List the expected delivery date: _____ *(mm/dd/yyyy)*.

☐ **Chronic Conditions:** *(e.g. asthma, migraine headaches)* Due to the condition, it is medically necessary for the patient to have treatment visits at least twice per year.

■ **Permanent or Long Term Conditions:** *(e.g. Alzheimer's, terminal stages of cancer)* Due to the condition, incapacity is permanent or long term and requires the continuing supervision of a health care provider (even if active treatment is not being provided).

■ **Conditions requiring Multiple Treatments:** *(e.g. chemotherapy treatments, restorative surgery)* Due to the condition, it is medically necessary for the patient to receive multiple treatments.

☐ **None of the above:** If none of the above condition(s) were checked, (i.e., inpatient care, pregnancy) no additional information is needed. Go to page 4 to sign and date the form.

Form WH-380-E, Revised June 2020

Employee Name: Ryan Wagner

(4)    If needed, briefly describe other appropriate medical facts related to the condition(s) for which the employee seeks

FMLA leave. *(e.g. use of nebulizer, dialysis)*  Ryan experiences frequent, intense panic attacks, severe anxiety and agoraphobia. These episodes are particularly triggered by specific workplace stressors, including direct contact with certain colleagues. Episodes vary in frequency and intensity, leading to intermittent incapacitation that prevents him from performing regular daily activities. Ryan is engaged in psychotherapy, and is being referred for medication management as part of his treatment plan. Due to the unpredictable nature of these episodes, Ryan's ability to work is intermittently impacted, necessitating periods of FMLA leave for recovery

## PART B: Amount of Leave Needed

For the medical condition(s) checked in Part A, complete all that apply. Several questions seek a response as to the frequency or duration of a condition, treatment, etc. Your answer should be your best estimate based upon your medical knowledge, experience, and examination of the patient. Be as specific as you can; terms such as "lifetime," "unknown," or "indeterminate" may not be sufficient to determine FMLA coverage.

(5)    Due to the condition, the patient (■ had / ■ will have) planned medical treatment(s) (scheduled medical visits)
*(e.g. psychotherapy, prenatal appointments)* on the following date(s): Twice per week, Mondays and Wednesdays

Ryan has been in ongoing psychotherapy and using stress reduction strategies. Despite these treatments, he continues to experience episodes that are unpredictable and significantly impair his ability to work. He reports that episodes are particularly exacerbated by the hostile interactions and environment in his workplace. His symptoms allow him to work in a limited capacity from home on non-consecutive days or outside regular business hours. Working from home is essential to mitigate the impact of the hostile workplace triggers and allow him to better manage panic attacks and agoraphobia.

(6)    Due to the condition, the patient (■ was / ☐ will be) referred to other health care provider(s) for evaluation or treatment(s).

State the nature of such treatments: *(e.g. cardiologist, physical therapy)*  Medication management/ Psychiatry

Provide your best estimate of the beginning date  01/16/24 _____ *(mm/dd/yyyy)* and end date  Ongoing _____
*(mm/dd/yyyy)* for the treatment(s).

Provide your best estimate of the duration of the treatment(s), including any period(s) of recovery *(e.g. 3 days week)*
Ryan will continue 2 sessions a week as symptoms persist, with ability to increase if needed.

(7)    Due to the condition, it is medically necessary for the employee to work a reduced schedule.

Provide your best estimate of the reduced schedule the employee is able to work. From  01/04/24 _____
*(mm/dd/yyyy)* to __ Ongoing _____ *(mm/dd/yyyy)* the employee is able to work: *(e.g., 5 hours/day, up to 25 hours a week)*

As his condition allows, Ryan may be able to work intermittently, varying week to week. Ability to work from home is essential due to triggers linked to the hostile work environment and His symptoms are more manageable at home.

(8)    Due to the condition, the patient (☐ was / ☐ will be) incapacitated for a continuous period of time, including any time for treatment(s) and/or recovery.

Provide  your  best  estimate  of  the  beginning  date  _____  *(mm/dd/yyyy)*  and  end  date
_____ *(mm/dd/yyyy)* for the period of incapacity.

(9)    Due to the condition, it (■ was / ■ is / ■ will be) medically necessary for the employee to be absent from work on an intermittent basis (periodically), including for any episodes of incapacity i.e., episodic flare-ups. Provide your best estimate of how often (frequency) and how long (duration) the episodes of incapacity will likely last.

Over the next 6 months, episodes of incapacity are estimated to occur 1-3 _____ times per
(☐ day / ▣ week / ☐ month) and are likely to last approximately 1-2 _____ (☐ hours / ▣ days) per episode

Page 3 of 4                                                    Form WH-380-E, Revised June 2020

Employee Name: Ryan Wagner

## PART C: Essential Job Functions

If provided, the information in Section I question #4 may be used to answer this question. If the employer fails to provide a statement of the employee's essential functions or a job description, answer these questions based upon the employee's own description of the essential job functions. An employee who must be absent from work to receive medical treatment(s), such as scheduled medical visits, for a serious health condition is considered to be *not able* to perform the essential job functions of the position during the absence for treatment(s).

(10)   Due to the condition, the employee (☐ was not able / ☐ is not able / ☐ will not be able) to perform one or more

of the essential job function(s). Identify at least one essential job function the employee is not able to perform

Ryan experiences panic attacks, anxiety and agoraphobia which severely limit his ability to commute to, and function in, a traditional office environment. Essential job functions impacted include tasks that require physical presence in the office, such as in-person meetings, on-site collaboration and immediate face-to-face response. During episodes of heightened agoraphobia, especially when triggered by direct interaction with specific individuals in the workplace, working from home becomes a necessary and reasonable accommodation. During severe episodes, he is incapacitated and unable to perform any work functions, whether remotely or in the office, necessitating intermittent leave.

Signature of
Health Care Provider _____[signature]_____ LCSW-C       Date 01/22/24       *(mm/dd/yyyy)*

---

### Definitions of a Serious Health Condition *(See 29 C.F.R. §§ 825.113-.115)*

#### Inpatient Care

- An overnight stay in a hospital, hospice, or residential medical care facility.
- Inpatient care includes any period of incapacity or any subsequent treatment in connection with the overnight stay.

#### Continuing Treatment by a Health Care Provider (any one or more of the following)

**Incapacity Plus Treatment:** A period of incapacity of more than three consecutive, full calendar days, and any subsequent treatment or period of incapacity relating to the same condition, that also involves either:

- o Two or more in-person visits to a health care provider for treatment within 30 days of the first day of incapacity unless extenuating circumstances exist. The first visit must be within seven days of the first day of incapacity; or,

- o At least one in-person visit to a health care provider for treatment within seven days of the first day of incapacity, which results in a regimen of continuing treatment under the supervision of the health care provider. For example, the health provider might prescribe a course of prescription medication or therapy requiring special equipment.

**Pregnancy:** Any period of incapacity due to pregnancy or for prenatal care.

**Chronic Conditions:** Any period of incapacity due to or treatment for a chronic serious health condition, such as diabetes, asthma, migraine headaches. A chronic serious health condition is one which requires visits to a health care provider (or nurse supervised by the provider) at least twice a year and recurs over an extended period of time. A chronic condition may cause episodic rather than a continuing period of incapacity.

**Permanent or Long-term Conditions:** A period of incapacity which is permanent or long-term due to a condition for which treatment may not be effective, but which requires the continuing supervision of a health care provider, such as Alzheimer's disease or the terminal stages of cancer.

**Conditions Requiring Multiple Treatments:** Restorative surgery after an accident or other injury; or, a condition that would likely result in a period of incapacity of more than three consecutive, full calendar days if the patient did not receive the treatment.

**PAPERWORK REDUCTION ACT NOTICE AND PUBLIC BURDEN STATEMENT**

If submitted, it is mandatory for employers to retain a copy of this disclosure in their records for three years. 29 U.S.C. § 2616; 29 C.F.R. § 825.500. Persons are not required to respond to this collection of information unless it displays a currently valid OMB control number. The Department of Labor estimates that it will take an average of 15 minutes for respondents to complete this collection of information, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. If you have any comments regarding this burden estimate or any other aspect of this collection information, including suggestions for reducing this burden, send them to the Administrator, Wage and Hour Division, U.S. Department of Labor, Room S-3502, 200 Constitution Avenue, N.W., Washington, D.C. 20210.

**DO NOT SEND COMPLETED FORM TO THE DEPARTMENT OF LABOR. RETURN TO THE PATIENT.**

Page 4 of 4                                                                 Form WH-380-E, Revised June 2020

## Ryan Dillon-Capps

| | |
|---|---|
| **From:** | **Ryan Wagner** |
| **Sent:** | **Friday, May 24, 2024 8:00 AM** |
| **To:** | **Karen Debus** |
| **Cc:** | Justin Drummond; Terry Woods; Earl Ihle; C. Victor Brick; Lynne Brick B.S.N. M.A.; Stacey Wittelsberger (ESC); Glenn Norris; Rich Hartman |
| **Subject:** | Re: Ryan Brooks - REPLY TO YOU ALLEGATIONS & PERFORMANCE ISSUES OF RYAN BROOKS |
| **Attachments:** | Clarification of Text Message Requested; Re: Clarification of Text Message Requested; Re: FMLA |
| **Importance:** | **High** |

@Karen Debus I regret to inform you that Rich Hartman on Wednesday January 10th at 1:46 PM EST said "... Going forward please stop working and complete the FMLA paperwork."
Here are two screenshots that contain the full-text message with this statement and my replies and then his reply where he stated the reason was "...Our policy is to not allow work while on leave"



This is what was emailed to him in response.

**From:** Ryan Wagner <Ryan.Wagner@ohanagp.com>
**Sent:** Wednesday, January 10, 2024 5:32 PM
**To:** Rich Hartman <Rich.Hartman@ohanagp.com>
**Subject:** Clarification of Text Message Requested

@Rich Hartman On 10 January 2024, you sent me the following text message

> When I say preclude I mean our practice.
> You are correct in that we cannot require
> you to work but it is not your choice to
> work while on leave. Our policy is to not
> allow work while on leave.

Can you please elaborate on what you are saying?

For 3 years, I have virtually never had vacation or personal day of leave where I did not work, and I have also worked him responding or not responding to something because he was on leave was a material part of the conversation. they need to text me.

On Page 30 of the handbook, it shows that we allow for full or partial days of absences from FMLA

Under federal and state law, your salary is subject to certain deductions. For example, unless state law requires otherwise, your salary can be reduced for the following reasons:

- Full-day absences for personal reasons.
- Full-day absences for sickness or disability.
- Full-day disciplinary suspensions for infractions of our written policies and procedures.
- Family and Medical Leave absences (either full- or partial-day absences).
- To offset amounts received as payment for jury and witness fees or military pay.
- The first or last week of employment in the event you work less than a full week.
- Any full work week in which you do not perform any work.

From page 41 through 51 where it talks about our leave policies the only place that I found to use similar language

**D. No Work While on Leave**

The taking of another job while on family/medical leave or any other authorized leave of absence is grounds for immediate termination, to the extent permitted by law.

Except this appears to say that we are not allowed to take another job, not that we are prohibited from performing th that Ohana would want the head of IT to suddenly become completely unavailable, and one would think that the he you are not happy and celebrating me for my flexibility and dedication to Ohana.

Even if there was a written policy that said we are not allowed to work while on leave. For the same reason that all o

If you want to prohibit me from working, then I need to understand why and I will need to know how we are commun

I do not even know right now how the 12 weeks of FMLA will ultimately be broken up. How will people know when I

I am not authorizing Ohana to tell people that I am on FMLA leave. With very few exceptions, those who have been

I have attached that email to aide in transparency. In this email, I reference our handbook and challenge the claim the company policy is to prevent. Rich responded on the 16th of January; the email is attached. I could continue to break down this and many other emails to raise questions and provide transparency. Instead, I will ask you some questions that I do not anticipate any answers to.

From the beginning, I have requested that we utilize 3rd party experts without conflict of interest to inform and advise us: (the ones you are aware of)

1. Digital Forensic Expert for suspicious emails
2. Attorney practicing the relevant body of law to which the felonies apply
3. Head of Corporate Security for PCI Compliance

These steps could have been taken at any point to address my concerns and to provide protection that we performed due process.

- Have you asked any of your own professional resources about what are the standard practices when concerns like these are raised?

The FMLA paperwork you originally sent and the updated version you sent both contain 30 days of recertification. Since then, Rich has stated via email that I can cease completing these monthly and instead do it once every 6 months.

- Do you know what FMLA regulation 29 CFR §825.308 states? (see attached email titled Re: FMLA for more information.)

Holly Buttler is the principal of a well-established and respected law firm.

- Is it reasonable to think that Holly Buttler would have advised Ohana to complete the form you emailed me incorrectly?
- Who found the first mistake?

3 / 22

- Is it reasonable to think that Holly Buttler would not provide sound legal advice without mitigating factors preventing her from doing so?

My predecessor completed a form and submitted it to Rich prior to being terminated. (this may be new to you - I can provide you with proof that Rich recieved and confirmed receipt)

- Can you find that form? What does it say? Are you certain that it had not been modified after Steve submitted it to Rich.

Rich immediately notified two people that I had named them in my formal HR Complaint.

- Is it normal for HR to immediately notify anyone named in a formal complaint?
- Is there a legal reason HR would or would not want to do this?

Here are some FMLA and other related questions:

- Can the company FMLA policy be more stringent than those applied to other types of leave?
- Do other executives or department heads have the same policies being applied to them as I currently have applied to me?
- Are all of the policies currently applied to me also being applied to all other executives and department heads equally?
- Have all policies being applied to me been clearly communicated and applied consistently across the organization?
- Where is the FMLA leave notification requirement policy?  Does it clearly state why it is necessary and how it will be applied?
- What does the FMLA say about policies that hinder someone on FMLA's ability to perform their duties effectively?
- Are there other labor laws that could apply to a situation listed above or mentioned in other emails you were on?
- As a person who has been leading many of these communications, have you had unfiltered access to the employment attorney to ensure your communications align with the law and regulations?
- Are there any emails you have sent me that could violate the FMLA or other laws and regulations?
- What would be the outcome if the emails and communications you sent me were found to violate a law or regulation?
- Have any former team members of HR experienced a similar situation?
- Have any former team members of HR raised concerns about Rich?
- Does insubordination apply to situations where an order is not legitimate and reasonable?  How about orders that are illegal or unethical?
- Are employers allowed to terminate, demote, or apply other adverse employment action in response to an employee's refusal to violate laws or regulatory standards?
- Can an employer use another reason for adverse action hours, days, or even the following weeks - possibly months or longer - when an employee escalates the issue and reports threats of adverse actions?
- Does PCI compliance fall under any whistleblower protections, such as Maryland MOSH, Federal SOX or Dodd-Frank or CPA, or common laws like wrongful discharge?
- Have you been advised by the attorney what qualifies as "good faith"?

As per PCI Compliance,

- I asked for clarification as to what he needs to do so that the department can do it or provide a recommendation as to how it can be done.
- Offered to have a meeting with the head of corporate security to discuss my concerns.

4 / 22

o   As long as they have all the relevant information and I can be part of that conversation, I do not anticipate any issues with us following their approval.

o   This is the same process we have done for anything and everything else PCI compliance related.

This message may include text created with the help of natural language processing.

Book time to meet with me

**Ryan Wagner**
**Vice President of IT**
**Ohana Growth Partners, LLC**



office 410-252-8058 x109
212 W. Padonia Rd
Timonium, MD 21093

www.planetfitness.com

**"Culture eats strategy for breakfast"**

**From:** Karen Debus <karen.debus@ohanagp.com>
**Sent:** Thursday, May 23, 2024 4:55 PM
**To:** Ryan Wagner <Ryan.Wagner@ohanagp.com>
**Cc:** Rich Hartman <Rich.Hartman@ohanagp.com>
**Subject:** RE: Ryan Brooks - REPLY TO YOU ALLEGATIONS & PERFORMANCE ISSUES OF RYAN BROOKS

Hi Ryan,

I just want to stress a couple of points regarding your mention of stress/anxiety. You are approved for FMLA which covers any time you need off for the medical reason you indicated when you applied. No one from HR has stated that you shouldn't be working, but if you need time off, it is available to you through FMLA protection. You just need to let us know that the time off is FMLA time.

Thanks,

Karen

**Karen Debus**
**Sr. HR Generalist**
**Ohana Growth Partners, LLC**



office 410-252-8058 x117
212 W. Padonia Rd
Timonium, MD 21093
www.planetfitness.com

5 / 22

**"Culture eats strategy for breakfast"**

**From:** Ryan Wagner <Ryan.Wagner@ohanagp.com>
**Sent:** Tuesday, May 21, 2024 5:37 PM
**To:** Glenn Norris <glenn@ohanagp.com>
**Cc:** Justin Drummond <Justin.Drummond@ohanagp.com>; Rich Hartman <Rich.Hartman@ohanagp.com>; Karen Debus <karen.debus@ohanagp.com>; Matt Norris <Matt.Norris@ohanagp.com>
**Subject:** Re: Ryan Brooks - REPLY TO YOU ALLEGATIONS & PERFORMANCE ISSUES OF RYAN BROOKS

Thank you for your response. I will send Ryan Brooks the link to complete the PCI DSS 4.0 training and ensure he begins the required processes immediately. However, I must reiterate that reinstating his access without him having completed these steps will place us in violation of PCI DSS 4.0 compliance requirements.

**Immediate Actions:**

4. Ryan Brooks can choose any available training program as long as we receive proof of completion. Previously, I offered to sit down with him to ensure he understands the necessary information, but under duress, I am not comfortable doing this because of the ongoing threats and pressure, which I am afraid will continue until I certify him regardless of his actual compliance.

5. **Restore Access Under Duress:** I will reinstate his access as per your directive. This action is being taken under duress and against my professional judgment due to the compliance risks involved.

I must inform you that I am experiencing severe stress and anxiety due to this situation, including a panic attack and hyperventilation throughout this conversation. I am currently shaking badly and struggling to finish this email. If I am unable to complete this task by 9 am tomorrow, it is because I have gone catatonic from this experience. Please understand that I am doing my best under these circumstances.

I strongly advise documenting this decision and the associated risks to protect the company and ourselves. I have also reached out to Geoff VanMaastricht to seek his assistance in finding a long-term solution that ensures compliance.

Thank you for your understanding.

This message may include text created with the help of natural language processing.

📅 Book time to meet with me

**Ryan Wagner**
**Vice President of IT**
**Ohana Growth Partners, LLC**



office 410-252-8058 x109
212 W. Padonia Rd
Timonium, MD 21093
www.planetfitness.com

**"Culture eats strategy for breakfast"**

---

**From:** Glenn Norris <glenn@ohanagp.com>
**Sent:** Tuesday, May 21, 2024 5:28 PM
**To:** Ryan Wagner <Ryan.Wagner@ohanagp.com>
**Cc:** Justin Drummond <Justin.Drummond@ohanagp.com>; Rich Hartman <Rich.Hartman@ohanagp.com>; Karen Debus <karen.debus@ohanagp.com>; Matt Norris <Matt.Norris@ohanagp.com>
**Subject:** RE: Ryan Brooks - REPLY TO YOU ALLEGATIONS & PERFORMANCE ISSUES OF RYAN BROOKS

Send Ryan Brooks the Link to complete the PCI DSS 4.0 training and processes. I still want his access returned immediately.

Glenn

**Glenn Norris**
**Chief Financial Officer**
**Ohana Growth Partners, LLC**



office 410-252-8058 x108
cell 410-365-2591
212 W. Padonia Rd
Timonium, MD 21093
www.planetfitness.com

**"Culture eats strategy for breakfast"**

---

**From:** Ryan Wagner <Ryan.Wagner@ohanagp.com>
**Sent:** Tuesday, May 21, 2024 5:13 PM
**To:** Glenn Norris <glenn@ohanagp.com>
**Cc:** Justin Drummond <Justin.Drummond@ohanagp.com>; Rich Hartman <Rich.Hartman@ohanagp.com>; Karen Debus <karen.debus@ohanagp.com>; Matt Norris <Matt.Norris@ohanagp.com>
**Subject:** Re: Ryan Brooks - REPLY TO YOU ALLEGATIONS & PERFORMANCE ISSUES OF RYAN BROOKS

I acknowledge your directive and understand the urgency of the situation. However, I must reiterate the compliance risks associated with reinstating Ryan Brooks' access without him completing the necessary PCI DSS 4.0 training and processes.

As the head of IT, my primary responsibility is to ensure that we maintain compliance with all regulatory standards. Restoring Ryan's access without meeting these requirements places our PCI DSS 4.0 certification and the company at significant risk. While I am prepared to follow your instructions, I must stress that this action is being undertaken under duress due to your explicit directive.

7 / 22

I have reached out to Geoff VanMaastricht, our head of corporate security, to seek his assistance in finding a solution that balances our compliance obligations with your request. Here is the email I sent to him, which includes you and President Justin Drummond in the loop:

**Ryan Wagner**
**Vice President of IT**
**Ohana Growth Partners, LLC**

 office 410-252-8058 x109
212 W. Padonia Rd
Timonium, MD 21093
www.planetfitness.com

**"Culture eats strategy for breakfast"**

From: Ryan Wagner Ryan.Wagner@ohanagp.com
Sent: Tuesday, May 21, 2024 5:09 PM
To: Geoff VanMaastricht Geoff.VanMaastricht@pfhq.com
Cc: Glenn Norris glenn@ohanagp.com; Justin Drummond Justin.Drummond@ohanagp.com
Subject: SAQ - PCI Compliance: We need your assistance

@Geoff VanMaastricht, Would you be available for a meeting tomorrow to discuss this and related PCI Compliance concerns? I am being told to reinstate the same person, but they refuse to do the training, take part in the code review, change control, or any other process to maintain compliance. I don't know what to do and could use your assistance to find a solution that works for our CFO as well as meet the compliance requirements.

To mitigate these risks and protect our compliance standing, I propose the following steps:

Immediate Compliance Training: Expedite Ryan's PCI DSS 4.0 compliance training and ensure it is completed as a top priority.
Temporary Limited Access: Provide Ryan with limited access necessary for immediate tasks, under close monitoring, until he completes the required training and processes.
Documented Agreement: Document this course of action, including the acknowledgment that this decision is made under duress, to protect both the company and ourselves, ensuring we have a record of our compliance efforts and the rationale behind these decisions.
I am available to discuss this further and facilitate any immediate actions required to address your concerns while maintaining our compliance obligations.

Please let me know how you would like to proceed.

Best regards,

This message may include text created with the help of natural language processing.

📇 Book time to meet with me

---

**From:** Glenn Norris <glenn@ohanagp.com>
**Sent:** Tuesday, May 21, 2024 5:05 PM
**To:** Ryan Wagner <Ryan.Wagner@ohanagp.com>
**Cc:** Justin Drummond <Justin.Drummond@ohanagp.com>; Rich Hartman <Rich.Hartman@ohanagp.com>; Karen Debus

8 / 22

<karen.debus@ohanagp.com>; Matt Norris <Matt.Norris@ohanagp.com>
**Subject:** RE: Ryan Brooks - REPLY TO YOU ALLEGATIONS & PERFORMANCE ISSUES OF RYAN BROOKS

Rich, please prepare a write up for me .

**Glenn Norris**
**Chief Financial Officer**
**Ohana Growth Partners, LLC**



office 410-252-8058 x108
cell 410-365-2591
212 W. Padonia Rd
Timonium, MD 21093
www.planetfitness.com

**"Culture eats strategy for breakfast"**

**From:** Ryan Wagner <Ryan.Wagner@ohanagp.com>
**Sent:** Tuesday, May 21, 2024 5:02 PM
**To:** Glenn Norris <glenn@ohanagp.com>
**Cc:** Justin Drummond <Justin.Drummond@ohanagp.com>; Rich Hartman <Rich.Hartman@ohanagp.com>; Karen Debus <karen.debus@ohanagp.com>; Matt Norris <Matt.Norris@ohanagp.com>
**Subject:** Re: Ryan Brooks - REPLY TO YOU ALLEGATIONS & PERFORMANCE ISSUES OF RYAN BROOKS

@Glenn Norris

Thank you for your prompt response. I understand the urgency of your request, but I must reiterate the compliance requirements and potential risks involved in reinstating Ryan Brooks' access without completing the necessary PCI DSS 4.0 training and processes.

Reinstating his access without compliance would put our certification at risk and could have serious legal and security implications for the company. As the head of IT, I have a responsibility to ensure that we adhere to these standards.

Given the gravity of the situation and your directive, I propose a meeting tomorrow morning with you, myself, and the head of corporate security to discuss how we can address this matter without compromising our compliance obligations. This will allow us to find a solution that meets your needs while safeguarding our compliance and security standards.

Please confirm a suitable time for this meeting.

Thank you for your understanding.

This message may include text created with the help of natural language processing.

Book time to meet with me

9 / 22

**Ryan Wagner**
**Vice President of IT**
**Ohana Growth Partners, LLC**



office 410-252-8058 x109
212 W. Padonia Rd
Timonium, MD 21093
www.planetfitness.com

**"Culture eats strategy for breakfast"**

**From:** Glenn Norris <glenn@ohanagp.com>
**Sent:** Tuesday, May 21, 2024 4:59 PM
**To:** Ryan Wagner <Ryan.Wagner@ohanagp.com>
**Cc:** Justin Drummond <Justin.Drummond@ohanagp.com>; Rich Hartman <Rich.Hartman@ohanagp.com>; Karen Debus <karen.debus@ohanagp.com>; Matt Norris <Matt.Norris@ohanagp.com>
**Subject:** RE: Ryan Brooks - REPLY TO YOU ALLEGATIONS & PERFORMANCE ISSUES OF RYAN BROOKS

If Ryan Brooks does not have access by tomorrow morning , you will be written up for insubordination. Is that clear? Glenn

**Glenn Norris**
**Chief Financial Officer**
**Ohana Growth Partners, LLC**



office 410-252-8058 x108
cell 410-365-2591
212 W. Padonia Rd
Timonium, MD 21093
www.planetfitness.com

**"Culture eats strategy for breakfast"**

**From:** Ryan Wagner <Ryan.Wagner@ohanagp.com>
**Sent:** Tuesday, May 21, 2024 4:56 PM
**To:** Glenn Norris <glenn@ohanagp.com>
**Cc:** Justin Drummond <Justin.Drummond@ohanagp.com>; Rich Hartman <Rich.Hartman@ohanagp.com>; Karen Debus <karen.debus@ohanagp.com>; Matt Norris <Matt.Norris@ohanagp.com>
**Subject:** Re: Ryan Brooks - REPLY TO YOU ALLEGATIONS & PERFORMANCE ISSUES OF RYAN BROOKS

Thank you for your email. I understand your concerns and would like to clarify the situation regarding Ryan Brooks' access and our compliance requirements.

Compliance and Access Issues:

Yesterday, I consulted with PFHQ about how to handle situations where personnel had not completed required training. Before I could act on the conversation, Ryan Brooks informed me he didn't have time for a mandatory 15-

10 / 22

minute meeting, and he had already stated he couldn't complete the required training or other tasks assigned to him. Consequently, I removed him to resolve the block to completing the SAQ, as instructed by PFHQ.

Overnight Changes:

The compliance issues did not change overnight. What changed was the final decision to remove Ryan after he explicitly refused to engage in critical compliance activities. Reinstating his access today would violate PCI DSS 4.0 standards, as I have already informed the head of corporate security that the compliance issue was resolved by terminating his access.

Performance Concerns:

The issues identified by Matt, as well as numerous concerns raised by the accounting department, reflect the quality of Ryan's work. While being responsive is important, it is more critical to ensure that work aligns with our strategic objectives and compliance requirements and does not result in these problems existing. Since September/October, Ryan's recommendations have moved us further from resolution, as evidenced by the ongoing issues highlighted in Matt's email.

Ryan's inability to complete tasks assigned to him and his mismanagement of resources (e.g., setting up a second AVD environment, doubling costs, ignoring Microsoft's recommendations) demonstrate a lack of alignment with our strategic direction. His actions, including making unauthorized changes, have exacerbated our challenges rather than resolving them.

Historical Context:

From the start of the emergency migration project, Ryan proposed outdated solutions, like reinvesting in an old AC system instead of modernizing our platform. Following my HR complaint in November, you stopped supporting the initial proposal and allowed Ryan to make changes against our needs, often in secret. Before my FMLA leave, you reinstated his access despite my concerns. Since FMLA, you and Ryan have been in charge of the IT department. Recently, you informed me I should no longer step back, allowing me to re-establish control and initiate daily standups and other processes to get the team back on track.

Next Steps:

Given the situation:

Ryan must complete the PCI DSS compliance training and participate in the required processes before his access can be reinstated.
Restoring his access without meeting these requirements would jeopardize our PCI DSS 4.0 compliance.
I am committed to resolving these issues in a manner that upholds our compliance standards and addresses our operational needs. Please review the data, recommendations, and conclusions from Microsoft and our current state of issues, which collectively indicate that Ryan is not currently qualified to manage our cloud environment.

We can review these concerns with the head of corporate security, and if I understand why it must happen today, perhaps I can offer a solution that does not result in PCI compliance issues.

Thank you for your understanding and cooperation.

This message may include text created with the help of natural language processing.

📅 Book time to meet with me

**Ryan Wagner**
**Vice President of IT**
**Ohana Growth Partners, LLC**

 office 410-252-8058 x109
212 W. Padonia Rd
Timonium, MD 21093
www.planetfitness.com

**"Culture eats strategy for breakfast"**

---

**From:** Glenn Norris <glenn@ohanagp.com>
**Sent:** Tuesday, May 21, 2024 4:28 PM
**To:** Ryan Wagner <Ryan.Wagner@ohanagp.com>
**Cc:** Justin Drummond <Justin.Drummond@ohanagp.com>; Rich Hartman <Rich.Hartman@ohanagp.com>; Karen Debus <karen.debus@ohanagp.com>; Matt Norris <Matt.Norris@ohanagp.com>
**Subject:** RE: Ryan Brooks - REPLY TO YOU ALLEGATIONS & PERFORMANCE ISSUES OF RYAN BROOKS

How was Ryan Brooks allowed access yesterday and not today? What changed overnight, it does not make sense that compliance issues were just discovered and changed overnight.

I do not think your stance flies.

Please do as I have instructed you. He will take the test.

See Matt's reason why we need him. Look at attached email.

Glenn

**Glenn Norris**
**Chief Financial Officer**
**Ohana Growth Partners, LLC**

 office 410-252-8058 x108
cell 410-365-2591
212 W. Padonia Rd
Timonium, MD 21093
www.planetfitness.com

**"Culture eats strategy for breakfast"**

---

**From:** Ryan Wagner <Ryan.Wagner@ohanagp.com>
**Sent:** Tuesday, May 21, 2024 3:38 PM
**To:** Glenn Norris <glenn@ohanagp.com>
**Cc:** Justin Drummond <Justin.Drummond@ohanagp.com>; Rich Hartman <Rich.Hartman@ohanagp.com>; Karen Debus <karen.debus@ohanagp.com>; Matt Norris <Matt.Norris@ohanagp.com>
**Subject:** Re: Ryan Brooks - REPLY TO YOU ALLEGATIONS & PERFORMANCE ISSUES OF RYAN BROOKS

12 / 22

@Glenn Norris

Thank you for your email. I understand your urgency regarding Ryan Brooks' access and want to ensure we handle this appropriately while maintaining our compliance with PCI DSS 4.0 standards.

2. **Mandates and Requirements:**

   o   PFHQ mandates compliance with PCI DSS 4.0, which outlines the specific requirements for all personnel with access to sensitive data and systems. This includes mandatory training and participation in key security processes.

3. **Attestation Filings:**

   o   PFHQ instructed me to complete the attestation filings, which are necessary to certify our compliance with PCI DSS 4.0. These filings were submitted to our compliance auditors and relevant regulatory bodies to confirm that we meet all required security standards.

4. **Ryan Brooks' Access:**

   o   Restoring Ryan Brooks' access without him completing the required training and participating in mandated security processes would violate our PCI DSS 4.0 compliance. This could jeopardize our certification and the security of our systems.

Could you please clarify the consequences you foresee if we do not restore Ryan's access today? Understanding your concerns will help us address them while ensuring we remain compliant with PCI DSS 4.0 standards.

I must emphasize that compliance with these standards is critical to our operations and security. I am committed to resolving this situation as quickly as possible within the bounds of our compliance requirements.

Please let me know how you would like to proceed, and we can work together to find a solution that maintains our compliance and addresses your needs.

This message may include text created with the help of natural language processing.

📅 Book time to meet with me

**Ryan Wagner**
**Vice President of IT**
**Ohana Growth Partners, LLC**



office 410-252-8058 x109
212 W. Padonia Rd
Timonium, MD 21093
www.planetfitness.com

"Culture eats strategy for breakfast"

**From:** Glenn Norris <glenn@ohanagp.com>
**Sent:** Tuesday, May 21, 2024 3:26 PM
**To:** Ryan Wagner <Ryan.Wagner@ohanagp.com>
**Cc:** Justin Drummond <Justin.Drummond@ohanagp.com>; Rich Hartman <Rich.Hartman@ohanagp.com>; Karen Debus <karen.debus@ohanagp.com>; Matt Norris <Matt.Norris@ohanagp.com>
**Subject:** RE: Ryan Brooks - REPLY TO YOU ALLEGATIONS & PERFORMANCE ISSUES OF RYAN BROOKS

4.  Please explain who is mandating this and what it entails.
5.  Stop filing attestation filings- who gets these and why were they sent in the last 24 hours?
6.  I WANT RYAN'S ACCESS RESTORED TODAY. CONFIRM WHEN THIS IS COMPLETED

Glenn

**Glenn Norris**
**Chief Financial Officer**
**Ohana Growth Partners, LLC**



office 410-252-8058 x108
cell 410-365-2591
212 W. Padonia Rd
Timonium, MD 21093
www.planetfitness.com

**"Culture eats strategy for breakfast"**

**From:** Ryan Wagner <Ryan.Wagner@ohanagp.com>
**Sent:** Tuesday, May 21, 2024 2:08 PM
**To:** Glenn Norris <glenn@ohanagp.com>
**Cc:** Justin Drummond <Justin.Drummond@ohanagp.com>; Rich Hartman <Rich.Hartman@ohanagp.com>; Karen Debus <karen.debus@ohanagp.com>; Matt Norris <Matt.Norris@ohanagp.com>
**Subject:** Re: Ryan Brooks - REPLY TO YOU ALLEGATIONS & PERFORMANCE ISSUES OF RYAN BROOKS

@Glenn Norris I hope this message finds you well. I appreciate your prompt response regarding Ryan Brooks' compliance and performance. I would like to address the points you raised to ensure clarity and alignment with our compliance requirements and performance expectations.

**Compliance Allegations:**
Regarding the compliance allegations, it is crucial to clarify that all team members, including vendors, must complete the required PCI DSS compliance training. This is a non-negotiable requirement to maintain our certification and ensure our systems' security and integrity. If Ryan was previously informed that he did not need to complete this training, that was incorrect, and I appreciate his willingness to rectify this.

**Compliance Training Requirement:**
Ryan must complete the PCI DSS compliance training before he can resume any work, as our attestation has already been filed.
Additional Compliance Requirements:

Beyond the training, Ryan's access has been restricted due to his lack of participation in several PCI DSS-required processes. These include:

Participation in daily standup meetings

14 / 22

Involvement in the change control review board
Engagement in the pipeline for code publishing
Adherence to other necessary procedures
Ryan has previously refused to engage in these processes, which are critical for maintaining our compliance. Additionally, the partial work he has completed has not met PCI DSS compliance standards, and I have had to redo this work to align with our requirements.

**Access and Admin Rights:**
Regarding your directive to restore Ryan's admin rights immediately, I must emphasize that any such action must comply with our PCI DSS 4 standards. Until Ryan completes the required compliance steps and demonstrates his understanding of PCI DSS requirements, he will not be able to make changes to any system as an administrator. This includes both his software engineer responsibilities and sufficient training for administration.

Next Steps:

Ryan must complete the PCI DSS compliance training immediately. HE IS DOING THIS
Ryan must participate in all PCI DSS required processes, including daily standups, change control review boards, and code publishing pipelines. I DO NOT AGREE
After Ryan completes the training and engages in these processes, we need detailed information on the specific tasks you want him to perform. This will allow us to assign him the least privileged access necessary to maintain PCI compliance.

# If you feel it would be helpful, I am open to arranging a meeting with the corporate head of security to weigh in on these items and provide additional perspective on maintaining our compliance and security standards. NO THANK YOU

Thank you for your understanding and cooperation in ensuring we maintain our compliance and security standards. I look forward to resolving this matter collaboratively. I DO NOT AGREE WITH YOUR POSITIONS

This message may include text created with the help of natural language processing.

📅 Book time to meet with me

**Ryan Wagner**
**Vice President of IT**
**Ohana Growth Partners, LLC**



office 410-252-8058 x109
212 W. Padonia Rd
Timonium, MD 21093
www.planetfitness.com

**"Culture eats strategy for breakfast"**

**From:** Glenn Norris <glenn@ohanagp.com>
**Sent:** Tuesday, May 21, 2024 1:48 PM
**To:** Ryan Wagner <Ryan.Wagner@ohanagp.com>
**Cc:** Justin Drummond <Justin.Drummond@ohanagp.com>; Rich Hartman <Rich.Hartman@ohanagp.com>; Karen Debus <karen.debus@ohanagp.com>; Matt Norris <Matt.Norris@ohanagp.com>; Glenn Norris <glenn@ohanagp.com>
**Subject:** Ryan Brooks - REPLY TO YOU ALLEGATIONS & PERFORMANCE ISSUES OF RYAN BROOKS

Ryan, I do not agree with your performance and compliance allegations of Ryan Brooks. I asked him if he was required by you to complete the compliance PCI tests and he was adamant that you stated months ago that he did not need to complete this. He is willing to do it. This is straight from Ryan Brooks.

Regarding his performance, we need to have a conversation on your expectations and role for BC/RB. In my opinion, he has been and still is a valued vendor for our IT needs .

Please ask Justin, Rich, Matt or Karen(and others) how they do or do not value his contribution to our IT needs.

As I stated in our call earlier today, I want his admin rights restored today. There was no discussion with me about this action – I do not approve.

SEE COMMENTS IN RED BELOW

Thank you, Glenn

**Glenn Norris**
**Chief Financial Officer**
**Ohana Growth Partners, LLC**



office 410-252-8058 x108
cell 410-365-2591
212 W. Padonia Rd
Timonium, MD 21093
www.planetfitness.com

**"Culture eats strategy for breakfast"**

**From:** Ryan Wagner <Ryan.Wagner@ohanagp.com>
**Sent:** Tuesday, May 21, 2024 1:16 PM
**To:** Glenn Norris <glenn@ohanagp.com>
**Cc:** Justin Drummond <Justin.Drummond@ohanagp.com>
**Subject:** Ryan Brooks - More Info Needed

@Glenn Norris, I hope you're doing well. I am seeking clarification regarding your directive to retain Ryan Brooks in the IT Department. When we talked today, you expressed a specific need for his services, despite my concerns about his performance and our compliance requirements.

In addition, As part of our compliance with PCI DSS 4 standards, which I recently certified after significant efforts, every team member must meet the requirements. Ryan Brooks' refusal to follow proper procedures and complete the required upskill training posed a substantial obstacle to maintaining PCI DSS 4 unless he is able to do the things that I have required of him.

16 / 22

To clarify:

1. **Security Training:** Ryan has not completed the mandatory security training, which disqualifies him from being employed as a software engineer under PCI DSS 4 standards. HE WILL DO THIS IF IT IS REQUIRED.

2. **Code Review Process:** He has been unable to participate in the code review process, making him unsuitable for automation or SQL work. WHAT IS THE REQUIRED TIME INVESTMENT HERE?

3. **Change Control Review Board:** Ryan's lack of participation in the change control review board precludes him from performing any sysadmin tasks or handling M365 or Azure responsibilities. HE HAS BEEN ON EVERY TUESDAY 230 CALL AND YOU GHOSTED THAT CALL ON 5-7-24 AND HE WAS IN ATTENDANCE. HE WILL NOT BE ON TODAY'S CALL SINCE YOU INADVERTANTLY FIRED HIM YESTERDAY.

Given these compliance issues, retaining Ryan to work in these areas conflicts with the PCI DSS 4 standards. His non-compliance and refusal to adhere to required protocols undermine our efforts to maintain these critical standards.

Please provide specific details regarding the necessity of retaining Ryan's services and ensure that it does not conflict with our PCI DSS 4 compliance requirements. I would like you to know that understanding your rationale and how it aligns with these standards is essential for moving forward.

Thank you for your attention to this matter. I look forward to your response to resolve this issue in compliance with our obligations.

## 6.2.1 ⊘

Bespoke and custom software are developed securely, as follows:

- Based on industry standards and/or best practices for secure development.
- Bullet intentionally left blank for this SAQ.
- Bullet intentionally left blank for this SAQ.

## 6.2.2 ⊘

Software development personnel working on bespoke and custom software are trained at least once every 12 months as follows:

- On software security relevant to their job function and development languages.
- Including secure software design and secure coding techniques.
- Including, if security testing tools are used, how to use the tools for detecting vulnerabilities in software.

## 6.2.3.1 ⊘

If manual code reviews are performed for bespoke and custom software prior to release to production, code changes are:

- Reviewed by individuals other than the originating code author, and who ar knowledgeable about code-review techniques and secure coding practices.
- Reviewed and approved by management prior to release.

## 6.2.4.a ⊘

Software engineering techniques or other methods are defined and in use by software development personnel to prevent or mitigate common software attack and related vulnerabilities in bespoke and custom software, including but not limited to the following: Injection attacks, including SQL, LDAP, XPath, or other command, parameter, object, fault, or injection-type flaws

## 6.2.4.b ⊘

Software engineering techniques or other methods are defined and in use by software development personnel to prevent or mitigate common software attack and related vulnerabilities in bespoke and custom software, including but not limited to the following: Attacks on data and data structures, including attempts 1 manipulate buffers, pointers, input data, or shared data.

## 6.2.4.c ⊘

Software engineering techniques or other methods are defined and in use by software development personnel to prevent or mitigate common software attack and related vulnerabilities in bespoke and custom software, including but not limited to the following: Attacks on cryptography usage, including attempts to exploit weak, insecure, or inappropriate cryptographic implementations, algorithms, cipher suites, or modes of operation.

### 6.2.4.d ⊘

Software engineering techniques or other methods are defined and in use by software development personnel to prevent or mitigate common software attack and related vulnerabilities in bespoke and custom software, including but not limited to the following: Attacks on business logic, including attempts to abuse o bypass application features and functionalities through the manipulation of APIs communication protocols and channels, client-side functionality, or other system/application functions and resources. This includes cross-site scripting (XSS) and cross-site request forgery (CSRF).

### 6.2.4.e ⊘

Software engineering techniques or other methods are defined and in use by software development personnel to prevent or mitigate common software attack and related vulnerabilities in bespoke and custom software, including but not limited to the following: Attacks on access control mechanisms, including attempts to bypass or abuse identification, authentication, or authorization mechanisms, or attempts to exploit weaknesses in the implementation of such mechanisms

### 6.2.4.f ⊘

Software engineering techniques or other methods are defined and in use by software development personnel to prevent or mitigate common software attacks and related vulnerabilities in bespoke and custom software, including but not limited to the following: Attacks via any "high-risk" vulnerabilities identified in the vulnerability identification process, as defined in Requirement 6.3.1.

## 6.3.1 ⊘

Security vulnerabilities are identified and managed as follows:

- New security vulnerabilities are identified using industryrecognized sources for security vulnerability information, including alerts from international and national computer emergency response teams (CERTs).
- Vulnerabilities are assigned a risk ranking based on industry best practices and consideration of potential impact.
- Risk rankings identify, at a minimum, all vulnerabilities considered to be a high-risk or critical to the environment.
- Vulnerabilities for bespoke and custom, and third-party software (for example operating systems and databases) are covered.

## 6.3.3 ⊘

All system components are protected from known vulnerabilities by installing applicable security patches/updates as follows:

- Critical or high-security patches/updates (identified according to the risk ranking process at Requirement 6.3.1) are installed within one month of release.
- Bullet intentionally left blank for this SAQ.

## 6.5.1 ⊘

Changes to all system components in the production environment are made according to established procedures that include:

- Reason for, and description of, the change.
- Documentation of security impact.
- Documented change approval by authorized parties.
- Testing to verify that the change does not adversely impact system security.
- For bespoke and custom software changes, all updates are tested for compliance with Requirement 6.2.4 before being deployed into production.
- Procedures to address failures and return to a secure state.

## 6.5.2 ⊘

Upon completion of a significant change, all applicable PCI DSS requirements are confirmed to be in place on all new or changed systems and networks, and documentation is updated as applicable.

Please provide specific details regarding the necessity of retaining Ryan's services which does not conflict with our PCI DSS 4 compliance requirements. I would like you to know that understanding your rationale and how it aligns with these standards is essential for moving forward by assigning him permissions that will give him the least privileges necessary while not performing tasks listed above or otherwise in the PCI DSS 4.

## 7.2.2 ⊘

Access is assigned to users, including privileged users, based on:

- Job classification and function.
- Least privileges necessary to perform job responsibilities.

## 7.2.3 ⊘

Required privileges are approved by authorized personnel

## 7.2.4 ⊘

All user accounts and related access privileges, including third-party/vendor accounts, are reviewed as follows:

- At least once every six months.
- To ensure user accounts and access remain appropriate based on job function.
- Any inappropriate access is addressed.
- Management acknowledges that access remains appropriate.

Thank you for your attention to this matter. I look forward to your response and to resolving this issue in accordance with our obligations.

This message may include text created with the help of natural language processing.

📅 Book time to meet with me

**Ryan Wagner**
**Vice President of IT**
**Ohana Growth Partners, LLC**



office 410-252-8058 x109
212 W. Padonia Rd
Timonium, MD 21093
www.planetfitness.com

**"Culture eats strategy for breakfast"**



Ryan Wagner <ryan@mxt3.com>

## Legal Analysis Consultation

**Andrew Dansicker** <adansicker@dansickerlaw.com>                    Tue, Jun 18, 2024 at 12:00 AM
To: Andrew Dansicker <adansicker@dansickerlaw.com>, Ryan Dillon-Capps <ryan@mxt3.com>

Ryan,

I started reviewing your paperwork, and frankly, with the death in my family and a national conference next week, I just don't have the time and ability to focus on assisting you with such a complicated and time-consuming matter. The fact that you've been served with papers for a tro and injunction is not something that I can handle at this time.

I refunded your fee, and I wish you the best of luck moving forward.

Andrew
-------------------------------------------------
Law Office of Andrew M. Dansicker, LLC
11350 McCormick Road
Executive Plaza II, Suite 705
Hunt Valley, Maryland 21031
(410) 771-5668
(443) 927-7390 (fax)
dansickerlaw.com

*\*Focusing on Maryland Employment Law Issues\**

**From:** Andrew Dansicker <amdansicker@hotmail.com> on behalf of Andrew Dansicker <adansicker@dansickerlaw.com>
**Sent:** Monday, June 17, 2024 9:47 AM
**To:** Andrew Dansicker <adansicker@dansickerlaw.com>; Ryan Dillon-Capps <ryan@mxt3.com>
**Subject:** Re: Legal Analysis Consultation

[Quoted text hidden]

July 1 @ 838AM: Origional Reconsider Exhibits Trimmed - No laws, Cases, Publications          Page # 36 of 185          Exhibit 101-B



Ryan Wagner <ryan@mxt3.com>

## June 27, 2024 Contempt Hearing Notice - Ohana Growth Partners, LLC v. Ryan Dillon-Capps, C-03-CV-24-2264

**Ryan Wagner** <ryan@mxt3.com>
Reply-To: ryan@mxt3.com
To: Fallyn Allman <Fallyn.Allman@mdcourts.gov>
Cc: "rbrennen@milesstockbridge.com" <rbrennen@milesstockbridge.com>, Rachel Kiefer <rachel.kiefer@mdcourts.gov>

Wed, Jun 26, 2024 at 3:07 PM

Dear Rachel Kiefer,

I am writing to request a transcript of the June 26, 2024, hearing in Ohana Growth Partners, LLC v Ryan Dillon-Capps, Case No. C-03-CV-24-002264. Judge Michael S. Barranco presided over this hearing. I understand that we left there only a few hours ago, but I struggle to remember everything said. I think I tried to explain this in court, but my ability to advocate for myself is limited in high-conflict "live" interactions. It would be of tremendous help if I get a copy of the transcript so I have something to reference regarding what was said. I will gladly pay the fee, but I don't have an attorney because mine went on bereavement and then had a prescheduled conference, so they returned all the money paid. I know how hard it is to lose a family member, but it has left me without representation. I found out this week that the letter I wrote last week to request the opportunity to obtain counsel was denied. Leaving me unsure as to the proper procedure for obtaining the transcript. I am really sorry to burden you, but this was the first hearing that I had advanced notice of, and even while I write this email, I feel like I can recall less and less of what happened. Any assistance on how to obtain the transcript would be very helpful.

With gratitude and appreciation,
Ryan Dillon-Capps
1334 Maple Ave
Essex MD 21221
ryan@mxt3.com
703-303-1113
I strongly prefer text or email
[Quoted text hidden]



Ryan Wagner <ryan@mxt3.com>

## Webform submission from: Request Written Transcripts or Court Audio > Content

1 message

**Baltimore County Circuit Court** <webmaster@baltimorecountymd.gov>          Fri, Jun 28, 2024 at 6:23 PM
Reply-To: baltcodigrec@mdcourts.gov
To: ryan@mxt3.com

Thank you for contacting the Digital Recording Office for the Circuit Court for Baltimore County.

This confirms receipt of your online request for a CD or typed transcript. If additional information is needed to process your request, you will be emailed by baltcodigrec@mdcourts.gov.

 

← Justin Drummond    📹    📞    ⋮

Friday, Jun 7 • 5:35 PM

I believe that I may have found a way for you to have access to a Global Admin account.  Can you review the PCI DSS 4 documentation before 5 pm on Monday and talk with me on Tuesday?

5:35 PM • SMS • AT&T

Hi Ryan.
I should be able to review this before Tuesday.

6:19 PM • AT&T

Sounds Great! Let me know on Monday and we can coordinate the time for Tuesday

6:19 PM • SMS • AT&T

Did you already send the documentation to review?

6:21 PM • AT&T



← **Justin Drummond**        ⋮



| Title | Publication |
| --- | --- |
| Standard | |
| PCI DSS | v4.0 - Mar. 2022 |

English ⌄   ⬇

I sent a link in teams to the docs page which has requirements document.

here is the link
https://www.pcisecuritystandards.org/document_library/

and the first one is the primary doc
https://docs-prv.pcisecuritystandards.org/PCI%20DSS/Standard/PCI-DSS-v4_0.pdf

6:24 PM • MMS • AT&T

there are other docs that are helpful but not essential

6:24 PM • SMS • AT&T

Understood



6:25 PM • AT&T

← **Justin Drummond**      ⋮

Understood

6:25 PM • AT&T

have you ever heard me talk about the 3 CEO letter story before? I was just thinking about that, and this is not a coded message but just a random thought keeps popping up in my head lately

6:27 PM • SMS • AT&T

have a good weekend 👋

6:27 PM • SMS • AT&T

No I have not. You too

6:28 PM • AT&T

Monday, Jun 10 • 1:17 PM

Hi Ryan. I've seen a few emails go out today from you. I've been trying to connect on Teams about the iPad that arrived last week. Let me know when is best for you.



← **Justin Drummond**        📹  📞  ⋮

rest of the week.

1:17 PM • AT&T

i have back to back meetings until 4

1:24 PM • SMS • AT&T

i can also do now for like20

1:25 PM • SMS • AT&T

I stepped out to grab lunch. I'll be back <u>in 10 min</u>

1:26 PM • AT&T

okay, minimally we can sync on what is neeee and I can msg later tonight when we are ready to do next steps

1:27 PM • SMS • AT&T

Ok.teams Call when I'm back at my desk?

1:29 PM • AT&T

Thursday, Jun 13 • 2:21 PM



 **Justin Drummond**   



Ryan, I cannot answer right now. I'm out of town. Is there something you can text?

3:12 PM • AT&T

We need to talk  now..  what I know puts this a  safety izHe

3:12 PM • SMS • AT&T

Rich has gone off

3:13 PM • SMS • AT&T

emminent risk

3:13 PM • SMS • AT&T

I sent my pe  ome for their safety



# OHΛNA
## Growth Partners

Ohana Growth Partners, LLC
212 W. Padonia Rd.
Timonium, MD 21093

June 13, 2024

Dear Darren,

Effective immediately, June 13, 2024, you are being placed on leave of
absence until further notice with full pay and full benefits while the
company undergoes a review of IT operations.

During this time, you will not have access to company systems or any of
the facilities and are not authorized to do work on behalf of the company.

We will update you once our review is complete.

Sincerely,

Rich Hartman
VP of People and Culture



Ohana Growth Partners, LLC
212 W. Padonia Rd.
Timonium, MD 21093

June 13, 2024

Dear Darren,

Effective immediately, June 13, 2024, you are being placed on leave of absence until further notice with full pay and full benefits while the company undergoes a review of IT operations.

During this time, you will not have access to company systems or any of the facilities and are not authorized to do work on behalf of the company.

We will update you once our review is complete.

Sincerely,

Rich Hartman
VP of People and Culture

## Ryan Dillon-Capps

| | |
|---|---|
| **From:** | **Ryan Wagner** |
| **Sent:** | **Wednesday, June 12, 2024 5:10 PM** |
| **To:** | **Rich Hartman; Glenn Norris; C. Victor Brick; Justin Drummond** |
| **Cc:** | **Stacey Wittelsberger (ESC); Lynne Brick B.S.N. M.A.; Terry Woods (Planet Fitness); Earl Ihle** |
| **Subject:** | **Re: Time off for FMLA** |

@Rich Hartman @Glenn Norris @C. Victor Brick @Justin Drummond

I hope this message finds you well. I am writing to formally request information regarding the legal representation retained by Ohana Growth Partners LLC concerning any and all matters that may involve or pertain to me. This includes, but is not limited to, the following issues:

- Accounting irregularities
- Unauthorized use of my name to attest compliance documents
- Fabricated or altered emails/documents
- Any other matters related to my employment
- Any matters where I might be named or involved

Specifically, I would like to know the name and contact information of the attorneys or law firms representing the company in these matters. This information is pertinent as I am seeking to engage in direct negotiations to resolve these issues amicably and efficiently.

I believe that open communication can help us reach a mutually agreeable solution and prevent the need for more formal proceedings. Therefore, I would appreciate your prompt response to this request.

Thank you for your cooperation.

This message may include text created with the help of natural language processing.

 Book time to meet with me

**Ryan Wagner**
**Vice President of IT**
**Ohana Growth Partners, LLC**



office 410-252-8058 x109
212 W Padonia Rd
Timonium, MD 21093

www.planetfitness.com

"Culture eats strategy for breakfast"

**From:** Ryan Wagner <Ryan.Wagner@ohanagp.com>
**Sent:** Wednesday, June 12, 2024 5:01 PM
**To:** Rich Hartman <Rich.Hartman@ohanagp.com>
**Cc:** Glenn Norris <glenn@ohanagp.com>; Justin Drummond <Justin.Drummond@ohanagp.com>; Stacey Wittelsberger
(ESC) <srector@exeterstreetcapital.com>; C. Victor Brick <Victor@ohanagp.com>; Lynne Brick B.S.N. M.A.
<lynne@ohanagp.com>; Terry Woods (Planet Fitness) <Terry.Woods@ohanagp.com>; Earl Ihle
<Earl.Ihle@ohanagp.com>
**Subject:** Re: Time off for FMLA

@Rich Hartman I appreciate your response, but I need to clarify some critical points regarding the handling of my
FMLA leave information.

**FMLA Notice Requirements**

According to the Family and Medical Leave Act (FMLA), employees must provide notice of the need for FMLA leave
as soon as practicable. Typically, this means within the same day or the next business day of learning of the need
for leave, when the need is unforeseeable.

- **Legal Citation:** 29 C.F.R. § 825.302(a) states, "When the need for leave is not foreseeable, an employee
must provide notice to the employer as soon as practicable under the facts and circumstances of the
particular case. It generally should be practicable for the employee to provide notice of the need for leave
either the same day or the next business day."

**Confidentiality and Policy Enforcement**

I am concerned that my FMLA information was shared with individuals outside the necessary scope. The company
is obligated to maintain the confidentiality of FMLA-related information, similar to the handling of medical records.
Sharing this information with external parties can violate FMLA confidentiality provisions.

- **Legal Citation:** 29 C.F.R. § 825.500(g) specifies that FMLA records must be maintained as confidential
medical records and disclosed only to those with a need-to-know.

Additionally, I believe that the policies applied to my FMLA leave have been more rigid compared to other types of
leave. This includes advanced notice requirements and the handling of intermittent leave.

- **Legal Citation:** 29 C.F.R. § 825.220(c) prohibits employers from discriminating against employees for
taking FMLA leave and mandates that the terms of FMLA leave should not be more stringent than other
types of leave.
- **Handbook Reference:**
  - **Sick Leave:** "Full-time associates are eligible to receive up to 40 hours of paid sick leave each year.
Sick time must be taken during the year it is received" (PF Handbook 12-2022, pg. 38).
  - **Personal Leave:** "Personal days must be scheduled at least two weeks in advance whenever
possible" (PF Handbook 12-2022, pg. 38).

**Challenge to the Disclosure Justification**

I would like to understand why it was necessary for the specific individuals, including those external to our
organization, to know about the details of my FMLA leave. Given that FMLA information is considered confidential,
it should only be shared with those who have a legitimate need to know to manage the leave appropriately.

**Request for Written Policy**

To address the claim that there is no special policy for FMLA notification, I request a copy of the written FMLA policy as it applies to all employees. This will help clarify if any special conditions were applied to my case and ensure consistency with federal and state laws.

**Practical Notification Timing**

For clarification, providing notice "as soon as practicable" typically means within the same or next business day under the FMLA when the need for leave is not foreseeable. This standard applies unless there are extenuating circumstances that prevent timely notification.

**Summary**

- **Confidentiality:** Sharing FMLA information with unauthorized individuals breaches FMLA confidentiality requirements.
- **Policy Consistency:** FMLA leave policies should not be more stringent than other leave policies.
- **Challenge to Disclosure Justification:** An explanation is needed as to why the specific recipients were deemed necessary to know about my FMLA leave.
- **Request for Written Policy:** A formal request for the written FMLA policy to ensure compliance and consistency.

Thank you for addressing these concerns. I look forward to your response and to receiving the requested policy documentation.

This message may include text created with the help of natural language processing.

 Book time to meet with me

**Ryan Wagner**
**Vice President of IT**
**Ohana Growth Partners, LLC**

   office 410-252-8058 x109
212 W. Padonia Rd
Timonium, MD 21093
www.planetfitness.com

**"Culture eats strategy for breakfast"**

---

**From:** Rich Hartman <Rich.Hartman@ohanagp.com>
**Sent:** Wednesday, June 12, 2024 4:23 PM
**To:** Ryan Wagner <Ryan.Wagner@ohanagp.com>
**Cc:** Glenn Norris <glenn@ohanagp.com>; Justin Drummond <Justin.Drummond@ohanagp.com>; Stacey Wittelsberger (ESC) <srector@exeterstreetcapital.com>; C. Victor Brick <Victor@ohanagp.com>; Lynne Brick B.S.N. M.A. <lynne@ohanagp.com>; Terry Woods (Planet Fitness) <Terry.Woods@ohanagp.com>; Earl Ihle <Earl.Ihle@ohanagp.com>
**Subject:** Re: Time off for FMLA

See response below.

3 / 8

**Rich Hartman**
**VP of People and Culture**
**Ohana Growth Partners, LLC**



office 410-252-8058 x114
212 W. Padonia Rd
Timonium, MD 21093
www.planetfitness.com

"Culture eats strategy for breakfast"

**From:** Ryan Wagner <Ryan.Wagner@ohanagp.com>
**Sent:** Wednesday, June 12, 2024 4:07 PM
**To:** Rich Hartman <Rich.Hartman@ohanagp.com>
**Cc:** Glenn Norris <glenn@ohanagp.com>; Justin Drummond <Justin.Drummond@ohanagp.com>; Stacey Wittelsberger
(ESC) <srector@exeterstreetcapital.com>; C. Victor Brick <Victor@ohanagp.com>; Lynne Brick B.S.N. M.A.
<lynne@ohanagp.com>; Terry Woods (Planet Fitness) <Terry.Woods@ohanagp.com>; Earl Ihle
<Earl.Ihle@ohanagp.com>
**Subject:** Re: Time off for FMLA

@Rich Hartman I appreciate your response, but I need to clarify some critical points regarding the handling of my
FMLA leave information.

1. **Confidentiality Breach:** The email you sent to IT.Support and IT.BusinessIntelligence, which included
   individuals from Cielo and other external parties, contained information about my FMLA leave. This
   disclosure is a violation of FMLA confidentiality requirements. According to 29 C.F.R. § 825.500(g),
   employers must maintain the confidentiality of FMLA records and treat them as medical records, which
   should be maintained separately from regular personnel files and disclosed only on a need-to-know basis.
   DISAGREE, NO BREACH

2. **Non-Discrimination and Equal Treatment:** Creating a special policy for my FMLA leave that is more
   restrictive than the standard leave policy for other employees is discriminatory. Under 29 C.F.R. §
   825.220(c), employers are prohibited from discriminating against employees for taking FMLA leave and
   must ensure that FMLA leave terms and conditions are not more stringent than those for other types of
   leave. The Maryland Healthy Working Families Act (Md. Code, Labor and Employment § 3-1306) also
   stipulates that employers cannot implement more restrictive policies for sick and safe leave than for other
   types of leave, ensuring equal treatment. DISAGREE, NO SPECIAL POLICY

3. **Notification and Compliance:** I provided notification the exact minute I became aware of the need to take
   leave, which aligns with the requirement under 29 C.F.R. § 825.302(d) that employees must provide notice
   of the need for FMLA leave as soon as practicable. Any accusation of untimely notification is, therefore,
   baseless. AGREE FOR INITIAL NOTIFICATION, AND FMLA WAS GRANTED. YOU STILL HAVE THE
   RESPONSIBILITY TO NOTIFY THE COMPANY WHEN TAKING INTERMITTENT LEAVE AFTER THE INITIAL
   NOTIFICATION.

**Requested Actions:**

4 / 8

1. **Rectify Confidentiality Breach:** Ensure that any future communication regarding my FMLA leave is strictly confined to those who need to know, such as HR personnel and direct supervisors, to comply with federal and state confidentiality requirements.

2. **Apply Standard Policies:** Apply the same FMLA policies to me as are applied to other employees, without additional restrictions or requirements, in accordance with federal and state non-discrimination laws.

3. **Clarification of Policy:** Provide the written policy explaining how FMLA leave is tracked and used against existing hours, ensuring it aligns with standard company policies and legal requirements.

I trust that we can resolve this matter promptly and in compliance with all relevant legal standards.

This message may include text created with the help of natural language processing.

 Book time to meet with me

**Ryan Wagner**
**Vice President of IT**
**Ohana Growth Partners, LLC**



office 410-252-8058 x109
212 W. Padonia Rd
Timonium, MD 21093
www.planetfitness.com

**"Culture eats strategy for breakfast"**

---

**From:** Rich Hartman <Rich.Hartman@ohanagp.com>
**Sent:** Wednesday, June 12, 2024 4:01 PM
**To:** Ryan Wagner <Ryan.Wagner@ohanagp.com>
**Cc:** Glenn Norris <glenn@ohanagp.com>; Justin Drummond <Justin.Drummond@ohanagp.com>; Stacey Wittelsberger (ESC) <srector@exeterstreetcapital.com>; C. Victor Brick <Victor@ohanagp.com>; Lynne Brick B.S.N. M.A. <lynne@ohanagp.com>; Terry Woods (Planet Fitness) <Terry.Woods@ohanagp.com>; Earl Ihle <Earl.Ihle@ohanagp.com>
**Subject:** Re: Time off for FMLA

Ryan,
I am not sure who is on those lists....I was just responding to the email you sent. There was no confidential information included in my response. We are not treating your FMLA request different.

**Rich Hartman**
**VP of People and Culture**
**Ohana Growth Partners, LLC**

5 / 8



office 410-252-8058 x114
212 W. Padonia Rd
Timonium, MD 21093
www.planetfitness.com

**"Culture eats strategy for breakfast"**

---

**From:** Ryan Wagner <Ryan.Wagner@ohanagp.com>
**Sent:** Wednesday, June 12, 2024 2:33 PM
**To:** Rich Hartman <Rich.Hartman@ohanagp.com>
**Cc:** Glenn Norris <glenn@ohanagp.com>; Justin Drummond <Justin.Drummond@ohanagp.com>; Stacey Wittelsberger (ESC) <srector@exeterstreetcapital.com>; C. Victor Brick <Victor@ohanagp.com>; Lynne Brick B.S.N. M.A. <lynne@ohanagp.com>; Terry Woods (Planet Fitness) <Terry.Woods@ohanagp.com>; Earl Ihle <Earl.Ihle@ohanagp.com>
**Subject:** Re: Time off for FMLA

@Rich Hartman Those email lists contain both internal and external recipients. While it is necessary for them to know that I am taking FMLA leave, they do not need to be informed about how FMLA is being applied to me differently than to others, nor do they need to see that my policy is more rigid compared to policies for other types of leave.

Additionally, I provided notification the exact minute I became aware that I needed to take leave. This makes any accusation of untimely notification baseless.

**Legal Citations:**
**Federal Law:**

4. **Family and Medical Leave Act (FMLA), 29 U.S.C. § 2615(a)**

   o   This section prohibits employers from interfering with, restraining, or denying the exercise of or the attempt to exercise any right provided under the FMLA.

5. **Family and Medical Leave Act (FMLA) Regulations, 29 C.F.R. § 825.500(g)**

   o   This regulation requires that employers maintain the confidentiality of FMLA records and treat them as medical records, which should be maintained separately from regular personnel files and disclosed only on a need-to-know basis.

6. **Family and Medical Leave Act (FMLA) Regulations, 29 C.F.R. § 825.220(c)**

   o   This regulation prohibits employers from discriminating against employees for taking FMLA leave and ensures that the terms and conditions of FMLA leave are not more stringent than those for other types of leave.

7. **Family and Medical Leave Act (FMLA) Regulations, 29 C.F.R. § 825.302(d)**

   o   This regulation specifies that employees must provide notice of the need for FMLA leave as soon as practicable, typically within the same or next business day of learning of the need for leave.

**Maryland Law:**

6 / 8

1. **Maryland Healthy Working Families Act, Md. Code, Labor and Employment § 3-1305**

   o This state law requires that employers keep health information related to employee leave confidential and prohibits the dissemination of such information except under specific circumstances.

2. **Maryland Healthy Working Families Act, Md. Code, Labor and Employment § 3-1306**

   o This law stipulates that employers cannot implement policies that are more restrictive for sick and safe leave than for other types of leave, ensuring equal treatment.

3. **Maryland Fair Employment Practices Act, Md. Code, State Government § 20-606**

   o This act prohibits discrimination in employment on the basis of an individual's use of leave, ensuring that leave policies are applied uniformly without bias.

By failing to maintain the confidentiality of my FMLA leave details, revealing differential treatment in the application of FMLA policies, and making my FMLA policy more rigid than those for other types of leave, these actions may constitute violations of both federal and state laws regarding the confidentiality, non-discriminatory application of leave policies, and equal treatment of leave policies.

This message may include text created with the help of natural language processing.

 Book time to meet with me

**Ryan Wagner**
**Vice President of IT**
**Ohana Growth Partners, LLC**



office 410-252-8058 x109
212 W. Padonia Rd
Timonium, MD 21093
www.planetfitness.com

**"Culture eats strategy for breakfast"**

---

**From:** Rich Hartman <Rich.Hartman@ohanagp.com>
**Sent:** Wednesday, June 12, 2024 1:43 PM
**To:** Ryan Wagner <Ryan.Wagner@ohanagp.com>; IT.Support <IT.Support@ohanagp.com>; IT.BusinessIntelligence <IT.BI@ohanagp.com>
**Cc:** Glenn Norris <glenn@ohanagp.com>; Justin Drummond <Justin.Drummond@ohanagp.com>
**Subject:** Re: Time off for FMLA

As mentioned in my email to you on January 25, 2024,

*"I want to reiterate the requirement that you provide advanced notice to Glenn and to me as soon as you become aware of the need to take leave. Our regular working hours are normally an 8 hour window between 7 am and 6 pm. If at any point during those regular working hours you realize that you are in need of leave, you can send an email, copying me and Glenn, simply stating that you are going to be taking FMLA beginning at a particular day/time and that you anticipate returning to work at a particular day/time."*

7 / 8

FMLA hours are tracked by HR. Email Glenn and me the date and number of hours. Thank you

**Rich Hartman**
**VP of People and Culture**
**Ohana Growth Partners, LLC**

 office 410-252-8058 x114
212 W. Padonia Rd
Timonium, MD 21093
www.planetfitness.com

**"Culture eats strategy for breakfast"**

---

**From:** Ryan Wagner <Ryan.Wagner@ohanagp.com>
**Sent:** Wednesday, June 12, 2024 7:00 AM
**To:** IT.Support <IT.Support@ohanagp.com>; Rich Hartman <Rich.Hartman@ohanagp.com>; IT.BusinessIntelligence <IT.BI@ohanagp.com>
**Cc:** Glenn Norris <glenn@ohanagp.com>; Justin Drummond <Justin.Drummond@ohanagp.com>
**Subject:** Time off for FMLA

@IT.Support @IT.BI Just so you know, I am taking FMLA time for leave. Please allow for extra time if you need anything from me. If there is a critical issue involving security or other imminent risk. Contact Darren. Darren will have additional instructions that will apply if necessary.

@Rich Hartman Please let me know how you want the time tracked. I assume the hours already worked will apply directly to this week? pay period? Please provide me with the written policy explaining how it is used against existing hours.

This message may include text created with the help of natural language processing.

 Book time to meet with me

**Ryan Wagner**
**Vice President of IT**
**Ohana Growth Partners, LLC**

 office 410-252-8058 x109
212 W. Padonia Rd
Timonium, MD 21093
www.planetfitness.com

**"Culture eats strategy for breakfast"**

## Ryan Dillon-Capps

| | |
|---|---|
| **From:** | **Ryan Dillon-Capps** |
| **Sent:** | **Thursday, June 13, 2024 7:12 AM** |
| **To:** | **IT.Support; IT.BusinessIntelligence; Glenn Norris; Rich Hartman; Justin Drummond** |
| **Subject:** | **FMLA Time** |

Team, please prepare for tonight. Ann will confirm later today if you are available for 1ˢᵗ thing tomorrow morning checks.

I did most of the prep and testing last night, but I am going to be out for a few hours today and not sure when I will be back on. It depends on how well things go today.

@Glenn Norris @Rich Hartman @Justin Drummond This is FMLA. However, Rich, as you know from yesterday's emails, I didn't end up taking the time expected, and since Friday, I have worked every hour except for the 14 hours of sleep and roughly 10 hours of non-work related tasks, which I think is 139 hours. Not sure how you want to track that.

This message may include text created with the help of natural language processing.

 Book time to meet with me

**Ryan Dillon-Capps**
**Vice President of IT**
**Ohana Growth Partners, LLC**



office 410-252-8058 x109
212 W. Padonia Rd
Timonium, MD 21093

www.planetfitness.com

**"Culture eats strategy for breakfast"**

## Ryan Dillon-Capps

| | |
|---|---|
| **From:** | **Ryan Dillon-Capps** |
| **Sent:** | **Thursday, June 13, 2024 2:48 PM** |
| **To:** | **Justin Drummond; Stacey Wittelsberger (ESC); C. Victor Brick; Lynne Brick B.S.N. M.A.; Terry Woods (Planet Fitness); Earl Ihle** |
| **Subject:** | **Re: CRITICAL! READ ME NOW!! Rich Hartman Critical Situation!** |
| **Attachments:** | **2023-06-16 1430 RichSuspendedDarren - ClaimingITAudit.pdf** |



This message may include text created with the help of natural language processing.

July 1 @ 838AM: Origional Reconsider Exhibits Trimmed - No laws, Cases, Publications          Page # 55 of 185          Exhibit 101-B

Hurson District Exhibit 16-2          Exhibit Page # 55 of 185          EXHIBIT 316-2

0.9

 Book time to meet with me

**Ryan Dillon-Capps**
**Vice President of IT**
**Ohana Growth Partners, LLC**



office 410-252-8058 x109
212 W. Padonia Rd
Timonium, MD 21093

www.planetfitness.com

**"Culture eats strategy for breakfast"**

---

**From:** Ryan Dillon-Capps <Ryan.DillonCapps@ohanagp.com>
**Sent:** Thursday, June 13, 2024 2:46 PM
**To:** Justin Drummond <Justin.Drummond@ohanagp.com>; Stacey Wittelsberger (ESC)
<srector@exeterstreetcapital.com>; C. Victor Brick <Victor@ohanagp.com>; Lynne Brick B.S.N. M.A.
<lynne@ohanagp.com>; Terry Woods (Planet Fitness) <Terry.Woods@ohanagp.com>; Earl Ihle
<Earl.Ihle@ohanagp.com>
**Subject:** CRITICAL! READ ME NOW!! Rich Hartman Critical Situation!

I am writing to inform you of a critical situation that requires your immediate attention and action.

Today, Rich Hartman suspended Darren and handed him a note that Rich created and signed. This action is highly irregular and concerning. In response to this situation, I have instructed my team members to go home immediately for their safety and well-being. I have also texted a picture of the note to Victor, Lynne, and Justin for your reference. I am sending my wife to another location and am working on having security arrive at my home immediately.

In addition to these steps, Rich Hartman's account has been disabled, and all his sessions have been revoked to prevent any further unauthorized actions.

**Immediate Actions Required**

1. **Confirm Receipt and Immediate Attention:** Please confirm that you have received this email and are taking immediate action.
2. **Review of Darren's Suspension:** An urgent review of Darren's suspension and its circumstances is necessary.
3. **Security Measures:** Ensure that all necessary security measures are in place to prevent any further unauthorized actions by Rich Hartman.
4. **Legal Counsel:** If you do not currently have legal representation for this matter, please confirm this in your response and secure an attorney by the first available moment. If you do have legal representation, please provide the contact information of your attorney immediately.

**Next Steps**

2 / 10

We need to address this situation with the utmost urgency to prevent any further disruptions or potential liabilities. Ryan's actions continue to demonstrate attempts to limit damage, while Rich's actions are making this more difficult and continue to jeopardize Ryan's health and Ohana.

Please confirm that you are on this immediately and provide an update on the steps being taken to address this situation.

This message may include text created with the help of natural language processing.

 Book time to meet with me

**Ryan Dillon-Capps**
**Vice President of IT**
**Ohana Growth Partners, LLC**

    office 410 252 8058 x109
212 W. Padonia Rd
Timonium, MD 21093
www.planetfitness.com

**"Culture eats strategy for breakfast"**

---

**From:** Ryan Dillon-Capps <Ryan.DillonCapps@ohanagp.com>
**Sent:** Thursday, June 13, 2024 2:05 PM
**To:** Rich Hartman <Rich.Hartman@ohanagp.com>
**Cc:** Karen Debus <karen.debus@ohanagp.com>; Justin Drummond <Justin.Drummond@ohanagp.com>; Stacey Wittelsberger (ESC) <srector@exeterstreetcapital.com>; C. Victor Brick <Victor@ohanagp.com>; Lynne Brick B.S.N. M.A. <lynne@ohanagp.com>; Terry Woods (Planet Fitness) <Terry.Woods@ohanagp.com>; Earl Ihle <Earl.Ihle@ohanagp.com>; Glenn Norris <glenn@ohanagp.com>
**Subject:** Urgent: Legal Risks Associated with Inaction and Third-Party Vendor Activities

Dear Owners,

I hope this message finds you well. I am writing to outline the significant legal risks associated with the current handling of our internal investigation into fraud and hostile workplace claims. Additionally, I want to highlight the potential liabilities arising from the actions of our third-party vendors, and to stress our duty to stop workplace harassment.

Please note that the following points address only the items we have discussed so far. We have repeatedly provided sufficient notification of these issues and have requested proper investigation with an independent third party, along with lawyers who act in good faith with transparency and honesty. We have also requested to know who is representing you in several possible matters.

**Potential Legal Risks from Inaction**

5. **Retaliation Claims**

3 / 10

Under both Federal and Maryland law, it is unlawful to retaliate against an employee for reporting misconduct. Our failure to adequately address Ryan's complaints could be interpreted as retaliation, particularly if adverse actions follow his reports.

- **Federal Law:** Title VII of the Civil Rights Act of 1964
- **Maryland Law:** MD Fair Employment Practices Act
- **Case Citation:** *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006).

### 6. Hostile Work Environment Claims

Ignoring the allegations of a hostile work environment, especially those involving discrimination or harassment, can lead to significant legal consequences. The allegations of fabricated documents and unauthorized use of Ryan's name may support such a claim.

- **Federal Law:** Title VII of the Civil Rights Act of 1964
- **Maryland Law:** MD Fair Employment Practices Act
- **Case Citation:** *Harris v. Forklift Systems, Inc.*, 510 U.S. 17 (1993).

### 7. Whistleblower Protections

Our obligations under the Sarbanes-Oxley Act (SOX) and Maryland's Whistleblower Law require that we properly investigate reports of fraudulent activities. Failure to do so may be construed as retaliation against Ryan for his whistleblowing activities.

- **Federal Law:** Sarbanes-Oxley Act (SOX)
- **Maryland Law:** MD Whistleblower Law
- **Case Citation:** *Lawson v. FMR LLC*, 571 U.S. 429 (2014).

### 8. FMLA Interference and Retaliation

Ryan has been on intermittent FMLA leave since January 4, 2024. Any adverse actions or failure to properly investigate his complaints during this period could constitute FMLA interference or retaliation.

- **Federal Law:** Family and Medical Leave Act (FMLA)
- **Case Citation:** *Hoge v. Honda of Am. Mfg., Inc.*, 384 F.3d 238 (6th Cir. 2004).

### Duty to Stop Harassment

Employers have a legal duty to take reasonable steps to prevent and promptly correct any harassment in the workplace. The continued employment of Andrew Dinh, despite allegations of misconduct, creates liability for the company. Failure to address these allegations adequately could be seen as neglecting this duty.

### 1. Liability for Failing to Act

- ○ **Federal Law:** Title VII of the Civil Rights Act of 1964 mandates employers to maintain a workplace free of harassment and discrimination.
- ○ **Case Citation:** *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998) established that employers are liable for failing to exercise reasonable care to prevent and correct promptly any discriminatory or harassing behavior.
- ○ **Case Citation:** *Ellerth v. Burlington Industries, Inc.*, 524 U.S. 742 (1998) affirmed that an employer can be held liable if it does not take proper steps to address harassment.

## Potential Liabilities from Third-Party Vendor Activities

The unauthorized use of Ryan's name by a third-party vendor can create significant legal liabilities for our company. Below are the relevant laws and case citations:

### 1. Wire Fraud

Submitting false attestations via an online form by third-party vendors could implicate our company if part of a scheme to defraud.

- **Federal Law:** 18 U.S.C. § 1343 (Wire Fraud)
- **Case Citation:** *Pasquantino v. United States*, 544 U.S. 349 (2005).

### 2. Identity Theft

The unauthorized use of personal identifying information by third-party vendors could lead to identity theft charges against the company.

- **Federal Law:** 18 U.S.C. § 1028A (Identity Theft)
- **Case Citation:** *United States v. Blixt*, 548 F.3d 882 (9th Cir. 2008).

### 3. Unauthorized Access (Computer Fraud)

Any unauthorized access to our computer systems by third-party vendors to submit false information could be considered computer fraud, for which the company may also be held liable.

- **Federal Law:** 18 U.S.C. § 1030 (Computer Fraud)
- **Case Citation:** *United States v. Nosal*, 676 F.3d 854 (9th Cir. 2012).

### 4. Negligent Hiring and Supervision

If a company fails to properly vet third-party vendors and those vendors engage in unlawful activities, the company can be held liable for negligent hiring and supervision. This includes the unauthorized use of an employee's personal identifying information, which can create direct liability for the company due to its negligence in hiring and oversight.

- **Maryland Law:** An employer can be held liable for negligent hiring if it fails to exercise reasonable care in selecting an independent contractor who is incompetent or unfit for the work, and this negligence causes harm.
- **Case Citation:** *Latty v. St. Joseph's Soc. of Sacred Heart, Inc.*, 198 Md. App. 254 (2011).

### Immediate Actions Required

Given the serious nature of these issues, we require an update on the steps being taken to address them. It is now past 2 p.m., and Rich indicated action would be taken after 3 p.m. It is critical that Rich's actions are stopped immediately.

If you currently do not have legal representation for these matters, please confirm this in your response. You will have until [specific date, e.g., Monday, June 19, 2024] to secure an attorney. If you do have legal representation, please provide the contact information of your attorney by the same deadline.

### Next Steps

We are preparing to take the next steps to ensure that these issues are addressed properly. We do not require a member of ownership to agree with the facts as presented, but we do expect acknowledgment that we will be speaking with an attorney about the items disclosed here and potentially other items that have not yet been disclosed. We need assurance that you will come to the table in good faith.

### Conclusion

Ryan's actions continue to demonstrate attempts to limit damage, while Rich and Glenn's actions are making this more difficult and continue to jeopardize Ryan's health and Ohana. It is imperative that we take immediate and comprehensive actions to address these issues. Inaction or insufficient responses may lead to significant legal and financial liabilities for our organization.

Thank you for your attention to this critical issue.

This message may include text created with the help of natural language processing.

 Book time to meet with me

**Ryan Dillon-Capps**
**Vice President of IT**
**Ohana Growth Partners, LLC**

   office 410-252-8058 x109
212 W. Padonia Rd
Timonium, MD 21093
www.planetfitness.com

**"Culture eats strategy for breakfast"**

---

**From:** Ryan Dillon-Capps <Ryan.DillonCapps@ohanagp.com>
**Sent:** Thursday, June 13, 2024 12:02 PM
**To:** Ryan Dillon-Capps <Ryan.DillonCapps@ohanagp.com>; Rich Hartman <Rich.Hartman@ohanagp.com>
**Cc:** Karen Debus <karen.debus@ohanagp.com>; Justin Drummond <Justin.Drummond@ohanagp.com>; Stacey Wittelsberger (ESC) <srector@exeterstreetcapital.com>; C. Victor Brick <Victor@ohanagp.com>; Lynne Brick B.S.N. M.A. <lynne@ohanagp.com>; Terry Woods (Planet Fitness) <Terry.Woods@ohanagp.com>; Earl Ihle <Earl.Ihle@ohanagp.com>; Glenn Norris <glenn@ohanagp.com>
**Subject:** Re: Immediate Response to Rich Hartman Addressing Illegality and Cease and Desist

@Rich Hartman  Silly Forms I will try this again with the form corrected

I hope this message finds you well.

I am writing to formally address and respond to the recent directives and communications that have raised significant legal and ethical concerns.

### Illegal Directives and Retaliatory Actions

6 / 10

The email you sent today, June 13, 2024, demanding the addition of Global Administrators within a six-hour window under threat of insubordination charges, is not only inappropriate but also illegal. These actions constitute retaliation under the Family and Medical Leave Act (FMLA) and relevant Maryland state laws. Specifically:

5. **Family and Medical Leave Act (FMLA) Violations:**

    o   Under 29 U.S.C. § 2615(a), it is unlawful for an employer to retaliate against an employee for exercising their rights under the FMLA. The directives and threats issued in your email are clear acts of retaliation against me for taking FMLA leave.

6. **Maryland Retaliation Laws:**

    o   According to Md. Code Ann., Lab. & Empl. § 3-801 et seq., retaliation against employees for reporting workplace violations or exercising their rights is prohibited. Your actions have created a hostile work environment and have directly undermined my professional responsibilities.

**Cease and Desist Demand**

Effective immediately, I demand that you cease and desist from any further retaliatory actions and coercive threats. This includes, but is not limited to, the following:

1. **Retaliatory Directives:** Any orders or demands that threaten disciplinary action or undermine my role and responsibilities.
2. **Coercive Threats:** Any communications that use threats of insubordination or other punitive measures as a means of compliance.

Failure to comply with this cease and desist demand will leave me with no option but to pursue all available legal remedies to protect my rights and ensure a safe and fair working environment.

**Notification of Request for Confirmation**

Please be aware that I have requested Hartman Executive Advisors, including Phil Leadore and Dan Levett , to confirm their qualifications and involvement in the PCI DSS v4 review. Ownership have been included in this communication thread to ensure full transparency and oversight.

**Request for Confirmation**

**Please confirm in writing by 1:30 pm EST** that you have **received this cease and desist notice** and that you will **comply with its terms.** Failure to provide this confirmation will be taken as a refusal to comply, and I will proceed accordingly.

Thank you for your immediate attention to this serious matter.

This message may include text created with the help of natural language processing.

Book time to meet with me

**Ryan Dillon-Capps**
**Vice President of IT**
**Ohana Growth Partners, LLC**

7 / 10



office 410-252-8058 x109
212 W. Padonia Rd
Timonium, MD 21093
www.planetfitness.com

**"Culture eats strategy for breakfast"**

**From:** Ryan Dillon-Capps <Ryan.DillonCapps@ohanagp.com>
**Sent:** Thursday, June 13, 2024 11:57 AM
**To:** Rich Hartman <Rich.Hartman@ohanagp.com>
**Cc:** Karen Debus <karen.debus@ohanagp.com>; Justin Drummond <Justin.Drummond@ohanagp.com>; Stacey Wittelsberger (ESC) <srector@exeterstreetcapital.com>; C. Victor Brick <Victor@ohanagp.com>; Lynne Brick B.S.N. M.A. <lynne@ohanagp.com>; Terry Woods (Planet Fitness) <Terry.Woods@ohanagp.com>; Earl Ihle <Earl.Ihle@ohanagp.com>; Glenn Norris <glenn@ohanagp.com>
**Subject:** Immediate Response to Rich Hartman Addressing Illegality and Cease and Desist

@Rich Hartman

I hope this message finds you well.

I am writing to formally address and respond to the recent directives and communications that have raised significant legal and ethical concerns.

**Illegal Directives and Retaliatory Actions**

The email you sent today, June 13, 2024, demanding the addition of Global Administrators within a six-hour window under threat of insubordination charges, is not only inappropriate but also illegal. These actions constitute retaliation under the Family and Medical Leave Act (FMLA) and relevant Maryland state laws. Specifically:

3. **Family and Medical Leave Act (FMLA) Violations**:

   ○ Under 29 U.S.C. § 2615(a), it is unlawful for an employer to retaliate against an employee for exercising their rights under the FMLA. The directives and threats issued in your email are clear acts of retaliation against me for taking FMLA leave.

4. **Maryland Retaliation Laws**:

   ○ According to Md. Code Ann., Lab. & Empl. § 3-801 et seq., retaliation against employees for reporting workplace violations or exercising their rights is prohibited. Your actions have created a hostile work environment and have directly undermined my professional responsibilities.

**Cease and Desist Demand**

Effective immediately, I demand that you cease and desist from any further retaliatory actions and coercive threats. This includes, but is not limited to, the following:

1. **Retaliatory Directives**: Any orders or demands that threaten disciplinary action or undermine my role and responsibilities.
2. **Coercive Threats**: Any communications that use threats of insubordination or other punitive measures as a means of compliance.

8 / 10

Failure to comply with this cease and desist demand will leave me with no option but to pursue all available legal remedies to protect my rights and ensure a safe and fair working environment.

**Notification of Request for Confirmation**

Please be aware that I have requested Hartman Executive Advisors, including [specific names], to confirm their qualifications and involvement in the PCI DSS v4 review. Ownership have been included in this communication thread to ensure full transparency and oversight.

**Request for Confirmation**

# Please confirm in writing by 1:30 pm EST that you have received this cease and desist notice and that you will comply with its terms. Failure to provide this confirmation will be taken as a refusal to comply, and I will proceed accordingly.

Thank you for your immediate attention to this serious matter.

This message may include text created with the help of natural language processing.

 Book time to meet with me

**Ryan Dillon-Capps**
**Vice President of IT**
**Ohana Growth Partners, LLC**

  office 410-252-8058 x109
212 W. Padonia Rd
Timonium, MD 21093
www.planetfitness.com

**"Culture eats strategy for breakfast"**

---

**From:** Rich Hartman <Rich.Hartman@ohanagp.com>
**Sent:** Thursday, June 13, 2024 9:01 AM
**To:** Ryan Dillon-Capps <Ryan.Wagner@ohanagp.com>
**Cc:** Karen Debus <karen.debus@ohanagp.com>
**Subject:** Acknowledgement Required

Ryan,
You have received repeated and multiple demands from your supervisor, the company president, and the owner of Ohana Growth Partners (OGP) since May 21, 2024 to add them and other individuals as Global Administrators. You have repeatedly refused and failed to obey these directives. Such conduct constitutes insubordination which violates Section 1 of your January 8, 2020 Employment and Non-Disclosure Agreement requiring that you "faithfully and diligently perform . . . duties as may be assigned by management from time to time." In addition, the refusals violate Section 6.1 of the Ohana Associates Handbook ("Standards of Conduct") which prohibits the "failure to follow lawful instructions of a supervisor."

9 / 10

There are countless reasons why a company should have several Global Administrators, whether being tied up in business meetings, vacations, leaves of absence, or other activities that cause a single Global Administrator to be unavailable. Your communication yesterday about your need for FMLA time off, to which you are entitled, makes self-evident the reasons for the company's demand to have several Global Administrators.

Glenn has signed an agreement on behalf of OGP with Hartman Executive Advisors (HEA) and demands that you add Phil Leadore from HEA as a Global Administrator by 3 pm today. We also instruct you to hold off on any major updates or changes to the system until HEA has had a chance to evaluate Ohana's IT systems.

We have evaluated the multitude of reasons for your refusal to obey management's directives. We are not looking to debate these reasons any further, rather we require a simple acknowledgment that you will follow the directive or not and then do so immediately by 3:00 pm today. Failure to acknowledge this directive and to add Phil Leadore as a Global Administrator by 3:00 pm today will require the company to take appropriate action.

**Rich Hartman**
**VP of People and Culture**
**Ohana Growth Partners, LLC**



office 410-252-8058 x114
212 W. Padonia Rd
Timonium, MD 21093
www.planetfitness.com

**"Culture eats strategy for breakfast"**

**Ryan Dillon-Capps**

| | |
|---|---|
| **From:** | C. Victor Brick |
| **Sent:** | Thursday, May 23, 2024 11:59 PM |
| **To:** | Ryan Wagner |
| **Cc:** | Justin Drummond; Terry Woods; Earl Ihle; Lynne Brick B.S.N. M.A.; Stacey Wittelsberger (ESC) |
| **Subject:** | Re: Follow up on write up for insubordination and not following Glenn's Mandate from yesterday to restore Ryan Brooks' Admin rights |

I am ordering you to restore Ryan Brooks Administrative Rights immediately. Failure to do so would be perceived by me as gross insubordination.

I am with Vicki as she undergoes yet another round of chemo. Please restore Ryan's Administrative Rights by EOB tomorrow, Friday, 5/24. I will not be on email again until after the Memorial Day weekend. But I expect Ryan Brooks to have his administrative rights restored by EOB tomorrow.

**C. Victor Brick**
**CEO**
**Ohana Growth Partners, LLC**



cell 410-365-1801
212 W. Padonia Rd
Timonium, MD 21093

www.planetfitness.com

**"Culture eats strategy for breakfast"**

---

**From:** Ryan Wagner <Ryan.Wagner@ohanagp.com>
**Sent:** Wednesday, May 22, 2024 4:23:24 PM
**Cc:** Justin Drummond <Justin.Drummond@ohanagp.com>; Terry Woods <terrywoods4@comcast.net>; Earl Ihle <Earl.Ihle@ohanagp.com>; C. Victor Brick <Victor@ohanagp.com>; Lynne Brick B.S.N. M.A. <lynne@ohanagp.com>; Stacey Wittelsberger (ESC) <srector@exeterstreetcapital.com>
**Subject:** Re: Follow up on write up for insubordination and not following Glenn's Mandate from yesterday to restore Ryan Brooks' Admin rights

I am writing to bring to your immediate attention several critical issues that have recently come to light within our IT infrastructure. We are currently awaiting responses from PAX8 and DATTO regarding available options.

To provide a brief overview, we have addressed most of the systems within our knowledge base, but an unusual situation has arisen concerning the Code2 account. This account was set up within our own tenant and configured with a single user account to manage alerts, billing, and ensure functionality. We are in the process of addressing these issues with Code2 and will coordinate with LeeAnn tomorrow to reconfigure the billing in accordance with our current IT billing policy.

Recently, Ryan Brooks reported an external identity error. Assuming basic steps had been taken, I provided him with additional uncommon steps to investigate. Upon reviewing the issue myself, I identified a problem at the first step and instructed Ryan to follow up with Microsoft as I was unable to access my computer at the time. Ryan indicated he was too busy and would address it the next day. However, upon my inspection, it became evident

1 / 6

that no actions had been taken, necessitating immediate intervention from my end to meet our attestation submission requirements.

We are encountering several abnormalities that raise concerns about the proper management of our IT systems. There are indications that Ryan's user account, which I have extensively reviewed, may be linked to these irregularities. Despite his assertions that the reseller account constraints prevented certain actions, he managed our tenant, used our tax ID, and redirected invoices to himself rather than the AP team. This deviation from proper process raises suspicions about potential overcharges. I have preserved screenshots before any changes were made for further investigation.

I have instructed Ryan to replace any user accounts with managed identities, which align with current standard practices for enhanced security and management. Alarmingly, it appears that the account used to bind our entire tenant key was shared among multiple people, compromising our security posture. The correct approach should have involved storing the master key in a proper cryptographic key storage vault. I am currently assessing the risks associated with potential compromise, corruption, or deletion of this account and verifying the key's location using secondary identifiers.

This situation underscores a severe lapse in judgment and has placed our organization at significant risk. Reckless actions such as these, including the mishandling of tenant directory keys and improper grounding or mounting of equipment leading to physical damage, are not mere performance issues but represent substantial threats to our operational security.

I need a formal acknowledgment of receipt of this email. The gravity of these issues cannot be overstated, and there is evidence suggesting federal felonies may have been committed during employment with Ohana. Additionally, discrepancies have been identified in financial statements submitted to the bank, and threats have been made to compel the head of IT to violate PCI compliance.

Please confirm receipt of this email as a matter of urgency.

This message may include text created with the help of natural language processing.

📅 Book time to meet with me

**Ryan Wagner**
**Vice President of IT**
**Ohana Growth Partners, LLC**



office 410-252-8058 x109
212 W. Padonia Rd
Timonium, MD 21093
www.planetfitness.com

**"Culture eats strategy for breakfast"**

From: Ryan Wagner <Ryan.Wagner@ohanagp.com>
Sent: Wednesday, May 22, 2024 2:14 PM
To: Glenn Norris <glenn@ohanagp.com>
Cc: Justin Drummond <Justin.Drummond@ohanagp.com>; Rich Hartman <Rich.Hartman@ohanagp.com>; Karen Debus <karen.debus@ohanagp.com>; Terry Woods <terrywoods4@comcast.net>; Earl Ihle <Earl.Ihle@ohanagp.com>; C. Victor Brick <Victor@ohanagp.com>; Lynne Brick B.S.N. M.A. <lynne@ohanagp.com>; Matt Norris

2 / 6

<Matt.Norris@ohanagp.com>
**Subject:** Re: Follow up on write up for insubordination and not following Glenn's Mandate from yesterday to restore Ryan Brooks' Admin rights

@Glenn Norris, I am responding to the active threat that shut down the entire company's email, and currently poses an ongoing risk in other critical areas. I am working as fast as I can on this critical risk and missed calls. Emails likely failed because of the mail flow issue, and I saw your text when I went to update the post, noticing the missed call.

All we know at this moment is that there are no incidents reported, removing code2 resolved the company wide mail flow issue, and Ryan Brooks/Baltimore Consulting have exclusive access to manage this.

This message may include text created with the help of natural language processing.

📅 Book time to meet with me

**From:** Glenn Norris <glenn@ohanagp.com>
**Sent:** Wednesday, May 22, 2024 2:10 PM
**To:** Ryan Wagner <Ryan.Wagner@ohanagp.com>
**Cc:** Justin Drummond <Justin.Drummond@ohanagp.com>; Rich Hartman <Rich.Hartman@ohanagp.com>; Karen Debus <karen.debus@ohanagp.com>; Terry Woods <terrywoods4@comcast.net>; Earl Ihle <Earl.Ihle@ohanagp.com>; C. Victor Brick <Victor@ohanagp.com>; Lynne Brick B.S.N. M.A. <lynne@ohanagp.com>; Matt Norris <Matt.Norris@ohanagp.com>; Glenn Norris <glenn@ohanagp.com>
**Subject:** Follow up on write up for insubordination and not following Glenn's Mandate from yesterday to restore Ryan Brooks' Admin rights

Ryan, I have tried three different methods to communicate with you today- hence this is the 4ᵗʰ way by email.

1. Cell phone
2. Text to Cell Phone
3. Teams Call
4. Email since all others failed

I have seen emails from you today, so I presume you are working, what is your schedule today?

I did not see your email to the ownership group until this morning. I have read it. It is below in gray.

**From:** Ryan Wagner <Ryan.Wagner@ohanagp.com>
**Sent:** Wednesday, May 22, 2024 2:05:40 AM
**To:** CEO <CEO@ohanagp.com>; Earl Ihle <Earl.Ihle@ohanagp.com>; Earl Ihle <Earl.Ihle@ohanagp.com>; Earl Ihle (AOL) <Eihle1@aol.com>; Terry Woods (Planet Fitness) <Terry.Woods@ohanagp.com>; Justin Drummond <Justin.Drummond@ohanagp.com>; Lynne Brick B.S.N. M.A. <lynne@ohanagp.com>; Terry Woods (Planet Fitness) <Terry.Woods@ohanagp.com>
**Subject:** Critical Concerns Regarding Ryan Brooks's Reinstatement and System Access

I am writing to formally address a series of critical issues regarding the reinstatement of system access for Ryan Brooks, who was recently rehired by CFO Glenn Norris. Mr. Brooks's refusal to comply with essential security and compliance protocols poses significant risks to our organization's data security and PCI DSS compliance.

Background

3 / 6

Ryan Brooks, the developer of the Kiosk App used on our PCI-compliant network, was previously terminated due to his failure to comply with PCI DSS Requirement 6.2.2, which mandates annual training on software security for all software development personnel. This app is designed for members and guests to sign up and input PCI-protected data, making compliance with this requirement non-negotiable. Despite this, CFO Glenn Norris has rehired Mr. Brooks and now demands that global admin-level access be granted immediately.

Current Issues

Non-Compliance with PCI DSS Requirements:

Training (Requirement 6.2.2): Mr. Brooks has not completed the required annual security training. This training is crucial to ensure secure software development practices and the protection of cardholder data. For Mr. Brooks to remain associated with Ohana, he must complete this training before being allowed to work with us.
Code Validation (Requirement 6.2.3): Mr. Brooks is refusing to participate in code validation processes, which are essential to ensure that our software is free of vulnerabilities and compliant with PCI DSS standards.
Change Management (Requirement 6.4.5): Mr. Brooks, who also functions as a systems admin, is refusing to participate in necessary change management processes. These processes are critical for maintaining control and oversight over system modifications.
Violation of Least Privilege Principle:

Global Admin Access (Requirements 7.2.2 and 7.2.4): CFO Glenn Norris is insisting on granting Mr. Brooks global admin access without providing a valid justification. This demand violates the principle of least privilege, which is fundamental to minimizing the risk of unauthorized access and potential security breaches. Furthermore, it violates Requirement 7.2.4, which mandates access controls to enforce least privilege and prevent users from exceeding their authorized privileges.
Security Risks:

Lack of Oversight: Providing global admin access to Mr. Brooks, who refuses to adhere to security protocols and processes, significantly increases the risk of introducing vulnerabilities into our systems.
Potential for Unauthorized Changes: Without proper participation in change management and validation processes, there is a high risk of unauthorized or poorly managed changes that could compromise our systems and data.
Unauthorized Changes and Impact on Operations:

System Measures Compliance (Requirements 5.3.3, 5.3.4, 5.3.5, 5.2.1, 5.4.1): These requirements involve maintaining secure configurations, protecting all systems from malicious software, and ensuring anti-malware mechanisms are active and up-to-date. Compliance with these standards is crucial for protecting our systems from vulnerabilities and attacks.
Change Control and Development (Requirements 6.3.1, 6.3.3, 6.5.1, 6.5.2): These requirements focus on secure software development practices, managing changes to the system environment, and establishing a Change Control Board to review and approve changes. Unauthorized changes by Mr. Brooks have disrupted these processes, requiring extensive validation and correction efforts.
Access Management (Requirements 8.2.1, 8.2.2, 8.2.4, 8.2.5, 8.2.6, 8.2.7, 8.2.8, 8.3.4, 8.3.5, 8.3.6, 8.3.7, 8.3.8, 8.3.9): These requirements govern the management of user accounts and authentication methods, including multifactor authentication. Mr. Brooks's failure to complete these tasks has led to gaps in our access management processes.
Account and Access Controls (Requirements 8.4.1, 8.4.3, 8.5.1, 8.6.1, 8.6.2, 8.6.3): These involve ongoing management of user identities and authentication mechanisms. Due to a lack of personnel, I have had to manage these tasks, adding to my workload.

4 / 6

Log Management (Requirements 10.1.1, 10.2.1.2, 10.2.1.4, 10.2.1.5, 10.3.1, 10.3.2): These requirements ensure that logging mechanisms are in place to track access and changes to the system. Mr. Brooks made several unauthorized changes that compromised our logging integrity, necessitating corrective actions on my part. Efforts to Resolve Issues:

I completed the SAQ as directed by Geoff VanMaastricht, the head of corporate security. Despite offering numerous solutions to Glenn Norris, including a meeting with Geoff to find a workable solution and alternative means to complete necessary tasks, Mr. Norris has refused to provide clarity on Mr. Brooks's work. This lack of transparency hampers our ability to adhere to the least privilege principle (Requirement 7.2.2).
Recommendations

To address these issues while ensuring the security and compliance of our systems, I recommend the following actions:

Mandatory Training and Compliance (Requirement 6.2.2): Before granting any level of access, Mr. Brooks must complete the required PCI DSS training and agree to participate in all necessary security and compliance processes, including code validation and change management.

Controlled Access (Requirement 7.2.2): Access should be limited and incrementally granted based on the successful completion of specific security training and compliance tasks. Global admin access should only be considered if absolutely necessary and justified.

Regular Monitoring and Auditing (Requirement 10.6): Implement strict monitoring and auditing of Mr. Brooks's activities to ensure compliance with security policies and quickly detect any unauthorized actions.

Conclusion

My primary responsibility is to safeguard our company's data and ensure compliance with PCI DSS standards. Granting global admin-level access to Mr. Brooks without ensuring compliance with security training, code validation, and change management processes poses significant risks. I strongly urge the Board to support these recommendations to protect our systems and maintain compliance.

I am available to discuss this more and provide additional information as needed.

Thank you for your attention to this critical issue.

This message may include text created with the help of natural language processing.

📅 Book time to meet with me

**Ryan Wagner**
**Vice President of IT**
**Ohana Growth Partners, LLC**



office 410-252-8058 x109
212 W. Padonia Rd
Timonium, MD 21093
www.planetfitness.com

**"Culture eats strategy for breakfast"**

I am giving you until 5PM today to restore the Admin Rights to Ryan Brooks . Otherwise you will receive a 2<sup>nd</sup> write up. If you want to get on a call with the CEO, President & CFO to discuss your position , we are available.

Of course , as I said to you yesterday, there will be no more recorded calls allowed as part of your demands.

Ryan Brooks has no current requirement to be PCI Compliant and take the certification for PCI DSS 4 training. I do have a call into Geoff VanMaasstricht at Corporate to verify this.

The IPAD/Kiosk solution that Ryan Brooks is developing has not been completed or gone live yet. There is not a PCI Compliance risk right now and from my research may never be a risk based on utilizing the Vendor Network as the secure network. There is no reason for Ryan Brooks to be part of the report to PF Corp for PCI DSS 4 certification .

Ryan Brooks is committed to completing the course work if required , he has been participating in the Control Board Tuesday Calls and he will collaborate with you on any changes to our systems and you will do the same to him on changes to our IT Environment. Like the SQL Server being downloaded by you to your personal computer at your home. This must be stopped. All records from these downloads to a personal computer must be permanently deleted- we need to scrub that computer.

I have attached multiple emails from yesterday that document the communication and mandate I set forth.

Please have Ryan's Admin Rights restored by 5PM today.

Glenn

## Ryan Dillon-Capps

| | |
|---|---|
| From: | Ryan Wagner |
| Sent: | Wednesday, June 5, 2024 10:51 AM |
| To: | Glenn Norris; Justin Drummond |
| Cc: | Rich Hartman; Matt Norris; Stacey Wittelsberger (ESC); C. Victor Brick; Lynne Brick B.S.N. M.A.; Terry Woods (Planet Fitness); Earl Ihle |
| Subject: | Re: At a stand still since no admin rights have been returned to BC/RB |

@Glenn Norris

As you may recall, Geoff VanMaastericht from PFHQ and I both agree on the interpretation and application of PCI compliance regarding this issue. Previously, you attempted to coerce me into violating PCI compliance by labeling my refusal as insubordination and threatening to write me up if I did not comply with your demands. It's important to note that both accusations of insubordination and threats of write-ups are effectively viewed as coercive threats under the law.

Unfortunately, I cannot comply with unlawful or unethical orders.

Additionally, these coercive tactics have previously triggered severe panic attacks and other complications that negatively impact my PTSD, for which I am currently on FMLA leave. Such actions not only exacerbate my condition but also violate FMLA protections.

During our meeting, you mentioned to Geoff, Justin, and myself that you would provide information about what tasks Ryan Brooks was assigned to work on. This information is crucial for adhering to the least privilege requirement under PCI DSS 4. I recommend we start with that, as Ryan Brooks has other unique disqualifications that we will also need to address.

Knowing the specific tasks required may allow me to propose alternative solutions. If Ryan Brooks is the only person capable of performing these tasks, we will need to discuss options to address his other disqualifications as well.

# The email you responded to is what Ryan Brooks, or any developer, would prepare and provide when they are no longer supporting an application/website.

This message may include text created with the help of natural language processing.

 Book time to meet with me

**Ryan Wagner**
**Vice President of IT**
**Ohana Growth Partners, LLC**



office 410-252-8058 x109
212 W. Padonia Rd
Timonium, MD 21093

www.planetfitness.com

1 / 3

**"Culture eats strategy for breakfast"**

---

**From:** Glenn Norris <glenn@ohanagp.com>
**Sent:** Wednesday, June 5, 2024 10:26 AM
**To:** Ryan Wagner <Ryan.Wagner@ohanagp.com>; Justin Drummond <Justin.Drummond@ohanagp.com>
**Cc:** Rich Hartman <Rich.Hartman@ohanagp.com>; Matt Norris <Matt.Norris@ohanagp.com>
**Subject:** At a stand still since no admin rights have been returned to BC/RB

Ryan, as your Executive Group in OGP has individually and in total made demands to you to give full admin rights back to BC/RB this request is not in line with our demands.

You have received these email demands over the last 2-3 weeks from Glenn, Justin and Victor.

You have not completed these demands.

Please give the admin rights back to Ryan Brooks/BC.

The below requests by you to Ryan Brooks will not occur.

Our number one priority is to have you do what we demanded.

Your refusal to follow through with the demands are documented as insubordination.

Without you doing what we ask, we are currently not making any of the below changes.

Glenn

**Glenn Norris**
**Chief Financial Officer**
**Ohana Growth Partners, LLC**



office 410-252-8058 x108
cell 410-365-2591
212 W. Padonia Rd
Timonium, MD 21093
www.planetfitness.com

**"Culture eats strategy for breakfast"**

---

**From:** Ryan Wagner <Ryan.Wagner@ohanagp.com>
**Sent:** Wednesday, June 5, 2024 10:08 AM
**To:** Ryan Brooks BC <rb@baltimoreconsulting.com>
**Cc:** Glenn Norris <glenn@ohanagp.com>; Matt Norris <Matt.Norris@ohanagp.com>; Justin Drummond <Justin.Drummond@ohanagp.com>; Rich Hartman <Rich.Hartman@ohanagp.com>
**Subject:** Transition Documents

2 / 3

@Ryan Brooks BC  Please provide us with the transition documents for the intranet and all other websites and applications that you previously handled.

If possible, they should include
- **Codebase information:** Details about the code repository, branch naming conventions, and commit history.
- **Architecture diagrams:** Visual representations of the system architecture and how different components interact.
- **Deployment procedures:** Step-by-step instructions on how to deploy the software or updates to the production environment.
- **Operational documentation:** Information on monitoring systems, log file locations, and troubleshooting common issues.

    **Contact information:** Details of the previous maintainers or project managers for further queries.
If these documents or their relative equivalents already exist - please direct me to their current location.  No one is expecting perfection, we would appreciate to have what you can provide us to pass it forward to whomever takes over this responsibility.

This message may include text created with the help of natural language processing.

 Book time to meet with me

**Ryan Wagner**
**Vice President of IT**
**Ohana Growth Partners, LLC**

**OHANA**
**Growth Partners**

office 410-252-8058 x109
212 W  Padonia Rd
Timonium, MD 21093
www.planetfitness.com

**"Culture eats strategy for breakfast"**

Subject: Re: Full Admin Access to IT Systems to OGP President- Justin Drummond
From: Ryan Wagner <Ryan.Wagner@ohanagp.com>
To: Justin Drummond <Justin.Drummond@ohanagp.com>, Glenn Norris <glenn@ohanagp.com>
Cc: Rich Hartman <Rich.Hartman@ohanagp.com>, Karen Debus <karen.debus@ohanagp.com>, Stacey Wittelsberger (ESC) <srector@exeterstreetcapital.com>, C. Victor Brick <Victor@ohanagp.com>, Lynne Brick B.S.N. M.A. <lynne@ohanagp.com>, Terry Woods (Planet Fitness) <Terry.Woods@ohanagp.com>, Earl Ihle <Earl.Ihle@ohanagp.com>
Date: May 28, 2024 8:00:00 AM
Attachments: image001.png, image002.png, image003.png, image004.png, image005.png, ohanagplogo168x50_28f3cdc9-cdd4-4688-b694-9ba23c3c09ac.png, ohanagrowthpartnersfinallogo_7fa8dba2-2909-40ee-839a-12ba06da3de6.png, Outlook-iw1id5kd.png, image.png, image.png, image.png, image.png, image.png, Outlook-pr2hqniq.png
--

Over the weekend, we continued working to address security issues, audit our systems, and perform tasks related to Microsoft's recommendations. This has allowed us to reduce some of the security restrictions put in place in response to the unauthorized access incident. We will continue to monitor our systems with heightened vigilance and are prepared to act quickly if additional unauthorized access is detected.

We have work remaining to do, but it would be helpful to know what Ryan Brooks was supposed to do because I have difficulty understanding the justification for his recent work.

This data is based on the last week:

 **Users**
149 users signed in during the last 7 days without any policy coverage
See all unprotected users

**Devices**
84% of sign-ins in the last 7 days were from unmanaged or non-compliant devices
See all noncompliant devices
See all unmanaged devices

This data is reflective of where we are at now.

| Application | Users with coverage | Percentage of users covered |
|---|---|---|
| Office365 Shell WCSS Client | 191 out of 193 | 100% |
| Office 365 Exchange Online | 170 out of 171 | 99% |
| Office Online Core SSO | 148 out of 145 | 100% |
| Microsoft Teams Web Client | 113 out of 113 | 100% |
| Microsoft Authentication Broker | 7 out of 102 | 7% |
| OfficeHome | 91 out of 91 | 100% |
| Outlook Mobile | 91 out of 91 | 100% |
| fitnessbi_service_account | 88 out of 88 | 100% |
| Office 365 SharePoint Online | 86 out of 85 | 100% |

This message may include text created with the help of natural language processing.

 Book time to meet with me

**Ryan Wagner**
**Vice President of IT**
**Ohana Growth Partners, LLC**

 Ohana     office 410-252-8958. x 109
212 W Padonia Rd
Timonium. MD 21093
www.planetfitness.com

"Culture eats strategy for breakfast"

From: Ryan Wagner <Ryan.Wagner@ohanagp.com>
Sent: Sunday, May 26, 2024 8:44 PM
To: Justin Drummond <Justin.Drummond@ohanagp.com>; Glenn Norris <glenn@ohanagp.com>
Cc: Rich Hartman <Rich.Hartman@ohanagp.com>; Karen Debus <karen.debus@ohanagp.com>; Stacey Wittelsberger (ESC) <srector@exeterstreetcapital.com>; C. Victor Brick <Victor@ohanagp.com>; Lynne Brick B.S.N. M.A. <lynne@ohanagp.com>; Terry Woods (Planet Fitness) <Terry.Woods@ohanagp.com>; Earl Ihle <Earl.Ihle@ohanagp.com>
Subject: Re: Full Admin Access to IT Systems to OGP President- Justin Drummond

@Justin Drummond Aloha,

PCI Compliance is critical, and violations of PCI compliance will impact all of Planet Fitness. PCI DSS4 covers more than what was previously covered:

PCI DSS requirements apply to entities with environments where account data (cardholder data and/or sensitive authentication data) is stored processed, or transmitted, and entities with environments that can impact the security of the CDE. Some PCI DSS requirements may also apply to entities with environments that do not store, process, or transmit account data – for example, entities that outsource payment operations or management of their CDE [1]. Entities that outsource their payment environments or payment operations to third parties remain responsible for ensuring that the account data is protected by the third party per applicable PCI DSS requirements.
Here is a single example for M365 and Azure
M365: Intune - Manages our iPads and can impact the CDE's security.
Azure: The Kiosk platform is hosted in our Azure environment and qualifies as custom software designed for the CDE.

PCI DSS 4 mandates that access be limited to the minimum necessary for individuals to perform their job responsibilities. This principle of least privilege is why I have repeatedly

requested details on the specific access needed. While Ryan Brooks is uniquely disqualified, knowing the precise requirements allows me to provide alternative solutions to ensure tasks are completed in a timely manner.

Alternatively, you can schedule a meeting with Geoff VanMastricht and me to discuss this. Geoff oversees the PCI Compliance process, and with all the information he has, he is capable of making an informed decision about whether the action you are requesting is allowed or not. Therefore, I do not foresee any issues with implementing the actions he approves.

Only Authorized Personnel can approve access, and for us, this includes Geoff and me, as we are responsible for and knowledgeable about PCI DSS 4 Compliance requirements.

These options have been provided on multiple occasions. I cannot comply with any unlawful or unethical order.

Over the weekend and each night, I have vigilantly monitored our environment to prevent unauthorized access and continued auditing our systems. I have repaired security issues around our backups, recreated missing audits, replaced missing legal holds, and implemented further enhancements to ensure backups, logs, legal holds, and other critical items are properly protected and monitored. Fortunately, I believe our critical data remains uncompromised due to multiple layers of protection in various systems, some of which appear to have gone unnoticed.

## I have made arrangements to ensure swift actions are taken to maintain or restore PCI compliance in the event that I am unavailable or unable to ensure PCI compliance is maintained.

I will not be available for discussions on Monday (a company holiday) or Tuesday as my schedule is fully booked, and I will continue to offer these options to you via email. If you inform me as to the work that Ryan Brooks urgently needs to do, then I will arrange for it to be performed. Alternatively, upon request, I will arrange a meeting with both of us to review the request together.

Additional information will be provided as soon as possible.



This message may include text created with the help of natural language processing.

📅 Book time to meet with me

**Ryan Wagner**
**Vice President of IT**
**Ohana Growth Partners, LLC**

Ohana    office 410-252-8058 x 101
         212 W. Padonia Rd
         Timonium, MD 21093
         www.planetfitness.com

"Culture eats strategy for breakfast"

**From:** Justin Drummond <Justin.Drummond@ohanagp.com>
**Sent:** Friday, May 24, 2024 11:01 AM
**To:** Glenn Norris <glenn@ohanagp.com>; Ryan Wagner <Ryan.Wagner@ohanagp.com>
**Cc:** Rich Hartman <Rich.Hartman@ohanagp.com>; Karen Debus <karen.debus@ohanagp.com>
**Subject:** Full Admin Access to IT Systems to OGP President- Justin Drummond

Ryan,

As stated below by Glenn, the company needs to have access to our IT systems. Glenn has specifically asked you on multiple occasions to grant full admin access to all things Ohana Growth Partners related in our IT ecosystem to him and me. We do not agree with your actions as of late to block everyone but yourself from having access to our data, information, systems, etc. There should never be a single individual in any instance that has sole access for many reasons. I think you would agree to that.

It seems as though most of your concern is with Ryan Brooks and/or Glenn having access. My immediate request is that you grant me full admin access today. As President of the company, I need to be the reserve/backup for IT access and all aspects of our business.

Again, to be clear, I need to have full admin access, the exact same level as you by 5pm today. Please email me as soon as this is completed.

Thank you.

**Justin Drummond**
**President**
**Ohana Growth Partners, LLC**

 office 410-252-8058 x214
212 W. Padonia Rd
Timonium MD 21093
www.planetfitness.com

**"Culture eats strategy for breakfast"**

---

**From:** Glenn Norris <glenn@ohanagp.com>
**Sent:** Friday, May 24, 2024 9:33 AM
**To:** Ryan Wagner <Ryan.Wagner@ohanagp.com>
**Cc:** Justin Drummond <Justin.Drummond@ohanagp.com>; Rich Hartman <Rich.Hartman@ohanagp.com>; Karen Debus <karen.debus@ohanagp.com>; Glenn Norris <glenn@ohanagp.com>
**Subject:** Response to RW's email of Unauthorized Access Incident

Ryan, since we all disagree with your actions taken to remove Ohana's & JWB Foundation's Admin rights from Ryan Brooks/Baltimore Consulting , this "trap/honeypot" email is once again an action taken by you that we disagree with and would once again demand that you cease and desist.

Our mandate from minute one when you removed Ryan Brook's Admin Rights was to make a demand to you to reverse your action and restore his admin rights. Soon thereafter, we demanded that you give full Admin rights to Justin and me- none of these demands have been implemented.

At this point, you have locked us out of the JWB Foundation admin rights- you never should have done this.

I find it interesting that you state this in your email below: "because he has been involved in our systems for so long without any supervision"- this seems to point to your dereliction of your supervisory duty.

Our stance has not changed- we want Full Admin rights restored to Ryan Brooks and add Full Admin rights to Justin and Glenn.

Your lack of communication and not following mandates from your supervisor(s) are placing you in a constant state of reprimand for insubordination.

Glenn

**Glenn Norris**
**Chief Financial Officer**
**Ohana Growth Partners, LLC**

 office 410-252-8058 x108
cell 410-365-2591
212 W. Padonia Rd
Timonium MD 21093
www.planetfitness.com

**"Culture eats strategy for breakfast"**

---

**From:** Ryan Wagner <Ryan.Wagner@ohanagp.com>
**Sent:** Friday, May 24, 2024 8:00 AM
**To:** Karen Debus <karen.debus@ohanagp.com>; Justin Drummond <Justin.Drummond@ohanagp.com>; Terry Woods (Planet Fitness) <Terry.Woods@ohanagp.com>; Earl Ihle <Earl.Ihle@ohanagp.com>; C. Victor Brick <Victor@ohanagp.com>; Lynne Brick B.S.N. M.A. <lynne@ohanagp.com>; Stacey Wittelsberger (ESC) <srector@exeterstreetcapital.com>; Glenn Norris <glenn@ohanagp.com>; Rich Hartman <Rich.Hartman@ohanagp.com>
**Subject:** Unauthorized Access Incident

I set up a trap called a honeypot for Ryan Brooks's accounts and several other areas of concern because he has been involved in our systems for so long without any supervision that I was unsure what he may have done that he could exploit. I remained on call overnight to monitor for activity. My concerns were validated on 2024, May 23, at 8:55 AM EST (12:55 UTC). when the below actions were detected

| Self-service Password Management | UserManagement | Self-service password reset flow activity progress | Success | User started the mobile app code verification option |
| --- | --- | --- | --- | --- |
| Self-service Password Management | UserManagement | Self-service password reset flow activity progress | Success | User was presented with verification options |
| Self-service Password Management | UserManagement | Self-service password reset flow activity progress | Success | User submitted their user ID |
| Self-service Password Management | UserManagement | Self-service password reset flow activity progress | Failure | User cancelled before passing the required authentication methods |
| Self-service Password Management | UserManagement | Self-service password reset flow activity progress | Success | User started the mobile app notification verification option |
| Self-service Password Management | UserManagement | Self-service password reset flow activity progress | Success | User was presented with verification options |
| Self-service Password | UserManagement | Self-service password reset flow activity | Success | User submitted their user ID |

Management                          progress

These actions were taken from IP Address 108.50.50.107

| | | |
|---|---|---|
| d1145cc3-7496-4357-9518-1f802645bf8e | rbrooks@ohanagp.com | 108.50.50.107 |
| d1145cc3-7496-4357-9518-1f802645bf8e | rbrooks@ohanagp.com | 108.50.50.107 |
| d1145cc3-7496-4357-9518-1f802645bf8e | rbrooks@ohanagp.com | 108.50.50.107 |
| d1145cc3-7496-4357-9518-1f802645bf8e | rbrooks@ohanagp.com | 108.50.50.107 |
| d1145cc3-7496-4357-9518-1f802645bf8e | rbrooks@ohanagp.com | 108.50.50.107 |
| d1145cc3-7496-4357-9518-1f802645bf8e | rbrooks@ohanagp.com | 108.50.50.107 |
| d1145cc3-7496-4357-9518-1f802645bf8e | rbrooks@ohanagp.com | 108.50.50.107 |

This is a Verizon Business managed circuit.

| | |
|---|---|
| NetRange: | 108.0.0.0 - 108.57.255.255 |
| CIDR: | 108.56.0.0/15, 108.0.0.0/11, 108.32.0.0/12, 108.48.0.0/13 |
| NetName: | VIS-BLOCK |
| NetHandle: | NET-108-0-0-0-1 |
| Parent: | NET108 (NET-108-0-0-0-0) |
| NetType: | Direct Allocation |
| OriginAS: | |
| Organization: | Verizon Business (MCICS) |
| RegDate: | 2009-06-05 |
| Updated: | 2022-05-31 |
| Ref: | https://rdap.arin.net/registry/ip/108.0.0.0 |

This matches one of the IPs commonly used with the Rbrooks account.

| | | |
|---|---|---|
| 31145cc3-7496-4357-9518-1f802645bf8e | rbrooks@ohanagp.com | 98.211.101.103 |
| 31145cc3-7496-4357-9518-1f802645bf8e | rbrooks@ohanagp.com | 108.50.50.107 |
| 31145cc3-7496-4357-9518-1f802645bf8e | rbrooks@ohanagp.com | 108.50.50.107 |
| 31145cc3-7496-4357-9518-1f802645bf8e | rbrooks@ohanagp.com | 108.50.50.107 |
| 31145cc3-7496-4357-9518-1f802645bf8e | rbrooks@ohanagp.com | 68.33.105.128 |
| 31145cc3-7496-4357-9518-1f802645bf8e | rbrooks@ohanagp.com | 68.33.105.128 |
| 31145cc3-7496-4357-9518-1f802645bf8e | rbrooks@ohanagp.com | 20.62.176.41 |
| 31145cc3-7496-4357-9518-1f802645bf8e | rbrooks@ohanagp.com | 107.1.216.234 |
| 31145cc3-7496-4357-9518-1f802645bf8e | rbrooks@ohanagp.com | 2a01:111:f100:2000::a83e:353b |
| 31145cc3-7496-4357-9518-1f802645bf8e | rbrooks@ohanagp.com | 2a01:111:f100:2000::a83e:353b |
| 31145cc3-7496-4357-9518-1f802645bf8e | rbrooks@ohanagp.com | 2a01:111:f100:2000::a83e:353b |
| 31145cc3-7496-4357-9518-1f802645bf8e | rbrooks@ohanagp.com | 2a01:111:f100:2000::a83e:353b |
| 31145cc3-7496-4357-9518-1f802645bf8e | rbrooks@ohanagp.com | 2a01:111:f100:2000::a83e:353b |
| 31145cc3-7496-4357-9518-1f802645bf8e | rbrooks@ohanagp.com | 2a01:111:f100:2000::a83e:353b |
| 31145cc3-7496-4357-9518-1f802645bf8e | rbrooks@ohanagp.com | 2a01:111:f100:2000::a83e:353b |

When a business experiences unauthorized access to its systems, who we report the incident to varies based on the nature and severity of the event. The good news is that once he tripped the honeypot I was able to take immediate action to prevent further actions using the methods used to gain access. In addition, the account no longer had any access or contents that it previously had, and the logs do not detect any other successful intrusion.

Based on what we know, I need to ask one uncomfortable question.

## Could anyone have directed Ryan Brooks to perform these actions?

Just so you know, if someone had told him that he was authorized, anyone following up on this investigation would no longer be looking at Ryan Brooks for unauthorized access.

However, this could start a PCI compliance investigation with the named person being the focus of that investigation.

## If Ryan Brooks could have mistaken something, I need to know immediately before the investigation reveals it.

This message may include text created with the help of natural language processing.

📅 Book time to meet with me

**Ryan Wagner**
**Vice President of IT**
**Ohana Growth Partners, LLC**

**OHANA**
Growth Partners

office 410-252-9258 x109
212 W. Padonia Rd
Timonium, MD 21093
www.planetfitness.com

"Culture eats strategy for breakfast"

## Ryan Dillon-Capps

| | |
|---|---|
| **From:** | **Ryan Wagner** |
| **Sent:** | **Tuesday, June 11, 2024 9:32 PM** |
| **To:** | **Justin Drummond; C. Victor Brick; Lynne Brick B.S.N. M.A.; Terry Woods (Planet Fitness); Earl Ihle; Stacey Wittelsberger (ESC)** |
| **Subject:** | **Fw: Ohana Growth Partners PCI DSS Review Kickoff Call** |

Glenn stated that he would not hire Finchloom because they were not adequately vetted; a statement that Justin can confirm was made verbally.

Microsoft recommended Finchloom as an expert in our Azure and M365 environment. Since Microsoft defines the standards for qualified companies and professionals in their IP, their recommendation carries significant weight.

I could not find Hartman Executive Advisors listed as PCI DSS v4 advisors. Qualified companies and individuals performing such work are registered as QSAs. You can verify this by checking the PCI Security Standards Council's website: PCI Security Standards Council – Protect Payment Data with Industry-driven Security Standards, Training, and Programs.

If you do find them listed, please inform me. I am giving Hartman Executive Advisors the same opportunity to verify their credentials in case I have made an error.

At the bottom of the PCI Security Standards Council page, you will see that it states, "QSA Company has QSA(s) trained in PCI DSS v4 and qualified to perform PCI DSS v4 assessments."

** QSA Company has QSA(s) trained in PCI DSS v4 and qualified to perform PCI DSS v4 assessments.

Thank you for your attention to this matter.

This message may include text created with the help of natural language processing.

 Book time to meet with me

**Ryan Wagner**
**Vice President of IT**
**Ohana Growth Partners, LLC**


office 410-252-8058 x109
212 W. Padonia Rd
Timonium, MD 21093

www.planetfitness.com

**"Culture eats strategy for breakfast"**

**From:** Ryan Wagner <Ryan.Wagner@ohanagp.com>
**Sent:** Tuesday, June 11, 2024 9:17 PM
**To:** Phil Leadore <pleadore@hartmanadvisors.com>; Glenn Norris <glenn@ohanagp.com>; Justin Drummond <Justin.Drummond@ohanagp.com>; Dan Levett <dlevett@hartmanadvisors.com>
**Subject:** Re: Ohana Growth Partners PCI DSS Review Kickoff Call

@Phil Leadore @Dan Levett, I am unable to find your company listed as a PCI DSS v4 Assessor, nor do I see either of you listed as Qualified Security Assessors (QSAs). Could you please provide the name under which you are registered?

Regarding the meeting time, I have a regularly scheduled meeting that conflicts with our current appointment. We will need to find an alternative time that works for both of us. Once I can confirm that your company is a registered PCI DSS v4 Assessor and that the individuals we are meeting with are certified QSAs, we can proceed to schedule a new meeting time.

Thank you for your understanding.

This message may include text created with the help of natural language processing.

📇 Book time to meet with me

**Ryan Wagner**
**Vice President of IT**
**Ohana Growth Partners, LLC**



office 410-252-8058 x109
212 W. Padonia Rd
Timonium, MD 21093
www.planetfitness.com

**"Culture eats strategy for breakfast"**

**From:** Phil Leadore <pleadore@hartmanadvisors.com>
**Sent:** Tuesday, June 11, 2024 5:48 PM
**To:** Glenn Norris <glenn@ohanagp.com>; Justin Drummond <justin.drummond@ohanagp.com>; Ryan Wagner <ryan.wagner@ohanagp.com>; Dan Levett <dlevett@hartmanadvisors.com>
**Subject:** Ohana Growth Partners PCI DSS Review Kickoff Call
**When:** Wednesday, June 12, 2024 12:30 PM-1:30 PM.
**Where:** Microsoft Teams Meeting

Some people who received this message don't often get email from pleadore@hartmanadvisors.com. Learn why this is important

**CAUTION:** This email originated from outside the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Good afternoon, all –

Hartman Executive Advisors has been engaged to begin a PCI DSS review of Ohana Growth Partners systems. This meeting is to kick off the engagement. Please let me know if this date and time does not work for you. We are looking forward to tomorrow's discussion.

Best,
Phil

# Microsoft Teams Need help?

## Join the meeting now

Meeting ID: 246 091 784 572

Passcode: 2fHpie

### Dial in by phone

+1 443-457-0613,,373232486# United States, Baltimore

Find a local number

Phone conference ID: 373 232 486#
For organizers: Meeting options | Reset dial-in PIN

## Ryan Dillon-Capps

| From: | Ryan Dillon-Capps |
|---|---|
| Sent: | Thursday, June 13, 2024 11:48 AM |
| To: | Phil Leadore; Glenn Norris; Dan Levett |
| Cc: | Justin Drummond; Stacey Wittelsberger (ESC); C. Victor Brick; Lynne Brick B.S.N. M.A.; Terry Woods (Planet Fitness); Earl Ihle |
| Subject: | Re: [External]Re: Time off for FMLA- are you able to meet with Hartman Executive Advisors ? |

@Phil Leadore @Dan Levett , I hope this message finds you well.

I could use and would appreciate some backup, as would my team and others involved. However, I need to obtain some information before we can discuss the situation at length.

1. **Active Agreement**: Do you currently have an active agreement with Ohana Growth Partners that has been signed by Glenn Norris? If so, would you be able to provide a copy of this document for our records?

2. **PCI DSS Assessor Status**: Is Hartman Executive Advisors a registered PCI DSS v4 Assessor? If yes, could you please provide the names of the registered QSAs?

3. **Security Certifications**: If Hartman Executive Advisors are not registered QSAs, do you have any other security certifications or qualifications that your team holds to justify your involvement in processes related to discussing or advising us about PCI DSS v4?

4. **Reporting Obligations**: Do any of your qualifications or affiliations mandate a necessity to report on anything?

5. **Non-Disclosure Agreement**: If there are no such reporting obligations, would you be open to signing an agreement that will prohibit you from reporting anything discussed with you or discovered during this process? Ideally, I would like this to be signed by a different member of ownership—preferably Victor, Lynne, or Terry—who together account for the majority ownership, to ensure there is no question as to Ohana's approval.

Thank you for your attention to this matter. We look forward to your prompt response and appreciate your cooperation.

This message may include text created with the help of natural language processing.

📇 Book time to meet with me

**Ryan Dillon-Capps**
**Vice President of IT**
**Ohana Growth Partners, LLC**

1 / 5



office 410-252-8058 x109
212 W. Padonia Rd
Timonium, MD 21093

www.planetfitness.com

**"Culture eats strategy for breakfast"**

**From:** Phil Leadore <pleadore@hartmanadvisors.com>
**Sent:** Wednesday, June 12, 2024 1:28 PM
**To:** Ryan Wagner <Ryan.Wagner@ohanagp.com>; Glenn Norris <glenn@ohanagp.com>; Dan Levett <dlevett@hartmanadvisors.com>
**Cc:** Justin Drummond <Justin.Drummond@ohanagp.com>; Stacey Wittelsberger (ESC)
<srector@exeterstreetcapital.com>; C. Victor Brick <Victor@ohanagp.com>; Lynne Brick B.S.N. M.A.
<lynne@ohanagp.com>; Terry Woods (Planet Fitness) <Terry.Woods@ohanagp.com>; Earl Ihle
<Earl.Ihle@ohanagp.com>
**Subject:** RE: [External]Re: Time off for FMLA- are you able to meet with Hartman Executive Advisors ?

CAUTION: This email originated from outside the organization. Do not click links or open attachments
unless you recognize the sender and know the content is safe.

Ryan –

Thank you for your email and question. Glenn will be following up with a response shortly.

Thanks,
Phil

**From:** Ryan Wagner <Ryan.Wagner@ohanagp.com>
**Sent:** Wednesday, June 12, 2024 12:48 PM
**To:** Glenn Norris <glenn@ohanagp.com>; Phil Leadore <pleadore@hartmanadvisors.com>; Dan Levett <dlevett@hartmanadvisors.com>
**Cc:** Justin Drummond <Justin.Drummond@ohanagp.com>; Stacey Wittelsberger (ESC)
<srector@exeterstreetcapital.com>; C. Victor Brick <Victor@ohanagp.com>; Lynne Brick B.S.N. M.A.
<lynne@ohanagp.com>; Terry Woods (Planet Fitness) <Terry.Woods@ohanagp.com>; Earl Ihle
<Earl.Ihle@ohanagp.com>
**Subject:** [External]Re: Time off for FMLA- are you able to meet with Hartman Executive Advisors ?

@Phil Leadore @Dan Levett , I am sure you are a reputable company, but can you confirm if you are a PCI DSS
v4 assessor? Planet Fitness uses the same processor, and below is the last email from Geoff VanMaastricht,
who oversees our PCI compliance program.

From: Geoff VanMaastricht <Geoff.VanMaastricht@pfhq.com>
Sent: Wednesday, June 5, 2024 4:57 PM
To: Ryan Wagner <Ryan.Wagner@ohanagp.com>; Justin Drummond <Justin.Drummond@ohanagp.com>; Glenn Norris <glenn@ohanagp.com>; Rich H
<stephan.dalgar@pfhq.com>
Subject: Re: Reaffirmation and clarity

CAUTION: This email originated from outside the organization. Do not click links or open attachments unless you recognize the sende

Although I appreciate your high regard for my abilities, I must emphasize the ethical imperative that precludes any discussion regar

2 / 5

Geoff emphasized that if I disclose the current issues to him, he would be obligated to notify the relevant authorities due to his other affiliations and qualifications. He understands that I am fully capable of making those calls myself, but it would severely impact the company.

I'm unsure what information you have been given, so here is what I sent to Geoff before his response:

From: Ryan Wagner <Ryan.Wagner@ohanagp.com>
Sent: Wednesday, June 5, 2024 4:32 PM
To: Geoff VanMaastricht <GeoffVanMaastricht@pfhq.com>; Justin Drummond <Justin.Drummond@ohanagp.com>; Glenn Norris <glenn@ohanagp.co
Dalgar <stephan.dalgar@pfhq.com>
Subject: Re: Reaffirmation and clarity

Security Advisory - This has been identified as EXTERNAL email. Please use caution when opening links or attachments.
I have been doing the same to support transparency and provide a reference for later.

Notably, I have requested assistance from another company. Microsoft recommended Finchloom, and all relevant materials and costs of their
and Justin. All recommendations to bring in Finchloom or another qualified company have been rejected.

You may recall that Glenn indicated that he would provide me with a list of tasks that Ryan Brooks was needed for, but I have not received this li

I appreciate you joining this conversation, and I feel like either of you are more than qualified to come on as a consultant. Once you have been
access. The same would be true with Finchloom or another qualified vendor. If you would like to recommend one, that would be great!

If you would like to be fully informed, please note that Holly Butler of Miles Stockbridge was their original attorney. I believe her involvement has since ended, as she requested I obtain the current attorney's information from Ohana. Here is that request:

From: Ryan Wagner <Ryan.Wagner@ohanagp.com>
Sent: Thursday, June 6, 2024 5:13 PM
To: Justin Drummond <Justin.Drummond@ohanagp.com>; Rich Hartman <Rich.Hartman@ohanagp.com>; Karen Debus <karen.debus@ohanagp.com>
Wittelsberger (ESC) <srector@exeterstreetcapital.com>; C. Victor Brick <Victor@ohanagp.com>; Lynne Brick B.S.N. M.A. <lynne@ohanagp.com>; Terr
<Earl.Ihle@ohanagp.com>; Glenn Norris <glenn@ohanagp.com>
Subject: Request for Information Regarding Legal Representation

Aloha

I hope this message finds you well. I am writing to formally request information regarding the legal representation retained by Ohana Growth Pa
unauthorized use of my name to attest compliance documents, fabricated or altered emails/documents, or any matters related to my employr

Specifically, I would like to know the name and contact information of the attorneys or law firms representing the company on any of these mat
direct negotiations to resolve these issues amicably and efficiently.

I believe that open communication can help us reach a mutually agreeable solution and prevent the need for more formal proceedings. Therefr

Thank you for your cooperation.

Since then, I have repeatedly asked for their attorney's information, but it has not been provided to me.

If you are still interested in understanding the situation, I would like you to first confirm that you are not obligated to report any information you learn. Once that is secured, we can review the facts together. I am concerned that, ethically, you might choose to report. Do you currently have an agreement that prohibits you from reporting? Would you be opposed to such an agreement?

I am unsure why Glenn chose to address this topic in my FMLA time off email, as it appears problematic that his response to my federally protected leave is to push for work during that time.

I am adding the other owners to this email thread.

This message may include text created with the help of natural language processing.

 Book time to meet with me

**Ryan Wagner**
**Vice President of IT**
**Ohana Growth Partners, LLC**

**OHANA**
Growth Partners

office 410-252-8058 x109
212 W. Padonia Rd
Timonium, MD 21093
www.planetfitness.com

**"Culture eats strategy for breakfast"**

---

**From:** Glenn Norris <glenn@ohanagp.com>
**Sent:** Wednesday, June 12, 2024 7:59 AM
**To:** Ryan Wagner <Ryan.Wagner@ohanagp.com>
**Cc:** Justin Drummond <Justin.Drummond@ohanagp.com>; Glenn Norris <glenn@ohanagp.com>
**Subject:** Time off for FMLA- are you able to meet with Hartman Executive Advisors ?

Ryan, will you meet with us still at some point today? Phil & Dan from Hartman Executive Advisors sent an invite for 12:30 today and you replied with the attached email stating you could not make that time. What time will work for you?

They can answer your questions prior to the meeting or during the meeting. See below for your questions they need to answer for you.

@Phil Leadore @Dan Levett, I am unable to find your company listed as a PCI DSS v4 Assessor, nor do I see either of you listed as Qualified Security Assessors (QSAs). Could you please provide the name under which you are registered?

Hartman Executive Advisors are a highly qualified IT Advisory Company with many resources that we need. A local company with a deep bench. Check out their website.

https://hartmanadvisors.com/

https://hartmanadvisors.com/it-leadership/ciso-services/

This is an excerpt from their website.

# 100% Unbiased Guidance
**Straight-shooter advice that's always in your organization's best interest and never aimed at selling products or swayed by office politics.**

Right now OGP is out of PCI Compliance because we do not have at least 2 users that have Global Admin Rights. As we have requested/mandated multiple times, OGP needs to have another user with the same Global Admin Rights as you. Let's discuss in this meeting- how OGP can get back into PCI Compliance relative to another user that has the Global Admin Rights.

4 / 5

Thank you, Glenn

**Glenn Norris**
**Chief Financial Officer**
**Ohana Growth Partners, LLC**



office 410-252-8058 x108
cell 410-365-2591
212 W. Padonia Rd
Timonium, MD 21093
www.planetfitness.com

**"Culture eats strategy for breakfast"**

**From:** Ryan Wagner <Ryan.Wagner@ohanagp.com>
**Sent:** Wednesday, June 12, 2024 7:00 AM
**To:** IT.Support <IT.Support@ohanagp.com>; Rich Hartman <Rich.Hartman@ohanagp.com>; IT.BusinessIntelligence <IT.BI@ohanagp.com>
**Cc:** Glenn Norris <glenn@ohanagp.com>; Justin Drummond <Justin.Drummond@ohanagp.com>
**Subject:** Time off for FMLA

@IT.Support @IT.BI Just so you know, I am taking FMLA time for leave. Please allow for extra time if you need anything from me. If there is a critical issue involving security or other imminent risk. Contact Darren. Darren will have additional instructions that will apply if necessary.

@Rich Hartman Please let me know how you want the time tracked. I assume the hours already worked will apply directly to this week? pay period? Please provide me with the written policy explaining how it is used against existing hours.

This message may include text created with the help of natural language processing.

 Book time to meet with me

**Ryan Wagner**
**Vice President of IT**
**Ohana Growth Partners, LLC**



office 410-252-8058 x109
212 W. Padonia Rd
Timonium, MD 21093
www.planetfitness.com

**"Culture eats strategy for breakfast"**

5 / 5

## Ryan Dillon-Capps

**From:**     **Ryan Dillon-Capps**
**Sent:**     **Thursday, June 13, 2024 4:26 PM**
**To:**       **Justin Drummond**
**Subject:**   **Fw: Please Respond Quickly**

This message may include text created with the help of natural language processing.

 Book time to meet with me

**Ryan Dillon-Capps**
**Vice President of IT**
**Ohana Growth Partners, LLC**

**OHANA**
**Growth Partners**

office 410-252-8058 x109
212 W. Padonia Rd
Timonium, MD 21093

www.planetfitness.com

**"Culture eats strategy for breakfast"**

**From:** Ryan Dillon-Capps <Ryan.DillonCapps@ohanagp.com>
**Sent:** Thursday, June 13, 2024 3:10 PM
**To:** Phil Leadore <pleadore@hartmanadvisors.com>; Dan Levett <dlevett@hartmanadvisors.com>
**Subject:** Please Respond Quickly

We have a situation. Can you confirm that you have an agreement signed and are not compelled to report? I need assistance, and you might be the only one with pen to paper who can without incurring liability for Ohana.

Please - I have sent my team home for their safety, and that is all I can say until you confirm.

This message may include text created with the help of natural language processing.

 Book time to meet with me

**Ryan Dillon-Capps**
**Vice President of IT**
**Ohana Growth Partners, LLC**

**OHANA**
**Growth Partners**

office 410-252-8058 x109
212 W. Padonia Rd
Timonium, MD 21093
www.planetfitness.com

1 / 2

"Culture eats strategy for breakfast"

July 1 @ 838AM: Origional Reconsider Exhibits Trimmed - No laws, Cases, Publications    Page # 87 of 185    Exhibit 101-B

Hurson District Exhibit 16-2    Exhibit Page # 87 of 185    EXHIBIT 316-2



Ryan Wagner <ryan@mxt3.com>

## Urgent FROM ryan.wagner@ohanagp.com
1 message

**Ryan Wagner** <ryan@mxt3.com>                                                    Fri, May 24, 2024 at 9:27 PM
Reply-To: ryan@mxt3.com
To: geoff.vanmaastricht@pfhq.com

As a precautionary measure, I have created you an account as a Global Admin with other roles you will need to manage our environment.

Geoff.PFHQ@ohanagp.com

My number is 703-303-1113

This is my personal email. I can send/receive communications on both emails.

## Ryan Dillon-Capps

| | |
|---|---|
| **From:** | Rolando Pedraza <rpedraza@cieloit.com> |
| **Sent:** | Thursday, June 6, 2024 5:04 PM |
| **To:** | Ryan Wagner |
| **Cc:** | Shannon Anderson; Dante Martinez |
| **Subject:** | Re: PCI DSS 4 Compliance + Best Practices |

> **CAUTION:** This email originated from outside the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Hello Ryan,

First, thank you for sharing all the changes happening in Ohana to enhance security.

I'm aware that Brooks is no longer with Ohana, and I understand the general idea of what you would like to accomplish with me taking on the Global Admin role. However, I would like to have a call with you next week to understand better what it entails and to align our ideas more closely.

What I can say for sure is that this is something Cielo can definitely help you with; I just need to understand better how to achieve the results you're expecting.

Could you please let me know a convenient time for the call next week?

Thanks,

**Rolando Pedraza** Director of Delivery Operations



**T:** 806.503.2181 x 101
**C:** 806.705.7149
**E:** rpedraza@cieloit.com
**W:** www.cieloit.com



*Confidentiality Notice: This message, including any attachments, is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure, or distribution is strictly prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message.*

**From:** Ryan Wagner <Ryan.Wagner@ohanagp.com>
**Sent:** Thursday, June 6, 2024 6:00
**To:** Rolando Pedraza <rpedraza@cieloit.com>
**Cc:** Shannon Anderson <sanderson@cieloit.com>; Dante Martinez <dante.martinez@ohanagp.com>
**Subject:** PCI DSS 4 Compliance + Best Practices

@Rolando Pedraza You may already be aware that we have recently implemented several changes to align with PCI DSS 4 and best practices. These changes include:

- Separating Global Administrator accounts from accounts used for daily tasks

1

- Implementing Emergency Break Glass accounts
- Aligning with least privilege-based assignments

With Baltimore Consulting and Ryan Brooks no longer with us, we need another person to manage a Global Administrator account. Given your position as Director of Managed Services, I believe you are an ideal candidate. If you and Shannon agree, here are the requirements for this role:

1. **FIDO 2 Security Key:** We recommend the Thetis Pro FIDO2 Security Key, priced at $29.99. You can purchase it yourself, through Cielo, or we can make arrangements. Thetis Pro FIDO2 Security Key, Two-Factor Authentication NFC Security Key, Dual USB Ports Type A & Type C for Multi-Factor Protection (HOTP)

2. **Familiarity with PCI DSS 4:** PCI DSS 4 Documentation. We should schedule a time to review the impact of PCI DSS 4 on our operations. The new version has expanded the scope and added flexibility, which can be challenging.

3. **Microsoft Best Practices:** The changes in PCI DSS 4 align with current best practices. We need to prepare for several mandatory changes that Microsoft will impose over the next 15 months.

   o Microsoft Best Practices
   o Security Planning
   o Emergency Access Accounts
   o Separation of Global Admin Accounts

Maintaining PCI compliance is crucial because all Planet Fitness locations share the same processor and compliance requirements. A violation by one group affects the entire organization.

Additionally, ensuring redundancy is essential to maintain security and PCI compliance during an unforeseen event. Currently, all Ohana IT operations and our emergency account keys are based in Maryland, which poses a potential issue in the event of a regional disaster. Your geographical location allows us to ensure regional redundancy.

This message may include text created with the help of natural language processing.

 Book time to meet with me

**Ryan Wagner**
**Vice President of IT**
**Ohana Growth Partners, LLC**


office 410-252-8058 x109
212 W. Padonia Rd
Timonium, MD 21093
www.planetfitness.com

**"Culture eats strategy for breakfast"**

2

July 1 @ 838 AM: Origional Reconsider Exhibits Trimmed - No laws, Cases, Publications

Page # 91 of 185

Exhibit 101-B

Friday June 7, 2024

Friday

Friday 5:29 PM

Would you have time on Monday or Tuesday to meet? If your weekend leaves you yearning to work, I can also do something sooner. The topic is PCI DSS 4 compliance. I believe you still have access to our PCI DSS 4 compliance account. It has changed significantly. While it has created new flexibility, it has also expanded what is covered significantly. You can get access to documents here

PCI Security Standards Council – Protect Payment Data with Industry-driven Security Standards, Training, and Programs

We have taken several steps to ensure we have and maintain PCI DSS 4 compliance, and I would like to review some of these items with you because I believe that you may be a good candidate to hold on to a special type of account that is reserved for emergencies. There are two of these accounts and if you are open to having a conversation first then I believe we can review all relevant information so that you can make an informed decision if the time ever comes that this account needs to be used.

This does involve our ability to maintain our PCI DSS 4 compliance and knowledge of who possesses the items and access to this account should not be shared with anyone outside of the criteria to which the use of this account would apply. There are mechanisms in place that would alert people needed to contact you if such a situation occurred, or if you learned about an applicable situation then you would know when to act, who to contact, and how to proceed.

Tuesday June, 11, 2024

Tuesday

 Karen Cepress  Tuesday 11:48 AM

Hi Ryan, sorry for the delay in replying. I am in Tennessee this week. I'm happy to meet later this afternoon if you

are available. My calendar is open at 3pm.

Tuesday 6:54 PM

Sorry, the day has escaped me

I am working on something, let me sync with you later this week

July 1 @ 838AM: Origional Reconsider Exhibits Trimmed - No laws, Cases, Publications

Page # 92 of 185

Exhibit 101-B



Justin Drummond Tuesday 07:03

Ok. Thanks for the update

Tuesday June 11, 2024

Tuesday 6:36 PM

Do you have a time frame on when you will be ready to talk about PCI Compliance to make sure we can check things off? There are three primary qualifications. 1) responsible for PCI Compliance || 2) Knowledgeable || 3) this is really #1 but I want to emphasize responsible -- duress is complex. Obviously, if you have a gun to your head, then actions taken that result or subsequently result in PCI violations are justifiable as a legal defense. However, economic or emotional duress or non-lethal physical duress is not black and white. For you to claim duress it has to be 1) involuntary 2)no reasonable alternative 3) immediate and imminent WITH no opportunity to seek help or refuse compliance 4) duress must be linked directly or indirectly... for example. Glenn and Victor were making coercive threats linked do it, or give it to me and I will. While you ordered me to give it to you and at the time it was reasonable under the circumstances that you stated in the email if you can't give it to them so they can break PCI compliance then give it to me. A reasonable person can infer the intention. However, you did not threaten me, and by demonstrating knowledge of PCI compliance and fully understanding what your responsibility means legally, I am hoping that this will justify my action to give you one of the broken glass accounts. The break glass account is different than an account for you, which would require me to apply the least privilege, and I have yet to figure out how the president would use global admin in the performance of their duties.

Regardless of what one believes to be true, this does not give them a do anything pass because they disagree or believe differently. This is not the same as good faith, which I strongly recommend you become familiar with. Not only for this situation, but every leader and business person needs to understand this concept extremely well. The moment we engage in an act that demonstrates we are no longer acting in good faith there is a compounding effect and this is why when a business like Cielo found out that their CFO had engaged in something questionable it was imperative that they act immediately. Not engaging in acts that demonstrate good faith puts everyone at risk, and that is why they removed him temporarily, notified key people, and hired qualified outside professionals who could ensure they knew what had or hadn't been done. Kris Kroona, their current CFO, is a full time CFO for things like this and I think the forensic accountant that is still there was brough with him. Even though nothing was found --- both of them are still there over a year later, and in their situation they had to do and have to continue doing all of them.

In the case of PCI compliance, you need to be able to explain the logical process that leads to your decision. Even if you are wrong, the first question that will be asked is for you to justify your decision. Failure to do this, will put you and possibly Ohana at risk for other decisons made and every decision that fails to meet this standard will exponentially become a more stringent level to meet until nothing you have ever said or done is viewed differently and there is no chance that you can justify anything anymore

For PCI compliance, you could face legal liabilities by all affected parties. In the case of our PCI account -- you would be PERSONALLY responsible and action taken against you as an individual. Even if you had no idea that X Y Z had happened or would happen. However, under our realistic context, you would not sustain that tree falling

Also, just for the first action -- even with normal circumsatnces, willful misconduct or fraud are just the start of legal issus

So #3 is basically... your ability to sustain yourself against duress or other risks to you that you must do until you can no longer do so safely

this is why I can't give it to Darren

it would be unfair to him and realistically I don't think he would be able to perform that duty while under duress

Justin Drummond  Tuesday 7:46 PM

I am traveling tomorrow through the end of the week. We can work on the iPad next week



Ohana Growth Partners, LLC
212 W. Padonia Rd.
Timonium, MD 21093

June 13, 2024

Dear Ryan,

Effective immediately, June 13, 2024, you are suspended from your employment
with Ohana Growth Partners until further notice. This is due to your
insubordination and failure to comply with directives from superiors, described
in part to you in the email sent to you earlier today, and continuing since you
received the email. The suspension is without pay. During the suspension, you
will continue to have access to your medical benefits.

During this period of suspension, you are relieved of all of your duties and
are not authorized to work on behalf of the company or have any electronic,
internet, physical, or other access to or connection with any company property
or systems, including but not limited to company IT systems and equipment. In
addition, you are not authorized to enter any company facility.

You will be notified in writing of any further changes.

Sincerely,

Rich Hartman
VP of People and Culture

## Ryan Dillon-Capps

**From:Justin Drummond**
**Sent: Thursday, June 13, 2024 9:54 PM**
**To:   Ryan Dillon-Capps; Rich & LeeAnn; Glenn Norris; Karen Debus; Rich Hartman**
**SubjeRe: Ohana - Suspension**

Ryan:

Your assertions that Rich Hartman did not suspend you or lacked the authority to suspend you are both incorrect and baseless.

For the avoidance of any doubt by you, I incorporate into this email Rich Hartman's email to you today notifying you of your suspension and hereby confirm that you were suspended upon receipt of that email. Please follow fully the directives in that suspension notification.

I also hereby confirm that you have been directed by me to immediately comply with Rich Hartman's email of 9:01 am this morning by immediately adding Phil Leodore from HEA as a Global Administrator regardless of whether he has confirmed any qualifications or involvement in the PCI DSS v4 review.

Thank You,

*Please excuse any typos. Email sent from iPhone*

**Justin Drummond**
**President**
**Ohana Growth Partners, LLC**


office 410-252-8058 x214
212 W  Padonia Rd
Timonium, MD 21093

www.planetfitness.com

**"Culture eats strategy for breakfast"**

---

**From:** Ryan Dillon-Capps <Ryan.DillonCapps@ohanagp.com>
**Sent:** Thursday, June 13, 2024 8:00:52 PM
**To:** Rich & LeeAnn <richnlee@gmail.com>; Glenn Norris <glenn@ohanagp.com>; Karen Debus
<karen.debus@ohanagp.com>; Rich Hartman <Rich.Hartman@ohanagp.com>
**Cc:** Justin Drummond <Justin.Drummond@ohanagp.com>
**Subject:** Re: Ohana - Suspension

@Rich Hartman, I am writing to follow up to your attempt to submit a suspension letter to me.

Given the current circumstances and the ongoing investigation, I do not recognize your authority to issue a suspension at this time. This matter has been discussed with Victor, Lynne, and Justin.  Lynne and Victor have

1 / 2

empowered Justin with full authority to handle this situation. We have reviewed the scope of the situation in detail, and it is clear that any such actions must be halted immediately.

Please refrain from any further attempts to issue suspensions or take similar actions until this matter is fully resolved.

This message may include text created with the help of natural language processing.

📫 Book time to meet with me

**Ryan Dillon-Capps**
**Vice President of IT**
**Ohana Growth Partners, LLC**



office 410-252-8058 x109
212 W. Padonia Rd
Timonium, MD 21093
www.planetfitness.com

**"Culture eats strategy for breakfast"**

**From:** Rich & LeeAnn <richnlee@gmail.com>
**Sent:** Thursday, June 13, 2024 8:47 PM
**To:** Ryan Dillon-Capps <ryan.dilloncapps@ohanagp.com>; Glenn Norris <glenn@ohanagp.com>; Karen Debus <karen.debus@ohanagp.com>
**Subject:** Ohana - Suspension

Some people who received this message don't often get email from richnlee@gmail.com. Learn why this is important

**CAUTION:** This email originated from outside the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Ryan,
I am sorry to have to send this to you via my personal email account but since you have disabled my office email account this will have to suffice. I will also put a physical copy of this letter in the mail tomorrow. It will be directed to your address on file: 1334 Maple Avenue Essex, MD 21221. If this is not the correct address, please advise and provide the correct address.

Please find attached an official copy of your suspension from Ohana Growth Partners pending further notice.

Sincerely,

Rich Hartman
Vice President of Human Resources
Ohana Growth Partners, LLC.

2 / 2

Re: Case No. C-03-CV-244-002264
Baltimore County Circuit Court
TRO and Preliminary Injunction
Ohana Growth Partners



Dear Judge,
    ↳ Trustee

I am writing to bring to your attention urgent matters concerning my current legal situation and request immediate judicial intervention regarding a Temporary Restraining Order (TRO) and Preliminary Injunction that conflicts with legal and compliance obligations.

I have been dealing with significant issues related to my employment with Ohana Growth Partners, which have been exacerbated by recent events. I had secured three strong referrals for legal assistance, but they conflicted. I was starting the process to work with the fourth referral, but I found out at midnight that they couldn't help me due to a family bereavement and a pre-scheduled conference. Consequently, they refunded my retainer, leaving me without legal representation at a critical time.

Currently, I am facing a situation where compliance with the TRO and Preliminary Injunction would require me to violate PCI compliance standards, thereby putting me in a position where I must choose between violating federal compliance requirements or being held in contempt of court. The opposing counsel has informed me that I must comply by noon today, June 18, 2024. I read this demand at about a quarter to 11, which eventually led me to write this letter and rush to the courthouse.

On June 13, 2024, at 7:12 AM, I notified the CFO, Head of HR, and President of Ohana Growth Partners that I was commencing my FMLA leave due to PTSD. My FMLA status was last confirmed and validated by the HR Generalist on May 23, 2024. Despite this, at 9:01 AM on the same day, I received a demand letter requiring me to return to work and I had 6 hours to do it—or else. In response, I issued a cease and desist letter, which is included in petitioner Exhibit B, clarifying that the cease and desist pertained to my right to FMLA leave.

The basis for my suspension, as claimed by my employer, consists of two parts:

1. They misconstrued my cease and desist letter as a refusal to comply with work demands, despite its clear reference to FMLA leave.
2. They demanded that I grant Global Administrator access, which would be a violation of PCI compliance. The company failed to inform the court of this crucial compliance issue and the proactive measures I had taken to grant access to the President under PCI compliance guidelines.

I have over 25 years of experience in IT and am responsible for ensuring PCI compliance within the organization. Granting Global Administrator access without ensuring compliance would be a serious violation of these standards. Despite providing several alternatives and options to my

employer, they have persisted in demanding actions that would compromise compliance and security.

Furthermore, the company has engaged in retaliatory actions, including placing my IT Coordinator on administrative leave shortly after receiving the cease and desist letter. This retaliation appears to be in direct response to my assertion of FMLA rights.

Due to these pressing issues and the sudden unavailability of my legal counsel, I am seeking immediate judicial relief to address the following:

1. Clarification and potential modification of the TRO and Preliminary Injunction to ensure compliance with PCI standards without subjecting me to contempt of court.
2. Protection against retaliation for exercising my FMLA rights.
3. Adequate time to secure new legal representation to address these urgent matters.

All supporting documentation and communications are available to substantiate my claims. I printed out as many as I could before rushing over here today.

Thank you for your prompt attention to this matter.

With gratitude and appreciation,
Ryan Wagner
ryan@mxt3.com
1334 Maple Ave
Essex MD
21221

**DENIED**

The court has reviewed the Defendant's correspondence and will view it as a request, pursuant to Md. Rule 15-504(f) to dissolve or modify the 6.17.2014 TRO. The correspondence does not provide sufficient specificity to permit the court to modify the TRO at this time. The court will consider the Defendant's requests at the hearing scheduled for 6.26.2024.

06/21/2024 11:40:18 AM

Judge Keith R. Truffer

E-FILED; Baltimore County Circuit Court
Docket: 6/20/2024 12:24 PM; Submission: 6/20/2024 12:24 PM
Envelope: 16909122

| | |
|---|---|
| OHANA GROWTH PARTNERS, LLC | IN THE |
| *Plaintiff,* | CIRCUIT COURT |
| vs. | FOR |
| RYAN DILLON-CAPPS | BALTIMORE COUNTY |
| *Defendant.* | FILE NO.: C-03-CV-24-002264 |

### ORDER TO APPEAR AND SHOW CAUSE

Upon consideration of Ohana's Petition for Show Cause Order and Constructive Civil Contempt, and for good cause shown, it is this    21st of June, 2024

ORDERED that the Petition be, and hereby is, GRANTED; and it is further

ORDERED that Ohana shall appear before the Circuit Court for Baltimore County, Maryland on the 26th day of June, 2024, at 9 a.m.    for a hearing at which Ryan Dillon-Capps shall show cause why they should not be held in contempt of this Court's June 17, 2024 Temporary Restraining Order.

Judge Keith R. Truffer

!19447\000004\4867-4205-1017.v2



Ryan Wagner <ryan@mxt3.com>

## Fwd: [EXTERNAL] Ohana Growth Partners, LLC v. Ryan Dillon-Capps - C-03-CV-24-2264

**Brennen, Robert S.** <RBRENNEN@milesstockbridge.com>    Mon, Jun 24, 2024 at 6:58 PM
To: "ryan@mxt3.com" <ryan@mxt3.com>

Sent from my iPhone

Begin forwarded message:

> **From:** Lauren Prinkey <Lauren.Prinkey@mdcourts.gov>
> **Date:** June 21, 2024 at 12:04:28 EDT
> **To:** "Brennen, Robert S." <RBRENNEN@milesstockbridge.com>, "Frenkil, Steven D."
> <sfrenkil@milesstockbridge.com>, ryan@mxt3.com
> **Subject: [EXTERNAL] Ohana Growth Partners, LLC v. Ryan Dillon-Capps - C-03-CV-24-2264**

**[EXTERNAL]**

Good afternoon,

Please see the attached orders from the court.

Thank you,

Lauren

**Lauren Prinkey**

Judicial Assistant to the Honorable Keith R. Truffer

Circuit Court for Baltimore County

Confidentiality Notice:

This e-mail, including any attachment(s), is intended for receipt and use by the intended addressee(s), and may contain confidential and privileged information. If you are not an intended recipient of this e-mail, you are hereby notified that any unauthorized use or distribution of this e-mail is strictly prohibited, and requested to delete this communication and its attachment(s) without making any copies thereof and to contact the sender of this e-mail immediately. Nothing contained in the body and/or header of this e-mail is intended as a signature or intended to bind the addressor or any person represented by the addressor to the terms of any agreement that may be the subject of this e-mail or its attachment(s), except where such intent is expressly indicated.

Any federal tax advice provided in this communication is not intended or written by the author to be used, and cannot be used by the recipient, for the purpose of avoiding penalties which may be imposed on the recipient by the IRS. Please contact the author if you would like to receive written advice in a format which complies with IRS rules and may be relied upon to avoid penalties.

Secure Upload/Download files click here.

 **1942_001.pdf**
168K



Ryan Wagner <ryan@mxt3.com>

## FW: [EXTERNAL] Notification of Service for Case: C-03-CV-24-002264, Ohana Growth Partners, LLC vs. Ryan Dillon-Capps for filing Writ/Summons/Pleading – Electronic Service, Envelope Number: 16870699

Ryan Wagner <ryan@mxt3.com>                                        Tue, Jun 18, 2024 at 5:30 PM
Reply-To: ryan@mxt3.com
To: "Brennen, Robert S." <RBRENNEN@milesstockbridge.com>

I am writing to confirm that the share link to the encrypted envelope and file should have been received. The password has been texted to you separately for security purposes.

In my haste, I did not request a copy of my submission from the clerk. It was signed, and today's chamber judge was named. Due to the urgency of the situation, I was rushing, but assuming everything was printed correctly, the attachment should be what the judge has. I apologize for any delay. Earlier in the week, I informed Justin and Glenn that I could no longer sustain the current situation and required assistance. Glenn mentioned what I assume to be Hartman Executive Advisors. My recent email to Mr. Leadore reiterates my openness to support.

I should clarify that the plaintiffs are not technical experts, and their response to my concerns has consistently been, "I disagree." Throughout this process, I have provided numerous options and proactively suggested solutions to maintain PCI compliance while accommodating their requests. My current state is barely functional, and my wife, a licensed therapist with extensive trauma counseling experience, is primarily taking care of me. I have been in and out of a non-functional state for days now, and leading up to this, I have repeatedly requested contact information from their attorney. When I asked Holly Butler, her instruction was that I go through Ohana, which is confusing given that you are all part of the same law firm. They have refused to provide me with your information, and I had to obtain it from the filing.

There have been two formal written requests for your information because I want this to end. They persist, and when not targeting me, they go after Darren, Ann, and the help desk. Ann requested time off for mental health reasons yesterday. When I inquired about her well-being, she disclosed that she had experienced a panic attack but did not recognize it until she saw a doctor.

On Thursday, I sent emails about Rich's actions against Darren, spoke with Victor and Lynne, and had a lengthy text chain with Justin. At no point did anyone say I was suspended, and I believed Rich was dangerous for hours. I sent my wife away, I sent Ann home, and I reached out to two senior directors for backup before someone responded to me. I would greatly appreciate anything you could do to help us negotiate an end to this. The only condition that is not acceptable is that anyone is left unprotected, and in the last 30 days alone, it has been clearly documented in writing that they are also targeting Ann, Darren, and Cielo. There are more examples stretching back even further for all of us.

Thank you for your attention to this matter. I am doing the best I can, and technically, since I said I would tell them when I was back, my FMLA leave is still active. If they believe something else to be true, please inform them that as a result of the escalated hostility, I will be on FMLA leave until further notice. The statement about there being no other administrators is incorrect. LeeAnn continues to hold the role of Billing Administrator, and the support team continues to hold the privileged role of User Administrator. Since Darren was removed, there have been some gaps in Azure administration. I would like to provide this access to Dante Martinez, who is the Help Desk Manager. The gap in



Ryan Wagner <ryan@mxt3.com>

## FW: [EXTERNAL] Notification of Service for Case: C-03-CV-24-002264, Ohana Growth Partners, LLC vs. Ryan Dillon-Capps for filing Writ/Summons/Pleading – Electronic Service, Envelope Number: 16870699

9 messages

**Brennen, Robert S.** <RBRENNEN@milesstockbridge.com>                    Tue, Jun 18, 2024 at 8:39 AM
To: Ryan Wagner <ryan@mxt3.com>
Cc: "Frenkil, Steven D." <sfrenkil@milesstockbridge.com>, "Hoffberger, Victoria (Tory)" <vhoffberger@milesstockbridge.com>

Per the attached, a hearing on Ohana Growth Partners, LLC's Motion for Preliminary Injunction is set for next Wednesday, June 26, 2024 from 9 to 11 a.m.

While Ohana is certain that you are abundantly familiar with the actions necessary to bring you into compliance with the Temporary Restraining Order entered yesterday, here are the steps that you should take:

1. Create an account in Ohana's Microsoft 365 tenant, pleadore@ohanagp.com. Add the account into the Global Administrators group and send the password to pleadore@hartmanadvisors.com via a secure email. If you do not have access to send a secure email, you should send the password to me via text at 443-956-6458.
2. Provide pleadore@ohanagp.com with owner level rights to all Azure subscription plans.
3. Provide the root level administrator account password in GoDaddy to pleadore@hartmanadvisors.com via a secure email. If you do not have access to send a secure email, you should send the password to me via text at 443-956-6458. You should remove all multi-factor authentication apps, phone numbers, and/or email addresses associated with the root account.
4. Once accounts have been created in Ohana's Microsoft 365 tenant and the root level password provided for the GoDaddy account, refrain from accessing or making configuration changes to their Microsoft 365 and GoDaddy accounts.

You should take all the above actions this morning so that you are in compliance with the Temporary Restraining Order by 12 p.m. today. If you fail to do so Ohana will have no choice but to file additional papers with the Court seeking to have you held in contempt of the Order and will ask that the Court take up the issue of contempt during the hearing on June 26<sup>th</sup>.



**Robert Brennen** | *Principal*

Miles & Stockbridge

direct: +1 (410) 385-3653

**From:** no-reply@efilingmail.tylertech.cloud <no-reply@efilingmail.tylertech.cloud>
**Sent:** Monday, June 17, 2024 3:42 PM
**To:** Brennen, Robert S. <RBRENNEN@MilesStockbridge.com>
**Subject:** [EXTERNAL] Notification of Service for Case: C-03-CV-24-002264, Ohana Growth Partners, LLC vs. Ryan Dillon-Capps for filing Writ/Summons/Pleading – Electronic Service, Envelope Number: 16870699

**[EXTERNAL]**



# Notification of Service

Case Number: C-03-CV-24-002264
Case Style: Ohana Growth Partners, LLC vs. Ryan Dillon-Capps
Envelope Number: 16870699

This is a notification of service for the filing listed. Please click the link below to retrieve the submitted document.

| Filing Details | |
|---|---|
| **Case Number** | C-03-CV-24-002264 |
| **Case Style** | Ohana Growth Partners, LLC vs. Ryan Dillon-Capps |

| | Ohana Growth Partners, LLC: |
|---|---|
| **Service Contacts** | Robert Brennen (rbrennen@milesstockbridge.com) |
| | Steven Frenkil (sfrenkil@milesstockbridge.com) |
| | Victoria Klein (vklein@milesstockbridge.com) |
| | Kim Edwards (kjedwards@milesstockbridge.com) |

| Document Details | |
|---|---|
| **Served Document** | Download Document |

This link is active for 60 days. To access this document, you will be required to enter your email address. Click here for more information.

---

Confidentiality Notice:

This e-mail, including any attachment(s), is intended for receipt and use by the intended addressee(s), and may contain confidential and privileged information. If you are not an intended recipient of this e-mail, you are hereby notified that any unauthorized use or distribution of this e-mail is strictly prohibited, and requested to delete this communication and its attachment(s) without making any copies thereof and to contact the sender of this e-mail immediately. Nothing contained in the body and/or header of this e-mail is intended as a signature or intended to bind the addressor or any person represented by the addressor to the terms of any agreement that may be the subject of this e-mail or its attachment(s), except where such intent is expressly indicated.

Any federal tax advice provided in this communication is not intended or written by the author to be used, and cannot be used by the recipient, for the purpose of avoiding penalties which may be imposed on the recipient by the IRS. Please contact the author if you would like to receive written advice in a format which complies with IRS rules and may be relied upon to avoid penalties.

---

Secure Upload/Download files click here.

 **2024-06-17 CC-008 NOTICE OF HEARINGTRIAL 6-26.pdf**
94K

direct: +1 (410) 385-3653

[Quoted text hidden]
[Quoted text hidden]

---

**Ryan Wagner** <ryan@mxt3.com>                                    Tue, Jun 18, 2024 at 1:25 PM
Reply-To: ryan@mxt3.com
To: "Brennen, Robert S." <RBRENNEN@milesstockbridge.com>

I just left the courthouse after providing a letter to the clerk for the chambers judge. My lawyer has a death in the family and is at a preschedules conference next week and we are looking for another attorney who can received to this urgency issue. The judge also received documentation showing the suspension was illegal and the TRO is asking me to something illegal.

Please allow time for the judge to review.
[Quoted text hidden]

---

**5 attachments**



**image004.png**
13K



**image001.png**
2K



**image004.png**
13K

Are you going to send me a copy of what you presented to the Court?



**Robert Brennen** | *Principal*

Miles & Stockbridge

direct: +1 (410) 385-3653

**From:** Ryan Wagner <ryan@mxt3.com>
**Sent:** Tuesday, June 18, 2024 1:26 PM
**To:** Brennen, Robert S. <RBRENNEN@MilesStockbridge.com>
**Subject:** Re: [EXTERNAL] Notification of Service for Case: C-03-CV-24-002264, Ohana Growth Partners, LLC vs. Ryan Dillon-Capps for filing Writ/Summons/Pleading – Electronic Service, Envelope Number: 16870699

**[EXTERNAL]**

I just left the courthouse after providing a letter to the clerk for the chambers judge. My lawyer has a death in the family and is at a preschedules conference next week and we are looking for another attorney who can received to this urgency issue. The judge also received documentation showing the suspension was illegal and the TRO is asking me to something illegal.

Please allow time for the judge to review.

On Tue, Jun 18, 2024, 1:12 PM Brennen, Robert S. <RBRENNEN@milesstockbridge.com> wrote:

> As neither I nor Mr. Leadore have received the passwords as contemplated below we will be moving forward with contempt proceedings.
>
> Robert Brennen | Principal

**Cc:** Frenkil, Steven D. <sfrenkil@MilesStockbridge.com>; Hoffberger, Victoria (Tory) <vhoffberger@milesstockbridge.com>
**Subject:** FW: [EXTERNAL] Notification of Service for Case: C-03-CV-24-002264, Ohana Growth Partners, LLC vs. Ryan Dillon-Capps for filing Writ/Summons/Pleading – Electronic Service, Envelope Number: 16870699
**Importance:** High

Per the attached, a hearing on Ohana Growth Partners, LLC's Motion for Preliminary Injunction is set for next Wednesday, June 26, 2024 from 9 to 11 a.m.

While Ohana is certain that you are abundantly familiar with the actions necessary to bring you into compliance with the Temporary Restraining Order entered yesterday, here are the steps that you should take:

1. Create an account in Ohana's Microsoft 365 tenant, pleadore@ohanagp.com. Add the account into the Global Administrators group and send the password to pleadore@hartmanadvisors.com via a secure email. If you do not have access to send a secure email, you should send the password to me via text at 443-956-6458.
2. Provide pleadore@ohanagp.com with owner level rights to all Azure subscription plans.
3. Provide the root level administrator account password in GoDaddy to pleadore@hartmanadvisors.com via a secure email. If you do not have access to send a secure email, you should send the password to me via text at 443-956-6458. You should remove all multi-factor authentication apps, phone numbers, and/or email addresses associated with the root account.
4. Once accounts have been created in Ohana's Microsoft 365 tenant and the root level password provided for the GoDaddy account, refrain from accessing or making configuration changes to their Microsoft 365 and GoDaddy accounts.

You should take all the above actions this morning so that you are in compliance with the Temporary Restraining Order by 12 p.m. today. If you fail to do so Ohana will have no choice but to file additional papers with the Court seeking to have you held in contempt of the Order and will ask that the Court take up the issue of contempt during the hearing on June 26th.

As stated in my June 14, 2024 email, Ohana is open to a negotiated resolution to the claims it has asserted in its Complaint and any claims that you believe you may have, but will not entertain any discussions until you are in compliance with the Temporary Restraining Order. If you bring yourself into compliance and are interested in discussing a resolution, it is possible that the matter could be resolved in advance of the June 26th hearing

**From:** no-reply@efilingmail.tylertech.cloud <no-reply@efilingmail.tylertech.cloud>
**Sent:** Monday, June 17, 2024 3:42 PM
**To:** Brennen, Robert S. <RBRENNEN@MilesStockbridge.com>
**Subject:** [EXTERNAL] Notification of Service for Case: C-03-CV-24-002264, Ohana Growth Partners, LLC vs. Ryan Dillon-Capps for filing Writ/Summons/Pleading – Electronic Service, Envelope Number: 16870699

**[EXTERNAL]**

# Notification of Service

[Quoted text hidden]

[Quoted text hidden]
[Quoted text hidden]

Ryan Wagner <ryan@mxt3.com>                                        Tue, Jun 18, 2024 at 1:41 PM
Reply-To: ryan@mxt3.com
To: "Brennen, Robert S." <RBRENNEN@milesstockbridge.com>

I am in my car, and I definitly can give you the letter. I do not know the proceedure for the rest of it.

I would have sent it you soon sooner, but I have been non-functioning for most of the time since the suspension. I do not think you would have filed the case at all if you had been given even the full emails where the make coercive threats and supporting emails and texts. For example, the cease and desist was because I had been on FMLA leave time for less than 2 hours before the 6hour demand letter to work or else. I cant think of a reason to not give it to you because it was supposed to be our filing against multiple people at Ohana in our own TRO, preliminary injunction, and Peace Order along with other documents supporting what we are requesting.

Please give me a moment to stop shaking and get to a computer
[Quoted text hidden]

**2 attachments**



**image001.png**
2K

· · In my haste, I did not request a copy of my submission from the clerk. It was signed, and today's chamber judge was named. Due to the urgency of the situation, I was rushing, but assuming everything was printed correctly, the attachment should be what the judge has. I apologize for any delay. Earlier in the week, I informed Justin and Glenn that I could no longer sustain the current situation and required assistance. Glenn mentioned what I assume to be Hartman Executive Advisors. My recent email to Mr. Leadore reiterates my openness to support.

I should clarify that the plaintiffs are not technical experts, and their response to my concerns has consistently been, "I disagree." Throughout this process, I have provided numerous options and proactively suggested solutions to maintain PCI compliance while accommodating their requests. My current state is barely functional, and my wife, a licensed therapist with extensive trauma counseling experience, is primarily taking care of me. I have been in and out of a non-functional state for days now, and leading up to this, I have repeatedly requested contact information from their attorney. When I asked Holly Butler, her instruction was that I go through Ohana, which is confusing given that you are all part of the same law firm. They have refused to provide me with your information, and I had to obtain it from the filing.

There have been two formal written requests for your information because I want this to end. They persist, and when not targeting me, they go after Darren, Ann, and the help desk. Ann requested time off for mental health reasons yesterday. When I inquired about her well-being, she disclosed that she had experienced a panic attack but did not recognize it until she saw a doctor.

On Thursday, I sent emails about Rich's actions against Darren, spoke with Victor and Lynne, and had a lengthy text chain with Justin. At no point did anyone say I was suspended, and I believed Rich was dangerous for hours. I sent my wife away, I sent Ann home, and I reached out to two senior directors for backup before someone responded to me. I would greatly appreciate anything you could do to help us negotiate an end to this. The only condition that is not acceptable is that anyone is left unprotected, and in the last 30 days alone, it has been clearly documented in writing that they are also targeting Ann, Darren, and Cielo. There are more examples stretching back even further for all of us.

Thank you for your attention to this matter. I am doing the best I can, and technically, since I said I would tell them when I was back, my FMLA leave is still active. If they believe something else to be true, please inform them that as a result of the escalated hostility, I will be on FMLA leave until further notice. The statement about there being no other administrators is incorrect. LeeAnn continues to hold the role of Billing Administrator, and the support team continues to hold the privileged role of User Administrator. Since Darren was removed, there have been some gaps in Azure administration. I would like to provide this access to Dante Martinez, who is the Help Desk Manager. The gap in understanding what the Global Administrator role does underscores how their statements do not qualify as expert testimony.

Thank you for your attention to this matter.


with gratitude and appreciation,

RDC
[Quoted text hidden]

---

**Brennen, Robert S.** <RBRENNEN@milesstockbridge.com>                    Mon, Jun 24, 2024 at 1:23 PM
To: "ryan@mxt3.com" <ryan@mxt3.com>
Cc: "Frenkil, Steven D." <sfrenkil@milesstockbridge.com>, "Hoffberger, Victoria (Tory)" <vhoffberger@milesstockbridge.com>


As you have seen, the Court rejected your assertions that PCI compliance issues prevent you from complying with the

ii.   Provide pleadore@ohanagp.com with owner level rights to all Azure subscription plans.

iii.   Provide the root level administrator account password in GoDaddy to pleadore@hartmanadvisors.com via a secure email. If you do not have access to send a secure email, you should send the password to me via text at 443-956-6458. You should remove all multi-factor authentication apps, phone numbers, and/or email addresses associated with the root account.

iv.   Once accounts have been created in Ohana's Microsoft 365 tenant and the root level password provided for the GoDaddy account, refrain from accessing or making configuration changes to their Microsoft 365 and GoDaddy accounts.

Note that this provision is non-negotiable and cannot be subject to or held up by any requests by you for information from or about Mr. Leadore. You perform the steps/actions as stated; period.

2. You send an email to Ms. Lauren Prinkey, Judicial Assistant to the Honorable Keith R. Truffer, cc'ing me and my colleagues Mr. Frenkil and Ms. Hoffberger, and asking her to advise the Court that you consent to the entry of the preliminary injunction.

Once we receive confirmation from Mr. Leadore that he has obtained Global Administration rights in Ohana's Microsoft 365, owner rights to all Azure subscription plans and administrative control over the GoDaddy Account, Ohana will:

1. Withdraw its motion to have you held in contempt of the TRO;
2. Request that the Court cancel the scheduled June 26th hearing as moot and unnecessary; and
3. Pause the litigation for 30 days in order to provide an opportunity for your situation to stabilize and for you and Ohana to attempt to negotiate an end to the litigation.

**Time is of the essence. If you do not complete the four steps in Item 1 by 5:30 p.m. today the entire proposal is off the table.**



**Robert Brennen** | *Principal*

Miles & Stockbridge

direct: +1 (410) 385-3653

**From:** Ryan Wagner <ryan@mxt3.com>
Sent: Tuesday, June 18, 2024 5:30 PM

In my haste, I did not request a copy of my submission from the clerk. It was signed, and today's chamber judge was named. Due to the urgency of the situation, I was rushing, but assuming everything was printed correctly, the attachment should be what the judge has. I apologize for any delay. Earlier in the week, I informed Justin and Glenn that I could no longer sustain the current situation and required assistance. Glenn mentioned what I assume to be Hartman Executive Advisors. My recent email to Mr. Leadore reiterates my openness to support.

I should clarify that the plaintiffs are not technical experts, and their response to my concerns has consistently been, "I disagree." Throughout this process, I have provided numerous options and proactively suggested solutions to maintain PCI compliance while accommodating their requests. My current state is barely functional, and my wife, a licensed therapist with extensive trauma counseling experience, is primarily taking care of me. I have been in and out of a non-functional state for days now, and leading up to this, I have repeatedly requested contact information from their attorney. When I asked Holly Butler, her instruction was that I go through Ohana, which is confusing given that you are all part of the same law firm. They have refused to provide me with your information, and I had to obtain it from the filing.

There have been two formal written requests for your information because I want this to end. They persist, and when not targeting me, they go after Darren, Ann, and the help desk. Ann requested time off for mental health reasons yesterday. When I inquired about her well-being, she disclosed that she had experienced a panic attack but did not recognize it until she saw a doctor.

On Thursday, I sent emails about Rich's actions against Darren, spoke with Victor and Lynne, and had a lengthy text chain with Justin. At no point did anyone say I was suspended, and I believed Rich was dangerous for hours. I sent my wife away, I sent Ann home, and I reached out to two senior directors for backup before someone responded to me. I would greatly appreciate anything you could do to help us negotiate an end to this. The only condition that is not acceptable is that anyone is left unprotected, and in the last 30 days alone, it has been clearly documented in writing that they are also targeting Ann, Darren, and Cielo. There are more examples stretching back even further for all of us.

Thank you for your attention to this matter. I am doing the best I can, and technically, since I said I would tell them when I was back, my FMLA leave is still active. If they believe something else to be true, please inform them that as a result of the escalated hostility, I will be on FMLA leave until further notice. The statement about there being no other administrators is incorrect. LeeAnn continues to hold the role of Billing Administrator, and the support team continues to hold the privileged role of User Administrator. Since Darren was removed, there have been some gaps in Azure administration. I would like to provide this access to Dante Martinez, who is the Help Desk Manager. The gap in understanding what the Global Administrator role does underscores how their statements do not qualify as expert testimony.

Thank you for your attention to this matter.


with gratitude and appreciation,

RDC


On Tue, Jun 18, 2024 at 1:41 PM Ryan Wagner <ryan@mxt3.com> wrote:

I am in my car, and I definitly can give you the letter. I do not know the proceedure for the rest of it.


I would have sent it you soon sooner, but I have been non-functioning for most of the time since the suspension. I do

**Robert Brennen** | *Principal*

Miles & Stockbridge

direct: +1 (410) 385-3653

[Quoted text hidden]

---

**Ryan Wagner** <ryan@mxt3.com>                                      Mon, Jun 24, 2024 at 6:54 PM
Reply-To: ryan@mxt3.com
To: "Brennen, Robert S." <RBRENNEN@milesstockbridge.com>
Cc: "Frenkil, Steven D." <sfrenkil@milesstockbridge.com>, "Hoffberger, Victoria (Tory)" <vhoffberger@milesstockbridge.com>,
pleadore@hartmanadvisors.com

@Brennen, Robert S.  I am not ignoring you; I am suffering from severe PTSD complications and doing the best I can.

I am still waiting to see the court's assertion.  How are they being delivered?  May I have a copy?

You mentioned Ms. Lauren Prinkey, Judicial Assistant to the Honorable Keith R. Truffer.  May I have that email address?

I am eager to read the court's assertion and have the email you mentioned in your instructions.

Thank you,
RDC

[Quoted text hidden]

---

**Brennen, Robert S.** <RBRENNEN@milesstockbridge.com>             Mon, Jun 24, 2024 at 7:05 PM
To: "ryan@mxt3.com" <ryan@mxt3.com>
Cc: "Frenkil, Steven D." <sfrenkil@milesstockbridge.com>, "Hoffberger, Victoria (Tory)" <vhoffberger@milesstockbridge.com>,
"pleadore@hartmanadvisors.com" <pleadore@hartmanadvisors.com>

I just forwarded Ms. Prinkney's email that went to you On Friday
Sent from my iPhone

> On Jun 24, 2024, at 18:54, Ryan Wagner <ryan@mxt3.com> wrote:

**[EXTERNAL]**

@Brennen, Robert S.  I am not ignoring you; I am suffering from severe PTSD complications and doing the
best I can

As you have seen, the Court rejected your assertions that PCI compliance issues prevent you from complying with the Temporary Restraining Order and has directed that you appear at the hearing scheduled for Wednesday to explain why you should not be held in contempt of court.

Below you claim that you "would greatly appreciate anything [I] could do to help us negotiate an end to this." I am authorized by Ohana to make the following proposal:

1. You must immediately comply with the 4 steps I communicated a week ago:

i.   Create an account in Ohana's Microsoft 365 tenant, pleadore@ohanagp.com. Add the account into the Global Administrators group and send the password to pleadore@hartmanadvisors.com via a secure email. If you do not have access to send a secure email, you should send the password to me via text at 443-956-6458.

ii.   Provide pleadore@ohanagp.com with owner level rights to all Azure subscription plans.

iii.   Provide the root level administrator account password in GoDaddy to pleadore@hartmanadvisors.com via a secure email. If you do not have access to send a secure email, you should send the password to me via text at 443-956-6458. You should remove all multi-factor authentication apps, phone numbers, and/or email addresses associated with the root account.

iv.   Once accounts have been created in Ohana's Microsoft 365 tenant and the root level password provided for the GoDaddy account, refrain from accessing or making configuration changes to their Microsoft 365 and GoDaddy accounts.

Note that this provision is non-negotiable and cannot be subject to or held up by any requests by you for information from or about Mr. Leadore. You perform the steps/actions as stated; period.

2. You send an email to Ms. Lauren Prinkey, Judicial Assistant to the Honorable Keith R. Truffer, cc'ing me and my colleagues Mr. Frenkil and Ms. Hoffberger, and asking her to advise the Court that you consent to the entry of the preliminary injunction.

Once we receive confirmation from Mr. Leadore that he has obtained Global Administration rights in Ohana's Microsoft 365, owner rights to all Azure subscription plans and administrative control over the GoDaddy Account, Ohana will:

1. Withdraw its motion to have you held in contempt of the TRO;
2. Request that the Court cancel the scheduled June 26th hearing as moot and unnecessary; and
3. Pause the litigation for 30 days in order to provide an opportunity for your situation to stabilize and for you and Ohana to attempt to negotiate an end to the litigation.

[Quoted text hidden]

**3 attachments**


**image001.png**
2K


**external.png**
12K

**action_warning.png**
21K

Re: Case No. C-03-CV-244-002264
Baltimore County Circuit Court
TRO and Preliminary Injunction
Ohana Growth Partners

Dear Judge,

I am writing to bring to your attention urgent matters concerning my current legal situation and request immediate judicial intervention regarding a Temporary Restraining Order (TRO) and Preliminary Injunction that conflicts with legal and compliance obligations.

I have been dealing with significant issues related to my employment with Ohana Growth Partners, which have been exacerbated by recent events. I had secured three strong referrals for legal assistance, but they conflicted. I was starting the process to work with the fourth referral, but I found out at midnight that they couldn't help me due to a family bereavement and a pre-scheduled conference. Consequently, they refunded my retainer, leaving me without legal representation at a critical time.

Currently, I am facing a situation where compliance with the TRO and Preliminary Injunction would require me to violate PCI compliance standards, thereby putting me in a position where I must choose between violating federal compliance requirements or being held in contempt of court. The opposing counsel has informed me that I must comply by noon today, June 18, 2024. I read this demand at about a quarter to 11, which eventually led me to write this letter and rush to the courthouse.

On June 13, 2024, at 7:12 AM, I notified the CFO, Head of HR, and President of Ohana Growth Partners that I was commencing my FMLA leave due to PTSD. My FMLA status was last confirmed and validated by the HR Generalist on May 23, 2024. Despite this, at 9:01 AM on the same day, I received a demand letter requiring me to return to work and I had 6 hours to do it---or else. In response, I issued a cease and desist letter, which is included in petitioner Exhibit B, clarifying that the cease and desist pertained to my right to FMLA leave.

The basis for my suspension, as claimed by my employer, consists of two parts:

1. They misconstrued my cease and desist letter as a refusal to comply with work demands, despite its clear reference to FMLA leave.
2. They demanded that I grant Global Administrator access, which would be a violation of PCI compliance. The company failed to inform the court of this crucial compliance issue and the proactive measures I had taken to grant access to the President under PCI compliance guidelines.

I have over 25 years of experience in IT and am responsible for ensuring PCI compliance within the organization. Granting Global Administrator access without ensuring compliance would be a serious violation of these standards. Despite providing several alternatives and options to my

employer, they have persisted in demanding actions that would compromise compliance and security.

Furthermore, the company has engaged in retaliatory actions, including placing my IT Coordinator on administrative leave shortly after receiving the cease and desist letter. This retaliation appears to be in direct response to my assertion of FMLA rights.

Due to these pressing issues and the sudden unavailability of my legal counsel, I am seeking immediate judicial relief to address the following:

1. Clarification and potential modification of the TRO and Preliminary Injunction to ensure compliance with PCI standards without subjecting me to contempt of court.
2. Protection against retaliation for exercising my FMLA rights.
3. Adequate time to secure new legal representation to address these urgent matters.

All supporting documentation and communications are available to substantiate my claims. I printed out as many as I could before rushing over here today.

Thank you for your prompt attention to this matter.


With gratitude and appreciation,
Ryan Wagner
ryan@mxt3.com
1334 Maple Ave
Essex MD
21221

## Re: FMLA Time

Ryan Dillon-Capps <Ryan.DillonCapps@ohanagp.com>

Thu 2024-06-13 7:15 AM

To:IT.Support <IT.Support@ohanagp.com>;IT.BusinessIntelligence <IT.BI@ohanagp.com>;Glenn Norris
<glenn@ohanagp.com>;Rich Hartman <Rich.Hartman@ohanagp.com>;Justin Drummond
<Justin.Drummond@ohanagp.com>

@Rich Hartman  Sorry I went to log last night. I was mistaken in the numbers. math of below is
125, but I forgot about a few more hours. It is actually 120 right now. Sorry for that mistake.

This message may include text created with the help of natural language processing.

 Book time to meet with me

**Ryan Dillon-Capps**
**Vice President of IT**
**Ohana Growth Partners, LLC**



office 410-252-8058 x109
212 W. Padonia Rd
Timonium, MD 21093
www.planetfitness.com

**"Culture eats strategy for breakfast"**

---

**From:** Ryan Dillon-Capps <Ryan.DillonCapps@ohanagp.com>
**Sent:** Thursday, June 13, 2024 7:12 AM
**To:** IT.Support <IT.Support@ohanagp.com>; IT.BusinessIntelligence <IT.BI@ohanagp.com>; Glenn
Norris <glenn@ohanagp.com>; Rich Hartman <Rich.Hartman@ohanagp.com>; Justin Drummond
<Justin.Drummond@ohanagp.com>
**Subject:** FMLA Time

Team, please prepare for tonight. Ann will confirm later today if you are available for 1st thing
tomorrow morning checks.

I did most of the prep and testing last night, but I am going to be out for a few hours today and
not sure when I will be back on. It depends on how well things go today.

@Glenn Norris @Rich Hartman @Justin Drummond  This is FMLA. However, Rich, as you know
from yesterday's emails, I didn't end up taking the time expected, and since Friday, I have worked

every hour except for the 14 hours of sleep and roughly 10 hours of non-work related tasks, which I think is 139 hours. Not sure how you want to track that.

This message may include text created with the help of natural language processing.

 Book time to meet with me

**Ryan Dillon-Capps**
**Vice President of IT**
**Ohana Growth Partners, LLC**



office 410-252-8058 x109
212 W. Padonia Rd
Timonium, MD 21093
www.planetfitness.com

**"Culture eats strategy for breakfast"**

**From:** Rich Hartman <Rich.Hartman@ohanagp.com>
**Sent:** Thursday, June 13, 2024 9:01 AM
**To:** Ryan Dillon-Capps <Ryan.Wagner@ohanagp.com>
**Cc:** Karen Debus <karen.debus@ohanagp.com>
**Subject:** Acknowledgement Required

Ryan,

You have received repeated and multiple demands from your supervisor, the company president, and the owner of Ohana Growth Partners (OGP) since May 21, 2024 to add them and other individuals as Global Administrators. You have repeatedly refused and failed to obey these directives. Such conduct constitutes insubordination which violates Section 1 of your January 8, 2020 Employment and Non-Disclosure Agreement requiring that you "faithfully and diligently perform . . . duties as may be assigned by management from time to time." In addition, the refusals violate Section 6.1 of the Ohana Associates Handbook ("Standards of Conduct") which prohibits the "failure to follow lawful instructions of a supervisor."

There are countless reasons why a company should have several Global Administrators, whether being tied up in business meetings, vacations, leaves of absence, or other activities that cause a single Global Administrator to be unavailable. Your communication yesterday about your need for FMLA time off, to which you are entitled, makes self-evident the reasons for the company's demand to have several Global Administrators.

Glenn has signed an agreement on behalf of OGP with Hartman Executive Advisors (HEA) and demands that you add Phil Leadore from HEA as a Global Administrator by 3 pm today. We also instruct you to hold off on any major updates or changes to the system until HEA has had a chance to evaluate Ohana's IT systems.

We have evaluated the multitude of reasons for your refusal to obey management's directives. We are not looking to debate these reasons any further, rather we require a simple acknowledgment that you will follow the directive or not and then do so immediately by 3:00 pm today. Failure to acknowledge this directive and to add Phil Leadore as a Global Administrator by 3:00 pm today will require the company to take appropriate action.

**Rich Hartman**
**VP of People and Culture**
**Ohana Growth Partners, LLC**



office 410-252-8058 x114
212 W. Padonia Rd
Timonium, MD 21093
www.planetfitness.com

**"Culture eats strategy for breakfast"**

Re: Immediate Response to Rich Hartman Addressing Illegality and Cease and Desist

Ryan Dillon-Capps <Ryan.Wagner@ohanagp.com>
Thu 2024-06-13 12:03 PM

To:Ryan Dillon Capps <Ryan.DillonCapps@ohanagp.com>;Rich Hartman <Rich.Hartman@ohanagp.com>
Cc:Karen Debus <karen.debus@ohanagp.com>;Justin Drummond <Justin.Drummond@ohanagp.com>;Stacey Wittelsberger (ESC) <srector@exeterstreetcapital.com>;C. Victor
Brick <Victor@ohanagp.com>;Lynne Brick B.S.N. M.A. <lynne@ohanagp.com>;Terry Woods (Planet Fitness) <Terry.Woods@ohanagp.com>;Earl Ihle
<Earl.Ihle@ohanagp.com>;Glenn Norris <glenn@ohanagp.com>

@Rich Hartman Silly Forms I will try this again with the form corrected

I hope this message finds you well.

I am writing to formally address and respond to the recent directives and communications that have raised significant legal and ethical concerns.

**Illegal Directives and Retaliatory Actions**

The email you sent today, June 13, 2024, demanding the addition of Global Administrators within a six-hour window under threat of insubordination charges, is not only inappropriate but also illegal. These actions constitute retaliation under the Family and Medical Leave Act (FMLA) and relevant Maryland state laws. Specifically:

1. **Family and Medical Leave Act (FMLA) Violations:**

    Under 29 U.S.C. § 2615(a), it is unlawful for an employer to retaliate against an employee for exercising their rights under the FMLA. The directives and threats issued in your email are clear acts of retaliation against me for taking FMLA leave.

2. **Maryland Retaliation Laws:**

    According to Md. Code Ann., Lab. & Empl. § 3-801 et seq., retaliation against employees for reporting workplace violations or exercising their rights is prohibited. Your actions have created a hostile work environment and have directly undermined my professional responsibilities.

**Cease and Desist Demand**

Effective immediately, I demand that you cease and desist from any further retaliatory actions and coercive threats. This includes, but is not limited to, the following:

1. **Retaliatory Directives:** Any orders or demands that threaten disciplinary action or undermine my role and responsibilities.
2. **Coercive Threats:** Any communications that use threats of insubordination or other punitive measures as a means of compliance.

Failure to comply with this cease and desist demand will leave me with no option but to pursue all available legal remedies to protect my rights and ensure a safe and fair working environment.

**Notification of Request for Confirmation**

Please be aware that I have requested Hartman Executive Advisors, including Phil Leadore and Dan Levett , to confirm their qualifications and involvement in the PCI DSS v4 review. Ownership have been included in this communication thread to ensure full transparency and oversight.

**Request for Confirmation**

**Please confirm in writing by 1:30 pm EST** that you have **received this cease and desist notice** and that you **will comply with its terms.** Failure to provide this confirmation will be taken as a refusal to comply, and I will proceed accordingly.

Thank you for your immediate attention to this serious matter.

This message may include text created with the help of natural language processing.

Book time to meet with me

**Ryan Dillon-Capps**
**Vice President of IT**
**Ohana Growth Partners, LLC**



office 410-252-8058 x109
212 W. Padonia Rd
Timonium, MD 21093
www.planetfitness.com

**"Culture eats strategy for breakfast"**



# OHANA
### Growth Partners

Ohana Growth Partners, LLC
212 W. Padonia Rd.
Timonium, MD 21093

June 13, 2024

Dear Darren,

Effective immediately, June 13, 2024, you are being placed on leave of absence until further notice with full pay and full benefits while the company undergoes a review of IT operations.

During this time, you will not have access to company systems or any of the facilities and are not authorized to do work on behalf of the company.

We will update you once our review is complete.

Sincerely,

Rich Hartman
VP of People and Culture

Ohana Growth Partners, LLC
212 W. Padonia Rd
Timonium MD21093

June 13, 2024

Dear Darren,

Effective immediately, June 13, 2024, you are being placed on leave of
absence until further notice with full pay and full benefits while the
company undergoes a review of IT operations.

During this time, you will not have access to company systems or any of
The facilities and are not authorized to do work on behalf of the company.

We will update you once our review is complete.

Sincerely,

Rich Hartman
VP of People and Culture

**From:** Rich & LeeAnn <richnlee@gmail.com>
**Sent:** Thursday, June 13, 2024 8:47 PM
**To:** Ryan Dillon-Capps <ryan.dilloncapps@ohanagp.com>; Glenn Norris <glenn@ohanagp.com>; Karen Debus <karen.debus@ohanagp.com>
**Subject:** Ohana - Suspension

Some people who received this message don't often get email from richnlee@gmail.com.
Learn why this is important

**CAUTION:** This email originated from outside the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Ryan,

I am sorry to have to send this to you via my personal email account but since you have disabled my office email account this will have to suffice. I will also put a physical copy of this letter in the mail tomorrow. It will be directed to your address on file: 1334 Maple Avenue Essex, MD 21221. If this



Ohana Growth Partners, LLC
212 W. Padonia Rd.
Timonium, MD 21093

June 13, 2024

Dear Ryan,

Effective immediately, June 13, 2024, you are suspended from your employment
with Ohana Growth Partners until further notice. This is due to your
insubordination and failure to comply with directives from superiors, described
in part to you in the email sent to you earlier today, and continuing since you
received the email. The suspension is without pay. During the suspension, you
will continue to have access to your medical benefits.

During this period of suspension, you are relieved of all of your duties and
are not authorized to work on behalf of the company or have any electronic,
internet, physical, or other access to or connection with any company property
or systems, including but not limited to company IT systems and equipment. In
addition, you are not authorized to enter any company facility.

You will be notified in writing of any further changes.


Sincerely,

Rich Hartman
VP of People and Culture

## Re: Ohana - Suspension

Justin Drummond <Justin.Drummond@ohanagp.com>

Thu 2024-06-13 9:54 PM

To:Ryan Dillon-Capps <Ryan.DillonCapps@ohanagp.com>;Rich & LeeAnn
<richnlee@gmail.com>;Glenn Norris <glenn@ohanagp.com>;Karen Debus
<karen.debus@ohanagp.com>;Rich Hartman <Rich.Hartman@ohanagp.com>

Ryan:

Your assertions that Rich Hartman did not suspend you or lacked the
authority to suspend you are both incorrect and baseless.

For the avoidance of any doubt by you, I incorporate into this email Rich
Hartman's email to you today notifying you of your suspension and hereby
confirm that you were suspended upon receipt of that email. Please follow
fully the directives in that suspension notification.

I also hereby confirm that you have been directed by me to immediately
comply with Rich Hartman's email of 9:01 am this morning by immediately
adding Phil Leodore from HEA as a Global Administrator regardless of
whether he has confirmed any qualifications or involvement in the PCI DSS
v4 review.

Thank You,

*Please excuse any typos. Email sent from iPhone*

**Justin Drummond**
**President**
**Ohana Growth Partners, LLC**



office 410-252-8058 x214
212 W. Padonia Rd
Timonium, MD 21093
www.planetfitness.com

**"Culture eats strategy for breakfast"**

## Ryan Wagner

| | |
|---|---|
| **From:** | Ryan Wagner <Ryan.Wagner@ohanagp.com> |
| **Sent:** | Friday, May 24, 2024 8:00 AM |
| **To:** | Karen Debus |
| **Cc:** | Justin Drummond; Terry Woods; Earl Ihle; C. Victor Brick; Lynne Brick B.S.N. M.A.; Stacey Wittelsberger (ESC); Glenn Norris; Rich Hartman |
| **Subject:** | Re: Ryan Brooks - REPLY TO YOU ALLEGATIONS & PERFORMANCE ISSUES OF RYAN BROOKS |
| **Attachments:** | Clarification of Text Message Requested (369 KB); Re: Clarification of Text Message Requested (451 KB); Re: FMLA (443 KB) |
| **Importance:** | High |

@Karen Debus I regret to inform you that Rich Hartman on Wednesday January 10th at 1:46 PM EST said "… Going forward please stop working and complete the FMLA paperwork."
Here are two screenshots that contain the full-text message with this statement and my replies and then his reply where he stated the reason was "…Our policy is to not allow work while on leave"

1



This is what was emailed to him in response.

**From:** Ryan Wagner <Ryan.Wagner@ohanagp.com>
**Sent:** Wednesday, January 10, 2024 5:32 PM
**To:** Rich Hartman <Rich.Hartman@ohanagp.com>
**Subject:** Clarification of Text Message Requested

@Rich Hartman On 10 January 2024, you sent me the following text message

> When I say preclude I mean our practice. You are correct in that we cannot require you to work but it is not your choice to work while on leave. Our policy is to not allow work while on leave.

Can you please elaborate on what you are saying?

For 3 years, I have virtually never had vacation or personal day of leave where I did not work, and I have also worked him responding or not responding to something because he was on leave was a material part of the conversation. they need to text me.

On Page 30 of the handbook, it shows that we allow for full or partial days of absences from FMLA

Under federal and state law, your salary is subject to certain deductions. For example, unless state law requires otherwise, your salary can be reduced for the following reasons:

- Full-day absences for personal reasons.
- Full-day absences for sickness or disability.
- Full-day disciplinary suspensions for infractions of our written policies and procedures.
- Family and Medical Leave absences (either full- or partial-day absences).
- To offset amounts received as payment for jury and witness fees or military pay.
- The first or last week of employment in the event you work less than a full week.
- Any full work week in which you do not perform any work.

3

From page 41 through 51 where it talks about our leave policies  the only place that I found to use similar language

**D. No Work While on Leave**

The taking of another job while on family/medical leave or any other authorized leave of absence is grounds for immediate termination, to the extent permitted by law.

Except this appears to say that we are not allowed to take another job, not that we are prohibited from performing t that Ohana would want the head of IT to suddenly become completely unavailable, and one would think that the he you are not happy and celebrating me for my flexibility and dedication to Ohana.

Even if there was a written policy that said we are not allowed to work while on leave.  For the same reason that all

If you want to prohibit me from working, then I need to understand why and I will need to know how we are commur

I do not even know right now how the 12 weeks of FMLA will ultimately be broken up.  How will people know when I

I am not authorizing Ohana to tell people that I am on FMLA leave.  With very few exceptions, those who have been

I have attached that email to aide in transparency.  In this email, I reference our handbook and challenge the claim the company policy is to prevent. Rich responded on the 16th of January; the email is attached. I could continue to break down this and many other emails to raise questions and provide transparency.  Instead, I will ask you some questions that I do not anticipate any answers to.

From the beginning, I have requested that we utilize 3rd party experts without conflict of interest to inform and advise us: (the ones you are aware of)

1. Digital Forensic Expert for suspicious emails
2. Attorney practicing the relevant body of law to which the felonies apply
3. Head of Corporate Security for PCI Compliance

These steps could have been taken at any point to address my concerns and to provide protection that we performed due process.

- Have you asked any of your own professional resources about what are the standard practices when concerns like these are raised?

The FMLA paperwork you originally sent and the updated version you sent both contain 30 days of recertification.  Since then, Rich has stated via email that I can cease completing these monthly and instead do it once every 6 months.

- Do you know what FMLA regulation 29 CFR §825.308 states?  (see attached email titled Re: FMLA for more information.)

Holly Buttler is the principal of a well-established and respected law firm.

- Is it reasonable to think that Holly Buttler would have advised Ohana to complete the form you emailed me incorrectly?
- Who found the first mistake?

4

- Is it reasonable to think that Holly Buttler would not provide sound legal advice without mitigating factors preventing her from doing so?

My predecessor completed a form and submitted it to Rich prior to being terminated. (this may be new to you - I can provide you with proof that Rich recieved and confirmed receipt)

- Can you find that form?  What does it say?  Are you certain that it had not been modified after Steve submitted it to Rich.

Rich immediately notified two people that I had named them in my formal HR Complaint.

- Is it normal for HR to immediately notify anyone named in a formal complaint?
- Is there a legal reason HR would or would not want to do this?

Here are some FMLA and other related questions:

- Can the company FMLA policy be more stringent than those applied to other types of leave?
- Do other executives or department heads have the same policies being applied to them as I currently have applied to me?
- Are all of the policies currently applied to me also being applied to all other executives and department heads equally?
- Have all policies being applied to me been clearly communicated and applied consistently across the organization?
- Where is the FMLA leave notification requirement policy?  Does it clearly state why it is necessary and how it will be applied?
- What does the FMLA say about policies that hinder someone on FMLA's ability to perform their duties effectively?
- Are there other labor laws that could apply to a situation listed above or mentioned in other emails you were on?
- As a person who has been leading many of these communications, have you had unfiltered access to the employment attorney to ensure your communications align with the law and regulations?
- Are there any emails you have sent me that could violate the FMLA or other laws and regulations?
- What would be the outcome if the emails and communications you sent me were found to violate a law or regulation?
- Have any former team members of HR experienced a similar situation?
- Have any former team members of HR raised concerns about Rich?
- Does insubordination apply to situations where an order is not legitimate and reasonable?  How about orders that are illegal or unethical?
- Are employers allowed to terminate, demote, or apply other adverse employment action in response to an employee's refusal to violate laws or regulatory standards?
- Can an employer use another reason for adverse action hours, days, or even the following weeks - possibly months or longer - when an employee escalates the issue and reports threats of adverse actions?
- Does PCI compliance fall under any whistleblower protections, such as Maryland MOSH, Federal SOX or Dodd-Frank or CPA, or common laws like wrongful discharge?
- Have you been advised by the attorney what qualifies as "good faith"?

As per PCI Compliance,

- I asked for clarification as to what he needs to do so that the department can do it or provide a recommendation as to how it can be done.
- Offered to have a meeting with the head of corporate security to discuss my concerns.

5

- o As long as they have all the relevant information and I can be part of that conversation, I do not anticipate any issues with us following their approval.
- o This is the same process we have done for anything and everything else PCI compliance related.

This message may include text created with the help of natural language processing.

 Book time to meet with me

**From:** Karen Debus <karen.debus@ohanagp.com>
**Sent:** Thursday, May 23, 2024 4:55 PM
**To:** Ryan Wagner <Ryan.Wagner@ohanagp.com>
**Cc:** Rich Hartman <Rich.Hartman@ohanagp.com>
**Subject:** RE: Ryan Brooks - REPLY TO YOU ALLEGATIONS & PERFORMANCE ISSUES OF RYAN BROOKS

Hi Ryan,

I just want to stress a couple of points regarding your mention of stress/anxiety. You are approved for FMLA which covers any time you need off for the medical reason you indicated when you applied. No one from HR has stated that you shouldn't be working, but if you need time off, it is available to you through FMLA protection. You just need to let us know that the time off is FMLA time.

Thanks,

Karen

**Karen Debus**
**Sr. HR Generalist**
**Ohana Growth Partners, LLC**



office 410-252-8058 x117
212 W. Padonia Rd
Timonium, MD 21093
www.planetfitness.com

**"Culture eats strategy for breakfast"**

**From:** Ryan Wagner <Ryan.Wagner@ohanagp.com>
**Sent:** Tuesday, May 21, 2024 5:37 PM
**To:** Glenn Norris <glenn@ohanagp.com>
**Cc:** Justin Drummond <Justin.Drummond@ohanagp.com>; Rich Hartman <Rich.Hartman@ohanagp.com>; Karen Debus <karen.debus@ohanagp.com>; Matt Norris <Matt.Norris@ohanagp.com>
**Subject:** Re: Ryan Brooks - REPLY TO YOU ALLEGATIONS & PERFORMANCE ISSUES OF RYAN BROOKS

6

**Certification of Health Care Provider for
Employee's Serious Health Condition
under the Family and Medical Leave Act**

**U.S. Department of Labor
Wage and Hour Division**



DO NOT SEND COMPLETED FORM TO THE DEPARTMENT OF LABOR.
RETURN TO THE PATIENT.

OMB Control Number 1235-0003
Expires: 6/30/2023

The Family and Medical Leave Act (FMLA) provides that an employer may require an employee seeking FMLA protections because of a need for leave due to a serious health condition to submit a medical certification issued by the employee's health care provider. 29 U.S.C. §§ 2613, 2614(c)(3); 29 C.F.R. § 825.305. The employer must give the employee **at least 15 calendar days** to provide the certification. If the employee fails to provide complete and sufficient medical certification, his or her FMLA leave request may be denied. 29 C.F.R. § 825.313. Information about the FMLA may be found on the WHD website at www.dol.gov/agencies/whd/fmla.

## SECTION I – EMPLOYER

Either the employee or the employer may complete Section I. While use of this form is optional, this form asks the health care provider for the information necessary for a complete and sufficient medical certification, which is set out at 29 C.F.R. § 825.306. **You may not ask the employee to provide more information than allowed under the FMLA regulations, 29 C.F.R. §§ 825.306-825.308.** Additionally, you **may not** request a certification for FMLA leave to bond with a healthy newborn child or a child placed for adoption or foster care.

Employers must generally maintain records and documents relating to medical information, medical certifications, recertifications, or medical histories of employees created for FMLA purposes as confidential medical records in separate files/records from the usual personnel files and in accordance with 29 C.F.R. § 1630.14(c)(1), if the Americans with Disabilities Act applies, and in accordance with 29 C.F.R. § 1635.9, if the Genetic Information Nondiscrimination Act applies.

(1) Employee name: Ryan Wagner
        First                                          Middle                              Last

(2) Employer name: Ohana Growth Partners                     Date: 01/08/24         (mm/dd/yyyy)
                                                                     (List date certification requested)

(3) The medical certification must be returned by 01/24/24                                  (mm/dd/yyyy)
    (Must allow at least 15 calendar days from the date requested, unless it is not feasible despite the employee's diligent, good faith efforts.)

(4) Employee's job title: Vice President of Information Technology      Job description (☒ is / ☐ is not) attached.
    Employee's regular work schedule: 40+ hours per week
    Statement of the employee's essential job functions: Work w/executive leadership to develop and maintain IT roadmap and oversee day-to-day operations.
    (The essential functions of the employee's position are determined with reference to the position the employee held at the time the employee notified the employer of the need for leave or the leave started, whichever is earlier.)

## SECTION II – HEALTH CARE PROVIDER

Please provide your contact information, complete all relevant parts of this Section, and sign the form. Your patient has requested leave under the FMLA. The FMLA allows an employer to require that the employee submit a timely, complete, and sufficient medical certification to support a request for FMLA leave due to the serious health condition of the employee. For FMLA purposes, a "serious health condition" means an illness, injury, impairment, or physical or mental condition that involves *inpatient care* or *continuing treatment by a health care provider*. For more information about the definitions of a serious health condition under the FMLA, see the chart on page 4.

You may, but are **not required** to, provide other appropriate medical facts including symptoms, diagnosis, or any regimen of continuing treatment such as the use of specialized equipment. Please note that some state or local laws may not allow disclosure of private medical information about the patient's serious health condition, such as providing the diagnosis and/or course of treatment.

Form WH-380-E, Revised June 2020

Page 1 of 4

**Employee Name:** Ryan Wagner

Health Care Provider's name: *(Print)* Megan Robison, LCSW-C

Health Care Provider's business address:

Type of practice / Medical specialty: Mental Health Therapist, LCSWC

Telephone: (443) 814-9411    Fax: ( )    E-mail: meganrobisonlcswc@gmail.com

## PART A: Medical Information

Limit your response to the medical condition(s) for which the employee is seeking FMLA leave. Your answers should be your **best estimate** based upon your medical knowledge, experience, and examination of the patient. **After completing Part A, complete Part B to provide information about the amount of leave needed.** Note: For FMLA purposes, "incapacity" means the inability to work, attend school, or perform regular daily activities due to the condition, treatment of the condition, or recovery from the condition. Do not provide information about genetic tests, as defined in 29 C.F.R. § 1635.3(f), genetic services, as defined in 29 C.F.R. § 1635.3(e), or the manifestation of disease or disorder in the employee's family members, 29 C.F.R. § 1635.3(b).

(1) State the approximate date the condition started or will start: 05/15/13 _____ *(mm/dd/yyyy)*

(2) Provide your **best estimate** of how long the condition lasted or will last: Permanent

(3) Check the box(es) for the questions below, as applicable. For all box(es) checked, the amount of leave needed must be provided in Part B.

- ☐ **Inpatient Care:** The patient (☐ has been / ☐ is expected to be) admitted for an overnight stay in a hospital, hospice, or residential medical care facility on the following date(s): _____

- ☐ **Incapacity plus Treatment**: *(e.g. outpatient surgery, strep throat)*
  Due to the condition, the patient (☐ has been / ☐ is expected to be) incapacitated for *more than* three consecutive, full calendar days from _____ *(mm/dd/yyyy)* to _____ *(mm/dd/yyyy)*.

  The patient (☐ was / ☐ will be) seen on the following date(s): _____

  The condition (☐ has / ☐ has not) also resulted in a course of continuing treatment under the supervision of a health care provider *(e.g. prescription medication (other than over-the-counter) or therapy requiring special equipment)*

- ☐ **Pregnancy**: The condition is pregnancy. List the expected delivery date: _____ *(mm/dd/yyyy)*.

- ■ **Chronic Conditions**: *(e.g. asthma, migraine headaches)* Due to the condition, it is medically necessary for the patient to have treatment visits at least twice per year.

- ■ **Permanent or Long Term Conditions**: *(e.g. Alzheimer's, terminal stages of cancer)* Due to the condition, incapacity is permanent or long term and requires the continuing supervision of a health care provider (even if active treatment is not being provided).

- ■ **Conditions requiring Multiple Treatments**: *(e.g. chemotherapy treatments, restorative surgery)* Due to the condition, it is medically necessary for the patient to receive multiple treatments.

- ☐ **None of the above**: If none of the above condition(s) were checked, (i.e., inpatient care, pregnancy) no additional information is needed. Go to page 4 to sign and date the form.

Page 2 of 4                                                                 Form WH-380-E, Revised June 2020

Employee Name: Ryan Wagner

(4)    If needed, briefly describe other appropriate medical facts related to the condition(s) for which the employee seeks FMLA leave. *(e.g., use of nebulizer, dialysis)* The patient experiences frequent, intense panic attacks, severe anxiety, and agoraphobia. These episodes are particularly triggered by specific workplace stressors, including direct contact with certain individuals at work. The condition varies in frequency and intensity, leading to intermittent incapacitation that prevents the patient from working or performing regular daily activities during episodes. The patient undergoes ongoing psychotherapy and medication management as part of the treatment plan. Due to the unpredictable nature of these episodes, the patient's ability to work is intermittently impacted, necessitating periods of FMLA leave for recovery.

## PART B: Amount of Leave Needed

For the medical condition(s) checked in Part A, complete all that apply. Several questions seek a response as to the frequency or duration of a condition, treatment, etc. Your answer should be your **best estimate** based upon your medical knowledge, experience, and examination of the patient. Be as specific as you can; terms such as "lifetime," "unknown," or "indeterminate" may not be sufficient to determine FMLA coverage.

(5)    Due to the condition, the patient (■ had / ■ will have) **planned medical treatment(s)** (scheduled medical visits) *(e.g. psychotherapy, prenatal appointments)* on the following date(s): Twice Per Week: Monday and Wednesday
Ongoing psychotherapy, medication management, and stress reduction strategies. Despite these treatments, the patient experiences episodes of incapacitation that are unpredictable and significantly impair his work ability. These episodes are particularly exacerbated by the hostile interactions and environment in his workplace. The patient's condition allows him to work in a limited capacity from home on non-consecutive days or outside regular business hours, as the condition allows. Working from home is essential to mitigate the impact of the hostile workplace triggers and manage his panic attacks and agoraphobia.

(6)    Due to the condition, the patient (□ was / □ will be) **referred to other health care provider(s)** for evaluation or treatment(s).

State the nature of such treatments: *(e.g. cardiologist, physical therapy)* _____

Provide your **best estimate** of the beginning date 01/16/24 _____ *(mm/dd/yyyy)* and end date __ongoing__ *(mm/dd/yyyy)* for the treatment(s).

Provide your **best estimate** of the duration of the treatment(s), including any period(s) of recovery *(e.g. 3 days/week)* Regular ongoing sessions, approximately twice per week, with potential for increased frequency during periods of heightened stress or episodes.

(7)    Due to the condition, it is medically necessary for the employee to work a **reduced schedule**.

Provide your **best estimate** of the reduced schedule the employee is able to work. From 01/04/24 Ongoing, as episodes are *(mm/dd/yyyy)* to ___Ongoing___ *(mm/dd/yyyy)* the employee is able to work: *(e.g., 5 hours/day, up to 25 hours a week)*
The patient is able to work intermittently as his condition allows, which may vary week to week. Ability to work from home is essential due to condition triggers linked to the hostile workplace environment.

(8)    Due to the condition, the patient (■ was / ■ will be) **incapacitated for a continuous period of time**, including any time for treatment(s) and/or recovery.

Provide your **best estimate** of the beginning date 12/21/23 _____ *(mm/dd/yyyy)* and end date unpredictable. _____ *(mm/dd/yyyy)* for the period of incapacity.
Ryan experiences episodic periods of incapacity due to his mental health condition. While these periods are not continuous in the traditional sense, they occur intermittently and unpredictably. Each episode can incapacitate Ryan for a variable duration, typically lasting from a few hours to several days. The exact frequency and length of these episodes vary, but they are recurrent and expected to continue given the nature of his condition.

(9)    Due to the condition, it (■ was / ■ is / ■ will be) medically necessary for the employee to be absent from work on an **intermittent basis** (periodically), including for any episodes of incapacity i.e., episodic flare-ups. Provide your **best estimate** of how often (frequency) and how long (duration) the episodes of incapacity will likely last.

Over the next 6 months, episodes of incapacity are estimated to occur 1-3 _____ times per (□ day / ■ week / □ month) and are likely to last approximately 1-2 _____ (□ hours / ■ days) per episode.

The frequency and duration may vary based on workplace stressors and effectiveness of ongoing treatment.

Page 3 of 4                                                         Form WH-380-E, Revised June 2020

Employee Name: Ryan Wagner

**PART C: Essential Job Functions**

If provided, the information in Section I question #4 may be used to answer this question. If the employer fails to provide a statement of the employee's essential functions or a job description, answer these questions based upon the employee's own description of the essential job functions. An employee who must be absent from work to receive medical treatment(s), such as scheduled medical visits, for a serious health condition is considered to be *not able* to perform the essential job functions of the position during the absence for treatment(s).

(10) Due to the condition, the employee (■ was not able / ▣ is not able / ▣ will not be able) to perform *one or more* of the essential job function(s). Identify at least one essential job function the employee is not able to perform:

The patient experiences panic attacks and agoraphobia which severely limit his ability to commute and function in a traditional office environment. Essential job functions that are impacted include tasks that require physical presence in the office, such as in-person meetings, on-site collaboration, and immediate face-to-face response to work situations. During episodes of heightened agoraphobia, especially when triggered by direct interaction with specific individuals in the workplace, working from home becomes a necessary reasonable accommodation. During severe episodes, the patient is incapacitated and unable to perform any work functions, whether in the office or remotely, necessitating intermittent FMLA leave.

Signature of
Health Care Provider _____MWM LCSW-C_____    Date 03/12/24_____ *(mm/dd/yyyy)*

| Definitions of a Serious Health Condition *(See 29 C.F.R. §§ 825.113-.115)* |
|---|

**Inpatient Care**

- An overnight stay in a hospital, hospice, or residential medical care facility.
- Inpatient care includes any period of incapacity or any subsequent treatment in connection with the overnight stay.

**Continuing Treatment by a Health Care Provider (any one or more of the following)**

**Incapacity Plus Treatment:** A period of incapacity of more than three consecutive, full calendar days, and any subsequent treatment or period of incapacity relating to the same condition, that also involves either:

- o Two or more in-person visits to a health care provider for treatment within 30 days of the first day of incapacity unless extenuating circumstances exist. The first visit must be within seven days of the first day of incapacity; or,

- o At least one in-person visit to a health care provider for treatment within seven days of the first day of incapacity, which results in a regimen of continuing treatment under the supervision of the health care provider. For example, the health provider might prescribe a course of prescription medication or therapy requiring special equipment.

**Pregnancy:** Any period of incapacity due to pregnancy or for prenatal care.

**Chronic Conditions:** Any period of incapacity due to or treatment for a chronic serious health condition, such as diabetes, asthma, migraine headaches. A chronic serious health condition is one which requires visits to a health care provider (or nurse supervised by the provider) at least twice a year and recurs over an extended period of time. A chronic condition may cause episodic rather than a continuing period of incapacity.

**Permanent or Long-term Conditions:** A period of incapacity which is permanent or long-term due to a condition for which treatment may not be effective, but which requires the continuing supervision of a health care provider, such as Alzheimer's disease or the terminal stages of cancer.

**Conditions Requiring Multiple Treatments:** Restorative surgery after an accident or other injury; or, a condition that would likely result in a period of incapacity of more than three consecutive, full calendar days if the patient did not receive the treatment.

**PAPERWORK REDUCTION ACT NOTICE AND PUBLIC BURDEN STATEMENT**

If submitted, it is mandatory for employers to retain a copy of this disclosure in their records for three years. 29 U.S.C. § 2616; 29 C.F.R. § 825.500. Persons are not required to respond to this collection of information unless it displays a currently valid OMB control number. The Department of Labor estimates that it will take an average of 15 minutes for respondents to complete this collection of information, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. If you have any comments regarding this burden estimate or any other aspect of this collection information, including suggestions for reducing this burden, send them to the Administrator, Wage and Hour Division, U.S. Department of Labor, Room S-3502, 200 Constitution Avenue, N.W., Washington, D.C. 20210.

**DO NOT SEND COMPLETED FORM TO THE DEPARTMENT OF LABOR. RETURN TO THE PATIENT.**

## Ryan Dillon-Capps

| | |
|---|---|
| **From:** | Ryan Wagner |
| **Sent:** | Tuesday, May 21, 2024 5:02 PM |
| **To:** | Glenn Norris |
| **Cc:** | Justin Drummond; Rich Hartman; Karen Debus; Matt Norris |
| **Subject:** | Re: Ryan Brooks - REPLY TO YOU ALLEGATIONS & PERFORMANCE ISSUES OF RYAN BROOKS |

@Glenn Norris

Thank you for your prompt response. I understand the urgency of your request, but I must reiterate the compliance requirements and potential risks involved in reinstating Ryan Brooks' access without completing the necessary PCI DSS 4.0 training and processes.

Reinstating his access without compliance would put our certification at risk and could have serious legal and security implications for the company. As the head of IT, I have a responsibility to ensure that we adhere to these standards.

Given the gravity of the situation and your directive, I propose a meeting tomorrow morning with you, myself, and the head of corporate security to discuss how we can address this matter without compromising our compliance obligations. This will allow us to find a solution that meets your needs while safeguarding our compliance and security standards.

Please confirm a suitable time for this meeting.

Thank you for your understanding.

This message may include text created with the help of natural language processing.

 Book time to meet with me

**Ryan Wagner**
**Vice President of IT**
**Ohana Growth Partners, LLC**



office 410-252-8058 x109
212 W. Padonia Rd
Timonium, MD 21093

www.planetfitness.com

**"Culture eats strategy for breakfast"**

1

**From:** Glenn Norris <glenn@ohanagp.com>
**Sent:** Tuesday, May 21, 2024 4:59 PM
**To:** Ryan Wagner <Ryan.Wagner@ohanagp.com>
**Cc:** Justin Drummond <Justin.Drummond@ohanagp.com>; Rich Hartman <Rich.Hartman@ohanagp.com>; Karen Debus <karen.debus@ohanagp.com>; Matt Norris <Matt.Norris@ohanagp.com>
**Subject:** RE: Ryan Brooks - REPLY TO YOU ALLEGATIONS & PERFORMANCE ISSUES OF RYAN BROOKS

If Ryan Brooks does not have access by tomorrow morning , you will be written up for insubordination. Is that clear? Glenn

**Glenn Norris**
**Chief Financial Officer**
**Ohana Growth Partners, LLC**



office 410-252-8058 x108
cell 410-365-2591
212 W. Padonia Rd
Timonium, MD 21093
www.planetfitness.com

**"Culture eats strategy for breakfast"**

**From:** Ryan Wagner <Ryan.Wagner@ohanagp.com>
**Sent:** Tuesday, May 21, 2024 4:56 PM
**To:** Glenn Norris <glenn@ohanagp.com>
**Cc:** Justin Drummond <Justin.Drummond@ohanagp.com>; Rich Hartman <Rich.Hartman@ohanagp.com>; Karen Debus <karen.debus@ohanagp.com>; Matt Norris <Matt.Norris@ohanagp.com>
**Subject:** Re: Ryan Brooks - REPLY TO YOU ALLEGATIONS & PERFORMANCE ISSUES OF RYAN BROOKS

Thank you for your email. I understand your concerns and would like to clarify the situation regarding Ryan Brooks' access and our compliance requirements.

Compliance and Access Issues:

Yesterday, I consulted with PFHQ about how to handle situations where personnel had not completed required training. Before I could act on the conversation, Ryan Brooks informed me he didn't have time for a mandatory 15-minute meeting, and he had already stated he couldn't complete the required training or other tasks assigned to him. Consequently, I removed him to resolve the block to completing the SAQ, as instructed by PFHQ.

Overnight Changes:

The compliance issues did not change overnight. What changed was the final decision to remove Ryan after he explicitly refused to engage in critical compliance activities. Reinstating his access today would violate PCI DSS 4.0 standards, as I have already informed the head of corporate security that the compliance issue was resolved by terminating his access.

Performance Concerns:

The issues identified by Matt, as well as numerous concerns raised by the accounting department, reflect the quality of Ryan's work. While being responsive is important, it is more critical to ensure that work aligns with our

2

## Ryan Dillon-Capps

| | |
|---|---|
| **From:** | Ryan Wagner |
| **Sent:** | Tuesday, May 21, 2024 5:13 PM |
| **To:** | Glenn Norris |
| **Cc:** | Justin Drummond; Rich Hartman; Karen Debus; Matt Norris |
| **Subject:** | Re: Ryan Brooks - REPLY TO YOU ALLEGATIONS & PERFORMANCE ISSUES OF RYAN BROOKS |

I acknowledge your directive and understand the urgency of the situation. However, I must reiterate the compliance risks associated with reinstating Ryan Brooks' access without him completing the necessary PCI DSS 4.0 training and processes.

As the head of IT, my primary responsibility is to ensure that we maintain compliance with all regulatory standards. Restoring Ryan's access without meeting these requirements places our PCI DSS 4.0 certification and the company at significant risk. While I am prepared to follow your instructions, I must stress that this action is being undertaken under duress due to your explicit directive.

I have reached out to Geoff VanMaastricht, our head of corporate security, to seek his assistance in finding a solution that balances our compliance obligations with your request. Here is the email I sent to him, which includes you and President Justin Drummond in the loop:

**Ryan Wagner**
**Vice President of IT**
**Ohana Growth Partners, LLC**



office 410-252-8058 x109
212 W. Padonia Rd
Timonium, MD 21093

www.planetfitness.com

**"Culture eats strategy for breakfast"**

From: Ryan Wagner Ryan.Wagner@ohanagp.com
Sent: Tuesday, May 21, 2024 5:09 PM
To: Geoff VanMaastricht Geoff.VanMaastricht@pfhq.com
Cc: Glenn Norris glenn@ohanagp.com; Justin Drummond Justin.Drummond@ohanagp.com
Subject: SAQ - PCI Compliance: We need your assistance

@Geoff VanMaastricht, Would you be available for a meeting tomorrow to discuss this and related PCI Compliance concerns? I am being told to reinstate the same person, but they refuse to do the training, take part in the code review, change control, or any other process to maintain compliance. I don't know what to do and could use your assistance to find a solution that works for our CFO as well as meet the compliance requirements.

To mitigate these risks and protect our compliance standing, I propose the following steps:

Immediate Compliance Training: Expedite Ryan's PCI DSS 4.0 compliance training and ensure it is completed as a top priority.

1

Temporary Limited Access: Provide Ryan with limited access necessary for immediate tasks, under close monitoring, until he completes the required training and processes.

Documented Agreement: Document this course of action, including the acknowledgment that this decision is made under duress, to protect both the company and ourselves, ensuring we have a record of our compliance efforts and the rationale behind these decisions.

I am available to discuss this further and facilitate any immediate actions required to address your concerns while maintaining our compliance obligations.

Please let me know how you would like to proceed.

Best regards,

This message may include text created with the help of natural language processing.

 Book time to meet with me

---

**From:** Glenn Norris <glenn@ohanagp.com>
**Sent:** Tuesday, May 21, 2024 5:05 PM
**To:** Ryan Wagner <Ryan.Wagner@ohanagp.com>
**Cc:** Justin Drummond <Justin.Drummond@ohanagp.com>; Rich Hartman <Rich.Hartman@ohanagp.com>; Karen Debus <karen.debus@ohanagp.com>; Matt Norris <Matt.Norris@ohanagp.com>
**Subject:** RE: Ryan Brooks - REPLY TO YOU ALLEGATIONS & PERFORMANCE ISSUES OF RYAN BROOKS

Rich, please prepare a write up for me .

**Glenn Norris**
**Chief Financial Officer**
**Ohana Growth Partners, LLC**



office 410-252-8058 x108
cell 410-365-2591
212 W. Padonia Rd
Timonium, MD 21093
www.planetfitness.com

**"Culture eats strategy for breakfast"**

---

**From:** Ryan Wagner <Ryan.Wagner@ohanagp.com>
**Sent:** Tuesday, May 21, 2024 5:02 PM
**To:** Glenn Norris <glenn@ohanagp.com>
**Cc:** Justin Drummond <Justin.Drummond@ohanagp.com>; Rich Hartman <Rich.Hartman@ohanagp.com>; Karen Debus <karen.debus@ohanagp.com>; Matt Norris <Matt.Norris@ohanagp.com>
**Subject:** Re: Ryan Brooks - REPLY TO YOU ALLEGATIONS & PERFORMANCE ISSUES OF RYAN BROOKS

@Glenn Norris

Thank you for your prompt response. I understand the urgency of your request, but I must reiterate the compliance requirements and potential risks involved in reinstating Ryan Brooks' access without completing the necessary PCI DSS 4.0 training and processes.

2

## Ryan Dillon-Capps

| | |
|---|---|
| **From:** | Ryan Wagner |
| **Sent:** | Tuesday, May 21, 2024 5:10 PM |
| **To:** | Geoff VanMaastricht; Glenn Norris |
| **Cc:** | Justin Drummond |
| **Subject:** | SAQ - PCI Compliance : We need your assistance |

@Geoff VanMaastricht , Would you be available for a meeting tomorrow to discuss this and related PCI Compliance concerns? I am being told to reinstate the same person, but they refuse to do the training, take part in the code review, change control, or any other process to maintain compliance. I don't know what to do and could use your assistance to find a solution that works for our CFO as well as meet the compliance

This message may include text created with the help of natural language processing.

 Book time to meet with me

**Ryan Wagner**
**Vice President of IT**
**Ohana Growth Partners, LLC**



office 410-252-8058 x109
212 W. Padonia Rd
Timonium, MD 21093

www.planetfitness.com

**"Culture eats strategy for breakfast"**

1

## Ryan Dillon-Capps

**From:** Ryan Wagner
**Sent:** Tuesday, May 21, 2024 5:22 PM
**To:** C. Victor Brick
**Subject:** Fw: Ryan Brooks - REPLY TO YOU ALLEGATIONS & PERFORMANCE ISSUES OF RYAN BROOKS

I wish we could have better reasons to communicate. You should know what I am being ordered to do under duress.

This message may include text created with the help of natural language processing.

 Book time to meet with me

**Ryan Wagner**
**Vice President of IT**
**Ohana Growth Partners, LLC**



office 410-252-8058 x109
212 W. Padonia Rd
Timonium, MD 21093

www.planetfitness.com

**"Culture eats strategy for breakfast"**

**From:** Ryan Wagner <Ryan.Wagner@ohanagp.com>
**Sent:** Tuesday, May 21, 2024 5:12 PM
**To:** Glenn Norris <glenn@ohanagp.com>
**Cc:** Justin Drummond <Justin.Drummond@ohanagp.com>; Rich Hartman <Rich.Hartman@ohanagp.com>; Karen Debus <karen.debus@ohanagp.com>; Matt Norris <Matt.Norris@ohanagp.com>
**Subject:** Re: Ryan Brooks - REPLY TO YOU ALLEGATIONS & PERFORMANCE ISSUES OF RYAN BROOKS

I acknowledge your directive and understand the urgency of the situation. However, I must reiterate the compliance risks associated with reinstating Ryan Brooks' access without him completing the necessary PCI DSS 4.0 training and processes.

As the head of IT, my primary responsibility is to ensure that we maintain compliance with all regulatory standards. Restoring Ryan's access without meeting these requirements places our PCI DSS 4.0 certification and the company at significant risk. While I am prepared to follow your instructions, I must stress that this action is being undertaken under duress due to your explicit directive.

I have reached out to Geoff VanMaastricht, our head of corporate security, to seek his assistance in finding a solution that balances our compliance obligations with your request. Here is the email I sent to him, which includes you and President Justin Drummond in the loop:

1

## Ryan Dillon-Capps

**From:** Ryan Wagner
**Sent:** Tuesday, May 21, 2024 5:37 PM
**To:** Glenn Norris
**Cc:** Justin Drummond; Rich Hartman; Karen Debus; Matt Norris
**Subject:** Re: Ryan Brooks - REPLY TO YOU ALLEGATIONS & PERFORMANCE ISSUES OF RYAN BROOKS

Thank you for your response. I will send Ryan Brooks the link to complete the PCI DSS 4.0 training and ensure he begins the required processes immediately. However, I must reiterate that reinstating his access without him having completed these steps will place us in violation of PCI DSS 4.0 compliance requirements.

**Immediate Actions:**

1. Ryan Brooks can choose any available training program as long as we receive proof of completion. Previously, I offered to sit down with him to ensure he understands the necessary information, but under duress, I am not comfortable doing this because of the ongoing threats and pressure, which I am afraid will continue until I certify him regardless of his actual compliance.

2. **Restore Access Under Duress:** I will reinstate his access as per your directive. This action is being taken under duress and against my professional judgment due to the compliance risks involved.

I must inform you that I am experiencing severe stress and anxiety due to this situation, including a panic attack and hyperventilation throughout this conversation. I am currently shaking badly and struggling to finish this email. If I am unable to complete this task by 9 am tomorrow, it is because I have gone catatonic from this experience. Please understand that I am doing my best under these circumstances.

I strongly advise documenting this decision and the associated risks to protect the company and ourselves. I have also reached out to Geoff VanMaastricht to seek his assistance in finding a long-term solution that ensures compliance.

Thank you for your understanding.

This message may include text created with the help of natural language processing.

 Book time to meet with me

**Ryan Wagner**
**Vice President of IT**
**Ohana Growth Partners, LLC**

1



office 410-252-8058 x109
212 W. Padonia Rd
Timonium, MD 21093

www.planetfitness.com

**"Culture eats strategy for breakfast"**

---

**From:** Glenn Norris <glenn@ohanagp.com>
**Sent:** Tuesday, May 21, 2024 5:28 PM
**To:** Ryan Wagner <Ryan.Wagner@ohanagp.com>
**Cc:** Justin Drummond <Justin.Drummond@ohanagp.com>; Rich Hartman <Rich.Hartman@ohanagp.com>; Karen Debus <karen.debus@ohanagp.com>; Matt Norris <Matt.Norris@ohanagp.com>
**Subject:** RE: Ryan Brooks - REPLY TO YOU ALLEGATIONS & PERFORMANCE ISSUES OF RYAN BROOKS

Send Ryan Brooks the Link to complete the PCI DSS 4.0 training and processes. I still want his access returned immediately.

Glenn

**Glenn Norris**
**Chief Financial Officer**
**Ohana Growth Partners, LLC**



office 410-252-8058 x108
cell 410-365-2591
212 W. Padonia Rd
Timonium, MD 21093
www.planetfitness.com

**"Culture eats strategy for breakfast"**

---

**From:** Ryan Wagner <Ryan.Wagner@ohanagp.com>
**Sent:** Tuesday, May 21, 2024 5:13 PM
**To:** Glenn Norris <glenn@ohanagp.com>
**Cc:** Justin Drummond <Justin.Drummond@ohanagp.com>; Rich Hartman <Rich.Hartman@ohanagp.com>; Karen Debus <karen.debus@ohanagp.com>; Matt Norris <Matt.Norris@ohanagp.com>
**Subject:** Re: Ryan Brooks - REPLY TO YOU ALLEGATIONS & PERFORMANCE ISSUES OF RYAN BROOKS

I acknowledge your directive and understand the urgency of the situation. However, I must reiterate the compliance risks associated with reinstating Ryan Brooks' access without him completing the necessary PCI DSS 4.0 training and processes.

As the head of IT, my primary responsibility is to ensure that we maintain compliance with all regulatory standards. Restoring Ryan's access without meeting these requirements places our PCI DSS 4.0 certification and the company at significant risk. While I am prepared to follow your instructions, I must stress that this action is being undertaken under duress due to your explicit directive.

2

I have reached out to Geoff VanMaastricht, our head of corporate security, to seek his assistance in finding a solution that balances our compliance obligations with your request. Here is the email I sent to him, which includes you and President Justin Drummond in the loop:

**Ryan Wagner**
**Vice President of IT**
**Ohana Growth Partners, LLC**



office 410-252-8058 x109
212 W. Padonia Rd
Timonium, MD 21093
www.planetfitness.com

**"Culture eats strategy for breakfast"**

From: Ryan Wagner Ryan.Wagner@ohanagp.com
Sent: Tuesday, May 21, 2024 5:09 PM
To: Geoff VanMaastricht Geoff.VanMaastricht@pfhq.com
Cc: Glenn Norris glenn@ohanagp.com; Justin Drummond Justin.Drummond@ohanagp.com
Subject: SAQ - PCI Compliance: We need your assistance

@Geoff VanMaastricht, Would you be available for a meeting tomorrow to discuss this and related PCI Compliance concerns? I am being told to reinstate the same person, but they refuse to do the training, take part in the code review, change control, or any other process to maintain compliance. I don't know what to do and could use your assistance to find a solution that works for our CFO as well as meet the compliance requirements.

To mitigate these risks and protect our compliance standing, I propose the following steps:

Immediate Compliance Training: Expedite Ryan's PCI DSS 4.0 compliance training and ensure it is completed as a top priority.
Temporary Limited Access: Provide Ryan with limited access necessary for immediate tasks, under close monitoring, until he completes the required training and processes.
Documented Agreement: Document this course of action, including the acknowledgment that this decision is made under duress, to protect both the company and ourselves, ensuring we have a record of our compliance efforts and the rationale behind these decisions.
I am available to discuss this further and facilitate any immediate actions required to address your concerns while maintaining our compliance obligations.

Please let me know how you would like to proceed.

Best regards,

This message may include text created with the help of natural language processing.

 Book time to meet with me

**From:** Glenn Norris <glenn@ohanagp.com>
**Sent:** Tuesday, May 21, 2024 5:05 PM
**To:** Ryan Wagner <Ryan.Wagner@ohanagp.com>

3

"Culture eats strategy for breakfast"

---

**From:** Glenn Norris <glenn@ohanagp.com>
**Sent:** Tuesday, May 21, 2024 5:59 PM
**To:** Ryan Wagner <Ryan.Wagner@ohanagp.com>
**Cc:** Justin Drummond <Justin.Drummond@ohanagp.com>; Rich Hartman <Rich.Hartman@ohanagp.com>; Karen Debus <karen.debus@ohanagp.com>; Glenn Norris <glenn@ohanagp.com>
**Subject:** REPEAT QUESTION - PCI DSS 4 Compliance Training

Ryan, I asked you this question yesterday with no response. Please answer this question. ==Did everyone listed below take their course except Ryan Brooks?==

**Glenn Norris**
**Chief Financial Officer**
**Ohana Growth Partners, LLC**

  office 410-252-8058 x108
cell 410-365-2591
212 W. Padonia Rd
Timonium, MD 21093
www.planetfitness.com

"Culture eats strategy for breakfast"

---

**From:** Ryan Wagner <Ryan.Wagner@ohanagp.com>
**Sent:** Monday, May 20, 2024 3:05 PM
**To:** Glenn Norris <glenn@ohanagp.com>
**Cc:** Justin Drummond <Justin.Drummond@ohanagp.com>
**Subject:** Re: PCI DSS 4 Compliance Training

Yes - Geoff is the head of IT security at PFHQ. This set of questions applies to Ryan Brooks for the work he does for us with our custom software solutions.

This message may include text created with the help of natural language processing.

 Book time to meet with me

**Ryan Wagner**
**Vice President of IT**
**Ohana Growth Partners, LLC**

  office 410-252-8058 x109
212 W. Padonia Rd
Timonium, MD 21093
www.planetfitness.com

3

## Ryan Dillon-Capps

| | |
|---|---|
| **From:** | Ryan Wagner |
| **Sent:** | Tuesday, May 21, 2024 6:27 PM |
| **To:** | Glenn Norris |
| **Cc:** | Justin Drummond; Rich Hartman; Karen Debus |
| **Subject:** | Re: REPEAT QUESTION - PCI DSS 4 Compliance Training |

1. **Regarding Ryan Brooks:**

   - **Role:** Ryan is the only one creating custom software solutions for us.
   - **Attendance:** He is not attending meetings or participating in the process.
   - **Actions:** He is implementing changes without my knowledge that may not comply with the requirements.

When I assigned training to everyone, I told them that I would restrict their duties if necessary.

Geoff contacted me yesterday as a follow-up to an email from last week.

As with the first bullet point, here is the requirement. This is not the same requirement that the other people on the team have because no one else is building custom software for us, but if they were then they would need to meet this same requirement.

I find it odd that you constantly disagree and do not believe me, and my reply is --- let's go ask an expert. An investigator, a lawyer, and the head of corporate security. If I am wrong, then they would be the ones to tell us, and there would not be any issues. I do not understand why we don't do this on any of these topics; it has to be easier than this. You might not be in physical pain right now because of this and suffering from today, but I am and I don't deserve this. You never disagree with me – you disagree with the data, the math, the analytics, the experts, the manufacturers, and the company who wrote the OS and software, and all I ever do is show you what they said. What the data says. What the math says. What the analysis says. Or even just asking the question - why is this number so low? Why did we submit a number to the bank that was half what the invoices showed when we went through them one by one. Why did Rich immediately tell you and the 2 Cs that I filed an HR complaint about? Why are my role and responsibilities being stripped away? Why can't you let me do my job? when do I get to do my job?

Are you forcing me under duress to give Ryan Brooks access when the reason I could answer yes to this was because I removed him from the system and he can no longer make changes? I know that you said Yes do this or get written up.

I showed you what it said... you said you disagree --- with --- the PCI DSS 4 requirements? You don't disagree with me because I never said something to disagree with.

I don't deserve this... this is my opinion. I don't deserve to be treated like this. I don't deserve to be told that I use too many words and am too professional because I don't swear. I don't deserve to be made to feel like my greatest weakness is that I am not enough of "a man". well, I am not --- I am non-binary. I don't talk like you because I am

1

not like you. I do however believe that I embody everything this company says they stand for, and for months I have tried to convince you to listen to an expert before your actions are seen in a manner that causes you to end up in an orange jump suit. The more I try to prevent you from making decisions with the potential for serious consequences you attack and attack and attack. I don't deserve this... those are my opinions and you are free to disagree

Software development personnel working on bespoke and custom software are trained at least once every 12 months as follows:

- On software security relevant to their job function and development languages.
- Including secure software design and secure coding techniques.
- Including, if security testing tools are used, how to use the tools for detecting vulnerabilities in software.

I have implemented a compensating control

  

**ℹ Information**

**Note**

For SAQ C, requirements at 6.2 apply to merchants with bespoke software (developed to the entity's specifications by a third party) or custom software (developed by the entity). If merchant does not have such software, mark these requirements as Not Applicable and complete Appendix C: Explanation of Requirements Noted as Not Applicable.

**Purpose**

Having staff knowledgeable in secure coding methods, including techniques defined in Requirement 6.2.4, will help minimize the number of security vulnerabilities introduced through poor coding practices.

**Good Practice**

Training for developers may be provided in-house or by third parties.
Training should include, but is not limited to, development languages in use, secure software design, secure coding techniques, use of techniques/methods for finding vulnerabilities in code, processes to prevent reintroducing previously resolved vulnerabilities, and how to use any automated security testing tools for detecting vulnerabilities in software.
As industry-accepted secure coding practices change, organizational coding practices and developer training may need to be updated to address new threats.

This message may include text created with the help of natural language processing.

 Book time to meet with me

**Ryan Wagner**
**Vice President of IT**
**Ohana Growth Partners, LLC**



office 410-252-8058 x109
212 W. Padonia Rd
Timonium, MD 21093

www.planetfitness.com

2

**From:** Glenn Norris <glenn@ohanagp.com>
**Sent:** Tuesday, May 21, 2024 7:42 PM
**To:** Ryan Wagner <Ryan.Wagner@ohanagp.com>
**Cc:** Justin Drummond <Justin.Drummond@ohanagp.com>; Rich Hartman <Rich.Hartman@ohanagp.com>; Karen Debus <karen.debus@ohanagp.com>
**Subject:** RE: REPEAT QUESTION - PCI DSS 4 Compliance Training

The question that I need answered is: Does the software package that Baltimore Consulting Developed for AP Processing have any PCI Compliant relative information that falls under the PCI DSS 4 requirements?

If the information in the AP Software application does not apply, then this requirement becomes mute.

No checking account information is in the software.

Glenn

**Glenn Norris**
**Chief Financial Officer**
**Ohana Growth Partners, LLC**



office 410-252-8058 x108
cell 410-365-2591
212 W. Padonia Rd
Timonium, MD 21093
www.planetfitness.com

**"Culture eats strategy for breakfast"**

**From:** Ryan Wagner <Ryan.Wagner@ohanagp.com>
**Sent:** Tuesday, May 21, 2024 6:27 PM
**To:** Glenn Norris <glenn@ohanagp.com>
**Cc:** Justin Drummond <Justin.Drummond@ohanagp.com>; Rich Hartman <Rich.Hartman@ohanagp.com>; Karen Debus <karen.debus@ohanagp.com>
**Subject:** Re: REPEAT QUESTION - PCI DSS 4 Compliance Training

1. **Regarding Ryan Brooks:**

   o  **Role:** Ryan is the only one creating custom software solutions for us.

   o  **Attendance:** He is not attending meetings or participating in the process.

   o  **Actions:** He is implementing changes without my knowledge that may not comply with the requirements.

When I assigned training to everyone, I told them that I would restrict their duties if necessary.

Geoff contacted me yesterday as a follow-up to an email from last week.

3

Subject: Re: Critical Concerns Regarding Ryan Brooks's Reinstatement and System Access
From: Ryan Wagner <Ryan.Wagner@ohanagp.com>
To: CEO <CEO@ohanagp.com>, Earl Ihle <Earl.Ihle@ohanagp.com>, Earl Ihle
<Earl.Ihle@ohanagp.com>, Earl Ihle (AOL) <Eihle1@aol.com>, Terry Woods (Planet Fitness)
<Terry.Woods@ohanagp.com>, Justin Drummond <Justin.Drummond@ohanagp.com>, Lynne Brick
B.S.N. M.A. <lynne@ohanagp.com>, Terry Woods (Planet Fitness) <Terry.Woods@ohanagp.com>
Cc:
Date: May 22, 2024 2:11:34 AM
Attachments: Re: M365 Licenses.eml, Outlook-nnmw3ddd.png, ohanagrowthpartnersfinallogo_7fa8dba
2-2909-40ee-839a-12ba06da3de6.png, Outlook-04aybcht.png
--

I am adding an email from 2024, March 27, where training was discussed, as well as another topic that is critical.

This message may include text created with the help of natural language processing.

 Book time to meet with me

**Ryan Wagner**
**Vice President of IT**
**Ohana Growth Partners, LLC**

 Ohana

office 410-252-8058 x109
212 W. Padonia Rd
Timonium, MD 21093
www.planetfitness.com

**"Culture eats strategy for breakfast"**

**From:** Ryan Wagner <Ryan.Wagner@ohanagp.com>
**Sent:** Wednesday, May 22, 2024 2:05 AM
**To:** CEO <CEO@ohanagp.com>; Earl Ihle <Earl.Ihle@ohanagp.com>; Earl Ihle <Earl.Ihle@ohanagp.com>; Earl Ihle
(AOL) <Eihle1@aol.com>; Terry Woods (Planet Fitness) <Terry.Woods@ohanagp.com>; Justin Drummond
<Justin.Drummond@ohanagp.com>; Lynne Brick B.S.N. M.A. <lynne@ohanagp.com>; Terry Woods (Planet
Fitness) <Terry.Woods@ohanagp.com>
**Subject:** Critical Concerns Regarding Ryan Brooks's Reinstatement and System Access

I am writing to formally address a series of critical issues regarding the reinstatement of system access for Ryan
Brooks, who was recently rehired by CFO Glenn Norris. Mr. Brooks's refusal to comply with essential security
and compliance protocols poses significant risks to our organization's data security and PCI DSS compliance.

Background

Ryan Brooks, the developer of the Kiosk App used on our PCI-compliant network, was previously terminated due
to his failure to comply with PCI DSS Requirement 6.2.2, which mandates annual training on software security
for all software development personnel. This app is designed for members and guests to sign up and input PCI-

protected data, making compliance with this requirement non-negotiable. Despite this, CFO Glenn Norris has rehired Mr. Brooks and now demands that global admin-level access be granted immediately.

Current Issues

Non-Compliance with PCI DSS Requirements:

Training (Requirement 6.2.2): Mr. Brooks has not completed the required annual security training. This training is crucial to ensure secure software development practices and the protection of cardholder data. For Mr. Brooks to remain associated with Ohana, he must complete this training before being allowed to work with us.
Code Validation (Requirement 6.2.3): Mr. Brooks is refusing to participate in code validation processes, which are essential to ensure that our software is free of vulnerabilities and compliant with PCI DSS standards.
Change Management (Requirement 6.4.5): Mr. Brooks, who also functions as a systems admin, is refusing to participate in necessary change management processes. These processes are critical for maintaining control and oversight over system modifications.
Violation of Least Privilege Principle:

Global Admin Access (Requirements 7.2.2 and 7.2.4): CFO Glenn Norris is insisting on granting Mr. Brooks global admin access without providing a valid justification. This demand violates the principle of least privilege, which is fundamental to minimizing the risk of unauthorized access and potential security breaches. Furthermore, it violates Requirement 7.2.4, which mandates access controls to enforce least privilege and prevent users from exceeding their authorized privileges.
Security Risks:

Lack of Oversight: Providing global admin access to Mr. Brooks, who refuses to adhere to security protocols and processes, significantly increases the risk of introducing vulnerabilities into our systems.
Potential for Unauthorized Changes: Without proper participation in change management and validation processes, there is a high risk of unauthorized or poorly managed changes that could compromise our systems and data.
Unauthorized Changes and Impact on Operations:

System Measures Compliance (Requirements 5.3.3, 5.3.4, 5.3.5, 5.2.1, 5.4.1): These requirements involve maintaining secure configurations, protecting all systems from malicious software, and ensuring anti-malware mechanisms are active and up-to-date. Compliance with these standards is crucial for protecting our systems from vulnerabilities and attacks.
Change Control and Development (Requirements 6.3.1, 6.3.3, 6.5.1, 6.5.2): These requirements focus on secure software development practices, managing changes to the system environment, and establishing a Change Control Board to review and approve changes. Unauthorized changes by Mr. Brooks have disrupted these processes, requiring extensive validation and correction efforts.
Access Management (Requirements 8.2.1, 8.2.2, 8.2.4, 8.2.5, 8.2.6, 8.2.7, 8.2.8, 8.3.4, 8.3.5, 8.3.6, 8.3.7, 8.3.8, 8.3.9): These requirements govern the management of user accounts and authentication methods, including multifactor authentication. Mr. Brooks's failure to complete these tasks has led to gaps in our access management processes.
Account and Access Controls (Requirements 8.4.1, 8.4.3, 8.5.1, 8.6.1, 8.6.2, 8.6.3): These involve ongoing management of user identities and authentication mechanisms. Due to a lack of personnel, I have had to manage these tasks, adding to my workload.
Log Management (Requirements 10.1.1, 10.2.1.2, 10.2.1.4, 10.2.1.5, 10.3.1, 10.3.2): These requirements ensure that logging mechanisms are in place to track access and changes to the system. Mr. Brooks made several unauthorized changes that compromised our logging integrity, necessitating corrective actions on my part.
Efforts to Resolve Issues:

July 1 @ about blank    Original Reconsider Exhibits Trimmed - No laws, Cases, Publications    Page # 150 of 185    6/13/2024    Exhibit 01-B

Hurson District Exhibit 16-2    Exhibit Page # 150 of 185    EXHIBIT 316-2

I completed the SAQ as directed by Geoff VanMaastricht, the head of corporate security. Despite offering numerous solutions to Glenn Norris, including a meeting with Geoff to find a workable solution and alternative means to complete necessary tasks, Mr. Norris has refused to provide clarity on Mr. Brooks's work. This lack of transparency hampers our ability to adhere to the least privilege principle (Requirement 7.2.2).

Recommendations

To address these issues while ensuring the security and compliance of our systems, I recommend the following actions:

Mandatory Training and Compliance (Requirement 6.2.2): Before granting any level of access, Mr. Brooks must complete the required PCI DSS training and agree to participate in all necessary security and compliance processes, including code validation and change management.

Controlled Access (Requirement 7.2.2): Access should be limited and incrementally granted based on the successful completion of specific security training and compliance tasks. Global admin access should only be considered if absolutely necessary and justified.

Regular Monitoring and Auditing (Requirement 10.6): Implement strict monitoring and auditing of Mr. Brooks's activities to ensure compliance with security policies and quickly detect any unauthorized actions.

Conclusion

My primary responsibility is to safeguard our company's data and ensure compliance with PCI DSS standards. Granting global admin-level access to Mr. Brooks without ensuring compliance with security training, code validation, and change management processes poses significant risks. I strongly urge the Board to support these recommendations to protect our systems and maintain compliance.

I am available to discuss this more and provide additional information as needed.

Thank you for your attention to this critical issue.

This message may include text created with the help of natural language processing.

 Book time to meet with me

**Ryan Wagner**
**Vice President of IT**
**Ohana Growth Partners, LLC**

 Ohana

office 410-252-8058 x109
212 W. Padonia Rd
Timonium, MO 21093
www.planetfitness.com

**"Culture eats strategy for breakfast"**

July 1 @ 8:38AM Original Reconsider Exhibits Trimmed - No laws, Cases, Publications          Page # 151 of 185          6/23/2024 Exhibit 101-B

Hurson District Exhibit 16-2          Exhibit Page # 151 of 185          EXHIBIT 316-2

# Review Discussion Form

## Discussion Details

**Discussion Type**:
Write Up

**Initiated By**:
DEBUS, KAREN E (kdebus)

**Creation Date**:
05/23/2024

**Employee Acknowledgment Date**:
N/A

**Resolved Date**:
N/A

**Resolved By**:
N/A

## Employee Details

**Employee Name**:
DILLON-CAPPS, RYAN AURELIUS

**Position Title**:
Vice President of Information Technology

**Department**:
Information Technology

**Position Status**:
Full Time

**Hire Date**:
02/10/2020

**Supervisor**:
GLENN NORRIS

## Written Warning (5. Insubordination)

**Date of Incident**:

05/22/2024

**Date of Previous Infraction**:

00/00/0000

**Date of Conversation**:

05/22/2024

**Description of Incident**:

Ryan Wagner, VP of IT, removed the IT administrative rights of Ryan Brooks of Baltimore Consulting without the knowledge or consent of his supervisor Glenn Norris, CFO. Mr. Wagner was instructed by Mr. Norris on several occasions to reinstate Mr. Brooks access. However, Mr. Wagner did not agree with the reinstatement. Mr. Norris explained to Mr. Wagner that his concerns were ill-founded and issued a directive that Mr. Wagner reinstate the access by 5 PM on May 22, 2024. Mr. Wagner was also instructed that failure to do so would result in discipline.

**Supervisor Comments**:

Mr. Wagners refusal to carry out a directive by Mr. Norris is considered insubordination which is a violation of company policy. Mr. Wagner is being issued a written warning and must comply with the directives issued by his supervisor. Any future similar issues may result in further discipline up to an including termination.

**Please select one**:

**Employee Comments**:

**Plan for Improvement**:

A list of actions that need to be taken by the individual to improve performance and how these will be assessed, include details of any further support or training offered including dates. Actions should be specific and achievable.

**Plan for Improvement**:

Mr. Wagner must comply with directives issued by his supervisor, adhere to deadlines, and ensure an open line of communication. Any future similar issues may result in further discipline up to an including termination.

**Witness Name (Please type the name of the witness present for the discussion)**:

Justin Drummond, Rich Hartman, Matt Norris, Karen Debus - all via email discussion.

# Re: Follow up on write up for insubordination and not following Glenn's Mandate from yesterday to restore Ryan Brooks' Admin rights

C. Victor Brick <Victor@ohanagp.com>

Thu 2024-05-23 11:59 PM

To:Ryan Wagner <Ryan.Wagner@ohanagp.com>
Cc:Justin Drummond <Justin.Drummond@ohanagp.com>;Terry Woods
<terrywoods4@comcast.net>;Earl Ihle <Earl.Ihle@ohanagp.com>;Lynne Brick B.S.N.
M.A. <lynne@ohanagp.com>;Stacey Wittelsberger (ESC)
<srector@exeterstreetcapital.com>

I am ordering you to restore Ryan Brooks Administrative Rights immediately. Failure to do so would be perceived by me as gross insubordination.

I am with Vicki as she undergoes yet another round of chemo. Please restore Ryan's Administrative Rights by EOB tomorrow, Friday, 5/24. I will not be on email again until after the Memorial Day weekend. But I expect Ryan Brooks to have his administrative rights restored by EOB tomorrow.

**C. Victor Brick**
**CEO**
**Ohana Growth Partners, LLC**



cell 410-365-1801
212 W. Padonia Rd
Timonium, MD 21093
www.planetfitness.com

**"Culture eats strategy for breakfast"**

## Ryan Dillon-Capps

| | |
|---|---|
| **From:** | Ryan Wagner |
| **Sent:** | Wednesday, June 5, 2024 10:51 AM |
| **To:** | Glenn Norris; Justin Drummond |
| **Cc:** | Rich Hartman; Matt Norris; Stacey Wittelsberger (ESC); C. Victor Brick; Lynne Brick B.S.N. M.A.; Terry Woods (Planet Fitness); Earl Ihle |
| **Subject:** | Re: At a stand still since no admin rights have been returned to BC/RB |

@Glenn Norris

As you may recall, Geoff VanMaastericht from PFHQ and I both agree on the interpretation and application of PCI compliance regarding this issue. Previously, you attempted to coerce me into violating PCI compliance by labeling my refusal as insubordination and threatening to write me up if I did not comply with your demands. It's important to note that both accusations of insubordination and threats of write-ups are effectively viewed as coercive threats under the law.

Unfortunately, I cannot comply with unlawful or unethical orders.

Additionally, these coercive tactics have previously triggered severe panic attacks and other complications that negatively impact my PTSD, for which I am currently on FMLA leave. Such actions not only exacerbate my condition but also violate FMLA protections.

During our meeting, you mentioned to Geoff, Justin, and myself that you would provide information about what tasks Ryan Brooks was assigned to work on. This information is crucial for adhering to the least privilege requirement under PCI DSS 4. I recommend we start with that, as Ryan Brooks has other unique disqualifications that we will also need to address.

Knowing the specific tasks required may allow me to propose alternative solutions. If Ryan Brooks is the only person capable of performing these tasks, we will need to discuss options to address his other disqualifications as well.

# The email you responded to is what Ryan Brooks, or any developer, would prepare and provide when they are no longer supporting an application/website.

This message may include text created with the help of natural language processing.

 Book time to meet with me

**Ryan Wagner**
**Vice President of IT**
**Ohana Growth Partners, LLC**

1



office 410-252-8058 x109
212 W. Padonia Rd
Timonium, MD 21093

www.planetfitness.com

**"Culture eats strategy for breakfast"**

---

**From:** Glenn Norris <glenn@ohanagp.com>
**Sent:** Wednesday, June 5, 2024 10:26 AM
**To:** Ryan Wagner <Ryan.Wagner@ohanagp.com>; Justin Drummond <Justin.Drummond@ohanagp.com>
**Cc:** Rich Hartman <Rich.Hartman@ohanagp.com>; Matt Norris <Matt.Norris@ohanagp.com>
**Subject:** At a stand still since no admin rights have been returned to BC/RB

Ryan, as your Executive Group in OGP has individually and in total made demands to you to give full admin rights back to BC/RB this request is not in line with our demands.

You have received these email demands over the last 2-3 weeks from Glenn, Justin and Victor.

You have not completed these demands.

Please give the admin rights back to Ryan Brooks/BC.

The below requests by you to Ryan Brooks will not occur.

Our number one priority is to have you do what we demanded.

Your refusal to follow through with the demands are documented as insubordination.

Without you doing what we ask, we are currently not making any of the below changes.

Glenn

**Glenn Norris**
**Chief Financial Officer**
**Ohana Growth Partners, LLC**

---



office 410-252-8058 x108
cell 410-365-2591
212 W. Padonia Rd
Timonium, MD 21093
www.planetfitness.com

**"Culture eats strategy for breakfast"**

2

**From:** Ryan Wagner <Ryan.Wagner@ohanagp.com>
**Sent:** Wednesday, June 5, 2024 10:08 AM
**To:** Ryan Brooks BC <rb@baltimoreconsulting.com>
**Cc:** Glenn Norris <glenn@ohanagp.com>; Matt Norris <Matt.Norris@ohanagp.com>; Justin Drummond
<Justin.Drummond@ohanagp.com>; Rich Hartman <Rich.Hartman@ohanagp.com>
**Subject:** Transition Documents

@Ryan Brooks BC Please provide us with the transition documents for the intranet and all other websites and applications that you previously handled.

If possible, they should include

- **Codebase information**: Details about the code repository, branch naming conventions, and commit history.
- **Architecture diagrams**: Visual representations of the system architecture and how different components interact.
- **Deployment procedures**: Step-by-step instructions on how to deploy the software or updates to the production environment.
- **Operational documentation**: Information on monitoring systems, log file locations, and troubleshooting common issues.
  **Contact information**: Details of the previous maintainers or project managers for further queries.

If these documents or their relative equivalents already exist - please direct me to their current location. No one is expecting perfection, we would appreciate to have what you can provide us to pass it forward to whomever takes over this responsibility.

This message may include text created with the help of natural language processing.

 Book time to meet with me

**Ryan Wagner**
**Vice President of IT**
**Ohana Growth Partners, LLC**



office 410-252-8058 x109
212 W. Padonia Rd
Timonium, MD 21093
www.planetfitness.com

**"Culture eats strategy for breakfast"**

3



office 410-252-8058 x109
212 W. Padonia Rd
Timonium, MD 21093

www.planetfitness.com

**"Culture eats strategy for breakfast"**

---

**From:** Glenn Norris <glenn@ohanagp.com>
**Sent:** Wednesday, June 5, 2024 10:26 AM
**To:** Ryan Wagner <Ryan.Wagner@ohanagp.com>; Justin Drummond <Justin.Drummond@ohanagp.com>
**Cc:** Rich Hartman <Rich.Hartman@ohanagp.com>; Matt Norris <Matt.Norris@ohanagp.com>
**Subject:** At a stand still since no admin rights have been returned to BC/RB

Ryan, as your Executive Group in OGP has individually and in total made demands to you to give full admin rights back to BC/RB this request is not in line with our demands.

You have received these email demands over the last 2-3 weeks from Glenn, Justin and Victor.

You have not completed these demands.

Please give the admin rights back to Ryan Brooks/BC.

The below requests by you to Ryan Brooks will not occur.

Our number one priority is to have you do what we demanded.

Your refusal to follow through with the demands are documented as insubordination.

Without you doing what we ask, we are currently not making any of the below changes.

Glenn

**Glenn Norris**
**Chief Financial Officer**
**Ohana Growth Partners, LLC**



office 410-252-8058 x108
cell 410-365-2591
212 W. Padonia Rd
Timonium, MD 21093
www.planetfitness.com

**"Culture eats strategy for breakfast"**

## Ryan Dillon-Capps

| | |
|---|---|
| **From:** | Ryan Wagner |
| **Sent:** | Wednesday, June 5, 2024 10:51 AM |
| **To:** | Glenn Norris; Justin Drummond |
| **Cc:** | Rich Hartman; Matt Norris; Stacey Wittelsberger (ESC); C. Victor Brick; Lynne Brick B.S.N. M.A.; Terry Woods (Planet Fitness); Earl Ihle |
| **Subject:** | Re: At a stand still since no admin rights have been returned to BC/RB |

@Glenn Norris

As you may recall, Geoff VanMaastericht from PFHQ and I both agree on the interpretation and application of PCI compliance regarding this issue. Previously, you attempted to coerce me into violating PCI compliance by labeling my refusal as insubordination and threatening to write me up if I did not comply with your demands. It's important to note that both accusations of insubordination and threats of write-ups are effectively viewed as coercive threats under the law.

Unfortunately, I cannot comply with unlawful or unethical orders.

Additionally, these coercive tactics have previously triggered severe panic attacks and other complications that negatively impact my PTSD, for which I am currently on FMLA leave. Such actions not only exacerbate my condition but also violate FMLA protections.

During our meeting, you mentioned to Geoff, Justin, and myself that you would provide information about what tasks Ryan Brooks was assigned to work on. This information is crucial for adhering to the least privilege requirement under PCI DSS 4. I recommend we start with that, as Ryan Brooks has other unique disqualifications that we will also need to address.

Knowing the specific tasks required may allow me to propose alternative solutions. If Ryan Brooks is the only person capable of performing these tasks, we will need to discuss options to address his other disqualifications as well.

# The email you responded to is what Ryan Brooks, or any developer, would prepare and provide when they are no longer supporting an application/website.

This message may include text created with the help of natural language processing.

 Book time to meet with me

**Ryan Wagner**
**Vice President of IT**
**Ohana Growth Partners, LLC**

1



Ryan Wagner <ryan@mxt3.com>

## PCI Compliance - Ohana

**Ryan Wagner** <ryan@mxt3.com>                              Mon, Jun 17, 2024 at 7:22 PM
Reply-To: ryan@mxt3.com
To: geoff.vanmaastricht@pfhq.com, stephan.dalgar@pfhq.com

1) I am using this email because I am suspended illegally because it was based on a demand that I work during my FMLA-protected leave time they knew about in writing 2 hours before issuing a 6 hour demand letter. They received a cease and desist and, 30 minutes later, retaliated against another person in my department. That is all I can say, but ownership was aware the entire time, and I was shocked when that person's actions were later authorized, and I was being suspended illegal. As of right now, because I said I would notify them when I am off FMLA time --- I am still on FMLA leave time. However, I am suspended until the court says otherwise which I apologize for this delay and email.
2) PCI Compliance - to my knowledge is still in place.

My lead attorney has a family emergency, or the paperwork would have already been filed, and if this email were needed, it would be from my Ohana email.

There is a much longer version of this that has many more reasons. Still, I would like to establish this without any questions because if there is a situation where I can't take action because the suspension is still in place, then notifying you will be the only step. I don't want that moment to be delayed because you didn't need to confirm anything.

## 1. Do the iPads qualify as CDE or otherwise incur PCI Compliance requirements under DSS v4?

**Reference: Scope of PCI DSS Requirements**

- **Source:** PCI DSS v4.0, Page 9
- **Quote:** "PCI DSS requirements apply to: The cardholder data environment (CDE), which is comprised of: System components, people, and processes that store, process, or transmit cardholder data and/or sensitive authentication data."
- **Explanation:** Since the iPads are used to input payment information, they are considered part of the Cardholder Data Environment (CDE). Therefore, they must comply with PCI DSS requirements because they handle cardholder data.

## 2. Are the iPads managed by Intune subject to PCI DSS requirements?

**Reference: Requirement 2: Apply Secure Configurations to All System Components**

- **Source:** PCI DSS v4.0, Page 44
- **Quote:** "Ensure that all system components are securely configured and maintained. This includes applying vendor-provided security patches, securely configuring system components, and maintaining secure configurations over time."
- **Explanation:** Intune, as the management platform for the iPads, must ensure that all devices are securely configured and managed according to PCI DSS standards. This includes enforcing strong passwords, applying security patches, and maintaining secure configurations.

## 3. Is Intune managed by EntraID subject to PCI DSS requirements?

**Reference: Requirement 8: Identify Users and Authenticate Access to System Components**

- **Source:** PCI DSS v4.0, Page 161
- **Quote:** "Assign a unique identification (ID) to each person with access and authenticate all users to system components."
- **Explanation:** EntraID (Azure AD) manages identity and access, including authentication for Intune and other systems in the CDE. Therefore, it must comply with PCI DSS requirements to ensure robust authentication methods, such as multi-factor authentication, and maintain audit logs of access to cardholder data.

## 4. Does the Kiosk Webpage and the management portal used to control what URLs the kiosk displays at the club fall under PCI DSS?

**Reference: Requirement 6: Develop and Maintain Secure Systems and Software**

- **Source:** PCI DSS v4.0, Page 119
- **Quote:** "Develop internal and external software applications (including web-based administrative access to applications) securely."
- **Explanation:** The kiosk webpage and management portal are in scope if they can impact the security of cardholder data, directly or indirectly. These systems must comply with PCI DSS requirements, including secure coding practices, regular vulnerability assessments, and ensuring that the URL control mechanisms do not introduce security vulnerabilities.

## Summary:

1. **iPads:** Part of the CDE, requiring PCI DSS compliance.
2. **Intune:** Must be configured and managed per PCI DSS since it controls devices in the CDE.
3. **EntraID (Azure AD):** Must enforce PCI DSS controls for authentication and access management.
4. **Kiosk Webpage and Management Portal:** Must comply with PCI DSS if they impact cardholder data security.

They want to grant access to people without giving any information.  This is immediately a problem:

**Requirement 7: Restrict Access to System Components and Cardholder Data by Business Need to Know**

- **Source:** PCI DSS v4.0, Page 161
- **Quote:** "Restrict access to system components and cardholder data to only those individuals whose job requires such access. This principle ensures that access rights are granted based on the least privilege necessary to perform job responsibilities."
- **Explanation:** Access should be granted based on a clear understanding of the individual's role and responsibilities to ensure they only have access to the data and systems necessary for their job.

**Requirement 8: Identify Users and Authenticate Access to System Components**

- **Source:** PCI DSS v4.0, Page 167
- **Quote:** "Assign a unique identification (ID) to each person with access and authenticate all users to system components."
- **Explanation:** Each user must have a unique ID, and access should be authenticated to ensure that actions are traceable to specific individuals. This requirement helps in maintaining accountability and ensuring that access is appropriate and justified.

## Explanation:

Granting access without understanding the tasks or purpose would violate the principle of least privilege, which aims to minimize unnecessary access to sensitive data and systems. It is essential to:

- Determine the specific needs and responsibilities of the individual.
- Ensure that access is appropriate for their role.
- Regularly review and update access rights based on changes in job roles or responsibilities.

They claim that their position as executives or owners gives them the ability to decide who has access and what access they get.

## Relevant Requirements and References:

**Requirement 7: Restrict Access to System Components and Cardholder Data by Business Need to Know**

- **Source:** PCI DSS v4.0, Page 161
- **Quote:** "Restrict access to system components and cardholder data to only those individuals whose job requires such access. This principle ensures that access rights are granted based on the least privilege necessary to perform job responsibilities."

July 1 @ 838AM: Origional Reconsider Exhibits Trimmed - No laws, Cases, Publications      Page # 161 of 185      Exhibit 101-B

Hurson District Exhibit 16-2                 Exhibit Page # 161 of 185                 EXHIBIT 316-2

- **Explanation:** Access must be granted based on job responsibilities and business need. Granting global access without justification undermines this requirement.

### Requirement 8: Identify Users and Authenticate Access to System Components

- **Source:** PCI DSS v4.0, Page 167
- **Quote:** "Assign a unique identification (ID) to each person with access and authenticate all users to system components."
- **Explanation:** Each user must be uniquely identified and authenticated, ensuring accountability and traceability of access.

### Requirement 12: Support Information Security with Organizational Policies and Programs

- **Source:** PCI DSS v4.0, Page 290
- **Quote:** "Develop, implement, and maintain a security policy that addresses information security for all personnel. This includes establishing, documenting, and distributing security policies and procedures that clearly define information security responsibilities for all personnel."
- **Explanation:** Policies and procedures must be established and followed, which includes defining who is authorized to grant access and under what circumstances.

## Explanation:

Even company owners or executives are required to adhere to PCI DSS requirements. They cannot arbitrarily grant global access without justification and without following the established security policies and procedures. Here are the key points:

1. **Need to Know and Least Privilege:** Access should be granted based on the specific needs of the job role. Global access should be justified and limited to individuals who absolutely require it.

2. **Documented Procedures:** PCI DSS requires that security policies and procedures be documented. This includes specifying who has the authority to grant access and the process for doing so.

3. **Auditability and Accountability:** All access control actions should be logged and auditable. Granting access without proper documentation and justification can lead to non-compliance.

## Who is Authorized to Grant Access:

PCI DSS does not specify particular job titles or roles that are authorized to grant access. Instead, it requires that each organization define this within their security policies. Typically, this responsibility would fall to individuals in IT security roles or designated compliance officers, but it must be clearly defined in the organization's security policy.

## Conclusion:

Granting global access without following proper procedures and without proper justification would violate PCI DSS requirements. Even if ordered by a company owner or executive, such actions must comply with established policies and procedures designed to ensure the security of cardholder data and the integrity of the cardholder data environment (CDE). Compliance with PCI DSS is mandatory, and failure to adhere can result in penalties, security breaches, and loss of trust.

Please note that I have consistently provided multiple options to address the access issue, and they won't even tell me what the access is for. I even found justification to grant Justin Drummon access to an emergency break glass admin account. He was scheduled to meet with me last Monday to demonstrate his working knowledge, after which I planned to contact Geoff to establish the PCI compliance portal account, officially making Justin responsible for our PCI Compliance. Given that this access is intended for emergencies, the duty requirement would be mitigated. I proactively found a solution and approached him.

Additionally, I have been collaborating with the Director of Services at Cielo and attempting to schedule time with Karen Cepress to arrange for three emergency keys. I would hold the fourth key, and the system/cloud manager was planned to hold the fifth. Adhering to best practices, these five accounts would be separate from those used for daily tasks.

I am unfortunately in the position of ethically and legally challenged to navigate this process delicately, but to the best of my knowledge, I am acting as a good steward of Ohana by protecting them from potentially causing damage to themselves and, in turn, potentially causing damage to the brand. That is all I can say. Please let me know if you would like to discuss the merits above.

Gratefully,
RDC



**Ryan Wagner <ryan@mxt3.com>**

## Legal Analysis Consultation

**Andrew Dansicker** <adansicker@dansickerlaw.com>                              Tue, Jun 18, 2024 at 12:00 AM
To: Andrew Dansicker <adansicker@dansickerlaw.com>, Ryan Dillon-Capps <ryan@mxt3.com>

Ryan,

I started reviewing your paperwork, and frankly, with the death in my family and a national conference next week, I just don't have the time and ability to focus on assisting you with such a complicated and time-consuming matter.  The fact that you've been served with papers for a tro and injunction is not something that I can handle at this time.

I refunded your fee, and I wish you the best of luck moving forward.

Andrew
-----------------------------------------------------
Law Office of Andrew M. Dansicker, LLC
11350 McCormick Road
Executive Plaza II, Suite 705
Hunt Valley, Maryland 21031
(410) 771-5668
(443) 927-7390 (fax)
dansickerlaw.com

*Focusing on Maryland Employment Law Issues*

**From:** Andrew Dansicker <amdansicker@hotmail.com> on behalf of Andrew Dansicker
<adansicker@dansickerlaw.com>
**Sent:** Monday, June 17, 2024 9:47 AM
**To:** Andrew Dansicker <adansicker@dansickerlaw.com>; Ryan Dillon-Capps <ryan@mxt3.com>
**Subject:** Re: Legal Analysis Consultation

[Quoted text hidden]



Ryan Wagner <ryan@mxt3.com>

## Fwd: Ohana Growth Partners, LLC v Ryan Dillon-Capps
5 messages

**Brennen, Robert S.** <RBRENNEN@milesstockbridge.com>                    Mon, Jun 17, 2024 at 10:28 PM
To: "ryan@mxt3.com" <ryan@mxt3.com>

Sent from my iPhone

Begin forwarded message:

> **From:** "Brennen, Robert S." <RBRENNEN@milesstockbridge.com>
> **Date:** June 17, 2024 at 09:13:28 EDT
> **To:** Ryan.DillonCapps@ohanagp.com
> **Subject: Re: Ohana Growth Partners, LLC v Ryan Dillon-Capps**
>
> We have been advised by Judge DeSimone's Chambers that the Court will hear Ohana's Motion for a Temporary Restraining Order this morning as soon as possible after I arrive at the courthouse, which ought to be in about 35 minutes. If you have retained a lawyer to represent you in this matter you should have your lawyer contact Chambers to arrange to participate. If not you can contact Chambers and arrange to appear on your own behalf.
>
> Sent from my iPhone
>
>> On Jun 14, 2024, at 11:49, Brennen, Robert S. <RBRENNEN@milesstockbridge.com> wrote:
>>
>>
>> We have been retained by Ohana Growth Partners, LLC to represent it in connection with your ongoing breaches of your contract with and duty of loyalty to the Company and your continuing violation of M. . CODE ANN., CRIM. LA□., §7-302(c) through your refusal to provide Global Admin rights to Phil Leodore of Hartman Executive Advisors. Your continued refusal to comply with Ohana's demands, and your action to lock VP of Human Resources Richard Hartman out of the Company's MS 365 account has left the Company with no option but to seek assistance of the courts.
>>
>>
>> Attached are copies of a Complaint that will be filed on Ohana's behalf against you in the Circuit Court for Baltimore County. Also attached is a Motion for Entry of a Temporary Restraining Order and Preliminary Injunction, Memorandum of Law in support of the motion with exhibits, and a proposed Order that will be filed along with the Complaint. Our transmitting these documents does not currently constitute service of process triggering your duty to file a response to the Complaint, but it does place you on notice of the Motion for a TRO.
>>
>>
>> Immediately after the documents are filed we will transmit courtesy copies of the filings to the Hon. Michael J. Finifter, who is serving as today's Chambers Judge for the Court, and request that we be given an opportunity to heard on the Motion for a TRO as soon as possible this afternoon. I will advise you as to whether the Court sets an in-person or telephonic hearing on the motion. If you are represented by an attorney, you should have your attorney contact me as soon as possible.

Ohana will consider withdrawing the Motion for TRO provided that (1) you immediately provide Global Admin rights to Phil Leodore of Hartman Executive Advisors,; (2) we receive confirmation from Mr. Leodore that he has received and can exercise those rights; and (3) you confirm in writing that you will comply with the suspension letter sent to you yesterday by Richard Hartman. Time is of the essence. Ohana is also open to a negotiated resolution to the entire matter and any claims that you believe you may have, but will not entertain any discussions until the issue of Global Admin rights is resolved. I am available by telephone to discuss the matter with you and/or your attorney should you wish to do so.


Regards,



**Robert Brennen**
*Principal*


100 Light Street | Baltimore, MD 21202


D: +1 410.385.3653 | O: +1 410.727.6464 | F: +1 410.698.1352





bio | vCard | rbrennen@milesstockbridge.com





&lt;Civil - Case Information Report1.pdf&gt;
&lt;2024-06-14 Complaint Ohana v Dillon-Capps.pdf&gt;
&lt;2024-06-14 TRO PI Cover Motion.pdf&gt;
&lt;2024-06-14 MOL in support of TRO.pdf&gt;
&lt;Exhibit 1 to MOL - Hartman Affidavit.pdf&gt;
&lt;Exhibit 2 to MOL - Justin_Drummond Affidavit.pdf&gt;
&lt;Exhibit 3 to MOL.pdf&gt;
&lt;2024-06-14 Proposed TRO.pdf&gt;
&lt;image001.png&gt;
&lt;image002.png&gt;
&lt;image003.jpg&gt;
&lt;image004.png&gt;
&lt;image005.png&gt;

Confidentiality Notice:

This e-mail, including any attachment(s), is intended for receipt and use by the intended addressee(s), and may contain confidential and privileged information. If you are not an intended recipient of this e-mail, you are hereby notified that any unauthorized use or distribution of this e-mail is strictly prohibited, and requested to delete this communication and its attachment(s) without making any copies thereof and to contact the sender of this e-mail immediately. Nothing contained in the body and/or header of this e-mail is intended as a signature or intended to bind the addressor or any person represented by the addressor to the terms of any agreement that may be the subject of this e-mail or its attachment(s), except where such intent is

July 1 @ 838AM: Origional Reconsider Exhibits Trimmed - No laws, Cases, Publications          Page # 166 of 185          Exhibit 101-B

Hurson District Exhibit 16-2                          Exhibit Page # 166 of 185                          EXHIBIT 316-2

6/18/24, 2:17 PM                    MXT3 Mail - Fwd: Ohana Growth Partners, LLC v Ryan Dillon-Capps

* expressly indicated.

Any federal tax advice provided in this communication is not intended or written by the author to be used, and cannot be used by the recipient, for the purpose of avoiding penalties which may be imposed on the recipient by the IRS. Please contact the author if you would like to receive written advice in a format which complies with IRS rules and may be relied upon to avoid penalties.

Secure Upload/Download files click here.

---

**Brennen, Robert S.** <RBRENNEN@milesstockbridge.com>          Mon, Jun 17, 2024 at 10:29 PM
To: "ryan@mxt3.com" <ryan@mxt3.com>

Sent from my iPhone

Begin forwarded message:

> **From:** "Brennen, Robert S." <RBRENNEN@milesstockbridge.com>
> **Date:** June 17, 2024 at 10:07:28 EDT
> **To:** Ryan.DillonCapps@ohanagp.com
> **Subject: Re: Ohana Growth Partners, LLC v Ryan Dillon-Capps**
>
> I am in the Courtroom and about to be heard on the motion
> Sent from my iPhone
>
>> On Jun 17, 2024, at 09:13, Brennen, Robert S. <RBRENNEN@milesstockbridge.com> wrote:
>>
>> We have been advised by Judge DeSimone's Chambers that the Court will hear Ohana's Motion for a Temporary Restraining Order this morning as soon as possible after I arrive at the courthouse, which ought to be in about 35 minutes. If you have retained a lawyer to represent you in this matter you should have your lawyer contact Chambers to arrange to participate. If not you can contact Chambers and arrange to appear on your own behalf.
>>
>> Sent from my iPhone
>>
>>> On Jun 14, 2024, at 11:49, Brennen, Robert S. <RBRENNEN@milesstockbridge.com> wrote:
>>>
>>> We have been retained by Ohana Growth Partners, LLC to represent it in connection with your ongoing breaches of your contract with and duty of loyalty to the Company and your continuing violation of M. . CODE ANN., CRIM. LA .., §7-302(c) through your refusal to provide Global Admin rights to Phil Leodore of Hartman Executive Advisors. Your continued refusal to comply with Ohana's demands, and your action to lock VP of Human Resources Richard Hartman out of the Company's MS 365 account has left the Company with no option but to seek assistance of the courts.
>>>
>>> Attached are copies of a Complaint that will be filed on Ohana's behalf against you in the Circuit Court for Baltimore County. Also attached is a Motion for Entry of a Temporary Restraining Order and Preliminary Injunction, Memorandum of Law in support of the motion with exhibits, and a proposed Order that will be filed along with the Complaint. Our transmitting these documents does not

currently constitute service of process triggering your duty to file a response to the Complaint, but it does place you on notice of the Motion for a TRO.

Immediately after the documents are filed we will transmit courtesy copies of the filings to the Hon. Michael J. Finifter, who is serving as today's Chambers Judge for the Court, and request that we be given an opportunity to heard on the Motion for a TRO as soon as possible this afternoon. I will advise you as to whether the Court sets an in-person or telephonic hearing on the motion. If you are represented by an attorney, you should have your attorney contact me as soon as possible.

Ohana will consider withdrawing the Motion for TRO provided that (1) you immediately provide Global Admin rights to Phil Leodore of Hartman Executive Advisors,; (2) we receive confirmation from Mr. Leodore that he has received and can exercise those rights; and (3) you confirm in writing that you will comply with the suspension letter sent to you yesterday by Richard Hartman. Time is of the essence. Ohana is also open to a negotiated resolution to the entire matter and any claims that you believe you may have, but will not entertain any discussions until the issue of Global Admin rights is resolved. I am available by telephone to discuss the matter with you and/or your attorney should you wish to do so.

Regards,


**Robert Brennen**
*Principal*


100 Light Street | Baltimore, MD 21202


D: +1 410.385.3653 | O: +1 410.727.6464 | F: +1 410.698.1352

bio | vCard | rbrennen@milesstockbridge.com

&lt;Civil - Case Information Report1.pdf&gt;
&lt;2024-06-14 Complaint Ohana v Dillon-Capps.pdf&gt;
&lt;2024-06-14 TRO PI Cover Motion.pdf&gt;
&lt;2024-06-14 MOL in support of TRO.pdf&gt;
&lt;Exhibit 1 to MOL - Hartman Affidavit.pdf&gt;
&lt;Exhibit 2 to MOL - Justin_Drummond Affidavit.pdf&gt;
&lt;Exhibit 3 to MOL.pdf&gt;
&lt;2024-06-14 Proposed TRO.pdf&gt;
&lt;image001.png&gt;
&lt;image002.png&gt;
&lt;image003.jpg&gt;

6/18/24, 2:17 PM                          MXT3 Mail - Fwd: Ohana Growth Partners, LLC v Ryan Dillon-Capps

<image004.png>
<image005.png>

[Quoted text hidden]

---

**Brennen, Robert S.** <RBRENNEN@milesstockbridge.com>          Mon, Jun 17, 2024 at 10:29 PM
To: "ryan@mxt3.com" <ryan@mxt3.com>

Sent from my iPhone

Begin forwarded message:

> **From:** "Brennen, Robert S." <RBRENNEN@milesstockbridge.com>
> **Date:** June 17, 2024 at 11:50:47 EDT
> **To:** Ryan.DillonCapps@ohanagp.com
> **Subject: RE: Ohana Growth Partners, LLC v Ryan Dillon-Capps**
>
>
> The Circuit Court for Baltimore County has granted Ohana's Motion and entered the attached
> Temporary Restraining Order. Your failure to comply with the Order may subject you civil fines
> and civil contempt, as well as prosecution for criminal contempt. We trust that you will avoid
> those consequences by complying with the Order.
>
>
>
> **Robert Brennen** | *Principal*
>
> Miles & Stockbridge
>
> direct: +1 (410) 385-3653
>
> [Quoted text hidden]

[Quoted text hidden]

---

**2 attachments**


**image001.png**
2K


**2024-06-16 Temporary Restraining Order entered.pdf**
145K

---

**Brennen, Robert S.** <RBRENNEN@milesstockbridge.com>          Mon, Jun 17, 2024 at 10:28 PM
To: "ryan@mxt3.com" <ryan@mxt3.com>

As you requested.

Begin forwarded message:

July 1 @ 838AM: Origional Reconsider Exhibits Trimmed - No laws, Cases, Publications          Page # 169 of 185          Exhibit 101-B

. Hurson District Exhibit 16-2                    Exhibit Page # 169 of 185                    EXHIBIT 316-2

**From:** "Brennen, Robert S." <RBRENNEN@milesstockbridge.com>
**Date:** June 14, 2024 at 11:49:15 EDT
**To:** Ryan.DillonCapps@ohanagp.com
**Subject: Ohana Growth Partners, LLC v Ryan Dillon-Capps**

We have been retained by Ohana Growth Partners, LLC to represent it in connection with your ongoing breaches of your contract with and duty of loyalty to the Company and your continuing violation of M. . CODE ANN., CRIM. LA⁻., §7-302(c) through your refusal to provide Global Admin rights to Phil Leodore of Hartman Executive Advisors. Your continued refusal to comply with Ohana's demands, and your action to lock VP of Human Resources Richard Hartman out of the Company's MS 365 account has left the Company with no option but to seek assistance of the courts.

Attached are copies of a Complaint that will be filed on Ohana's behalf against you in the Circuit Court for Baltimore County. Also attached is a Motion for Entry of a Temporary Restraining Order and Preliminary Injunction, Memorandum of Law in support of the motion with exhibits, and a proposed Order that will be filed along with the Complaint. Our transmitting these documents does not currently constitute service of process triggering your duty to file a response to the Complaint, but it does place you on notice of the Motion for a TRO.

Immediately after the documents are filed we will transmit courtesy copies of the filings to the Hon. Michael J. Finifter, who is serving as today's Chambers Judge for the Court, and request that we be given an opportunity to heard on the Motion for a TRO as soon as possible this afternoon. I will advise you as to whether the Court sets an in-person or telephonic hearing on the motion. If you are represented by an attorney, you should have your attorney contact me as soon as possible.

Ohana will consider withdrawing the Motion for TRO provided that (1) you immediately provide Global Admin rights to Phil Leodore of Hartman Executive Advisors,; (2) we receive confirmation from Mr. Leodore that he has received and can exercise those rights; and (3) you confirm in writing that you will comply with the suspension letter sent to you yesterday by Richard Hartman. Time is of the essence. Ohana is also open to a negotiated resolution to the entire matter and any claims that you believe you may have, but will not entertain any discussions until the issue of Global Admin rights is resolved. I am available by telephone to discuss the matter with you and/or your attorney should you wish to do so.

Regards,

**Robert Brennen**
*Principal*

100 Light Street | Baltimore, MD 21202

D: +1 410.385.3653 | O: +1 410.727.6464 | F: +1 410.698.1352

bio | vCard | rbrennen@milesstockbridge.com

[Quoted text hidden]

**13 attachments**


MILES & STOCKBRIDGE        image001.png
                           6K

 image002.png
1K

image003.jpg
1K

image004.png
1K

image005.png
1K

Civil - Case Information Report1.pdf
142K

2024-06-14 Complaint Ohana v Dillon-Capps.pdf
48K

2024-06-14 TRO PI Cover Motion.pdf
36K

2024-06-14 MOL in support of TRO.pdf
91K

Exhibit 1 to MOL - Hartman Affidavit.pdf
1533K

Exhibit 2 to MOL - Justin_Drummond Affidavit.pdf
170K

Exhibit 3 to MOL.pdf
3425K

2024-06-14 Proposed TRO.pdf
21K

---

**Ryan Wagner** <ryan@mxt3.com>                              Mon, Jun 17, 2024 at 11:05 PM
Reply-To: ryan@mxt3.com
To: "Brennen, Robert S." <RBRENNEN@milesstockbridge.com>

I don't know why they told you to use that email address, except to say they knew I would not get the email.
Please do not continue to email ohanagp.com but direct your communications in writing to ryan@mxt3.com. You may
also text 703-303-1113.
I believe your colleague Holly Butler has my contact information from our interactions earlier this year.

When has the full court hearing been scheduled?

A family emergency, not mine, has delayed our side. Thank you for providing the email.

NONE OF THIS WAS A RESPONSE TO THE FILING

[Quoted text hidden]

**5 attachments**

MILES & STOCKBRIDGE **image001.png**
6K

**image002.png**
1K

**image003.jpg**
1K

**image004.png**
1K

**image005.png**
1K



Ryan Wagner <ryan@mxt3.com>

## Ohana Growth Partners LLC
1 message

**Ryan Wagner** <ryan@mxt3.com>                                        Mon, Jun 17, 2024 at 6:40 PM
Reply-To: ryan@mxt3.com
To: pleadore@hartmanadvisors.com

Mr. Leadore,

This is Ryan Dillon-Capps. I am reaching out from my personal email as I am currently unable to use my Ohanagp email. It has come to my attention that you may still be interested in working with Ohana Growth Partners. However, I have not received responses to my previous emails requesting assistance and information to facilitate your access and alignment with PCI Compliance. Ohana asserts that you are ready to be granted access, which I am authorized to provide. Please confirm your current status and interest in this relationship.

To help you make an informed decision, I want to clarify my situation. I am currently suspended, and during my tenure, I have always acted in the company's best interest within the bounds of legality. My intent was to verify your qualifications due to recent questions and investigations. Although these investigations have closed, the findings were contradictory to the initial evidence. This caution is necessary to ensure your access does not pose any risk.

Your introduction suggested you were qualified for a PCI DSS v4 assessment. While I hold no bias against you or your company, this assertion required verification. Had you introduced yourself simply as Phil Leadore from Hartman Executive Advisors wanting to review XYZ, I would have granted access for review purposes. Any request that did not raise flags about qualifications would have been fulfilled within my legal capacity.

Previously, I denied Justin Drummond's request for Global Admin access due to difficult circumstances at the time. However, I later offered a solution, contingent on his understanding of the PCI DSS v4 standards and acceptance of responsibility for our PCI compliance. I have told everyone involved that agreement with me is not necessary, but they must be prepared to justify their decisions in alignment with PCI DSS v4 standards if questioned. Justin would have had access if he had been ready to confirm his knowledge last Monday as planned.

On Thursday, I reached out to you due to an incident that occurred without the knowledge of ownership or Justin. It was shocking when the actions of the person I reported were later legitimized.

If not for my attorney's family emergency, our paperwork would already be filed, and we would be having this conversation from my regular work email. My experience has shown that transparency often leads to the realignment of positions, and I believe you are legally and ethically inclined to do the same. This is why I reached out to you on Thursday, well before my suspension occurred.

How familiar are you with PCI DSS v4? Please review it here. Once you are confident in your understanding, let's discuss this further. I need you to be knowledgeable and responsible for our PCI Compliance, which would justify granting you access to an emergency Global Administrator account. This will also establish you as Authorized Personnel, authorized to grant access and make access level decisions as I am, binding you to your decisions.

Please confirm you are still interested and can meet with me for a recorded meeting or via written communication. This is to ensure both of us remain protected by what we say, discuss, and provide a legal basis for my decision to grant you access. I will need to ask you several questions to understand your overall knowledge of key concepts and common issues that could arise. This isn't a repeat of my decisions; you need to articulate your own thoughts and decisions. Demonstrate your ability to make decisions based on PCI Compliance using critical reasoning, showing your working knowledge. We can establish responsibility for our PCI compliance quickly - hopefully the same day. I will then provide you with instructions on how to obtain your access key and related materials that allow you to access the Global Administrator account.

The first question will be to explain authorized and unauthorized access, followed by one or more questions to assess your working knowledge. If you can answer these questions, you will also understand why no one can tell you to do something outside of their authority in other areas, and this includes those who you may have another contract or obligation with. You would have to consult someone to know if any thing you are bound to would conflict with this duty which would place PCI Compliance at risk. I will ask you to affirm you do not know or have reason to believe. Reminder,

* this is PCI compliance for ALL of planet fitness. Not limited to Ohana and damage or impact is not the factor for PCI Compliance failure. Those mostly impact civil lawsuits that result from it.

Best regards,

Ryan Dillon-Capps

| OHANA GROWTH PARTNERS. LLC | IN THE |
|---|---|
| *PLANTIFF* | CIRCUIT COURT |
| | FOR |
| RYAN DILLON-CAPPS | BALTIMORE COUNTY |
| DEFENDANT | FILE NO: C-03-CV-24-002264 |

# AFFIDAVIT OF CAROLINE DILLON-CAPPS

1. **Professional Background:**
   A. I am the wife of Ryan Dillon-Capps and a licensed Clinical Social Worker in the state of Maryland, holding license number 23862, LCSW-C.
   B. I received my LMSW in May 2018 and my LCSW-C in July 2023.
   C. Ryan and I have known each other since 2021.
2. **Observations of Decline in Mental Health:**
   A. Since the end of December 2023, I have closely observed a significant decline in Ryan's mental health condition. He has been diagnosed with Post-Traumatic Stress Disorder (PTSD) and has experienced numerous panic attacks, ranging from a few minutes to several hours. These panic attacks are frequently accompanied by:
      i. **Dissociative Behaviors:** Ryan experiences flashbacks, distressing dreams (including talking in his sleep), recurring intrusive memories, time loops, and episodes of losing track of time.
      ii. **Hyperventilation:** During panic attacks, Ryan often hyperventilates, struggling to regain normal breathing patterns.
      iii. **Catatonia:** Since May 2024, I have witnessed Ryan go catatonic multiple times, becoming unresponsive for varying periods.
      iv. **Memory Issues:** Ryan frequently struggles with memory lapses and confusion, often unable to recall recent events or information. For instance, Ryan has been driving less, and on one occasion, after we had lunch, Ryan could not remember where he parked. We had arrived in separate vehicles and parked separately, so I drove Ryan around to help him locate his car, which was found in an adjacent parking lot.
      v. **Emotional Dysregulation:** Ryan exhibits extreme emotional dysregulation. He can be happy and optimistic one moment and then show signs of depression the next. Conversely, he may express excitement and optimism immediately after receiving adverse information.
      vi. **Agoraphobia:** Since April 2024, I have observed Ryan's agoraphobia symptoms, where he feels uncomfortable and anxious

being away from home. After our wedding, we planned a few days away but had to return early because Ryan was extremely uncomfortable being away from home.

3. **Escalation of Symptoms:**

   A. Since May 21, 2024, Ryan's symptoms have progressively worsened. Between May 21 and June 13, 2024, a series of events significantly heightened my concern for his well-being. We had multiple conversations about the possibility of hospitalization if his condition continued to deteriorate.

   B. Since June 13, 2024, Ryan's PTSD symptoms have become significantly more severe, with longer durations and increased frequency. He has been unable to complete basic tasks and has required my assistance to meet his basic needs.

   C. On June 17, 2024, I found Ryan hiding under a table in a dissociated state, repeatedly saying that they were safe under there and expressing confusion about whether this was real or a dream, and if I was a ghost. During this event, Ryan kept asking me the same questions, and then would ask why I kept saying the same thing.

4. **Courtroom Observations:**

   A. On June 26 and 27, 2024, I attended a hearing at the Baltimore Circuit Court, Courtroom 8, where I observed Ryan Dillon-Capps.

      i. I entered the courtroom around 9:15-9:20 AM while the court was in session. Upon entering, I noticed Ryan's table was cluttered with disorganized papers.

      ii. While Ryan was speaking in court, he exhibited pressured speech and struggled to answer questions appropriately. He had trouble recalling information, which impacted his ability to respond accurately.

      iii. On the night of June 26th, Ryan's account of looking for the key fob was portrayed as casually looking through his office. The search began by Ryan in his office and me downstairs to search the finished areas of the basement. When I came back upstairs, he had pulled bins and drawers and appeared to be going through them item by item. I joined Ryan, and we then had to go through everything again as he put things away item by item. Ryan mentioned that he went through the unfinished portion of the basement but forgot to mention how we went through the entire contents of the living room, dining room, upstairs guest bedroom, our bedroom, and our bathroom before I went to bed. When I woke up in the morning, the office was in disarray suggesting that he had gone through it again and had spent the entire night continuing to search the house.

      iv. Ryan also mentioned that he contacted a lawyer from another state but failed to recall that he had also asked me to contact attorneys

with a letter and a list of conflicts he wrote. He also told me about a scheduled meeting to speak with an attorney on June 24, 2024, and has told me about other instances where he contacted other attorneys in the weeks prior to June 13, including three other attorneys that Ryan told me he had started talking with before they found a conflict of interest. These are further examples of his memory issues.

5. **Personal Impact:**
   A. **Rescheduling Client Appointments:** Since June 13, 2024, I have had to reschedule client appointments on multiple days in order to help Ryan systematically.
   B. **Birthday Incident:** On a personal note, my birthday is January 4, 1987. On January 2, 2024, my mother arrived in Baltimore to visit us for my birthday and to assist with our wedding planning, as our wedding was scheduled for April 4, 2024. Unfortunately, Ryan was unable to participate in birthday celebrations on January 4, 2024, due to experiencing numerous panic attacks. His concern about my mother witnessing these episodes added to his distress, leaving me torn between attending to my mother and caring for Ryan.
   C. **Wedding Planning:** During the wedding planning process, we envisioned certain elements that were ultimately unattainable due to ongoing harassment from Ohana Growth Partners, LLC. This harassment severely hindered Ryan's ability to engage in the planning process, which he had been looking forward to.

**I SOLEMNLY DECLARE ADN AFFIRM UNDER PENALTIES OF PURJURY AND UPON PERSONAL KNOWLDGE THAT THE CONTRANTS OF THE FORGONG PAPER AND EXHIBTS THERETO ARE TRUE**

**DATE: JULY 29, 2024**

Caroline Dillon-Capps

The Law Firm of J.W. Stafford
410-431-2290
https://www.staffordtrialteam.com/maryland-employment-lawyer/family-medical-leave-act-fmla/
Complete

HKM
410-650-4028
https://hkm.com/baltimore/family-and-medical-leave-act/
Complete

Joseph Greenwald Lake
240-553-1198
https://www.jgllaw.com/attorney/jay-holland/?adSubId=4027213&refPageViewId=896841e4911487af
Complete

Thatcher, Zavaro, & Mani
301-550-2851
https://www.thatcherlaw.com/?adSubId=1160323&refPageViewId=896884d694340a85
Not Sent- Text Box too small- no email

**Smithey Law Group LLC**
706 Giddings Ave #200
Annapolis, MD 21401
(410) 881-8512joyce.smithey@smitheylaw.com

Email Sent through MXT3 account

Luchansky Law
410-522-1020
https://employmentattorneymd.com/?
Completed- Website Form

Zipin, Amster, Greenberg
Tel: 301-381-1327 • Fax: 240-839-9142
inquiries@zagfirm.com
Completed- Website Form

Alan Lescht & Associates
202-463-6036

Freedman Law
301-750-9766
https://www.freedlawfirm.com/

Not Completed- Text box too short
Melehy & Associates
301-205-5276
https://www.melehylaw.com/contact/thank-you/
Completed-Website Form

EmeJuru
240-607-5552
https://www.emejurulaw.com/
Completed Form Website

Morgan & Morgan
833-315-5313
https://www.forthepeople.com/
Completed on Website

The Employment Group
866-639-9593
https://www.employmentlawgroup.com/thank-you/
Completed on Website

Portner & Shure
855-954-4141
https://www.portnerandshure.com/our-firm/
Completed on Webiste

The Garner Firm
215-645-5955
https://www.garnerltd.com/
Not Completed- text form box too short (750 characters)

The Spiggle Law Firm
202-978-5333
https://spigglelaw.com/
Completed Form on Website

KSC Law
201 N. Charles Street – Suite 1000, Baltimore, Maryland 21201

410-244-1010

info@kscadvocates.com

Emailed through MXT3 account with PDF

Gilbert Employment Law
888-676-8096
https://www.gelawyer.com/?npcmp=dir%3Alocal%3A4074103%3A20910
Unable to complete form there are specific information that I do not have at this time

Shawe Rosenthal LLP
One South Street
Suite 1800
Baltimore, MD 21202
**Phone:** 410-752-1040
**Fax:** 410-752-8861
**Email:** shawe@shawe.com
https://shawe.com/
Email through MXT3.com with PDF attachment

Marc J. Smith LLC
301-838-8950
https://www.marcjsmithlaw.com/?utm_source=google-local&utm_medium=organic&utm_campaign=270
6
Completed form on Website

The Spencer Firm
1 Research Ct STE 450-92
Phone: 301-637-2866
Fax 866-686-2126
https://spencer-firm.com/
Form Completed on Website

The Ray Legal Group LLC
Phone 301-753-3232
https://www.raylegalgroup.com/
Completed Form on Website

Ferrante & Dill
410-535-6100
info@fdhlegal.com
https://fdhlegal.com/family-and-medical-leave-act-parental-leave-act-in-maryland/
Email sent through MXT3 account PDF attached

Weisberg Cummings P.C.
2704 Commerce Drive, Suite B
Harrisburg, PA 17110
**Phone:** 717-238-5707
**Toll Free:** 866-716-2315
**Fax:** 717-233-8133
Completed Form on Website

Iamele & Iamele
410-779-6160
Fax 410-779-6161
https://www.iamelelawfirmbaltimore.com/



# 404 - Page not found

We couldn't find this page. You can try signing in, or choosing from the relevant search results below:

Microsoft 365 admin center help

Assign admin roles the Microsoft 365 admin center - Microsoft 365 admin

Add users and grant permissions - Microsoft Intune

Administrative units in Microsoft Entra ID - Microsoft Entra ID

Add users to an environment automatically or manually - Power Platform



### RYAN WAGNER
### VICE PRESIDENT OF INFORMATION TECHNOLOGY
### COMPENSATION ADDENDUM
### 7/6/2022

**Base Salary:**      $124,120.00 / per year

**Monthly Bonus:**      Up to $1,000.00 / per month if monthly financial and operational goals are met. *(Plan and dollar amounts subject to change at any time)*

**Annual Bonus:**      Up to $6,000.00, based on meeting KPI's and operational goals of the company. The amount is at the discretion of the company.

**Phone/Internet Reimbursement:**      Up to $150.00 / per month

**Benefits:**
- Company benefits as described in the associate handbook.
- Health club membership.
- Participatory 401K plan based on plan requirements.
- Conventions and professional education-on agreed upon basis.
- Approved business expense reimbursements for club promotion.

**Start Date:**      Your first day of this agreement is 7/6/2022

**AGREED UPON BY:**

Ryan Wagner
_____
**Associate: Print Name**

*Ryan Wagner*
Ryan Wagner (Jul 20, 2022 12:00 EDT)
_____
**Associate: Signature**

*Glenn Norris*
_____
**Supervisor Signature**

**Jul 20, 2022**
_____
**Date**

**Jul 20, 2022**
_____
**Date**

_____
**Date**



OH∆NA
Growth Partners

**RYAN WAGNER**
**VICE PRESIDENT OF INFORMATION TECHNOLOGY**
**COMPENSATION ADDENDUM**
**7/6/2023**

**Base Pay:**         $136,532 / Year  ($5,688.83 / Pay Period)

**Monthly Bonus:**    Up to $1,100.00 / Month paid as a percentage based on KPI score.
                      *(Plan and dollar amounts subject to change at any time)*

**Annual Bonus:**     Up to $12,000 based on meeting KPI's and operational goals of the company. The
                      amount is at the discretion of the company.

**Phone / Internet**
**Reimbursement:**    Up to $150.00 / Month. Reimbursement request must be made via reimbursement
                      portal with receipt.

**Benefits:**
- Company benefits as described in the associate handbook.
- Health club membership.
- Participatory 401K plan based on plan requirements.
- Conventions and professional education-on agreed upon basis.
- Approved business expense reimbursements.

**Start Date:**       Your first day of this agreement is 7/6/2023.

**AGREED UPON BY:**

Ryan Wagner
_____
**Associate: Print Name**

*Ryan Wagner*
Ryan Wagner (Jul 26, 2023 18:02 EDT)
_____
**Associate: Signature**

*Glenn Norris*
Glenn Norris (Jul 26, 2023 17:50 EDT)
_____
**Supervisor**

Jul 26, 2023
_____
**Date**

Jul 26, 2023
_____
**Date**

Jul 26, 2023
_____
**Date**

# 000 Wagner, Ryan VP of IT 7-6-2023 - Comp Addendum

Final Audit Report                                                     2023-07-26

| | |
|---|---|
| Created: | 2023-07-25 |
| By: | Richard Hartman (Rich.hartman@ohanagp.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAoQsmQSjiMODsYLVv1FuspNECAs6hIqeO |

## "000 Wagner, Ryan VP of IT 7-6-2023 - Comp Addendum" History

📄 Document created by Richard Hartman (Rich.hartman@ohanagp.com)
2023-07-25 - 8:21:53 PM GMT

✉ Document emailed to glenn@ohanagp.com for signature
2023-07-25 - 8:22:10 PM GMT

📄 Email viewed by glenn@ohanagp.com
2023-07-26 - 9:49:56 PM GMT

🔏 Signer glenn@ohanagp.com entered name at signing as Glenn Norris
2023-07-26 - 9:50:37 PM GMT

🔏 Document e-signed by Glenn Norris (glenn@ohanagp.com)
Signature Date: 2023-07-26 - 9:50:39 PM GMT - Time Source: server

✉ Document emailed to ryan.wagner@ohanagp.com for signature
2023-07-26 - 9:50:40 PM GMT

📄 Email viewed by ryan.wagner@ohanagp.com
2023-07-26 - 10:01:32 PM GMT

🔏 Signer ryan.wagner@ohanagp.com entered name at signing as Ryan Wagner
2023-07-26 - 10:02:19 PM GMT

🔏 Document e-signed by Ryan Wagner (ryan.wagner@ohanagp.com)
Signature Date: 2023-07-26 - 10:02:21 PM GMT - Time Source: server

✅ Agreement completed.
2023-07-26 - 10:02:21 PM GMT

📕 **Adobe Acrobat Sign**