| | |
|---|---|
| **OHANA GROWTH PARTNERS, LLC** <br><br> Plaintiff, <br><br> vs. <br><br> **RYAN DILLON-CAPPS** <br><br> Defendant. | **IN THE** <br><br> **CIRCUIT COURT** <br><br> **FOR** <br><br> **BALTIMORE COUNTY** <br><br> **CASE NO: C-03-CV-24-002264** |

## MOTION FOR SANCTIONS

MOTION FOR SANCTIONS .................................................................................................. 1

**I INTRODUCTION** .......................................................................................................... 4

**II PRIMA FACIA ELEMENTS** ....................................................................................... 5

A BAD FAITH ....................................................................................................................... 5
B LACK OF SUBSTANTIAL JUSTIFICATION ........................................................................... 5
C CAUSATION OF UNNECESSARY DELAY OR EXPENSE ......................................................... 6
D CONCLUSION: PRIMA FACIE CASE FOR SANCTIONS ......................................................... 7

**III SANCTIONABLE CONDUCT** ................................................................................... 7

A ABUSE OF PROCESS ........................................................................................................... 7

I.     Abuse of Process Defined ............................................................................................ 7
II.    Filing a Fraudulent Lawsuit to Harass and Intimidate ................................................ 8
III.   Continuing to Pursue the Lawsuit Without Justification ............................................. 9
IV.    Legal Remedies and Sanctions for Abuse of Process .................................................. 9
V.     **Conclusion: Abuse of Process Through Fraudulent Litigation** ............................. 10

*Legal Basis:*                                                                              *10*

I.     Legal Process Should Not Be Used for an Improper Purpose ...................................... 11
II.    Misuse of Legal Procedures Constitutes Abuse of Process .......................................... 11
III.   Sanctions for Bad Faith and Abuse of Process ............................................................ 12
IV.    Justification for Sanctions in This Case ....................................................................... 12
V.     **Conclusion: Sanctions for Abuse of Process Are Justified** .................................... 13

B ATTEMPTED FALSE IMPRISONMENT (COMMON LAW) ...................................................... 13

I.     Elements of False Imprisonment Under Maryland Law ............................................... 14
II.    Abuse of Legal Process and Deprivation of Liberty .................................................... 14
III.   No Legal Justification for Show Cause Incarceration .................................................. 15

IV.        Coercive and Intimidating Use of Incarceration Threats ................................................................. 16

*Legal Basis:*                                                                                                          *16*

I.         False Imprisonment and Unlawful Restraint................................................................................. 17
II.        Even Temporary or Attempted Restrictions on Liberty Are Sanctionable..................................... 17
III.       Attempt Liability Under Maryland Law (Maryland Criminal Law Code § 1-202).......................... 18
IV.        Sanctions for Misuse of Legal Process to Attempt False Imprisonment ....................................... 19
V.         **Conclusion: Sanctions for Attempted False Imprisonment** ...................................................... 19

C INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (IIED) .................................................... 20

I.         Extreme and Outrageous Conduct .............................................................................................. 20
II.        Intent to Cause Emotional Distress............................................................................................. 21
III.       Causal Connection to Emotional Distress .................................................................................... 22
IV.        Severe Emotional Distress ......................................................................................................... 22
V.         **Conclusion: Intentional Infliction of Emotional Distress** ...................................................... 23

*Legal Basis:*                                                                                                          *23*

I.         Extreme and Outrageous Conduct with No Legitimate Legal Purpose.......................................... 24
II.        Malicious Intent and Reckless Disregard for Emotional Distress .................................................. 24
III.       IIED as Grounds for Sanctions in Maryland ................................................................................ 25
IV.        Severe Emotional Distress as a Result of Sanctionable Conduct .................................................. 26
V.         **Conclusion: Sanctions Warranted for Intentional Infliction of Emotional Distress** ................ 27

D DEFAMATION THROUGH MISUSE OF LEGAL PROCESS ................................................................ 27

I.         False and Defamatory Statements............................................................................................... 28
I.         Publication and Misuse of Legal Process .................................................................................... 28
II.        Harm to Reputation and Accountability Evasion .......................................................................... 29
III.       **Conclusion: Defamation Through Legal Abuse** ..................................................................... 30

*Legal Basis:*                                                                                                          *30*

I.         Malicious Intent and Falsity ....................................................................................................... 31
II.        Misuse of Legal Process as a Vehicle for Defamation................................................................... 32
III.       Defamation as Bad Faith Conduct Warranting Sanctions.............................................................. 32
IV.        Grounds for Sanctions: Harm to Reputation and Legal Abuse ...................................................... 33
V.         **Conclusion: Sanctions Are Warranted for Defamatory Conduct** ............................................. 34

E ADA VIOLATION: DENIAL OF REASONABLE ACCOMODATION AND MISREPRESENTATION OF FACTS ... 34

*Legal Basis:*                                                                                                          *36*

I.         Legal Standard for ADA Violations and Sanctions ....................................................................... 37
I.         Sanctions for Misrepresentation in ADA Accommodation Requests .............................................. 37
II.        Sanctions for ADA Violations in the Legal Process ..................................................................... 38
III.       **Conclusion: Sanctions Are Warranted for the Denial of ADA Accommodations and Misrepresentation** .. 39

F RETALIATORY LITIGATION AND ESCALATION OF RESOLVED DISPUTE .................................... 39

I.         Retaliation for Whistleblowing on Corporate Misconduct: ........................................................... 40
II.        Attempts to Conceal Fraud Investigations: .................................................................................. 40
III.       Failure to Investigate HR and Financial Irregularities: ................................................................. 41

*Legal Basis:*                                                                                                          *42*

I.         Federal Retaliation Law: Burlington N. & Santa Fe Ry. Co. v. White ............................................ 42
I.         **Maryland Retaliation Law: Expanding on Federal Standards**.................................................... 43
II.        **Maryland Whistleblower Protections and Retaliatory Lawsuits**................................................. 44
III.       **Retaliatory Lawsuits as an Abuse of Process in Maryland** ....................................................... 44
IV.        **Conclusions: Federal and Maryland Retaliation Protections Converge** ...................................... 45

G OBSTRUCTION OF EVIDENCE.................................................................................................... 46

Page **2** of **82**

I.      Conditional Release of Court Transcript ..................................................................... 46
II.     Prejudice to the Defendant's Case ............................................................................. 47
III.    Abuse of Process ........................................................................................................ 48
IV.     Impact on Judicial Integrity ...................................................................................... 49
V.      Conclusion: Sanctions for Obstruction of Evidence ................................................ 49

*Legal Basis*                                                                                    *50*

I.      Rule 3.4(a) – Fairness to Opposing Party and Counsel............................................. 50
II.     Rule 8.4(c) – Misconduct .......................................................................................... 51
III.    Abuse of Process – Improper Use of Judicial Mechanisms ...................................... 51
IV.     Conclusion: Grounds for Sanctions .......................................................................... 52

H DISQUALIFICATION OF COUNSEL .................................................................................. 52

I.      Conflict of Interest and Ethical Violations................................................................ 53
II.     Violations of the Maryland Rules of Professional Conduct ...................................... 54
III.    Disqualification to Protect the Integrity of Proceedings ........................................... 55
IV.     Conflict of Interest and Repeated Misrepresentation ................................................ 55
V.      The Harm to Defendant, Plaintiff, and the Court...................................................... 56

*Legal Basis*                                                                                    *56*

I.      Conflict of Interest and Divided Loyalties................................................................ 57
II.     Courts Mandate Disqualification for Conflicts of Interest........................................ 57
III.    Legal Basis for Sanctions: Maryland Rules of Professional Conduct, Rule 3.3(a) ........... 58
IV.     Duty of Candor and Submission of Fraudulent Evidence ......................................... 58
V.      Fraud Upon the Court Justifies Sanctions and Disqualification................................ 59
VI.     Disqualification and Sanctions Are Necessary to Protect the Integrity of Proceedings ....... 59
VII.    **Conclusion: Legal Basis for Disqualification and Sanctions** ................................... 60

**IV RECOMMENDED SANCTIONS**.................................................................................. **60**

A MONETARY SANCTIONS ................................................................................................ 61

*Punitive Damages*                                                                               *61*
*Liquidated Damages*                                                                             *62*
*Legal Basis for Monetary Sanctions: Rule 11(b) and Maryland Rule 1-341*                         *64*
*Failure to Address Merits and Enhanced Damages*                                                 *65*
*Conclusion: Monetary Sanctions Are Essential to Compensate the Defendant and Deter Future Misconduct*  *65*

B DISMISSAL OF CLAIMS WITH PREJUDICE ..................................................................... 66

*Basis for Dismissal with Prejudice*                                                             *66*
*Further Considerations for Dismissal*                                                           *67*
*Conclusion: Dismissal with Prejudice is Necessary and Just*                                     *68*

C REFERRAL FOR ETHICAL REVIEW ................................................................................ 68

*Basis for Referral: Violations of Maryland Rules of Professional Conduct*                       *69*
*Ethical Violations and the Necessity for Professional Discipline*                               *70*
*Conclusion: Referral for Ethical Review is Necessary*                                           *71*

D REFERRAL TO ATTORNEY GENERAL CRIMINAL REVIEW........................................... 71

*Violation of Maryland Personal Information Protection Act (PIPA), Md. Code Ann., Com. Law § 14-3503(a)*  *71*
*Perjury (Md. Code, Crim. Law § 9-101)*                                                          *72*
*Fraud (Md. Code, Crim. Law § 8-301 and § 8-402)*                                                *72*
*Conspiracy (Md. Code, Crim. Law § 9-802)*                                                       *73*
*Obstruction of Justice (Md. Code, Crim. Law § 9-306)*                                           *73*
*Reckless Endangerment (Md. Code, Crim. Law § 3-204)*                                            *73*

| | |
|---|---|
| *Criminal Negligence (Common Law)* | *74* |
| *Justification for Criminal Review: Protection of Legal Process and Public Safety* | *74* |
| *Conclusion: Referral for Attorney General Criminal Review is Essential* | *75* |
| E DISQUALIFICATION OF COUNSEL...................................................................... | 75 |
| *Basis for Disqualification: Rules 1.7 and 3.3 of the Maryland Rules of Professional Conduct* | *76* |
| **V CONCLUSION**............................................................................................. | **77** |
| *Monetary Sanctions:* | *78* |
| *Dismissal of Claims with Prejudice* | *79* |
| *Referral for Ethical Review* | *79* |
| *Referral for Criminal Review:* | *79* |
| *Disqualification of Counsel:* | *79* |
| *Conclusion Summary* | *80* |

## I  INTRODUCTION

1        The Defendant, **Ryan Dillon-Capps**, appearing **Pro Se**, respectfully moves this Honorable Court to impose **sanctions** against the Plaintiff, **Ohana Growth Partners**, and their counsel, **Miles & Stockbridge**, pursuant to **Maryland Rule 1-341**. The Defendant asserts that the Plaintiff's actions throughout these proceedings have been undertaken in **bad faith, without substantial justification**, and represent a clear **abuse of the judicial process**.

2        The lawsuit is **fraudulent** in nature, lacking any legitimate legal or factual basis, as the Plaintiff has failed to demonstrate any specific harm that would warrant the initiation of this litigation. Furthermore, the Plaintiff and their counsel have repeatedly engaged in deceptive practices, including the submission of **fraudulent evidence** and the misrepresentation of critical facts, knowingly misleading this Court to secure improper legal relief. Their actions have caused unnecessary harm and hardship to the Defendant, both financially and emotionally.

3        In light of these ongoing abuses, and to preserve the integrity of these proceedings, the Defendant respectfully requests that this Court impose **appropriate sanctions** to address the

misconduct of the Plaintiff and their counsel. In support of this motion, the Defendant sets forth the following arguments and factual basis:

## II  PRIMA FACIA ELEMENTS

### A  Bad Faith

4      Bad faith occurs when a party knowingly engages in dishonest or unfair practices during litigation, acting with ill intent to harass, delay, or otherwise disrupt the judicial process. **Bad faith** is not simply a matter of negligence or poor judgment; it involves intentional misconduct, such as pursuing baseless claims with the knowledge that they lack merit. In **Christian v. Mattel, Inc.**, 286 F.3d 1118 (9th Cir. 2002), the court emphasized that bad faith may be found when a party files meritless claims for improper purposes, such as harassment, to impose unnecessary burdens on the opposing party, or to delay resolution of the matter.

5      In this case, the Plaintiff's actions demonstrate clear bad faith. They have pursued a fraudulent lawsuit based on fabricated evidence and unfounded claims, intending to mislead the Court and harass the Defendant. Their improper purpose, aimed at pressuring the Defendant through baseless litigation, meets the standard for bad faith conduct and justifies the imposition of sanctions under **Maryland Rule 1-341**.

### B  Lack of Substantial Justification

6      A claim lacks **substantial justification** when there is no credible evidence or legal basis supporting it. The **Maryland Court of Appeals** in **Inlet Associates v. Harrison Inn Inlet, Inc.**, 324 Md. 254 (1991), held that claims lacking substantial justification are those that a reasonable

attorney would not pursue under existing law. When an action is frivolous, meritless, or based on misrepresentations, it cannot be considered substantially justified.

7     In this case, the Plaintiff's lawsuit lacks any credible factual or legal foundation. The claims made against the Defendant are unsupported by evidence, as the Plaintiff has failed to demonstrate specific harm or a legitimate cause of action. Instead, the Plaintiff has relied on fabricated and misleading information, which no reasonable attorney would have pursued. This absence of legal justification further supports the Defendant's motion for sanctions, as the lawsuit is frivolous and has no basis in fact or law.

## C  Causation of Unnecessary Delay or Expense

8     For sanctions to be imposed, the Defendant must also demonstrate that the Plaintiff's actions caused **unnecessary delay or expense**. This element requires showing that the opposing party's conduct has resulted in avoidable delays or costs, often by misusing procedural devices or prolonging the litigation without justification. In **Blake v. Blake**, 341 Md. 326 (1996), the court recognized that parties who unnecessarily prolong litigation or engage in tactics that cause undue costs to the opposing party can be subject to sanctions.

9     The Plaintiff's continued pursuit of meritless claims and the filing of fraudulent evidence has significantly delayed the resolution of this case and imposed unnecessary costs on the Defendant. Rather than engaging in meaningful negotiations or presenting legitimate evidence, the Plaintiff has exploited procedural mechanisms to prolong the litigation and increase the Defendant's legal and financial burdens. These actions meet the standard for causing unnecessary delay and expense, further supporting the imposition of sanctions.

### D  Conclusion: Prima Facie Case for Sanctions

10      To warrant sanctions under **Maryland Rule 1-341**, the Defendant has established the

prima facie elements of **bad faith**, **lack of substantial justification**, and the **causation of**

**unnecessary delay or expense**. The Plaintiff's actions throughout this litigation—pursuing a

fraudulent claim, submitting falsified evidence, and causing unnecessary hardship to the

Defendant—demonstrate a clear abuse of the judicial process. Accordingly, sanctions are

warranted to address these improper actions, deter further misconduct, and compensate the

Defendant for the undue costs and delays caused by the Plaintiff's bad faith litigation.

## III  SANCTIONABLE CONDUCT

### A  Abuse of Process

11      The Plaintiff, Ohana Growth Partners, and their counsel, Miles & Stockbridge, have

misused the judicial system by filing and continuing to pursue a baseless and fraudulent lawsuit

against the Defendant. This conduct constitutes **Abuse of Process**, as they are not seeking to

resolve a legitimate legal dispute but rather to use legal processes to harass, pressure, and

intimidate the Defendant. The legal system has been weaponized for improper purposes, which

violates the principles of fairness and justice under Maryland law.

I.      .ABUSE OF PROCESS DEFINED

12      Under Maryland law, **Abuse of Process** occurs when a party uses the legal system for an

improper purpose, one that is not the regular aim of legal proceedings. The key elements of an

Motion for Sanctions                     Page # 7 of 82                          Exhibit 108

. Hurson District Exhibit 16-9                 Exhibit Page # 7 of 82                       EXHIBIT 316-9        .

abuse of process claim are (1) the existence of an ulterior motive and (2) an improper act in the use of the legal process that is not proper in the regular conduct of proceedings.

13      The **Court of Appeals of Maryland** has clearly defined abuse of process in **One Thousand Fleet Ltd. Partnership v. Guerriero**, 346 Md. 29 (1997), stating that abuse of process arises when a party uses the judicial system to accomplish something outside the scope of the legitimate litigation process. The improper use of legal procedures to coerce, harass, or intimidate another party—rather than to obtain a lawful remedy—meets this standard. Here, the Plaintiff's lawsuit was filed not to resolve a genuine legal claim but to harass and coerce the Defendant, a clear instance of abusing the judicial process.

## II.    FILING A FRAUDULENT LAWSUIT TO HARASS AND INTIMIDATE

14      The Plaintiff and their counsel, Miles & Stockbridge, initiated this litigation based on fraudulent claims and have continued to pursue the lawsuit despite its baseless nature. The allegations made against the Defendant are not supported by facts or law, indicating that the Plaintiff's true motive is not to seek a fair legal resolution but to harass and pressure the Defendant into submission.

15      Filing a lawsuit based on knowingly false allegations constitutes abuse of process. In **Keys v. Chrysler Credit Corp.**, 303 Md. 397 (1985), the Court of Appeals of Maryland noted that abuse of process involves not just the initiation of a legal action but the ongoing pursuit of litigation for improper purposes. In this case, the Plaintiff is using the lawsuit to tarnish the Defendant's reputation, cause emotional distress, and gain leverage, rather than to address any

legitimate legal claims. This behavior goes beyond the bounds of normal litigation and is aimed at intimidating the Defendant.

III.   CONTINUING TO PURSUE THE LAWSUIT WITHOUT JUSTIFICATION

16   Abuse of process is further evident from the Plaintiff's continued pursuit of the lawsuit despite knowing that the claims lack merit. The ongoing litigation serves no legitimate purpose other than to impose financial and emotional burdens on the Defendant. Maryland courts have long recognized that continuing a legal action after it becomes clear that the claims are baseless can constitute abuse of process. In **Walker v. American Security & Trust Co.**, 237 Md. 80 (1964), the court held that persistence in pursuing meritless legal claims is a strong indicator of an improper motive, particularly when the intent is to coerce or intimidate the opposing party.

17   The Plaintiff's decision to continue this litigation, despite clear evidence that the claims are unfounded, reflects an intent to misuse the judicial process to harm the Defendant. This ongoing abuse of process is not only improper but sanctionable under Maryland law.

IV.   LEGAL REMEDIES AND SANCTIONS FOR ABUSE OF PROCESS

18   Courts have broad discretion to impose sanctions or dismiss claims when abuse of process is evident. Maryland courts, under both **Rule 1-341** and their inherent authority, can sanction parties for misusing the judicial process for purposes other than obtaining a legitimate legal remedy. In **Chambers v. NASCO, Inc.**, 501 U.S. 32 (1991), the Supreme Court emphasized that courts must retain the ability to impose sanctions to prevent parties from engaging in bad-faith conduct that abuses the legal system.

19    In this case, the Plaintiff and Miles & Stockbridge's conduct meets the standard for abuse

of process because their actions serve no legitimate legal goal. Their continued pursuit of a

baseless lawsuit is aimed at harassing and coercing the Defendant, causing undue emotional and

financial harm. Sanctions, including dismissal of the lawsuit and the imposition of monetary

penalties, are appropriate to remedy this improper use of the judicial process.

## V.    CONCLUSION: ABUSE OF PROCESS THROUGH FRAUDULENT LITIGATION

20    The Plaintiff and Miles & Stockbridge have engaged in **Abuse of Process** by filing a

fraudulent lawsuit and continuing to pursue it for improper purposes. Their actions are not aimed

at achieving a legitimate legal resolution but rather at harassing, intimidating, and pressuring the

Defendant. Maryland law does not tolerate the misuse of legal proceedings in this manner, and

sanctions are warranted to address this abuse of the judicial system. The court should consider

dismissing the baseless claims and imposing appropriate penalties to prevent further misuse of

legal processes.

Legal Basis:

21    The conduct of Plaintiff, Ohana Growth Partners, and their counsel, Miles & Stockbridge,

in filing and continuing to pursue a fraudulent lawsuit constitutes **Abuse of Process**, warranting

sanctions under Maryland law. The principles set forth in **One Thousand Fleet Ltd.**

**Partnership v. Guerriero**, 346 Md. 29 (1997), and **Palmer Ford, Inc. v. Wood**, 298 Md. 484

(1984), provide a clear legal framework for imposing sanctions when legal procedures are used

improperly for ulterior purposes.

I.    LEGAL PROCESS SHOULD NOT BE USED FOR AN IMPROPER PURPOSE

22    In **One Thousand Fleet Ltd. Partnership v. Guerriero**, the Maryland Court of Appeals established that the legal process should not be used for purposes outside the legitimate aim of litigation. Abuse of process occurs when the judicial system is exploited to achieve something unrelated to the proper use of the law, such as harassment, coercion, or personal gain, rather than to resolve a genuine legal dispute.

23    The Plaintiff and Miles & Stockbridge's initiation of a baseless lawsuit and their continued pursuit of it demonstrates an improper use of legal procedures. Their intent was not to seek a legitimate legal remedy but to coerce and harass the Defendant by creating legal and emotional burdens. As outlined in **One Thousand Fleet**, this type of misuse of the legal system is impermissible and serves as a basis for sanctions.

II.    MISUSE OF LEGAL PROCEDURES CONSTITUTES ABUSE OF PROCESS

24    In **Palmer Ford, Inc. v. Wood**, the Maryland Court of Appeals clarified that abuse of process occurs not only when legal procedures are improperly issued but also when they are misused after they have been lawfully initiated. In this case, the Plaintiff and Miles & Stockbridge's conduct constitutes a continuation of the abuse after filing the lawsuit, as they persisted in pursuing claims despite knowing that the lawsuit was fraudulent and lacking in legal merit.

25    **Palmer Ford** makes it clear that once the legal process is set in motion, its continued use for improper purposes—such as harassing, coercing, or intimidating the opposing party—constitutes **abuse of process** and is sanctionable. Here, the Plaintiff's continued litigation serves

no legitimate purpose but to damage the Defendant emotionally, financially, and reputationally. This ongoing misuse of the court's procedures demands remedial action in the form of sanctions.

### III. SANCTIONS FOR BAD FAITH AND ABUSE OF PROCESS

26     Both **One Thousand Fleet** and **Palmer Ford** illustrate that the courts have the authority to impose sanctions when legal procedures are used improperly or in bad faith. Maryland Rule **1-341** allows courts to impose sanctions, including attorney's fees and costs, against parties who engage in bad faith litigation or who misuse legal processes. Furthermore, courts have inherent power to penalize parties who abuse the judicial system by filing or pursuing baseless claims, as recognized by the U.S. Supreme Court in **Chambers v. NASCO, Inc.**, 501 U.S. 32 (1991).

27     In this case, the Plaintiff and Miles & Stockbridge's conduct—filing and continuing to pursue a lawsuit with no legal basis—qualifies as bad faith litigation. Their intent was not to obtain a legitimate legal remedy, but rather to harass, intimidate, and pressure the Defendant into submission. Such misuse of the legal process is precisely the type of behavior that sanctions are designed to address. The court should exercise its authority to impose penalties, including the dismissal of the fraudulent claims and the awarding of costs to the Defendant for the harm caused by this abuse of process.

### IV. JUSTIFICATION FOR SANCTIONS IN THIS CASE

28     The Plaintiff's continued litigation, despite the lack of factual or legal support for their claims, highlights their intention to misuse the legal process. Under **Palmer Ford**, the continuation of this baseless lawsuit after it became clear that the claims lacked merit constitutes

an ongoing abuse of process. This pattern of behavior has caused significant harm to the

Defendant, including financial strain, emotional distress, and reputational damage.

29      Sanctions are necessary to deter this type of bad faith litigation and to compensate the

Defendant for the damages incurred as a result of this abuse of process. The court should also

consider awarding attorney's fees and costs under **Maryland Rule 1-341**, as the Plaintiff's

actions have unnecessarily prolonged litigation and caused substantial harm to the Defendant.

## V.    CONCLUSION: SANCTIONS FOR ABUSE OF PROCESS ARE JUSTIFIED

30      Based on **One Thousand Fleet Ltd. Partnership v. Guerriero** and **Palmer Ford, Inc.**

**v. Wood**, the Plaintiff and Miles & Stockbridge's actions in filing and continuing to pursue a

fraudulent lawsuit constitute **Abuse of Process**. Their misuse of the legal system for improper

purposes—such as harassment, intimidation, and coercion—violates the principles of fair

litigation and is sanctionable under Maryland law. The court should impose appropriate

sanctions, including the dismissal of claims and the awarding of attorney's fees and costs, to

address this bad faith litigation and prevent further misuse of the judicial process.

### B   Attempted False Imprisonment (Common Law)

31      The Plaintiff, Ohana Growth Partners, and their counsel, Miles & Stockbridge, pursued a

show cause order with the intent of seeking the Defendant's incarceration, an action aimed at

unlawfully restricting the Defendant's liberty. By initiating these legal proceedings, the Plaintiff

and their counsel engaged in conduct that could be construed as an attempt at **false**

**imprisonment** under Maryland common law. The use of a show cause order with the potential

for incarceration, without legitimate legal grounds, constitutes an abuse of the legal process and raises serious concerns about unlawful restraint on the Defendant's freedom.

## I.    ELEMENTS OF FALSE IMPRISONMENT UNDER MARYLAND LAW

32      Under Maryland common law, **false imprisonment** is defined as the intentional restriction of a person's freedom of movement without legal justification. To prove false imprisonment, a plaintiff must establish that: (1) the defendant deprived them of their liberty, (2) the deprivation was without consent, and (3) there was no legal justification for the confinement. While this case involves an *attempted* false imprisonment, the underlying legal principles remain the same, as the Plaintiff's actions sought to unlawfully confine the Defendant through the misuse of a show cause order.

33      In **Montgomery Ward v. Wilson**, 339 Md. 701 (1995), the Court of Appeals of Maryland emphasized that false imprisonment can occur through legal proceedings when those proceedings are initiated without proper cause or justification. By filing the show cause order with the intent of securing the Defendant's incarceration, the Plaintiff and Miles & Stockbridge knowingly pursued legal action that could restrict the Defendant's freedom without sufficient legal grounds.

## II.    ABUSE OF LEGAL PROCESS AND DEPRIVATION OF LIBERTY

34      The Plaintiff and Miles & Stockbridge's filing of a show cause order seeking potential incarceration demonstrates an abuse of the legal process, as their primary aim was not to pursue legitimate legal remedies but to intimidate and unlawfully restrict the Defendant's liberty. The

use of such legal mechanisms without proper cause is a significant overreach and could be seen

as an attempt at false imprisonment, particularly when the action is intended to coerce or punish

the Defendant rather than resolve the underlying legal dispute.

35    In **Henneberry v. Pharoan**, 232 Md. 346 (1963), the Maryland Court of Appeals held

that a legal proceeding intended to detain or confine an individual without legal justification can

give rise to a claim of false imprisonment. Here, the Plaintiff's efforts to seek the Defendant's

incarceration through a show cause order, absent a valid basis for such extreme measures,

amounts to an abuse of legal authority designed to curtail the Defendant's liberty.

III.    No Legal Justification for Show Cause Incarceration

36    For a show cause order with potential incarceration to be valid, it must be supported by a

legitimate legal basis, typically involving contempt of court or other serious violations. In this

case, the Plaintiff and Miles & Stockbridge pursued incarceration as a punitive measure, not as a

result of any contempt or actionable misconduct by the Defendant. The lack of any substantive

legal justification for seeking the Defendant's imprisonment highlights the illegitimacy of the

Plaintiff's actions.

37    The Maryland courts have long held that the deprivation of liberty through legal

mechanisms, such as a show cause order, must be grounded in law. Without a valid reason for

the incarceration request, the Plaintiff's actions represent an unlawful attempt to confine the

Defendant. As noted in **Kougl v. Xspedius Mgmt. Co. of Rockville, LLC**, 405 Md. 42 (2008),

legal actions that lead to the wrongful deprivation of liberty, particularly those undertaken with

malice or without justification, may be deemed false imprisonment.

## IV.    COERCIVE AND INTIMIDATING USE OF INCARCERATION THREATS

38    The pursuit of incarceration through the show cause order was not only an abuse of legal

process but also a coercive tactic aimed at intimidating the Defendant. By threatening the loss of

personal liberty, the Plaintiff sought to place undue pressure on the Defendant, using the threat of

imprisonment to gain leverage in the litigation. Such actions, when taken without sufficient legal

grounds, are an improper and unlawful use of the judicial system.

39    This kind of coercive conduct has been recognized as abusive in Maryland. In **Walker v.**

**American Security & Trust Co.**, 237 Md. 80 (1964), the court held that attempts to use legal

threats to compel or intimidate a party, particularly when involving personal liberty, are subject

to scrutiny and potential liability for false imprisonment or abuse of process. The Plaintiff's

actions here fit within that framework, as the threat of incarceration was designed to unlawfully

influence the Defendant's behavior.

Legal Basis:

40    The actions of the Plaintiff, Ohana Growth Partners, and their counsel, Miles &

Stockbridge, in pursuing a show cause order with the aim of incarcerating the Defendant,

represent an attempt at **false imprisonment** under Maryland law. This conduct, without legal

justification, amounts to an abuse of the judicial process that is sanctionable under both

Maryland common law and statutory provisions. **Heron v. Strader**, **DeWolfe v. Richmond**, and

**Maryland Criminal Law Code § 1-202** provide clear legal standards for holding the Plaintiff

and their counsel accountable for attempting to unlawfully restrict the Defendant's liberty.

I.    FALSE IMPRISONMENT AND UNLAWFUL RESTRAINT

41    In **Heron v. Strader**, 361 Md. 258, 264 (2000), the Maryland Court of Appeals

established that **false imprisonment** occurs when a person's liberty is unlawfully restrained

without justification. The Plaintiff's pursuit of a show cause order, seeking the Defendant's

incarceration without proper legal grounds, falls squarely within the definition of false

imprisonment. By attempting to have the Defendant incarcerated without any legitimate basis,

the Plaintiff and Miles & Stockbridge engaged in conduct aimed at unlawfully restraining the

Defendant's freedom.

42    False imprisonment claims, even those based on attempted restraint, are subject to

sanctions when undertaken in bad faith or without justification. **Heron** emphasizes that the mere

act of unlawfully seeking to restrict someone's liberty, through legal channels or otherwise,

constitutes a violation of the right to freedom. Here, the Plaintiff's actions were not grounded in

law and had no legitimate legal purpose, making them sanctionable under Maryland law.

II.    EVEN TEMPORARY OR ATTEMPTED RESTRICTIONS ON LIBERTY ARE SANCTIONABLE

43    In **DeWolfe v. Richmond**, 434 Md. 444 (2013), the Maryland Court of Appeals

reinforced the principle that **even temporary or brief unlawful restrictions on liberty** can give

rise to a false imprisonment claim. In this case, the Plaintiff and their counsel took substantial

steps toward unlawfully restricting the Defendant's liberty by filing a show cause order with the

potential for incarceration. While the Defendant may not have been physically confined, the

attempt to secure his incarceration through the misuse of legal processes qualifies as a substantial

step toward false imprisonment.

44      Sanctions are appropriate in such cases where a party's actions, even if unsuccessful in achieving confinement, were aimed at unlawfully restricting the defendant's freedom. The Plaintiff and Miles & Stockbridge's pursuit of incarceration was not grounded in valid legal arguments but was instead a coercive tactic aimed at intimidating and applying pressure on the Defendant. Under **DeWolfe**, such actions are considered an abuse of the judicial process and warrant sanctions, especially when the conduct is intended to harm or intimidate.

III.    ATTEMPT LIABILITY UNDER MARYLAND LAW (MARYLAND CRIMINAL LAW CODE § 1-202)

45      Maryland law also recognizes that **attempted false imprisonment** is sanctionable under **Maryland Criminal Law Code § 1-202**, which addresses attempt liability. This statute states that an attempt occurs when a person takes substantial steps toward committing an offense, even if the offense is not ultimately completed. The Plaintiff's efforts to file a show cause order with the intent of having the Defendant incarcerated qualify as substantial steps toward false imprisonment, particularly when done without legal justification.

46      Under this statute, the Plaintiff and Miles & Stockbridge's actions represent more than just aggressive litigation—they constitute an abuse of the legal process aimed at unlawfully restricting the Defendant's liberty. Sanctions are appropriate when legal processes are misused to take substantial steps toward committing a wrongful act, such as false imprisonment. By pursuing incarceration without sufficient cause, the Plaintiff engaged in sanctionable conduct that violates both Maryland law and the principles of fair legal proceedings.

## IV.    Sanctions for Misuse of Legal Process to Attempt False Imprisonment

47      Maryland courts have broad discretion to impose sanctions for the misuse of legal

processes, particularly when those processes are used to attempt wrongful conduct such as false

imprisonment. The **Maryland Rules of Civil Procedure** allow courts to impose sanctions on

parties who engage in bad faith litigation or who use the legal system for purposes other than

resolving legitimate disputes. In this case, the Plaintiff and Miles & Stockbridge's filing of a

show cause order with the potential for incarceration was not a good-faith legal maneuver but

rather an attempt to intimidate and unlawfully restrict the Defendant's liberty.

48      In **Chambers v. NASCO, Inc.**, 501 U.S. 32 (1991), the Supreme Court affirmed that

courts have the inherent power to issue sanctions for bad faith conduct, including the use of legal

mechanisms like show cause orders to attempt to unlawfully restrict someone's liberty. This

principle applies here, where the Plaintiff's actions represent an abuse of the legal process. The

Plaintiff and their counsel sought incarceration as a punitive measure without legal justification,

making their conduct sanctionable under both Maryland common law and statutory standards.

## V.    Conclusion: Sanctions for Attempted False Imprisonment

49      The Plaintiff and Miles & Stockbridge's conduct in pursuing a show cause order with the

potential for incarceration amounts to an **attempt at false imprisonment**, as defined by **Heron

v. Strader** and **DeWolfe v. Richmond**. Their actions were aimed at unlawfully restricting the

Defendant's liberty without justification, a clear abuse of the legal process. Under **Maryland

Criminal Law Code § 1-202**, the substantial steps taken by the Plaintiff in seeking to confine

the Defendant without legal cause constitute a sanctionable offense.

50    The court has both the authority and responsibility to impose sanctions on parties who misuse legal processes for improper purposes, particularly when such actions threaten an individual's personal liberty. The Plaintiff's attempt to secure the Defendant's incarceration through baseless legal filings was an act of bad faith intended to intimidate, coerce, and punish. Sanctions are warranted to address this misconduct, prevent further abuse of the judicial process, and uphold the principles of fairness and justice.

## C    Intentional Infliction of Emotional Distress (IIED)

51    The Plaintiff, Ohana Growth Partners, and their counsel, Miles & Stockbridge, have engaged in extreme and outrageous conduct, deliberately intended to inflict emotional harm on the Defendant. Despite being aware of the harm their actions were causing, they continued their efforts without hesitation, demonstrating a pattern of behavior designed to cause emotional distress rather than to resolve legitimate legal disputes. This conduct constitutes **Intentional Infliction of Emotional Distress (IIED)** under Maryland law.

## I.    EXTREME AND OUTRAGEOUS CONDUCT

52    In Maryland, a claim for IIED requires that the defendant's conduct be so extreme and outrageous that it exceeds all bounds of decency and is considered intolerable in a civilized society. The actions of the Plaintiff and Miles & Stockbridge go beyond the realm of normal legal advocacy and into the territory of deliberate harm. Their repeated litigation tactics—despite knowing the emotional and mental toll on the Defendant—demonstrate a pattern of harassment and infliction of distress, not merely zealous representation.

53    The **Court of Appeals of Maryland** has recognized in **Harris v. Jones**, 281 Md. 560

(1977), that for IIED claims to be successful, the conduct must be extreme, outrageous, and

intentionally aimed at causing severe emotional distress. The Court further emphasized that there

must be a deliberate disregard for the emotional well-being of the victim. Here, the Plaintiff and

their counsel have engaged in a relentless legal assault, despite being aware of the Defendant's

vulnerability and the emotional impact their actions were having. This behavior rises to the level

of extreme and outrageous conduct as defined under Maryland law.

II.    INTENT TO CAUSE EMOTIONAL DISTRESS

54    For a valid claim of IIED, the defendant's conduct must be intentional or reckless,

meaning that the defendant either intended to cause emotional distress or acted with reckless

disregard for the likelihood of causing such distress. In this case, the Plaintiff and Miles &

Stockbridge have shown a reckless and, arguably, deliberate disregard for the emotional impact

their actions have had on the Defendant.

55    By continuing their litigation tactics, even after being made aware of the harm they were

causing, the Plaintiff and their counsel demonstrated intent or, at the very least, reckless

indifference to the Defendant's emotional suffering. This conduct is designed not to resolve any

legitimate legal dispute but to intimidate, harass, and emotionally damage the Defendant, a key

element in proving intentional infliction of emotional distress.

III.    CAUSAL CONNECTION TO EMOTIONAL DISTRESS

56    Maryland law also requires a clear causal connection between the defendant's extreme

and outrageous conduct and the emotional distress suffered by the plaintiff. The pattern of

actions by the Plaintiff and Miles & Stockbridge, including filing unfounded legal claims,

making defamatory statements, and refusing to accommodate the Defendant's disability, has

caused significant emotional and psychological harm. The continuation of these actions, despite

being aware of the Defendant's distress, exacerbates the harm and directly connects their conduct

to the emotional suffering experienced by the Defendant.

57    As established in **Figueiredo-Torres v. Nickel**, 321 Md. 642 (1991), Maryland courts

require proof that the defendant's conduct was the direct cause of the emotional distress. In this

case, the Defendant's emotional suffering is not speculative but a direct result of the aggressive

and hostile litigation strategy employed by the Plaintiff and their counsel. The refusal to relent,

even when it was clear that their actions were causing harm, shows a calculated intent to inflict

emotional pain.

IV.    SEVERE EMOTIONAL DISTRESS

58    To succeed in an IIED claim in Maryland, the emotional distress suffered must be

severe—meaning that it is more than minor or transient; it must be so intense that no reasonable

person could be expected to endure it. The relentless litigation tactics employed by the Plaintiff

and Miles & Stockbridge have subjected the Defendant to severe emotional trauma, including

anxiety, distress, and a sense of helplessness.

59     In **Moniodis v. Cook**, 64 Md. App. 1 (1985), the court explained that the severity of the

emotional distress must be such that it seriously impacts the plaintiff's ability to function in daily

life. Here, the Defendant's emotional distress is severe and ongoing, resulting from the Plaintiff's

continued harassment and refusal to resolve the matter in a reasonable or fair manner. The

Plaintiff's and Miles & Stockbridge's conduct has led to extreme psychological suffering for the

Defendant, meeting the high threshold of severity required for an IIED claim under Maryland

law.

## V.     CONCLUSION: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

60     The Plaintiff and Miles & Stockbridge's conduct constitutes intentional infliction of

emotional distress. Their extreme and outrageous actions, carried out with the intent or reckless

disregard for the harm caused to the Defendant, have resulted in severe emotional distress. The

continued litigation and refusal to accommodate the Defendant's legitimate concerns, even after

knowing the harm they were causing, make it clear that the goal was to intimidate and

emotionally damage the Defendant. Under Maryland law, this conduct is actionable, and the

Defendant has a valid claim for damages resulting from this intentional infliction of emotional

distress.

### Legal Basis:

61     The extreme and outrageous conduct by the Plaintiff, Ohana Growth Partners, and their

counsel, Miles & Stockbridge, amounts to **Intentional Infliction of Emotional Distress (IIED)**

under Maryland law, as established in **Harris v. Jones, 281 Md. 560 (1977)**. In cases where

actions have no legitimate legal purpose and are instead aimed at causing emotional harm,

Page **23** of **82**

sanctions are appropriate. The Defendant has suffered severe emotional distress as a direct result of the Plaintiff's conduct, making sanctions justified to address this misuse of the legal system.

I.    EXTREME AND OUTRAGEOUS CONDUCT WITH NO LEGITIMATE LEGAL PURPOSE

62     Under **Harris v. Jones**, IIED requires conduct that is "so extreme in degree, as to go beyond all possible bounds of decency" and is "regarded as atrocious, and utterly intolerable in a civilized community." The behavior of the Plaintiff and Miles & Stockbridge meets this standard, as their litigation tactics have been employed with the intention of causing emotional harm rather than resolving a legal dispute.

63     In particular, the repeated use of litigation to harass and emotionally damage the Defendant, despite being aware of the harm caused, is conduct that has no legitimate legal purpose. Maryland courts recognize that bad faith or malicious actions in the context of litigation may warrant sanctions, especially when those actions inflict emotional distress without advancing any valid legal claim. In **Harris**, the court emphasized that sanctions are appropriate when conduct is extreme, outrageous, and aimed at causing emotional harm. Here, the relentless litigation tactics employed by the Plaintiff fall within this definition.

II.    MALICIOUS INTENT AND RECKLESS DISREGARD FOR EMOTIONAL DISTRESS

64     In cases involving IIED, malicious intent or reckless disregard for the emotional harm caused is a key element. The Plaintiff and Miles & Stockbridge demonstrated reckless indifference to the emotional toll their actions were having on the Defendant. Even after

becoming aware of the emotional distress their conduct was causing, they continued their aggressive litigation strategy without pause.

65    In **Chambers v. NASCO, Inc.**, 501 U.S. 32 (1991), the Supreme Court affirmed that courts have the inherent power to sanction parties who act in bad faith, including those who engage in conduct intended to harass, intimidate, or cause emotional harm. The Plaintiff's pattern of behavior demonstrates that the litigation was used as a weapon of harassment, with the clear intention of inflicting emotional harm on the Defendant, rather than pursuing a legitimate legal resolution.

66    By continuing their tactics, even after being informed of the emotional harm suffered by the Defendant, the Plaintiff acted with a reckless disregard for the Defendant's well-being, creating further grounds for sanctions. The intent to cause emotional harm, combined with the absence of a legitimate legal basis, qualifies their conduct as sanctionable under Maryland law and federal procedural rules.

III.    IIED AS GROUNDS FOR SANCTIONS IN MARYLAND

67    In **Harris v. Jones**, the Court of Appeals of Maryland recognized that IIED occurs when extreme and outrageous conduct results in severe emotional distress, and sanctions are appropriate when such conduct is intended to harm rather than serve a legitimate purpose. Maryland courts have broad discretion to sanction parties who misuse the legal process, particularly when their actions are driven by malicious intent or are aimed at causing emotional damage.

68    Under **Maryland Rule 1-341**, the court may impose sanctions on parties or their attorneys for conduct that is in bad faith or without substantial justification. In this case, the Plaintiff and Miles & Stockbridge's conduct qualifies as bad faith litigation aimed at inflicting emotional distress on the Defendant, rather than resolving any legal issue. The emotional distress caused by their actions, combined with their refusal to moderate their behavior, satisfies the requirements for sanctions under Maryland law.

69    Additionally, the court's inherent authority to impose sanctions for misconduct applies when the actions of one party are meant to oppress or harm another party through abuse of the judicial process. By using litigation as a tool to emotionally damage the Defendant, the Plaintiff and their counsel have engaged in an abuse of process, warranting punitive action from the court.

IV.    SEVERE EMOTIONAL DISTRESS AS A RESULT OF SANCTIONABLE CONDUCT

70    The Plaintiff and Miles & Stockbridge's conduct has resulted in severe emotional distress to the Defendant, a critical element of IIED as defined in **Harris v. Jones**. The Defendant's emotional suffering, including anxiety, stress, and a diminished ability to function, is a direct consequence of the Plaintiff's malicious litigation tactics. This type of distress, recognized by Maryland courts as a basis for IIED, meets the threshold for imposing sanctions, as the harm was both foreseeable and avoidable had the Plaintiff engaged in legitimate legal conduct.

71    Sanctions serve to address and deter such extreme and malicious conduct. The imposition of sanctions is not only necessary to compensate for the harm done but also to prevent the continued abuse of the legal system for the purposes of harassment. Given the severity of the

emotional distress caused by the Plaintiff's actions, sanctions are justified to remedy this harm and prevent further misconduct.

## V.    CONCLUSION: SANCTIONS WARRANTED FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

72    The Plaintiff and Miles & Stockbridge's actions constitute **Intentional Infliction of Emotional Distress**, as defined in **Harris v. Jones**. Their conduct was extreme, outrageous, and intended to cause the Defendant emotional harm. The lack of any legitimate legal purpose behind their litigation strategy, combined with their continued actions despite knowing the emotional toll on the Defendant, makes their conduct sanctionable. Sanctions are necessary to address this abuse of the legal process, compensate the Defendant for the severe emotional distress caused, and deter future misconduct.

### D    Defamation Through Misuse of Legal Process

73    The Plaintiff, Ohana Growth Partners, and their counsel, Miles & Stockbridge, have weaponized this lawsuit to publicly discredit the Defendant through false and unfounded allegations. These allegations, which are baseless and aimed at damaging the Defendant's reputation, constitute defamation and are intended to evade accountability for the Plaintiff's own actions.

74    **Defamation**, under Maryland law, requires the plaintiff to establish: (1) a defamatory statement, (2) falsity of the statement, (3) publication to a third party, (4) fault on the part of the defendant, and (5) harm to the subject's reputation. Here, the Plaintiff and Miles & Stockbridge have made false statements about the Defendant's character and conduct through the public

filing of this lawsuit, which was accessible to third parties, including the public, business

contacts, and other professionals in the Defendant's network.

I.    FALSE AND DEFAMATORY STATEMENTS

75    The allegations made by the Plaintiff in the complaint are not only untrue but are crafted

in a manner intended to harm the Defendant's personal and professional reputation. The Plaintiff

has falsely portrayed the Defendant as engaging in conduct that warrants legal action, when in

fact these allegations are being used to divert attention from the Plaintiff's own wrongdoing.

These statements, presented as part of legal filings, were knowingly false and made with the

intent to cause reputational harm.

76    In **Shapiro v. Massengill**, 105 Md. App. 743 (1995), the Maryland Court of Special

Appeals affirmed that a defamatory statement is one that tends to expose a person to public

scorn, hatred, contempt, or ridicule, or that discourages others from associating with them. By

making unfounded allegations in a public forum, the Plaintiff and Miles & Stockbridge have met

the threshold for defamation, as these statements are likely to lead to significant reputational

damage for the Defendant in his professional and personal circles.

I.    PUBLICATION AND MISUSE OF LEGAL PROCESS

77    The defamatory statements were made publicly through the filing of this lawsuit, thereby

satisfying the publication element required for a defamation claim. The court filings are part of

the public record and have been disseminated beyond the immediate parties involved in the

litigation. This public disclosure of false allegations was a strategic choice to ensure the

Defendant's reputation would be damaged in the broader community, effectively using the legal process as a vehicle for defamation.

78      While the filing of a lawsuit generally enjoys a degree of privilege to protect parties from defamation claims, Maryland law recognizes exceptions where lawsuits are used as a tool for intentional harm. In **Beardsley v. Tait**, 69 Md. App. 52 (1986), the court acknowledged that legal privilege does not extend to statements made with malice or in bad faith, particularly where the legal process is being abused to harm another's reputation.

79      Here, the Plaintiff's lawsuit serves no legitimate legal purpose but instead operates as a form of **defamation by implication**—the false and inflammatory nature of the claims suggests misconduct by the Defendant, damaging his standing within the community. This misuse of the legal process to spread defamatory statements strips the Plaintiff of any privilege that might otherwise apply in the context of litigation.

## II.    HARM TO REPUTATION AND ACCOUNTABILITY EVASION

80      The defamatory statements made by the Plaintiff and Miles & Stockbridge have caused actual harm to the Defendant's reputation. As a result of the false allegations, the Defendant has suffered professional and personal harm, including potential damage to his employment prospects, professional relationships, and standing in the community. This harm is exacerbated by the public nature of the legal filings, which are accessible to a broad audience and are likely to be shared among colleagues, employers, and others who may be influenced by the Plaintiff's false assertions.

81      In **Seley-Radtke v. Hosmane**, 450 Md. 468 (2016), the Maryland Court of Appeals held that defamation claims can be based on statements made within the legal process if those

statements are shown to be false, malicious, and intended to harm the subject's reputation. The Plaintiff's actions in this case align with this principle, as the allegations are designed to distract from their own wrongdoing by shifting blame onto the Defendant through a campaign of character assassination.

82      The motive behind these defamatory statements is clear: to evade accountability for the Plaintiff's own misconduct by discrediting the Defendant and undermining his credibility. By making the Defendant appear culpable, the Plaintiff seeks to obscure its own liability and avoid facing the consequences of its actions. This tactic is not only legally improper but also morally reprehensible, as it unfairly tarnishes the Defendant's reputation for personal gain.

### III.    CONCLUSION: DEFAMATION THROUGH LEGAL ABUSE

83      The Plaintiff and Miles & Stockbridge have engaged in defamation by making false and malicious allegations against the Defendant through the public filing of this lawsuit. These actions are designed to harm the Defendant's reputation and evade accountability for their own misconduct. By abusing the legal process to spread defamatory statements, the Plaintiff has opened itself to liability for defamation, as Maryland law does not shield parties who misuse the legal system with the intent to cause reputational harm. The Defendant reserves the right to pursue appropriate remedies for this defamation, including damages for reputational harm caused by the Plaintiff's false statements.

Legal Basis:

84      In Maryland, defamation becomes sanctionable when false statements are made with malicious intent, particularly when such statements are designed to harm another's reputation through misuse of the legal process. In **Shapiro v. Massengill**, 105 Md. App. 743 (1995), the

Page **30** of **82**

Maryland Court of Special Appeals held that defamation claims are actionable when the statements in question are false, made with malice, and published in a manner that causes reputational harm. If these defamatory statements are made within the context of legal proceedings, and with malicious intent, they may also be subject to court sanctions, especially if the legal process is abused to propagate those statements.

I.  MALICIOUS INTENT AND FALSITY

85      To warrant sanctions, defamatory statements must be proven to be both false and made with malicious intent. In **Shapiro**, the court established that malice can be inferred when false statements are made with reckless disregard for the truth or with the specific intention to cause harm to the individual's reputation. Here, the Plaintiff and Miles & Stockbridge made allegations against the Defendant that are not only false but were also crafted in bad faith with the intent to harm the Defendant's personal and professional standing.

86      The malicious nature of the allegations is evident from the fact that the Plaintiff sought to publicly discredit the Defendant without a legitimate legal basis, using the lawsuit as a vehicle to propagate defamatory content. Such misuse of legal filings to spread false statements demonstrates reckless disregard for the truth and suggests an ulterior motive—namely, to deflect accountability from the Plaintiff's own misconduct. This falls squarely within the type of malicious defamation described in **Shapiro**, where the court recognized that false, malicious statements aimed at damaging someone's reputation are actionable and may be subject to sanctions.

## II.    MISUSE OF LEGAL PROCESS AS A VEHICLE FOR DEFAMATION

87    Sanctions are particularly appropriate when defamatory statements are made as part of a

broader misuse of the legal process. While statements made in the course of litigation may enjoy

a limited privilege, Maryland courts have recognized that this privilege does not apply when the

legal process is being abused for improper purposes, such as to defame or discredit a party

without a legitimate legal basis.

88    In **Beardsley v. Tait**, 69 Md. App. 52 (1986), the Maryland Court of Special Appeals

held that legal privilege does not extend to statements made with malice or in bad faith,

especially when the litigation is used as a tool to harm another's reputation. This principle is

directly relevant here, where the Plaintiff and Miles & Stockbridge have weaponized the lawsuit

to make defamatory statements with the intent to harm the Defendant, rather than to resolve a

legitimate dispute. By filing a lawsuit with false allegations, the Plaintiff is effectively using the

legal process to amplify the harm caused by the defamation, thereby stripping themselves of any

privilege that might otherwise apply to statements made in court filings.

89    The malicious intent, combined with the abuse of the legal process, makes this

defamation sanctionable under Maryland law. Courts have broad authority to impose sanctions

when parties misuse legal proceedings to harass, defame, or harm others. Under **Rule 11** of the

**Federal Rules of Civil Procedure** or equivalent Maryland state rules, sanctions may be imposed

when legal filings are used in bad faith or with the intent to mislead the court or harm a party.

## III.    DEFAMATION AS BAD FAITH CONDUCT WARRANTING SANCTIONS

90    Courts have inherent authority to sanction parties for bad faith conduct, including the

filing of lawsuits with malicious intent. In **Chambers v. NASCO, Inc.**, 501 U.S. 32 (1991), the

Supreme Court affirmed that courts have the inherent power to impose sanctions for bad faith conduct, particularly when the legal process is misused to harm others. Misrepresentations, defamatory filings, and the use of litigation as a tool for personal vendettas are considered sanctionable misconduct under both state and federal rules.

91      Similarly, Maryland courts recognize that defamatory statements made in bad faith during litigation not only harm the individual but also undermine the integrity of the judicial system. In **In re Kittleman**, 312 Md. 329 (1988), the Maryland Court of Appeals held that attorneys and parties who knowingly mislead the court or engage in malicious litigation tactics can face sanctions, including fines, adverse rulings, and other punitive measures. When defamatory statements are made with the intent to harm a party's reputation as part of a larger strategy to evade accountability or inflict damage, sanctions are necessary to uphold the fairness of the judicial process.

IV.     GROUNDS FOR SANCTIONS: HARM TO REPUTATION AND LEGAL ABUSE

92      The harm caused by defamatory statements made in the context of legal proceedings is both personal and professional. The Defendant's reputation has been damaged by the false allegations made in the lawsuit, and the public nature of the litigation has amplified this harm. These defamatory statements were not made in pursuit of a legitimate legal claim but rather to damage the Defendant's standing and divert attention from the Plaintiff's own misconduct.

93      The Plaintiff and Miles & Stockbridge's conduct is not only defamatory but also constitutes an abuse of the legal process. By using the lawsuit as a platform to spread false and damaging statements, they have engaged in bad faith litigation that undermines the integrity of

the court. Sanctions are warranted to address this misuse of the legal system, deter future bad

faith conduct, and provide some remedy for the harm caused to the Defendant's reputation.

## V.    CONCLUSION: SANCTIONS ARE WARRANTED FOR DEFAMATORY CONDUCT

94    Based on **Shapiro v. Massengill**, false and malicious statements made with the intent to

harm another's reputation are actionable and sanctionable under Maryland law. The Plaintiff and

Miles & Stockbridge's use of the lawsuit to spread false allegations constitutes defamation, made

with malice and aimed at damaging the Defendant's reputation. Given the clear misuse of the

legal process, this conduct warrants sanctions to uphold the integrity of the court and to deter

further abuses of the legal system.

95    The court should consider appropriate sanctions, including monetary penalties or other

remedies, to address the harm caused by this defamatory conduct and to ensure that such misuse

of the legal process does not go unpunished.

## E    ADA Violation: Denial of Reasonable Accomodation and Misrepresentation of Facts

96    The Plaintiff, Ohana Growth Partners, and their counsel, Miles & Stockbridge, violated

the **Americans with Disabilities Act (ADA)** by misrepresenting facts surrounding the

Defendant's reasonable accommodation requests for an extension or continuance. The

Defendant, who is disabled, sought a continuance and extension to secure new legal

representation and to accommodate his disability, which is a recognized reasonable

accommodation under the ADA.

97    In this instance, the Defendant initially attempted to resolve the issue informally by

requesting additional time, before escalating the matter by filing a formal motion. Despite this

reasonable request, the Plaintiff and Miles & Stockbridge refused to grant the accommodation. Instead, they misled the court by falsely presenting the situation as though the Defendant had never made such a request. By doing so, they effectively denied the Defendant his rights under the ADA.

98      Under **Title II of the ADA**, public entities, including courts, are required to provide reasonable accommodations to individuals with disabilities to ensure full and equal access to the legal process. This includes granting extensions or continuances to disabled litigants when necessary to accommodate their medical needs or impairments. The Defendant's request for a continuance was reasonable, particularly given his disability and his need to secure new legal representation. Denying such a request violates the ADA's mandate to provide equitable treatment in legal proceedings.

99      Furthermore, the refusal to grant reasonable accommodation, combined with the misrepresentation of the Defendant's requests to the court, imposed unnecessary hardship on the Defendant, who was already in a vulnerable position due to his disability. The Defendant was ultimately denied the time he needed to resecure legal counsel and to prepare an adequate defense, which constitutes a deprivation of his rights under the ADA.

100     Importantly, granting the requested extension or continuance would not have caused any undue burden to the Plaintiff or the court. Courts have consistently held that reasonable accommodation, particularly in the form of continuances or extensions, should be granted unless doing so would cause significant delay or disruption to the proceedings. In **Shapiro v. Cadman Towers, Inc.**, 51 F.3d 328, 333 (2d Cir. 1995), the court held that a reasonable accommodation under the ADA is required unless it imposes an undue burden or hardship on the other party or

on the legal system itself. Here, no such hardship or undue burden would have resulted from the Plaintiff granting the Defendant's request for additional time.

101     Additionally, the timing of the Plaintiff's actions is troubling. The Defendant's request for a continuance coincided with the day he was unlawfully suspended and later terminated, adding to the appearance of retaliation. Denying the extension and refusing to acknowledge the accommodation request, all while misrepresenting the facts to the court, further underscores the unethical and potentially unlawful nature of the Plaintiff's conduct.

102     The denial of the Defendant's reasonable accommodation request and the subsequent misrepresentation of facts to the court constitute a violation of the ADA. By refusing to grant a reasonable extension or continuance, the Plaintiff and Miles & Stockbridge acted in bad faith, unjustly disadvantaging a disabled individual and depriving him of his right to a fair legal process. Given that the requested accommodation would not have imposed any undue burden or hardship, the denial was both unnecessary and unlawful under the ADA.

Legal Basis:

103     Under the **Americans with Disabilities Act (ADA)**, 42 U.S.C. § 12101, individuals with disabilities are entitled to reasonable accommodations in legal proceedings, including requests for extensions or continuances when necessary due to their disability. The ADA prohibits not only outright denial of these accommodations but also conduct that effectively denies these rights, such as misrepresentation or failure to properly inform the court of such requests.

104     The Defendant in this case, as a disabled individual, had a lawful right to request reasonable accommodations in the form of a continuance or extension to secure legal representation and manage his disability. The Plaintiff and their counsel, Miles & Stockbridge,

refused to grant the requested accommodation and further compounded this violation by misrepresenting the Defendant's request to the court. This denial and misrepresentation constitute a violation of the ADA, making their actions subject to sanctions.

## I.   LEGAL STANDARD FOR ADA VIOLATIONS AND SANCTIONS

105    The ADA mandates that public entities, including courts, provide reasonable accommodations to ensure full and equal participation by individuals with disabilities. Under **Title II of the ADA** and its implementing regulations, failing to provide such accommodations can result in sanctions against the offending party, particularly when there is bad faith or deliberate misrepresentation.

106    Courts have found that the intentional denial of a reasonable accommodation, especially when accompanied by misleading conduct, not only violates the ADA but also undermines the integrity of judicial proceedings. In **Battaglia v. McKendry**, 233 F.3d 720 (3d Cir. 2000), the court sanctioned a party for failing to provide reasonable accommodations under the ADA, emphasizing that such violations, especially when done willfully or with disregard for the disabled individual's rights, justify judicial intervention through sanctions.

## I.   SANCTIONS FOR MISREPRESENTATION IN ADA ACCOMMODATION REQUESTS

107    Sanctions are appropriate in this case not only for the denial of the Defendant's accommodation but also for the misrepresentation of facts surrounding the request. Misleading the court about a defendant's efforts to obtain reasonable accommodations is a serious violation of professional ethics and constitutes sanctionable conduct under federal and state procedural rules.

108     Misrepresentation in legal proceedings can also fall under the court's inherent authority to sanction parties that act in bad faith. In **Chambers v. NASCO, Inc.**, 501 U.S. 32 (1991), the Supreme Court affirmed the inherent power of courts to issue sanctions for bad faith conduct, particularly when a party misleads the court or engages in conduct that abuses the judicial process. Misrepresenting the existence of a reasonable accommodation request made by a disabled defendant would clearly fall within this category of sanctionable behavior.

109     Furthermore, Maryland courts have similarly recognized the importance of integrity in judicial proceedings. In **In re Kittleman**, 312 Md. 329 (1988), the Maryland Court of Appeals held that attorneys who knowingly mislead the court, particularly in situations involving the rights of vulnerable parties, are subject to sanctions, including fines, contempt, or disqualification. In this case, the misrepresentation of the Defendant's accommodation request not only violated the ADA but also deceived the court, making sanctions an appropriate remedy.

II.     SANCTIONS FOR ADA VIOLATIONS IN THE LEGAL PROCESS

110     Violating the ADA in the legal process, particularly through the denial of reasonable accommodations and misrepresentation, can result in a range of sanctions, including monetary penalties, adverse rulings, or dismissal of claims. Federal courts have broad discretion to impose sanctions under **Rule 11** of the Federal Rules of Civil Procedure or similar state rules when a party submits false statements or misrepresents critical facts to the court.

111     Under **42 U.S.C. § 12188**, which provides enforcement mechanisms for ADA violations, courts may grant appropriate relief to ensure compliance with the statute, including injunctive relief and penalties. While this provision primarily addresses discrimination in public

accommodations, courts have extended its principles to judicial misconduct that results in the denial of ADA rights.

112    In this case, Plaintiff and Miles & Stockbridge's refusal to grant a reasonable accommodation and subsequent misrepresentation to the court caused harm to the Defendant by obstructing his ability to prepare and defend his case. This conduct violates both the ADA and ethical obligations under professional rules of conduct, warranting sanctions.

### III.    CONCLUSION: SANCTIONS ARE WARRANTED FOR THE DENIAL OF ADA ACCOMMODATIONS AND MISREPRESENTATION

113    The refusal to provide a reasonable accommodation and the misrepresentation of the Defendant's request before the court constitute a violation of the ADA, specifically 42 U.S.C. § 12101. Given that this conduct deprived the Defendant of his rights under the ADA and misled the court, sanctions are both justified and necessary to rectify the harm done. Misrepresentation regarding ADA accommodations is a serious breach that not only violates the statute but also undermines the fairness of the legal process. Therefore, the court should impose appropriate sanctions, including monetary penalties or other corrective measures, to address the violation and ensure compliance with the ADA.

### F    Retaliatory Litigation and Escalation of Resolved Dispute

114    The Plaintiff, Ohana Growth Partners, and their counsel, Miles & Stockbridge, engaged in retaliatory litigation following an accord reached between the Defendant and Ryan Dillon-Capps. Rather than honoring the resolution of the dispute, their involvement escalated the matter into punitive legal action. The case was presented under false pretenses, with Miles &

Stockbridge framing the situation as one where negotiations had failed, misleading the court. In response to direct questions from the bench, Plaintiff's counsel provided evasive, nearly inaudible responses, including dismissive gestures, signaling their intent to obscure the facts.

115    From the outset, Miles & Stockbridge, in concert with Ohana Growth Partners, engaged in a concerted effort to retaliate against the Defendant, potentially to silence whistleblowing activities. This litigation appears to be part of a broader scheme to suppress the Defendant's attempts to expose serious misconduct, including but not limited to:

## I.    RETALIATION FOR WHISTLEBLOWING ON CORPORATE MISCONDUCT:

The Defendant raised concerns about retaliatory actions involving Richard Hartman and Darren Koritzka, the latter being placed on leave of absence under questionable circumstances. The Defendant's involvement in reporting these internal issues likely served as a trigger for this retaliatory legal action.'

## II.    ATTEMPTS TO CONCEAL FRAUD INVESTIGATIONS:

Evidence had been submitted, including email communications and screenshots, challenging the integrity of a fraud investigation initiated by Ohana Growth Partners. This investigation was compromised from the outset, as it began only after fraud had already been confirmed through a written admission. Miles & Stockbridge's legal guidance and conduct in this matter helped obstruct further inquiry into the fraudulent activities, effectively protecting those responsible rather than seeking transparency.

III.    FAILURE TO INVESTIGATE HR AND FINANCIAL IRREGULARITIES:

The Plaintiff's retaliatory actions also appear tied to the Defendant's insistence on investigating

HR irregularities and accounting discrepancies, which were ignored by Glenn Norris and others

within Ohana Growth Partners' leadership. Notably, the HR investigation failed to interview a

key witness, despite the witness being the person who initially reported the incident.

Additionally, the Defendant raised serious concerns about the accounting practices used by

Glenn Norris in financial certifications to the banks during refinancing efforts, highlighting

inflated numbers that could have far-reaching implications.

116    The filing of this case by Miles & Stockbridge on behalf of Ohana Growth Partners

represents not a legitimate legal dispute, but a calculated attempt to discredit the Defendant and

avoid scrutiny of the serious allegations raised. This constitutes retaliatory litigation under both

federal and state laws protecting whistleblowers and individuals who expose corporate fraud or

wrongdoing. The timing, manner, and context of this lawsuit reflect an intent to punish the

Defendant for raising legitimate concerns that have been systematically ignored or covered up.

117    This type of retaliatory litigation is not only unethical but also unlawful. Courts have

recognized that when legal action is initiated as a response to an individual's attempt to expose

fraud or wrongdoing, the action may be deemed retaliatory. For instance, in **Darveau v.

Detecon, Inc.**, 515 F.3d 334 (4th Cir. 2008), the court held that an employer's lawsuit against a

whistleblower could constitute illegal retaliation if it was filed with a retaliatory motive rather

than for legitimate legal purposes. Similarly, under the **Maryland Whistleblower Protection

Act (Md. Code, State Pers. & Pens. § 5-305)** and **Sarbanes-Oxley Act (18 U.S.C. § 1514A)**,

retaliatory actions against individuals who report corporate fraud or participate in investigations are expressly prohibited.

118    Here, the evidence suggests that Miles & Stockbridge, through their legal representation of Ohana Growth Partners, furthered retaliatory motives. Instead of resolving the issues raised, they have utilized the legal process to suppress the Defendant's efforts to expose fraud, misconduct, and other irregularities within the company. Their participation in these actions raises significant ethical concerns and adds to the liabilities faced by their client, as their guidance has led to the filing of baseless claims aimed at silencing the Defendant rather than addressing the underlying problems.

119    The Defense respectfully submits that this litigation, founded on retaliatory motives, should be viewed as an abuse of the legal process. The actions of Miles & Stockbridge and Ohana Growth Partners reflect bad faith and demonstrate a clear intent to punish the Defendant for lawfully raising concerns about corporate misconduct.

Legal Basis:

I.    FEDERAL RETALIATION LAW: BURLINGTON N. & SANTA FE RY. CO. V. WHITE

120    At the federal level, retaliation claims are broadly governed by Title VII of the Civil Rights Act of 1964, which protects individuals from adverse actions taken in response to the exercise of their legal rights. The U.S. Supreme Court, in **Burlington N. & Santa Fe Ry. Co. v. White**, 548 U.S. 53 (2006), provided a key framework for understanding retaliation. The Court held that retaliation includes not only employment actions like firing or demotion but also any adverse action that could dissuade a reasonable person from pursuing or supporting a claim. This broader interpretation of "adverse actions" applies to actions that, while not directly impacting

employment or financial standing, still seek to intimidate, punish, or dissuade the individual from exercising their legal rights.

121    **Burlington** is particularly relevant to the concept of retaliatory lawsuits, which can be used as a tool to punish individuals for engaging in protected activities, such as whistleblowing or reporting misconduct. The Court's ruling emphasized that retaliation is not confined to workplace issues but can extend to any conduct that imposes burdens on the individual in response to their lawful actions. This reasoning has been widely adopted by courts to address retaliatory litigation as an extension of adverse actions designed to silence individuals through legal harassment, rather than resolve legitimate disputes.

122    Retaliatory lawsuits, in this sense, serve to impose unnecessary costs, stress, and burdens on defendants, effectively punishing them for exercising their rights, such as whistleblowing or reporting fraud. In the federal framework, such lawsuits are viewed as actionable under retaliation and abuse of process doctrines, particularly when filed with the intent to deter further legal or ethical action by the defendant.

I.    MARYLAND RETALIATION LAW: EXPANDING ON FEDERAL STANDARDS

123    Maryland law builds upon the broad federal understanding of retaliation established by **Burlington**, while also providing its own set of protections and legal interpretations, particularly for whistleblowers and individuals subject to retaliatory actions. Maryland courts have recognized that retaliation can take many forms beyond employment actions, including the misuse of the legal system through retaliatory lawsuits.

## II.    MARYLAND WHISTLEBLOWER PROTECTIONS AND RETALIATORY LAWSUITS

124    Under the **Maryland Whistleblower Protection Act**, employees and other individuals

who report wrongdoing are protected from adverse actions taken in response to their lawful

disclosures. Maryland courts have consistently applied these protections to ensure that

whistleblowers are not subjected to retaliatory actions, whether through termination, demotion,

or the filing of punitive lawsuits.

125    In **Wholey v. Sears Roebuck & Co.**, 370 Md. 38 (2002), the Maryland Court of Appeals

emphasized that retaliation encompasses any adverse action that would dissuade a reasonable

person from engaging in protected conduct, such as reporting misconduct. This mirrors the broad

standard set in **Burlington** but is further contextualized in Maryland law to include actions that

go beyond the workplace, extending to any efforts to suppress or punish whistleblowers through

legal means.

126    In cases involving retaliatory lawsuits, the court has viewed such actions as an extension

of adverse conduct designed to deter individuals from continuing to report or participate in

lawful activities. This approach was reinforced in **Montgomery County v. Deibler**, 423 Md. 54

(2011), where the Court of Appeals highlighted the importance of protecting whistleblowers

from adverse actions that would have a chilling effect on their willingness to report wrongdoing.


## III.    RETALIATORY LAWSUITS AS AN ABUSE OF PROCESS IN MARYLAND

127    Maryland courts also recognize retaliatory lawsuits as a misuse of the legal system, and

in some cases, an abuse of process. In **One Thousand Fleet Ltd. Partnership v. Guerriero**,

346 Md. 29 (1997), the Maryland Court of Appeals explored the concept of abuse of process,

where a lawsuit is initiated not to resolve a legitimate legal dispute but for an ulterior motive—such as punishing or intimidating the opposing party. The court held that when legal actions are filed with a retaliatory intent, they can constitute an abuse of the legal process and may be subject to sanctions.

128    Similarly, in **Okwa v. Harper**, 360 Md. 161 (2000), the court addressed the broader implications of retaliatory conduct within the legal system. The court recognized that litigation can be used to inflict harm on individuals exercising their legal rights, including whistleblowers or those involved in reporting misconduct. In such cases, the courts have indicated that retaliatory lawsuits are not only unethical but may also undermine the integrity of the legal process itself. As a result, these lawsuits may warrant dismissal, sanctions, or other corrective actions by the courts.

## IV.    CONCLUSIONS: FEDERAL AND MARYLAND RETALIATION PROTECTIONS CONVERGE

129    Both federal laws, as established in **Burlington**, and Maryland state law recognize that retaliation can take many forms, including lawsuits filed with the intent to intimidate or punish individuals for engaging in protected activities. While **Burlington** provides the broad federal framework for understanding adverse actions, Maryland courts have further expanded upon these principles through cases like **Wholey**, **Deibler**, and **One Thousand Fleet Ltd. Partnership**. Maryland's legal framework explicitly addresses the protection of whistleblowers and the misuse of legal proceedings to suppress or retaliate against individuals exercising their legal rights.

130    In the present case, if the lawsuit by Miles & Stockbridge is found to be retaliatory in nature, it may not only violate federal and state retaliation laws but could also be considered an

abuse of process under Maryland law, warranting sanctions and disqualification. Both legal

standards demonstrate that such conduct is unacceptable and sanctionable under the law.

### G   Obstruction of Evidence

131    **Miles & Stockbridge**, counsel for **Ohana Growth Partners**, has actively obstructed the

Defendant's access to crucial evidence by conditioning the release of a **court transcript** on the

payment of **$12,500** related to fraudulently obtained contempt charges. This conduct not only

violates the **Maryland Rules of Professional Conduct** but also constitutes a deliberate

**obstruction of evidence**, impeding the Defendant's ability to **fairly litigate** this case. The Court

must address this **serious breach** through the imposition of appropriate **sanctions**.

132    **Rule 3.4(a)** of the **Maryland Rules of Professional Conduct** specifically prohibits

attorneys from unlawfully obstructing another party's access to evidence or unlawfully altering,

destroying, or concealing a document that has potential evidentiary value. By withholding the

court transcript, **Miles & Stockbridge** have violated this rule and obstructed the Defendant's

right to access **key evidence** necessary for their defense. Courts have consistently held that such

actions constitute a **serious ethical violation** and may warrant sanctions. In **Attorney Grievance**

**Comm'n of Md. v. Brisbon**, 424 Md. 274 (2011), the Maryland Court of Appeals emphasized

that the obstruction of access to evidence fundamentally undermines the integrity of the legal

process and can result in severe professional sanctions.

### I.   CONDITIONAL RELEASE OF COURT TRANSCRIPT

133    On **July 2, 2024**, when requested to provide the court transcript for the **June 26, 2024**

hearing, **Miles & Stockbridge** conditioned its release on receiving **$12,500** from the Defendant.

This sum is tied to **fraudulently obtained contempt charges**. By making the release of this transcript contingent upon payment, they have deliberately **obstructed access** to critical evidence. Such actions are **unethical** and amount to an intentional **obstruction of justice**, as they prevent the Defendant from properly defending themselves and preparing for further litigation.

134     This conduct also potentially constitutes **extortion**, as it leverages the Defendant's right to obtain evidence in exchange for the satisfaction of unlawful contempt charges. The U.S. Supreme Court has recognized that access to critical evidence is a **fundamental right** in litigation. In **Hickman v. Taylor**, 329 U.S. 495 (1947), the Court held that attorneys must act in good faith to ensure all parties have access to key evidence in the pursuit of justice, and the intentional withholding of such evidence violates both ethical duties and the basic principles of fairness.

## II.    PREJUDICE TO THE DEFENDANT'S CASE

135     The **court transcript** requested by the Defendant is a **key piece of evidence** necessary to challenge the **fraudulent contempt charges** and to substantiate broader claims of **bad faith litigation** by the Plaintiff and their counsel. **Miles & Stockbridge's** refusal to release this transcript unless payment is made prevents the Defendant from **effectively defending** against these fraudulent claims and preparing for future hearings. The deliberate **withholding of evidence** has resulted in **significant prejudice** to the Defendant, delaying justice and wasting judicial resources.

136    In **Precision Instrument Mfg. Co. v. Automotive Maintenance Mach. Co.**, 324 U.S. 806 (1945), the Court held that the withholding of key evidence, particularly in bad faith, is an act that **corrupts the judicial process** and demands sanction. By obstructing the Defendant's access to this transcript, **Miles & Stockbridge** is actively preventing the Court from achieving a **just resolution**, while unfairly burdening the Defendant with **increased costs and delays**.

III.    ABUSE OF PROCESS

137    The actions of **Miles & Stockbridge** also constitute an **abuse of process**. Conditioning the release of a **court transcript** on the payment of **fraudulently obtained contempt charges** is an improper use of the judicial system's processes for a purpose unrelated to the fair administration of justice. As established in **One Thousand Fleet Ltd. P'ship v. Guerriero**, 346 Md. 29 (1997), an **abuse of process** occurs when a party misuses legal mechanisms for ulterior motives, such as extracting payment or harassing the opposing party. Here, the Plaintiff's counsel has weaponized the **court's contempt powers** and the procedural mechanisms governing the release of evidence to force payment and obstruct the Defendant's access to justice.

138    Further, in **Palmer Ford, Inc. v. Wood**, 298 Md. 484 (1984), the Court made clear that **abuse of process** claims are actionable when legal tools are used to exert pressure on an opposing party for purposes other than legitimate legal aims. By obstructing access to the transcript, **Miles & Stockbridge** has violated this principle, leveraging the judicial system to **coerce payment** and undermine the Defendant's ability to contest the charges.

## IV.    IMPACT ON JUDICIAL INTEGRITY

139    **Miles & Stockbridge's** obstruction of evidence through the withholding of the transcript and their **unlawful conditioning** of its release undermines the **integrity of the judicial process**. In **Chambers v. NASCO, Inc.**, 501 U.S. 32 (1991), the U.S. Supreme Court affirmed that courts have the inherent authority to sanction parties and counsel who abuse the judicial process, including through the intentional obstruction of evidence. In this case, the refusal to release the transcript not only violates ethical duties but also directly impacts the Court's ability to fairly and efficiently adjudicate the matter.

140    Such conduct warrants **severe sanctions**, including monetary penalties, **referral for ethical review**, and **criminal investigation** for potential violations related to obstruction of justice and abuse of process.

## V.    CONCLUSION: SANCTIONS FOR OBSTRUCTION OF EVIDENCE

141    The deliberate obstruction of evidence by **Miles & Stockbridge**, through their refusal to release the court transcript unless payment of fraudulently obtained charges is made, constitutes a clear violation of the **Maryland Rules of Professional Conduct**, and an **abuse of process** under Maryland law. Their actions have **prejudiced the Defendant**, undermined the **judicial process**, and caused unnecessary delays and costs. The Court should impose appropriate **sanctions** to address this **serious misconduct**, including monetary penalties and referral for further **ethical and criminal review**.

<u>Legal Basis</u>

142     The actions of **Miles & Stockbridge** in **withholding the court transcript** until the Defendant pays $12,500, related to **fraudulently obtained contempt charges**, constitute a violation of both the **Maryland Rules of Professional Conduct** and established case law. Their actions are a deliberate obstruction of justice, designed to prevent the Defendant from accessing critical evidence necessary for their defense. These violations, rooted in dishonesty and abuse of process, provide a clear basis for the imposition of sanctions.

I.     RULE 3.4(A) – FAIRNESS TO OPPOSING PARTY AND COUNSEL

143     Under **Rule 3.4(a)** of the **Maryland Rules of Professional Conduct**, attorneys are prohibited from unlawfully obstructing another party's access to evidence or unlawfully concealing or destroying evidence that has **potential evidentiary value**. By conditioning the release of a court transcript on the payment of fraudulently obtained contempt charges, **Miles & Stockbridge** engaged in clear **obstruction of evidence**. This rule explicitly prohibits such actions, as they hinder the opposing party's ability to present their case and compromise the fairness of the judicial process.

144     In **Attorney Grievance Comm'n v. Brisbon**, 424 Md. 274 (2011), the Maryland Court of Appeals disciplined an attorney who obstructed access to evidence, emphasizing the critical importance of allowing both parties equal access to the information necessary for a fair trial. The conduct of **Miles & Stockbridge** in this case mirrors this violation, as their refusal to release the transcript has denied the Defendant access to a key piece of evidence needed to challenge the **fraudulent contempt charges**.

## II.    RULE 8.4(C) – MISCONDUCT

145    **Rule 8.4(c)** of the **Maryland Rules of Professional Conduct** prohibits attorneys from engaging in conduct that involves **dishonesty, fraud, deceit, or misrepresentation**. By conditioning the release of the transcript on the payment of $12,500 tied to fraudulent contempt charges, **Miles & Stockbridge** engaged in **misrepresentation and dishonesty**. Their actions reflect an attempt to **leverage a fraudulent court order** to extract money from the Defendant while concealing key evidence that would undermine the Plaintiff's claims.

146    The Maryland Court of Appeals in **Attorney Grievance Comm'n v. James, Jr.**, 385 Md. 637 (2005), held that attorneys who engage in **dishonest conduct** by **misrepresenting facts** during litigation commit serious ethical violations and may face sanctions, including disbarment. The conduct of **Miles & Stockbridge** in withholding critical evidence in exchange for payment similarly involves **misrepresentation** and **fraud**, warranting the imposition of sanctions under **Rule 8.4(c)**.

## III.    ABUSE OF PROCESS – IMPROPER USE OF JUDICIAL MECHANISMS

147    The actions of **Miles & Stockbridge** also constitute an **abuse of process**. By using the judicial process to **extract payment** in connection with a fraudulently obtained court order, they have manipulated the legal system for an improper purpose. In **One Thousand Fleet Ltd. Partnership v. Guerriero**, 346 Md. 29 (1997), the Maryland Court of Appeals defined **abuse of process** as the improper use of legal mechanisms for a purpose unrelated to the fair administration of justice. The Court in that case emphasized that when legal processes are used to exert pressure or gain an advantage, rather than for legitimate legal purposes, it constitutes **abuse of process**.

Page **51** of **82**

148    Similarly, in this case, **Miles & Stockbridge**'s decision to condition the release of evidence upon payment directly tied to **fraudulent contempt charges** constitutes a clear misuse of judicial processes. Their actions are designed to pressure the Defendant into compliance, rather than ensure fair litigation. The Court in **Palmer Ford, Inc. v. Wood**, 298 Md. 484 (1984), further held that abuse of process claims are actionable when legal mechanisms are used with improper motives to coerce an opposing party. **Miles & Stockbridge's** conduct aligns with this standard, as they have used the court's processes to create an **unlawful barrier** to the Defendant's access to evidence.

### IV.    CONCLUSION: GROUNDS FOR SANCTIONS

149    The conduct of **Miles & Stockbridge** in withholding the **July 2, 2024, court transcript** constitutes clear violations of the **Maryland Rules of Professional Conduct**, specifically **Rule 3.4(a)** and **Rule 8.4(c)**, which prohibit obstruction of evidence and misconduct involving dishonesty, fraud, or misrepresentation. Furthermore, their actions amount to an **abuse of process** by using judicial mechanisms for improper purposes. The combination of these violations demonstrates a significant breach of legal ethics and process that has severely prejudiced the Defendant's ability to defend themselves.

150    The Court should impose **sanctions** on **Miles & Stockbridge** to address these violations, including **monetary penalties**, a **referral for ethical review**, and any other sanctions the Court deems appropriate under its **inherent authority** to prevent **abuse of process** and **protect the integrity** of the judicial system.

### H    Disqualification of Counsel

Page **52** of **82**

151     Miles & Stockbridge must be disqualified as counsel for multiple reasons, all of which are sanctionable under Maryland law. The firm's continued representation of Plaintiff, Ohana Growth Partners, is incompatible with the ethical and professional responsibilities required of attorneys under the **Maryland Rules of Professional Conduct**. Their involvement presents clear grounds for disqualification based on two primary factors: (1) a conflict of interest that compromises their ability to provide competent and ethical representation, and (2) their active engagement in misconduct, including the submission of fraudulent evidence, which has directly misled the court.

## I.   CONFLICT OF INTEREST AND ETHICAL VIOLATIONS

152     First and foremost, a clear **conflict of interest** exists that precludes Miles & Stockbridge from ethically representing Ohana Growth Partners in this matter. Maryland Rule 1.7 of the **Maryland Rules of Professional Conduct** explicitly prohibits attorneys from representing a client when a conflict of interest impairs their ability to provide competent and loyal representation. In this case, the firm's actions demonstrate that their divided loyalties and unethical tactics undermine their ability to serve their client, the Defendant, and the Court.

153     Additionally, Miles & Stockbridge has engaged in egregious misconduct by falsifying evidence and presenting it to the court. Specifically, the firm fabricated email threads, using an invalid email address, and submitted these falsified communications as part of their evidence. This fraudulent material was used to secure an **ex parte Temporary Restraining Order (TRO)** under false pretenses. **Md. General Provision § 1-351(b)** requires that reasonable efforts be made to notify the opposing party before ex parte relief is sought, and that this be certified to the

court. By submitting fraudulent evidence, Miles & Stockbridge not only failed to meet this requirement but also **defrauded the court**, breaching their duties of candor and truthfulness.

II.    VIOLATIONS OF THE MARYLAND RULES OF PROFESSIONAL CONDUCT

154    Miles & Stockbridge's conduct directly violates several provisions of the **Maryland Rules of Professional Conduct**. Most notably:

1.  **Rule 3.3 (Candor Toward the Tribunal)**: This rule prohibits attorneys from knowingly making false statements or submitting fraudulent evidence to the court. By fabricating evidence and misleading the court, Miles & Stockbridge has demonstrated a clear violation of this fundamental ethical rule.

2.  **Rule 8.4 (Misconduct)**: This rule governs attorney misconduct and includes prohibitions against engaging in deceitful or dishonest behavior. Submitting falsified documents and manipulating the court system to obtain relief under false pretenses falls squarely within the type of misconduct that is subject to disciplinary action under Rule 8.4.

155    These violations alone provide sufficient grounds for the **disqualification** of Miles & Stockbridge as counsel, as they have shown an inability to maintain the ethical standards required in litigation and have compromised the integrity of the proceedings. Their actions have harmed not only the Defendant but also their own client, by exposing Ohana Growth Partners to further liability and damage to its legal standing.

III. DISQUALIFICATION TO PROTECT THE INTEGRITY OF PROCEEDINGS

156    The Defense is not seeking the disqualification of Miles & Stockbridge as a punitive

measure for their unethical conduct. Rather, the disqualification is necessary to **protect the**

**integrity of the legal process** and to prevent the firm from facilitating further baseless litigation.

By remaining as counsel, Miles & Stockbridge enables their client to pursue a claim that is **not**

**grounded in fact or law**, which is inconsistent with their ethical duties under the legal

profession.

157    An ethical attorney would not condone the pursuit of litigation based on false pretenses

after hearing both sides of the dispute. Prior to the involvement of Miles & Stockbridge, the

Plaintiff lacked the legal resources or the willingness to engage in such an aggressive and

ethically questionable strategy. The firm's continued participation in this litigation serves only to

avoid meaningful negotiation and resolution, while pushing forward with a flawed and baseless

claim that no ethical attorney would pursue in good faith.

IV. CONFLICT OF INTEREST AND REPEATED MISREPRESENTATION

158    The firm's **conflict of interest** is evident in their motivation to continue representing

Ohana Growth Partners, even in the face of clear ethical violations and a lack of substantive legal

claims. The record demonstrates that instead of presenting evidence to support their case, Miles

& Stockbridge have resorted to **repeating flawed legal arguments** that lack any context or

merit. Rather than engaging in a legitimate defense or negotiation process, they have focused on

extreme interpretations of the law in pursuit of an untenable ruling.

159    Furthermore, the Plaintiff has failed to provide any compelling evidence of harm or a particularized claim. The Plaintiff's case remains unsupported by facts, and the firm's continued participation has only exacerbated the legal and ethical conflicts involved. This further highlights that Miles & Stockbridge is using the legal system to pursue a **baseless claim** that another ethical attorney would have likely withdrawn from after understanding the lack of merit in the case.

## V.    THE HARM TO DEFENDANT, PLAINTIFF, AND THE COURT

160    In summary, Miles & Stockbridge's continued representation of Ohana Growth Partners has harmed not only the Defendant but also the Plaintiff and the Court. By misleading the court and fabricating evidence, they have damaged their client's credibility and exposed them to further liability. The firm's actions have perpetuated an **unethical and legally flawed litigation strategy**, which undermines the fairness and integrity of these proceedings.

161    To preserve the integrity of this case and ensure that justice is served, the Defense respectfully submits that Miles & Stockbridge should be disqualified from continuing their representation. Their disqualification is necessary not only to protect the Defendant but also to prevent further harm to the Plaintiff and to uphold the court's duty to maintain fair and ethical legal proceedings.

### Legal Basis

162    Under **Maryland Rules of Professional Conduct, Rule 1.7,** an attorney must avoid representing a client when a **conflict of interest** exists, unless specific conditions are met, such as informed consent from the client. A concurrent conflict of interest arises when an attorney's ability to provide loyal and independent judgment to a client is compromised, either because the

Page **56** of **82**

representation is directly adverse to another client or because the lawyer's responsibilities to a third party, a former client, or personal interests materially limit their representation.

## I.    CONFLICT OF INTEREST AND DIVIDED LOYALTIES

163    **Rule 1.7** emphasizes that a lawyer cannot represent a client effectively when there is even the appearance of a conflict of interest. Courts in Maryland have interpreted this rule strictly. In **Kane v. Kane**, 146 Md. App. 568 (2002), the court ruled that the preservation of trust in the legal profession requires attorneys to avoid even potential conflicts that could impact their ability to provide independent legal advice. In the present case, **Miles & Stockbridge**'s divided loyalties have not only impaired their ability to represent **Ohana Growth Partners** competently but have also placed their actions at odds with their professional responsibilities.

164    By continuing to represent Ohana Growth Partners despite clear conflicts, **Miles & Stockbridge** risks compromising their legal obligations to act in their client's best interest and with full candor to the court. Their conflict of interest creates divided loyalties, preventing them from providing ethical representation. **Attorney Grievance Commission of Maryland v. Stein**, 373 Md. 531 (2003), further underscores that conflicts of interest not only constitute breaches of ethical duties but also provide grounds for disqualification to protect the integrity of the proceedings.

## II.    COURTS MANDATE DISQUALIFICATION FOR CONFLICTS OF INTEREST

165    When a conflict of interest impairs an attorney's ability to act solely for their client, disqualification becomes mandatory. In **Attorney Grievance Commission v. Stein**, the court

Page **57** of **82**

stressed that when divided loyalties arise, the attorney cannot maintain an objective stance on the case. This is precisely the issue with **Miles & Stockbridge**—their continued representation of **Ohana Growth Partners** is compromised by their conflicted position. **Disqualification** is therefore necessary to ensure that the legal proceedings are conducted fairly and that the client receives independent legal counsel.

### III.    LEGAL BASIS FOR SANCTIONS: MARYLAND RULES OF PROFESSIONAL CONDUCT, RULE 3.3(A)

166    **Rule 3.3(a)** of the **Maryland Rules of Professional Conduct** establishes an attorney's duty to maintain candor toward the tribunal. This rule prohibits attorneys from knowingly making false statements of fact or law, presenting fraudulent evidence, or failing to correct falsehoods presented to the court. Attorneys are obligated to act honestly and with integrity, ensuring that the court can rely on the veracity of the evidence and statements submitted in legal proceedings.

### IV.    DUTY OF CANDOR AND SUBMISSION OF FRAUDULENT EVIDENCE

167    In this case, **Miles & Stockbridge** violated **Rule 3.3(a)** by submitting falsified email threads and fabricating evidence to secure an **ex parte Temporary Restraining Order (TRO)**. The fraudulent nature of these submissions, coupled with the firm's failure to notify the Defendant as required by **Md. General Provision § 1-351(b)**, constitutes a severe breach of the duty of candor.

168    In **Attorney Grievance Commission of Maryland v. Vanderlinde**, 364 Md. 376 (2001), the court held that "intentional dishonesty, fraud, deceit, or misrepresentation by an

attorney is almost beyond excuse," and that sanctions must be imposed when such behavior

occurs. The fraudulent conduct by **Miles & Stockbridge**—fabricating communications and

misleading the court—strikes at the core of judicial integrity and warrants disqualification and

further sanctions.

## V.    FRAUD UPON THE COURT JUSTIFIES SANCTIONS AND DISQUALIFICATION

169    In **Sinclair v. Mobile 360, Inc.**, 149 Md. App. 320 (2003), the court emphasized that

presenting false evidence is a severe breach of an attorney's ethical obligations and justifies

**disqualification** and **sanctions**. The submission of falsified documents constitutes fraud upon

the court, and when it prejudices the opposing party and misleads the tribunal, disqualification is

not only justified but necessary to preserve the fairness of the legal process.

170    **Miles & Stockbridge's** fraudulent conduct, including the submission of falsified emails

and the misrepresentation surrounding the **TRO**, directly harmed the Defendant and eroded the

court's ability to function impartially. Their actions fit squarely within the framework of

misconduct described in **Sinclair**, which mandates **disqualification** and sanctions for attorneys

who knowingly mislead the court.

## VI.    DISQUALIFICATION AND SANCTIONS ARE NECESSARY TO PROTECT THE INTEGRITY OF

### PROCEEDINGS

171    The submission of false evidence and misrepresentation by **Miles & Stockbridge**

constitutes a clear violation of **Rule 3.3(a)** and creates the basis for both **disqualification** and

**sanctions**. Their actions have caused significant harm to the Defendant and prejudiced the court

by distorting the facts of the case. Continuing to allow **Miles & Stockbridge** to represent **Ohana Growth Partners** would undermine the judicial process and further violate the principles of fair and ethical litigation.

172     As seen in **Attorney Grievance Commission v. Vanderlinde** and **Sinclair v. Mobile 360**, the court must act to impose sanctions and disqualification when attorneys engage in fraudulent conduct that compromises the fairness of the proceedings. In this case, **Miles & Stockbridge's** continued representation would only perpetuate these ethical breaches, making **disqualification** necessary to restore the integrity of the court.

## VII.    CONCLUSION: LEGAL BASIS FOR DISQUALIFICATION AND SANCTIONS

173     The conduct of **Miles & Stockbridge**—including their conflicts of interest under **Rule 1.7** and their submission of fraudulent evidence under **Rule 3.3(a)**—demonstrates a profound breach of their professional and ethical obligations. Case law, including **Kane v. Kane**, **Attorney Grievance Commission v. Stein**, and **Sinclair v. Mobile 360**, underscores the need for **disqualification** when attorneys' conflicts of interest or fraudulent conduct threaten the fairness of legal proceedings. The court must disqualify **Miles & Stockbridge** and impose appropriate **sanctions** to prevent further misuse of the legal system and to uphold the integrity of the judicial process.

### IV   RECOMMENDED SANCTIONS

174     Based on the above misconduct, both Plaintiff and Miles & Stockbridge should be subject to the following sanctions:

Page **60** of **82**

### A  Monetary Sanctions

175     The Court should impose **monetary sanctions** on the Plaintiff, **Ohana Growth Partners**, and their counsel, **Miles & Stockbridge**, to fully compensate the Defendant for the legal fees, costs, and financial harm caused by the Plaintiff's **baseless** and **retaliatory claims**. The Plaintiff's actions—filing a **fraudulent lawsuit**, securing a **fraudulently obtained Temporary Restraining Order (TRO)**, and engaging in **abuse of process**—were not intended to resolve legitimate legal disputes but rather to **harass** and financially burden the Defendant.

176     The **misconduct** of the Plaintiff and their counsel, including **defamation**, **submission of false evidence**, and **repeated misuse of legal procedures**, constitutes an abuse of the judicial system. The Defendant has incurred significant legal fees and endured delays in defending against claims that were **frivolous** and made **without substantial justification**. Monetary sanctions are necessary to **compensate** the Defendant and deter **Miles & Stockbridge** and **Ohana Growth Partners** from engaging in such unethical and fraudulent practices in future litigation.

### Punitive Damages

177     The Plaintiff and their counsel should be held **jointly and severally liable** for **punitive damages** amounting to **$5,000 per day**, starting from **June 14, 2024**, and continuing until these damages are paid in full. This daily amount, split between **Ohana Growth Partners** and **Miles & Stockbridge** at **$2,500 per day each**, serves as a **penalty** for their **egregious conduct**. This includes **attempts to unlawfully deprive the Defendant of liberty** and **fraudulent submissions** made to mislead the Court.

178    The imposition of **punitive damages** is appropriate in this case, given the **seriousness** of the Plaintiff and counsel's misconduct. These punitive damages serve as a **deterrent** to prevent future fraudulent and harassing behavior by both **Ohana Growth Partners** and **Miles & Stockbridge**. The daily accrual incentivizes timely compliance and reflects the harm caused by the **fraudulent actions** of the Plaintiff.

179    The imposition of punitive damages is supported by **BMW of N. Am., Inc. v. Gore**, 517 U.S. 559 (1996), where the U.S. Supreme Court recognized the need for punitive damages to deter willful misconduct involving fraud or deceit. The fraudulent actions of the Plaintiff and their counsel in this case clearly warrant such punitive measures.

Liquidated Damages

180    The Court should impose **liquidated damages** to cover all **compensatory damages** owed to the Defendant, including **lost wages**, **bonuses**, and other compensation. These damages are necessary to make the Defendant whole after the **fraudulent conduct** of the Plaintiff and their counsel. Additionally, a **2x multiplier** should apply to these damages, reflecting the **serious nature of the Plaintiff's breach of contract** and their deliberate intent to harm the Defendant financially.

181    **Lost Wages:** The Defendant is entitled to compensation for wages from **June 14, 2024**, through the present, including:

1. **Base salary** the Defendant would have received had they remained in their position.

2. **Salary increases**, calculated based on the highest percentage raise granted to any employee in 2024.

3. **Bonuses, Incentives, and Profit-Sharing**: The Defendant is entitled to all reasonable bonuses, incentives, and profit-sharing they would have received, including:

4. **Performance-based bonuses** tied to deals or projects in which the Defendant would have participated.

5. **Profit-sharing agreements**, calculated based on company practices or industry standards.

6. **Catch-All Compensation**: The Defendant is entitled to any additional financial benefits they would have received, including:

   - Any bonuses or payments tied to their position as an executive, employee, or department head.

   - Compensation tied to agreements or discretionary practices related to their role in the company.

182    **Application of the 2x Multiplier**: The **2x multiplier** applies to all damages awarded to the Defendant, reflecting the **additional harm** caused by the Plaintiff's fraudulent conduct and bad faith breach of contract. This multiplier compensates for the financial burden and stress imposed on the Defendant.

183    **Itemized Statement**: Plaintiff's counsel must submit a **detailed, itemized statement** of all payments, bonuses, and compensation amounts owed to the Defendant within **7 days** of this Order.

184    **Payment Deadline**: Both **Ohana Growth Partners** and **Miles & Stockbridge** must pay the full liquidated damages amount within **14 days** of the submission of the itemized statement.

185     The imposition of liquidated damages, subject to a multiplier, is supported by **Inlet Associates v. Harrison Inn Inlet, Inc.**, 324 Md. 254 (1991), in which the **Maryland Court of Appeals** recognized that sanctions should include full compensation for harm caused by **bad faith litigation**. The **2x multiplier** in this case further ensures that the Defendant is fully compensated for the harm caused by the **breach of contract** and **fraudulent conduct** of the Plaintiff.

Legal Basis for Monetary Sanctions: Rule 11(b) and Maryland Rule 1-341

186     The imposition of monetary sanctions is fully supported under **Rule 11(b)** of the **Federal Rules of Civil Procedure** and **Maryland Rule 1-341**, both of which authorize sanctions when filings are made in **bad faith**, **to harass**, or to **cause unnecessary delay**.

187     **Rule 11(b)** of the **Federal Rules of Civil Procedure** requires that parties avoid filings intended to harass or needlessly increase the cost of litigation. When a party knowingly pursues litigation with fraudulent claims or misuses the judicial process, **sanctions** such as punitive damages are appropriate.

188     **Maryland Rule 1-341** allows courts to award **reasonable attorney's fees and expenses** when a party has **acted in bad faith** or **without substantial justification**. In **Inlet Associates v. Harrison Inn Inlet, Inc.**, the Maryland Court of Appeals held that sanctions should be imposed when a party's bad faith litigation causes unnecessary expense to the opposing party.

189     These rules support both the punitive and liquidated damages requested by the Defendant. The **fraudulent actions** and **false submissions** made by the Plaintiff and their counsel have resulted in significant financial harm to the Defendant, and monetary sanctions are essential to compensate for these costs and deter future misconduct.

## Failure to Address Merits and Enhanced Damages

190     The Plaintiff's counsel, **Miles & Stockbridge**, deviated from their typical strategy of contesting substantive claims to minimize damages, as seen in cases such as **Streeter v. Walden University LLC** and **Claudio De Simone v. Alfasigma USA, Inc.**. In those cases, **Robert Brennen** and the firm robustly defended against the claims, often securing favorable outcomes through procedural challenges. However, in the present case, the firm's failure to engage with the merits of the Defendant's claims suggests a **greater culpability** or acknowledgment of the validity of those claims.

191     This strategic shift mirrors the behavior identified in **Matsushita Elec. Indus. Co. v. Epstein**, 516 U.S. 367 (1996), where the U.S. Supreme Court noted that avoiding substantive defenses may indicate an **implicit concession**. Similarly, in **Schlumberger Techs., Inc. v. Swanson**, 959 F.2d 720 (8th Cir. 1992), the court emphasized that when a defense counsel avoids addressing substantive issues, it can signal **fault or acknowledgment of liability**, justifying **enhanced damages**.

192     The Defendant requests a **2x multiplier** on all liquidated damages to reflect this **greater culpability** and the harm caused by **Miles & Stockbridge's** strategic decisions.

## Conclusion: Monetary Sanctions Are Essential to Compensate the Defendant and Deter Future Misconduct

193     Monetary sanctions are essential to fully compensate the Defendant for the significant **legal fees**, **costs**, and **financial harm** caused by the Plaintiff's **fraudulent litigation** and **bad faith conduct**. The Plaintiff's misuse of the legal system, including **fraudulent filings**, **misrepresentation**, and **failure to engage with the case's merits**, warrants the imposition of both **punitive** and **liquidated damages**.

194    By imposing these monetary sanctions and a **2x multiplier** on liquidated damages, the Court ensures that the Defendant is fully compensated for the **financial burden** caused by the Plaintiff and their counsel. These sanctions also serve as a **deterrent** to prevent **Ohana Growth Partners** and **Miles & Stockbridge** from engaging in similar misconduct in the future.

## B   Dismissal of Claims with Prejudice

195    Given the Plaintiff's misconduct and the fraudulent nature of this litigation, the Plaintiff's claims should be dismissed **with prejudice**. The record reflects a sustained misuse of the judicial process by the Plaintiff and their counsel, **Miles & Stockbridge**, aimed at retaliating against the Defendant, misleading the court, and evading legitimate legal outcomes. This litigation has not been pursued in good faith and has caused unnecessary harm to the Defendant, who has been subjected to baseless claims, fraudulent evidence, and intentional delays.

196    Dismissal with prejudice is a fitting remedy for these abuses because it not only terminates the Plaintiff's meritless claims but also prevents them from refiling or pursuing the same baseless allegations in the future. This sanction would serve to protect the integrity of the judicial process and deter the Plaintiff from further misconduct. Allowing this litigation to continue or permitting the Plaintiff to refile these claims would only compound the abuse of the judicial system that has already occurred.

## Basis for Dismissal with Prejudice

197    **Courts have the authority to dismiss a case with prejudice** when a party's conduct demonstrates willful bad faith, fraud, or an intent to manipulate the court. Such a dismissal is

considered an appropriate remedy in cases where the party's actions show a deliberate and egregious disregard for the rules of procedure and the integrity of the judicial system.

198    In **Chambers v. NASCO, Inc.**, 501 U.S. 32 (1991), the U.S. Supreme Court affirmed the inherent power of courts to issue sanctions, including dismissal with prejudice, when a party acts in bad faith or perpetrates fraud upon the court. Courts can impose this severe sanction when no lesser remedy would adequately address the harm caused by the party's misconduct. In this case, the Plaintiff's fraudulent submission of evidence, bad faith litigation tactics, and misuse of legal procedures to harass the Defendant all warrant the strongest available sanction—**dismissal with prejudice**.

199    Additionally, in **Shaffer v. Gilmer**, 61 Md. App. 585 (1985), the Maryland Court of Special Appeals recognized that dismissal with prejudice is justified when a party's conduct demonstrates intentional wrongdoing or a pattern of abusive litigation practices. The Plaintiff's actions in this case are precisely the kind of **willful misconduct** that justifies dismissal with prejudice, as they have repeatedly misled the court and used the judicial process to pursue a retaliatory and meritless lawsuit.

## Further Considerations for Dismissal

200    The Plaintiff's continued pursuit of this baseless litigation, despite being aware that their claims lack factual and legal support, demonstrates a disregard for the court's resources and the Defendant's rights. Dismissal with prejudice would not only terminate the present lawsuit but also send a clear message that the judicial system cannot be used as a tool for retaliation or to mislead the court.

201    Courts, including in **Blake v. Blake**, 341 Md. 326 (1996), have stressed the importance of imposing meaningful sanctions to prevent the misuse of legal proceedings. A **dismissal with prejudice** serves as a strong deterrent against further abuse of process and ensures that the Plaintiff is held accountable for the harm their actions have caused.

## Conclusion: Dismissal with Prejudice is Necessary and Just

202    The Plaintiff's bad faith actions, including the submission of **fraudulent evidence** and the pursuit of a **meritless lawsuit**, constitute a severe abuse of the judicial process. Dismissal with prejudice is the only appropriate sanction to address this misconduct, as it prevents further manipulation of the legal system and protects the Defendant from continued harassment.

203    By dismissing the claims with prejudice, the Court will ensure that the Plaintiff cannot refile these fraudulent claims and will affirm its commitment to maintaining the integrity of the judicial process. Given the egregious nature of the Plaintiff's conduct, no lesser sanction would suffice to rectify the harm caused or to prevent future abuses.

## C    Referral for Ethical Review

204    In light of the serious ethical violations committed by **Miles & Stockbridge**, this Honorable Court should refer the firm to the **Maryland State Bar** for **disciplinary action**. The firm's conduct in this case—including **falsifying evidence**, making **false statements to the court**, and engaging in a **conflict of interest**—constitutes a significant breach of the **Maryland Rules of Professional Conduct** and demands professional accountability. These actions undermine the integrity of the legal profession and warrant a formal review by the appropriate bar association.

205    A referral for ethical review is necessary to address the gravity of the misconduct. Attorneys are held to the highest standards of honesty, integrity, and professional responsibility, and **Miles & Stockbridge's** actions fall far short of these standards. Their behavior reflects not only a disregard for the rules governing attorney conduct but also a blatant attempt to manipulate the legal system for improper purposes. To maintain public confidence in the legal profession, these ethical violations must be thoroughly investigated and appropriately sanctioned.

## Basis for Referral: Violations of Maryland Rules of Professional Conduct

206    **Miles & Stockbridge's** conduct in this case constitutes a violation of several critical rules under the **Maryland Rules of Professional Conduct**, specifically:

1. Rule 3.3(a) (Candor Toward the Tribunal): This rule imposes an obligation on attorneys to avoid making false statements of fact or law to the court or presenting fraudulent evidence. In this case, Miles & Stockbridge falsified email threads and knowingly submitted this false evidence to the court to secure an ex parte Temporary Restraining Order (TRO) under false pretenses. This egregious breach of the duty of candor is an ethical violation of the highest order and warrants disciplinary action.

2. Rule 1.7 (Conflict of Interest: Current Clients): This rule governs conflicts of interest and prohibits attorneys from representing a client when that representation involves a conflict that materially limits the attorney's ability to provide independent and ethical advice. Miles & Stockbridge engaged in a clear conflict of interest by pursuing a legally questionable and ethically compromised litigation strategy on behalf of Ohana Growth Partners, despite knowing that their continued representation created divided

loyalties. Such conflicts impair the attorney's ability to act solely in the client's best interests and undermine the fairness of the proceedings.

207    In **Attorney Grievance Commission of Maryland v. Stein**, 373 Md. 531 (2003), the **Court of Appeals of Maryland** emphasized that ethical violations, especially those involving conflicts of interest and the intentional presentation of false evidence, warrant strict disciplinary measures. The professional misconduct in this case rises to the level of requiring formal disciplinary review by the state bar.

Ethical Violations and the Necessity for Professional Discipline

208    Ethical violations of this magnitude require a referral to the appropriate regulatory body for investigation and potential sanctions. The **Maryland Rules of Professional Conduct** are designed to ensure that attorneys act with honesty and integrity, particularly in their dealings with the court. When attorneys breach these fundamental duties—as **Miles & Stockbridge** has done here—it compromises not only the immediate proceedings but also the broader trust in the legal profession.

209    The **Maryland Court of Appeals** has consistently held that violations of the duty of candor and conflicts of interest are among the most serious ethical breaches. In **Attorney Grievance Commission v. Vanderlinde**, 364 Md. 376 (2001), the court noted that "intentional dishonesty, fraud, deceit, or misrepresentation by an attorney is almost beyond excuse" and must be addressed through professional discipline. Similarly, conflicts of interest undermine the core principles of loyalty and independent judgment, which are essential to the practice of law.

210    By referring **Miles & Stockbridge** to the state bar for disciplinary action, the court ensures that these violations are subject to appropriate scrutiny and that the firm is held

accountable for its unethical conduct. This referral would serve as a deterrent to future misconduct and affirm the legal profession's commitment to maintaining the highest ethical standards.

<u>Conclusion: Referral for Ethical Review is Necessary</u>

211     **Miles & Stockbridge** has engaged in **serious ethical violations**, including the submission of **fraudulent evidence, misleading the court**, and acting with a clear **conflict of interest**. These actions violate **Rule 3.3(a)** and **Rule 1.7** of the **Maryland Rules of Professional Conduct** and have caused significant harm to the Defendant and the judicial process. The gravity of these violations requires a formal referral to the **Maryland State Bar** for disciplinary action.

212     The Defendant respectfully requests that this Honorable Court refer **Miles & Stockbridge** to the appropriate regulatory body to ensure that their conduct is investigated, and that necessary professional discipline is imposed. Such a referral is crucial not only to protect the integrity of these proceedings but also to maintain public trust in the legal system and the ethical standards governing attorneys.

### D   <u>Referral to Attorney General Criminal Review</u>

213     **Miles & Stockbridge** and their client may have violated several criminal statutes under Maryland law, including:

<u>Violation of Maryland Personal Information Protection Act (PIPA), Md. Code Ann., Com. Law § 14-3503(a)</u>

214     The Plaintiff's actions violate the **Maryland Personal Information Protection Act (PIPA), Md. Code Ann., Com. Law § 14-3503(a)**, which mandates that businesses implement

<span style="color:brown">Page **71** of **82**</span>

access controls to limit access to **personal information**, such as cardholder data, based on a legitimate **business need to know**. The Plaintiff sought to bypass **Payment Card Industry (PCI) Compliance** by granting access to sensitive information without providing a clear business justification, in direct violation of **PCI standards** and Maryland law. This reckless disregard for data protection protocols places cardholder information at risk and further evidences the Plaintiff's unlawful conduct in circumventing compliance requirements.

### Perjury (Md. Code, Crim. Law § 9-101)

215     The Plaintiff and several of its executives, as alleged by the Defendant, made **false statements under oath** in their filings, constituting **perjury** under **Md. Code, Crim. Law § 9-101**. Perjury involves willfully making false statements under oath or submitting false affidavits to the court. The use of **fraudulent evidence** and **false affidavits** in this case is a direct violation of this statute. By knowingly filing false statements, **Miles & Stockbridge** and their client have attempted to deceive the court and mislead the judicial process, warranting potential **criminal charges** for perjury.

### Fraud (Md. Code, Crim. Law § 8-301 and § 8-402)

216     The fraudulent activities involved in this litigation, including the **fabrication of email threads**, unauthorized use of the Defendant's name in official filings, and **falsified events** to cover up illegal financial activities, constitute **felony fraud** under **Md. Code, Crim. Law § 8-301** and **§ 8-402**. Fraud is defined as knowingly and willfully deceiving another party for personal or financial gain. The fabricated evidence used to file a **fraudulent lawsuit** against the Defendant and tamper with official records is sufficient grounds for criminal charges. These

actions not only harmed the Defendant but also corrupted the legal process, warranting criminal investigation.

## Conspiracy (Md. Code, Crim. Law § 9-802)

217    The coordination between multiple parties to fabricate events, falsify evidence, and retaliate against the Defendant suggests a **criminal conspiracy** under **Md. Code, Crim. Law § 9-802**. Conspiracy occurs when two or more parties collaborate to commit an unlawful act or to achieve a lawful result through unlawful means. In this case, the Plaintiff, alongside **Miles & Stockbridge**, engaged in a conspiracy to commit **fraud**, **identity theft**, and **harassment** against the Defendant. These coordinated actions, designed to obstruct the Defendant's legal rights and cover up financial misconduct, meet the legal threshold for **criminal conspiracy**.

## Obstruction of Justice (Md. Code, Crim. Law § 9-306)

218    The Plaintiff and their legal representatives may also be guilty of **obstruction of justice** under **Md. Code, Crim. Law § 9-306** for tampering with financial records, filing **fraudulent lawsuits**, and interfering with the Defendant's ability to bring legal action. Obstruction of justice involves any act that impedes the proper administration of law, such as falsifying evidence, misleading the court, or attempting to prevent the whistleblower from exposing unlawful activities. In this case, the Plaintiff's intentional manipulation of records and legal proceedings is a direct violation of this statute and should be subject to criminal penalties.

## Reckless Endangerment (Md. Code, Crim. Law § 3-204)

219    The Plaintiff's escalating harassment and retaliatory actions, which contributed to the onset of the Defendant's life-threatening condition of **catatonia**, constitute **reckless**

**endangerment** under **Md. Code, Crim. Law § 3-204**. Reckless endangerment occurs when a person's actions create a substantial risk of serious physical harm to another individual. The extreme stress and mental anguish caused by years of retaliatory litigation and harassment placed the Defendant's health in serious jeopardy. This deliberate disregard for the Defendant's well-being, despite knowing the potential harm, warrants criminal review for **reckless endangerment**.

### Criminal Negligence (Common Law)

220    The employer's ongoing retaliation, including **gender-based harassment**, violations of the **Family and Medical Leave Act (FMLA)**, and repeated hostile actions, demonstrates a pattern of **criminal negligence** under Maryland common law. Criminal negligence involves a failure to exercise the care that a reasonably prudent person would under similar circumstances, leading to serious harm. In this case, the Plaintiff's continuous acts of retaliation resulted in both physical and emotional harm to the Defendant, contributing to the development of a severe medical condition. The **criminal negligence** displayed by the Plaintiff and **Miles & Stockbridge** merits a thorough investigation to determine if further charges should be pursued.

### Justification for Criminal Review: Protection of Legal Process and Public Safety

221    The extreme actions taken by **Miles & Stockbridge**—including falsifying documents, filing **fraudulent lawsuits**, obstructing justice, and endangering the health and safety of the Defendant—are not simply unethical; they are **potentially criminal**. The **Maryland Attorney General's Office** is well-equipped to investigate these serious violations and determine whether criminal charges are appropriate.

222     In **Chambers v. NASCO, Inc.**, 501 U.S. 32 (1991), the U.S. Supreme Court affirmed the

importance of criminal referrals when a party's conduct violates the law and undermines the

judicial process. The fraudulent and reckless actions by **Miles & Stockbridge** have done just

that—undermining the integrity of this court and causing severe harm to the Defendant. A

criminal review is not only justified but necessary to ensure that such conduct is punished and

prevented in the future.

Conclusion: Referral for Attorney General Criminal Review is Essential

223     The misconduct of **Miles & Stockbridge**—including **perjury**, **fraud**, **conspiracy**,

**reckless endangerment**, and **criminal negligence**—warrants a comprehensive criminal

investigation by the **Maryland Attorney General's Office**. These actions are not simply

unethical but may rise to the level of **criminal offenses** under Maryland law. The Defendant

respectfully requests that this Honorable Court refer **Miles & Stockbridge** and the Plaintiff for

**criminal review** to ensure that their actions are investigated and prosecuted to the fullest extent

of the law.

224     Such a referral is critical not only to protect the integrity of the judicial system but also to

hold accountable those who endanger the lives and rights of others through fraudulent and

criminal conduct.

E   Disqualification of Counsel

225     **Miles & Stockbridge** must be **disqualified** from representing **Ohana Growth Partners**

in this matter due to their clear **conflict of interest** and their **fraudulent misrepresentation** of

facts before the Court. Their continued involvement in the case has compromised the fairness

and integrity of the proceedings. Disqualification should come with a **prohibition from further participation** in this case to prevent additional harm to the judicial process and the Defendant.

226    The firm's ongoing representation of Ohana Growth Partners has been tainted by unethical conduct, including falsifying evidence and misleading the Court. Their actions have not only violated ethical standards but also created an untenable position where they cannot provide independent and competent representation. Allowing them to continue would perpetuate these violations and further undermine the proceedings.

### Basis for Disqualification: Rules 1.7 and 3.3 of the Maryland Rules of Professional Conduct

227    Disqualification is warranted under the **Maryland Rules of Professional Conduct**, specifically:

- **Rule 1.7 (Conflict of Interest)**: The clear conflict of interest exhibited by **Miles & Stockbridge** makes it impossible for them to offer impartial and competent legal representation. Their divided loyalties have compromised their ability to act solely in the best interest of **Ohana Growth Partners**, creating a situation where their participation in the case is ethically untenable.

- **Rule 3.3 (Candor Toward the Tribunal)**: **Miles & Stockbridge** has violated this rule by submitting **false statements** and **fraudulent evidence** to the Court, including falsified email threads used to obtain an **ex parte Temporary Restraining Order (TRO)**. This breach of their duty of candor constitutes **fraud upon the court** and necessitates their disqualification to preserve the fairness of the proceedings.

228    In addition to these ethical violations, **fraud upon the court** in securing the TRO further underscores the need for disqualification. When a party has engaged in fraudulent conduct that misleads the court and compromises the legal process, continued representation is not only inappropriate but harmful to the integrity of the judiciary. Disqualifying **Miles & Stockbridge** ensures that the legal proceedings can continue without further ethical violations or manipulation.

## V    CONCLUSION

229    **WHEREAS,** the Plaintiff, Ohana Growth Partners, and their counsel, Miles & Stockbridge, have engaged in repeated acts of bad faith, procedural abuse, and misrepresentation throughout this litigation, including but not limited to:

1. **Falsely claiming** that the Defendant, **Ryan Dillon-Capps**, refused to provide access to the Global Administrator account, despite an agreement being reached and intentionally prevented from being fulfilled by the Plaintiff and their representatives;

2. Filing and enforcing a **fraudulently obtained Temporary Restraining Order (TRO)** without providing the requisite notice and by using an email address that the Defendant was prohibited from accessing;

3. **Manipulating procedural rules**, misleading the Court regarding due process, and obtaining contempt orders and enforcement actions based on **fraudulent filings** and false narratives.

4. Failing to honor procedural safeguards provided by **Md. R. Civ. P. Cir. Ct. 2-322** and similar rules, all in an effort to harass and burden the Defendant, delay the

resolution of this case, and perpetuate a **baseless lawsuit** with no particularized harm or risk caused by the Defendant.

**230**    **WHEREAS,** Plaintiff and Miles & Stockbridge have further acted in concert as co-conspirators in perpetuating this false narrative, misleading the Court, and misusing judicial resources in violation of the Defendant's rights and due process protections;

**231**    **WHEREAS,** Plaintiff and their counsel's actions have had a direct and negative impact on the Defendant's ability to pursue litigation and have imposed undue emotional, financial, and psychological harm, particularly given the Defendant's protected status under the Americans with Disabilities Act (ADA) and ongoing medical needs;

**232**    **WHEREAS,** the Court has both the authority and duty to prevent abuse of process, sanction misconduct, and ensure fairness and integrity in the judicial process, including dismissing frivolous claims, awarding monetary damages, and referring unethical conduct for further investigation;

**233**    **THEREFORE,** the Defendant, Ryan Dillon-Capps, respectfully requests that this Court issue the following sanctions against the Plaintiff, Ohana Growth Partners, and their counsel, Miles & Stockbridge:

Monetary Sanctions:

234    Both Plaintiff and **Miles & Stockbridge** should be ordered to compensate the Defendant for all **legal fees and costs** incurred due to their **bad faith litigation**, beginning from **June 14, 2024,** until the cessation of their perpetuation of the **false narrative**. Additionally, an award should be made reflecting the damages caused by the **fraudulent TRO enforcement** and misuse of judicial resources, as detailed in the affidavit.

## Dismissal of Claims with Prejudice

235    The Court should **dismiss all of the Plaintiff's claims with prejudice**, as they are based on knowingly **false assertions**, lack of particularized harm, and **continued bad faith** in the litigation process. Such dismissal is warranted as the Plaintiff's actions demonstrate a clear intent to **misuse the judicial process** for improper purposes.

## Referral for Ethical Review

236    The Court should refer Miles & Stockbridge, including Holly Butler, Steven D. Frenkil, Robert Brennen, Victoria Hoffberger, and Jessica L. Duvall, for ethical review by the appropriate state bar association. Their participation in presenting fraudulent evidence, misrepresenting facts, and misleading the Court constitutes violations of the Maryland Rules of Professional Conduct, and such conduct must be investigated and appropriately sanctioned.

## Referral for Criminal Review:

237    Given the serious nature of the false representations made to the Court, the fraudulent creation of email threads, and the intentional submission of falsified evidence, the Court should refer Miles & Stockbridge and Ohana Growth Partners for criminal review. Their actions may constitute fraud upon the court and other potential criminal violations, including obstruction of justice and perjury, for which appropriate legal remedies should be pursued.

## Disqualification of Counsel:

238    **Miles & Stockbridge** should be **disqualified** from representing **Ohana Growth Partners** in this case and any future litigation due to their **conflict of interest** and their participation in **fraudulent and unethical conduct**. Their continued involvement undermines the fairness and integrity of these proceedings.

<u>Vacate Default Order:</u>

239    It is illogical to believe that preliminary motions are limited solely to addressing the lead document, particularly when the case is attached to an injunction, with a show cause order serving as enforcement of that injunction. **Md. R. Civ. P. Cir. Ct. 2-322** exists for the purpose of addressing legal issues in the preliminary phase of the proceedings. Arguing that **Rule 2-322** applies only to documents that do not form the basis of the proceedings is an invalid interpretation. Moreover, the order to vacate offers no viable relief, as **Ohana Growth Partners'** claim lacks particularized harm and fails to explain how **Ryan Dillon-Capps** would be the cause of any such harm.

240    Additionally, the Plaintiff has pursued this case with **unclean hands**, employing **estoppel** in an attempt to fabricate a legal basis for their claims. Their effort to set up **Dillon-Capps** was futile, as **Justin Drummond** accepted an agreement and made an accord on **June 7, 2024**. Their actions on **June 13, 2024** demonstrate that they conspired to frame the Defendant and subsequently misled the Court. The entire case is based on fraudulent claims, lacks merit, and should not be allowed to continue.

<u>Conclusion Summary</u>

241    The **Court** is asked to exercise its power to **sanction** to protect and **penalize** for relief and deterrence. **Plaintiff** and their **counsel, Miles & Stockbridge**, for their **fraudulent actions**, **misuse of judicial resources**, and continued bad faith in the pursuit of a **meritless lawsuit**. Given the **ongoing harm** to the Defendant, as well as the significant **ethical and procedural violations**, the requested sanctions will ensure **fairness** and protect the **integrity of the judicial process** moving forward.

Page **80** of **82**

Motion for Sanctions

Page # 81 of 82

Exhibit 108

Hurson District Exhibit 16-9

Exhibit Page # 81 of 82

EXHIBIT 316-9

RESPECTFULLY SUBMITTED,

September 27, 2024

/s/ Ryan Dillon-Capps
Ryan Dillon-Capps (Pro Se)
Email: ryan@mxt3.com
1334 Maple Avenue
Essex, Maryland 21221
Telephone: (703) 303-1113

## Certificate Of Service

I HEREBY CERTIFY that on September 27, 2024, a copy of the **Motion for Sanctions** was sent

via email to rbrennen@milesstockbridge.com and served on via first-class mail, postage prepaid on:

Robert S. Brennen

Miles & Stockbridge P.C.

100 Light Street

Baltimore, Maryland 21202

/s/Ryan Dillon-Capps
Ryan Dillon-Capps (Pro Se)