# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| RYAN DILLON-CAPPS<br><br>**Plaintiff,**<br>vs.<br><br>OHANA GROWTH PARTNERS, LLC et **al**<br><br>**Defendants** | Civil Action<br>No. _____<br><br>Hon. _____ |

## COMPLAINT INTEGRATED APPENDIX: COUNTS

Plaintiff incorporates all subsequent sections and attachments herein by reference as though fully stated in this main document.

### Table of Contents

COUNT I : FMLA INTERFERENCE ------------------------------------------------------------3

    SUB-COUNT ----------------------------------------------------------------------------3

    RELIEF -----------------------------------------------------------------------------------4

COUNT II: FMLA RETALIATION -------------------------------------------------------------4

    SUB-COUNT ----------------------------------------------------------------------------4

    RELIEF -----------------------------------------------------------------------------------6

COUNT III: FAILURE TO PROVIDE  REASONABLE ACCOMODATIONS OF FMLA LEAVE [PENDING EEOC] -----------------------------------------------------------------6

    SUB-COUNT ----------------------------------------------------------------------------6

    RELIEF -----------------------------------------------------------------------------------8

COUNT IV: ADA TITLE I AND MARYLAND ANTI-RETALIATION [PENDING EEOC] ---------------------8

    SUB-COUNTS---------------------------------------------------------------------------8

    RELIEF -----------------------------------------------------------------------------------9

COUNT V: UNLAWFUL TERMINATION-------------------------------------------------------9

    SUB-COUNTS---------------------------------------------------------------------------9

    RELIEF --------------------------------------------------------------------------------- 10

COUNT VI: MISCLASSIFICATION OF EXEMPT STATUS----------------------------------------- 11

    SUB-COUNT --------------------------------------------------------------------------- 11

    MISCLASSIFICATION OF EXEMPT STATUS ------------------------------------------------- 11

Relief --------------------------------------------------------------------------------------- 13
Relief COUNT V: Non-Exempt classification ------------------------------------------------ 13
**COUNT VII: WITHHOLDING COMPENSATION** ------------------------------------- **13**
Sub-Count ---------------------------------------------------------------------------------- 13
Relief --------------------------------------------------------------------------------------- 16
**COUNT VIII: CANCELLING OF BENEFITS**------------------------------------------ **16**
Sub-Count ---------------------------------------------------------------------------------- 16
Cancelling of Benefits -------------------------------------------------------------------- 16
Relief --------------------------------------------------------------------------------------- 17
**COUNT VIX: WITHHOLDING COBRA PAPERWORK**---------------------------- **17**
Sub-Count ---------------------------------------------------------------------------------- 17
Withholding COBRA Paperwork ----------------------------------------------------------- 17
Relief --------------------------------------------------------------------------------------- 18
**COUNT X: INSURANCE FRAUD**------------------------------------------------------ **18**
Sub-Count ---------------------------------------------------------------------------------- 18
Relief --------------------------------------------------------------------------------------- 19
**COUNT XI:  42 U.S.C. § 1983 CIVIL ACTION FOR DEPRIVATION OF RIGHTS**------------------------- **20**
Judicial, Magisterial Procedural Misconduct Summary --------------------------------- 20
First Amendment -------------------------------------------------------------------------- 22
First Amendment -------------------------------------------------------------------------- 22
Relief First Amendment------------------------------------------------------------------- 25
Sub Fifth Amendment --------------------------------------------------------------------- 25
Sub Fifth Amendment --------------------------------------------------------------------- 25
Relief Fifth Amendment ------------------------------------------------------------------ 27
Sub-Count Sixth Amendment ------------------------------------------------------------- 28
Relief Count Sixth Amendment----------------------------------------------------------- 30
Sub-Count Eighth Amendment ------------------------------------------------------------ 31
Sub-Count Eighth Amendment ------------------------------------------------------------ 31
Relief Count Eighth Amendment---------------------------------------------------------- 32
Sub-Count Nineth Amendment ----------------------------------------------------------- 33
Sub-Count Nineth Amendment ----------------------------------------------------------- 33
Relief Count Nineth Amendment--------------------------------------------------------- 35
Sub-count Thirteenth Amendment ------------------------------------------------------- 35
Relief Count Thirteenth Amendment----------------------------------------------------- 37
Sub-Count Fourteenth Amendment------------------------------------------------------- 37
Relief Count Fourteenth Amendment----------------------------------------------------- 39
**COUNT XII: MAIL FRAUD** ---------------------------------------------------------- **40**
Sub-Count ---------------------------------------------------------------------------------- 40
Relief --------------------------------------------------------------------------------------- 40

**COUNT XIII: WIRE FRAUD** -------------------------------------------------------------------- **40**

Sub-Count ----------------------------------------------------------------------------------- 40

Relief ------------------------------------------------------------------------------------------- 42

**COUNT XIV: PCI COMPLIANCE CONSUMER PROTECTION VIOLATIONS** -------------------------- **42**

Sub-Counts --------------------------------------------------------------------------------------- 42

Relief ------------------------------------------------------------------------------------------- 44

**COUNT XV: PCI COMPLIANCE PIA VIOLATIONS AND WHISTLEBLOWER RETALIATION** -------- **45**

Sub-Counts --------------------------------------------------------------------------------------- 45

Relief ------------------------------------------------------------------------------------------- 46

**COUNT XVI: FRAUDULENT LAWSUIT AND PIA VIOLATIONS** ------------------------------------- **47**

Sub-Counts --------------------------------------------------------------------------------------- 47

Relief ------------------------------------------------------------------------------------------- 51

**COUNT XVII: RICO** ------------------------------------------------------------------------------- **51**

Sub-Counts --------------------------------------------------------------------------------------- 51

Relief ------------------------------------------------------------------------------------------- 59

ONSITE SOLUTIONS, INC AND CONTRIBUTORY MISCONDUCT: SUPPORTING EVIDENCE OF ENTERPRISE LIABILITY ---------- 60

ONSITE SOLUTIONS, INC. AND CONTRIBUTORY MISCONDUCT: SUPPORTING EVIDENCE OF ENTERPRISE LIABILITY --------- 60

**COUNT XVIII: ANTI-RIGHTS CONSPIRACY** ------------------------------------------------------ **62**

Sub-Counts --------------------------------------------------------------------------------------- 62

Relief ------------------------------------------------------------------------------------------- 65

**COUNT XIX: FAILURE TO PREVENT CONSPIRACY UNDER 42 U.S.C. § 1986** ----------------------- **66**

Sub-Counts --------------------------------------------------------------------------------------- 66

Relief ------------------------------------------------------------------------------------------- 67

**COUNT XX: ADA TITLE II & MARYLAND ANTI-DISCRIMINATION RETALIATION** ------------------ **67**

Sub-Counts --------------------------------------------------------------------------------------- 67

Relief ------------------------------------------------------------------------------------------- 68

**COUNT XXI: DENIED USE OF BENEFITS AND ACCOMODATIONS** ------------------------------------ **69**

Sub-Counts --------------------------------------------------------------------------------------- 69

Relief ------------------------------------------------------------------------------------------- 70

**COUNT XXII: RETALIATORY COERCION UNDER THE NORRIS-LAGUARDIA ACT** ------------------ **70**

Sub-Count ----------------------------------------------------------------------------------------- 70

Relief ------------------------------------------------------------------------------------------- 72

**RESPECTFULLY SUBMITTED** ---------------------------------------------------------------------- **73**

# COUNT I : FMLA INTERFERENCE

SUB-COUNT

| Sub | FMLA INTERFERENCE<br>29 U.S.C. § 2615(a)(1) FMLA Intererance<br>Md. Code, Lab. & Empl. § 3-802 Maryland Flexible Leave Act (MFLA)<br>Md. Code Ann., Ins. § 15-408 Maryland Health Insurance Continuation | |
|---|---|---|
| [1] | 29 U.S.C. § 2615(a)(1) | Denial of Leave |
| [2] | 29 U.S.C. § 2615(a)(1) | Obstruction/Hinderance of Leave |
| [3] | 29 U.S.C. § 2615(a)(1) | Failure to Restore Position |
| [4] | 29 U.S.C. § 2615(a)(1) | Discouraging Leave Use |
| [5] | Md. Code, Lab. & Empl. § 3-802 | Right to Paid Leave for Medical Reasons |
| [6] | Md. Code Ann., Ins. § 15-408 | Obligation to Continue Health Insurance |

1    Ohana Growth Partners, LLC, qualifies as a covered employer under the Family and Medical Leave Act (FMLA), employing more than 50 employees within a 75-mile radius, as required under 29 U.S.C. § 2611(4)(A). The Plaintiff, as an eligible employee under 29 U.S.C. § 2611(2)(A), had worked for more than 12 months and accrued the requisite 1,250 hours during the preceding 12 months. These qualifications were further documented through FMLA paperwork that confirmed the Plaintiff's eligibility.

2    The Plaintiff invoked FMLA leave on January 4, 2024, citing medical reasons related to diagnosed PTSD and associated health conditions. Despite meeting eligibility requirements, Ohana Growth Partners, through its leadership—Richard Hartman, Glenn Norris, and Justin Drummond—engaged in a systematic campaign to interfere with, obstruct, and discourage the Plaintiff's access to FMLA protections.

3    Defendants violated 29 U.S.C. § 2615(a)(1) by denying or obstructing the Plaintiff's intermittent FMLA leave. This interference included delaying formal recognition of the leave request, issuing contradictory directives that undermined its use, and creating retaliatory crises that rendered leave periods ineffective. For instance, on May 25, 2024, Defendants confirmed in writing the Plaintiff's entitlement to FMLA leave while simultaneously engaging in actions designed to disrupt its use, such as excessive workload demands and fabricated emergencies.

4    Defendants further failed to restore the Plaintiff to their role or an equivalent position as required under 29 U.S.C. § 2614(a)(1). Instead, the Plaintiff was wrongfully terminated on July 30, 2024, under pretextual reasons. This termination denied the Plaintiff their statutory right to restoration and reinforced the retaliatory intent underlying the Defendants' actions.

5    The Defendants violated 29 C.F.R. § 825.220 by discouraging the Plaintiff from taking leave. This was executed through retaliatory measures, including threats of termination, excessive and contradictory workload demands, and a fraudulent lawsuit filed on June 14, 2024, which compounded the Plaintiff's financial and emotional strain. Additionally, the Defendants unlawfully demanded recertification for a chronic condition every 30 days, in direct violation of 29 C.F.R. § 825.305(c), further obstructing the Plaintiff's leave rights.

6    Under Md. Code, Lab. & Empl. § 3-802, the Defendants denied the Plaintiff the right to use accrued paid leave for documented medical reasons. Furthermore, following the Plaintiff's wrongful termination, the Defendants failed to maintain health insurance coverage as required under Md. Code Ann., Ins. § 15-408, exacerbating the Plaintiff's medical and financial hardships during a time of critical need.

7    These actions, coordinated by Ohana Growth Partners' leadership and supported by their legal counsel at Miles & Stockbridge, represent a deliberate pattern of FMLA interference and retaliation in violation of federal and state law.

## RELIEF

### RELIEF COUNT II: WAGE COLLECTION

| 29 U.S.C. § 2615(a)(1) | Compensatory Damages | Recovery of lost wages, benefits, and additional expenses incurred due to denial, obstruction, or discouragement of FMLA leave. |
|---|---|---|
| 29 U.S.C. § 2617(a)(1)(A) | Liquidated Damages | Double the amount of compensatory damages for willful violations of the FMLA. |
| 29 U.S.C. § 2617(a)(3) | Attorney's Fees and Costs | Recovery of reasonable attorney's fees and court costs for FMLA violations. |
| Md. Code, Lab. & Empl. § 3-802 | Restorative Relief | Recovery of paid leave benefits wrongfully denied for documented medical reasons. |
| Md. Code Ann., Ins. § 15-408 | Restorative Relief | Reinstatement or equivalent compensation for terminated health insurance benefits. |
| 29 U.S.C. § 2617(a)(1)(B) | Injunctive Relief | Court order mandating compliance with FMLA, restoration of health insurance, and cessation of retaliatory practices. |

## COUNT II: FMLA RETALIATION

### SUB-COUNT

| Sub | **FMLA RETALIATION**<br>29 U.S.C. § 2615(a)(2)  FMLA Retaliation<br>Md. Code, Lab. & Empl. § 3-802 Retaliation for Exercising Leave Rights<br>Md. Code Ann., Ins. § 15-408 Adverse Action Worsened Harm |
|---|---|

| | | |
|---|---|---|
| [7] | 29 U.S.C. § 2615(a)(2)<br>29 C.F.R. § 825.220(b) | Harassment/Hostile Behavior |
| [8] | 29 U.S.C. § 2615(a)(2)<br>29 C.F.R. § 825.220(b) | Suspension without Pay |
| [9] | 29 U.S.C. § 2612(d)(2)<br>29 C.F.R. § 825.207(a) | Denied Use of Paid Leave |
| [10] | 29 U.S.C. § 2615(a)(2)<br>29 C.F.R. § 825.220(c) | Termination |
| [11] | 29 U.S.C. § 2614(c)(1)<br>29 C.F.R. § 825.209(a) | Termination of Insurance Benefits<br>(Health, Dental, Life, etc.) |
| [12] | Md. Code, Lab. & Empl. § 3-802 | Retaliation for Exercising Leave Right |
| [13] | Md. Code Ann., Ins. § 15-408 | Adverse Action Worsened Harm |

8    The Defendants, including Ohana Growth Partners, LLC, and individual actors such as Richard Hartman, Glenn Norris, and Justin Drummond, engaged in retaliatory actions in violation of the Family and Medical Leave Act (FMLA), 29 U.S.C. § 2615(a)(2), as well as Maryland statutes, Md. Code, Lab. & Empl. § 3-802, and Md. Code Ann., Ins. § 15-408. These retaliatory actions began after the Plaintiff invoked their FMLA rights for intermittent medical leave due to serious health conditions and escalated with the initiation of a fraudulent lawsuit on June 14, 2024.

9    The Defendants retaliated against the Plaintiff in the following ways:

10    **Harassment and Hostile Behavior:** Following the Plaintiff's invocation of FMLA protections, Glenn Norris and Justin Drummond created a hostile work environment. This included unwarranted criticism, exclusion from meetings, and increased scrutiny of the Plaintiff's work performance. The hostile behavior was intended to discourage the Plaintiff from exercising their FMLA rights and reporting systemic misconduct.

11    **Suspension Without Pay:** On June 13, 2024, Richard Hartman directed the suspension of the Plaintiff without pay, cutting off their income while their FMLA request was pending. This suspension coincided with the fraudulent lawsuit initiated by Ohana Growth Partners, further destabilizing the Plaintiff financially.

12    **Denial of Paid Leave:** Despite the Plaintiff's eligibility to use accrued paid leave during their FMLA-protected absence, the Defendants, led by Glenn Norris and Hartman, refused to approve such requests without justification. This denial compounded the Plaintiff's financial strain and increased the harm caused by their ongoing health challenges.

13    **Termination:** On July 30, 2024, the Plaintiff was terminated under pretextual grounds, while still invoking their FMLA protections. The timing of the termination, shortly after the initiation of the fraudulent lawsuit, indicates a coordinated retaliatory effort.

14  **Termination of Insurance Benefits:** On November 7, 2024, the Plaintiff's health, dental, and life insurance benefits were wrongfully terminated without proper notice or cause. This action left the Plaintiff without access to critical medical care and increased the financial burden caused by their retaliatory termination.

15  **Violation of State Law Protections:** Under Md. Code, Lab. & Empl. § 3-802, the Plaintiff was entitled to protection against retaliation for exercising leave rights. Additionally, Md. Code Ann., Ins. § 15-408 prohibits termination of health insurance benefits in a manner that exacerbates harm, which the Defendants flagrantly violated.

16  The Defendants' actions caused significant harm, including financial instability, reputational damage, and worsened health conditions. These retaliatory measures were part of a coordinated strategy to silence the Plaintiff's whistleblowing efforts and deter them from asserting their rights under the FMLA and Maryland law.

## RELIEF

| RELIEF COUNT II: WAGE COLLECTION | | |
|---|---|---|
| 29 U.S.C. § 2617(a)(1)(A)(i) | Actual Damages | Compensation for lost wages, benefits, and other monetary losses due to retaliation. |
| 29 U.S.C. § 2617(a)(1)(A)(ii) | Interest | Prejudgment interest on the amount of lost compensation. |
| 29 U.S.C. § 2617(a)(1)(A)(iii) | Liquidated Damages | Double the amount of lost wages and benefits for willful violations. |
| 29 U.S.C. § 2617(a)(3) | Attorney's Fees and Costs | Recovery of reasonable attorney's fees and litigation costs. |
| Md. Code, Lab. & Empl. § 3-802 | Statutory Damages | Penalties for retaliatory actions violating Maryland leave protections. |
| Md. Code Ann., Ins. § 15-408 | Restorative Compensation | Compensation for termination of insurance benefits causing additional harm. |
| 29 U.S.C. § 2617(a)(1)(B) | Injunctive Relief | Reinstatement of employment and restoration of lost benefits. |
| 29 U.S.C. § 2617(a)(1)(A)(iv) | Equitable Relief | Reinstatement of insurance benefits and measures to prevent future retaliation. |

## COUNT III: FAILURE TO PROVIDE  REASONABLE ACCOMODATIONS OF FMLA LEAVE [PENDING EEOC]

### SUB-COUNT

| Sub | FAILURE TO PROVIDE  REASONABLE ACCOMODATIONS OF FMLA LEAVE [PENDING EEOC] |
|---|---|
| | 1.   U.S.C. § 12112 ET SEQ. VIOLATION OF TITLE I OF THE ADA (PENDING EEOC) |

| | 2. MD. CODE, STATE GOV'T § 20-606 MARYLAND'S ANTI-DISCRIMINATION LAW & Maryland Fair Employment Practices Act (MFEPA) | |
|---|---|---|
| [14] | 42 U.S.C. § 12112 et seq<br>Md. Code, State Gov't § 20-606 | Failure to Provide Reasonable Accommodation |
| [15] | Md. Code, State Gov't § 20-606(a)(4) | Failure to Provide Reasonable Accommodation by State Law |
| [16] | 42 U.S.C. § 12203(a)<br>Md. Code, State Gov't § 20-606(f) | Retaliation |
| [17] | Md. Code, State Gov't § 20-606(f) | Retaliation Prohibited by State Law |

17    **Ohana Growth Partners, LLC**, employing over 50 individuals, qualifies as a **covered employer** under **42 U.S.C. § 12111(5)** and **Md. Code, State Gov't § 20-606(a)(1)**. The plaintiff, a **qualified individual with a disability** under **42 U.S.C. § 12111(8)** and **Md. Code, State Gov't § 20-606(a)(3)**, was capable of performing the essential functions of their job with reasonable accommodations, including intermittent FMLA leave for medical needs.

18    **Failure to Provide Reasonable Accommodation**: Ohana Growth Partners violated **42 U.S.C. § 12112(b)(5)(A)** and **Md. Code, State Gov't § 20-606(a)(4)** by obstructing and ultimately denying the plaintiff's request for intermittent leave as a reasonable accommodation. This denial deprived the plaintiff of their federally and state-protected rights to equal access to employment opportunities.

19    **Retaliation**: The employer retaliated against the plaintiff for requesting accommodations and exercising ADA-protected rights. This retaliation included termination under pretextual grounds, wage suppression, and refusal to pay earned compensation, in violation of **42 U.S.C. § 12203(a)** and **Md. Code, State Gov't § 20-606(f)**. These adverse actions were directly tied to the plaintiff's requests for reasonable accommodation and whistleblowing activities.

20    The plaintiff's **Title I claim** is currently **pending EEOC resolution** under **42 U.S.C. § 12117(a)**. However, state-level claims under Maryland's Anti-Discrimination Law and the **Maryland Fair Employment Practices Act (MFEPA)** provide an immediate legal framework for seeking remedies.

21    The employer's intentional refusal to accommodate the plaintiff's disability and subsequent retaliatory termination caused significant financial, emotional, and professional harm. These actions violated both federal and state anti-discrimination laws, entitling the plaintiff to compensatory and punitive damages under **42 U.S.C. § 1981a(a)(2)**.

| RELIEF COUNT ADA TITLE I & MARYLAND ANTI-DISCRIMINATION RETALIATION [PENDING EEOC] | | |
|---|---|---|
| 42 U.S.C. § 12117(a) | EEOC Enforcement and Litigation | Allows claims to proceed following EEOC review, including litigation for discrimination and retaliation. |
| 42 U.S.C. § 12112(b)(5)(A) | Reasonable Accommodation Relief | Injunctive relief, compensatory damages, and other remedies for failure to accommodate under Title I. |
| 42 U.S.C. § 12203(a) | Retaliation Relief | Damages and injunctive relief for retaliatory actions under the ADA. |
| 42 U.S.C. § 1981a(a)(2) | Compensatory and Punitive Damages | Recovery of emotional distress, lost wages, and punitive damages for intentional discrimination. |
| Md. Code, State Gov't § 20-606(a)(4) | Reasonable Accommodation Damages | Compensatory damages for failure to provide reasonable accommodation under Maryland law. |
| Md. Code, State Gov't § 20-606(f) | Retaliation Relief | Damages for wage suppression, termination, and retaliation tied to requests for accommodations. |

## COUNT IV: ADA TITLE I AND MARYLAND ANTI-RETALIATION [PENDING EEOC]

### SUB-COUNTS

| Sub | ADA TITLE I AND MARYLAND ANTI-RETALIATION [PENDING EEOC] 1. 42 U.S.C. § 12203(A) ADA RETALIATION (TITLE I AND TITLE II) 2. MD. CODE, STATE GOV'T §§ 20-304(B), 20-606(F) MARYLAND'S ANTI-DISCRIMINATION LAW | |
|---|---|---|
| [18] | 42 U.S.C. § 12203(A) | ADA Retaliation under Title I [PENDING EEOC] |
| [19] | 42 U.S.C. § 12203(A) | ADA Retaliation under Title II |

22  **42 U.S.C. § 12203(a)** and **Md. Code, State Gov't §§ 20-304(b), 20-606(f)** prohibit retaliation against individuals who engage in protected activities under the ADA and Maryland law. The plaintiff engaged in protected activities, including requesting FMLA leave and raising accessibility concerns, actions explicitly safeguarded under these statutes. In direct response to these activities, **Ohana Growth Partners, LLC** terminated the plaintiff under false pretext, while judicial and administrative defendants obstructed filings and suppressed complaints to prevent the plaintiff from pursuing their rights. These adverse actions were causally connected to the plaintiff's exercise of ADA rights, violating **42 U.S.C. § 12203(a)** and Maryland's anti-retaliation provisions.

23    For retaliation under **Title I** of the ADA by the employer, the plaintiff is entitled to seek damages under **42 U.S.C. § 1981a(a)(2)**, including compensation for harm caused by the denial of reasonable accommodations and retaliation for engaging in protected activities.

| RELIEF COUNT ADA TITLE I AND MARYLAND ANTI-RETALIATION [PENDING EEOC] | | |
|---|---|---|
| 42 U.S.C. § 12203(a) | ADA Retaliation Relief | Injunctive relief, compensatory damages, and remedies for retaliation under ADA Titles I and II. |
| 42 U.S.C. § 1981a(a)(2) | ADA Damages | Recovery of compensatory and punitive damages for employer retaliation under Title I. |
| Md. Code, State Gov't § 20-606(f) | Damages for State Retaliation | Recovery of damages for retaliation, including emotional distress and punitive damages for willful acts. |
| Md. Code, State Gov't § 20-304(b) | Injunctive Relief | Court-ordered injunctions to prohibit ongoing retaliatory actions. |
| 42 U.S.C. § 12205 | Attorney's Fees | Recovery of reasonable attorney's fees and litigation costs for ADA-related retaliation claims. |

## COUNT V: UNLAWFUL TERMINATION

SUB-COUNTS

| **Sub** | UNLAWFUL TERMINATION 1 | |
|---|---|---|
| [20] | 29 U.S.C. § 2615(a)(2) | Retaliatory Termination While on FMLA Leave |
| [21] | 29 C.F.R. § 825.220(a) | Pretextual Justification for Termination |
| [22] | 29 U.S.C. § 2614(c)(1) | Failure to Maintain Health Benefits During FMLA Leave |
| [23] | Md. Code Ann., Lab. & Empl. § 3-505 | Failure to Pay Wages and Benefits: |
| [24] | Md. Code Ann., Ins. § 15-1301 et seq. | Md. Health Insurance Continuation Requirements |
| [25] | Md. Code Ann., Ins. § 15-408 | Adverse Termination Worsened Harm via Loss of Benefits |
| [26] | 18 U.S.C. § 1341 | Fraudulent Use of USPS (Mail Fraud) |
| [27] | 18 U.S.C. § 1343 | Fraudulent Use of Email (Wire Fraud) |
| [28] | 29 U.S.C. § 1140 | Interfering with the attainment of benefits under an employee benefit plan. |

24   On July 30, 2024, the Plaintiff, Ryan Dillon-Capps, was unlawfully terminated by the Defendant, Ohana Growth Partners, LLC, while on protected FMLA leave. This termination, which occurred with several weeks of FMLA leave remaining, violated 29 U.S.C. § 2615(a)(2), which prohibits retaliatory actions against employees for exercising their FMLA rights. The Defendant's justification for the termination relied on fabricated claims of performance issues and policy violations, amounting to a pretextual reasoning prohibited under 29 C.F.R. § 825.220(a). This pretext was designed to obscure the true retaliatory motive behind the termination and deter the Plaintiff from exercising federally protected leave rights.

25     The termination also resulted in the immediate cessation of the Plaintiff's health insurance benefits, violating 29 U.S.C. § 2614(c)(1), which requires employers to maintain health insurance coverage under the same terms as active employment during FMLA leave. Maryland law further reinforces these protections through Md. Code Ann., Lab. & Empl. § 3-505 and Md. Code Ann., Ins. §§ 15-1301 et seq. and 15-408, which obligate employers to ensure the continuation of benefits and prohibit adverse actions that exacerbate harm to employees during transitions. The Defendant's failure to meet these obligations compounded the Plaintiff's financial and medical hardships during a period of critical need.

26     Additionally, the Defendant employed fraudulent communications to further the unlawful termination. A termination letter sent via USPS contained materially false statements about the reasons for the Plaintiff's dismissal, constituting mail fraud under 18 U.S.C. § 1341. Similarly, the Defendant's email correspondence misrepresented the termination's basis, amounting to wire fraud under 18 U.S.C. § 1343. These fraudulent communications were part of a deliberate scheme to conceal the retaliatory and unlawful nature of the termination.

27     The Defendant's actions also interfered with the Plaintiff's ability to access benefits under an employee benefit plan, violating 29 U.S.C. § 1140 of ERISA. By terminating the Plaintiff, the Defendant obstructed the Plaintiff's ability to continue receiving health insurance, vested benefits, and other employment-related entitlements. This interference demonstrates a calculated effort to deny the Plaintiff both immediate and long-term protections afforded under federal and state law.

28     Through these violations, the Defendant engaged in a coordinated effort to unlawfully terminate the Plaintiff, conceal the retaliatory motive, and inflict financial and emotional harm. These actions are in direct contravention of federal and state statutes, underscoring the need for compensatory, punitive, and injunctive relief to address the harm caused.

RELIEF

| RELIEF COUNT UNLAWFUL TERMIANTION | | |
|---|---|---|
| 29 U.S.C. § 2615(a)(2) | Compensatory Damages | Recovery for lost wages, benefits, and emotional distress caused by retaliatory termination under 29 U.S.C. § 2615(a)(2). |
| 29 U.S.C. § 2615(a)(2) | Liquidated Damages | Double the compensatory damages for willful violations of the FMLA under 29 U.S.C. § 2615(a)(2). |
| 29 U.S.C. § 2615(a)(2) | Injunctive Relief | Reinstatement to former role or equivalent position with restored benefits under 29 U.S.C. § 2615(a)(2). |
| 29 C.F.R. § 825.220(a) | Equitable Relief | Declaration that termination was pretextual and violated the FMLA under 29 C.F.R. § 825.220(a). |

| 29 U.S.C. § 2614(c)(1) | Restorative Relief | Compensation for medical expenses and other costs arising from the failure to maintain health benefits under 29 U.S.C. § 2614(c)(1). |
|---|---|---|
| Md. Code Ann., Lab. & Empl. § 3-505 | Back Pay | Payment of wages and accrued benefits owed at the time of termination under Md. Code Ann., Lab. & Empl. § 3-505. |
| Md. Code Ann., Lab. & Empl. § 3-507.2(b) | Treble Damages | Up to three times the withheld wages if nonpayment is found to be in bad faith under Md. Code Ann., Lab. & Empl. § 3-507.2(b). |
| Md. Code Ann., Lab. & Empl. § 3-507.2(b) | Statutory Damages | Penalties for failing to pay wages under Maryland law under Md. Code Ann., Lab. & Empl. § 3-507.2(b). |
| Md. Code Ann., Ins. § 15-1301 et seq. | Injunctive Relief | Restoration of lost health insurance benefits and coverage continuity under Md. Code Ann., Ins. § 15-1301 et seq. |
| Md. Code Ann., Ins. § 15-408 | Compensatory Damages | Recovery for financial and personal harm caused by the loss of insurance benefits under Md. Code Ann., Ins. § 15-408. |
| 18 U.S.C. § 1341 | Punitive Damages | Damages to deter fraudulent practices involving mail communications under 18 U.S.C. § 1341. |
| 18 U.S.C. § 1341 | Treble Damages | Triple the damages for harm caused by fraudulent mail communications under 18 U.S.C. § 1341. |
| 18 U.S.C. § 1341 | Attorney's Fees | Recovery of reasonable attorney's fees and litigation costs under 18 U.S.C. § 1341. |
| 18 U.S.C. § 1343 | Punitive Damages | Damages to deter fraudulent practices involving electronic communications under 18 U.S.C. § 1343. |
| 18 U.S.C. § 1343 | Treble Damages | Triple the damages for harm caused by fraudulent email communications under 18 U.S.C. § 1343. |
| 18 U.S.C. § 1343 | Attorney's Fees | Recovery of reasonable attorney's fees and litigation costs under 18 U.S.C. § 1343. |
| 29 U.S.C. § 1140 | Restitution | Reinstatement of benefits and compensation for financial harm due to interference under 29 U.S.C. § 1140. |
| 29 U.S.C. § 1140 | Injunctive Relief | Order prohibiting further interference with employee benefit plans under 29 U.S.C. § 1140. |
| 29 U.S.C. § 1140 | Statutory Damages | Civil penalties for interfering with ERISA-protected benefits under 29 U.S.C. § 1140. |
| 29 U.S.C. § 2615(a)(2) | Compensatory Damages | Recovery for lost wages, benefits, and emotional distress caused by retaliatory termination under 29 U.S.C. § 2615(a)(2). |

## COUNT VI: MISCLASSIFICATION OF EXEMPT STATUS

### SUB-COUNT

| **Sub** | **MISCLASSIFICATION OF EXEMPT STATUS** | |
|---|---|---|
| | 29 U.S.C. §§ 201–219 - Fair Labor Standards Act (FLSA) | |
| [29] | 29 U.S.C. § 207(a)(1) | Entitlement to Overtime |
| [30] | 29 U.S.C. § 213 | Misclassification |

29    The Plaintiff was misclassified under the Fair Labor Standards Act (FLSA) following their intermittent

FMLA leave beginning on January 4, 2024. This misclassification was a deliberate act by Ohana Growth

Partners, LLC, led by Glenn Norris, to retaliate against the Plaintiff for exercising their FMLA rights and to strip

them of authority and autonomy in their professional role. The retaliatory actions not only undermined the Plaintiff's employment status but also sought to suppress their whistleblowing activities and impair their professional credibility.

30    While on FMLA leave, Glenn Norris assumed the role of head of IT, effectively usurping the Plaintiff's supervisory responsibilities. Upon the Plaintiff's return, their authority was deliberately undermined in several ways. They were excluded from key decisions, including hiring and firing, such as the hiring of a new IT team member for the Business Intelligence Team and the disciplining of Darren Koritzka. Norris also misled the Plaintiff into believing they had resumed their supervisory role, only for the Plaintiff to discover later, after terminating Ryan Brooks, that their authority had not been restored.

31    Further demonstrating this retaliation, Glenn Norris directly managed IT team members, bypassing the Plaintiff entirely. Team members received directives from Norris and informed the Plaintiff only after executing those instructions, showcasing the Plaintiff's lack of effective authority or control. The Plaintiff was also denied self-administrative authority, with Norris preventing them from performing standard managerial functions, including sending departmental communications, attending or leading project meetings, and making independent decisions regarding IT operations. These restrictions rendered the Plaintiff unable to self-manage or perform tasks typically required of their role.

32    The retaliation extended to the exclusion of the Plaintiff from technical work. Norris deliberately directed all technical tasks to bypass the Plaintiff for months and further instructed them not to engage in technical tasks, effectively stripping the Plaintiff of substantive contributions to their department. These actions not only humiliated the Plaintiff but also created a pretext for misclassification under FLSA.

33    During the Plaintiff's FMLA leave, the Defendants engaged in harassment and interference to undermine the Plaintiff's protected leave. On May 25, 2024, the Defendants confirmed in writing that the Plaintiff could use FMLA leave but simultaneously engaged in constant harassment and created disruptions requiring the Plaintiff's response. This harassment forced the Plaintiff to work excessive hours—60 to 80 hours per week—while on intermittent FMLA leave, contravening the purpose of FMLA, which is to provide protected leave for medical recovery. This interference directly harmed the Plaintiff and added to the retaliatory context surrounding the misclassification.

34    The Plaintiff was entitled to non-exempt protections under FLSA, as they did not meet the criteria for any exemption category under 29 U.S.C. § 213. Despite meeting the salary basis threshold, their duties did not satisfy the FLSA's duties test for the following reasons. The Plaintiff lacked supervisory authority, including hiring,

firing, and team management, as Glenn Norris had assumed direct control over these functions. The Plaintiff was barred from exercising discretion and independent judgment, as Norris micromanaged decisions and denied them self-administrative tasks. The Plaintiff was precluded from performing substantive technical work, further disqualifying them from this exemption.

35    As a result of this misclassification, the Plaintiff was wrongfully denied overtime compensation for hours worked in excess of 40 hours per week, in violation of 29 U.S.C. § 207(a)(1). These retaliatory actions, combined with the misclassification, were part of a deliberate strategy to suppress the Plaintiff's FMLA rights and impose financial harm.

## RELIEF

### RELIEF COUNT V: NON-EXEMPT CLASSIFICATION

| 29 U.S.C. § 216(b) | Back Pay | Recovery of unpaid overtime for hours worked beyond 40 hours per week. |
|---|---|---|
| 29 U.S.C. § 216(b) | Liquidated Damages | Equal to the amount of back pay, unless the employer can show good faith. |
| 29 U.S.C. § 216(b) | Attorney's Fees and Costs | Recovery of reasonable attorney's fees and litigation costs. |
| 29 U.S.C. § 216(b) | Equitable Relief | Injunctive relief to prevent further FLSA violations. |

## COUNT VII: WITHHOLDING COMPENSATION

### SUB-COUNT

| Sub | WITHHOLDING COMPENSATION<br><br>MD. CODE, LAB. & EMPL. §§ 3-501–3-509 Maryland Wage Payment and Collection Law (MWPCL) | |
|---|---|---|
| [31] | Md. Code, Lab. & Empl. § 3-505 | Entitlement to Wages |
| [32] | Md. Code, Lab. & Empl. § 3-507.2 | Withholding of Wages in Bad Faith |
| [33] | Md. Code, Lab. & Empl. § 3-507.2 | Failure to Pay Overtime |
| [34] | Md. Code, Lab. & Empl. § 3-507.2(b) | Treble Damages |

36    Under Md. Code, Lab. & Empl. §§ 3-501–3-509, the Plaintiff was entitled to prompt payment of wages, including overtime, bonuses, and other compensation. However, the Defendants, acting with retaliatory intent, withheld wages, exacerbating the Plaintiff's financial instability and violating Maryland wage laws.

37    The Plaintiff was entitled to wages under Md. Code, Lab. & Empl. § 3-505. These included regular salary, accrued paid leave, bonuses, stipends, KPI-based compensation, holiday and annual bonuses, and overtime pay. At the time of termination on July 30, 2024, these amounts remained unpaid. Specifically, the Defendants failed to pay overtime compensation owed under Maryland law for hours worked beyond 40 hours per week, accrued paid leave

earned but not paid out, regular salary withheld during the fraudulent lawsuit initiated on June 14, 2024, and other monetary compensation, such as bonuses and stipends, typically provided to employees in similar roles.

38    The Plaintiff's excessive workload, ranging from 60 to 80 hours per week, arose from retaliatory demands and fabricated crises engineered by the Defendants. Despite being entitled to overtime pay under Md. Code, Lab. & Empl. § 3-415, the Defendants failed to compensate the Plaintiff for hours worked beyond 40 hours per week. This failure to pay overtime was not merely negligent but was part of a broader strategy to suppress whistleblowing and shield enterprise misconduct through financial destabilization.

39    The Defendants also withheld wages in bad faith, violating Md. Code, Lab. & Empl. § 3-507.2. The withholding of regular salary, bonuses, and accrued leave was intentional and served to retaliate against the Plaintiff for exposing fraud and enterprise misconduct. By financially destabilizing the Plaintiff, the Defendants sought to prevent further exposure of systemic violations and to shield co-conspirators from accountability under federal and state law. This bad-faith withholding also included leveraging financial hardship to obstruct the Plaintiff's ability to seek legal redress effectively.

40    Under Md. Code, Lab. & Empl. § 3-507.2(b), the Plaintiff is entitled to treble damages for wages withheld in bad faith. The Defendants' motivations included suppressing whistleblowing about fraudulent enterprise activities, such as identity theft, false submissions, and obstruction of justice. The withholding of wages served to retaliate against the Plaintiff and silence their whistleblowing efforts while protecting co-conspirators and obstructing judicial processes. This pattern of enterprise-wide misconduct highlights the need for significant damages to deter similar retaliatory actions and ensure accountability for violations of Maryland wage laws.

41    The Defendants' malicious actions and inactions inflicted devastating financial harm on the Plaintiff, with consequences that extended to the Plaintiff's vulnerable dependents, compounding the irreparable harm. The Plaintiff's brother, who is disabled and reliant on SSDI and Medicaid, is unable to work and now faces severe financial insecurity due to the Plaintiff's inability to provide critical support. The Plaintiff's elderly mother, who depends on Social Security and Medicare, has also been gravely affected, as she relied on the Plaintiff's financial and logistical support to manage basic living expenses and medical care.

42    The Plaintiff's wife, who has cerebral palsy and serves as the Plaintiff's full-time caregiver, has been overwhelmed by the escalating demands caused by the Plaintiff's deteriorating health. The malicious prosecution, which spanned over five months, exacerbated the Plaintiff's existing health conditions, with Glenn Norris and Richard Hartman inducing catatonia and their co-conspirators driving it into malignant catatonia. This severe and

life-threatening condition, coupled with dissociative episodes and dissociative amnesia, rendered the Plaintiff incapable of working.

43    The Plaintiff's household, already relying on limited fixed incomes, now faces grossly insufficient resources to meet mounting medical expenses, basic living costs, and necessities such as food, water, and electricity. The financial destabilization also obstructed the Plaintiff's ability to secure legal counsel, leaving them defenseless against the Defendants' relentless attacks. The coordinated actions of the Defendants have forced the Plaintiff and their dependents into a precarious position, with eviction looming as an imminent threat and no alternatives available without immediate relief.

44    The harm caused by the Defendants' actions is both severe and far-reaching, demonstrating a deliberate intent to exploit the Plaintiff's vulnerabilities and amplify the suffering of an entire household. The situation demands urgent injunctive and compensatory relief to address the devastating financial, emotional, and physical harm inflicted by the Defendants' malicious conduct.

45    The Defendants, alongside their co-conspirators, weaponized the judicial and administrative systems to maximize harm, leveraging every opportunity to intensify the Plaintiff's suffering. Knowing the Plaintiff's precarious financial and health situation, the Defendants deliberately prolonged litigation, denied hearings, and ruled motions as moot, fully aware that these actions would exacerbate the Plaintiff's financial instability and health decline. Their coordinated efforts ensured that relief was systematically denied, leaving the Plaintiff and their dependents to endure relentless and compounding harm.

46    This deliberate infliction of harm on an already vulnerable household underscores the severity of the Defendants' misconduct. The prolonged financial suppression has caused cascading effects, including the Plaintiff's inability to provide essential support to their dependents, exacerbating their medical and financial vulnerabilities. The harm is not confined to the Plaintiff alone but radiates outward, destabilizing an entire household that depended on the Plaintiff's ability to work and provide. The Defendants' actions have not only deprived the Plaintiff of their legal and economic rights but have also imposed immense suffering on their dependents, amplifying the stakes and the moral and legal gravity of the case.

47    In light of these extraordinary harms, the Plaintiff seeks comprehensive injunctive relief and restorative compensation to address the immediate and long-term consequences of the Defendants' malicious actions. This includes compensation for the Plaintiff's dependents increased medical and living expenses, funds for ongoing care and support, and additional damages to account for the egregious and deliberate nature of the harm inflicted.

Furthermore, the Plaintiff requests punitive damages to deter such egregious misconduct in the future and ensure that no other vulnerable individuals or families are subjected to similar abuses.

RELIEF

| RELIEF COUNT VI: WAGE COLLECTION | | |
|---|---|---|
| Md. Code, Lab. & Empl. § 3-505 | Back Pay | Payment of wages earned but withheld at the time of termination. |
| Md. Code, Lab. & Empl. § 3-507.2 | Treble Damages | Up to three times the amount of withheld wages for bad faith nonpayment. |
| Md. Code, Lab. & Empl. § 3-507.2 | Compensatory Damages | Recovery for financial harm caused by wage withholding. |
| Md. Code, Lab. & Empl. § 3-507.2 | Attorney's Fees and Costs | Recovery of reasonable attorney's fees and litigation costs. |

## COUNT VIII: CANCELLING OF BENEFITS

### SUB-COUNT

| | CANCELLING OF BENEFITS | |
|---|---|---|
| Sub | **Family and Medical Leave Act (FMLA)** 29 U.S.C. §§ 2601–2654<br>**Maryland Wage Payment and Collection Law (MWPCL)** Md. Code, Lab. & Empl. §§ 3-501–3-509<br>**Maryland Consumer Protection Act (MCPA)** Md. Code, Com. Law § 13-101 et seq.<br>**Wire Fraud Statute** – 18 U.S.C. § 1343 | |
| [35] | Code | Provision |
| [36] | 29 U.S.C. § 2614(c) | **Maintenance of Health Benefits During FMLA Leave**: Failure to maintain group health coverage during protected FMLA leave. |
| [37] | Md. Code, Lab. & Empl. § 3-505 | **Failure to Pay Wages and Benefits**: Termination of health benefits violates obligations to pay agreed compensation. |
| [38] | Md. Code, Com. Law § 13-301(2) | **False Representations**: Misrepresenting the status or availability of health benefits. |
| [39] | Md. Code, Com. Law § 13-301(3) | **Omission of Material Facts**: Failing to disclose critical information about the continuation of health benefits. |
| [40] | Md. Code, Com. Law § 13-301(15) | **Misrepresentation of Authorization, Approval, or Certification of a Service**: Misleading the employee about the legitimacy or status of their health coverage. |
| [41] | 18 U.S.C. § 1343 | **Wire Fraud:** Using electronic communications to unlawfully cancel health benefits. |

Complaint Integrated Appendix          Page # 17 of 74                    Counts

| | | |
|---|---|---|
| 48 | Ohana Growth Partners, LLC. Failed to maintain insurance benefits, misrepresented the status of coverage, used electronic communications to cancel the plan, and terminated benefits while on FMLA leave and violated obligations they explicitly stated earlier in the year would be paid(see Exhibit 102 Digital ZIP for commitment, and Exhibit 103 for COBRA packet) | |

RELIEF

| RELIEF COUNT VI: WAGE COLLECTION | | |
|---|---|---|
| 29 U.S.C. § 2614(c) | Injunctive Relief | Maintenance of health benefits during FMLA leave. |
| Md. Code, Lab. & Empl. § 3-505 | Back Pay | Compensation for unpaid wages tied to terminated benefits. |
| Md. Code, Com. Law §§ 13-301(2), (3), (15) | Compensatory and Punitive Damages | Relief for misrepresentations and omitted facts about health benefits. |
| 18 U.S.C. § 1343 (Wire Fraud) | Punitive and Compensatory Damages | Damages related to fraudulent use of electronic communication. |


## COUNT VIX: WITHHOLDING COBRA PAPERWORK

SUB-COUNT

| | |
|---|---|
| Sub | **WITHHOLDING COBRA PAPERWORK**<br><br>**Consolidated Omnibus Budget Reconciliation Act (COBRA)** 29 U.S.C. §§ 1161–1169<br>**Employee Retirement Income Security Act (ERISA)** 29 U.S.C. § 1001 et seq.<br>**Maryland Consumer Protection Act (MCPA)** Md. Code, Com. Law §§ 13-101–13-501 |
| [42] | 29 U.S.C. § 1166 | COBRA Notification Requirements |
| [43] | 29 U.S.C. § 1132 (ERISA § 502) | ERISA Civil Enforcement |
| [44] | Md. Code, Com. Law § 13-301(3) | Omission of Material Facts |
| [45] | Md. Code, Com. Law § 13-301(6) | Deceptive Practices |
| [46] | Md. Code, Com. Law § 13-301(14)(iii) | Failure to State Material Facts |
| [47] | 18 U.S.C. § 1030 (CFAA) | Unauthorized Access and Data Manipulation |
| [48] | 45 CFR § 164.312 (HIPAA Security Rule) | Failure to Safeguard Digital Records |
| [49] | 18 U.S.C. § 1343 (Wire Fraud) | Fraudulent Use of Digital Systems |
| [50] | 18 U.S.C. § 1341 (Mail Fraud) | Fraudulent Mailing |

| |
|---|
| 49    ALLEGATION: Ohana Growth Partners, LLC, evidence suggests Richard Hartman, modified the RDCs information so that the COBRA paperwork was sent to them, likely at the 212 HQ address, where they held the |

paperwork.  Digital communications were used to make the change, US Postal Service was used in the mailing, and they knew better when they were making those changes.  The Allegation portion is that it is Richard Hartman, shipped to 212 HQ address.  It is a fact that it was redirected and mailed a second time.

RELIEF

| RELIEF COUNT VIII: WITHHOLDING COBRA PAPERWORK | | |
|---|---|---|
| 29 U.S.C. § 1166 | Injunctive Relief | Enforce proper notification of COBRA rights and compliance with all statutory requirements. |
| 29 U.S.C. § 1132 (ERISA § 502) | Civil Damages | Recovery of damages caused by failure to provide COBRA notices, including medical expenses. |
| Md. Code, Com. Law § 13-301(3) | Compensatory Damages | Compensation for harm caused by withholding material facts about COBRA rights. |
| Md. Code, Com. Law § 13-301(6) | Punitive Damages | Deterrence for engaging in deceptive practices regarding COBRA notifications. |
| Md. Code, Com. Law § 13-301(14)(iii) | Statutory Penalties | Recovery for failure to disclose critical facts about COBRA rights and obligations. |
| 18 U.S.C. § 1030 (CFAA) | Civil Remedies and Injunctive Relief | Compensation for harm caused by unauthorized access and data manipulation affecting COBRA notices. |
| 45 CFR § 164.312 (HIPAA Security Rule) | Compliance Enforcement | Implementation of safeguards to prevent unauthorized changes to digital systems. |
| 18 U.S.C. § 1343 (Wire Fraud) | Compensatory and Punitive Damages | Recovery for harm caused by fraudulent use of digital systems to obstruct COBRA notices. |
| 18 U.S.C. § 1341 (Mail Fraud) | Compensatory and Punitive Damages | Compensation for harm caused by fraudulent redirection of COBRA paperwork through the postal system. |

## COUNT X: INSURANCE FRAUD

SUB-COUNT

| Sub | INSURANCE FRAUD<br><br>**Health Insurance Portability and Accountability Act (HIPAA)** 42 U.S.C. § 1320d et seq.<br>**Maryland Consumer Protection Act (MCPA)** Md. Code, Com. Law §§ 13-101–13-501<br>**Mail Fraud Statute** 18 U.S.C. § 1341 | |
|---|---|---|
| [51] | 45 CFR § 164.306 | **HIPAA Security Rule: Integrity of PHI:** Compromising the integrity of health plan information by altering documents related to PHI. |
| [52] | 45 CFR § 164.400-414 | **HIPAA Breach Notification Requirements:** Failing to disclose breaches in the accuracy and integrity of health plan documents affecting PHI. |
| [53] | 45 CFR § 164.502 | **HIPAA Privacy Rule: Unauthorized Disclosure of PHI:** Improperly handling or disclosing PHI through altered or misleading documents. |
| [54] | 45 CFR § 164.524 | **HIPAA Right of Access:** Timely Access to PHI: Failing to provide accurate and timely health plan information as required under HIPAA. |

| [55] | Md. Code, Com. Law § 13-301(14)(iii) | **Knowingly Failing to State a Material Fact Regarding Rights, Remedies, or Obligations Related to Services:** Withholding critical information about changes to health plan options. |
|---|---|---|
| [56] | Md. Code, Com. Law § 13-301(15) | **Misrepresentation of the Authorization, Approval, or Certification of a Document or Entity:** Altering documents to misrepresent their legitimacy. |
| [57] | Md. Code, Com. Law § 13-301(2) | **False Representations:** Making false statements about the validity or content of health plan documents. |
| [58] | Md. Code, Com. Law § 13-301(3) | **Deception through False or Misleading Statements of Material Fact:** Misleading employees about the true dates or terms of their health plans. |
| [59] | Md. Code, Com. Law § 13-301(6) | **Failure to State a Material Fact if the Omission Deceives or Tends to Deceive:** Omitting critical information about changes to health plan terms. |
| [60] | Md. Code, Com. Law § 13-301(9) | **Deceptive Acts or Practices in Sale or Lease of Consumer Goods or Services:** Misleading or deceptive practices in providing health plan options. |
| [61] | 18 U.S.C. § 1341 | **Mail Fraud:** Using the postal system to send altered health plan documents with falsified dates. |
| [62] | 18 U.S.C. 1702 | **Unlawful Opening of Mail:** Opening mail addressed to the Plaintiff without authorization, to intercept or manipulate content. |

50    ALLEGATION – who is the allegation. What was done is a FACT. After receiving the redirected COBRA packet Richard Hartman/Ohana Growth Partners, LLC. opened it, Altered the date on the document, failed to alter all of the dates making it obvious that the document had been altered. Then used the US Postal Service to mail it to RDC.  Ohana Growth Partner, LLC. provided options for employees to purchase. We will be seeking digital and physical discovery.

RELIEF

| RELIEF COUNT IX: INSURANCE FRAUD | | |
|---|---|---|
| 45 CFR § 164.306 | Injunctive Relief | Enforce compliance with HIPAA Security Rule to prevent future alterations of PHI. |
| 45 CFR § 164.400-414 | Compensatory and Statutory Damages | Compensation for failure to notify Plaintiff of breaches in health plan information integrity. |
| 45 CFR § 164.502 | Compensatory Damages | Recovery for harm caused by unauthorized disclosure of PHI. |
| 45 CFR § 164.524 | Injunctive and Compensatory Relief | Ensure timely access to health plan information and compensate for harm caused by delays. |
| Md. Code, Com. Law § 13-301(14)(iii) | Statutory Penalties | Damages for failing to disclose material facts about health plan changes. |
| Md. Code, Com. Law § 13-301(15) | Punitive Damages | Deterrence for altering documents to misrepresent their legitimacy. |

| | | |
|---|---|---|
| Md. Code, Com. Law § 13-301(2) | Compensatory and Punitive Damages | Damages for false representations about the validity or content of health plan documents. |
| Md. Code, Com. Law § 13-301(3) | Compensatory and Punitive Damages | Recovery for harm caused by misleading statements about plan terms or dates. |
| Md. Code, Com. Law § 13-301(6) | Compensatory Damages | Damages for omitting critical information about changes to health plan terms. |
| Md. Code, Com. Law § 13-301(9) | Statutory and Compensatory Damages | Compensation for deceptive practices in providing health plan options. |
| 18 U.S.C. § 1341 | Compensatory and Punitive Damages | Recovery for harm caused by fraudulent mailing delays and falsified dates. |
| 18 U.S.C. § 1702 | Punitive and Statutory Damages | Damages for unauthorized opening and manipulation of mail addressed to the Plaintiff. |

## COUNT XI: 42 U.S.C. § 1983 CIVIL ACTION FOR DEPRIVATION OF RIGHTS

### JUDICIAL, MAGISTERIAL PROCEDURAL MISCONDUCT SUMMARY

| Observed Judicial Action | Section 1983 Implications |
|---|---|
| Consistent Prejudgment of Dillon-Capps' Credibility | **Due Process and Equal Protection Violation**: Judges repeatedly prejudged Dillon-Capps' credibility, especially on his ADA accommodations and FMLA protections. This prejudgment violated Dillon-Capps' right to an impartial tribunal, as guaranteed by the Due Process Clause, and denied him equal protection under the law. |
| Bias in ADA and Disability Status Dismissal | **ADA, Due Process, and Equal Protection Violation**: The court rejected Dillon-Capps' ADA accommodation requests by citing his past arguments, dismissing current disability needs based on perceived prior abilities. This violated ADA provisions by disregarding evolving accommodation needs and imposed unequal treatment, disadvantaging him as a disabled individual. |
| Frequent Use of Mootness Doctrine Against Dillon-Capps | **Due Process Violation**: Judges frequently ruled Dillon-Capps' motions as "moot," avoiding substantive consideration of his ADA, FMLA, and whistleblower claims. This pattern obstructed his right to a full defense, demonstrating procedural bias and denying him a fair hearing. |

| Observed Judicial Action | Section 1983 Implications |
|---|---|
| Advance Knowledge of Rulings by Law Firm | **Due Process and Equal Protection Violation**: The opposing law firm appeared to receive advance knowledge of rulings and procedural updates, allowing them to prepare ahead of Dillon-Capps. This unequal access to case information undermined fair proceedings and reflected judicial bias, violating due process and Dillon-Capps' equal protection rights. |
| Selective Granting of Ex Parte Orders | **Due Process Violation**: Dillon-Capps' emergency ex parte motions were frequently denied or delayed, while opposing parties received ex parte orders, such as TROs, with immediate effect. This disparity in access to emergency relief demonstrated procedural bias and violated Dillon-Capps' due process rights. |
| Retaliation Against Whistleblowing on ADA, FMLA, and Accounting Irregularities | **Due Process, Equal Protection, and First Amendment Violation**: The judiciary allowed a **fraudulent lawsuit** to proceed against Dillon-Capps on June 14, 2024, the day after his suspension and alleged whistleblower activities were reported. This inaction, coupled with hostile rulings, conveyed support for employer retaliation, violating Dillon-Capps' First Amendment right to raise concerns about unlawful conduct and his Section 1983 rights to due process and equal protection. |
| Suppression of ADA and FMLA Defenses | **ADA, FMLA, Due Process, and Equal Protection Violations**: The court's rulings suppressed Dillon-Capps' ADA accommodations and FMLA rights by denying relevant defenses. This suppression hindered his ability to present critical defenses and receive equal treatment, in violation of federal protections under the ADA, FMLA, and constitutional due process guarantees. |
| Obstruction of Justice through Abuse of Mootness Doctrine | **Due Process Violation**: The court frequently invoked the mootness doctrine to dismiss Dillon-Capps' motions without substantive review. This use of mootness effectively obstructed justice by avoiding his claims, thereby reinforcing the employer's retaliatory lawsuit and denying him his right to present a full defense under due process. |
| Judicial Endorsement of Employer's Retaliatory Lawsuit | **Due Process and Equal Protection Violation**: Through adverse rulings and systematic rejection of Dillon-Capps' ADA, FMLA, and whistleblower defenses, the court conveyed implicit support for the employer's retaliatory and discriminatory lawsuit. This judicial endorsement of employer actions deprived Dillon-Capps |

| Observed Judicial Action | Section 1983 Implications |
|---|---|
| | of his right to a fair and impartial process, violating Section 1983 protections. |
| Failure to Address Retaliatory Suspension and Termination | **Due Process and Equal Protection Violation**: Despite reports of retaliatory suspension and termination tied to Dillon-Capps' whistleblowing and ADA/FMLA assertions, the court failed to address these claims, allowing the retaliatory lawsuit to proceed. This inaction reinforced the discriminatory practices of the employer, denying Dillon-Capps' right to equal protection and due process. |
| Selective Enforcement of Procedural Standards Favoring Employer | **Due Process and Equal Protection Violation**: The court inconsistently enforced procedural standards, processing employer filings promptly while frequently marking Dillon-Capps' filings deficient. This selective enforcement created procedural barriers that favored the employer, violating Dillon-Capps' rights to fair and equal treatment under the law. |
| Suppression of Whistleblower Protections | **First Amendment, Due Process, and Equal Protection Violation**: By dismissing whistleblower claims and allowing the employer's retaliatory lawsuit to continue, the court suppressed Dillon-Capps' right to report accounting irregularities and ADA/FMLA violations. This judicial disregard for whistleblower protections infringed on his First Amendment rights, due process, and equal protection. |
| Failure to Provide ADA Accommodations in Court Proceedings | **ADA, Due Process, and Equal Protection Violation**: The court repeatedly denied Dillon-Capps' requests for ADA accommodations, disregarding his need for procedural support related to memory issues and PTSD. This failure denied him reasonable accommodations, violating ADA protections, and equal protection guarantees under Section 1983. |
| Judicial Neglect of Equal Treatment Obligations | **Equal Protection Violation**: The judiciary's consistent rulings in favor of the employer's position reflect neglect of its obligation to ensure equal treatment under the law. By favoring one party, the court deprived Dillon-Capps of impartiality, an essential component of due process and equal protection rights. |

FIRST AMENDMENT

| Sub | FIRST AMENDMENT |
|---|---|

| | | |
|---|---|---|
| [63] | Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc., 365 U.S. 127 (1961); United Mine Workers of America v. Pennington, 381 U.S. 657 (1965) | Noerr-Pennington Doctrine |
| [64] | California Motor Transport Co. v. Trucking Unlimited, 404 U.S. 508 (1972) | **R**ight to Petition and Access to Courts Doctrine |
| [65] | California Motor Transport Co. v. Trucking Unlimited, 404 U.S. 508 (1972) | **D**octrine Against "Sham" Procedure |

51     The Defendants, including Ohana Growth Partners, LLC, Miles & Stockbridge, P.C., and judicial actors such as Judges Barranco, Truffer, and Robinson Jr., violated the Plaintiff's First Amendment rights under 42 U.S.C. § 1983. These violations stemmed from a coordinated effort to suppress the Plaintiff's whistleblowing activities, obstruct access to the courts, and retaliate against the Plaintiff for reporting systemic violations of PCI DSS compliance, ADA protections, and other regulatory frameworks. The Plaintiff engaged in protected activities, including reporting noncompliance to key stakeholders and judicial bodies. In response, the Defendants initiated retaliatory litigation and used judicial processes as tools to silence the Plaintiff and protect co-conspirators.

52     The retaliatory lawsuit filed by Ohana Growth Partners, supported by fabricated affidavits from Richard Hartman and Justin Drummond, was initiated on June 14, 2024, a day after the Plaintiff's protected whistleblowing activities were reported. The lawsuit sought injunctive relief through false pretexts, alleging refusal to comply with employer demands despite documented evidence, including a written accord dated June 7, 2024, resolving prior disputes. This accord, evaded by Ohana's leadership, was exploited as part of a broader scheme to fabricate a labor dispute and justify retaliatory legal actions. Judges Barranco and Truffer actively facilitated these efforts by dismissing the Plaintiff's motions, marking critical filings as deficient, and granting employer requests, such as ex parte temporary restraining orders, that bypassed procedural safeguards. On June 26, 2024, Judge Barranco imposed contradictory orders requiring the Plaintiff to provide access to a non-responsive entity, Hartman Executive Advisors, while simultaneously prohibiting system access, resulting in $2,500 daily fines. These fines, compounded by conflicting directives, created impossible compliance conditions, further undermining the Plaintiff's rights to petition the courts.

53     The Plaintiff's attempts to expose this misconduct were systematically suppressed through procedural abuse, denial of ADA accommodations, and judicial bias. The court repeatedly invoked the mootness doctrine to dismiss the Plaintiff's motions without substantive review, obstructing critical defenses tied to ADA, FMLA, and whistleblower protections. Judicial actors enabled these actions by refusing to hear evidence of employer noncompliance, denying the Plaintiff a fair opportunity to contest allegations, and delaying rulings on motions

seeking equitable relief. The denial of ADA accommodations, such as remote access and extended deadlines for individuals with disabilities, further excluded the Plaintiff from meaningful participation in legal proceedings, violating constitutional guarantees of due process and equal protection.

54    The misuse of judicial processes violated multiple doctrines protecting First Amendment rights. Under the Noerr-Pennington Doctrine, the judiciary enabled the Defendants to weaponize court processes, using retaliatory litigation to suppress the Plaintiff's protected speech. The Right to Petition and Access to Courts Doctrine was infringed through deliberate procedural obstructions, such as selective enforcement of ex parte orders that favored the Defendants while denying the Plaintiff access to emergency relief. Additionally, the Doctrine Against Sham Procedure was violated as the Defendants' legal actions lacked legitimate merit and were filed solely to harass and intimidate the Plaintiff, evident in the fabricated claims, perjured affidavits, and procedural inconsistencies orchestrated by legal and judicial actors.

55    These violations were reinforced through systematic bias and selective procedural enforcement. For example, Miles & Stockbridge received advanced knowledge of rulings, evidenced by their expedited filings and preparations compared to the Plaintiff's restricted access to case information. Judge Barranco's conduct during the June 26 hearing further demonstrated bias, as the Plaintiff was denied the opportunity to cross-examine witnesses, including Randall Romes, whose testimony contained significant inaccuracies regarding compliance obligations. This denial, coupled with Barranco's imposition of excessive fines and threats of incarceration, exemplified the court's complicity in retaliatory actions designed to suppress whistleblowing and obstruct justice.

56    The Plaintiff's First Amendment rights to petition the courts and engage in protected speech were further eroded by the complicity of oversight agencies. Complaints filed with the Maryland Attorney General's Civil Rights Division, the Commission on Judicial Disabilities, and other bodies were ignored or dismissed, reflecting a systemic failure to address judicial and employer misconduct. This inaction emboldened the Defendants, allowing them to continue their retaliatory practices with impunity.

57    The coordinated actions of Ohana Growth Partners, Miles & Stockbridge, and judicial actors inflicted severe financial, emotional, and reputational harm on the Plaintiff. The suppression of whistleblower claims, denial of ADA accommodations, and judicial endorsement of employer retaliation created an environment where the Plaintiff's rights were systematically violated. These actions obstructed the Plaintiff's ability to seek redress, undermined public trust in judicial impartiality, and furthered the Defendants' agenda of concealing systemic noncompliance and retaliation.

## RELIEF FIRST AMENDMENT

| RELIEF FIRST AMENDMENT | | |
|---|---|---|
| 42 U.S.C. § 1983 | Cause of Action | Provides civil remedies for violations of First Amendment rights, including the right to petition, free speech, and whistleblower protections. |
| Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc., 365 U.S. 127 (1961) | Noerr-Pennington Doctrine | Protects the right to petition the government, prohibiting retaliatory misuse of judicial processes to suppress speech or whistleblowing activities. |
| United Mine Workers of America v. Pennington, 381 U.S. 657 (1965) | Petition Rights and Advocacy | Ensures protections against suppression of advocacy activities, including whistleblower efforts tied to regulatory compliance. |
| California Motor Transport Co. v. Trucking Unlimited, 404 U.S. 508 (1972) | Right to Petition and Sham Litigation | Establishes that misuse of courts to suppress legitimate claims or whistleblowing violates the First Amendment's right to petition. |
| Declaratory Relief (28 U.S.C. § 2201) | Confirmation of Rights | Judicial declaration affirming the Plaintiff's First Amendment rights and condemning retaliatory judicial or employer actions. |
| Injunctive Relief (28 U.S.C. § 2202) | Prevention of Future Violations | Injunction against further misuse of judicial processes or suppression of whistleblowing activities protected under the First Amendment. |
| Compensatory Damages (Judicial Authority) | Financial and Emotional Harm | Compensation for financial losses, emotional distress, and reputational harm caused by suppression of First Amendment rights. |
| Punitive Damages (Judicial Authority) | Deterrence of Retaliation | Damages awarded to deter retaliatory actions aimed at suppressing whistleblowing or legitimate petition activities. |
| Smith v. Wade, 461 U.S. 30 (1983) | Punitive Damages | Authorizes punitive damages for willful or malicious violations of First Amendment rights, including retaliation against whistleblowing. |
| Carey v. Piphus, 435 U.S. 247 (1978) | Compensatory Damages | Damages for emotional harm and financial losses resulting from violations of the First Amendment, including retaliation or suppression of speech. |
| Equitable Relief (Judicial Authority) | Restorative Remedies | Orders to restore professional standing, reputational integrity, and financial stability harmed by violations of First Amendment rights. |

## SUB FIFTH AMENDMENT

| Sub | SUB FIFTH AMENDMENT | |
|---|---|---|
| [66] | Mathews v. Eldridge, 424 U.S. 319 (1976) | Due Process Doctrine in Administrative and Welfare Proceedings |
| [67] | Screws v. United States, 325 U.S. 91 (1945) | Protection Against Arbitrary Government Action Doctrine |

| [68] | Armstrong v. United States, 364 U.S. 40 (1960) | Due Process Doctrine in Property Rights and Compensation |
|---|---|---|
| [69] | United States v. United Mine Workers, 330 U.S. 258 (1947) | Contempt Power and Fair Process Doctrine |
| [70] | Fuentes v. Shevin, 407 U.S. 67 (1972) | Due Process in Ex Parte Orders and Pre-Deprivation Hearings Doctrine |

58    The Defendants violated the Plaintiff's Fifth Amendment rights under 42 U.S.C. § 1983 by depriving the Plaintiff of procedural due process, property rights, and protection against arbitrary government actions. Judges Barranco and Truffer, in coordination with Clerk Julie Ensor, issued arbitrary and conflicting orders, denied ADA accommodations, and imposed excessive sanctions without providing the Plaintiff an opportunity to be heard. These actions inflicted severe harm, including financial instability, reputational damage, and emotional distress, while denying the Plaintiff fair access to justice.

59    The ex parte Temporary Restraining Order (TRO) issued on June 17, 2024, by Judge DeSimone, directly violated the Plaintiff's due process rights by depriving them of employment and restricting their access to judicial relief without prior notice or a pre-deprivation hearing. This TRO was based on fraudulent affidavits from Richard Hartman and Justin Drummond, which falsely alleged the Plaintiff's noncompliance with fabricated demands. The court failed to balance the Plaintiff's fundamental rights against the opposing party's claims, as required by *Mathews v. Eldridge*. The rushed two-day show cause hearing on June 26, 2024, overseen by Judge Barranco, compounded the denial of due process by failing to provide sufficient time for the Plaintiff to prepare a defense or challenge the fraudulent claims.

60    The arbitrary and capricious actions of Judges Barranco and Truffer further violated the Plaintiff's Fifth Amendment rights. Judge Barranco issued contradictory orders requiring the Plaintiff to both act within a restricted system and simultaneously refrain from accessing it. These conflicting directives, combined with the imposition of $2,500 daily fines for alleged noncompliance, made compliance impossible and exemplified arbitrary governmental conduct prohibited under *Screws v. United States*. The Plaintiff faced escalating financial penalties, threats of incarceration through a second show cause order issued by Judge Barranco on July 3, 2024, and severe personal hardship as a direct result of these actions.

61    The imposition of substantial fines and the withholding of the Plaintiff's compensation, including accrued leave, bonuses, and medical insurance benefits, violated due process principles regarding property rights under *Armstrong v. United States*. Ohana Growth Partners, LLC, under the direction of Glenn Norris and Richard Hartman, misrepresented the Plaintiff's employment status while unlawfully withholding earned compensation.

These actions deprived the Plaintiff of resources necessary for financial stability, housing, and medical care, further exacerbating the harm caused by judicial and employer misconduct.

62     The misuse of contempt powers by Judges Barranco and Truffer highlights the Defendants' disregard for fair process. Judge Barranco imposed escalating sanctions, including the $2,500 daily fine, without adequate procedural safeguards. The rushed scheduling of hearings, denial of cross-examination opportunities, and refusal to allow the Plaintiff to present evidence violated the fair process standards outlined in *United States v. United Mine Workers*. These actions deprived the Plaintiff of a meaningful opportunity to defend against baseless allegations, reinforcing the retaliatory objectives of the Defendants.

63     The Clerk's Office, under the supervision of Julie Ensor, obstructed the Plaintiff's access to justice by marking filings as deficient for minor or fabricated technical errors, delaying submissions, and failing to provide ADA accommodations. These actions directly violated the Plaintiff's Fifth Amendment rights by creating disproportionate barriers to court access. The Plaintiff was required to repeatedly refile documents, often without clarity on the alleged deficiencies, while being denied remote access to records despite documented disabilities. The refusal to accommodate the Plaintiff's PTSD and physical limitations, in violation of 42 U.S.C. § 12132, resulted in significant prejudice and prevented the Plaintiff from asserting procedural rights.

64     The lack of procedural safeguards extended to critical hearings, where judicial bias and conflicting orders obstructed the Plaintiff's ability to contest allegations. For example, during the June 26, 2024, hearing, Judge Barranco refused to hear the Plaintiff's evidence, dismissed key motions as moot, and allowed the employer's false narrative to dominate proceedings. This systemic denial of due process, reinforced by the actions of Clerk Ensor and the employer, deprived the Plaintiff of a fair hearing and access to meaningful judicial remedies.

65     The Defendants' actions violated the Plaintiff's Fifth Amendment rights through arbitrary governmental conduct, deprivation of property without just compensation, and systemic denial of procedural fairness. These violations inflicted severe harm, leaving the Plaintiff financially destitute, professionally discredited, and emotionally traumatized. The cumulative impact of these actions demonstrates a coordinated effort to suppress whistleblowing, retaliate against protected activities, and shield systemic misconduct from accountability.

[RELIEF FIFTH AMENDMENT](#)

| RELIEF FIFTH AMENDMENT | | |
|---|---|---|
| 42 U.S.C. § 1983 | Cause of Action | Civil remedy for violations of Fifth Amendment rights, including due process, protection against arbitrary actions, and just compensation. |

| | | |
|---|---|---|
| Mathews v. Eldridge, 424 U.S. 319 (1976) | Due Process Doctrine | Requires notice and an opportunity to be heard before deprivation of rights, particularly in administrative or welfare contexts. |
| Screws v. United States, 325 U.S. 91 (1945) | Protection Against Arbitrary Actions | Prohibits arbitrary and capricious actions by government officials that violate constitutional protections. |
| Armstrong v. United States, 364 U.S. 40 (1960) | Property Rights Doctrine | Affirms the right to just compensation for deprivation of property, ensuring fairness in government actions affecting personal or financial assets. |
| Fuentes v. Shevin, 407 U.S. 67 (1972) | Pre-Deprivation Hearing Requirement | Mandates procedural safeguards, including notice and hearing, before imposing measures that deprive individuals of property or liberty. |
| United States v. United Mine Workers, 330 U.S. 258 (1947) | Contempt Power and Fair Process Doctrine | Establishes safeguards for the use of contempt power, preventing abuse and ensuring fairness in punitive measures. |
| Declaratory Relief (28 U.S.C. § 2201) | Confirmation of Rights | Declaration affirming the Plaintiff's Fifth Amendment rights and condemning violations such as denial of notice or pre-deprivation hearings. |
| Injunctive Relief (28 U.S.C. § 2202) | Prevention of Future Violations | Injunction to prevent further violations of Fifth Amendment protections, including arbitrary government actions and inadequate procedural safeguards. |
| Compensatory Damages (Judicial Authority) | Financial Redress | Compensation for harm caused by deprivation of property, arbitrary actions, and denial of procedural protections, including financial losses and distress. |
| Punitive Damages (Judicial Authority) | Deterrence of Arbitrary Conduct | Damages awarded to deter willful or reckless disregard of Fifth Amendment protections by judicial and administrative actors. |
| Smith v. Wade, 461 U.S. 30 (1983) | Punitive Damages | Authorizes punitive damages for malicious or reckless violations of constitutional rights, including arbitrary or capricious actions. |
| Carey v. Piphus, 435 U.S. 247 (1978) | Compensatory Damages | Damages for emotional harm and financial losses caused by denial of due process, arbitrary actions, and procedural inadequacies. |
| Equitable Relief (Judicial Authority) | Restorative Remedies | Orders to restore lost property, financial status, and professional standing due to Fifth Amendment violations. |

### SUB-COUNT SIXTH AMENDMENT

| Sub | SUB-COUNT SIXTH AMENDMENT | |
|---|---|---|
| [71] | Gideon v. Wainwright, 372 U.S. 335 (1963) | Right to Counsel Doctrine |
| [72] | Goldberg v. Kelly, 397 U.S. 254 (1970) Chambers v. Mississippi, 410 U.S. 284 (1973) | Right to Confrontation and Cross-Examination in Civil Proceedings |
| [73] | Turner v. Rogers, 564 U.S. 431 (2011) | Right To a Fair Trial in Civil Cases |
| [74] | Mathews v. Eldridge, 424 U.S. 319 (1976) Armstrong v. United States, 364 U.S. 40 (1960) Fuentes v. Shevin, 407 U.S. 67 (1972) United States v. United Mine Workers, 330 U.S. 258 (1947) | Right Against Punitive Actions Without Due Process |

| | 1 Tumey v. Ohio, 273 U.S. 510 (1927) | |
|---|---|---|

66     The Defendants violated the Plaintiff's Sixth Amendment rights under 42 U.S.C. § 1983 by subjecting the Plaintiff to punitive sanctions in civil proceedings without providing the necessary procedural safeguards. These sanctions, including a $2,500 daily fine and a show cause hearing explicitly seeking incarceration, transformed the civil proceedings into punitive actions resembling criminal penalties, thus triggering heightened protections under the Sixth Amendment.

67     The Plaintiff faced a show cause hearing on June 26, 2024, during which incarceration was sought as a punitive measure, not a remedial action. The Plaintiff was left unrepresented during this critical proceeding, violating the Right to Counsel Doctrine established in *Gideon v. Wainwright*. The lack of legal representation resulted in significant prejudice to the Plaintiff, who was unable to adequately respond to escalating sanctions or challenge the legitimacy of the proceedings. This denial of counsel compounded the Plaintiff's inability to navigate the complex legal landscape created by conflicting orders and judicial bias, further intensifying the punitive nature of the sanctions.

68     The Plaintiff was also denied the Right to Confrontation and Cross-Examination in Civil Proceedings, as outlined in *Goldberg v. Kelly* and *Chambers v. Mississippi*. During the June 26, 2024, hearing, Judge Barranco halted the Plaintiff's questioning of witnesses, including those whose affidavits contained significant inaccuracies and omissions. This action deprived the Plaintiff of the opportunity to challenge adverse testimony, including perjured statements by Randall Romes and Daniel Levett, which were central to the Defendants' fraudulent claims. The court's refusal to allow the Plaintiff to present evidence or cross-examine witnesses further highlighted the lack of procedural fairness in proceedings where punitive sanctions were at stake.

69     The punitive nature of the sanctions denied the Plaintiff a Fair Trial in Civil Cases, as protected under *Turner v. Rogers*. The rushed scheduling of a two-day show cause hearing, coupled with inadequate notice and the denial of reasonable time to prepare, severely undermined the Plaintiff's ability to defend against the allegations. The $2,500 daily fine, imposed without consideration of the Plaintiff's financial circumstances or the legitimacy of the underlying claims, further exemplified the court's disregard for procedural fairness. These punitive measures were explicitly coercive, aimed at forcing compliance with conflicting and arbitrary orders rather than addressing any remedial objectives.

70     The Right Against Punitive Actions Without Due Process was also violated. The sanctions imposed on the Plaintiff were not tied to actual damages or efforts to enforce compliance but were instead coercive in nature, designed to financially and emotionally destabilize the Plaintiff. No opportunity was provided for the Plaintiff to demonstrate compliance or financial impossibility, as required by *Tumey v. Ohio*. The second show cause order, issued by Judge Barranco on July 3, 2024, explicitly sought incarceration, further demonstrating the punitive intent behind the proceedings. These actions exacerbated the Plaintiff's financial and emotional strain while denying them the procedural safeguards necessary for a fair hearing.

71     The Defendants' actions, facilitated by judicial and administrative actors, transformed civil proceedings into punitive measures that violated the Plaintiff's Sixth Amendment rights. The lack of representation, denial of cross-examination opportunities, and imposition of excessive fines and incarceration threats reflect a systematic effort to deprive the Plaintiff of fair process and procedural protections. These violations not only caused immediate harm but also undermined the integrity of the judicial process, highlighting the Defendants' abuse of power and disregard for constitutional rights.

RELIEF COUNT SIXTH AMENDMENT

| RELIEF COUNT SIXTH AMENDMENT | | |
|---|---|---|
| 42 U.S.C. § 1983 | Cause of Action | Civil remedy for violations of the Sixth Amendment, including the right to counsel, fair trial, and protections against punitive measures. |
| Gideon v. Wainwright, 372 U.S. 335 (1963) | Right to Counsel Doctrine | Establishes the right to counsel in proceedings with punitive consequences, including civil cases imposing incarceration or excessive fines. |
| Goldberg v. Kelly, 397 U.S. 254 (1970) | Right to Confrontation | Affirms the right to cross-examine witnesses in civil proceedings, particularly when punitive consequences are at stake. |
| Chambers v. Mississippi, 410 U.S. 284 (1973) | Right to Present a Defense | Recognizes the right to confront adverse witnesses and present evidence as critical to a fair trial. |
| Turner v. Rogers, 564 U.S. 431 (2011) | Right to a Fair Trial in Civil Cases | Extends fair trial rights to civil cases imposing punitive sanctions, such as incarceration or fines. |
| Mathews v. Eldridge, 424 U.S. 319 (1976) | Due Process in Punitive Proceedings | Requires heightened procedural safeguards in proceedings with punitive consequences, balancing individual rights and government interests. |
| Tumey v. Ohio, 273 U.S. 510 (1927) | Protection Against Biased Tribunals | Prohibits punitive sanctions imposed by biased or conflicted tribunals, ensuring impartiality in civil proceedings. |
| Injunctive Relief (28 U.S.C. § 2202) | Prevention of Procedural Violations | Injunction to prevent future violations of Sixth Amendment protections, including biased rulings and denial of fair process. |

| | | |
|---|---|---|
| Declaratory Relief (28 U.S.C. § 2201) | Confirmation of Rights | Declaration affirming the Plaintiff's Sixth Amendment rights and condemning violations, such as denial of counsel and cross-examination opportunities. |
| Compensatory Damages (Judicial Authority) | Financial Redress | Compensation for harm caused by denial of fair trial rights, including lost wages, increased costs, and emotional distress. |
| Punitive Damages (Judicial Authority) | Deterrence of Misconduct | Damages awarded to deter willful violations of the Plaintiff's Sixth Amendment rights by judicial actors and opposing counsel. |
| Smith v. Wade, 461 U.S. 30 (1983) | Punitive Damages | Authorizes punitive damages for malicious or reckless violations of constitutional rights, including denial of counsel or biased proceedings. |
| Carey v. Piphus, 435 U.S. 247 (1978) | Compensatory Damages | Damages for emotional harm and reputational damage caused by denial of procedural protections and fair trial rights. |
| Equitable Relief (Judicial Authority) | Restorative Remedies | Orders to restore financial and professional status affected by biased rulings, denial of counsel, and other Sixth Amendment violations. |

SUB-COUNT EIGHTH AMENDMENT

| Sub | SUB-COUNT EIGHTH AMENDMENT | |
|---|---|---|
| [75] | United States v. Bajakajian, 524 U.S. 321 (1998) | Excessive Fines Doctrine |
| [76] | Robinson v. California, 370 U.S. 660 (1962) | Cruel and Unusual Punishment Doctrine |

72     The Defendants, through actions facilitated by judicial and administrative actors, violated the Plaintiff's Eighth Amendment rights under 42 U.S.C. § 1983 by imposing punitive sanctions that were excessive, coercive, and disproportionate to the alleged conduct. These sanctions, including a $2,500 daily fine and threats of incarceration, exemplified the misuse of judicial authority to inflict financial and emotional harm without serving any legitimate remedial purpose.

73     Under the Excessive Fines Doctrine, as articulated in *United States v. Bajakajian*, punitive fines must bear a reasonable relationship to the harm caused and must serve a legitimate remedial purpose. The $2,500 daily fine imposed on the Plaintiff by Judge Barranco was grossly disproportionate to the circumstances. The fine was imposed under conflicting and arbitrary orders that made compliance impossible. Despite the Plaintiff's documented financial hardship and inability to comply due to contradictory directives, the court escalated the fine daily, creating a coercive financial burden that bore no connection to any demonstrated harm or legitimate legal purpose. This punitive measure further exacerbated the Plaintiff's financial instability, forcing them into economic distress and threatening their ability to maintain basic necessities, such as housing and medical care for vulnerable dependents.

74     The Cruel and Unusual Punishment Doctrine, established in *Robinson v. California*, prohibits punitive measures that impose undue or disproportionate hardship. The Plaintiff was subjected to punitive incarceration

threats through a second show cause order issued on July 3, 2024, by Judge Barranco. This order explicitly sought the Plaintiff's imprisonment for alleged non-compliance with orders that were inherently contradictory and procedurally flawed. The threat of incarceration, combined with escalating financial penalties, created a coercive environment intended to force compliance under duress. These measures disregarded the Plaintiff's financial incapacity, the impossibility of compliance, and the lack of any remedial or legal justification for such severe sanctions.

75     The disproportionate hardship caused by these punitive measures was further compounded by the actions of attorneys at Miles & Stockbridge, including Robert Brennen, who weaponized the fines in court filings and extrajudicial communications to intimidate and pressure the Plaintiff. Brennen withheld the June 26, 2024, transcript, demanding payment of the fines as a condition for its release, and explicitly referenced the accumulating fines in court filings to heighten the coercive effect. The escalating financial strain caused by these actions resulted in irreparable harm to the Plaintiff, including severe psychological distress, medical emergencies, and the inability to meet financial obligations.

76     Judicial actors, including Judges Barranco, Truffer, and Robinson Jr., facilitated this coercion through inconsistent and biased rulings. These rulings created procedural barriers that denied the Plaintiff meaningful opportunities to contest the fines or defend against allegations of non-compliance. The court's failure to consider the Plaintiff's financial capacity, the lack of evidence supporting the sanctions, and the procedural irregularities surrounding the imposition of the fines highlight the punitive and coercive intent behind these measures.

77     The combination of financial penalties, threats of incarceration, and procedural obstruction inflicted disproportionate hardship on the Plaintiff, violating the Eighth Amendment's protections against excessive fines and cruel and unusual punishment. These actions were not only punitive in nature but also lacked any legitimate legal or remedial purpose, underscoring the Defendants' misuse of judicial processes to retaliate against and silence the Plaintiff.

RELIEF COUNT EIGHTH AMENDMENT

| RELIEF COUNT EIGHTH AMENDMENT | | |
|---|---|---|
| 42 U.S.C. § 1983 | Cause of Action | Civil remedy for violations of constitutional protections against excessive fines and cruel and unusual punishment. |
| United States v. Bajakajian, 524 U.S. 321 (1998) | Excessive Fines Doctrine | Establishes the principle of proportionality, prohibiting fines grossly disproportionate to the alleged harm or violation. |

| Robinson v. California, 370 U.S. 660 (1962) | Cruel and Unusual Punishment Doctrine | Prohibits punitive measures, such as incarceration threats, that impose severe and disproportionate hardship without legitimate remedial purpose. |
|---|---|---|
| Austin v. United States, 509 U.S. 602 (1993) | Excessive Fines in Civil Proceedings | Extends Eighth Amendment protections to civil cases, including punitive fines not tied to actual damages or harm. |
| Ingraham v. Wright, 430 U.S. 651 (1977) | Application to Non-Criminal Contexts | Confirms the Eighth Amendment applies to certain non-criminal contexts where punitive measures cause undue harm. |
| Declaratory Relief (28 U.S.C. § 2201) | Prohibition Against Excessive Fines | Declaration that $2,500 daily fines and punitive measures imposed by judicial actors violated the Plaintiff's Eighth Amendment protections. |
| Injunctive Relief (28 U.S.C. § 2202) | Prevention of Punitive Measures | Injunction to prevent ongoing or future imposition of punitive fines or coercive sanctions inconsistent with the Eighth Amendment. |
| Compensatory Damages (Judicial Authority) | Financial Redress | Compensation for financial harm caused by excessive fines, including lost wages, increased debt, and penalties exacerbated by judicial actions. |
| Punitive Damages (Judicial Authority) | Deterrence of Misconduct | Damages awarded to deter willful and malicious use of punitive measures by judicial and legal actors violating Eighth Amendment protections. |
| Smith v. Wade, 461 U.S. 30 (1983) | Punitive Damages | Punitive damages for malicious or reckless disregard of the Plaintiff's rights, including disproportionate and coercive punitive measures. |
| Carey v. Piphus, 435 U.S. 247 (1978) | Compensatory Damages | Damages for emotional and reputational harm caused by punitive measures imposed without sufficient cause or due process. |
| Equitable Relief (Judicial Authority) | Restorative Remedies | Orders restoring the Plaintiff's financial and professional standing to mitigate harm caused by excessive fines and punitive sanctions. |

## SUB-COUNT NINETH AMENDMENT

| Sub | SUB-COUNT NINETH AMENDMENT | |
|---|---|---|
| [77] | 29 U.S.C. § 2615(a)(1)<br>Griswold v. Connecticut, 381 U.S. 479 (1965) | Fundamental Rights Doctrine: FMLA |
| [78] | 29 U.S.C. § 2615(a)(1)<br>Graham v. Connor, 490 U.S. 386 (1989) Blessing v. Freestone, 520 U.S. 329 (1997) Chittister v. Dep't of Cmty. & Econ. Dev., 226 F.3d 223 (3d Cir. 2000) | Governmental Accountability for FMLA Interference |
| 78 | The Defendants, including state actors such as Judges Barranco, Truffer, and Robinson Jr., violated the Plaintiff's Ninth Amendment rights under 42 U.S.C. § 1983 by interfering with the fundamental rights codified in the Family and Medical Leave Act (FMLA). The FMLA establishes an individual's right to medical leave without interference, as protected under 29 U.S.C. § 2615(a)(1) and 29 C.F.R. § 825.220(a)(1). These rights are | |

essential to personal welfare and are retained under the Ninth Amendment, which protects unenumerated rights not explicitly outlined in the Constitution but essential to individual liberty and dignity.

79    The Plaintiff's need for FMLA leave, clearly communicated to the Defendants and supported by medical documentation, was repeatedly obstructed through judicial rulings and procedural barriers. Judge Barranco's orders, including the imposition of fines and conflicting directives during the June 26 and 27 hearings, directly interfered with the Plaintiff's ability to take protected leave. These rulings ignored the Plaintiff's documented health conditions, creating punitive measures that discouraged the exercise of FMLA rights and exacerbated the Plaintiff's medical condition.

80    The Defendants' actions, including those of Ohana Growth Partners, LLC, represented by Glenn Norris and Richard Hartman, also demonstrated deliberate interference. Following the Plaintiff's invocation of FMLA protections, the Employer retaliated by filing a fraudulent lawsuit on June 14, 2024, and making false claims regarding the Plaintiff's refusal to comply with fabricated demands. This retaliatory litigation, supported by perjured affidavits and judicial complicity, sought to intimidate and financially destabilize the Plaintiff, further obstructing their ability to take medical leave.

81    Judicial actors amplified this interference by issuing conflicting orders that required the Plaintiff to comply with impossible directives, such as granting access to the unresponsive Hartman Executive Advisors (HEA) while simultaneously barring the Plaintiff from making administrative changes to the system. These actions forced the Plaintiff to engage in excessive work, directly contravening the purpose of FMLA protections, which are designed to ensure medical recovery without fear of retaliation or coercion.

82    The governmental interference with the Plaintiff's FMLA rights violated the Ninth Amendment's guarantee of fundamental rights and created actionable harm under 42 U.S.C. § 1983. These violations reflect a broader pattern of judicial and employer misconduct, as state actors and private entities colluded to suppress the Plaintiff's protected activities and undermine their access to essential rights. Judge Barranco's punitive rulings, in particular, exemplify state actor interference, as they obstructed leave requests, imposed financial penalties, and created barriers that rendered the Plaintiff's FMLA protections effectively meaningless.

83    The Defendants' actions resulted in severe harm to the Plaintiff's health, financial stability, and ability to care for their dependents. By interfering with a fundamental right protected under the FMLA and the Ninth Amendment, the Defendants demonstrated a deliberate disregard for constitutional protections, further justifying enforcement under § 1983 to remedy the harm and ensure accountability for the violations committed.

## RELIEF COUNT NINETH AMENDMENT

### RELIEF COUNT NINETH AMENDMENT

| 42 U.S.C. § 1983 | Cause of Action | Civil remedy for violations of unenumerated fundamental rights, including interference with FMLA rights under the Ninth Amendment. |
|---|---|---|
| 29 U.S.C. § 2615(a)(1) | Statutory Protection | Prohibition against interference, restraint, or denial of FMLA rights, as these rights are fundamental to personal welfare and medical leave. |
| Griswold v. Connecticut, 381 U.S. 479 (1965) | Fundamental Rights Doctrine | Recognition of fundamental rights retained by individuals, including the right to familial and personal welfare. |
| Graham v. Connor, 490 U.S. 386 (1989) | Government Accountability | Establishes that governmental actions interfering with fundamental rights are subject to scrutiny under the Ninth Amendment and enforceable via § 1983. |
| Blessing v. Freestone, 520 U.S. 329 (1997) | Enforceability of Statutory Rights | Reinforces the Plaintiff's right to enforce statutory protections, including FMLA, when state actors interfere or act unlawfully. |
| Chittister v. Dep't of Cmty. & Econ. Dev., 226 F.3d 223 (3d Cir. 2000) | FMLA Protections for Public Employees | Establishes that public employers cannot interfere with FMLA rights, supporting the Plaintiff's claim against judicial and governmental interference. |
| Declaratory Relief (28 U.S.C. § 2201) | Affirmation of FMLA Rights | Judicial declaration affirming the Plaintiff's right to FMLA leave and prohibiting further interference or retaliatory actions. |
| Injunctive Relief (28 U.S.C. § 2202) | Prevention of Future Interference | Injunction against state actors and employers to prevent ongoing or future interference with FMLA rights. |
| Smith v. Wade, 461 U.S. 30 (1983) | Punitive Damages | Damages awarded to deter willful and malicious violations of FMLA rights and other fundamental protections under the Ninth Amendment. |
| Carey v. Piphus, 435 U.S. 247 (1978) | Compensatory Damages | Compensation for financial losses, emotional distress, and reputational harm resulting from interference with FMLA and other fundamental rights. |
| Equitable Relief (Judicial Authority) | Restorative Remedies | Orders restoring the Plaintiff's position, including back wages, accrued leave, and benefits, lost due to interference with FMLA rights. |

## SUB-COUNT THIRTEENTH AMENDMENT

| Sub | SUB-COUNT THIRTEENTH AMENDMENT | |
|---|---|---|
| [79] | Pollock v. Williams, 322 U.S. 4 (1944) | Involuntary Servitude Doctrine |
| [80] | Bailey v. Alabama, 219 U.S. 219 (1911) | Coercive Labor Practices Doctrine |
| [81] | Bailey v. Alabama, 219 U.S. 219 (1911) Pollock v. Williams, 322 U.S. 4 (1944) Hicks v. Feiock, 485 U.S. 624 (1988) | Specific Judicial and Extrajudicial Actions Procedural Abuse to Enforce Coercion |

84    The Defendants' actions violated the Thirteenth Amendment's prohibition against involuntary servitude and coercive labor practices. Through escalating fines, threats of incarceration, and demands for work product under

duress, the Defendants engaged in a coordinated effort to compel the Plaintiff to comply with unjust directives, amounting to coercion prohibited under Bailey v. Alabama and Pollock v. Williams.

85     The imposition of coercive penalties, including a $2,500 daily fine, drove the Plaintiff toward financial ruin and created conditions of involuntary servitude. Despite the Plaintiff's documented financial hardship and inability to comply due to conflicting court orders, judicial actors such as Judge Barranco imposed escalating penalties to force compliance with directives that were impossible to meet. This coercion directly benefited the Plaintiff's former employer, Ohana Growth Partners, LLC, as the demands for work product were designed to resolve alleged compliance failures fabricated by the employer.

86     The fines were compounded by extrajudicial coercive tactics employed by Robert Brennen of Miles & Stockbridge, P.C. Brennen withheld the June 26th transcript, demanding payment of punitive fines as a condition for its release. He also referenced the mounting fines in court filings and communications, leveraging the escalating total to heighten pressure on the Plaintiff. This included explicit threats of incarceration for alleged noncompliance, further exacerbating the coercive environment. Brennen's actions, combined with judicial complicity, created a system of extrajudicial coercion that undermined the Plaintiff's ability to challenge the fines or obtain relief.

87     Judicial actors, including Judge Truffer and Judge Barranco, reinforced this coercion through procedural manipulation. Judge Truffer granted a rushed two-day show cause order without providing the Plaintiff an opportunity to contest the allegations, while Judge Barranco issued a second show cause order explicitly seeking incarceration. These actions deprived the Plaintiff of procedural safeguards necessary to ensure fairness and due process, leaving them vulnerable to escalating coercion.

88     The coercion also extended beyond the courtroom, as Brennen's repeated communications and threats demonstrated a calculated effort to force compliance through extrajudicial means. These actions included withholding critical court documents, using punitive fines as leverage, and threatening incarceration to compel labor and suppress the Plaintiff's defenses. The Defendants' combined actions created a coercive environment that forced the Plaintiff to produce work product under duress, violating the Thirteenth Amendment's prohibition against involuntary servitude.

89     The Defendants' coercive tactics were not isolated incidents but part of a broader pattern of judicial and extrajudicial actions designed to compel compliance and silence the Plaintiff. Judges Barranco and Truffer, alongside Brennen and Ohana Growth Partners, engaged in a coordinated effort to use judicial authority and procedural manipulation to enforce coercive labor practices. These actions resulted in severe financial, emotional, and physical harm to the Plaintiff, further highlighting the Defendants' disregard for constitutional protections against coercion and involuntary servitude.

| RELIEF COUNT THIRTEENTH AMENDMENT | | |
|---|---|---|
| 42 U.S.C. § 1983 | Cause of Action | Civil remedy for violations of the Thirteenth Amendment protections against involuntary servitude and coercive labor practices. |
| 18 U.S.C. § 1589 | Forced Labor | Statutory prohibition against obtaining labor or services through threats, coercion, or abuse of legal process. |
| Bailey v. Alabama, 219 U.S. 219 (1911) | Judicial Coercion | Prohibition against the use of judicial or administrative proceedings to compel labor under threat of fines or imprisonment. |
| Pollock v. Williams, 322 U.S. 4 (1944) | Prohibition on Coerced Labor | Affirmation that involuntary servitude includes conditions created through systemic coercion, such as unjust fines or threats of incarceration. |
| Hicks v. Feiock, 485 U.S. 624 (1988) | Procedural Protections | Requirement of procedural safeguards to prevent fines and contempt proceedings from being weaponized to enforce coerced compliance. |
| Restatement (Third) of Restitution | Restitution for Forced Labor | Recovery of unjust enrichment derived from coerced labor, including economic benefits to the employer or associated entities. |
| United States v. Kozminski, 487 U.S. 931 (1988) | Coercion Standard | Establishes the definition of coercion under the Thirteenth Amendment, encompassing threats of harm, abuse of legal process, and psychological manipulation. |
| Declaratory Relief (28 U.S.C. § 2201) | Prohibition of Coercion | Judicial declaration prohibiting the use of coercive measures to compel labor, including punitive fines or threats of imprisonment. |
| Injunctive Relief (28 U.S.C. § 2202) | Prevention of Future Coercion | Injunctions to prevent further use of fines, contempt actions, or other coercive measures that violate the Thirteenth Amendment. |
| Smith v. Wade, 461 U.S. 30 (1983) | Punitive Damages | Damages awarded to deter willful and malicious violations of the Plaintiff's Thirteenth Amendment rights. |
| Carey v. Piphus, 435 U.S. 247 (1978) | Compensatory Damages | Compensation for economic harm, emotional distress, and reputational damage caused by coercive labor practices. |
| Equitable Relief (Judicial Authority) | Restoration of Status | Orders restoring the Plaintiff's financial position prior to coerced labor, including reimbursement for fines and costs incurred due to wrongful actions. |

SUB-COUNT FOURTEENTH AMENDMENT

| Sub | SUB-COUNT FOURTEENTH AMENDMENT | |
|---|---|---|
| [82] | Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306 (1950) | Notice and Opportunity to Be Heard Doctrine |
| [83] | Logan v. Zimmerman Brush Co., 455 U.S. 422 (1982) | Procedural Due Process Doctrine |
| [84] | Goldberg v. Kelly, 397 U.S. 254 (1970) | Right to Procedural Due Process and Cross-Examination in Administrative Proceedings Doctrine |
| [85] | Walker v. City of Birmingham, 388 U.S. 307 (1967) | Fair Process in Contempt Doctrine |
| [86] | Ungar v. Sarafite, 376 U.S. 575 (1964) | Flexible Scheduling for Defense Doctrine |
| [87] | Grayned v. City of Rockford, 408 U.S. 104 (1972) | Clarity and Consistency in Judicial Orders **Doctrine** |

| [88] | In re Murchison, 349 U.S. 133 (1955) | Judicial Impartiality Doctrine |
| [89] | Yick Wo v. Hopkins, 118 U.S. 356 (1886) | Equal Protection Doctrine |

90    The Defendants violated the Plaintiff's Fourteenth Amendment rights by systematically denying due process, equal protection, and fair legal proceedings. These violations were perpetuated through a combination of judicial bias, administrative obstruction, and procedural manipulation, resulting in significant harm to the Plaintiff. Judicial actors, including Judges Barranco, Truffer, and Robinson Jr., and administrative officials, such as Clerk Ensor, engaged in practices that undermined the Plaintiff's ability to access justice, defend against retaliatory actions, and assert their constitutional rights.

91    The Plaintiff was subjected to an ex parte Temporary Restraining Order (TRO) issued without prior notice, denying the Plaintiff any opportunity to challenge the order or present evidence. This TRO was followed by rushed show cause hearings with insufficient notice, leaving the Plaintiff unable to adequately prepare a defense. These actions violated the Notice and Opportunity to Be Heard Doctrine established in *Mullane v. Central Hanover Bank & Trust Co.*, as well as procedural due process standards requiring fair notice and meaningful participation in legal proceedings.

92    Judicial rulings were riddled with contradictions, such as orders requiring the Plaintiff to access systems they were simultaneously prohibited from using. These conflicting directives created impossible compliance standards, compounding the Plaintiff's legal and financial challenges. Judges Barranco and Truffer, in particular, issued escalating punitive measures, including a $2,500 daily fine and threats of incarceration, without providing clear or enforceable guidelines for compliance. This lack of clarity violated the *Grayned v. City of Rockford* doctrine, which mandates consistency and comprehensibility in judicial orders.

93    Administrative barriers imposed by Clerk Ensor further obstructed the Plaintiff's access to justice. The Clerk's Office routinely marked filings as deficient for minor or technical issues, creating unnecessary delays and forcing repeated refilings. These practices disproportionately disadvantaged the Plaintiff, who faced additional barriers as a Pro Se litigant with disabilities. Despite requests for ADA accommodations, such as remote access to records and alternative filing methods, the Clerk's Office failed to provide reasonable adjustments, exacerbating the Plaintiff's procedural challenges. This neglect violated the *Yick Wo v. Hopkins* Equal Protection Doctrine by imposing discriminatory treatment and reinforcing systemic inequities.

94    The Plaintiff's motions and evidence were systematically ignored, while opposing parties received expedited and favorable rulings. For example, emergency ex parte motions filed by the Plaintiff were denied or delayed, while similar motions from the Defendants were granted immediately. These disparities in procedural enforcement and judicial

outcomes reflect a pattern of bias and favoritism that undermined the Plaintiff's right to impartial adjudication, as guaranteed by the *In re Murchison* Judicial Impartiality Doctrine.

95    In contempt proceedings, the Plaintiff was subjected to arbitrary and excessive sanctions, including escalating fines and incarceration threats, without adequate procedural safeguards. Judge Barranco's imposition of these sanctions, combined with procedural irregularities, demonstrated a punitive intent that violated the *Walker v. City of Birmingham* Fair Process in Contempt Doctrine. The Plaintiff was denied reasonable time to prepare a defense, as hearings were scheduled with minimal notice, further contravening due process standards outlined in *Ungar v. Sarafite*.

96    Administrative practices also obstructed the Plaintiff's ability to obtain necessary records and evidence. Key transcripts and filings were withheld or removed from the court's electronic system, depriving the Plaintiff of essential materials for their defense. These actions, combined with the frequent marking of filings as deficient, created a procedural labyrinth that effectively denied the Plaintiff access to justice.

97    The cumulative effect of these violations—ranging from biased rulings and arbitrary procedures to administrative obstruction and denial of accommodations—constitutes a systematic deprivation of the Plaintiff's Fourteenth Amendment rights. These actions not only denied the Plaintiff procedural due process and equal protection but also inflicted severe financial, emotional, and reputational harm, underscoring the need for accountability and relief under 42 U.S.C. § 1983.

## RELIEF COUNT FOURTEENTH AMENDMENT

| 42 U.S.C. § 1983 | Cause of Action | Civil remedy for deprivation of procedural due process, equal protection, and other Fourteenth Amendment violations. |
|---|---|---|
| 28 U.S.C. § 2201 | Declaratory Relief | Declaration that the Defendants' actions violated the Plaintiff's Fourteenth Amendment rights to due process and equal protection. |
| 28 U.S.C. § 2202 | Injunctive Relief | Authorization of court orders to prevent future procedural inequities, including discrimination against Pro Se litigants and denial of due process safeguards. |
| Carey v. Piphus, 435 U.S. 247 (1978) | Compensatory Damages | Recovery for economic loss, emotional distress, and reputational harm caused by procedural due process violations and unequal protection under the law. |
| Smith v. Wade, 461 U.S. 30 (1983) | Punitive Damages | Deterrence of judicial and administrative misconduct, ensuring such biased or arbitrary practices are disincentivized. |
| Restitution (Equitable Authority) | Remedy for Procedural Harm | Recovery for costs and damages directly caused by denied or delayed access to justice, including improper fines and unjust sanctions. |
| 42 U.S.C. § 1988 | Attorney's Fees and Costs | Recovery of reasonable attorney's fees for prevailing parties in civil rights cases under Section 1983. |
| Mathews v. Eldridge, 424 U.S. 319 (1976) | Procedural Safeguards | Injunctive relief ensuring adequate procedural safeguards are implemented to prevent deprivation of due process rights. |

| Goldberg v. Kelly, 397 U.S. 254 (1970) | Notice and Hearing Requirements | Mandated reforms to ensure clear notice and fair hearing opportunities in all proceedings. |
| Equitable Relief (Judicial Authority) | Restoration of Rights | Court orders to reinstate the Plaintiff's procedural rights, including access to court records, proper hearing schedules, and elimination of conflicting rulings. |

## COUNT XII: MAIL FRAUD

### SUB-COUNT

| Sub | MAIL FRAUD | |
|---|---|---|
| | Mail Fraud (18 U.S.C. § 1341) | |
| [90] | 18 U.S.C. § 1341 | Fraudulent Use of Postal Services |

98    Defendant Bernstein's official letterhead and signature are on the letter dated October 11, 2024, containing conspiratorial language shared among the Defendants. Miles & Stockbridge, P.C., Brennen, Duvall, and Ensor utilized court filing letters to appear compliant with legal notification requirements. Ohana Growth Partners, LLC, and Hartman issued termination and benefit notices on stationary associated with USPS-stamped envelopes to create the appearance of legitimacy. These documents, on their face, exceed the evidentiary burden required for civil litigation under Mail Fraud. Their creation and association with USPS materials were integral to the conspiracy's goal of suppressing whistleblowing, discrediting the Plaintiff, and obstructing justice, causing financial harm, reputational damage, and procedural obstruction.

### RELIEF

| RELIEF COUNT MAIL FRAUD | | |
|---|---|---|
| 18 U.S.C. § 1341 | Treble Damages | Trebling of actual damages caused by fraudulent mailings to deter similar future misconduct. |
| 18 U.S.C. § 1341 | Restitution | Compensation for losses caused by the misleading and fraudulent use of mailed documents. |
| 18 U.S.C. § 1964(c) | Attorney's Fees and Costs | Full recovery of attorney's fees and litigation expenses. |

## COUNT XIII: WIRE FRAUD

### SUB-COUNT

| Sub | WIRE FRAUD | |
|---|---|---|
| | Wire Fraud (18 U.S.C. § 1343) | |
| [91] | 18 U.S.C. § 1343 | Fraudulent Use of Electronic Communications |

99    Ohana Growth Partners, LLC, Brick, Norris, Drummond, Hartman, Ihle, Woods, Bryan, Wittelsberger, Miles & Stockbridge, Frenkil, and Butler collaboration efforts in pre-litigation to create a pretext which became the basis of the lawsuit. Their digital meetings, emails, and telecommunications were instrumental in distorting judicial outcomes and suppressing evidence of prior misconduct.

100    Ohana Growth Partners, LLC., Hartman, and Norris' misuse and manipulation of the Paycom system to deny access compensation and benefits.

101    Romes and Levett were two 3rd parties that were engaged to add legitimacy to the fraudulent litigation.

102    Romes traveled from out of state for the 26th hearing and participated on the 27th via zoom to support the notion that breaching a dozen contracts, violating consumer protection laws, and unlawful business practices statutes  across Washington, California, Tennessee, Florida, Maryland, and DC was insignificant. Their testimony dismissed the legal enforceability of PCI requirements protecting consumer rights, and portions of their testimony were heavily redacted from the transcript.

103    Levett replaced Phil Leadore, who declined involvement, and falsely claimed earlier participation in the events. Levett accessed the Microsoft Cloud using information provided by Dillon-Capps during the June 26th and 27th hearings during a Teams Video Call with the Help Desk Manager in Mexico. Levett demonstrated that Ohana Growth Partners, LLC, Richard Hartman, and Justin Drummond's claims of lacking access to Global Administrator accounts were false. Levett subsequently authored an affidavit misrepresenting the situation to support the unlawful lawsuit, which was used to obtain a second contempt motion seeking incarceration. Judge Barranco granted this second show cause order.

104    Ensor modified official forms to fabricate causes and abused her magisterial position to prevent evidence and filings from being added to the digital court record.

105    Miles & Stockbridge, P.C., Ohana Growth Partners, LLC., Barranco, Drummond, Hartman, and Levett used Docusign to faciliate the signatures of Affidavits.

106    Miles & Stockbridge, P.C, Barranco, Truffer used email, MS Word, Adobe Certificate Signature, Power PDF Create, Apose PDF, and the Maryland Odyssey e-filing system in the process of creating and filing Romes affidavit.

107    Miles & Stockbridge, P.C., Barranco, Ensor, Robinson Jr., Stringer, Barranco, Mayer, Battista, Alexander, Truffer, and DeSimone Jr. used a combination of Aposte.WORDS, Apose.PDF, GDPicture, Microsoft365, Power PDF Create, Kofax Power PDF, Lura Document PDF, Foxit Quick PDF Library, Slkia/PDF, Canon iR-ADV C3830 PDF,

Adobe PSL for Canon, Laura Tech PDF Compressor, Outlook, Apple Mail, and Microsoft and Google mail systems and services in the creation, manipulation, and filing of documents associated with court record.

108    All of these Defendants engaged in a deliberate and coordinated pattern of racketeering activity under RICO. By leveraging telecommunication carriers, computers, printers, mail clients, and digital systems, the Defendants conspired as an enterprise to manipulate judicial outcomes, obstruct justice, and advance their fraudulent scheme. This conduct includes multiple predicate acts of wire fraud, as defined under 18 U.S.C. § 1343, and demonstrates their intent to deceive and harm the Plaintiff.

109    In furtherance of this scheme, the Defendants knowingly utilized platforms such as DocuSign, Microsoft365, Adobe Certificate Signature, and Maryland Odyssey e-filing systems to create, manipulate, and file fraudulent documents across state lines.

## RELIEF

| RELIEF COUNT WIRE FRAUD | | |
|---|---|---|
| 18 U.S.C. § 1343 | Treble Damages | Trebling of damages resulting from fraudulent use of electronic communications. |
| 18 U.S.C. § 1343 | Restitution | Compensation for losses caused by electronic filings designed to deceive and obstruct justice. |
| 18 U.S.C. § 1964(c) | Attorney's Fees and Costs | Recovery of attorney's fees incurred due to fraudulent electronic communications. |

## COUNT XIV: PCI COMPLIANCE CONSUMER PROTECTION VIOLATIONS

### SUB-COUNTS

| | CONSUMER PROTECTION VIOLATIONS | |
|---|---|---|
| **Sub** | 1    Md. Code, Com. Law §§ 13-101–13-501 Maryland Consumer Protection Act (MCPA)<br>2    Federal Trade Commission Act (FTC Act) – 15 U.S.C. § 45<br>3    Maryland Consumer Protection Act (MCPA) – Md. Code, Com. Law §§ 13-101–13-501<br>4    D.C. Consumer Protection Procedures Act (CPPA) – D.C. Code § 28-3901 et seq.<br>5    California Unfair Competition Law (UCL) – Cal. Bus. & Prof. Code § 17200 et seq.<br>6    California Consumers Legal Remedies Act (CLRA) – Cal. Civ. Code §§ 1750–1784<br>7    Washington Consumer Protection Act (CPA) – Wash. Rev. Code § 19.86.010 et seq.<br>8    Tennessee Consumer Protection Act (TCPA) – Tenn. Code Ann. § 47-18-101 et seq.<br>9    Florida Deceptive and Unfair Trade Practices Act (FDUTPA) – Fla. Stat. § 501.201 et seq. | |
| [92] | 15 U.S.C. § 45 | Federal Trade Commission Act (FTC Act) – Prohibits unfair or deceptive acts or practices. |
| [93] | 15 U.S.C. § 1693q | Electronic Fund Transfer Act (EFTA) – Prohibits unauthorized access or false representation in electronic transactions. |

| [94] | Md. Code, Com. Law § 13-301(1) | False Advertising |
|---|---|---|
| [95] | Md. Code, Com. Law § 13-301(2) | Omission of Material Facts |
| [96] | Md. Code, Com. Law § 13-301(9) | Fraudulent Claims |
| [97] | Md. Code, Com. Law § 13-303 | Prohibited Practices |
| [98] | Md. Code, Com. Law § 13-408 | Retaliatory Termination Action |
| [99] | D.C. Code § 28-3904(e) | False Advertising |
| [100] | D.C. Code § 28-3904(f) | Misrepresentation of Material Facts |
| [101] | D.C. Code § 28-3904(x) | Broad prohibition on unfair or deceptive practices. |
| [102] | Cal. Bus. & Prof. Code § 17200 | Unfair Competition Law (UCL) – Prohibits unlawful, unfair, or fraudulent business practices. |
| [103] | Cal. Civ. Code § 1770(a)(5) | False Representations |
| [104] | Cal. Civ. Code § 1770(a)(7) | Misleading Statements |
| [105] | Cal. Civ. Code § 1770(a)(16) | Deceptive Practices |
| [106] | Wash. Rev. Code § 19.86.020 | Washington Consumer Protection Act (CPA) – Prohibits unfair or deceptive acts or practices. |
| [107] | Wash. Rev. Code § 19.86.093 | Public Interest Impact: Adds liability for deceptive acts that harm the public interest. |
| [108] | Tenn. Code Ann. § 47-18-104(a) | Tennessee Consumer Protection Act (TCPA) – Prohibits deceptive acts impacting consumers. |
| [109] | Tenn. Code Ann. § 47-18-104(b)(5) | False Statements |
| [110] | Fla. Stat. § 501.204(1) | Florida Deceptive and Unfair Trade Practices Act (FDUTPA) – Prohibits deceptive acts or practices. |
| [111] | Fla. Stat. § 501.204(2) | General Consumer Protections |

110    **Ohana Growth Partners, LLC** and **Miles & Stockbridge, P.C.** disseminated misleading statements in legal filings and arguments, falsely representing PCI DSS compliance issues as unrelated to consumer protections. **PCI DSS standards** are critical to safeguarding consumer payment information by ensuring the secure handling of sensitive financial data. The defendants' misrepresentations, designed to deceive reasonable consumers and courts, concealed non-compliance with these essential consumer protection standards, causing significant harm to the plaintiff and consumers who relied on the integrity of these claims. In furtherance of this deception, **Ohana Growth Partners, LLC**, **Miles & Stockbridge, P.C.**, and **Randall Romes** intentionally concealed the regulatory significance of PCI DSS obligations, omitting material facts that were critical to consumer and judicial decision-making. These omissions were deliberate, substantial, and aimed at perpetuating their non-compliance while obscuring its impact on consumer data security.

111    **Miles & Stockbridge, P.C.**, led by **Robert Brennen** and supported by **Victoria Hoffberger**, knowingly presented false representations in court filings and during hearings to mislead the judiciary about the broader consumer protection implications of PCI DSS compliance failures. **Hoffberger's** actions directly supported arguments that minimized or concealed the risks posed to consumer payment information. Judges **Barranco** and **Truffer** reinforced these deceptions by engaging in practices that suppressed evidence of consumer harm and regulatory violations. Specifically, **Judge Barranco** imposed $2,500 per day fines to financially coerce the plaintiff and suppress whistleblowing efforts aimed at protecting consumers, while **Judge Truffer** legitimized these deceptive practices by dismissing jurisdictional arguments and denying procedural redress essential to exposing the defendants' misconduct.

112    The plaintiff, who engaged in protected whistleblowing activities to safeguard consumer rights by exposing PCI DSS compliance failures, was suspended and ultimately terminated by **Ohana Growth Partners, LLC** under false pretext. PCI DSS compliance standards exist to protect consumers from financial harm and data breaches; by retaliating against the plaintiff for whistleblowing, the defendants perpetuated consumer harm, undermined whistleblower protections, and ensured the continuation of deceptive practices. The defendants' actions not only harmed the plaintiff but also jeopardized the security and trust of the consumers whose data was left unprotected by their violations.

### RELIEF

| RELIEF COUNT CONSUMER PROTECTION VIOLATIONS | | |
|---|---|---|
| 15 U.S.C. § 57b | Federal Injunctive Relief | Injunctive relief to prohibit unfair or deceptive acts under the FTC Act. |
| 15 U.S.C. § 1693m | Statutory and Actual Damages | Recovery of actual damages, statutory damages up to $1,000 per violation, and attorney's fees. |
| Md. Code, Com. Law § 13-408(a) | Private Right of Action | Recovery of damages for unfair or deceptive practices, including retaliatory actions. |
| Md. Code, Com. Law § 13-408(c) | Treble Damages | Up to three times the actual damages for willful violations. |
| Md. Code, Com. Law § 13-408(d) | Attorney's Fees and Costs | Recovery of reasonable attorney's fees. |
| Md. Code, Com. Law § 13-411 | Injunctive Relief | Court may enjoin employer's ongoing deceptive or retaliatory actions. |
| D.C. Code § 28-3905(k)(1)(A) | Treble Damages | Treble damages for violations under the D.C. Consumer Protection Procedures Act. |
| D.C. Code § 28-3905(k)(1)(D) | Attorney's Fees and Costs | Recovery of attorney's fees for successful consumer protection claims. |
| Cal. Bus. & Prof. Code § 17203 | Restitution and Disgorgement | Recovery of restitution and disgorgement of profits for unlawful or unfair business practices. |
| Cal. Civ. Code § 1780(a) | Damages and Injunctive Relief | Recovery of actual damages, restitution, punitive damages, and injunctive relief for consumer violations. |

| | | |
|---|---|---|
| Wash. Rev. Code § 19.86.090 | Treble Damages and Attorney's Fees | Treble damages and recovery of attorney's fees for violations of the Washington Consumer Protection Act. |
| Tenn. Code Ann. § 47-18-109(a)(3) | Treble Damages | Treble damages for willful or knowing violations of the Tennessee Consumer Protection Act. |
| Tenn. Code Ann. § 47-18-109(e)(1) | Attorney's Fees and Costs | Reasonable attorney's fees for prevailing parties in Tennessee consumer protection claims. |
| Fla. Stat. § 501.211(1) | Actual Damages | Recovery of actual damages caused by deceptive or unfair practices under the Florida Deceptive and Unfair Trade Practices Act. |
| Fla. Stat. § 501.211(2) | Equitable Relief | Injunctive or declaratory relief to prevent ongoing violations of FDUTPA. |

## COUNT XV: PCI COMPLIANCE PIA VIOLATIONS AND WHISTLEBLOWER RETALIATION

### SUB-COUNTS

| | |
|---|---|
| Sub | **PCI COMPLIANCE, PIA VIOLATIONS, AND WHISTLEBLOWER RETALIATION**<br><br>1   Federal False Claims Act – 31 U.S.C. §§ 3729–3733<br>2   Maryland False Claims Act – Md. Code, Gen. Prov. §§ 8-101–8-113<br>3   Maryland Public Information Act – Md. Code, Gen. Prov. §§ 4-101–4-601<br>4   District of Columbia False Claims Act – D.C. Code § 2-223.02<br>5   California False Claims Act – Cal. Gov. Code § 12650 et seq.<br>6   California Whistleblower Protection Act – Cal. Lab. Code § 1102.5<br>7   Washington State Medicaid False Claims Act – Wash. Rev. Code § 74.66.020<br>8   Washington State Whistleblower Protection Act – Wash. Rev. Code § 42.41.040<br>9   Tennessee Medicaid False Claims Act – Tenn. Code Ann. § 4-18-101 et seq.<br>10  Tennessee Public Protection Act (Whistleblower Protection) – Tenn. Code Ann. § 50-1-304<br>11  Florida False Claims Act – Fla. Stat. § 68.081 et seq.<br>12  Florida Whistleblower's Act – Fla. Stat. § 112.3187 |
| [112] | 31 U.S.C. § 3729(a)(1)(A)     Presenting False Claims |
| [113] | 31 U.S.C. § 3729(a)(1)(C)     Conspiracy to Submit False Claims: |
| [114] | Md. Code, Gen. Prov. § 8-102(a)(1)     False Claims |
| [115] | Md. Code, Gen. Prov. § 8-102(a)(4)     Conspiracy to Submit False Claims: |
| [116] | Md. Code, Gen. Prov. §§ 4-101–4-601     PIA Violations |
| [117] | D.C. Code § 2-223.02     Whistleblower Protections |
| [118] | Cal. Gov. Code § 12651(a)(1)     False Claims in California |
| [119] | Cal. Lab. Code § 1102.5(b)     Defendants retaliated |
| [120] | Wash. Rev. Code § 74.66.020(1)(a)     Washington False Claims |
| [121] | Wash. Rev. Code § 42.41.040(1)(b)     Whistleblower Protections |
| [122] | Tenn. Code Ann. § 4-18-103(a)(1)     Tennessee False Claims |
| [123] | Tenn. Code Ann. § 50-1-304(b)     Whistleblower Protections |

113    The defendants engaged in a coordinated scheme to suppress whistleblowing efforts related to PCI DSS compliance violations across six jurisdictions—California, Washington, Tennessee, Florida, DC, and Maryland. These violations involved system-managed devices and cloud systems integral to payment processing and consumer data protection. **Ohana Growth Partners, LLC**, led by **Justin Drummond**, **Richard Hartman**, and **Glenn Norris**, knowingly submitted false PCI DSS compliance certifications, concealing systemic failures that posed risks to regulatory systems and consumers.

114    The plaintiff, a whistleblower, sought to expose these violations but was met with severe retaliation, including suspension, termination, and procedural barriers. **Miles & Stockbridge, P.C.**, led by **Robert Brennen** and supported by **Victoria Hoffberger**, filed false affidavits and motions during the June 26th and 27th hearings to obscure the compliance failures. These filings included perjured testimony from **Randall Romes**, who falsely claimed that PCI compliance had no regulatory implications. Judges **Barranco** and **Truffer** further suppressed whistleblowing efforts by issuing retaliatory rulings, including a $2,500 daily fine and the facilitation of a civil contempt motion seeking incarceration. Although the hearing for civil contempt incarceration never occurred, the filing itself imposed a chilling effect on the plaintiff's whistleblowing efforts and amplified procedural abuses.

115    **Hartman Executive Advisors (HEA)** represented themselves as PCI compliance experts during **June 11th and 12th**, initiating their involvement in the case. However, after their introduction, HEA refused to respond to further communications, despite injunctive orders and suspension information directing access to be given to them. The plaintiff, **Dillon-Capps**, requesting assistance from Justin Drummond on June 13th by asking if he could ask HEA to respond. Drummond assured the plaintiff that HEA would respond, but no response was ever provided.

116    Public Information Act violations compounded the harm, as the defendants manipulated court filings and rulings to conceal the compliance-related misconduct. **Julie Ensor**, as Clerk of the Circuit Court, actively obstructed access to filings that could have exposed systemic failures, while ensuring that fraudulent submissions advanced without scrutiny. These coordinated efforts directly harmed the plaintiff, undermined regulatory protections, and obstructed the judicial process across all six jurisdictions.

RELIEF

| RELIEF FOR COUNT XV:PCI COMPLIANCE, PIA VIOLATIONS, AND WHISTLEBLOWER RETALIATION | | |
|---|---|---|
| 31 U.S.C. § 3729(a)(1) | Federal Treble Damages | Triple the damages sustained by the federal government or whistleblower due to false certifications. |
| 31 U.S.C. § 3729(a)(1)(G) | Federal Statutory Penalties | Penalties ranging from $13,508 to $27,018 per false claim, adjusted for inflation. |

| 31 U.S.C. § 3730(h) | Federal Whistleblower Protections | Double back pay, reinstatement, and compensation for retaliation-related damages. |
|---|---|---|
| Md. Code, Gen. Prov. § 8-104(a) | Maryland Treble Damages | Triple the damages sustained by Maryland state entities or subdivisions. |
| Md. Code, Gen. Prov. § 8-104(b) | Maryland Civil Penalties | Penalties of $5,500–$11,000 per false claim, adjusted for inflation. |
| Md. Code, Gen. Prov. §§ 4-101–4-601 | Maryland Public Information Remedies | Injunctive relief and damages for suppressing or manipulating public records tied to PCI violations. |
| D.C. Code § 2-223.02 | D.C. Civil Penalties | Penalties of $5,000–$10,000 per violation, plus treble damages for harm to DC entities or consumers. |
| Cal. Gov. Code § 12651(a)(1) | California Treble Damages | Triple the damages caused by false claims affecting California entities or consumers. |
| Cal. Lab. Code § 1102.5 | California Whistleblower Protections | Reinstatement, back pay, and penalties for whistleblower retaliation. |
| Wash. Rev. Code § 74.66.020 | Washington Treble Damages | Triple damages sustained by Washington state entities or systems due to false claims. |
| Wash. Rev. Code § 42.41.040 | Washington Whistleblower Remedies | Reinstatement and damages for lost wages, emotional distress, and attorney's fees. |
| Tenn. Code Ann. § 4-18-103(a)(1) | Tennessee Treble Damages | Triple damages caused by false claims affecting Tennessee entities or programs. |
| Tenn. Code Ann. § 50-1-304 | Tennessee Whistleblower Protections | Reinstatement and back pay for whistleblower retaliation. |
| Fla. Stat. § 68.082(2)(a) | Florida Treble Damages | Triple damages for harm caused by false claims in Florida programs or systems. |
| Fla. Stat. § 112.3187 | Florida Whistleblower Protections | Reinstatement, compensation for retaliation-related damages, and injunctive relief. |

## COUNT XVI: FRAUDULENT LAWSUIT AND PIA VIOLATIONS

### SUB-COUNTS

| Sub | FRAUDULENT LAWSUIT AND PIA VIOLATIONS<br>1   Federal False Claims Act (FCA) – 31 U.S.C. §§ 3729–3733<br>2   Maryland False Claims Act (MFCA) – Md. Code, Gen. Prov. §§ 8-101–8-113<br>3   Maryland Public Information Act (PIA) – Md. Code, Gen. Prov. §§ 4-101–4-601 | |
|---|---|---|
| [124] | 31 U.S.C. § 3729(a)(1)(A) | Presenting False Claims |
| [125] | 31 U.S.C. § 3729(a)(1)(B) | Making False Records |
| [126] | 31 U.S.C. § 3729(a)(1)(C) | Conspiracy to Commit FCA Violation |
| [127] | 31 U.S.C. § 3729(a)(1)(G) | Reverse False Claims |
| [128] | Md. Code, Gen. Prov. § 8-102(a)(1) | Presenting False Claims |
| [129] | Md. Code, Gen. Prov. § 8-102(a)(2) | Making False Records |
| [130] | Md. Code, Gen. Prov. § 8-102(a)(4) | Conspiracy to Submit False Claims |

| [131] | Md. Code, Gen. Prov. § 8-102(a)(7) | Reverse False Claims |
| --- | --- | --- |

117   **Ohana Growth Partners, LLC**, led by its President, **Justin Drummond**, and Head of HR, **Richard Hartman**, knowingly initiated and perpetuated a fraudulent lawsuit against the plaintiff. This lawsuit was filed with no legitimate purpose and was designed as a retaliatory mechanism to silence whistleblowing efforts and shield the defendants' misconduct from scrutiny. The equity owners of Ohana Growth Partners conspired to ensure that this retaliatory litigation proceeded unimpeded, prioritizing their personal and financial interests over legal and ethical obligations.

118   In support of this fraud, **Miles & Stockbridge, P.C.**, led by **Robert Brennen**, with contributions from **Stephen Frenkil**, **Victoria Hoffberger**, and **Jessica Duvall**, knowingly filed deceptive pleadings, affidavits, and motions to misrepresent key facts and obscure the defendants' misconduct. These filings were bolstered by fraudulent affidavits and perjured testimony from **Randall Romes** and **Clifton Larson Allen LLC (CLA)**, who misrepresented critical information to legitimize the lawsuit. Additionally, **Daniel Levett** of Hartman Executive Advisors collaborated with Romes and CLA to submit misleading evidence, ensuring the continued concealment of procedural abuses and perpetuation of the fraudulent case.

119    Judicial officers actively facilitated this conspiracy. **Judge Barranco** accepted perjured testimony and imposed $2,500 per day fines on the plaintiff to financially coerce compliance with fraudulent rulings, while **Judge Truffer** dismissed jurisdictional arguments and denied procedural opportunities to expose the fraud. Judges **Stringer**, **Mayer**, **Battista**, **Alexander**, **Desimone**, and **County Administrative Judge Robinson** issued rulings systematically designed to suppress evidence, dismiss valid claims, and protect the defendants. **Julie Ensor**, as Clerk of the Circuit Court, played a direct role in the conspiracy by ensuring the procedural acceptance of fraudulent filings while obstructing legitimate ones, creating systemic barriers to justice.

120   Government oversight bodies and officials also participated in shielding the defendants from accountability. **Thomas DeGonia II**, as Maryland's Bar Counsel, failed to investigate or discipline attorneys at **Miles & Stockbridge, P.C.** for their fraudulent filings and unethical behavior. Similarly, **Tanya Bernstein**, as Director of Investigations for the Maryland Commission on Judicial Disabilities, coordinated efforts to suppress complaints of judicial misconduct, protect complicit judges, and preserve the conspiracy.

121   This conspiracy extended beyond the courtroom as the defendants knowingly leveraged fraudulent filings, false affidavits, and judicial complicity to suppress legitimate claims, obscure procedural violations, and retaliate against the plaintiff. Each motion, affidavit, and ruling in this case, including those filed and facilitated by **Miles &**

**Stockbridge, P.C.**, **Ohana's executives**, the equity owners, and complicit judges, furthered the fraudulent litigation and inflicted substantial harm on the plaintiff and public trust in Maryland's judiciary.

122   The plaintiff, who engaged in protected whistleblowing activities to challenge systemic misconduct, was targeted with retaliatory actions, including suspension, termination, and procedural barriers. The defendants' retaliatory efforts included financial coercion through excessive fines, fraudulent procedural rulings, and the deliberate obstruction of access to justice. The use of false filings and rulings created insurmountable challenges for the plaintiff, preventing legitimate claims from advancing and further solidifying the defendants' misuse of the judicial system.

123   This fraudulent lawsuit, devoid of any legitimate purpose, represents a flagrant abuse of judicial and legal processes. The defendants' actions constituted not only a deliberate effort to retaliate against the plaintiff but also an attempt to weaponize procedural mechanisms for private gain, undermining the judiciary's role in ensuring accountability. These actions were carried out with clear intent to suppress whistleblowing, distort the judicial process, and harm the plaintiff.

124   **Ohana Growth Partners, LLC**, along with its equity owners, senior executives, and retained counsel at **Miles & Stockbridge, P.C.**, implemented a calculated strategy to exhaust the plaintiff's financial and legal resources. The use of fraudulent affidavits, perjured testimony, and misleading evidence demonstrates the coordinated nature of the conspiracy. This strategy relied on the active participation of judicial officers, who issued rulings to suppress evidence, create procedural barriers, and advance the defendants' retaliatory objectives. The imposition of excessive fines, including the $2,500 daily penalty by **Judge Barranco**, exemplifies the judicial complicity in enabling the defendants' fraudulent objectives.

125   The conspiracy extended beyond the courtroom, as the defendants exploited Maryland's judicial and administrative systems to shield themselves from liability. Government officials tasked with oversight, including **Thomas DeGonia II** and **Tanya Bernstein**, acted in concert with judicial participants to suppress investigations, ensure the continued protection of the defendants, and prevent accountability. These systemic failures deprived the plaintiff of due process, inflicted substantial harm, and further eroded public confidence in the judicial system.

126     The defendants knowingly initiated and perpetuated a fraudulent lawsuit against the plaintiff, devoid of legitimate purpose and rooted in retaliatory motives for whistleblowing. **Ohana Growth Partners, LLC**, led by **Justin Drummond** and **Richard Hartman**, conspired with their legal counsel at **Miles & Stockbridge, P.C.** to file baseless claims designed to silence the plaintiff and obscure systemic misconduct. Attorneys **Robert Brennen**, **Stephen Frenkil**, and **Victoria Hoffberger** knowingly filed deceptive pleadings and facilitated fraudulent court proceedings, including motions and affidavits that misrepresented key facts and shielded the defendants' malfeasance.

127     Judges **Barranco** and **Truffer** further perpetuated the fraudulent case through retaliatory rulings that suppressed evidence, dismissed legitimate claims, and imposed excessive fines, including a $2,500 daily penalty. These rulings created a procedural quagmire that obstructed the plaintiff's ability to challenge the fraudulent claims and expose the defendants' misconduct. **Julie Ensor**, as Clerk of the Circuit Court, actively obstructed legitimate filings while advancing fraudulent submissions, ensuring the defendants' case proceeded without scrutiny or accountability.

128     **Violations of the Maryland Public Information Act (PIA)** compounded the harm by manipulating or withholding court records critical to exposing the fraudulent nature of the case. The defendants deliberately suppressed or denied access to public filings that would have illuminated their misconduct, obstructing the plaintiff's ability to obtain necessary records and pursue justice. The manipulation of public records not only harmed the plaintiff but also undermined public confidence in the judiciary's transparency and integrity.

129     Oversight officials, including **Thomas DeGonia II** as Maryland's Bar Counsel and **Tanya Bernstein** as Director of Investigations for the Maryland Commission on Judicial Disabilities, further shielded judicial participants and corporate defendants from accountability. Their failure to investigate or address complaints allowed the fraudulent litigation to continue unchecked, exacerbating the harm to the plaintiff and public trust in Maryland's judicial systems.

130     This fraudulent lawsuit, weaponized as a tool to retaliate against the plaintiff, represents a calculated effort to distort judicial processes, suppress whistleblowing, and undermine transparency. By initiating and perpetuating baseless claims, suppressing critical public records, and manipulating the judicial process, the defendants inflicted significant harm on the plaintiff, eroded public trust, and violated fundamental principles of accountability, fairness, and transparency.

| RELIEF COUNT XVI: FRAUDULENT LAWSUIT AND PIA VIOLATIONS | | |
|---|---|---|
| 31 U.S.C. § 3729(a)(1) | Federal Treble Damages | Triple the damages sustained due to false claims submitted through fraudulent litigation. |
| 31 U.S.C. § 3729(a)(1)(B) | Federal Penalties for False Records | Penalties ranging from $13,508 to $27,018 per violation for making or using false records. |
| 31 U.S.C. § 3729(a)(1)(G) | Federal Reverse False Claims Penalties | Treble damages and penalties for knowingly avoiding financial obligations owed to federal entities. |
| 31 U.S.C. § 3730(d) | Attorney's Fees and Costs | Recovery of reasonable attorney's fees and litigation costs for the whistleblower. |
| Md. Code, Gen. Prov. § 8-104(a) | Maryland Treble Damages | Triple the damages sustained by Maryland state entities or subdivisions due to false claims or conspiracy. |
| Md. Code, Gen. Prov. § 8-104(b) | Maryland Civil Penalties | Penalties of $5,500–$11,000 per violation, adjusted for inflation. |
| Md. Code, Gen. Prov. § 8-102(a)(7) | Maryland Reverse False Claims Penalties | Treble damages and civil penalties for improperly avoiding obligations owed to Maryland. |
| Md. Code, Gen. Prov. §§ 4-101–4-601 | Maryland Public Information Remedies | Injunctive relief and damages for PIA violations, including manipulation or suppression of public records |

# COUNT XVII: RICO

SUB-COUNTS

| Sub | RICO<br><br>18 U.S.C. §§ 1962(c), 1962(d) RICO (Racketeer Influenced and Corrupt Organizations Act)<br>18 U.S.C. §§ 1589, 1513, 1951, 1503, 1512, 241, 1956, 1519, 1001 Federal Criminal Law<br>Md. Code, Crim. Law §§ 9-101, 8-606, 8-607, 3-502, 7-104 Maryland Criminal Law<br>Common Law Tort (Negligent Retention), Maryland Civil Conspiracy Law<br>Md. Rule 18-101.1 et seq. Maryland Code of Judicial Conduct<br>Md. Rules 1-201, 1-322.1 Maryland Rules of Civil Procedure<br>Md. Const., Articles 19, 24, 46 Maryland Constitution | |
|---|---|---|
| [132] | 18 U.S.C. § 1962(c) | Conducting Enterprise Through Racketeering |
| [133] | 18 U.S.C. § 1962(d) | Conspiracy to Engage in Racketeering |
| [134] | 18 U.S.C. § 1589 | Forced Labor |
| [135] | 18 U.S.C. § 1513 | Retaliation Against a Witness or Victim |
| [136] | MD. CODE, CRIM. LAW § 9-101 | Perjury |
| [137] | MD. CODE, CRIM. LAW §§ 8-606, 8-607 | Forgery |
| [138] | 18 U.S.C. § 1951 | Extortion Under Color of Law |
| [139] | 18 U.S.C. § 1503 | Obstruction of Justice – Judicial Misconduct |
| [140] | 18 U.S.C. § 1512 | Witness Tampering |
| [141] | MD. CODE, CRIM. LAW § 3-502 | False Imprisonment |
| [142] | 18 U.S.C. § 241 | Conspiracy Against Rights |

| [143] | 18 U.S.C. § 1956 | Money Laundering |
|---|---|---|
| [144] | MD. CODE, CRIM. LAW § 7-104 | Theft by Deception |
| [145] | 18 U.S.C. § 1519 | Destruction, Alteration, or Falsification of Records |
| [146] | 18 U.S.C. § 1001 | False Statements |
| [147] | Common Law Tort | Negligent Retention |
| [148] | Common Law | Maryland Civil Conspiracy Law |
| [149] | Md. Rule 18-101.1 et seq. | Maryland Code of Judicial Conduct |
| [150] | Md. Rules 1-201, 1-322.1 | Obstruction of Justice – Maryland Rules |
| [151] | Md. Const., Articles 19, 24, 46 | Maryland Declaration of Rights Violations |

RICO TIMELINE OF HARM

131    The Defendants' actions fall into distinct, coordinated stages, each designed to intensify harm and further the enterprise's objectives. These stages collectively form a deliberate pattern of racketeering activity, violating federal statutes and constitutional rights while perpetuating harm through timing and escalation.

a. **Pretext Conspiracy Group (Late May to June 13)**:

During the "gauntlet" period leading up to June 13, Glenn Norris, Richard Hartman, Victor Brick, and other conspirators escalated their campaign of systemic retaliation and coercive threats. These actions culminated in induced catatonia and psychological harm, exploiting the Plaintiff's FMLA and ADA-protected conditions. The conspiracy group fabricated pretexts to justify their retaliatory measures, violating the Norris-LaGuardia Act, FMLA, ADA, and 42 U.S.C. § 1983. This initial phase set the stage for the fraudulent litigation conspiracy that followed, amplifying harm and cementing the Plaintiff's vulnerability.

b. **Litigation Conspiracy Group (June 13 to June 17)**:

On June 13, following a 12-hour day of gaslighting and pretextual harassment, the Plaintiff experienced dissociative episodes and amnesia, induced by escalating abuse. The employer, represented by Miles & Stockbridge, filed a fraudulent and unlawful lawsuit on June 14, violating the Norris-LaGuardia Act. The complaint falsely framed the Plaintiff's protected actions as grounds for injunctive relief, which was compounded by a no-notice TRO. During this period, the Plaintiff lost legal representation, further isolating them from relief. The Defendants' deliberate timing and procedural abuses ensured the Plaintiff remained trapped in litigation, exacerbating harm and preventing access to federally protected rights.

c.   **September Onward: Procedural Obstruction and Financial Default**:

The conspirators' tactics evolved into a strategy of holding the Plaintiff hostage through procedural silence. Refusing to rule on urgent motions, the court exploited estoppel tactics established by the earlier conspiracy group. Filings related to financial urgency were marked as deficient without justification, obstructing hearings necessary to address critical harms. This phase induced financial default and malignant catatonia, escalating the physical and emotional harm inflicted upon the Plaintiff. These actions violate federal statutes, including 42 U.S.C. §§ 1983 and 1985, as well as the Plaintiff's due process rights under the Fifth and Fourteenth Amendments.

d.   **Cover-Up Conspiracy (Ongoing)**:

Following the litigation conspiracy, the Defendants transitioned to protecting prior conspirators and obstructing relief. State actors, including clerks, judges, and administrative staff, refused to release court records necessary for appeals or transfers, ensuring the Plaintiff's case remained in procedural limbo. The intentional timing of sporadic rulings—just enough to keep the case open but inactive— deprived the Plaintiff of closure while intensifying harm. This tactic aligns with the enterprise's goal to "cauterize" relief pathways and ensure the harm's lethal consequences. These actions constitute ongoing racketeering activity under RICO and violate the Supremacy Clause by obstructing federally protected rights.

132   The timing of harm, strategically calculated across these phases, underscores the enterprise's deliberate and continuous nature. Under **H.J. Inc. v. Northwestern Bell Tel. Co.** (492 U.S. 229), this pattern satisfies RICO's requirement of continuity and relatedness, linking the conspirators' actions to the Plaintiff's escalating harm. The Supremacy Clause precludes immunity for state actors engaging in these violations, as federal law takes precedence over state practices that conflict with constitutional rights.

133   Under RICO's provisions, all actors within the enterprise, including public officials, private attorneys, employers, and clerks, are jointly and severally liable. As emphasized in **United States v. Turkette** (452 U.S. 576), the enterprise requirement extends to informal associations pursuing a common unlawful purpose, encapsulating the Defendants' coordinated efforts.

134   These actions also implicate the Ninth Amendment, which safeguards the Plaintiff's unenumerated right to relief and justice. By denying this fundamental right, the Defendants violated federal protections designed to prevent systemic harm and uphold constitutional guarantees. The Plaintiff's claims under RICO, rooted in this enterprise's

calculated timing and harm, pierce sovereign immunity and ensure accountability for all participants in this chain of misconduct.

## RICO ARGUMENT 1

135    The defendants engaged in a coordinated enterprise that systematically harmed the plaintiff through racketeering activities, violating 18 U.S.C. § 1962(c) by conducting the affairs of an enterprise through fraud, coercion, and obstruction. The enterprise encompassed private actors, including Ohana Growth Partners, LLC, Miles & Stockbridge, P.C., and their attorneys, as well as public actors, such as Baltimore County Circuit Court judges, clerks, and oversight agencies. This enterprise sought to retaliate against whistleblowing efforts, deprive the plaintiff of federally protected rights, and shield systemic corruption within Maryland's judicial and administrative systems.

136    Under 18 U.S.C. § 1962(d), the defendants conspired to facilitate racketeering activities by aligning their efforts across three phases—pretext, litigation, and coverup. Key participants included Victor Brick, Glenn Norris, Richard Hartman, Justin Drummond, and attorneys at Miles & Stockbridge, such as Robert Brennen and Stephen Frenkil. Public actors, including Judge Barranco, Judge Truffer, County Administrative Judge Dennis Robinson Jr., Clerk Julie Ensor, and oversight officials such as Tanya Bernstein and Thomas DeGonia II, knowingly supported the enterprise through procedural manipulation, suppression of evidence, and judicial misconduct. These actors collectively ensured that judicial outcomes favored the conspirators while isolating and retaliating against the plaintiff.

137    Judge Barranco's hearing notes deliberately mischaracterized the plaintiff's testimony by forcing misleading answers and recording them inaccurately to align with the defendants' fabricated narratives. These notes, entered into Maryland's online court system, became part of the official record, obstructing future appeals and distorting the factual basis of judicial proceedings. The abuse of Maryland's electronic filing system extended beyond hearing notes. Rulings and filings entered by the ruling judges lacked legitimate purpose, with decisions designed to suppress whistleblowing efforts, obscure violations of federal law, and deny the plaintiff access to justice. Under 18 U.S.C. § 1519, the falsification and misuse of these records constitute obstruction of justice through the alteration of official documents, undermining both state and federal legal processes.

138    The enterprise's reliance on forgery under Md. Code, Crim. Law §§ 8-606 and 8-607 was evident in falsified court documents, including affidavits and rulings. These filings, knowingly inaccurate, were designed to deceive both the plaintiff and higher courts. For example, the fraudulent orders and fabricated notes enabled the enterprise to misuse the doctrine of mootness, dismissing critical claims and filings without substantive review. The misuse of mootness

obstructed justice and undermined federal supremacy by dismissing federal claims involving whistleblowing under the False Claims Act and ADA violations.

139    The defendants' actions also violated 18 U.S.C. § 1589, as the plaintiff was coerced into compliance under threat of financial penalties and incarceration. Judge Barranco's imposition of $2,500 daily fines and fabricated show-cause orders weaponized judicial authority to force submission to fraudulent rulings. These penalties and threats of incarceration, orchestrated in conjunction with fabricated records, constituted forced labor through coercive judicial practices.

140    The conspirators leveraged Maryland's judicial infrastructure to obstruct justice in violation of 18 U.S.C. §§ 1503 and 1512. Clerks, acting under Julie Ensor's leadership, delayed filings, flagged legitimate submissions as deficient, and entered inaccurate rulings into the online system to obstruct the plaintiff's access to evidence and procedural relief. These actions prevented the plaintiff from mounting an effective defense and aligned with the broader objective of suppressing whistleblowing efforts.

141    By manipulating judicial procedures and records, the defendants engaged in a conspiracy against rights under 18 U.S.C. § 241. This conspiracy targeted the plaintiff based on their status as a whistleblower, a person with a disability, and a Pro Se litigant. Procedural barriers, denial of accommodations, and disparate treatment of the plaintiff compared to represented parties reflect discriminatory animus. Judges' and clerks' actions further entrenched these violations by obstructing federal claims under the False Claims Act, ADA, and FMLA, depriving the plaintiff of due process and equal protection under the law.

142    The enterprise's fraudulent filings and communications constitute wire fraud under 18 U.S.C. § 1343 and mail fraud under 18 U.S.C. § 1341. Electronic communications and postal submissions, including falsified affidavits, manipulated rulings, and fabricated fines, were central to the enterprise's objectives. These acts ensured that procedural manipulation extended beyond the state court system, obstructing the plaintiff's ability to pursue remedies at both state and federal levels.

143    Oversight agencies, including the Maryland Commission on Judicial Disabilities and the Attorney Grievance Commission, enabled the coverup conspiracy by dismissing valid complaints and delaying investigations. These agencies, tasked with ensuring judicial accountability, acted as shields for the enterprise, preventing exposure of systemic corruption. Their inaction, while not always malicious, amplified the harm inflicted on the plaintiff and further entrenched the conspiracy.

144    These interconnected actions demonstrate that the defendants, through coordinated misconduct, deprived the plaintiff of access to justice, federal protections, and procedural fairness. The abuse of Maryland's judicial and

administrative systems to perpetuate systemic corruption ties directly to racketeering activity, satisfying the elements of 18 U.S.C. § 1962(c) and (d). The resulting harm to the plaintiff includes financial destabilization, reputational destruction, and severe health deterioration, all proximately caused by the enterprise's conspiratorial actions.

145    The defendants' actions were not isolated incidents but part of an integrated scheme designed to weaponize Maryland's judicial and administrative systems for retaliatory purposes. Maryland's online filing system was instrumental in perpetuating the enterprise's goals by ensuring that fabricated rulings, falsified notes, and procedurally deficient filings were preserved as official records. These records misled subsequent judicial reviews and obstructed appeals, aligning directly with violations under 18 U.S.C. § 1519 and related state forgery statutes. By entering these documents into the court's official repository, the defendants ensured their misleading filings influenced all stages of the judicial process, including motions to dismiss, appeals, and oversight reviews.

146    Judicial actors and clerks, while acting under state authority, created procedural barriers that extended the enterprise's reach beyond state jurisdiction, impacting federally protected claims under the False Claims Act, ADA, and FMLA. For example, Judge Barranco's imposition of $2,500 daily fines and false imprisonment threats coerced compliance through economic and emotional distress, fulfilling the elements of forced labor under 18 U.S.C. § 1589 and extortion under 18 U.S.C. § 1951. Meanwhile, the misuse of mootness doctrine suppressed federal claims involving whistleblowing and disability accommodations, denying the plaintiff access to federal protections and reinforcing the enterprise's retaliatory objectives.

147    The defendants' coordination across private and public actors is further evidenced by the seamless transition of fabricated claims between conspirators. For instance, false affidavits submitted by Randall Romes and Miles & Stockbridge attorneys were adopted into judicial rulings without proper scrutiny, embedding their inaccuracies into the official record and compounding the harm to the plaintiff. This integration of private fraud and judicial misconduct demonstrates a unified enterprise intent on depriving the plaintiff of procedural justice, financial stability, and federal protections.

148    Oversight agencies and administrative actors, while not direct participants in the conspiracies, enabled the enterprise's goals through systemic inaction. Their failure to investigate whistleblower complaints, discipline attorneys, or address judicial misconduct amplified the conspiracies' effects, tying liability to the state under Maryland Code §§ 12-304–12-310. These omissions demonstrate how systemic negligence within state institutions served to conceal racketeering activity and shield conspirators, aligning with RICO's predicate acts and reinforcing the enterprise's objectives.

## ADDITIONAL RICO ARGUMENT

149     State officials, clerks, and administrative staff who conspire to violate constitutional rights or federal laws may be held personally liable under both civil rights statutes, such as § 1983, and federal racketeering laws, such as RICO under 18 U.S.C. §§ 1961–1968. The coordinated misconduct described in this case transcends individual actions, representing a broader effort to obstruct justice, retaliate against whistleblowing, and deprive the Plaintiff of federally protected rights through systemic manipulation and abuse of process.

150     The Supreme Court has consistently held that officials acting outside their lawful authority for malicious or unconstitutional purposes are personally liable for their actions. In Ex parte Young and Scheuer v. Rhodes, the Court affirmed that state immunity does not protect officials who act unlawfully. Further, Hafer v. Melo explicitly states that officials are "persons" under § 1983 when sued in their individual capacities for constitutional violations. These principles apply to the present case, where actions by clerks, administrative judges, and other officials directly violated federal protections under FMLA, ADA, and the Norris-LaGuardia Act.

151     Federal racketeering laws, as outlined in RICO, provide an additional layer of accountability for these coordinated actions. In Sedima, S.P.R.L. v. Imrex Co., the Court clarified that civil RICO applies to both private and public entities engaged in a pattern of racketeering activity. The Defendants' conduct—manipulating judicial processes, distributing fraudulent legal documents, obstructing justice, and retaliating against the Plaintiff—meets the statutory definition of racketeering under RICO. Their use of postal services, electronic communications, and judicial authority to perpetuate fraudulent claims demonstrates their participation in a broader enterprise to undermine federal law and constitutional protections.

152     Each Defendant's participation in this conspiracy subjects them to liability under both § 1983 and RICO. Judicial actions aimed at obstructing the Plaintiff's access to fair proceedings constitute actionable conduct under RICO statutes, including mail fraud, wire fraud, obstruction of justice, and retaliation against a witness. These acts are compounded by the use of state judicial authority to implement unconstitutional policies, as addressed in Monell v. Department of Social Services. In addition, West v. Atkins establishes that individuals acting under color of state law are liable for violations of federal rights, further supporting the Plaintiff's claims against the Defendants.

153     The Supreme Court has repeatedly emphasized that qualified immunity does not shield officials who violate clearly established rights. In Harlow v. Fitzgerald, the Court articulated that immunity is unavailable where misconduct violates constitutional protections that any reasonable official would understand. The conduct in this case, including bad-faith litigation, procedural abuses, and deliberate retaliation, clearly falls outside the scope of protected official actions. Taylor v. Riojas reinforces this principle, holding that extreme misconduct precludes any claim to immunity.

The Defendants' actions, including systemic violations of federal protections and procedural manipulation, represent such extreme misconduct.

154    By integrating RICO with existing personal liability doctrines, this argument highlights the comprehensive scope of accountability for the Defendants. Their individual and collective actions, undertaken as part of a broader conspiracy to undermine federal protections, violate both civil rights statutes and federal racketeering laws. This layered approach ensures that the Court addresses not only the specific violations but also the systemic misconduct that facilitated them, establishing a clear framework for injunctive relief, compensatory damages, and equitable remedies to prevent further harm.

155    The right to seek redress and relief is a fundamental constitutional right, deeply rooted in the principles of justice and fairness enshrined in the United States Constitution. The Ninth Amendment serves as a safeguard for these unenumerated rights, explicitly stating that the enumeration of certain rights within the Constitution shall not be construed to deny or disparage others retained by the people. This provision ensures that the right to access justice, though not explicitly detailed, is inherently protected as an essential component of the rule of law. The Defendants' actions, by systematically obstructing the Plaintiff's ability to seek relief, represent a direct violation of this foundational principle and fall squarely within the scope of RICO's intent to remedy organized and systemic abuse.

156    The Supreme Court has long acknowledged the existence and importance of unenumerated rights under the Ninth Amendment. In Griswold v. Connecticut, the Court emphasized that the Ninth Amendment protects rights fundamental to the concept of ordered liberty, even if they are not explicitly articulated. The Plaintiff's right to access the courts, to seek redress for grievances, and to challenge unlawful conduct is an intrinsic aspect of the broader constitutional framework that ensures equal protection and due process under the law.

157    RICO provides a critical mechanism for addressing coordinated efforts to undermine such rights, particularly when the enterprise seeks to stifle an individual's pursuit of justice. In California Motor Transport Co. v. Trucking Unlimited, the Supreme Court held that concerted actions aimed at obstructing access to courts or administrative proceedings violate fundamental constitutional protections. Here, the Defendants' collective misconduct—including fraudulent litigation, procedural obstruction, and retaliation—was designed to prevent the Plaintiff from exercising their constitutional right to seek relief.

158    Applying RICO under the Ninth Amendment aligns with the statute's purpose of addressing systemic patterns of misconduct that harm individuals and undermine public confidence in the justice system. The interconnected acts of mail fraud, wire fraud, witness tampering, and obstruction of justice are not merely isolated violations; they form a

coordinated campaign to deny the Plaintiff their constitutional rights. This broader context underscores the critical role of RICO in providing a remedy for individuals targeted by such schemes.

159    By framing the right to seek relief as a constitutionally protected right under the Ninth Amendment, the Plaintiff's claims underscore the gravity of the Defendants' conduct and its far-reaching implications. The deliberate and coordinated efforts to suppress the Plaintiff's ability to access justice violate not only statutory protections but also the core principles enshrined in the Constitution. RICO's application in this context ensures accountability for those who conspire to undermine these rights and reaffirms the judiciary's role in protecting the constitutional guarantees that safeguard the pursuit of justice for all.

## RELIEF

### RELIEF COUNT RICO

| 18 U.S.C. § 1964(c) | Treble Damages | Recovery of three times the actual damages sustained by the plaintiff, plus costs and attorney's fees. |
|---|---|---|
| 18 U.S.C. § 1964(a) | Injunctive Relief | Court may issue orders to dismantle the enterprise, prevent further violations, or enforce compliance with RICO. |
| 18 U.S.C. § 1964(b) | Equitable Relief | Allows the court to grant equitable remedies, including disgorgement of profits or unjust enrichment. |
| Enterprise Conspiracy Liability | Joint and Several Liability | Liability extends across all conspirators for acts committed by any individual within the enterprise. |
| Vicarious Liability | Agency Liability | Holds organizational actors (Ohana, Miles & Stockbridge) liable for the wrongful acts of their agents, employees, and representatives. |
| 18 U.S.C. § 1589(b) | Restitution | Full restitution to compensate the plaintiff for losses tied to forced labor or coercive practices. |
| 18 U.S.C. § 1513(e) | Punitive Damages | Exemplary damages for retaliatory harm inflicted by the defendants to deter similar future conduct. |
| Md. Code, Crim. Law § 7-104 | Restitution | Restitution for financial harm caused by theft by deception, including wages, bonuses, and other benefits withheld. |
| Md. Code, Crim. Law §§ 8-606, 8-607 | Compensatory Damages | Recovery for harm caused by forged documents, including legal costs, reputational harm, and lost opportunities. |
| Md. Const., Articles 19, 24, 46 | Declaratory Relief | Declaration that the plaintiff's rights to access courts, due process, and equal protection were violated. |
| 18 U.S.C. § 1519 | Criminal Penalties and Restitution | Penalties include restitution for harms caused by altered or falsified records. |
| 18 U.S.C. § 1951 | Punitive Damages | Punitive relief for extortion under color of law, addressing abuse of judicial authority. |
| 18 U.S.C. § 241 | Equitable and Injunctive Relief | Court orders to prevent ongoing conspiracies against federally protected rights and ensure accountability. |
| 18 U.S.C. § 1512 | Witness Protection Orders | Injunctive relief ensuring protection of the plaintiff from further tampering, harassment, or intimidation. |

| Md. Rule 18-101.1 et seq. | Judicial Reform Measures | Court may issue directives to ensure compliance with judicial ethics and mitigate systemic misconduct. |
|---|---|---|
| 42 U.S.C. § 1988(b) | Attorney's Fees and Costs | Full recovery of reasonable attorney's fees incurred during litigation. |
| Common Law Negligence | General and Special Damages | Damages for financial, reputational, and health-related harm caused by negligent retention and systemic inaction. |

160    The Defendants' actions, orchestrated by leadership at Ohana Growth Partners, LLC, and Miles & Stockbridge, P.C., as well as judicial and oversight officials, establish enterprise liability under RICO. These enterprises operated through three interrelated conspiracies—Pretext, Litigation, and Coverup—each compounding harm to the Plaintiff and furthering systemic corruption. Ohana Growth Partners' leadership, including Victor Brick, Glenn Norris, Richard Hartman, and Justin Drummond, directed and approved retaliatory measures such as fabricated compliance filings, wage suppression, and pretextual termination. Miles & Stockbridge principals, including Robert Brennen, Stephen Frenkil, and Holly Butler, coordinated fraudulent legal strategies, filing baseless litigation to harm the Plaintiff and colluding with judicial actors to protect co-conspirators. Judicial Disabilities Commission head Tanya Bernstein and Attorney Grievance Commission head Thomas DeGonia II suppressed investigations, enabling collusion and shielding judicial and attorney misconduct from accountability. Baltimore County Circuit Court leadership, including County Administrative Judge Dennis M. Robinson Jr. and Clerk Julie Ensor, facilitated procedural manipulation through conflicting rulings, delayed hearings, and obstructive deficiency notices, furthering the conspiracy's objectives to harm the Plaintiff and conceal systemic corruption.

161    Enterprise liability is supported by case law such as *Reves v. Ernst & Young*, *Meyer v. Holley*, and *Cedric Kushner Promotions, Ltd. v. King*, which hold organizations accountable for their agents' acts performed within the scope of employment or in furtherance of the enterprise's goals. Ohana Growth Partners and Miles & Stockbridge, along with judicial collaborators, acted to retaliate, obstruct justice, and perpetuate fraud, meeting RICO's standards for liability. The cumulative impact of these actions caused extensive financial harm, reputational destruction, and severe health deterioration for the Plaintiff. This harm includes wage theft, litigation costs, lost business opportunities, and permanent damage to the Plaintiff's credibility and health. Pursuant to 18 U.S.C. § 1964(c), the Plaintiff seeks treble damages for these aggregate injuries, which were deliberately inflicted through coordinated racketeering activities.

### ONSITE SOLUTIONS, INC AND CONTRIBUTORY MISCONDUCT: SUPPORTING EVIDENCE OF ENTERPRISE LIABILITY

| ONSITE SOLUTIONS, INC. AND CONTRIBUTORY MISCONDUCT: SUPPORTING EVIDENCE OF ENTERPRISE LIABILITY | |
|---|---|
| 18 U.S.C. § 1028(a)(7) | Identity Theft |
| 18 U.S.C. § 1343 | Wire Fraud |

| | |
|---|---|
| 18 U.S.C. § 1030 | Computer Fraud and Abuse Act (CFAA) |
| 18 U.S.C. § 1028A | Aggregated Identity Theft |
| 18 U.S.C. § 471 | Forgery |
| 18 U.S.C. § 1029 | Abusive Device Fraud |
| 18 U.S.C. § 1341 (Mail Fraud) / § 1343 (Wire Fraud) | Interstate Transmission of Fraudulent Documents |
| 18 U.S.C. § 1001 | False Statements |
| Common Law Tort | Negligent Retention |
| 18 U.S.C. § 1962(c) and (d) | Civil RICO |

162    The fraudulent actions of Andrew Dinh, acting through Onsite Solutions, Inc., provide further evidence of systemic misconduct within the enterprise orchestrated by Ohana Growth Partners, LLC. Dinh knowingly used the Plaintiff's identity without authorization to submit compliance documents for IT and Entertainment Installation under the Planet Fitness franchisor system. These submissions, falsely attesting adherence to installation standards under the Plaintiff's name, created substantial liability and reputational risk for the Plaintiff. The fraudulent documents were transmitted through the franchisor's electronic compliance portal, crossing state lines, and demonstrating clear predicate acts of identity theft, wire fraud, and forgery.

163    Dinh's use of the Plaintiff's credentials constituted unauthorized access and misuse of the franchisor compliance portal, directly tying his actions to violations of the Computer Fraud and Abuse Act (CFAA). These submissions falsely attributed compliance responsibility to the Plaintiff, exposing them to liability for substandard or faulty work. Dinh's actions meet the threshold for enhanced penalties under 18 U.S.C. § 1028A by directly connecting identity theft to wire fraud and computer fraud. The deliberate falsification of compliance records demonstrates intent to harm the Plaintiff professionally while shielding Onsite Solutions from accountability for substandard work.

164    Ohana Growth Partners' leadership, including Victor Brick and Glenn Norris, knowingly retained Dinh despite prior knowledge of his fraudulent actions. This decision to rehire Dinh reflects negligent retention and constitutes willful ignorance or active participation in perpetuating fraud. By facilitating Dinh's continued access to systems and compliance processes, Ohana enabled the further misuse of the Plaintiff's identity, exacerbating liability and reputational harm. This negligence also undermined compliance with Planet Fitness franchisor requirements, directly implicating Ohana's leadership in the enterprise's racketeering activities.

165    The harm inflicted on the Plaintiff by Dinh's actions includes reputational damage, liability exposure, and obstruction of justice. By falsely affirming standards compliance, Dinh created significant liability risks for the Plaintiff if the work was later found noncompliant or faulty. The continued misuse of the Plaintiff's identity cast doubt on their professional credibility and undermined their ability to address and rectify these harms. Ohana's inaction and protection of Dinh reinforced these damages, obstructing justice and perpetuating harm to the Plaintiff.

166    These actions align with the broader enterprise goals of retaliation, concealment, and systemic misconduct. By rehiring Dinh and failing to act on known risks, Ohana Growth Partners facilitated and endorsed racketeering activities, including wire fraud, identity theft, and forgery. Dinh's fraudulent actions, supported by the inaction and willful negligence of Ohana's leadership, exemplify the enterprise's deliberate strategy to insulate co-conspirators from accountability while amplifying harm to the Plaintiff. This evidence strengthens the RICO claims and further illustrates the interconnected nature of the enterprise's misconduct.

## COUNT XVIII: ANTI-RIGHTS CONSPIRACY

### SUB-COUNTS

| Sub | ANTI-RIGHTS CONSPIRACY<br><br>42 U.S.C. § 1985 Conspiracy to Interfere with Civil Rights<br>18 U.S.C. § 241 Conspiracy Against Rights | |
|---|---|---|
| [152] | 42 U.S.C. § 1985(2)(a) | Conspiracy to Deter a Witness or Party |
| [153] | 42 U.S.C. § 1985(2)(b) | Conspiracy to Influence Proceedings |
| [154] | 42 U.S.C. § 1985(3)(a) | Conspiracy Motivated by Discriminatory Animus |
| [155] | 42 U.S.C. § 1985(3)(b) | Overt Acts in Furtherance of Conspiracy |
| [156] | 42 U.S.C. § 1985(3)(c) | Resulting Harm or Deprivation of Rights |
| [157] | 42 U.S.C. § 1985(2) | Obstruction of Justice |
| [158] | 42 U.S.C. § 1985(3) | Deprivation of Equal Protection |
| [159] | 42 U.S.C. § 1985(3) | Retaliation for Whistleblowing |
| [160] | 18 U.S.C. § 241 | Conspiracy Against Rights |

167    Under 42 U.S.C. § 1985 and 18 U.S.C. § 241, the defendants, comprising both private actors (Ohana Growth Partners, LLC, Miles & Stockbridge, P.C.) and public actors (Baltimore County Circuit Court judges, clerks, and oversight agencies), conspired to interfere with the plaintiff's civil rights. This conspiracy, orchestrated in three phases—pretext, litigation, and coverup—targeted the plaintiff due to their disability, Pro Se status, and whistleblowing activities, depriving them of due process, equal protection, and access to justice.

168    The defendants engaged in a conspiracy to deter the plaintiff through intimidation, threats, and coercion, violating 42 U.S.C. § 1985(2)(a). Judges, including Barranco and Truffer, issued rulings that imposed excessive fines and suppressed procedural opportunities to pressure the plaintiff into abandoning their claims. Clerk Julie Ensor, through her office, obstructed filings by creating procedural barriers, including delays and rejection of valid submissions. Private actors, including Ohana Growth Partners and its leadership, Justin Drummond and Richard Hartman, initiated and perpetuated these actions by filing a fraudulent lawsuit and directing retaliatory actions. False

testimony from Randall Romes further supported the conspiracy, compounding the intimidation and creating insurmountable obstacles for the plaintiff.

169     To influence judicial proceedings, the defendants conspired to manipulate state and federal outcomes, violating 42 U.S.C. § 1985(2)(b). Judges, including Barranco, Truffer, and Robinson Jr., issued manipulated rulings favoring the conspirators and suppressing evidence of misconduct. Clerks, under Ensor's leadership, delayed and rejected filings essential to the plaintiff's case, while oversight agencies, including the Maryland Attorney General's Office and the Commission on Judicial Disabilities, ignored valid complaints. These coordinated efforts ensured that judicial proceedings remained skewed in favor of the conspirators, depriving the plaintiff of a fair and impartial process.

170     The conspiracy was also motivated by discriminatory animus against the plaintiff's disability and Pro Se status, violating 42 U.S.C. § 1985(3)(a). Judges denied accommodations during critical hearings on June 26th and 27th, even as the plaintiff requested and demonstrated the need for them. Clerks disproportionately applied procedural barriers, treating Pro Se litigants more harshly than represented parties. Ohana Growth Partners retaliated against the plaintiff for whistleblowing about violations of PCI DSS compliance, ADA rights, and systemic misconduct, further demonstrating discriminatory intent. These actions collectively aimed to silence the plaintiff and undermine their ability to advocate for their rights.

171     To further the conspiracy, the defendants committed overt acts in violation of 42 U.S.C. § 1985(3)(b). These acts included fraudulent litigation filings by Miles & Stockbridge, P.C., with support from Robert Brennen, Stephen Frenkil, Victoria Hoffberger, and Jessica Duvall, and perjured testimony by Randall Romes and Daniel Levett. Judicial rulings issued by Judges Barranco, Truffer, and Robinson Jr. suppressed whistleblowing efforts and obstructed evidence that could expose the defendants' misconduct. Clerks, under Ensor's supervision, obstructed the plaintiff's filings, marked submissions as deficient, and created procedural delays. Oversight agencies dismissed or ignored complaints, shielding the conspirators from accountability and ensuring their continued ability to act with impunity.

172     The conspiracy caused significant harm to the plaintiff, violating 42 U.S.C. § 1985(3)(c). Financial harm included excessive fines, wage suppression, and litigation costs, which created severe economic instability for the plaintiff. Reputational harm resulted from false narratives advanced by the defendants, undermining the plaintiff's professional standing and future career opportunities. The conspiracy exacerbated the plaintiff's PTSD, malignant catatonia, and dissociative episodes, significantly impairing their health and well-being. Most critically, the systemic

denial of access to justice deprived the plaintiff of a fair judicial process, further compounding the harm caused by the defendants' coordinated efforts.

173    This conspiracy involved the active participation of Ohana Growth Partners, LLC, led by Drummond, Hartman, and other leadership figures, in retaliating against the plaintiff through fabricated claims and pretextual actions. Miles & Stockbridge, P.C., represented by Brennen, Frenkil, Hoffberger, and Duvall, advanced the conspiracy through fraudulent pleadings and procedural manipulation. Judges, including Barranco, Truffer, and Robinson Jr., issued rulings that suppressed whistleblowing evidence and facilitated procedural barriers, while Clerk Ensor ensured that these barriers obstructed the plaintiff's case at every stage. Oversight bodies, including the Maryland Attorney General's Office and the Commission on Judicial Disabilities, failed to intervene, allowing the conspiracy to persist unchecked.

174    The defendants' actions, supported by systemic negligence across multiple state-affiliated entities, demonstrate a conspiracy against rights under **18 U.S.C. § 241** and a conspiracy to interfere with civil rights under **42 U.S.C. § 1985**. These entities, while not acting with malice, collectively enabled procedural barriers, discriminatory practices, and oversight failures that perpetuated harm against the plaintiff. Their actions and omissions, carried out within the scope of their official duties, establish the State of Maryland's liability for the harm inflicted.

175    Staff within the **Baltimore County Clerk's Office** created procedural barriers that obstructed the plaintiff's access to justice. Filing deficiencies were flagged excessively and disproportionately, while critical submissions were delayed or ignored altogether. These actions, though procedural in appearance, facilitated the conspiracy by ensuring the plaintiff faced escalating challenges in seeking judicial relief. Clerks' inaction on visible irregularities further entrenched these barriers, preventing meaningful intervention.

176    Non-ruling judges and their staff also contributed to this systemic failure by ignoring irregularities and procedural manipulation during hearings and filings. Judges' staff, present during critical moments such as the June 26 and 27 hearings, observed discriminatory rulings and procedural manipulation but failed to escalate these issues or act on their knowledge. This inaction enabled retaliatory litigation to proceed unchecked and compounded the harm inflicted on the plaintiff.

177    The **Attorney Grievance Commission of Maryland**, tasked with overseeing attorney conduct, received clear and compelling evidence of ethical violations by attorneys representing the conspirators. Despite this, its attorneys and staff failed to act on valid complaints, declining to investigate or discipline those involved. Similarly, the **Maryland Commission on Judicial Disabilities**, responsible for judicial accountability, dismissed complaints and ignored evidence of systemic misconduct, allowing judges' retaliatory and discriminatory rulings to persist without oversight.

178    Attorneys and staff within the **Office of the Maryland Attorney General**, including the **Civil Rights Division**, were presented with direct communications and evidence documenting civil rights violations and procedural misconduct. These filings outlined systemic failures and retaliation against the plaintiff, yet no meaningful intervention occurred. The inaction of these offices, despite their jurisdiction and obligation to safeguard civil rights, facilitated the continuation of procedural and judicial misconduct.

179    The **Office of Administrative Hearings**, including its Chief Law Judge and administrative staff, was indirectly involved through its receipt of filings documenting systemic failures. While not directly connected to the conspiracy's core actors, this office's failure to escalate these filings reflects an institutional abdication of responsibility. Similarly, **Judicial Information Systems (JIS)** staff, entrusted with managing and maintaining court systems, mirrored language and practices used by conspirators and failed to investigate clear anomalies in the plaintiff's case. This alignment with procedural manipulation reflects systemic negligence rather than malice.

180    These non-malicious actions and omissions, carried out within the scope of employment, demonstrate systemic failures across multiple state-affiliated entities. The **Baltimore County Clerk's Office**, **judicial staff**, **Attorney General's Office**, and oversight agencies collectively contributed to the conspiracy's success by failing to intervene, investigate, or correct procedural and substantive violations. Their inaction amplified the harm caused to the plaintiff, including financial instability, reputational damage, health deterioration, and obstruction of justice.

181    Under **Maryland Code §§ 12-304–12-310**, the State of Maryland assumes liability for the actions and omissions of its employees and agencies when conducted within their official roles. The systemic negligence demonstrated by these entities ties liability directly to the State, ensuring accountability for the harm inflicted upon the plaintiff. While the named conspirators acted with malice, the broader framework of state-affiliated actors supported the conspiracy through institutional inaction, enabling the systemic denial of the plaintiff's rights.

RELIEF

| RELIEF COUNT ANTI-RIGHTS CONSPIRACY | | |
|---|---|---|
| 42 U.S.C. § 1985(2)(a) | Deterrence of Witness or Party Relief | Compensatory damages for intimidation, threats, or coercion aimed at deterring whistleblowing or legal participation. |
| 42 U.S.C. § 1985(2)(b) | Judicial Process Obstruction Damages | Recovery for harm caused by conspiracies to manipulate or corrupt judicial outcomes. |
| 42 U.S.C. § 1985(3)(a) | Discrimination Damages | Damages for conspiracies motivated by discriminatory animus based on disability and Pro Se status. |
| 42 U.S.C. § 1985(3)(b) | Relief for Overt Acts | Compensatory damages for harm caused by overt acts committed in furtherance of the conspiracy, such as fraudulent filings and procedural obstruction. |

| 42 U.S.C. § 1985(3)(c) | Damages for Resulting Harm | Damages for financial, reputational, and health-related harm directly caused by the conspiracy. |
|---|---|---|
| 18 U.S.C. § 241 | Criminal Penalties for Conspiracy | While primarily criminal, this supports the narrative of conspiracy against federal rights. |
| 42 U.S.C. § 1988(b) | Attorney's Fees and Costs | Recovery of reasonable attorney's fees for civil rights violations. |
| 42 U.S.C. § 1988(c) | Expert Fees | Recovery of expert fees incurred in litigation related to civil rights violations. |
| Maryland Civil Conspiracy Law | State-Level Damages | Recovery for harm caused by conspiracies under Maryland's common law framework. |
| Injunctive Relief | Systemic Oversight Injunctions | Court-ordered measures to reform judicial and administrative processes and prevent further harm. |

## COUNT XIX: FAILURE TO PREVENT CONSPIRACY UNDER 42 U.S.C. § 1986

### SUB-COUNTS

| Sub | FAILURE TO PREVENT CONSPIRACY UNDER 42 U.S.C. § 1986 | |
|---|---|---|
| | 1   42 U.S.C. § 1986 Failure to Prevent Conspiracy | |
| [161] | 42 U.S.C. § 12112 et seq Md. Code, State Gov't § 20-606 | Failure to Provide Reasonable Accommodation |
| [162] | Md. Code, State Gov't § 20-606(a)(4) | Failure to Provide Reasonable Accommodation by State Law |
| [163] | 42 U.S.C. § 12203(a) Md. Code, State Gov't § 20-606(f) | Retaliation |
| [164] | Md. Code, State Gov't § 20-606(f) | Retaliation Prohibited by State Law |

182    Under **42 U.S.C. § 1986**, judges, clerks, oversight agencies, and numerous other state actors and agencies had knowledge of an ongoing conspiracy to violate the plaintiff's civil rights and possessed the authority to intervene or prevent harm. Despite their awareness and legal obligations, these defendants willfully neglected to act, enabling the conspiracy to persist and resulting in significant harm to the plaintiff.

183    The defendants had **knowledge of the conspiracy** through multiple channels, including direct emails sent to all judges describing procedural manipulation, repeated filings demonstrating systemic irregularities handled by the Clerk's Office, and formal complaints submitted to oversight entities such as the Maryland Attorney General's Office, Maryland Commission on Judicial Disabilities, and Civil Rights Division. Judges **Barranco**, **Truffer**, **Stringer**, **Mayer**, and **Robinson Jr.** were directly notified of procedural misconduct and manipulative rulings, while **Clerk Julie Ensor** and her staff witnessed filing obstructions and irregularities. Oversight officials, including **Thomas DeGonia II** (Maryland Bar Counsel) and **Tanya Bernstein** (Director of the Maryland Commission on Judicial Disabilities), received detailed complaints outlining systemic violations but failed to take any substantive action.

184    These individuals and entities had the **power to prevent or aid in the prevention of harm**. Judges had the authority to review rulings tainted by procedural manipulation, enforce transparency, and rectify judicial misconduct. **Clerk Ensor** and her department were in a position to escalate visible patterns of filing irregularities, delay tactics, and procedural barriers that disproportionately affected the plaintiff. Oversight agencies, including the Maryland Attorney General's Office and the Civil Rights Division, had jurisdiction to investigate systemic civil rights violations and ensure accountability. Despite this authority, no meaningful actions were taken.

185    The defendants' **failure to act** perpetuated harm. Judges knowingly upheld manipulated rulings, ignored direct communications detailing procedural misconduct, and issued rulings that actively suppressed whistleblowing and protected conspirators. Clerks failed to address visible filing irregularities and facilitated the procedural obstruction of legitimate filings. Oversight agencies dismissed valid complaints or delayed action indefinitely, allowing the conspirators to evade accountability. These failures created an environment where the conspiracy thrived unchecked, ensuring the plaintiff faced compounded harm.

186    The **resulting harm** included ongoing financial losses due to excessive fines and retaliatory employment actions, reputational damage stemming from the fraudulent lawsuit, and severe emotional and physical health deterioration caused by prolonged procedural barriers and systemic retaliation. By failing to intervene or act, the defendants directly contributed to the plaintiff's suffering and reinforced the structural integrity of the conspiracy.

RELIEF

### RELIEF COUNT FAILURE TO PREVENT CONSPIRACY UNDER 42 U.S.C. § 1986

| 42 U.S.C. § 1986 | Compensatory Damages | Recovery of damages for harm caused by the failure to prevent the conspiracy, including financial losses and emotional distress. |
|---|---|---|
| 42 U.S.C. § 1988(b) | Attorney's Fees and Costs | Recovery of reasonable attorney's fees and litigation costs for civil rights violations. |
| 42 U.S.C. § 1988(c) | Expert Fees | Recovery of expert fees as part of litigation costs. |
| Injunctive Relief | Court-Ordered Measures | Injunctions to require oversight bodies and judicial entities to address systemic violations and prevent further harm. |

## COUNT XX: ADA TITLE II & MARYLAND ANTI-DISCRIMINATION RETALIATION

SUB-COUNTS

| | ADA TITLE II & MARYLAND ANTI-DISCRIMINATION RETALIATION |
|---|---|
| **Sub** | 1.   42 U.S.C. §§ 12131–12165 Violation of Title II of The ADA<br>2.   MD. CODE, STATE GOV'T § 20-304 Maryland's Anti-Discrimination Law |
| [165] | 42 U.S.C. § 12132<br>Md. Code, State Gov't § 20-304(b)    Denial of Access to Public Services or Programs |

| [166] | 42 U.S.C. § 12203(a) | Retaliation for Exercising Rights |
|---|---|---|

187    The **Baltimore County Circuit Court** and its clerks' office are **public entities** under **42 U.S.C. § 12131(1)** and **Md. Code, State Gov't § 20-304(a)**, and are prohibited from discriminating against qualified individuals with disabilities. The plaintiff, diagnosed with PTSD and related health conditions, is a **qualified individual with a disability** under **42 U.S.C. § 12102(1)** and **Md. Code, State Gov't § 20-101(f)(1)**. The plaintiff provided documentation of this disability, and accommodations were provided by the employer and, inconsistently, by the Circuit Court for Baltimore County. However, systemic barriers and retaliatory actions by judges and clerks violated **Title II of the ADA** and **Maryland's Anti-Discrimination Law**.

188    **Denial of Access to Public Services or Programs**: The defendants denied the plaintiff equal access to justice in violation of **42 U.S.C. § 12132** and **Md. Code, State Gov't § 20-304(b)**. Procedural rigidity, such as rejecting filings on redundant technicalities, disproportionately burdened the plaintiff as a **Pro Se litigant with a disability**. The plaintiff faced inequitable treatment compared to attorneys, limited remote access, and denial of accommodations during the June 26th and 27th hearings, further hindering participation in judicial processes.

189    **Retaliation for Exercising Rights**: Judges and clerks retaliated against the plaintiff for raising accessibility concerns, violating **42 U.S.C. § 12203(a)**. Retaliatory actions included procedural barriers, rejection of legitimate filings, and discriminatory rulings designed to penalize the plaintiff for asserting their rights under the ADA and Maryland law.

190    These actions deprived the plaintiff of access to public programs and services, obstructed justice, and caused financial and emotional harm, violating both federal and state anti-discrimination laws.

RELIEF

| RELIEF COUNT ADA TITLE II & MARYLAND ANTI-DISCRIMINATION RETALIATION | | |
|---|---|---|
| 42 U.S.C. § 12133 | Title II Remedies | Injunctive relief, compensatory damages, and remedies under Section 504 of the Rehabilitation Act. |
| 42 U.S.C. § 12203(c) | Retaliation Remedies | Injunctive relief, compensatory damages, and attorney's fees for retaliation under the ADA. |
| Md. Code, State Gov't § 20-606(f) | Compensatory and Punitive Damages | Recovery of damages for discrimination and retaliation, including emotional distress and punitive damages. |
| Md. Code, State Gov't § 20-606(g) | Attorney's Fees and Costs | Recovery of reasonable attorney's fees and litigation costs. |
| Md. Code, State Gov't § 20-304 | Injunctive Relief | Court-ordered measures to prohibit ongoing discrimination and retaliation. |
| 42 U.S.C. § 12205 | Attorney's Fees | Recovery of attorney's fees and litigation costs for ADA-related claims. |

## COUNT XXI: DENIED USE OF BENEFITS AND ACCOMODATIONS

SUB-COUNTS

| | COUNT DENIED USE OF BENEFITS AND ACCOMODATIONS |
|---|---|
| **Sub** | 2    29 USC § 794 Violation of Section 504 of the Rehabilitation Act<br>3    Md. Code, State Gov't §§ 20-606, 20-304 Maryland's Anti-Discrimination Law |

| [167] | 29 U.S.C. § 794(a) | Denial of Benefits or Exclusion from Participation |
|---|---|---|
| [168] | 29 U.S.C. § 794(d) | Retaliation |

191    **Ohana Growth Partners, LLC** and the **Baltimore County Circuit Court** violated Section 504 of the Rehabilitation Act (29 U.S.C. § 794) and Maryland's Anti-Discrimination Law (Md. Code, State Gov't §§ 20-304, 20-606), which prohibit discrimination against qualified individuals with disabilities in programs or activities receiving federal financial assistance. As recipients of federal funds, including tax benefits and ADA Disability Coordinator funding, both entities were obligated to ensure equal access and non-discriminatory practices. The plaintiff, a qualified individual with a disability as defined under 29 U.S.C. § 705(20), was subjected to discriminatory treatment and retaliatory actions by both entities.

192    Ohana Growth Partners, LLC denied the plaintiff access to employment benefits and accommodations, effectively excluding them from participation in employment-related activities and retaliating against them for engaging in protected activities such as whistleblowing. Similarly, the Baltimore County Circuit Court denied the plaintiff equal access to justice by engaging in procedural manipulation, enforcing discriminatory policies, and failing to provide reasonable accommodations during court proceedings. These actions constitute violations of federal and Maryland law.

193    Under 29 U.S.C. § 794(a), Ohana Growth Partners failed to provide equal access and reasonable accommodations in employment, thereby excluding the plaintiff from full participation in employment benefits due to their disability. The Baltimore County Circuit Court similarly violated this provision by denying the plaintiff access to judicial processes and imposing discriminatory procedural barriers. Furthermore, under 29 U.S.C. § 794(d), both entities engaged in retaliation that incorporated ADA retaliation standards. Ohana Growth Partners suspended and terminated the plaintiff under false pretext, directly tied to the plaintiff's whistleblowing activities regarding compliance violations. The Baltimore County Circuit Court further retaliated against the plaintiff through procedural manipulation designed to suppress their legal rights, including their efforts to secure accommodations and expose systemic misconduct.

<table>
<tr><td>194    These violations directly harmed the plaintiff by denying access to employment benefits, obstructing access to justice, and perpetuating systemic discrimination and retaliation, causing significant financial, emotional, and legal harm.</td></tr>
</table>

## RELIEF

### RELIEF COUNT XIII: SECTION 504 AND MARYLAND ANTI-DISCRIMINATION LAW VIOLATIONS

| | | |
|---|---|---|
| 29 U.S.C. § 794(a) | Equal Access and Non-Discrimination | Injunctive relief to ensure compliance with Section 504 and provide equal access to programs and benefits. |
| 29 U.S.C. § 794(d) | Retaliation Remedies | Compensatory damages, including back pay and damages for emotional distress caused by retaliation. |
| Md. Code, State Gov't § 20-606(f) | Compensatory and Punitive Damages | Recovery of damages for discrimination, including emotional distress and punitive damages for willful violations. |
| Md. Code, State Gov't § 20-606(g) | Attorney's Fees and Costs | Recovery of reasonable attorney's fees and litigation costs. |
| Md. Code, State Gov't § 20-304 | Injunctive Relief | Injunctions to prevent ongoing discriminatory practices and ensure accommodations are provided. |
| 42 U.S.C. § 12205 (via § 794(d)) | Attorney's Fees and Litigation Costs | Recovery of fees and costs for ADA-related retaliation claims incorporated into Section 504. |

## COUNT XXII: RETALIATORY COERCION UNDER THE NORRIS-LAGUARDIA ACT

### SUB-COUNT

| Sub | RETALIATORY COERCION UNDER THE NORRIS-LAGUARDIA ACT | |
|---|---|---|
| | Norris-LaGuardia Act (NGA) - 29 U.S.C. §§ 101–115 | |
| [169] | 29 U.S.C. § 103 | Injunctive Relief Restriction |
| [170] | 29 U.S.C. § 104 | Right to Organize and Dispute Terms |
| [171] | 29 U.S.C. § 102 | Congressional Declaration of Policy |

<table>
<tr><td>195    The Defendants' fraudulent injunction lawsuit constitutes a direct violation of the Norris-LaGuardia Act (NLA), which prohibits judicial intervention in labor disputes through coercive injunctions or retaliatory claims. The lawsuit improperly sought to compel the Plaintiff to perform labor under retaliatory and unlawful conditions by misusing judicial processes to enforce fabricated claims of breach of contract and duty of loyalty. These actions were designed to punish the Plaintiff for asserting rights under the Family and Medical Leave Act (FMLA) and engaging in whistleblowing activities.</td></tr>
</table>

196     The existence of a labor dispute is clear, as the lawsuit concerns the Plaintiff's employment, specifically their refusal to comply with retaliatory demands tied to workplace conditions and their protected FMLA leave. This qualifies as a labor dispute under 29 U.S.C. § 113, encompassing controversies over terms, conditions, and obligations of employment. The Defendants filed the lawsuit on June 14, 2024, mere hours after the Plaintiff invoked FMLA protections, demonstrating a retaliatory motive in violation of the NLA. The fraudulent claims, bolstered by perjured affidavits from Richard Hartman and Justin Drummond, were weaponized to seek a **no-notice ex parte injunction**, issued by Judge Desimone on June 17, 2024. This injunction, obtained without the Plaintiff's participation or opportunity for defense, conflicts with the explicit requirements of 29 U.S.C. § 107, which mandate procedural safeguards, such as evidence of unlawful acts, threats, insufficiency of remedies at law, and adequate opportunities for the Plaintiff to present defenses.  None of which were present in the case.

197     The injunction's issuance was a violation of 29 U.S.C. § 104, which prohibits injunctions in labor disputes except under narrowly defined circumstances. The Defendants sought to compel compliance with their fabricated demands through financial coercion, procedural manipulation, and escalating retaliatory measures. The Plaintiff's refusal to comply was based on protected rights to challenge unlawful workplace demands, including demands made under the pretext of access to systems that the Plaintiff had no obligation to fulfill under employment agreements.

198     The misuse of judicial processes to retaliate against the Plaintiff continued through the imposition of civil contempt penalties. On June 26, 2024, Judge Barranco issued conflicting orders that imposed $2,500 daily fines for alleged noncompliance while simultaneously barring the Plaintiff from making necessary changes to the disputed systems. These contradictory orders highlighted the retaliatory and punitive nature of the injunction proceedings. Moreover, the Plaintiff's whistleblowing activities, which exposed systemic violations of PCI DSS compliance, further underscore the retaliatory intent behind the lawsuit.

199     The Defendants' fraudulent claims and misuse of judicial processes demonstrate a calculated strategy to coerce compliance, suppress whistleblowing, and punish the Plaintiff for asserting protected rights under the FMLA and the NLA. By seeking to enforce fabricated labor demands through judicial action, the Defendants violated the core protections afforded to employees under the NLA, including the prohibition on coercive injunctions and retaliation in labor disputes.

200    The retaliatory injunction filed by Ohana Growth Partners, LLC, and Miles & Stockbridge, P.C., not only violated the Norris-LaGuardia Act but also systematically deprived the Plaintiff of due process and equal protection, as guaranteed under the 14th Amendment. The Defendants' use of perjured affidavits, fraudulent claims, and pretextual arguments weaponized the judicial system to harm the Plaintiff. The judicial actors' complicity in granting the ex parte injunction and subsequent conflicting orders exacerbated the Plaintiff's inability to comply, while deliberately denying a mandatory rehearing further underscored the procedural inequities.

201    The clerks' obstruction of critical filings and the judges' issuance of punitive, conflicting, and arbitrary orders on June 8th, 9th, 13th, and 14th served as key mechanisms in suppressing the Plaintiff's rights. The imposition of coercive penalties, including $2,500 daily fines, and the facilitation of civil contempt hearings designed to intimidate and threaten incarceration demonstrated the judicial actors' alignment with the Defendants' retaliatory objectives. These actions not only violated the Plaintiff's labor rights under the Norris-LaGuardia Act but also constituted a direct denial of due process by creating insurmountable procedural barriers to relief.

202    The court's refusal to address these barriers, combined with the judicial deference given to the Defendants' fraudulent filings, further perpetuated discriminatory practices against the Plaintiff as a Pro Se litigant. This disparate treatment, rooted in systemic bias and procedural manipulation, denied the Plaintiff equal protection under the law. By embedding these actions into the retaliatory injunction lawsuit, the Defendants ensured that the Plaintiff's constitutionally protected rights were repeatedly violated, compounding the harm already inflicted by their pretextual termination and retaliatory litigation.

RELIEF

| RELIEF COUNT RETALIATORY COERCION UNDER THE NORRIS-LAGUARDIA ACT | | |
|---|---|---|
| 29 U.S.C. § 103 | Injunctive Relief | Prohibits further injunctions enforcing unlawful labor demands. |
| 29 U.S.C. § 104 | Declaratory Relief | Declares prior injunctions unlawful and void due to violations of labor dispute protections. |
| 29 U.S.C. § 110 | Compensatory Damages | Recovery of financial harm, including wages, legal fees, and costs arising from retaliatory injunctions and civil contempt orders. |
| 29 U.S.C. § 113 | Punitive Damages | Damages for malicious use of judicial processes to enforce labor demands in bad faith. |
| 42 U.S.C. § 1988(b) | Attorney's Fees and Costs | Full recovery of reasonable legal fees and expenses incurred in challenging unlawful injunctions and defending against retaliatory lawsuits. |

<u>RESPECTFULLY SUBMITTED</u>

| **December 24, 2024** | | 1334 Maple Avenue |
| | | Essex, Maryland 21221 |
| | /s/ Ryan Dillon-Capps | ryan@mxt3.com |
| | **Ryan Dillon-Capps** | 703-303-1113 |