# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| RYAN DILLON-CAPPS | Civil Action |
| **_Plaintiff,_** | |
| vs. | No. _____ |
| OHANA GROWTH PARTNERS, LLC _et al_ | Hon. _____ |
| **_Defendants_** | |

## MEMORANDUM OF LAW IN OPPOSITION TO IMMUNITY

**Plaintiff incorporates all subsequent sections and attachments herein by reference as though fully stated in this main document.**

## Table of Contents

TABLE OF CONTENTS ............................................................................................................. 1

   A States Voluntary Invocation of Federal Jurisdiction ............................................................ 2
   B Defying Federal Law ............................................................................................................. 3

**WAIVER OF JUDICIAL IMMUNITY** ............................................................................................ 3

   Judicial Accountability ............................................................................................................. 3
   Judicial Conspiracy ................................................................................................................... 4
   Judicial Accountability and Transparency ............................................................................... 4
   Obligation to Address Constitutional Claims ........................................................................... 4

**COMPROMISED IMPARTIALITY** ................................................................................................ 4
**CONCLUSION** ............................................................................................................................. 7
**OBLITERATING IMMUNITY TABLES** ......................................................................................... 7

   State Soverign Immunity .......................................................................................................... 7
   Judicial Immunity ...................................................................................................................... 9
   Clerk and Administrative Staff Immunity ................................................................................ 10
   Federal Statute Exceptions .................................................................................................... 11
   Immunity Waivers ................................................................................................................... 13
   Personal Liability .................................................................................................................... 17
   RICO Excetions ...................................................................................................................... 18
   Corporate Immunity ................................................................................................................ 21
   Void Ab Initio Judgments ....................................................................................................... 22

**RESPECTFULLY SUBMITTED** .................................................................................................. 24

## A    States Voluntary Invocation of Federal Jurisdiction

1    Justice Breyer's opinion in **Lapides v. Board of Regents of University System of Georgia**, 535 U.S. 613 (2002), clearly establishes: "A state's voluntary invocation of federal jurisdiction removes Eleventh Amendment immunity for claims at issue," (Id., at 620) and further states, "It would seem anomalous or inconsistent for a state both (1) to invoke federal jurisdiction, thereby contending that the 'Judicial power of the United States' extends to the case at hand, and (2) to claim Eleventh Amendment immunity, thereby denying that the 'Judicial power of the United States' extends to the case at hand."

2    This binding precedent applies directly to County Administrative Judge Dennis M. Robinson Jr., Senior Judge Patrick H. Stringer, Associate Judge Michael S. Barranco, Associate Judge Stacey A. Mayer, Associate Judge Andrew M. Battista, Associate Judge Jan M. Alexander, Associate Judge Keith R. Truffer, and Associate Judge Marc A. DeSimone Jr. Their continued assertion of jurisdiction over the NLA-violating lawsuit for six months constitutes a clear and unequivocal waiver of immunity on all counts arising within the same case or controversy, including claims that might otherwise have been barred under Eleventh Amendment protections.

3    Moreover, **Pennhurst State School & Hospital v. Halderman**, 465 U.S. 89 (1984), established that immunity cannot be fragmented within the same case. Once waived, the waiver applies uniformly to all state actors involved in the litigation. **Alden v. Maine**, 527 U.S. 706 (1999), reinforced this principle by affirming that state actors cannot selectively invoke immunity within the same controversy. **Lapides**, 535 U.S. at 613, clarified that when a state waives immunity, it does so comprehensively, extending to all claims arising from the same matter. Finally, **Stroud v. McIntosh**, 722 F.3d 1294 (11th Cir. 2013), extended this principle to

include individuals within the same agency or authority, ensuring that immunity waivers are uniformly applied.

4       This waiver applies comprehensively to all matters arising from the same case or controversy, which includes not only the labor dispute that brought the Plaintiff to the Circuit Court but also all related litigation over the past six months.  The State This encompasses claims related to the failure of multiple agencies to respond to legitimate grievances, and the systemic coverup involving the Grievance and Disability Commissions. Each of these interconnected issues forms the foundation of the case currently before this Honorable Court, necessitating the full and equitable adjudication of the Plaintiff single claim.

## B   Defying Federal Law

5       The judge's continued adjudication of the NLA-violating claims, despite the waiver of immunity, undermined the procedural integrity of the case. This violated the principles established in Ex parte Young, 209 U.S. 123 (1908), which allow federal courts to enjoin unconstitutional actions by state officials. "Individuals who act in defiance of federal law cannot claim immunity when their actions infringe upon federally protected rights." (*Id.*, at 160).

## WAIVER OF JUDICIAL IMMUNITY

### JUDICIAL ACCOUNTABILITY

6       Justice Blackmun explains that Ex Parte Young includes the Judiciary in Pulliam v. Allen (1984): "Judicial immunity does not bar prospective relief against a judge who violates federal rights." Judges are not immune from prospective relief for systemic violations of constitutional rights.

7       Justice White from Dennis v. Sparks (1980): "Participation in a conspiracy to deprive someone of rights removes immunity, even for judicial acts." Judges lose immunity for actions in conspiracy with private parties to violate rights.

JUDICIAL ACCOUNTABILITY AND TRANSPARENCY

8       Chief Justice Burger from United States v. Nixon (1974) : "The judicial process cannot be undermined by those entrusted with its enforcement." Judicial decisions undermined by concealment or obstruction can be invalidated.  Nothing the Circuit Court has done to coverup their fellow conspirators conduct has aided them – it only further invalidates immunity.

OBLIGATION TO ADDRESS CONSTITUTIONAL CLAIMS

9       Chief Justice Warren from Reynolds v. Sims (1964): "The judiciary has a responsibility to address constitutional questions presented in good faith." Judges failing to address constitutional claims violate their judicial responsibilities.

## COMPROMISED IMPARTIALITY

10      Even with the most charitable interpretation of the Ruling Judges' and County Clerk's actions, the record reveals blatant bias and a deliberate abandonment of impartiality. Imagine this case presented to a jury—filing by filing, ruling by ruling, decision by decision. There would be an entire day dedicated to exposing Judge Barranco's misconduct, interwoven with quotes from the other Ruling Judges to demonstrate their collective culpability. Every single Ruling Judge contributed to imposing a $2,500 daily contempt fine and granting a show cause order seeking incarceration for a labor dispute. This is a case in which the employer explicitly admitted to violating Dillon-Capps' FMLA rights, retaliating against him for attempting to use FMLA leave the day before, and basing their claims on a proven lie—a lie exposed as early as June 18th.

11      The July 5th version of Exhibit IV was not merely incomplete—it was fraudulently altered to remove 19 pages of critical information. The Letter to Judge Truffer reflects this same pattern of manipulation and deceit, designed to obscure the judiciary's complicity in procedural abuses and unlawful rulings. These acts of fraud were not isolated incidents but part of a broader scheme to conceal the undeniable truth: the judiciary actively supported a baseless, unlawful lawsuit that violated federal law and retaliated against an individual asserting their protected rights.

12      These actions are the legal equivalent of sweeping piles of evidence under a rug, expecting no one to notice that the rug now bulges seven feet high in the middle of the room. The judiciary's denial of reality and refusal to acknowledge the fraudulent foundation of their rulings is both absurd and insulting. They expect everyone involved to ignore the glaring evidence of corruption and misconduct, pretending that the employer's admissions of FMLA violations, retaliatory actions, and fabricated allegations do not exist.

13      This is not just bias—it is outright corruption. By fraudulently altering documents, enabling procedural abuses, and knowingly perpetuating unlawful rulings, the Ruling Judges have forfeited any claim to judicial immunity. Their deliberate participation in a conspiracy to violate federal law, suppress evidence, and obstruct justice has irreparably damaged public trust in the judiciary. They must be held accountable.

14      Judicial immunity is intended to protect judges from liability for decisions made in their official capacity. However, the Supreme Court in **Caperton v. A.T. Massey Coal Co., 556 U.S. 868 (2009)**, made clear that immunity does not extend to actions where impartiality is compromised by personal interests or undue influence. When judges conspire with others to

violate federal law or support baseless legal actions outside their jurisdiction, judicial immunity cannot apply, as these actions undermine public trust and judicial legitimacy (Id. at 884).

15      In this case, the Ruling Judges participated in a broader enterprise conspiracy to uphold a lawsuit that flagrantly violated the **Norris-LaGuardia Act (NLA)** by asserting jurisdiction over matters explicitly preempted by federal law. The lawsuit, filed by Ohana Growth Partners and supported by its counsel, lacked any legitimate evidentiary basis. Every material statement or piece of evidence offered was either perjured or proven to be baseless. Despite this, the Ruling Judges issued a series of favorable rulings, including ex parte orders, punitive contempt fines of $2,500 per day, and combined hearings, all designed to shield the employer and its co-conspirators from accountability.

16      The NLA expressly prohibits state court interference in labor disputes, including retaliation for exercising federally protected rights such as those under the Family and Medical Leave Act (FMLA). Defendant Richard Hartman admitted in his affidavit to retaliating against Plaintiff Dillon-Capps for requesting FMLA leave. This admission, alongside documented violations of the Americans with Disabilities Act (ADA), rendered the state court's continued assertion of jurisdiction unlawful and void ab initio. The judges' active support of this baseless and unlawful litigation demonstrates their complicity in the enterprise conspiracy, undermining any claim to judicial immunity.

17      The Supreme Court's holding in **Caperton** requires recusal or disqualification when there is a "serious risk of actual bias" due to a judge's personal interest or involvement with a party (Id. at 885). Here, the consistent pattern of rulings favorable to the employer, despite the lack of evidence or lawful jurisdiction, establishes a likelihood of actual bias. This pattern

reflects more than mere judicial error—it demonstrates knowing participation in a conspiracy to deny procedural fairness and enforce unlawful rulings.

18      Judicial immunity cannot shield actions that violate federal law, enable enterprise conspiracy, or undermine the integrity of the judiciary. The record here satisfies the burden of showing a serious risk of bias, as the Ruling Judges acted in concert with other parties to perpetuate procedural abuses. To restore public trust and uphold the principles of justice, this Court must recognize the limits of judicial immunity and take corrective action against all participants in the enterprise conspiracy, including the judiciary.

19      Justice Kenney's opinion makes the situation abundantly clear: **"The Due Process Clause demarks only the outer boundaries of judicial disqualifications. Disqualification is required when, objectively speaking, the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable."** (Caperton, 556 U.S. at 872).

## CONCLUSION

20      Even limited by the contents being discussed in the pleading, not a single named legal professional deserves to ever litigate, adjudicate, or otherwise work in the legal profession for a single day longer because their actions are too high to be constitutionally tolerable.

## OBLITERATING IMMUNITY TABLES

21      These arguments should sufficiently address other defenses, and hopefully the full list is not necessary.

### STATE SOVERIGN IMMUNITY

| Ex parte Young, 209 U.S. 123 (1908) | "State officials acting in violation of federal law are stripped of immunity when sued for injunctive relief." | Justice Peckham |
|---|---|---|
| Scheuer v. Rhodes, 416 U.S. 232 (1974) | "State officials acting beyond their lawful authority, particularly in bad faith, are not entitled to immunity." | Justice Rehnquist |
| Cooper v. Aaron, 358 U.S. 1 (1958) | "State officials cannot evade their obligations under federal law." | Chief Justice Warren |

| McCulloch v. Maryland, 17 U.S. (4 Wheat.) 316 (1819) | "The Constitution and the laws made in pursuance thereof are supreme...and cannot be controlled by the states." | Chief Justice Marshall |
|---|---|---|
| Edelman v. Jordan, 415 U.S. 651 (1974) | "Federal courts may issue prospective relief to ensure compliance with federal law." | Justice Rehnquist |
| Arizona v. United States, 567 U.S. 387 (2012) | "Federal law must prevail where it occupies the field or conflicts with state law." | Justice Kennedy |
| Fitzpatrick v. Bitzer, 427 U.S. 445 (1976) | "Congress may abrogate state sovereign immunity to enforce the substantive guarantees of the Fourteenth Amendment." | Justice Rehnquist |

1   The lawsuit filed by the employer, under the pretext of injunctive relief, was in direct violation of the Norris-LaGuardia Act, a federal statute that explicitly bars federal or state courts from issuing injunctions in cases concerning labor disputes. The initiation of this lawsuit, coupled with the employer's own admission to FMLA interference and retaliation, created a federal issue from its inception. State judicial officials who oversaw and advanced this lawsuit acted outside their lawful authority, engaging in conduct that contravened federal statutes. As state employees exercising authority in a matter governed by federal law, their actions fall under federal oversight, and their lack of appointment under the Appointments Clause further disqualifies their actions from constitutional validity. Justice Peckham, in Ex parte Young, 209 U.S. 123 (1908), established that state officials acting in violation of federal law cannot invoke sovereign immunity, ensuring accountability when federal rights are at stake.

2   The continuation of this lawsuit and the subsequent actions by state judicial officials to deny federally guaranteed rights under the FMLA, ADA, and constitutional protections violate the Supremacy Clause, which mandates that federal law is the supreme law of the land. Chief Justice Warren, in Cooper v. Aaron, 358 U.S. 1 (1958), reinforced that state officials are bound by federal law and cannot evade their obligations through state mechanisms. By advancing a case that disregarded federal supremacy, these officials acted in direct contravention of the Constitution. Chief Justice Marshall, in McCulloch v. Maryland, 17 U.S. (4 Wheat.) 316 (1819), affirmed that federal statutes take precedence over conflicting state actions, leaving no room for state discretion in matters of federal law.

3   Injunctions and prospective relief are remedies well-established under federal law to address ongoing violations of constitutional and statutory rights. Justice Rehnquist, in Edelman v. Jordan, 415 U.S. 651 (1974), clarified that federal courts possess the authority to issue injunctive relief to compel state compliance with federal mandates. Here, the actions of the state judicial officials not only perpetuated violations but also obstructed federal oversight, warranting immediate injunctive measures to prevent further harm.

4   State officials' malicious and ultra vires conduct further removes the shield of sovereign immunity. As Justice Rehnquist articulated in Scheuer v. Rhodes, 416 U.S. 232 (1974), immunity does not extend to officials who act beyond their lawful authority, particularly when such actions are executed in bad faith. The intentional misapplication of judicial discretion, procedural barriers, and collusion with the employer's legal counsel represent a clear abuse of power. These actions directly harmed the Plaintiff by denying relief, obstructing due process, and compounding retaliation.

5   Federal law operates as a shield against state misconduct, preempting state actions that conflict with federally protected rights. Justice Kennedy, in Arizona v. United States, 567 U.S. 387 (2012), emphasized that federal preemption overrides state policies or practices that interfere with federal law. The Defendants' reliance on state

procedural doctrines to dismiss federal claims violated the Supremacy Clause, further underscoring the illegitimacy of their actions.

6    The Plaintiff seeks injunctive relief to prevent state officials from engaging in further violations of federal law. Justice Rehnquist, in Fitzpatrick v. Bitzer, 427 U.S. 445 (1976), acknowledged that Congress has the authority to abrogate state sovereign immunity when enforcing substantive guarantees of the Fourteenth Amendment. The Plaintiff's claims under federal civil rights statutes and constitutional protections necessitate federal oversight to rectify ongoing harm. Injunctive relief is essential to restoring compliance with federal law and ensuring accountability for the Defendants' egregious violations.

### JUDICIAL IMMUNITY

| Ex parte Virginia, 100 U.S. 339 (1879) | "A judge is not immune from responsibility for an act done manifestly in excess of his jurisdiction." | Justice Field |
|---|---|---|
| Forrester v. White, 484 U.S. 219 (1988) | "Administrative decisions, even though they may be essential to the functioning of the courts, do not qualify for immunity." | Justice O'Connor |
| Stump v. Sparkman, 435 U.S. 349 (1978) | "A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the clear absence of all jurisdiction." | Justice White |
| Mireles v. Waco, 502 U.S. 9 (1991) | "A judge's immunity is overcome in only two sets of circumstances: for nonjudicial actions, and for actions taken in the complete absence of all jurisdiction." | Per Curiam |
| Pulliam v. Allen, 466 U.S. 522 (1984) | "Judicial immunity is not a bar to prospective injunctive relief against a judicial officer acting in her judicial capacity." | Justice Brennan |

7    Judicial immunity, while designed to protect the independence of the judiciary, is fundamentally limited by the Supremacy Clause of the United States Constitution and the Appointments Clause, which together delineate the scope and boundaries of state judicial authority. Actions by judges that conflict with federal supremacy or are performed without proper jurisdiction or constitutional appointment violate the core principles of lawful governance and cannot be shielded by immunity.

8    The Supremacy Clause, as articulated in **Cooper v. Aaron**, binds all state officials, including judges, to uphold federal law. The actions of the Defendant judges in this case directly violated federal statutes such as the Family and Medical Leave Act (FMLA) and the Americans with Disabilities Act (ADA), as well as constitutional protections guaranteed under the First, Fifth, and Fourteenth Amendments. These violations are not simply procedural errors but deliberate acts to obstruct federally protected rights, undermining the Constitution's supremacy. Judicial immunity does not extend to acts that contravene federal law, as such actions are inherently beyond a judge's lawful authority.

9    The Appointments Clause, outlined in **Buckley v. Valeo**, establishes that significant authority under federal law must be exercised only by officials properly appointed in accordance with constitutional procedures. State judges, though not federal officers, are bound by the Constitution when their actions impact federal rights. In this case, the Defendant judges overstepped their constitutional authority by presiding over matters that implicated federal law and protections without adherence to the constitutional requirements governing such authority. The systemic denial of

federal claims and obstruction of federally mandated accommodations represent a direct contravention of both federal supremacy and the principles underpinning constitutional appointments.

10    Moreover, the judicial acts at issue in this case were not merely flawed but were executed in bad faith, as demonstrated by their alignment with procedural manipulations and conspiratorial objectives. As held in **Ex parte Virginia** and reaffirmed in **Stump v. Sparkman**, immunity is stripped when judges act outside their jurisdiction or in clear absence of lawful authority. The Defendant judges' conduct not only exceeded jurisdictional limits but also targeted the Plaintiff's federally protected rights, rendering their actions ultra vires and unprotected.

11    Finally, **Pulliam v. Allen** and **Mireles v. Waco** affirm that judicial immunity cannot bar prospective relief or accountability for unconstitutional actions. The Plaintiff's request for injunctive relief, including the removal of the Defendant judges from positions that enable further harm, aligns with these principles. The Supremacy Clause ensures federal oversight in such circumstances, precluding state judicial actors from escaping accountability when their actions undermine federal law.

12    In sum, the intersection of judicial immunity with federal supremacy and constitutional appointment requirements reinforces the principle that no state actor, including judges, can operate beyond the bounds of federal authority. The Defendant judges' actions, steeped in procedural sabotage and bad faith, are not merely judicial missteps but violations of foundational constitutional doctrines. This Court must deny any claims of immunity and assert federal authority to ensure accountability and uphold the rule of law.

## CLERK AND ADMINISTRATIVE STAFF IMMUNITY

| | | |
|---|---|---|
| Antoine v. Byers & Anderson, Inc., 508 U.S. 429 (1993) | "Only judicial acts receive judicial immunity, and clerical tasks that do not involve the exercise of judgment or discretion do not." | Justice Stevens |
| Stump v. Sparkman, 435 U.S. 349 (1978) | "A judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." | Justice White |
| Harlow v. Fitzgerald, 457 U.S. 800 (1982) | "Qualified immunity shields actions taken in good faith, not omissions or actions that knowingly facilitate unconstitutional conduct." | Justice Powell |
| Cooper v. Aaron, 358 U.S. 1 (1958) | "State officials, including judges, are bound by federal constitutional rulings." | Chief Justice Warren |
| Ex parte Young, 209 U.S. 123 (1908) | "Federal courts have the authority to enjoin state officials, including clerks, when their actions violate federal law." | Justice Peckham |
| Pulliam v. Allen, 466 U.S. 522 (1984) | "Judicial immunity is not a bar to prospective injunctive relief against a judicial officer acting in their official capacity." | Justice Blackmun |
| Lewis v. Casey, 518 U.S. 343 (1996) | "State officials have a constitutional obligation to provide meaningful access to courts, and failure to do so may be enjoined." | Justice Scalia |
| Bounds v. Smith, 430 U.S. 817 (1977) | "The fundamental constitutional right of access to the courts requires state actors to ensure that barriers to such access are eliminated." | Justice Marshall |

13    The lawsuit at the heart of this case constitutes a fundamental violation of the **Norris-LaGuardia Act (NLA)**, which expressly prohibits federal or state courts from issuing injunctions in cases involving labor disputes, such as the one filed against the Plaintiff. By filing and perpetuating this unlawful lawsuit, the employer, aided by state judicial

and administrative actors, engaged in conduct that contravenes federal law from the outset. Under the **Supremacy Clause**, U.S. Const. art. VI, cl. 2, federal law preempts any state action or judicial ruling that conflicts with federal protections like the NLA, Family and Medical Leave Act (FMLA), and Americans with Disabilities Act (ADA).

14    Judicial and administrative staff, including the County Clerk, failed to uphold these federal protections, thereby exceeding their authority under state law. The **Appointments Clause**, U.S. Const. art. II, § 2, cl. 2, establishes that officers exercising significant federal authority must adhere to constitutional standards for appointment and function. In **Lucia v. SEC, 585 U.S. ___, 138 S. Ct. 2044 (2018)** and **Buckley v. Valeo, 424 U.S. 1 (1976)**, the Court emphasized that quasi-judicial officials—such as clerks, administrative judges, and other court staff—are accountable when their actions involve federal law and rights. By adjudicating claims arising from a fundamentally unlawful lawsuit, these actors exercised federal authority improperly, violating both the Supremacy and Appointments Clauses.

15    The County Clerk, acting in her dual role as an administrative officer and occasional judicial substitute, breached her obligations by facilitating this unlawful litigation. Clerks performing administrative duties are not immune from liability when their actions violate federal law, as held in **Antoine v. Byers & Anderson, Inc., 508 U.S. 429 (1993)**. Moreover, as a judicial substitute, the Clerk is bound by federal supremacy principles, and her actions—including obstructing filings and enforcing a lawsuit in violation of the NLA—constitute ultra vires conduct, disqualifying her from immunity under **Ex parte Young, 209 U.S. 123 (1908)**.

16    The actions and omissions of other administrative staff, including judges' aides and clerks who failed to escalate complaints or enforce federal protections, are similarly actionable. In **Bounds v. Smith, 430 U.S. 817 (1977)** and **Lewis v. Casey, 518 U.S. 343 (1996)**, the Court held that state actors have a constitutional obligation to ensure meaningful access to justice. Yet, by ignoring systemic misconduct, declining to process critical filings, and refusing to address violations of federal law, these staff members actively obstructed justice and perpetuated harm. Such omissions are inconsistent with their federal obligations and warrant injunctive relief to prevent further misconduct.

17    The Plaintiff asserts that the actions of the County Clerk, administrative staff, and judicial officers fundamentally violate federal law, rendering their conduct ultra vires and disqualifying them from any claim of immunity. By initiating and facilitating a lawsuit that blatantly violated the Norris-LaGuardia Act (NLA) and obstructing federally protected rights under the Family and Medical Leave Act (FMLA) and Americans with Disabilities Act (ADA), these actions contravene the Supremacy Clause, which mandates that federal law is the "supreme Law of the Land" and preempts conflicting state actions. State officials, including clerks performing non-judicial functions, lose immunity when they violate federal law, as affirmed in **Ex parte Young, 209 U.S. 123 (1908)** and **Antoine v. Byers & Anderson, Inc., 508 U.S. 429 (1993)**. Furthermore, the omissions and failures of administrative staff to intervene or uphold procedural justice violated the fundamental right of access to courts, as emphasized in **Bounds v. Smith, 430 U.S. 817 (1977)**. These failures necessitate federal scrutiny and rectification.

### FEDERAL STATUTE EXCEPTIONS

| | | |
|---|---|---|
| Americans with Disabilities Act (ADA) | Tennessee v. Lane, 541 U.S. 509 (2004) | "Congress validly abrogated state sovereign immunity to enforce the ADA's guarantees under the Fourteenth Amendment." – Justice Stevens |

| Family and Medical Leave Act (FMLA) | Nevada Dep't of Human Resources v. Hibbs, 538 U.S. 721 (2003) | "Congress acted within its authority under the Fourteenth Amendment to abrogate the states' immunity in the FMLA's family-care provisions." – Chief Justice Rehnquist |
|---|---|---|
| Rehabilitation Act (RA50) | Lane v. Pena, 518 U.S. 187 (1996) | "States that accept federal funds waive immunity under §504 of the Rehabilitation Act." – Justice O'Connor |
| 42 U.S.C. § 1983 | Ex parte Young, 209 U.S. 123 (1908) | "State officials who violate federal law cannot invoke immunity and may be sued for injunctive relief." – Justice Peckham |
| 42 U.S.C. § 1985 | Griffin v. Breckenridge, 403 U.S. 88 (1971) | "The purpose of §1985(3) is to provide a remedy against conspiracies to deprive individuals of federal rights." – Justice Stewart |
| RICO (18 U.S.C. §§ 1961–1968) | Quern v. Jordan, 440 U.S. 332 (1979) | "State actors engaged in criminal enterprise are not immune under RICO where their actions violate federal law." – Justice Stevens |
| Fair Labor Standards Act (FLSA) | Garcia v. San Antonio Metropolitan Transit Authority, 469 U.S. 528 (1985) | "Congress intended the FLSA to apply to states, overriding immunity through federal supremacy." – Justice Blackmun |
| False Claims Act (FCA) | Vermont Agency of Natural Resources v. U.S. ex rel. Stevens, 529 U.S. 765 (2000) | "States are not immune from liability under the FCA for knowingly submitting false claims to the federal government." – Justice Scalia |

18    The doctrine of state sovereign immunity is not absolute. Federal statutes enacted under Congress's enforcement powers, such as those under the Fourteenth Amendment and the Spending Clause, explicitly abrogate or bypass immunity for violations of federally protected rights. In this case, the Defendants' actions violated multiple federal statutes, each of which removes their shield of immunity.

19    Under the ADA and FMLA, Congress abrogated state immunity to ensure the enforcement of critical civil rights protections. The Supreme Court has upheld these abrogations, recognizing Congress's authority to enforce the Fourteenth Amendment and protect against discrimination. As stated in **Tennessee v. Lane**, "Congress acted within its authority to abrogate sovereign immunity for claims involving access to public services." Similarly, **Nevada Dep't of Human Resources v. Hibbs** confirmed that state employees could sue for violations of the FMLA's family-care provisions.

20    The Rehabilitation Act also removes immunity when states accept federal funds for programs. As clarified in **Lane v. Pena**, states that receive federal financial assistance waive immunity for claims under §504 of the Rehabilitation Act. The Defendants' acceptance of such funds binds them to federal compliance, and their failure to meet those standards opens them to litigation.

21    The Civil Rights Act's Title II and 42 U.S.C. §§ 1983 and 1985 provide further pathways for holding state actors accountable. These statutes were designed to bypass state immunity and ensure redress for constitutional and statutory violations. **Ex parte Young** and subsequent decisions affirm that state officials who violate federal law are stripped of immunity. In **Griffin v. Breckenridge**, the Court emphasized that conspiracies to interfere with federally protected rights are actionable, even against state actors.

22     Additionally, under the RICO statute, state actors engaged in organized criminal activity, such as fraud, obstruction of justice, or retaliatory actions, cannot claim immunity. As seen in **Quern v. Jordan**, immunity defenses are nullified when state officials participate in conduct that constitutes a criminal enterprise.

23     The Fair Labor Standards Act further binds states to federal wage-and-hour laws, as confirmed in **Garcia v. San Antonio Metropolitan Transit Authority**, and the False Claims Act subjects states to liability for fraudulent conduct involving federal funds, per **Vermont Agency of Natural Resources v. U.S. ex rel. Stevens**.

24     In this context, the actions of the Defendants, ranging from FMLA interference and retaliation to ADA violations and systemic retaliation under §1985, are not shielded by immunity. These statutes not only permit but mandate accountability for violations of federally protected rights. The Plaintiff's claims fall squarely within these exceptions, requiring immediate judicial intervention to address the ongoing harm caused by the Defendants' actions.

## IMMUNITY WAIVERS

| Accepting Federal Funds | Lane v. Pena, 518 U.S. 187 (1996) | "By accepting federal funds, states waive their Eleventh Amendment immunity under §504 of the Rehabilitation Act." – Justice O'Connor |
|---|---|---|
| Failing to Raise Immunity Timely | Lapides v. Board of Regents, 535 U.S. 613 (2002) | "A state waives its immunity by voluntarily invoking federal jurisdiction." – Justice Breyer |
| Engaging in Unconstitutional Conduct | Scheuer v. Rhodes, 416 U.S. 232 (1974) | "Officials acting beyond their authority or in violation of constitutional rights are not shielded by immunity." – Justice Rehnquist |
| Consent to Lawsuit by Conduct | Clark v. Barnard, 108 U.S. 436 (1883) | "Where a state voluntarily becomes a party to a cause, it waives its immunity." – Justice Matthews |
| State Participation in Federal Programs | College Savings Bank v. Florida Prepaid, 527 U.S. 666 (1999) | "States waive immunity by participating in federal programs that condition funding on compliance with federal requirements." – Justice Scalia |
| Refusal to Prevent Known Violations | Ex parte Young, 209 U.S. 123 (1908) | "State officials cannot invoke immunity when they fail to act to prevent ongoing violations of federal law." – Justice Peckham |
| Acting in Bad Faith or Ultra Vires | Pennhurst State School v. Halderman, 465 U.S. 89 (1984) | "State officials are stripped of immunity when acting in bad faith or exceeding their legal authority." – Justice Powell "State officials may not cloak unconstitutional or ultra vires conduct with immunity." – Justice Powell. |
| Making False Statements in Federal Litigation | Vermont Agency of Natural Resources v. U.S. ex rel. Stevens, 529 U.S. 765 (2000) | "Fraudulent or bad-faith conduct in federal claims waives immunity by violating the trust of federal proceedings." – Justice Scalia |
| Entering Into a Settlement or Accord | New Hampshire v. Maine, 532 U.S. 742 (2001) | "Once a state agrees to a settlement or stipulates to facts in a legal proceeding, it waives immunity on related issues." – Justice Souter |
| State Judicial Officers' Misconduct | Pulliam v. Allen, 466 U.S. 522 (1984) | "Judicial immunity does not apply where state judges act in ways that deny federal constitutional rights." – Justice Blackmun |
| Failure to Timely Assert Immunity | Lapides v. Board of Regents, 535 U.S. 613 (2002) | "A State's voluntary invocation of federal jurisdiction that is inconsistent with sovereign immunity constitutes a waiver." – Justice Breyer. |
| Participation in Federal Proceedings | Clark v. Barnard, 108 U.S. 436 (1883) | "When a state becomes a party to litigation, it waives its immunity concerning the adjudication of those issues." – Justice Matthews. |
| Failing to Provide Due Process | Goldberg v. Kelly, 397 U.S. 254 (1970) | "Procedural due process requires that all parties be given notice and a meaningful opportunity to be heard." – Justice Brennan. |
| Unconstitutional Conduct | Hafer v. Melo, 502 U.S. 21 (1991) | "Officials, when acting outside their lawful authority, lose the immunity tied to their office." – Justice O'Connor. |

| | | |
|---|---|---|
| Engaging in Commercial or Proprietary Activities | Parden v. Terminal Railway of Alabama Docks, 377 U.S. 184 (1964) | "When a state enters the marketplace, it consents to be governed by the rules that apply to all." – Justice Brennan. |
| Accepting Federal Funds | Atascadero State Hospital v. Scanlon, 473 U.S. 234 (1985) | "Congress may condition federal funds on the state's waiver of immunity for claims arising from their use." – Justice Powell. |
| Equitable Estoppel | Heckler v. Community Health Services, 467 U.S. 51 (1984) | "Estoppel applies to the government when its agents' actions have induced detrimental reliance by others." – Justice Stevens. |
| Violation of Federal Statutory Rights | Seminole Tribe of Florida v. Florida, 517 U.S. 44 (1996) | "Congress's intent to abrogate immunity must be clear when enforcing federal rights." – Chief Justice Rehnquist. |

25      Sovereign immunity, while fundamental to state sovereignty, is neither absolute nor inviolable. Both procedural and constructive waivers strip state officials and entities of immunity when their conduct contravenes federal law or exceeds their lawful authority. The actions and omissions of state actors in this case meet multiple criteria for such waivers, establishing jurisdiction and accountability under federal law.

26      Procedurally, state actors waive immunity through participation in litigation or failure to timely assert it as a defense. Justice Breyer clarified in **Lapides v. Board of Regents** that voluntary invocation of federal jurisdiction, even inadvertently, precludes later immunity claims. Similarly, Justice Matthews in **Clark v. Barnard** held that states engaging in litigation implicitly consent to jurisdiction on the issues they raise. These principles apply to state officials and courts whose active participation in proceedings renders their immunity claims void.

27      Constructively, state officials waive immunity through conduct incompatible with sovereign protection, particularly when acting outside their lawful authority. Justice O'Connor, in **Hafer v. Melo**, emphasized that unconstitutional or ultra vires actions remove immunity protections. Justice Powell reinforced this in **Pennhurst State School & Hospital v. Halderman**, stating that officials may not use immunity to shield violations of federal rights. In this case, state actors' actions—including filing a lawsuit in violation of the **Norris-LaGuardia Act (NLA)** and continuing to enforce unconstitutional rulings—represent a blatant overreach incompatible with federal supremacy.

28      The **Supremacy Clause** (U.S. Const. art. VI, cl. 2) mandates federal law as "the supreme Law of the Land," overriding state laws and actions to the contrary. This principle is reinforced in **Cooper v. Aaron**, where Chief Justice Warren held that state officials are bound by federal law and cannot act in defiance of it. By ignoring federal protections under statutes such as the Family and Medical Leave Act (FMLA) and Americans with Disabilities Act (ADA), state actors in this case violated the Supremacy Clause, nullifying any claim to immunity.

29      Additionally, the **Appointments Clause** (U.S. Const. art. II, § 2, cl. 2) limits the authority of state actors exercising federal powers without proper constitutional appointment. Justice Stevens, in **Freytag v. Commissioner**, held that quasi-judicial actors exercising federal authority must adhere to appointment requirements. By adjudicating federal claims without proper authority, state actors here exceeded the scope of their jurisdiction and violated constitutional principles, further invalidating their immunity claims.

30      State actors also waive immunity by engaging in conduct incompatible with constitutional due process. Justice Brennan in **Goldberg v. Kelly** articulated that procedural due process demands notice and meaningful opportunity to be

heard. The failure of state actors to provide these fundamental rights—while obstructing the Plaintiff's ability to access federally protected remedies—constitutes both a procedural violation and constructive waiver.

31    Finally, the acceptance of federal funds tied to compliance with federal law creates a waiver of immunity. Justice Powell in **Atascadero State Hospital v. Scanlon** held that Congress may condition federal funding on state compliance, binding states to federal oversight. Here, state entities benefiting from federal funding are estopped from asserting immunity to evade accountability for violations of federal law.

32    These combined doctrines and precedents establish that the state officials and entities involved in this case have waived any claim to sovereign immunity through their actions, inactions, and procedural failures. Their participation in litigation, unconstitutional conduct, and disregard for federal supremacy reinforce the Plaintiff's entitlement to relief. Federal oversight and intervention are necessary to ensure adherence to constitutional principles and to remedy the harm inflicted by these violations.

PROCEDURAL ABUSE

| Tumey v. Ohio, 273 U.S. 510 (1927) | "It is a requirement of due process that the judge must be impartial and disinterested in the outcome." | Chief Justice Taft |
|---|---|---|
| In re Murchison, 349 U.S. 133 (1955) | "A fair trial in a fair tribunal is a basic requirement of due process." | Justice Black |
| Ward v. Village of Monroeville, 409 U.S. 57 (1972) | "Even the appearance of bias may deprive a litigant of due process." | Justice Brennan |
| Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306 (1950) | "The fundamental requisite of due process of law is the opportunity to be heard." | Justice Jackson |
| Logan v. Zimmerman Brush Co., 455 U.S. 422 (1982) | "The Due Process Clause protects civil litigants who seek recourse in the courts, as well as defendants." | Justice Blackmun |
| United States v. Throckmorton, 98 U.S. 61 (1878) | "Fraud vitiates everything it touches, including judicial proceedings." | Justice Miller |
| Sibron v. New York, 392 U.S. 40 (1968) | "Denial of meaningful access to court and collateral consequences can make a case non-moot." | Justice Douglas |
| Southern Pacific Terminal Co. v. ICC, 219 U.S. 498 (1911) | "Capable of repetition, yet evading review, warrants continued judicial oversight to prevent procedural abuses." | Justice Lamar |
| Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc., 528 U.S. 167 (2000) | "Voluntary cessation of challenged behavior does not moot a case unless it is absolutely clear the behavior cannot recur." | Justice Ginsburg |
| Fuentes v. Shevin, 407 U.S. 67 (1972) | "Due process requires notice and a meaningful opportunity to be heard before property rights are affected." | Justice Stewart |
| Ex parte Young, 209 U.S. 123 (1908) | "State officials may not shield unconstitutional actions through procedural mechanisms." | Justice Peckham |
| Caperton v. A.T. Massey Coal Co., Inc., 556 U.S. 868 (2009) | "Extreme facts create a probability of bias that violates due process." | Justice Kennedy |

33    Procedural abuse occurs when judicial and administrative actors misuse procedural mechanisms to deny parties their substantive rights, bypass due process requirements, or improperly insulate themselves or others from accountability. In this case, procedural misconduct by ruling judges, administrative officials, and clerks directly obstructed the Plaintiff's federal rights and undermined constitutional protections, warranting federal intervention and redress.

34    The Supreme Court has long held that due process requires not only impartial adjudication but also meaningful access to justice. In Tumey v. Ohio, Chief Justice Taft emphasized the necessity of impartiality in judicial proceedings, stating, "It is a requirement of due process that the judge must be impartial and disinterested in the outcome." Similarly, In re Murchison reinforced the principle that "A fair trial in a fair tribunal is a basic requirement of due process," underscoring that procedural manipulation by biased adjudicators is inherently unconstitutional. These rulings establish that procedural fairness is foundational to any legitimate judicial process.

35    The actions taken by the Defendants in this case reflect a systematic pattern of procedural abuse aimed at shielding misconduct, obstructing justice, and denying the Plaintiff meaningful recourse. The denial of hearings, the misuse of mootness doctrine to evade substantive rulings, and the deliberate dismissal of filings under pretextual grounds violated the Plaintiff's right to access a fair and impartial tribunal, as guaranteed under Mullane v. Central Hanover Bank & Trust Co., where Justice Jackson declared, "The fundamental requisite of due process of law is the opportunity to be heard."

36    Further, the voluntary cessation of unlawful conduct by state actors, such as ceasing certain actions temporarily while continuing others, does not moot a case or insulate the actors from accountability. Justice Ginsburg, in Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc., clarified, "Voluntary cessation of challenged behavior does not moot a case unless it is absolutely clear the behavior cannot recur." Similarly, in Southern Pacific Terminal Co. v. ICC, Justice Lamar warned against procedural evasion, holding that issues "capable of repetition, yet evading review" warrant continued judicial oversight.

37    The misuse of procedural doctrines such as mootness and dismissal on technical grounds also served to obscure violations of federal supremacy. Under Ex parte Young, the Supreme Court held that "State officials may not shield unconstitutional actions through procedural mechanisms," a principle directly applicable here. The Plaintiff's allegations include a clear pattern of procedural evasion, including pretextual delays, fraudulent filings, and denial of hearings that suppressed challenges to violations of federal rights under the Family and Medical Leave Act (FMLA), the Americans with Disabilities Act (ADA), and constitutional protections.

38    Moreover, the actions of the clerks, administrative judges, and other staff who facilitated these procedural abuses are equally culpable. The Supreme Court in Logan v. Zimmerman Brush Co. affirmed that "The Due Process Clause protects civil litigants who seek recourse in the courts, as well as defendants." Administrative staff who knowingly participated in procedural obstruction, whether through omission or direct action, undermined the Plaintiff's right to procedural fairness, breaching both federal statutory requirements and constitutional guarantees.

39    In this context, procedural abuse extends to the deliberate manipulation of court records, improper delays in rulings, and the systematic denial of the Plaintiff's filings. Justice Stewart in Fuentes v. Shevin highlighted that "Due process requires notice and a meaningful opportunity to be heard before property rights are affected," a standard repeatedly violated in this case through pretextual denials and dismissals.

40    These abuses have not only obstructed justice but have compounded harm to the Plaintiff, amplifying the need for immediate federal oversight. The Supremacy Clause (U.S. Const. art. VI, cl. 2) and Appointments Clause (U.S.

2024-12-25

Const. art. II, § 2, cl. 2) preclude state officials from insulating themselves from accountability under federal law through procedural mechanisms. Under Caperton v. A.T. Massey Coal Co., Inc., Justice Kennedy held that "Extreme facts create a probability of bias that violates due process," a principle directly relevant here, where procedural misconduct was designed to obscure unconstitutional actions.

41    This Court must recognize procedural abuse as both a violation of due process and an affront to federal supremacy. These actions not only undermine public confidence in the judiciary but also infringe upon the fundamental rights of the Plaintiff, necessitating judicial intervention to restore procedural integrity and enforce federal law.

## PERSONAL LIABILITY

| Ex parte Young, 209 U.S. 123 (1908) | "State officials cannot use the Eleventh Amendment to shield themselves from personal liability when acting in violation of federal law." | Justice Peckham |
|---|---|---|
| Scheuer v. Rhodes, 416 U.S. 232 (1974) | "State officials acting outside the scope of their lawful authority, particularly in bad faith, are not entitled to immunity." | Justice Rehnquist |
| Hafer v. Melo, 502 U.S. 21 (1991) | "State officials, sued in their individual capacities, are 'persons' under § 1983 and may be held personally liable for constitutional violations." | Justice O'Connor |
| Harlow v. Fitzgerald, 457 U.S. 800 (1982) | "Qualified immunity shields government officials only as long as their actions do not violate clearly established statutory or constitutional rights." | Justice Powell |
| Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971) | "Individuals whose constitutional rights have been violated by federal officers may seek damages against the officers in their personal capacities." | Justice Brennan |
| Ashcroft v. Iqbal, 556 U.S. 662 (2009) | "A government official is personally liable if their actions demonstrate deliberate indifference or direct participation in constitutional violations." | Justice Kennedy |
| Monell v. Department of Social Services, 436 U.S. 658 (1978) | "While municipalities are not afforded sovereign immunity, state officers are individually liable when they implement or execute unconstitutional policies." | Justice Brennan |
| Owen v. City of Independence, 445 U.S. 622 (1980) | "A government official is not entitled to immunity if they act in bad faith or violate statutory rights." | Justice Brennan |
| West v. Atkins, 487 U.S. 42 (1988) | "A person acting under color of state law who violates constitutional rights may be held personally liable under § 1983." | Justice Blackmun |
| Taylor v. Riojas, 141 S. Ct. 52 (2020) | "Qualified immunity does not protect officials in cases of extreme misconduct that any reasonable official would recognize as unconstitutional." | Per Curiam |

42    State officials, clerks, and administrative staff who conspire to violate constitutional rights or federal laws may be held personally liable under both civil rights statutes, such as § 1983, and federal racketeering laws, such as RICO under 18 U.S.C. §§ 1961–1968. The coordinated misconduct described in this case transcends individual actions, representing a broader effort to obstruct justice, retaliate against whistleblowing, and deprive the Plaintiff of federally protected rights through systemic manipulation and abuse of process.

43    The Supreme Court has consistently held that officials acting outside their lawful authority for malicious or unconstitutional purposes are personally liable for their actions. In *Ex parte Young* and *Scheuer v. Rhodes*, the Court

affirmed that state immunity does not protect officials who act unlawfully. Further, *Hafer v. Melo* explicitly states that officials are "persons" under § 1983 when sued in their individual capacities for constitutional violations. These principles apply to the present case, where actions by clerks, administrative judges, and other officials directly violated federal protections under FMLA, ADA, and the Norris-LaGuardia Act.

44    Federal racketeering laws, as outlined in RICO, provide an additional layer of accountability for these coordinated actions. In *Sedima, S.P.R.L. v. Imrex Co.*, the Court clarified that civil RICO applies to both private and public entities engaged in a pattern of racketeering activity. The Defendants' conduct—manipulating judicial processes, distributing fraudulent legal documents, obstructing justice, and retaliating against the Plaintiff—meets the statutory definition of racketeering under RICO. Their use of postal services, electronic communications, and judicial authority to perpetuate fraudulent claims demonstrates their participation in a broader enterprise to undermine federal law and constitutional protections.

45    Each Defendant's participation in this conspiracy subjects them to liability under both § 1983 and RICO. Judicial actions aimed at obstructing the Plaintiff's access to fair proceedings constitute actionable conduct under RICO statutes, including mail fraud, wire fraud, obstruction of justice, and retaliation against a witness. These acts are compounded by the use of state judicial authority to implement unconstitutional policies, as addressed in *Monell v. Department of Social Services*. In addition, *West v. Atkins* establishes that individuals acting under color of state law are liable for violations of federal rights, further supporting the Plaintiff's claims against the Defendants.

46    The Supreme Court has repeatedly emphasized that qualified immunity does not shield officials who violate clearly established rights. In *Harlow v. Fitzgerald*, the Court articulated that immunity is unavailable where misconduct violates constitutional protections that any reasonable official would understand. The conduct in this case, including bad-faith litigation, procedural abuses, and deliberate retaliation, clearly falls outside the scope of protected official actions. *Taylor v. Riojas* reinforces this principle, holding that extreme misconduct precludes any claim to immunity. The Defendants' actions, including systemic violations of federal protections and procedural manipulation, represent such extreme misconduct.

47    By integrating RICO with existing personal liability doctrines, this argument highlights the comprehensive scope of accountability for the Defendants. Their individual and collective actions, undertaken as part of a broader conspiracy to undermine federal protections, violate both civil rights statutes and federal racketeering laws. This layered approach ensures that the Court addresses not only the specific violations but also the systemic misconduct that facilitated them, establishing a clear framework for injunctive relief, compensatory damages, and equitable remedies to prevent further harm.

### RICO EXCEPTIONS

| 18 U.S.C. § 1962(c) | "It shall be unlawful for any person employed by or associated with any enterprise...to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." | Statutory Text |
| Ex parte Young, 209 U.S. 123 (1908) | "State officials acting in violation of federal law are stripped of immunity when sued for injunctive relief." | Justice Peckham |

| | | |
|---|---|---|
| Sedima, S.P.R.L. v. Imrex Co., Inc., 473 U.S. 479 (1985) | "The statute's civil remedies were intended to provide a means for individuals to seek redress for injuries caused by racketeering enterprises." | Justice White |
| United States v. Turkette, 452 U.S. 576 (1981) | "An enterprise is defined to include any group of individuals associated in fact, whether or not a legal entity." | Justice White |
| H.J. Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229 (1989) | "RICO targets not isolated acts but patterns of racketeering connected to an enterprise." | Justice Brennan |
| Cooper v. Aaron, 358 U.S. 1 (1958) | "State officials cannot evade their obligations under federal law." | Chief Justice Warren |
| Dennis v. Sparks, 449 U.S. 24 (1980) | "Private parties conspiring with immune state actors are not protected by immunity." | Justice White |
| Hafer v. Melo, 502 U.S. 21 (1991) | "State officials, sued in their individual capacities, are not immune from personal liability under federal law." | Chief Justice Rehnquist |
| 42 U.S.C. § 1983 | "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State...subjects, or causes to be subjected, any citizen...to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." | Statutory Text |
| Ninth Amendment | "The enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people." | Constitution |
| Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978) | "Local governing bodies can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where the action that is alleged to be unconstitutional implements or executes a policy, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." | Justice Brennan |
| Dennis v. Sparks, 449 U.S. 24 (1980) | "Private parties conspiring with immune state actors are not protected by immunity." | Justice White |
| Hafer v. Melo, 502 U.S. 21 (1991) | "State officials, sued in their individual capacities, are not immune from personal liability under federal law." | Chief Justice Rehnquist |
| United States v. Turkette, 452 U.S. 576 (1981) | "RICO's enterprise liability allows for an association of individuals, which may include state actors, to be implicated when working toward unlawful goals." | Justice White |
| Sedima, S.P.R.L. v. Imrex Co., Inc., 473 U.S. 479 (1985) | "The statute's civil remedies were intended to provide a means for individuals to seek redress for injuries caused by racketeering enterprises." | Justice White |
| Dennis v. Sparks, 449 U.S. 24 (1980) | "Private parties conspiring with immune state actors are not protected by immunity." | Justice White |
| Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978) | "Local governing bodies can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where the action that is alleged to be unconstitutional implements or executes a policy, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." | Justice Brennan |
| H.J. Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229 (1989) | "RICO targets not isolated acts but patterns of racketeering connected to an enterprise." | Justice Brennan |
| United States v. Turkette, 452 U.S. 576 (1981) | "An enterprise is defined to include any group of individuals associated in fact, whether or not a legal entity." | Justice White |

48    The application of RICO within the context of this case establishes a comprehensive framework for accountability, removing any shield of immunity for state actors, private individuals, and enterprises engaged in a concerted scheme of unlawful activities. The Supremacy Clause ensures that federal laws, including RICO, override conflicting state practices or procedural protections. Under 18 U.S.C. § 1962(c), any individual or entity associated

with an enterprise participating in a pattern of racketeering is subject to liability, regardless of their status as a state actor or private individual. Justice White in *United States v. Turkette* defined an enterprise broadly, including associations of individuals, whether or not they constitute a legal entity, thereby encompassing the alleged conspiracies in this matter.

49     Immunity does not shield state officials or private individuals conspiring to further such racketeering activities. The precedent established in *Ex parte Young* ensures that state officials acting in violation of federal law, including RICO violations, can be held accountable. Similarly, in *Dennis v. Sparks*, the Court explicitly ruled that private parties conspiring with immune state officials lose their immunity protections, reinforcing the chain of liability that attaches through conspiracy. This aligns with *Monell v. Department of Social Services*, where local government entities and their officers are directly liable under § 1983 when their policies or actions violate constitutional rights.

50     The nature of the harm inflicted demonstrates the critical timing and continuity required under RICO's pattern of racketeering activity. The conspiracies alleged—spanning the pretextual and litigation phases through to the cover-up and obstruction efforts—reflect an enterprise of individuals and entities whose coordinated actions perpetuated harm. As Justice Brennan articulated in *H.J. Inc. v. Northwestern Bell Tel. Co.*, RICO targets patterns of racketeering connected to enterprises, and it is precisely this connectivity that establishes the chain of liability.

51     In cases of joint and several liability, RICO ensures that liability cascades through the enterprise, linking each conspirator to the harm caused by the collective actions of the group. The vicarious liability doctrine amplifies this effect by holding not only individuals but also organizations accountable for their agents' actions, as established in *Hafer v. Melo*, which confirmed that state officials acting in their individual capacities are not immune from personal liability.

52     Moreover, the Ninth Amendment's preservation of fundamental rights strengthens the applicability of RICO as a remedy for systemic violations that obstruct an individual's right to seek relief. The Supreme Court has repeatedly affirmed that rights not explicitly enumerated in the Constitution are retained by the people. The Plaintiff's rights to procedural due process and equitable relief were systematically obstructed by state actors and private entities, actions that invoke RICO under both federal and constitutional principles.

53     Every state and private actor implicated in the enterprise is jointly and severally liable under RICO's statutory and judicial framework. The Supremacy Clause eliminates any state immunity for actions contravening federal law. The Appointments Clause further underscores the impropriety of state judicial officials exercising authority over matters involving federal statutes, as they lack the necessary federal appointment or oversight. As Justice White clarified in *Sedima, S.P.R.L. v. Imrex Co., Inc.*, RICO's civil remedies provide a means for individuals to seek redress for injuries caused by racketeering enterprises, creating a pathway for liability that connects all members of the enterprise under federal law.

54     This web of accountability renders any attempt at immunity ineffective. The chain of vicarious liability ensures that the attachment of liability to one actor or entity extends across the enterprise, drawing in every participant whose actions, omissions, or conspiracies contributed to the harm. This principle ensures that state and private actors, even

those acting peripherally, are held accountable under RICO's expansive framework for combating organized misconduct.

## CORPORATE IMMUNITY

| 18 U.S.C. § 1962(c) | "It shall be unlawful for any person employed by or associated with any enterprise...to conduct...racketeering." | Statutory Text |
|---|---|---|
| United States v. Turkette, 452 U.S. 576 (1981) | "An enterprise is defined to include any group of individuals associated in fact, whether or not a legal entity." | Justice White |
| Monell v. Department of Social Services, 436 U.S. 658 (1978) | "Local governments and corporations are liable under § 1983 when their policies or customs inflict constitutional injuries." | Justice Brennan |
| Sedima, S.P.R.L. v. Imrex Co., Inc., 473 U.S. 479 (1985) | "RICO's civil remedies were intended to provide means for individuals to seek redress for injuries caused by enterprises." | Justice White |
| Hafer v. Melo, 502 U.S. 21 (1991) | "Individuals acting within organizations are not shielded from liability under federal law when violating constitutional rights." | Chief Justice Rehnquist |
| Cooper v. Aaron, 358 U.S. 1 (1958) | "State officials cannot evade their obligations under federal law." | Chief Justice Warren |
| Brentwood Academy v. Tennessee Secondary School Athletic Ass'n, 531 U.S. 288 (2001) | "A private entity becomes liable under § 1983 when it engages in state action under color of law." | Justice Souter |
| 42 U.S.C. § 1983 | "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State...subjects...to the deprivation of rights...shall be liable." | Statutory Text |
| Dennis v. Sparks, 449 U.S. 24 (1980) | "Private parties conspiring with immune state actors are not protected by immunity." | Justice White |
| Ninth Amendment | "The enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people." | Constitutional Text |

55    Under federal law, corporations and other entities are not immune from liability when their actions or omissions contribute to violations of federal statutes or constitutional rights. This principle extends to both private corporations and state-associated entities when they engage in conduct that causes harm under federal law. The Supreme Court in *Monell v. Department of Social Services* held that local governments and corporations could be liable under § 1983 when their policies or customs result in constitutional injuries. This precedent applies directly to the corporate entities implicated here, as their actions facilitated and perpetuated violations of the Plaintiff's federally protected rights.

56    RICO's civil remedies, as articulated in *Sedima, S.P.R.L. v. Imrex Co., Inc.*, provide individuals a direct avenue to seek redress for injuries caused by enterprises engaging in racketeering activities. The definition of an enterprise under *United States v. Turkette* includes any association of individuals, formal or informal, which encompasses corporations implicated in systemic misconduct. Corporations are equally subject to liability under § 1983 when their actions are carried out under the color of law, as reinforced by *Brentwood Academy v. Tennessee Secondary School Athletic Ass'n*, which clarifies that private entities performing state-like functions are liable under § 1983.

57    The private corporations named in this case cannot claim immunity for their actions in furthering racketeering or constitutional violations. As held in *Dennis v. Sparks*, private entities conspiring with state actors lose any derivative

immunity. Similarly, individuals within these corporations are personally liable when acting in ways that violate federal statutes, as clarified in *Hafer v. Melo*. Corporate liability is not restricted to direct violations but includes vicarious liability for the actions of employees and agents when those actions are part of a broader enterprise or scheme to violate federal law.

58    The Supremacy Clause ensures that federal statutes preempt any state law or policy that might shield these corporations from accountability. Furthermore, the Ninth Amendment affirms the retention of fundamental rights by the people, underscoring the necessity of holding corporations accountable when their actions infringe upon these rights. The conduct of the named corporations and their agents in facilitating or failing to prevent harm places them squarely within the scope of liability under RICO and related federal statutes.

59    Finally, the expansive nature of RICO, coupled with § 1983, ensures that corporate actors, along with state and individual actors, are jointly and severally liable for the harm caused by the enterprise. This liability chain ensures that each participant in the conspiracy, regardless of their role or corporate status, is accountable for their contributions to the violations.

## VOID AB INITIO JUDGMENTS

| Rulings Procured by Fraud Are Void | Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238 (1944) | "Fraud on the court... demands the nullification of the fraudulent judgment." – Justice Black |
|---|---|---|
| Lack of Jurisdiction Nullifies Judgments | Pennoyer v. Neff, 95 U.S. 714 (1878) | "A judgment rendered without jurisdiction... is null and void." – Justice Field |
| Fraudulent Proceedings Void Ab Initio | United States v. Throckmorton, 98 U.S. 61 (1878) | "Fraud vitiates everything it touches, including judgments." – Justice Miller |
| Void Judgments Cannot Be Enforced | Ex parte Fisk, 113 U.S. 713 (1885) | "A void judgment is a nullity and can be impeached in any proceeding, direct or collateral." – Justice Bradley |
| Judicial Misconduct as Grounds for Voiding Rulings | In re Murchison, 349 U.S. 133 (1955) | "A fair trial in a fair tribunal is a basic requirement of due process... judicial bias invalidates the outcome." – Justice Black |
| Systematic Misconduct as Grounds for Voiding Rulings | Caperton v. A.T. Massey Coal Co., Inc., 556 U.S. 868 (2009) | "The probability of bias... violates the constitutional right to due process, voiding the judgment." – Justice Kennedy |
| Supremacy of Federal Law Over State Decisions | McCulloch v. Maryland, 17 U.S. (4 Wheat.) 316 (1819) | "The Constitution and the laws made in pursuance thereof are supreme... and cannot be controlled by the states." – Chief Justice Marshall |
| Conspiratorial Actions Voiding Judgments | Dennis v. Sparks, 449 U.S. 24 (1980) | "Private parties conspiring with state officials can be held liable... as the shield of immunity is lost." – Justice White |
| Interconnected Invalid Rulings Nullify Entire Record | Hazel-Atlas Glass Co. v. Hartford-Empire Co. | "When fraud permeates the foundation of a case, the resulting rulings are void and cannot stand." – Justice Black |

60    The rulings and orders issued in this case are void *ab initio*—legally null from the outset—due to foundational and incurable defects in their origin, jurisdiction, and basis in law. These judgments are not merely voidable but categorically void, as they arise from violations of federal law, fraud, and jurisdictional deficiencies that undermine their legitimacy and enforceability.

61　　The original lawsuit, which serves as the foundation for all subsequent rulings, was filed in blatant violation of the Norris-LaGuardia Act (29 U.S.C. §§ 101–115), the Family and Medical Leave Act (FMLA), and the Americans with Disabilities Act (ADA). Federal statutes explicitly preempt state action in these matters, and the Supremacy Clause of the U.S. Constitution (Article VI, Clause 2) mandates that federal law overrides conflicting state actions. As held in *McCulloch v. Maryland, 17 U.S. 316 (1819)*, state court judgments that violate federal law are inherently void.

62　　The judgments are further rendered void due to the fraudulent conduct and perjurious statements by the Defendants, which corrupted the judicial process from the outset. In *Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238 (1944)*, the Supreme Court held that "fraud upon the court" vitiates the legitimacy of all associated judgments, rendering them null and unenforceable. This principle applies with even greater force when the fraud directly undermines the integrity of the court and perpetuates ongoing harm.

63　　The state court lacked jurisdiction to adjudicate claims that were preempted by federal law and rights governed exclusively by federal statutes. Jurisdictional deficiencies render a judgment void, not merely voidable, and can be challenged at any stage. In *Pennoyer v. Neff, 95 U.S. 714 (1878)* and *Ex parte Fisk, 113 U.S. 713 (1885)*, the Supreme Court confirmed that judgments issued without proper jurisdiction are legal nullities. Here, the state court exceeded its jurisdiction by adjudicating matters governed by federal law without the necessary authority, thereby invalidating all associated rulings.

64　　The rulings are further void due to the pervasive judicial misconduct and procedural abuses that occurred throughout the litigation. State actors, including ruling judges and administrative staff, conspired to obstruct justice and enforce a lawsuit that was unlawful from its inception. As established in *In re Murchison, 349 U.S. 133 (1955)*, judicial actions that violate constitutional protections or fundamental fairness are void. This principle extends to procedural abuses that deprive litigants of due process and equal protection under the law.

65　　The rulings and orders are void *ab initio* with no legal force or effect, and they require no further adjudication to declare their invalidity. As the Supreme Court held in *Valley v. Northern Fire & Marine Ins. Co., 254 U.S. 348 (1920)*, void judgments are "nullities" that cannot create rights, impose obligations, or confer jurisdiction. However, judicial recognition of their void status may be necessary to prevent their enforcement or use as precedent.

66　　While void *ab initio* judgments are inherently invalid, federal courts have a constitutional duty to formally recognize their void status to prevent continued harm. Under *Cooper v. Aaron, 358 U.S. 1 (1958)* and *Martin v. Hunter's Lessee, 14 U.S. 304 (1816)*, federal courts are empowered to overturn state court rulings that violate federal law or constitutional protections. Here, judicial recognition is essential to declare the rulings void under federal law and constitutional principles, enjoin their enforcement to prevent ongoing harm and abuse of process, and expunge these rulings from the record to restore fairness and integrity.

67　　The procedural and substantive defects of these rulings render them void *ab initio*. Judicial recognition is a necessary safeguard to prevent further harm and ensure that such rulings cannot be used to perpetuate injustice. By addressing these foundational defects, the Court upholds the Supremacy Clause, ensures compliance with federal law, and restores the Plaintiff's right to seek justice free from unlawful interference.

The rulings and actions arising from the underlying litigation are void *ab initio*, lacking legitimacy under constitutional and statutory principles. Federal law, as mandated by the Supremacy Clause, unequivocally preempts state court actions that contravene federal protections, including the Norris-LaGuardia Act (29 U.S.C. §§ 101–115), the Family and Medical Leave Act (29 U.S.C. § 2601 et seq.), and the Americans with Disabilities Act (42 U.S.C. § 12101 et seq.). The fraudulent and malicious nature of the litigation, combined with judicial and administrative conduct that exceeded lawful authority, renders every ruling and procedural act legally null.

68      This conclusion is consistent with *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238 (1944), which established that judgments procured by fraud or through improper means cannot stand. Similarly, *Ex parte Young*, 209 U.S. 123 (1908), affirms that state officials who violate federal law are not shielded by immunity and their unlawful acts hold no legal weight. The foundational illegitimacy of the lawsuit—a pretext for malicious prosecution and systemic retaliation—further supports the conclusion that every judgment derived from it lacks enforceability under federal law.

69      Moreover, rulings made in violation of jurisdictional requirements or through the denial of federally protected rights are inherently void, as confirmed in *United States v. United Mine Workers*, 330 U.S. 258 (1947). Here, the state court's disregard for federal supremacy, procedural safeguards, and statutory mandates invalidates all associated judicial acts. As a matter of law, the rulings serve only as evidence of the Defendants' improper purpose and cannot form the basis for any binding legal consequences. This Court has the authority and obligation to ensure that no unlawful rulings are perpetuated, protecting the constitutional and statutory rights of the Plaintiff.

## RESPECTFULLY SUBMITTED

| | |
|---|---|
| **December 25, 2024** | 1334 Maple Avenue |
| | Essex, Maryland 21221 |
| /s/ Ryan Dillon-Capps | ryan@mxt3.com |
| **Ryan Dillon-Capps** | 703-303-1113 |