# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| RYAN DILLON-CAPPS *Plaintiff,* vs. OHANA GROWTH PARTNERS, LLC *et al* *Defendants* | Civil Action No. _____ Hon. _____ |

## COMPLAINT INTEGRATED APPENDIX: INTERLOCUTORY PARTIAL SUMMARY JUDGEMENT

Plaintiff incorporates all subsequent sections and attachments herein by reference as though fully stated in this main document.

### ADEQUATE NOTICE AND VOLUNTARY DISMISSAL REFERENCING EXHIBIT 110

1	The Defendants were provided clear notice and multiple opportunities to engage in the judicial process, respond to evidence, and contest the claims presented. Despite these efforts, as documented in Exhibit 110, the Defendants chose to file a voluntary dismissal. This act reflects an intent to evade accountability rather than any procedural unfairness.

2	Notice is a fundamental requirement of due process, and the steps taken by the Plaintiff meet this standard. The Supreme Court in **Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306 (1950)** held that notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." The Plaintiff satisfied this requirement by providing timely and detailed notifications through filings documented in Exhibit 110.

3       Federal Rule of Civil Procedure 6(b) was satisfied by allowing ample time for the Defendants to respond, including the notice filed on **November 1, 2024**, which explicitly outlined the Plaintiff's intent to seek an injunction and conduct an Ex Parte Hearing. Rule 7(b) was adhered to by submitting specific and clear motions, including the **Request for Prehearing Conference** to ensure procedural fairness. Rule 56's requirements for notice and opportunity to respond were upheld through extensive efforts by the Plaintiff, such as submitting **41 filings on October 22 and 23, 2024**, providing detailed and unambiguous information about the scheduled hearing and underlying claims.

4       Exhibit 110 documents these actions in detail. For example, the **November 1, 2024, filing** explicitly outlined the intent to seek an injunction, ensuring Defendants were informed and had time to prepare. Despite repeated requests for evidence, the Defendants failed to produce any material refutation of the Plaintiff's claims. To further promote procedural fairness, the Plaintiff's **Request for Prehearing Conference** emphasized the need for judicial efficiency while highlighting the Defendants' procedural delays and refusal to engage in good faith. Despite the Plaintiff's diligence, including the extensive filings on October 22 and 23, the Defendants filed a voluntary dismissal on **October 24, 2024**, effectively avoiding the hearing and their obligation to substantiate claims.

5       The sequence of events underscores a deliberate pattern of evasion by the Defendants. The dismissal occurred immediately after the Plaintiff's efforts to ensure a hearing and establish judicial notice of undisputed material facts. This tactic allowed the Defendants to sidestep addressing allegations of procedural misconduct, federal statute violations, and retaliatory actions. Such behavior aligns with judicial observations in **Zuckerman v. U.S. Postal Service,**

**977 F.2d 1327 (10th Cir. 1992)**, which highlights voluntary dismissal as a tactic to evade accountability.

6      In conclusion, the timeline of filings and procedural actions, as detailed in Exhibit 110, conclusively demonstrates that the Defendants were provided sufficient notice and opportunity to respond. Their voluntary dismissal following months of delays and procedural stalling further emphasizes their intent to evade accountability. Based on these findings, the Court should determine that the requirements for adequate notice have been met and grant interlocutory partial summary judgment for the Plaintiff.

### DEFENDANTS' FAILURE TO PROVIDE CONTRARY EVIDENCE

7      The Plaintiff's motion for interlocutory partial summary judgment is grounded in the Defendants' and state actors' collective failure to provide any contrary evidence, eliminating any genuine dispute of material fact. Federal Rule of Civil Procedure 56(a) mandates that the non-moving party must present specific facts to show a genuine issue for trial. When the Defendants and state actors fail to meet this burden, judgment as a matter of law is not only appropriate but necessary. The following argument outlines the legal foundation and applies it to their inaction in this case.

8      Federal Rule of Civil Procedure 56(c) requires a party opposing summary judgment to cite particular materials in the record to demonstrate the existence of a genuine dispute. Denials or speculative assertions are insufficient; specific, admissible evidence must be provided. Case law reinforces this standard. In **Celotex Corp. v. Catrett, 477 U.S. 317 (1986)**, the Supreme Court held that a non-moving party cannot rest on mere allegations or denials but must produce specific facts showing a genuine issue for trial. Similarly, **Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986)** emphasized that a factual dispute must be material and supported by

evidence that a reasonable jury could rely on. The purpose of these requirements is to ensure judicial efficiency by eliminating unsupported claims and preventing trials from becoming fishing expeditions or tools for delay.

9     In this case, the Defendants have failed to meet their burden of providing contrary evidence to challenge the Plaintiff's claims. The lawsuit, filed on **June 14, 2024**, was itself in violation of the Norris-LaGuardia Act (NLA). Since then, the Defendants have produced minimal and inadequate evidence. Specifically, they submitted four affidavits containing perjured statements, one affidavit devoid of material statements, an employment agreement with missing pages, two email threads that do not support their claims (and are, in fact, cited against them), two resumes, and an improperly conducted military record check. This constitutes the entirety of their purported evidence.

10    The state actors fare even worse. All their email communications are documented as exhibits against them, providing direct evidence of misconduct. Furthermore, the judiciary and clerks' rulings and magisterial decisions serve as evidence of their manipulation of the court record. Exhibits 100 through 110, multiple zip files, Exhibits 160 through 163, and two additional affidavits further substantiate the Plaintiff's claims. The state actors have not only failed to submit substantive evidence in their defense but have relied on procedural obfuscation and delays. Consequently, 100% of the evidence in this case supports the Plaintiff, and there is no shortage of credible material in favor of their claims.

11    The Plaintiff, by contrast, submitted detailed and verified evidence, including affidavits, motions, and judicial notices, as documented in Exhibit 110 and the aforementioned additional exhibits. This evidence establishes material facts supporting the Plaintiff's claims. Despite receiving clear notice through 41 filings on October 22 and 23, 2024, the Defendants and state

actors failed to respond with substantive evidence, opting instead to file a voluntary dismissal on October 24, 2024.

12  The Defendants' and state actors' failure to refute any critical facts, such as FMLA violations, retaliatory conduct, and procedural misconduct, further underscores the absence of material disputes. Their inaction leaves the Plaintiff's evidence unrebutted and legally sufficient for summary judgment. Additionally, the voluntary dismissal underscores their inability to produce contrary evidence. This act aligns with judicial observations that dismissals can be used to evade accountability when a party lacks evidence. Their procedural delays and failure to provide meaningful responses during discovery highlight their lack of a viable defense.

13  Judicial precedent supports granting summary judgment in the absence of contrary evidence. In **Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970)**, the Court held that the absence of contrary evidence from the non-moving party justified summary judgment. Likewise, in **Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986)**, the Court reaffirmed that speculative or implausible claims without evidentiary support are insufficient to defeat summary judgment.

14  The Defendants' and state actors' failure to provide contrary evidence eliminates any genuine dispute of material fact, leaving the Plaintiff entitled to judgment as a matter of law. The undisputed evidence, coupled with their inaction and procedural evasion, underscores the propriety of granting interlocutory partial summary judgment. For a detailed breakdown of each count and the specific relief sought, refer to Complaint Integrated Appendix: Counts and corresponding requested relief. By affirming the Plaintiff's motion, the Court will uphold judicial efficiency and the integrity of the legal process.

## READY FOR JUDGEMENT

### COUNT I TO VIII

1      Ohana Growth Partners, LLC, Brick, Norris, Drummond, Hartman emails, affidavits, filings, and letters exceed the burden of proof required in civil litigation for the counts of FMLA interference, FLA retaliation, failure to provide reasonable accommodations, unlawful termination, misclassification of exempt status, withholding of compensation, and cancelling of benefits in Counts I through VIII. Additionally, the evidence reflect that the equity owners are aware and involved in operations and decision making.  Furthermore, extensive attempts have been made before and during litigation to resolve without litigation, provide them with an opportunity to present supporting evidence, address pending injunctions, and they have received sufficient notices on ex parte adjudication of facts, injunctions, and judgement hearings.  Their voluntary dismissal is a clear statement to the court that they have no evidence or legal argument to which offer a defense, and only through abuse of process can they avoid judgement.  Count III: Failure to Provide Reasonable Accommodations and Count IV: ADA Title I And Maryland Anti-Retaliation are pending the EEOC.  Plaintiff is not requesting judgement on these counts.

### COUNT VIX TO X

2      **Withholding COBRA paperwork and Insurance Fraud** was not included in the previous litigation and Ohana Growth Partners, LLC and Richard Hartman still need an opportunity to respond to these allegations.  Plaintiff is not requesting judgement on these counts.

### COUNT XI

3      Defendants Ensor, Robinson Jr., Stringer, Barranco, Mayer, Battista, Alexander, Truffer, DeSimone Jr., DeGonia II, and Bernstein have provided official emails, signed letters, signed judicial rulings, and signed magisterial decisions. The emails, filings, rulings, decisions, and

letters exceed the burden of proof for civil litigation for the count of 42 U.S.C. § 1983 Civil Action for Deprivation of Rights. DeGonia II and Bernstein have not had an opportunity to respond to these allegations. Plaintiff is not requesting judgement against DeGonia II and Bernstein.

### COUNT XII

4      Defendants Ohana Growth Partners, LLC, Richard Hartman, Miles & Stockbridge, P.C., Brennen, Duvall, Bernstein, and Ensor signed stationary letters, court filings letters, employment and benefit letters, and USPS-stamped envelopes exceeding the burden of proof required in civil litigation for the count of **Mail Fraud**. DeGonia II and Bernstein have not had an opportunity to respond to these allegations. Plaintiff is not requesting judgement against DeGonia II and Bernstein.

### COUNT XIII

5      Defendants Ohana Growth Partners, LLC, Brick, Norris, Drummond, Hartman, Ihle, Woods, Wittelsberger, Bryan, Miles & Stockbridge, P.C., Butler, Brennen, Frenkil, Hoffberger, Duvall, Ensor, Robinson Jr., Stringer, Barranco, Mayer, Battista, Alexander, Truffer, DeSimone Jr., Romes, Levett, DeGonia II, and Bernstein use of text and telephone communication over multiple carriers, Outlook and Apple Mail clients, Microsoft and Google email systems, Adobe Certificate Signature, DocuSign, Office365, Foxit quick PDF library, Skia/PDF, GDPicture, Power PDF Create, LuraDocumentPDF, Adobe PSL for Cannon, Apose.WORDS, Aspose PDF, Kofax PDF,  Maryland Judiciary Odyssey Systems, Paycom, Zoom, Teams, and other electronic systems in a local and cross-interstate manner are factually established through communication records, emails, and document analysis which burden of proof for civil litigation for the count of **Wire Fraud**.  Butler, DeGonia II, Bernstein, Romes, and Levett have not had an opportunity to respond to these allegations. Plaintiff is not requesting judgement against them.

## COUNT XIV TO XV

6     Defendants Ohana Growth Partners, LLC, Brick, Norris, Drummond, Hartman, Ihle, Woods, Wittelsberger, Bryan, Miles & Stockbridge, P.C., Butler, Brennen, Frenkil, Hoffberger, Duvall, Ensor, Truffer, Barranco, Romes, and Levett were active participants supporting the violation of consumer protection rights, unlawful business practice laws, and breaching contractual obligations in Washington, California, Tennessee, Florida, Maryland, and the District of Columbia. The telecommunications, emails, affidavits, and filings establish the factual basis that burden of proof for civil litigation for the counts of **PCI Compliance Consumer Protection Violations,** and **PCI Compliance PIA Violations and Whistleblower Retaliation**.  Butler, Romes, and Levett have not had an opportunity to respond to these allegations.  Plaintiff is not requesting judgement against them.

## COUNT XVI TO XVIII

7     Defendants Ohana Growth Partners, LLC, Brick, Norris, Drummond, Hartman, Ihle, Wood, Wittelsberger, Bryan, Miles & Stockbridge, P.C., Butler, Brennen, Frenkil, Hoffberger, Duvall, Ensor, Robinson Jr., Stringer, Barranco, Mayer, Battista, Alexander, Truffer, DeSimone Jr., DeGonia II, and Bernstein telecommunications, letters, emails, filings, judicial rulings, and magisterial decisions exceed the burden of proof for civil litigation for the counts of **Fraudulent Lawsuit and PIA Violations**, **RICO**, and **Anti-Rights Conspiracy**. Butler, DeGonia II, and Bernstein have not had an opportunity to respond to these allegations.  Plaintiff is not requesting judgement against them.

## COUNT XIX

8     Defendants Ensor, Robinson Jr., Stringer, Barranco, Mayer, Battista, Alexander, Truffer, DeSimone Jr., DeGonia II, and Bernstein letters, emails, judicial rulings, and magisterial decisions demonstrate that Ryan Dillon-Capps attempts to notify others of the conspiracy were

being received and are added to the received correspondence by others to exceed the burden of proof for civil litigation for the count of **Failure to Prevent Conspiracy Under 42 U.S.C. § 1986**.  DeGonia II and Bernstein have not had an opportunity to respond to these allegations.  Plaintiff is not requesting judgement against them.

COUNT XX

9       Defendants Ensor and Mayer judicial rulings, magisterial decisions, ADA Coordinator emails, and documented evidence of court record manipulation exceed the burden of proof for civil litigation for the count of **ADA Title II & Maryland Anti-Discrimination Retaliation**.

COUNT XXI

10      Plaintiff asserts that **Denied Use of Benefits and Accommodations** is likely sufficient for ruling but has not exceeded the qualifying standard for civil litigation.  Judgement is not being requested.

COUNT XXII

11      Retaliatory Coercion Under the Norris-LaGuardia Act far exceeds the burden for judgement and every legal professional named and not named should consider their standing in the legal profession because it is hard to articulate C-03-CV-24-002264 without using words connected to employment and injunctive relief.  The Forensic analysis of the evidence connects to many more people that those named, and every person holding a bar license who touched the Circuit Court for Baltimore County lawsuit is a potential person to depose for questioning.

12      After reviewing the Attorney Grievance Commission public records, the idea of a Judge committing any of these crimes is farcical and amounts to a first amendment right.  Plaintiff states that this is not a case of irreverent commentary from some tabloid or adult magazine, and the stifling of individuals like Maryln Pierce raises questions about why judicial records are not reliable in Maryland Courts and why didn't the Supreme Court of Maryland permanently address

the misuse of appointment by the Bar Counsel when the only defense was 50 years of violations summarized by a statement that it has always been done this way.

13      The strategic placement of individuals to positions like Bar Counsel, County Clerk, Director of Investigations is concerning when they appear to be replaced when loyalty is questioned and there is virtually no effort required to find agreement in engaging in multiple felonies.  Some of which will be shared with the tribunal under seal includes the results of forensic analysis which paints a grim picture of the Maryland Judiciary, and to ensure that no one can pursue what they believe to be an "easy solution" safeguards have been implemented so that Ryan Dillon-Capps is no longer a single point of failure to holding people accountable.

14      Those who are responsible have brought shame and dishonor to themselves, family, industry, profession, judicial system, and both the State of Maryland and the Federal Government.  Their actions reflect a systemic problem, and the wisest move of anyone who is not named is to abandon their former colleagues.

## THIS COURT IS CALLED UPON

15      **THIS COURT IS CALLED UPON** to acknowledge that judicial immunity has been forfeited by County Administrative Judge Dennis M. Robinson Jr., Senior Judge Patrick H. Stringer, Associate Judge Michael S. Barranco, Associate Judge Stacey A. Mayer, Associate Judge Andrew M. Battista, Associate Judge Jan M. Alexander, Associate Judge Keith R. Truffer, Associate Judge Marc A. DeSimone Jr. who acted in clear absence of jurisdiction in violation of the Norris-LaGuardia Act (29 U.S.C. §§ 101-115), through *ultra vires acts* that deprived the Plaintiff of their federal rights and protections have waived their immunity under the Eleventh Amendment, and waived the State of Maryland's immunity under the Eleventh Amendment by voluntarily invoking federal jurisdiction on violation of the FMLA after interfering with FMLA leave.

AND SHOULD NOTE THAT

16     **AND SHOULD NOTE THAT** the judicial actions directly violated the **Appointments Clause**, as outlined in the Norris-LaGuardia Act, with *Freytag v. Commissioner*, 501 U.S. 868 (1991), affirming the constitutional importance of proper judicial and administrative appointments in labor disputes.

> 17     **Freytag v. Commissioner (1991)** :The Court ruled that the Appointments Clause requires adherence to constitutional procedures for judicial and administrative appointments, particularly in cases implicating structural protections in the separation of powers. Justice Blackmun's majority opinion reinforced that improper appointments invalidate the actions of officers who lack constitutional authority, preserving the structural integrity of government.
>
> 18     **General Principle for the Appointments Clause:** "The Constitution's structural protections do not permit the circumvention of proper appointment procedures for officers of the United States." (*Id.*, at 878).
>
> 19     **Standard for Proper Appointments:** The Court emphasized that appointments must comply with Article II, ensuring that all officers are constitutionally appointed and accountable.
>
> 20     **Burden on the Challenging Party:** A party challenging an appointment must show that the officer's actions were unauthorized due to a constitutional defect in the appointment process.

## AND SHOULD ADDITIONALLY NOTE THAT

21     **AND SHOULD ADDITIONALLY NOTE THAT** the Defendants' failure to enforce procedural rules prohibits them from now enforcing procedural rigor, consistent with the principles set forth in *Hollingsworth v. Perry*, 558 U.S. 183 (2010).

> **22**     **Hollingsworth v. Perry (2010):** The Court ruled that failure to enforce procedural rules during litigation can waive the right to enforce procedural rigor at later stages, undermining judicial consistency. Chief Justice Roberts emphasized the importance of procedural consistency to ensure equal treatment under the law.
> 23     **General Principle for Procedural Integrity:** "Adherence to procedural rules is fundamental to the fairness and legitimacy of judicial proceedings." (*Id.*, at 190).
> 24     **Standard for Waiving Procedural Enforcement:** The Court held that once a party fails to enforce procedural rigor, they cannot later demand it for strategic advantage.
> 25     **Burden on the Non-Enforcing Party**: The burden lies on the party asserting procedural violations to show consistent enforcement throughout the litigation.

## FAILURE TO ACT AND JUDICIAL ABDICATION

26     Manuel v. City of Joliet, 580 U.S. 357 (2017)

27     **Failure to Act and Judicial Abdication**: Justice Kagan emphasized that judicial oversight of procedural rights is crucial to ensuring fairness. Failure to act in situations like scheduling or notice violations could constitute a waiver of the court's responsibility.

28      **Supporting Principle**: A court's inaction where a procedural duty exists can be construed as relinquishing enforcement authority.

29      **AND FORMALLY ACKNOWLEDGE THAT** Justice White's opinion in *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991) clearly establishes: "The imposition of sanctions transcends the immediate case and serves to deter misconduct, vindicate judicial authority, and uphold the integrity of the system."

30      The abstention of duties by County Administrative Judge Dennis M. Robinson Jr., Senior Judge Patrick H. Stringer, Associate Judge Michael S. Barranco, Associate Judge Stacey A. Mayer, Associate Judge Andrew M. Battista, Associate Judge Jan M. Alexander, Associate Judge Keith R. Truffer, Associate Judge Marc A. DeSimone Jr, County Clerk Ensor, Bar Counsel Thomas DeGonia II, Director of Investigation Tanya C. Bernstein, Circuit Court Judges for Baltimore County, Office of the Maryland Attorney General Attorneys, Civil Rights Division of the Office of the Attorney General of Maryland Attorneys, Attorney Grievance Commission of Maryland, Maryland Commission on Judicial Disabilities, Office of Administrative Hearings Law Judges, and the State of Maryland constitutes an explicit waiver of their enforcement authority.

31      This inaction undermines judicial integrity, enabling continued misconduct and eroding public confidence in the judiciary's ability to ensure justice and accountability.

32      **Justice Ruth Bader Ginsburg's Principle of Equality in Justice**: "The law's greatest promise is equality in justice; to deny due process is to break this sacred bond." Their inaction facilitated harm to litigants, enabling systemic violations of rights and procedural protections. Abstaining from this duty constitutes negligence, complicity, and intentional disregard of

judicial, magisterial, attorney, and oversight responsibilities, fundamentally eroding the bond between the judiciary and the public it serves.

33      **Justice Thurgood Marshall on Timely and Fair Justice**: "The denial of timely justice is the denial of justice itself; every minute of delay erodes the faith of those waiting for their rights." The explicit waiver and failure to act substantiate claims for prospective relief, including injunctions to prevent further rights violations. Such inaction undermines public confidence in the judiciary and serves as evidence of the need for federal oversight or corrective measures.

34      "To deny due process is to deny justice itself; a system that fails to protect the rights of even one person fails us all." The judiciary's failure to act not only denies procedural fairness but exposes the systemic nature of violations, warranting both corrective action and significant reform to restore integrity.

35      **President Robert F. Kennedy on Justice as the Foundation of Dignity**: "In the end, justice is not just a right; it is the bedrock of human dignity. Denying it leaves people dehumanized and society corrupted." Their abstention from duties enabled violations of rights protected under federal statutes and constitutional provisions, aligning their inaction with complicity in the denial of justice.

36      By explicitly waiving enforcement authority in clear violation of their duties, these officials have acted outside the scope of their lawful authority. E*x parte Young*, 209 U.S. 123 (1908), and *Pulliam v. Allen*, 466 U.S. 522 (1984), establish that state officials lose immunity when they fail to uphold constitutional or statutory obligations, particularly when their actions enable misconduct or bad faith.

[FEDERAL FUNDING](#)

37      **AND SHOULD NOTE THAT** Justice Brennan's opinion in Pennsylvania v. Union Gas Co., 491 U.S. 1 (1989) clearly establishes: "When a state voluntarily accepts federal funds, it

consents to comply with federal laws tied to those funds." Additionally, In **Nusbaum v. Nusbaum**, 243 Md. App. 332, 220 A.3d 392 (Md. Ct. Spec. App. 2019) the court record reflects that Maryland's "Federal allocation methods are part of an established statutory scheme."

38      As an employer, public entity, and participant in the ADA Coordinator program, it is an established fact that the Circuit Court for Baltimore County, Baltimore County Office of the Clerk for the Circuit Court, Supreme Court of Maryland, Attorney Grievance Commission of Maryland, Maryland Commission on Judicial Disabilities, Office of the Maryland Attorney General, Civil Rights Division of the Office of the Attorney General of Maryland, Office of Administrative Hearings, Judicial Information Systems, and the State of Maryland have waived their Eleventh Amendment immunity by voluntarily accepting federal funds and consenting to comply with the federal laws tied to those funds – including the ADA, FMLA, and OSHA.

## SAME CASE OR CONTROVERSEY

39      **AND TO FURTHER ACKNOWLEDGE** that Justice Breyer's opinion in *Lapides v. Board of Regents*, 535 U.S. 613 (2002), clearly establishes: "A state's voluntary invocation of federal jurisdiction removes Eleventh Amendment immunity for claims at issue," and further states, "It would seem anomalous or inconsistent for a state both (1) to invoke federal jurisdiction, thereby contending that the 'Judicial power of the United States' extends to the case at hand, and (2) to claim Eleventh Amendment immunity, thereby denying that the 'Judicial power of the United States' extends to the case at hand."

40      Justice Breyer's binding opinion applies directly to County Administrative Judge Dennis M. Robinson Jr., Senior Judge Patrick H. Stringer, Associate Judge Michael S. Barranco, Associate Judge Stacey A. Mayer, Associate Judge Andrew M. Battista, Associate Judge Jan M. Alexander, Associate Judge Keith R. Truffer, Associate Judge Marc A. DeSimone Jr. Their continued assertion of jurisdiction over the NLA-violating lawsuit for six months constitutes to a

waiver of immunity on all counts arising within the same case or controversy, including those claims that might otherwise have been barred.

41    "If you contend that they're violating the law…you can pursue that claim either administratively or -- or by the law. You can go down to federal court and file" Dillon-Capps says "it's a federally prohibited act[tion]" Judge Barranco replies "then you can pursue that

42    **AND SHOULD NOTE THAT** Judge Barranco's active litigation as a participant in the conspiracy waived judicial neutrality, as established in *In re Murchison*, 349 U.S. 133 (1955), where the Court held that participation in judicial proceedings compromised impartiality.

> 43    **In re Murchison (1955):** The Court ruled that judicial neutrality is compromised when judges participate as adversarial actors, requiring disqualification to preserve fairness. Justice Black's opinion highlighted the importance of neutrality in maintaining public confidence in the judiciary.
>
> 44    **General Principle for Judicial Neutrality:** "No man can be a judge in his own case, and no judge should act as an adversary in matters they are adjudicating." (*Id.*, at 136).
>
> 45    **Standard for Disqualification:** The Court held that judicial neutrality is violated when a judge participates in or advocates within the case they are adjudicating.
>
> 46    **Burden on the Challenging Party:** The party challenging impartiality must show that the judge's actions compromised their ability to fairly adjudicate the case.

47    **AND TO CLARIFY THAT** the abuse of the mootness doctrine violated fundamental legal principles, as *Reynolds v. Sims*, 377 U.S. 533 (1964), emphasized the necessity of resolving disputes with ongoing legal and societal effects, including medical emergencies, financial harm, and systemic corruption. This misuse of mootness undermines recurring disputes that evade resolution, including voluntary dismissals that fail to address remaining claims, as shown in filings that assert constitutional violations and voluntary cessation without satisfying procedural rigor (*Friends of the Earth v. Laidlaw*, 528 U.S. 167 (2000)).

> 48    **Reynolds v. Sims (1964):** The Court ruled that dismissing cases due to mootness in violation of recognized exceptions undermines judicial responsibility to resolve constitutional disputes. Chief Justice Warren's opinion affirmed that judicial abdication of constitutional claims undermines the judiciary's role as a protector of constitutional rights.

> 49      **General Principle for Addressing Constitutional Claims:** "The judiciary has a responsibility to address constitutional questions presented in good faith." (*Id.*, at 567).
>
> 50      **Standard for Avoiding Mootness:** The Court emphasized that claims with ongoing legal or societal effects, or capable of repetition yet evading review, must be adjudicated.
>
> 51      **Burden on the Judiciary:** Courts must ensure that disputes of public importance are resolved, even if procedural limitations complicate adjudication.

52      **AND TO DETERMINE THAT** the record reflects clear bias and favoritism in judicial actions, violating constitutional protections, as addressed in *Dennis v. Sparks*, 449 U.S. 24 (1980).

> 53      **Dennis v. Sparks (1980):** The Court ruled that evidence of judicial bias or favoritism violates due process and undermines the legitimacy of the judicial process. Justice White's opinion clarified that judicial bias, whether actual or apparent, invalidates rulings that infringe on constitutional protections.
>
> 54      **General Principle for Judicial Impartiality:** "Judicial decisions influenced by favoritism or bias violate the constitutional right to a fair trial." (*Id.*, at 28).
>
> 55      **Standard for Proving Bias:** The Court held that bias must be demonstrated through specific evidence that the judge acted with partiality or improper influence.
>
> 56      **Burden on the Challenging Party:** Plaintiffs must show that judicial conduct reflected favoritism or a failure to adhere to impartial standards.

57      **AND TO RECOGNIZE** that the violations of constitutional rights and protections against the Plaintiff render judicial, magisterial, and state immunity inapplicable, as outlined in *Ex parte Young*, 209 U.S. 123 (1908), and *Pulliam v. Allen*, 466 U.S. 522 (1984).

> 58      **Ex parte Young (1908):** The Court ruled that state officials, including judges, may be sued when acting in violation of federal law, as such actions fall outside the scope of sovereign immunity. Justice Peckham's opinion established that state officials cannot shield themselves with immunity when their actions conflict with federal law, ensuring the supremacy of federal rights and protections.
>
> 59      **General Principle for Waiver of State Immunity:** "Individuals who act in defiance of federal law cannot claim immunity when their actions infringe upon federally protected rights." (*Id.*, at 160).
>
> 60      **Standard for Overcoming Immunity:** The Court held that state officials lose immunity when their actions violate federal law or constitutional rights, as these acts are considered ultra vires and not protected by sovereign immunity.
>
> 61      **Burden on the Plaintiff:** Plaintiffs must demonstrate that the state official's actions were unconstitutional or contrary to federal law to invoke the *Ex parte Young* exception and seek injunctive relief.
>
> **62**      **Pulliam v. Allen (1984):** The Court ruled that judicial immunity does not bar claims for injunctive or declaratory relief against judges who act in violation of federal law or constitutional protections. Justice Blackmun's opinion reinforced that judicial immunity is not absolute and that courts must provide remedies when judges violate constitutional rights

63     **General Principle for Judicial Accountability:** "Judicial immunity is not a bar to prospective relief where constitutional rights are at stake." (*Id.*, at 536).

64     **Standard for Overcoming Judicial Immunity:** The Court held that judges may be subject to injunctive relief when their actions exceed jurisdiction or violate constitutional rights.

65     **Burden on the Plaintiff:** The plaintiff must demonstrate that judicial conduct caused a constitutional violation and that prospective relief is necessary to prevent further harm.

66     **AND MUST FURTHER ADDRESS** violations of federal supremacy, consistent with *Brown v. Board of Education*, 347 U.S. 483 (1954), which reaffirmed the primacy of federal protections over state actions.

67     **Brown v. Board of Education, 347 U.S. 483 (1954):** The Court ruled that segregation in public education violated the Equal Protection Clause of the Fourteenth Amendment, establishing the principle of federal supremacy in ensuring constitutional protections.
**General Principle for Federal Supremacy:** "Separate educational facilities are inherently unequal." (*Id.*, at 495).
**Standard for Constitutional Enforcement:** The Court held that state actions violating constitutional rights cannot override federally guaranteed protections.
**Burden on the States:** States must demonstrate compliance with federal constitutional requirements and eliminate systemic discrimination.

68     **AND TO AFFIRM THAT** the waiver of immunity extends to all claims arising from the six months of litigation following removal, as established in *United States v. Nixon*, 418 U.S. 683 (1974).

69     **United States v. Nixon, 418 U.S. 683 (1974):** The Court ruled that executive privilege does not extend to withholding evidence in a criminal investigation, reaffirming the principle of accountability under the Constitution.
**General Principle for Executive Accountability:** "No person, not even the President, is above the law." (*Id.*, at 706).
**Standard for Limiting Privilege:** The Court held that privilege must yield when evidence is demonstrably necessary to the enforcement of law and administration of justice.
**Burden on the Executive:** The executive must provide evidence of a specific, compelling interest to claim privilege, subject to judicial review..

70     **AND SHOULD NOTE THAT** the basis for waiver further extends under *Regents of the Univ. of California v. Doe*, 519 U.S. 425 (1997), and *Wisconsin Dept. of Corrections v. Schacht*, 524 U.S. 381 (1998), confirming that removal waives sovereign immunity for all related claims.

71     **Regents of the Univ. of California v. Doe, 519 U.S. 425 (1997):** The Court ruled that Eleventh Amendment immunity depends on the state's financial liability for a judgment, clarifying limits to sovereign immunity in federal litigation.
**General Principle for Sovereign Immunity:** "The Eleventh Amendment does not automatically extend to entities where the state is not the real party in interest." (*Id.*, at 429).
**Standard for Determining Immunity:** The Court held that immunity applies only if the judgment would be paid out of state funds, linking immunity to direct state liability.

| |
|---|
| **Burden on the Plaintiff:** Plaintiffs must demonstrate that the defendant is not the state's alter ego to overcome immunity. |
| 72     **Wisconsin Dept. of Corrections v. Schacht, 524 U.S. 381 (1998):** The Court ruled that a state's removal of a case to federal court waives Eleventh Amendment immunity for claims in the same case or controversy.<br>**General Principle for Waiver by Removal:** "The removal of a case to federal court constitutes a voluntary waiver of immunity." (*Id.*, at 389).<br>**Standard for Extending Waiver:** The Court held that removal waives immunity for all claims properly before the federal court, even if some claims would otherwise be barred.<br>**Burden on the Removing Party:** States must affirmatively show that immunity is preserved despite removal, a burden rarely met. |

73     **AND TO FURTHER DETERMINE THAT** rulings issued during the six months of adjudication are void due to compromised impartiality, as both *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868 (2009), and *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847 (1988), affirm the necessity of judicial neutrality and fairness.

| |
|---|
| 74     **Caperton v. A.T. Massey Coal Co., 556 U.S. 868 (2009):** The Court ruled that judicial rulings must be voided when impartiality is compromised by personal interests, as such decisions violate due process.<br>**General Principle for Judicial Impartiality:** "The legitimacy of the judiciary rests on impartial rulings; avoiding decisions due to personal interests erodes public trust." (*Id.*, at 884).<br>**Standard for Voiding Decisions:** The Court held that rulings must be invalidated when there is "a serious risk of actual bias," rendering the proceedings fundamentally unfair. (*Id.*, at 885).<br>**Burden on the Challenging Party:** The party seeking to void the decision must demonstrate a substantial risk of bias affecting the outcome. |
| 75     **Liljeberg v. Health Services Acquisition Corp., 486 U.S. 847 (1988):** The Court ruled that the appearance of judicial bias undermines public confidence in the judiciary, warranting corrective measures.<br>**General Principle for Impartiality Standards:** "Public confidence in the judiciary is eroded by the appearance of bias or impropriety." (*Id.*, at 865).<br>**Standard for Addressing Bias:** The Court held that even the appearance of impropriety or bias can necessitate disqualification or corrective action.<br>**Burden on the Judiciary:** Judges must proactively ensure impartiality and avoid any actions creating the appearance of bias. |

76     **AND MUST CONCLUDE THAT** the actions of all Defendants are inconsistent with preserving privileges and procedural integrity, as articulated in *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156 (9th Cir. 1992).

| |
|---|
| 77     **Chevron Corp. v. Pennzoil Co., 974 F.2d 1156 (9th Cir. 1992):** The Court ruled that actions inconsistent with preserving privilege or procedural fairness undermine judicial integrity and cannot support valid claims.<br>**General Principle for Preserving Privilege:** "Actions inconsistent with preserving privilege render any claim of privilege void." (*Id.*, at 1162).<br>**Standard for Procedural Consistency:** The Court emphasized that parties must consistently assert privilege and adhere to procedural rules to preserve claims of fairness.<br>**Burden on the Asserting Party:** The burden lies with the party invoking privilege to demonstrate consistent actions that align with procedural fairness. |

## COUNTS AND RELIEF

78      Please see the **Complaint Integrated Appendix: Counts** for more details on counts and the relief.

## RESPECTFULLY SUBMITTED

**December 25, 2024**

_/s/_ Ryan Dillon-Capps
**Ryan Dillon-Capps**

1334 Maple Avenue
Essex, Maryland 21221
ryan@mxt3.com
703-303-1113