# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| RYAN DILLON-CAPPS | Civil Action |
| *Plaintiff,* | |
| vs. | No. **1:24-CV-3744** |
| OHANA GROWTH PARTNERS, LLC *et al* | Hon. **Judge Hurson** |
| *Defendants* | |

## AFFIDAVIT OF RYAN DILLON-CAPPS IN SUPPORT OF ABUSIVE USE OF THE JUDICIAL SYSTEM

1    I, Ryan Dillon-Capps, being over the age of eighteen (18) and competent to testify, and having personal knowledge of the facts contained herein, state as follows:

2    Submitted to the Court on February 17, 2025, The **Affidavit of Ryan Dillon-Capps in Support of Plaintiff's Emergency Motion for Reconsideration of Denial of Temporary Restraining Order and Preliminary Injunction and Request for Expedited Review** (ECF 34-0) addressed many of the issues directly connected to the injunctive relief and shows that the lawsuit itself was fraudulent with the pretext of refusal shown to be based on perjured statements.

3    Submitted to the Court on February 19, 2025, The **Affidavit of Ryan Dillon-Capps in Support of Consumer Protection Violations & Deceptive and Unfair Trade Practices** expands upon the first affidavit and addressed the unlawful orders to breach a dozen contractual agreements, violate consumer protection rights, and because it was intentionally being done violate deceptive and unfair trade practice laws in Washington, California, Tennessee, Florida, District of Columbia, and Maryland.

4       To highlight a few key elements already fully supported by the statements of fact and cited evidence from the first two affidavits:

5       There was no refusal on behalf of Ryan Dillon-Capps.

6       All of Ryan Dillon-Capps' claims have been remanded by the Circuit Court of Baltimore County to federal court, free and clear.

7       Ohana Growth Partners, LLC interfered with and retaliated against Ryan Dillon-Capps' FMLA leave rights.

8       Ohana Growth Partners, LLC was engaged in a labor dispute with multiple employees, including Ryan Dillon-Capps and Darren Koritzka.

9       Ohana Growth Partners, LLC's Help Desk always had access to the Global Administrator accounts.

10      Ohana Growth Partners, LLC and Hartman Executive Advisors engaged in estoppel.

11      Ohana Growth Partners, LLC's orders were unlawful.

12      Ohana Growth Partners, LLC admitted to bringing a case to state court with unclean hands, rendering them barred from equitable injunctive relief.

13      Ohana Growth Partners, LLC's pleadings are contradictory and contain obvious perjured statements.

14      Ohana Growth Partners, LLC committed Insurance Fraud, Mail Fraud, and Wire Fraud.

15      Miles & Stockbridge, LLC committed Mail Fraud and Wire Fraud.

16      Ohana Growth Partners, LLC and Miles & Stockbridge P.C. knowingly engaged in fraud on the court and committed perjury.

17      Ohana Growth Partners, LLC and Miles & Stockbridge P.C. filed a jurisdictionally barred lawsuit seeking equitable relief, despite being barred from such relief.

18    Judicial Misconduct & Abuse of Discretion:

19    Associate Judge DeSimone Jr. knowingly exceeded judicial discretion by issuing an ex

parte TRO against Ryan Dillon-Capps, despite knowing:

    1.    Ryan Dillon-Capps had not received notice.

    2.    Ohana Growth Partners, LLC was barred from equitable injunctive relief in a case

    lacking jurisdiction.

20    Associate Judge Truffer knowingly exceeded judicial discretion by denying a mandatory

hearing to modify or vacate the ex parte TRO in a case lacking jurisdiction.

21    Associate Judges DeSimone Jr. and Barranco knowingly issued conflicting orders, which

are invalid in a case lacking jurisdiction.

22    Associate Judge Battista exceeded judicial discretion by granting a premature default

order, which was later vacated for exceeding judicial discretion, in a case lacking jurisdiction.

23    Associate Judge Truffer knowingly exceeded judicial discretion by scheduling a show

cause hearing for civil contempt with 18 days less notice than explicitly required by statute, in a

case lacking jurisdiction.

24    Associate Judge Barranco knowingly exceeded judicial discretion by granting a

Preliminary Injunction against Ryan Dillon-Capps for Ohana Growth Partners, LLC, despite the

company being barred from equitable injunctive relief in a case lacking jurisdiction.

25    Associate Judge Barranco knowingly exceeded judicial discretion by issuing an excessive

and punitive fine of $2,500 per day against Ryan Dillon-Capps, despite the underlying injunctive

relief orders being invalid and issued in excess of judicial discretion in a case lacking

jurisdiction.

26    Associate Judge Barranco knowingly exceeded judicial discretion by issuing a show

cause order seeking punitive incarceration against Ryan Dillon-Capps, despite the conflicting

and invalid injunctive relief orders that were issued in excess of judicial discretion, in a case lacking jurisdiction.

27    The original filing to the Court on December 27, 2024, included:

    1.    Exhibit 160 – The State Court Record Events (339 files) as of December 3, 2024.

    2.    Exhibit 161 – The State Court Record Documents (303 files) as of December 3, 2024.

28    These exhibits were filed on a physical CD that was signed.

29    I submit the following Statement of Facts to further expand on the Abusive Use of the Judicial System. The facts set forth below are material to the issues before the Court and are presented objectively to aid in the fair and just resolution of this dispute.

## DENIED BEFORE HEARING ARGUMENTS

30    During the June 27, 2024, hearing, Ryan Dillon-Capps moved Judge Barranco to hear a Motion for Continuance, stating:

    1.    *"I want to have a motion for, erm, continuance because—"*

    2.    Judge Barranco immediately interrupted, responding: *"Denied."* (See ECF 23-12, at 15).

## OBSTRUCTION TO TRANSCRIPTS

31    On June 26, 2024, at 3:08 PM, Ryan Dillon-Capps emailed Fallyn Allman, Judicial Assistant to the Honorable Judge Michael S. Barranco, and Rachel Kiefer, Law Clerk to Judge Barranco, to request a transcript of the June 26, 2024, hearing as a reasonable accommodation.

    1.    Ryan Dillon-Capps stated that he had memory issues, which limited his ability to recall details of the hearing that had occurred earlier that day (See ECF 16-6, at 14).

32    On June 26, 2024, at 3:09 PM, Rachel Kiefer forwarded Ryan Dillon-Capps' email to the Circuit Court of Baltimore County Digital Recording Office.

33      On June 27, 2024, at 7:33 AM, Sharon L. Ellingson informed Ryan Dillon-Capps that:

    1.      He could acquire an audio link of the hearing for $25.00, or

    2.      A transcript could be created at an estimated cost of $300.00 (See ECF 16-6, at 13).

34      Ohana Growth Partners, LLC had already paid for the transcripts of both the June 26, 2024, hearing (See ECF 16-14, at 44) and the June 27, 2024, hearing (See ECF 16-14, at 45).

35      After Ryan Dillon-Capps noticed that the court ledger reflected the existence of transcripts for the June 26 and June 27 hearings (See ECF 16-14, at 45), he formally requested the June 26, 2024, transcript.

    1.      Robert Brennen refused to provide it, stating that Ryan Dillon-Capps owed Ohana Growth Partners, LLC $12,500 in fines.

    2.      Brennen conditioned the release of the transcript on Ryan Dillon-Capps fulfilling certain requirements, offering no guarantee that he would receive it (See ECF 16-14, at 45).

36      On August 2, 2024, after Ryan Dillon-Capps gained access to court records, both transcripts were no longer present in the court records.

37      On September 28, 2024, at 11:03 PM, Ryan Dillon-Capps emailed a final request for the June 26 transcript to Robert Brennen, Holly Butler, Jessica Duval, Victoria Hoffberger, and Steven Frenkil (See screenshot labeled Figure T:1).

---

**Figure T:1**

This will be our final request for the ==transcript== from ==June== 26th, and we will not allow any further obstruction. This request is also expanded to reaffirm your obligation to provide us with all materials in your possession, including the exhibit released to you, any hearing notes, and any other documents directly or indirectly related to this case. For any materials you believe are protected under attorney-client privilege, please provide a privilege log.

No acknowledgment of this request will be viewed as aligned with the absence of responses to prior requests, which have either been ignored or met with conditional responses that have obstructed access to the requested information.

---

38      On September 30, 2024, at 9:49 AM, Kim J. Edwards, legal assistant to Robert Brennen, provided Ryan Dillon-Capps with the June 26, 2024, transcript (See ECF 16-14, at 65).

   1.      No other materials were provided to Ryan Dillon-Capps.

   2.      No privilege log was ever disclosed.

<u>LETTER TO JUDGE TRUFFER</u>

39      On June 18, 2024, at 1:18 PM, Ryan Dillon-Capps hand-delivered the letter to the Civil Clerk's Office for the Circuit Court of Baltimore County (See ECF 16-15, at 12).

   1.      Two members of the Civil Clerk's Office assisted Ryan Dillon-Capps, reviewed the pages with him, and provided him with:

      1.1      A pen to write in "Truffer" on the letter.

      1.2      A highlighter to mark key portions of the letter for emphasis.

40      On June 18, 2024, at 4:40 PM, Ryan Dillon-Capps provided a downloadable link to Robert Brennen, Steven Frenkil, and Victoria Hoffberger for a password-protected PDF version of the Letter to Judge Truffer.

   1.      Robert Brennen responded, stating they were unable to open and view the document.

   2.      A second link was provided, after which they were able to open and access the document (See ECF 16-14, at 17).

   3.      Screenshots labeled Figure LJT:1 and LJT:2 display the Adobe file document properties, confirming these details.

4.    After Miles & Stockbridge P.C. received the file, external access was terminated, preventing anyone else from obtaining the file.

**Figure LJT:1**



**Figure LJT:2**



41    The file provided to Robert Brennen, Steven Frenkil, and Victoria Hoffberger contains a unique attribute that was only present in the version they received.

1.    This file was specifically packaged for Miles & Stockbridge P.C. after the letter to Judge Truffer was filed, and a copy of the court submission was never received by the Civil Clerk.

2.    A screenshot from Adobe.com, labeled Figure LJT:3, illustrates a size difference between two versions of the document, confirming this distinction.

3.    The secure file was not directly editable but was printable.



**Figure LJT:3**

42    During the June 27, 2024, hearing, Judge Barranco stated that he had not heard from Ryan Dillon-Capps' health care professional (See ECF 23-12, at 58).

1.    Additionally, Robert Brennen's email on June 24, 2024, at 6:58 PM contained an attachment that only included the letter and the show cause order as a single file, without its accompanying exhibits (See ECF 16-14, at 23; ECF 16-15, at 12-14).

2.    Believing that the letter's exhibits had been omitted from the court record, Ryan Dillon-Capps uploaded Exhibit 1V on July 1, 2024, at 3:38 PM (See ECF 16-1, at 2).

3.      The same pages seen in LJT:3 are displayed as they exist in the 3:38 PM filing of Exhibit 1V on July 1, 2024, shown in the screenshot labeled Figure LJT:4.

4.      The pages are labeled "Exhibit 1V.pdf" in red in the top right corner and sequentially numbered in red at the bottom center of each page.

5.      Ryan Dillon-Capps possessed the original files, allowing him to edit and print the pages in letter-size format.

**Figure LJT:4**



43      The Circuit Court of Baltimore County's court record for C-03-CV-24-002264, Document File #19, archived on January 11, 2025, is titled "Order and Correspondence to Judge Truffer" and contains the same pages from LJT:3 and LJT:4, as displayed in the screenshot labeled Figure LJT:5.

1.    The pages in the state court record were printed in black and white and reformatted from their original size to letter-size paper before being scanned into a digital format, allowing them to be edited.

2.    Ryan Dillon-Capps only sent this file to Miles & Stockbridge P.C., meaning that the only way the court could have obtained these pages was if they had been provided by Miles & Stockbridge P.C.

**Figure LJT:5**



44    Pages 1 and 2 of the Circuit Court of Baltimore County's court record for C-03-CV-24-002264, Document File #19, archived on January 11, 2025, are displayed in the screenshot labeled Figure LJT:6.

1.    The original pages delivered to the Circuit Court of Baltimore County were in color, with page 2 containing a blue hyperlink.

2.      As shown in Figure LJT:6, the county clerk scanned the received documents in color.

3.      The only possible way for these two pages to exist in their current form is if page 2 was replaced with a printed black-and-white version before being scanned.

4.      The streak down the page indicates that a feed scanner was used, where the scanning glass required cleaning.

5.      After the first page, the remainder of the file in the court record appears to be a black-and-white printout that was subsequently rescanned.

**Figure LJT:6**



45      Pages 1 and 2 of the files (See ECF 16-15, at 13) that Robert Brennen emailed to Ryan Dillon-Capps on June 24, 2024, at 6:58 PM (See ECF 16-14, at 23) are displayed in the screenshot labeled Figure LJT:7.

46      These pages were originally printed in black and white before the first page was later

replaced with a color copy version, which was scanned in by the clerk upon receipt. (as shown in

the previous Figure LJT:6)

**Figure LJT:7**



47      Metadata extraction from the Circuit Court of Baltimore County's court records using

ExifTool version 13.13 reveals that:

1.      293 of the 342 files in the January 11, 2025, Events archive were created using a

program called Aspose Ltd.

2.      7 of the 342 files in the January 11, 2025, Events archive were created using a

program called GdPicture.NET.

48      Event Files:

1.    File #13: Line regarding posting of $1.00 Cash Bond and signed TRO order. [3 pages];

2.    File #16: Letter to Judge Truffer [73 Pages];

3.    File #18: Letter to Judge Truffer [73 Pages];

4.    File #27: June 26, 2024, Hearing Sheet [1 Page];

5.    File #32: June 27, 2024, Hearing Sheet [1 Page];

6.    File #33: June 27, 2024, Signed Contempt Order [2 Pages];

7.    File #84: USPS Processed Envelope, Cover Letter, and Judge Truffer's Order [4 Pages].

49    Applying the same metadata extraction process to the Document files, it was found that 8 out of 303 files in the January 11, 2025, archive was created using GdPicture.NET:

1.    File #13: is visually the same file as Event file #13;

2.    File #19: is visually the same file as Event files #18 and #16;

3.    File #27: is visually the same file as Event file #32;

4.    File #30: is visually the same file as Event file #33;

5.    File #31: is visually the same file as Event file #33;

6.    File #33: Exhibit 1 Filed on June 27, 2024, by Robert Brennen to Judge Barranco [4 Pages];

7.    File #34: Exhibit 2 Filed on June 27, 2024, by Robert Brennen to Judge Barranco [4 Pages];

8.    File #80: is visually the same file as Event file #84.

| **Facts** |
|---|
| Associate Judge Marc DeSimone Jr., Associate Judge Keith Truffer, and Associate Judge Michael Barranco are uniquely linked to every single file in the Circuit Court of Baltimore County's January 11, 2025, archive, all of which were created using the application GdPicture.Net. |
| After Judges DeSimone Jr., Truffer, and Barranco ceased their direct involvement, no additional files were created using GdPicture.Net, indicating a clear pattern of correlation between their involvement and the use of this software in case filings. |

The Court records related to the letter sent to Judge Truffer could only exist if a member of the Circuit Court of Baltimore County colluded with Miles & Stockbridge P.C. or with an individual who obtained the file via Miles & Stockbridge P.C.

Furthermore, the USPS envelope, cover letter, and Judge Truffer's order constitute another instance of court record tampering. The use of the United States Postal Service (USPS) to perpetuate this act establishes an additional count of Mail Fraud, further implicating those involved in manipulating court records.

### EXPERT EYE-WITNESS TESTIMONY

50      During the June 27, 2024, hearing, Caroline Dillon-Capps, a licensed clinical social worker (LCSW-C) with a master's degree in social work and eight years of experience as an outpatient therapist, including treating PTSD and similar conditions, was present (See ECF 7-1, at 1).

51      Caroline Dillon-Capps was introduced as a professional therapist to provide expert witness testimony (See ECF 23-12, at 51).

> 1.      She took the witness stand and testified that everything Ryan Dillon-Capps had stated over the two days of hearings was 100% truthful.

> 2.      Her testimony confirmed Ryan Dillon-Capps' memory loss, cognitive issues, and his extensive efforts to comply with state court orders throughout the night at the cost of sleep (See ECF 23-12, at 52-55).

52      Judge Barranco responded to Caroline Dillon-Capps' testimony by stating that he had not heard any testimony from mental health professionals (See ECF 23-12, at 56).

53    Judge Barranco further stated that he did not believe Ryan Dillon-Capps' statements and

held him in contempt of court, imposing a punitive fine of $2,500 per day (See ECF 23-12, at 56-

58).

    1.    At this time, Ryan Dillon-Capps' income had already been halted due to his

    suspension on June 13, 2024, a fact that was known to the Court through Richard

    Hartman's affidavit (See ECF 23-5, at 5).

54    While Judge Barranco was issuing the order, he stated that Ryan Dillon-Capps had

testified the previous day, June 26, 2024, that he had PTSD (See ECF 23-12). At that moment,

Ryan Dillon-Capps' PTSD was fully established, supported by:

    1.    Exhibits filed with the Circuit Court for Baltimore County alongside the letter to

    Judge Truffer. Specifically, the health care provider-completed FMLA form (WH-380-E)

    dated March 12, 2024, which is referenced in the "Letter to Judge Truffer" section (See

    ECF 16-3, at 18-21).

    2.    Testimony from Robert Brennen on June 26, 2024, in which he affirmed that

    Ryan Dillon-Capps was on FMLA leave (See ECF 23-11, at 48). Immediately following

    this, Ryan Dillon-Capps testified that his PTSD was severely impacting him.

    3.    Richard Hartman's affidavit (See ECF 23-5, at 4) and supporting exhibits, which

    confirmed that Ryan Dillon-Capps was entitled to take FMLA leave (See ECF 23-5, at

    14).

    4.    Judge Barranco's acknowledgment of Ryan Dillon-Capps' PTSD, as he remarked

    that being in court and lectured by a judge "probably doesn't help" Ryan Dillon-Capps'

    PTSD (See ECF 23-11, at 88).

5. Judge Barranco signed the order at 1:57 PM on June 27, 2024 (See ECF 16-5, at 16). As Judge Barranco directed the Court Clerk to hand the signed order to Ryan Dillon-Capps, Ryan Dillon-Capps stated, *"Your Honor, she's a licensed-C therapist. She's a professional expert."* (See ECF 23-12, at 57-58).

55 Judge Barranco interrupted Ryan Dillon-Capps, stating that he had not heard from Ryan Dillon-Capps' mental health expert (See ECF 23-12, at 58). In response, Ryan Dillon-Capps offered to arrange for his expert to testify, but Judge Barranco immediately changed the subject, redirecting the discussion to Robert Brennen (See ECF 23-12, at 58).

## SEEKING INCARCERATION

56 On June 28, 2024, at 4:17 PM, Ryan Dillon-Capps requested the June 27, 2024, transcript, and Robert Brennen provided it without issue on July 1, 2024, at 8:27 AM (See ECF 16-14, at 44).

57 Nine minutes later, at 8:38 AM on July 1, 2024, believing that the letter to Judge Truffer had been accepted without its accompanying exhibits, Ryan Dillon-Capps filed a motion for reconsideration of the motion for continuance, which had been denied by Judge Barranco without hearing arguments (See ECF 23-12, at 15).

1. The motion included Exhibit 1V, but due to its size, it was submitted in two parts on the same day, with Exhibit 1V filed separately at 3:38 PM (See ECF 16-1, at 2).

58 The **Motion to Reconsider** presented several key arguments, including:

1. Hartman Executive Advisors had never responded to Ryan Dillon-Capps and appeared to no longer be working with Ohana Growth Partners, LLC.

2. Robert Brennen's statement during the hearings, in which he mentioned Richard Hartman having access to his account, served as proof that other administrators existed.

59    Clerk Ensor marked the 8:38 AM filing deficient at 9:44 AM on July 2, 2024, and

subsequently rejected the 3:38 PM filing (See ECF 16-1, at 2).

60    At 11:48 AM on July 2, 2024, Ryan Dillon-Capps refiled Exhibit 1V following a phone

call with the clerk's office, during which he followed the civil clerk's instructions. The

remaining portions of the motion were uploaded at 12:52 PM (See ECF 16-1, at 2).

61    On July 2, 2024, at 4:18 PM, Ryan Dillon-Capps emailed Robert Brennen, informing him

that he had seen an entry in the Court Record indicating the existence of a transcript for June 26,

2024 (See ECF 16-14, at 45).

    1.    Ryan Dillon-Capps did not have access to the contents of the Court Record, only

    to the ledger entries.

62    At 4:56 PM on July 2, 2024, Robert Brennen replied to Ryan Dillon-Capps, denying

access to the June 26, 2024, transcript.

    1.    Brennen also stated that the court filings reflected that Ryan Dillon-Capps owed

    Ohana Growth Partners, LLC $12,500 in fines.

    2.    He conditioned potential access to the transcript on Ryan Dillon-Capps fulfilling

    certain requirements (See ECF 16-14, at 45).

63    On July 3, 2024, at 2:58 PM, Robert Brennen emailed Ryan Dillon-Capps a litigation

hold letter (See ECF 16-14, at 47).

64    At 3:13 PM on July 3, 2024, Robert Brennen, Steven Frenkil, and Victoria Hoffberger

filed the Petition to Show Cause for Constructive Civil Contempt Seeking Incarceration on

behalf of Ohana Growth Partners, LLC (See ECF 16-15, at 47).

65      Daniel Levett's Affidavit from Hartman Executive Advisors was filed alongside the

Petition to Show Cause for Constructive Civil Contempt seeking incarceration (See Daniel

Levett's Affidavit Section Herein).

66      At 3:28 PM on July 3, 2024, Robert Brennen emailed Rachel Kiefer and Fallyn Allman,

copying Ryan Dillon-Capps, stating that he was uncertain whether Judge Barranco would preside

over the show cause hearing seeking incarceration but was sending courtesy copies of the filed

documents just in case (See ECF 16-14, at 49).

67      On Friday, July 5, 2024, at 3:16 PM, the clerk's office accepted all deficient filings

except Exhibit 1V.

        1.      At 3:21 PM, Clerk Ensor formally rejected Exhibit 1V (See ECF 16-1, at 2).

68      Judge Truffer denied the motion for reconsideration at 4:26 PM on July 5, 2024, just 1

hour and 10 minutes after a partially deficient refiling was accepted. However, the ruling was not

docketed until July 17, 2024, at 6:22 AM.

69      On Monday, July 8, 2024, at 7:22 AM, Robert Brennen emailed Ryan Dillon-Capps,

informing him that as of 2:00 PM on July 7, 2024, Ryan Dillon-Capps owed $25,000 (See ECF

16-14).

70      At 1:16 PM on July 8, 2024, Judge Barranco granted Ohana Growth Partners, LLC's

order to appear and show cause seeking incarceration, scheduling the hearing for August 7, 2024,

at 1:00 PM (See ECF 16-5, at 17).

71      On July 15, 2024, at 9:10 AM, Robert Brennen informed Ryan Dillon-Capps that as of

July 14, 2024, his alleged debt had increased to $42,500.

1.      Brennen also stated that Ohana Growth Partners, LLC had "regained" Global

Administrator access by using Ryan Dillon-Capps' account, subsequently disabling Ryan

Dillon-Capps, Null, and Break Glass accounts (See ECF 16-14, at 51).

2.      Following this email, court filings instead began relying on the perjured statement

that access was obtained through other means.

72      On July 17, 2024, at 6:32 AM, Robert Brennen emailed Ryan Dillon-Capps, stating that

between 8:00 and 8:30 AM, Ryan Dillon-Capps would receive a text message from GoDaddy to

reset the password for Ohana Growth Partners, LLC's GoDaddy account (See ECF 16-14, at 52).

1.      Prior to this lawsuit, no one had ever requested access to GoDaddy.

73      At 6:26 AM on July 17, 2024, Robert Brennen sent Ryan Dillon-Capps a text message,

threatening incarceration to deprive him of his cell phone and other devices if he did not provide

the text verification code, which was expected to arrive between 8:00 and 8:30 AM (See ECF

16-0, at 140).

74      At 8:13 AM on July 17, 2024, Ryan Dillon-Capps provided the code to Robert Brennen,

adding that Brennen was fortunate that he checked his phone in time and that he needed to

provide more notice in the future (See ECF 16-0, at 140).

75      At 8:15 AM on July 17, 2024, Ryan Dillon-Capps provided a second code to Robert

Brennen, who then confirmed the password reset was successful (See ECF 16-0, at 141).

| **FACTS** |
| --- |
| Ohana Growth Partners, LLC and Miles & Stockbridge P.C. filed the Petition for Show Cause seeking incarceration against Ryan Dillon-Capps on behalf of Ohana Growth Partners, LLC as retaliation for Ryan Dillon-Capps' filings, which exposed |

the unlawful nature of the proceedings and sought to hinder Ryan Dillon-Capps from obtaining legal representation.

The systematic obstruction, coupled with threats of punitive fines and incarceration, was intended to discourage and coerce Ryan Dillon-Capps from exercising his legal rights.

This lawsuit lacked any legitimate legal purpose, serving solely as an Abusive Use of the Judicial Process designed to block legal, administrative, and judicial review.

## DANIEL LEVETT'S AFFIDAVIT

76    Daniel Levett's Affidavit, submitted by Hartman Executive Advisors, was filed alongside the Petition to Show Cause for Constructive Civil Contempt seeking incarceration. In his affidavit, Daniel Levett affirms the following:

1.    Daniel Levett has been involved in Ohana Growth Partners, LLC's efforts since June 12, 2024 (See ECF 16-15, at 57).

    1.1    This statement constitutes either perjury or an admission of estoppel. However, given that Daniel Levett's next statement places his first activity on June 27, 2024, it is likely an act of perjury.

2.    Daniel Levett contacted Ohana Growth Partners, LLC Help Desk Manager, Dante Martinez, on June 27, 2024 (See ECF 16-15, at 58).

    2.1    Dante Martinez used his user administrator access to create an account for Daniel Levett (See ECF 16-15, at 58).

    2.2    Dante Martinez used his Exchange administrator access to provide access to Ryan Dillon-Capps' email mailbox (See ECF 16-15, at 58-59).

2.3    Dante Martinez used his Teams and Groups administrator access to provide access to the IT Department's secure documentation repositories. (See ECF 16-15, at 59).

3.    Daniel Levett attempted to reset the password and gain access to the GoDaddy account but was unable to do so because it required Multi-Factor Authentication (See ECF 16-15, at 59).

4.    Daniel Levett and Dante Martinez conducted a Teams meeting video conference and verified the existence of the Null and Break Glass accounts (See ECF 16-15, at 60), which Ryan Dillon-Capps had testified about during the hearing on the same day, June 27, 2024 (See ECF 23-12, at 46-47).

5.    Daniel Levett confirms Ryan Dillon-Capps' memory issues, stating that the only contradiction in the testimony regarding the Null and Break Glass accounts was that Ryan Dillon-Capps forgot that he had modified the accounts so that the key-fob was no longer needed (See ECF 16-15, at 60).

6.    Daniel Levett commits perjury by intentionally misleading the Court, claiming that Ryan Dillon-Capps could access his account using his cell phone or personal email address, while omitting the fact that the same is equally true for both Daniel Levett and Dante Martinez, who had access to Ryan Dillon-Capps' work email address (See ECF 16-15, at 61).

7.    Daniel Levett perjures himself again by intentionally misleading the Court, asserting that anyone can access the backup accounts by simply using the password, while failing to disclose that both Daniel Levett and Dante Martinez could reset the

password themselves and use their access to the account's email mailbox to complete the authentication process. (See ECF 16-15, at 61).

77    Daniel Levett's affidavit was intended to disprove Ryan Dillon-Capps' claim that Hartman Executive Advisors was not involved between June 12 and June 27, 2024. However, the affidavit failed to do so and instead provided evidence that Daniel Levett, Richard Hartman, Justin Drummond, Robert Brennen, Steven Frenkil, Victoria Hoffberger, and Jessica Duvall[1] made perjured statements regarding:

    1.    Ohana Growth Partners, LLC's access to Global Administrator accounts;

    2.    The claim that Ohana Growth Partners, LLC had no other administrators.

78    Furthermore, both Ohana Growth Partners, LLC and Miles & Stockbridge P.C. were fully aware that the lawsuit was fraudulent and based on perjured statements upon their return from the June 27, 2024, hearing. This is evident because Daniel Levett had no independent means of knowing about the remote Help Desk or how to contact them unless he had been instructed by Ohana Growth Partners, LLC and Miles & Stockbridge P.C.

### M365 PERJURY

79    This is a list of perjured statements regarding Ohana Growth Partners, LLC, specifically their false claims that the company:

    1.    Had no access to Microsoft 365,

    2.    Had no other Microsoft 365 Global Admins, and

    3.    That Ryan Dillon-Capps refused to provide access. (**ECF 34-0**)

80    These statements, as presented in their **pleadings**:

---

[1] Robert Brennen repeated these perjured statements under oath during the hearings.  Robert Brennen, Steven Frenkil, Victoria Hoffberger, and Jessica Duvall are equally liable for the filings.

COMPLAINT

1.    Ryan Dillon-Capps refusal (See ECF 23-1, at 3)
2.    Ryan Dillon-Capps severed and discontinued all administrative access (See ECF 23-1, at 4)
3.    Ryan Dillon-Capps refusal (See ECF 23-4)
4.    Ryan Dillon-Capps refusal (See ECF 23-4)
5.    Ryan Dillon-Capps has exclusive global admin access (See ECF 23-1, at 4-5)
6.    Richard Hartman is locked out and has no way to gain access to his M365 account (See ECF 23-1, at 5)
7.    Ohana Growth Partners, LLC is without M365 admin access (See ECF 23-1, at 6)
8.    Ryan Dillon-Capps has exclusive M365 admin access (See ECF 23-1, at 6)
9.    Ryan Dillon-Capps refusal (see ECF 23-1, at 6)
10.   Ryan Dillon-Capps refusal (see ECF 23-1, at 7)
11.   Ohana Growth Partners, LLC seeks injunctive relief to be provided with Global Admin access (See ECF 23-1, at 7)
12.   Ryan Dillon-Capps refusal (see ECF 23-1, at 8)
13.   Ohana Growth Partners, LLC seeks injunctive relief to be provided with Global Admin access (See ECF 23-1, at 8)
14.   Ryan Dillon-Capps refusal (see ECF 23-1, at 8)
15.   Ohana Growth Partners, LLC seeks injunctive relief to be provided with Global Admin access (See ECF 23-1, at 9)

MOTION FOR TRO/PI JUNE 14, 2024

16.   Ryan Dillon-Capps holding hostage (see ECF 23-3, at 1)
17.   Ryan Dillon-Capps severed and discontinued (See ECF 23-3, at 1)
18.   Ryan Dillon-Capps directives disobeyed (See ECF 23-3, at 2)
19.   Ryan Dillon-Capps sole admin control (See ECF 23-3, at 2)
20.   Ryan Dillon-Capps refused to comply (See ECF 23-3, at 3)
21.   Ryan Dillon-Capps exclusive admin rights (See ECF 23-3, at 3)
22.   Richard Hartman unable to restore his account access (See ECF 23-3, at 2)
23.   Ohana Growth Partners, LLC unable to manage Microsoft 365 (See ECF 23-3, at 3)
24.   Ryan Dillon-Capps has exclusive admin (See ECF 23-3, at 4)
25.   Ryan Dillon-Capps refusal (See ECF 23-3, at 4)

MEMO IN SUPPORT OF TRO/PI

26.   Ryan Dillon-Capps removed all access (See ECF 23-4, at 1)
27.   Ryan Dillon-Capps has no admin access (See ECF 23-4, at 1)
28.   Ryan Dillon-Capps severed and discontinued all admin access (See ECF 23-4, at 3)
29.   Ryan Dillon-Capps refusal (See ECF 23-4, at 3)
30.   Ryan Dillon-Capps disobeyed (See ECF 23-4, at 4)
31.   Ryan Dillon-Capps refused (See ECF 23-4, at 4)
32.   Ryan Dillon-Capps sole admin control (See ECF 23-4, at 4)
33.   Ryan Dillon-Capps refused (See ECF 23-4, at 4)
34.   Ryan Dillon-Capps exclusive admin rights (See ECF 23-4, at 4)
35.   Richard Hartman unable to obtain access (See ECF 23-4, at 5)

36.    Ryan Dillon-Capps has not complied (See ECF 23-4, at 6)
37.    Ohana Growth Partners, LLC is without admin rights (See ECF 23-4, at 6)
38.    Ryan Dillon-Capps has exclusive admin rights (See ECF 23-4, at 6)
39.    Ryan Dillon-Capps holds exclusive admin control (See ECF 23-4, at 6)
40.    Ryan Dillon-Capps refusal (See ECF 23-4, at 6)
41.    Ryan Dillon-Capps refusal (See ECF 23-4, at 9)
42.    Ryan Dillon-Capps hold hostage all admin access (See ECF 23-4, at 9)
43.    Ryan Dillon-Capps exclusive control (See ECF 23-4, at 10)
44.    Ryan Dillon-Capps sole possession of admin rights (See ECF 23-4, at 10)
45.    Ryan Dillon-Capps refuse directions (See ECF 23-4, at 10)
46.    Ryan Dillon-Capps system hostage (See ECF 23-4, at 11)
47.    Ohana Growth Partners, LLC has no control (See ECF 23-4, at 12)
48.    Ohana Growth Partners, LLC rightful return of control (See ECF 23-4, at 14)

RICHARD HARTMAN AFFIDAVIT

49.    Ryan Dillon-Capps severed and discontinued all admin access (See ECF 23-5, at 3)
50.    Ryan Dillon-Capps refusal (see ECF 23-5, at 3)
51.    Ryan Dillon-Capps directives disobeyed (See ECF 23-5, at 3)
52.    Ryan Dillon-Capps refused (See ECF 23-5, at 3)
53.    Ryan Dillon-Capps refusing to comply (See ECF 23-5, at 3)
54.    Ohana Growth Partners, LLC regain control (See ECF 23-5, at 4)
55.    Ryan Dillon-Capps exclusive admin rights (See ECF 23-5, at 4)
56.    Ryan Dillon-Capps only person with admin (See ECF 23-5, at 4)
57.    Richard Hartman unable to restore access (See ECF 23-5, at 4)
58.    Ohana Growth Partners, LLC without admin rights (See ECF 23-5, at 5)
59.    Ryan Dillon-Capps exclusive admin control (See ECF 23-5, at 5)

JUSTIN DRUMMOND AFFIDAVIT

60.    Ryan Dillon-Capps severed and discontinued all admin (See ECF 23-6, at 1)
61.    Ryan Dillon-Capps directives disobeyed (See ECF 23-6, at 1)
62.    Ryan Dillon-Capps refused (See ECF 23-6, at 1)
63.    Ryan Dillon-Capps exclusive admin rights (See ECF 23-6, at 2)
64.    Ryan Dillon-Capps only person with admin rights (See ECF 23-6, at 2)
65.    Richard Hartman unable to restore access (See ECF 23-6, at 2)
66.    Ryan Dillon-Capps not complied (See ECF 23-6, at 3)
67.    Ohana Growth Partners, LLC without admin rights (See ECF 23-6, at 3)
68.    Ryan Dillon-Capps exclusive admin control (See ECF 23-6, at 3)

CHIEF ASSOCIATE JUDGE MICHAEL J. FINIFTER

81    The Honorable Michael J. Finifter was not named in Ryan Dillon-Capps' original

complaint, but his name appears in several key instances:

1.    June 14, 2024 – Certificate of Notice (See ECF 23-9, at 1)

1.1    **Robert Brennen** indicated that he intended to seek an **ex parte TRO**
from **Judge Finifter**.

2.    October 11, 2024 – Third Request for Administrative Judge Hearing (See ECF
16-5, at 39)

2.1    Judge Finifter granted Ryan Dillon-Capps' request for a hearing.

2.2    This occurred while County Administrative Judge Robinson Jr. was away
from the Circuit Court of Baltimore County.

2.3    Evidence strongly supports that Judge Robinson Jr. was meeting with
Tanya C. Bernstein, and circumstantial evidence suggests involvement by
Thomas DeGonia II, during the week of October 7–11, 2024.

3.    October 25, 2024 – Order Striking Deficient Submission(s) (See ECF 16-5, at 41)

3.1    This order was connected to the October 11, 2024, ruling in which Judge
Finifter granted the request for a hearing.

82    Drawing a definitive conclusion remains challenging. However, what is clear is that:

1.    Judge Finifter did not grant a no-notice TRO to a plaintiff who was barred from
receiving injunctive relief, despite the case involving contradictory filings, perjured
statements, and a lack of jurisdiction.

2.    Judge Finifter granted a hearing on the merits for Ryan Dillon-Capps.

3.    The striking of the submission occurred after County Administrative Judge
Robinson Jr. was actively engaging with others in what appears to be a cover-up, which
coincided with the filing of the Notice of Voluntary Dismissal.

ASSOCIATE JUDGE JAN MARSHALL ALEXANDER

83     The Honorable Jan Marshall Alexander ("JMA") issued a single ruling on the Motion for

an Extension (See ECF 16-5, at 18) and later responded to the request for clarification (See ECF

16-15, at 19). This filing was among several that were intended to be joined to a notice of line

filing in Docket No. 17114092.

84     The Motion was filed electronically at 9:13 AM on July 8, 2024, and docketed at 2:31

PM. Notably, Judge JMA's ruling was issued at 3:08 PM, a mere 37 minutes after the motion

was docketed, making it the fastest ruling that Ryan Dillon-Capps received for an e-filed motion

during the state court proceedings (See ECF 16-1, at 2).

85     The clarification was filed less than 90 minutes later at 5:00 PM but was not docketed

until July 22, 2024, at 10:11 AM. The motion, spanning five pages, included cited case law and

exhibits and presented the following arguments:

1.     **Violation of Md. R. Spec. Proc. 15-206:**

   1.1     This rule legally establishes that Judge Truffer's denial of a hearing to

   vacate or modify the ex parte TRO within 48 hours exceeded judicial discretion.

   1.2     Additionally, Judge Truffer's scheduling of the show cause hearing with

   less than 20 days' notice also exceeded judicial discretion.

   1.3     This argument, spanning less than a page, is direct and straightforward,

   supported by clear legal citations that leave little room for denial.

2.     **Violation of Md. Gen. Provi. 1-203:**

   2.1     This argument asserts that subdivision (d), which allows extensions of

   time upon the death of a party, should apply because Ryan Dillon-Capps' legal

   counsel suffered a family member's death before formally entering the case.

   2.2     The motion cites six precedents addressing:

(A)     Procedural fairness,

(B)     Bereavement considerations during legal proceedings,

(C)     Procedural extensions to prevent prejudice,

(D)     Ensuring fair proceedings, and

(E)     The court's duty to ensure a defendant has effective assistance of

counsel.

86     Both arguments were framed around the insufficient time to prepare for the hearings held

on June 26 and 27.

87     The clarification stated that no counsel had formally entered an appearance, and that no

assertion was made that Ryan Dillon-Capps sought consent from opposing counsel first.

However, this directly contradicted the arguments being asserted, which inherently relied on the

premise that prior attempts to seek consent had been made. The line filing further reinforced this

contradiction, as it was submitted in the same envelope as this motion and two other motions.

The line filing explicitly linked all of them to the motion for reconsideration of the

continuance—the same motion from June 27th that had been denied without arguments being

heard. Furthermore, there was no ruling on the first argument at all, leaving critical issues

unaddressed.

88     Without the opportunity for depositions or discovery, the exact circumstances remain

unclear. However, there exists a potential defense for the Judge, wherein it is possible that the

motion was directed to her without the accompanying line filing or supporting evidence. If this

were the case, the ruling—though representing fraud upon the court—would not have been

committed by her. Instead, the ruling may have been issued under the assumption that

jurisdiction existed, that no prior violations of judicial discretion had occurred, and that reliance on fellow judges' actions was justified.

## SUMMARY

89    This affidavit covers additional violations of Mail Fraud, Wire Fraud, Abusive Use of the Judicial System, Fraud on the Court, Perjury, Falsifying Court Records, Conspiracy, and more. The state court lawsuit began on June 14, 2024, and after three affidavits we have only started to progress into August 2024.

90    The felonious conduct is explicitly documented with supporting evidence, and I continue to suffer ongoing irreparable harm. A pending Rule 59(e) motion seeks to restore the status quo of my employment and halt the egregious financial harm I have endured, including financial default and a collapse of my credit score. My remanded claims were filed with the Court on December 27, 2024, supported by what the Court itself described as over 2,000 pages of evidence.

91    It is deeply concerning that the Court has assessed my claims as legally impossible to succeed without conducting an evidentiary hearing, despite 55 days passing since the case was filed and the voluminous evidence presented. The Court's memorandums and orders reveal clear misunderstandings of material facts—none more apparent than its failure to recognize that I was employed by Ohana Growth Partners, LLC for years. My statements and supporting evidence establish that I had been approved for intermittent FMLA leave, had provided notice to my employer hours before they unlawfully interfered with my FMLA leave, and was subsequently retaliated against for asserting my right to take protected leave.

92    The state court lawsuit lacked any legitimate legal basis and was instead a malicious

attempt by Ohana Growth Partners, LLC to cause me harm—harm that remains ongoing, severe,

and irreparable.

### DECLARATION OF AFFIRMATION

I solemnly declare and affirm under penalty of perjury, based on my personal knowledge, that
the contents of the foregoing affidavit and all accompanying exhibits are true and correct to
the best of my knowledge.

February 20, 2025

/s/ Ryan Dillon-Capps
**Ryan Dillon-Capps**

1334 Maple Avenue
Essex, Maryland 21221
ryan@mxt3.com
703-303-1113