# IN THE UNITED STATES COURT
# OF APPEALS FOR THE FOURTH CIRCUIT

RYAN DILLON-CAPPS

*Plaintiff-Appellant,*
vs.

OHANA GROWTH PARTNERS, LLC
*et al*

*Defendants-Appellees.*

No. **25-1162**

On Appeal from the U.S. District
Court
Northern District of Maryland
No. 1:24-CV-3744

Affidavit of Ryan Dillon-Capps Hope, Good Faith, and
Certificate of Notice

## Table of Contents

TABLE OF CONTENTS ................................................................. 1

INTRODUCTION ......................................................................... 2

I STATE COURT FILING NOTICES ........................................... 2

    A INJUNCTIVE RELIEF ........................................................... 7

    B HEARINGS ........................................................................ 8

    C JUDGEMENT ..................................................................... 8

    D DISTRICT COURT OF MARYLAND .................................... 9

II STATE OF MARYLAND ......................................................... 9

    A CIRCUIT COURT FOR BALTIMORE COUNTY ................... 10

    B MARYLAND OFFICE OF THE ATTORNEY GENERAL AND CIVIL RIGHTS
DIVISION OF THE MARYLAND OFFICE OF THE ATTORNEY GENERAL............... 10

    C MARYLAND OFFICE OF THE ATTORNEY GENERAL ....................................... 10

    D CIVIL RIGHTS DIVISION OF THE MARYLAND OFFICE OF THE ATTORNEY
GENERAL ......................................................................................................... 14

    E MARYLAND COMMISSION ON CIVIL RIGHTS............................................... 14

    F MARYLAND OFFICE OF ADMINISTRATIVE HEARINGS ................................. 15

G COUNTY CLERK RECORDS AND JUDICIAL INFORMATION SYSTEMS ............. 15
H DIGITAL RECORDING OFFICE AND MICHAEL S. BARRANCO CHAMBERS ..... 16
I KEITH R. TRUFFER CHAMBERS ................................................................ 17
J MARYLAND JUDICIARY COMMISSION ON JUDICIAL DISABILITIES ............... 18
K ATTORNEY GRIEVANCE COMMISSION AND OFFICE OF THE BAR COUNSEL . 19

**III OHANA GROWTH PARTNERS, LLC** ................................................... **22**

A JAY LENROW ....................................................................................... 22
B HOLLY DRUMHELLER BUTLER ............................................................. 22
C INTERNAL ........................................................................................... 23

**IV OHANA GROWTH PARTNERS AND MILES & STOCKBRIDGE P.C.** ............................................................................................................ **25**

A ROBERT S. BRENNEN AND LEGAL TEAM FROM MILES & STOCKBRIDGE ..... 25

**V MILES & STOCKBRIDGE** .................................................................... **37**

A NANCY WHITEMAN GREENE ................................................................ 37

**VI UNITED STATES FEDERAL GOVERNMENT** ................................... **37**

A U.S. DEPARTMENT OF JUSTICE CIVIL RIGHTS DIVISION ........................... 37
B UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT ............... 38

**DECLARATION OF AFFIRMATION** ........................................................ **38**

<u>Introduction</u>

I, **Ryan Dillon-Capps (née Wagner)**, the **Appellant**, being over the age of eighteen (18), competent to testify, and having personal knowledge of the facts contained herein, declare under penalty of perjury pursuant to **28 U.S.C. § 1746** that the following is true and correct. For all sections in this affidavit the citations are provided at the end of the statements of facts.

I <u>State Court Filing Notices</u>

The Table of Exhibits filed as District ECF 1-12 and Circuit ECF 25-11, and later updated and refiled as Circuit ECF 30-0, describes Exhibit 110 on page 5 of the original and page 3 of the updated version as follows:

"Ex Parte, Injunctive, Summary/Default Judgement Hearing [with Digital Zip]
1-7 Request for Prehearing Conference to Discuss Injunctive Relief
8-15 Request for Mandatory Judicial Notice Hearing on Material Facts
16-40 Motion for Directed Verdict
41-49 Memorandum of Law in Support of Established Facts and Claims
50-61 Affidavit of Factual Basis
62-65 Motion to Preserve Court Records"

However, the original electronic filing of District ECF 16-13 was intentionally altered by Judge Hurson. Specifically, pages 29–65 were moved to the beginning and renumbered as pages 1–37. This manipulation concealed the true original page 1, which contained a red PDF header comment dated December 18, 2024, providing critical notice and procedural context for Exhibit 110. The altered version obfuscated this header and materially distorted the evidentiary structure. It also misrepresented the procedural posture, concealing the fact that the procedural prerequisites for injunctive relief, evidentiary hearings, and judgement as a matter of law had been met. Judge Hurson later relied on this falsified record to justify his denial of emergency injunctive relief in his January 8, 2025 memorandum and order (District ECF 18-0, at 20) and again in his February 12, 2025

memorandum and order (District ECF 27-0, at 1), claiming I had failed to satisfy necessary procedural prerequisites.

Those rulings, predicated on an altered record, denied relief sought to prevent further irreparable harm and to restore and preserve the status quo. Some of that harm has since reached a state of irreversible finality with other irreversible harm growing ever closer to finality for every minute that passes. This includes the worsening symptomology associated with malignant catatonia which constitutes a medical emergency because it is life-threatening and can become fatal suddenly with out sufficient opportunity to prevent death. Additionally, my dissociative episodes and periods of amnesia have permanently disrupted my cognitive functioning, leaving me unable at times to care for myself or litigate effectively.

It would be improper for any third party—particularly one unfamiliar with my baseline intellectual and cognitive abilities prior to these injuries—to form subjective conclusions about my current performance or capacity. My functioning now varies between approximately three-fifths of my prior abilities, often requiring assistance with basic tasks.

It has now been nearly eleven months since I was suspended without pay on June 13, 2024—a decision that Ohana Growth Partners, LLC has openly acknowledged was taken in direct response to my use of intermittent FMLA leave. This fact is evidenced by the coercive demand issued on June

Affidavit of Ryan Dillon-Capps Hope, Good Faith, and Certificate of Notice

4

13, which preceded the suspension; it is reaffirmed in the suspension notice itself, in Richard Hartman's June 14, 2024 affidavit, and in Robert Brennen's statements made in open court during the June 26, 2024 hearing. My termination letter, dated July 30, 2024, provided no explanation, leaving the only reasonable inference that it was a continuation of the same retaliatory course of conduct.

I am the prevailing party in the state court action initiated by Ohana Growth Partners, LLC—a proceeding brought under a false pretext that was not only refuted by their own filings but also rebutted by thousands of pages of documentary evidence submitted by me. In contrast to the reality-altering rulings issued by Judge Hurson to shield the defendants, the only parties who have ever relied on conclusory, unsupported, and facially implausible claims are the defendants themselves.

The defendants' conduct and their co-conspirator Brendan Abel Hurson are demonstratively guided by the belief that obstructing relief will allow the unlawful outcomes to reach finality. That belief has caused catastrophic and accelerating harm. My credit score has plummeted from over 750 to 348 (see Figure 1). I am in default on all financial accounts. My bank accounts are overdrawn, and several have been permanently closed. My personal vehicle has been repossessed. My wife's leased vehicle is due to be surrendered on

Friday, May 9, 2025, which will leave us without transportation in a locality that lacks adequate public transit.

We will be unable to reliably acquire food or other basic necessities, and we will be left with no means of obtaining medical care other than emergency services. Only through an unexpected and fortunate influx of capital have we managed to keep utilities, phone, and internet services active and food on the table—but those resources are nearly depleted. Eviction proceedings are expected to begin next week.



**Figure 1:**

The correct, unaltered version of Exhibit 110 was refiled as Circuit ECF 28-12. It includes the original red PDF comment, which states:

> "1) Defendants were notified in advance of our intent to seek injunction.
> 2) Defendants had refused numerous attempts for them to produce any material evidence to refute our evidence based statements of fact.
> 3) Defendants were notified of our intent and desire for an Ex Parte Hearing – to adjudicate our facts and then…

> 4) Seek judgement based on the facts because the Defendants had been provided months of opportunity and have failed to offer up any material evidence.
> 5) Defendants have explicitly been told the Federal Maryland District court was the venue, and they have spent their time fabricating a court record to what was the court record.
> RDC has completed the requirements for an Ex Parte Hearing seeking injunctive relief and partial judgement on numerous counts."

See Circuit ECF 4-2; Circuit ECF 15-4; Circuit ECF 15-4; Circuit ECF 24-2; Circuit ECF 24-3; Circuit ECF 24-4; Circuit ECF 25-11; Circuit ECF 26-14; Circuit ECF 27-3; Circuit ECF 27-5; Circuit ECF 27-21; Circuit ECF 27-22; Circuit ECF 28-1, at 14-65, 115, 136, 143-144, 158, 160; Circuit ECF 28-12; Circuit ECF 30-0.

## A  Injunctive Relief

I provided notice of my intent to seek "additional injunctive relief" in the <u>Request for Prehearing Conference to Discuss Injunctive Relief</u> that was filed to the Circuit Court of Baltimore County on November 1, 2024, at 8:43 PM in envelope 18662858.  A copy of the request was emailed to Ohana Growth Partners, LLC lead counsel Robert S. Brennen, rbrennen@milesstockbridge.com, and served via first-class, postage paid to Robert S. Brennen Miles & Stockbridge P.C. 100 Light Street Baltimore Maryland 21202.

See Circuit ECF 28-12, at 1-7.

**B Hearings**

I provided notice of my intent to seek an evidentiary hearing to review the "preponderance of evidence" that "remain unchallenged" in the <u>Request for Mandatory Judicial Notice Hearing on Material Facts</u> that was filed to the Circuit Court of Baltimore County on November 1, 2024, at 9:18 AM in envelope 18649236. A copy of the request was emailed to Ohana Growth Partners, LLC lead counsel Robert S. Brennen,

rbrennen@milesstockbridge.com, and served on via first-class, postage paid to Robert S. Brennen Miles & Stockbridge P.C. 100 Light Street Baltimore Maryland 21202. In addition to providing notice of my request seeking Judicial Notice of Facts of the case and controversy, I was also seeking to have the facts adjudicated in connection with my "health and mental wellbeing", "career harm", and "financial harm".

See Circuit ECF 28-12, at 8-15; See also Circuit ECF 28-12, at 41-49(Memorandum of Law in Support of Established Facts and Claims on November 8); Circuit ECF 28-12, at 50-61 (Affidavit of Factual Basis on November 8)

**C Judgement**

I provided notice of my intent to see "judgement as a matter of law" in the <u>Motion for Directed Verdict</u> that was filed to the Circuit Court of Baltimore County on November 1, 2024, at 9:18 AM in envelope 18649236. A

copy of the request was emailed to Ohana Growth Partners, LLC lead counsel Robert S. Brennen, rbrennen@milesstockbridge.com, and served on via first-class, postage paid to Robert S. Brennen Miles & Stockbridge P.C. 100 Light Street Baltimore Maryland 21202.

See Circuit ECF 28-12, at 16-40.

## D  District Court of Maryland

I provided notice of my intent to pursue my claims in the United States District Court for the District of Maryland in the <u>Motion to Preserve Court Records</u> that was filed to the Circuit Court of Baltimore County on November 7, 2024, at 11:42 AM in envelope 18716089. A copy of the motion was emailed to their counsel rbrennen@milesstockbridge.com and served on via first-class, postage paid to Robert S. Brennen Miles & Stockbridge P.C. 100 Light Street Baltimore Maryland 21202.  The motion also directed the state court to take judicial notice to preserve the court records, and stated the basis was "due to jurisdictional limitations, missing parties, and other factors, complete adjudication of all relevant claims is not feasible in the Baltimore County Circuit Court at this time."

See Circuit ECF 28-12, at 62-65.

## II  <u>State of Maryland</u>

## A  Circuit Court for Baltimore County

On October 5 and October 7, 2024, the Circuit Court for Baltimore County judicial bench received notice and opportunity to negotiate a resolution in good faith before filing a lawsuit via email that was sent to mdmanual@maryland.gov.

See Circuit ECF 28-7, at 24-26.

## B  Maryland Office of the Attorney General and Civil Rights Division of the Maryland Office of the Attorney General

On October 9, 2024, I provided notice to the Maryland Office of the Attorney General and its Civil Rights Division regarding ongoing fraud upon the court and civil rights violations occurring in the state court proceedings. The notice included detailed information about the physical, mental, financial, and reputational harm suffered by myself, my wife, my disabled brother, and my elderly and disabled mother. The communication was submitted via the Maryland Attorney General's online complaint form and by email to civilrights@oag.state.md.us, anthony.brown@oag.state.md.us, oag@oag.state.md.us, carolyn.quattrocki@oag.state.md.us, zenita.wickham-hurley@oag.state.md.us, candace.mclaren-lanham@oag.state.md.us, doris.lange@oag.state.md.us, and patrick.sheridan@oag.state.md.us.

## C  Maryland Office of the Attorney General

On February 27, April 29, and May 2, 2025, I submitted additional notices to the Office of the Attorney General via oag@oag.state.md.us and

Affidavit of Ryan Dillon-Capps Hope, Good Faith, and Certificate of Notice

10

jspiker@oag.state.md.us, informing them that this matter had proceeded to the United States Court of Appeals for the Fourth Circuit. These communications renewed the State's opportunity to negotiate a resolution in good faith, included the original December 27, 2024, filing (in zipped format), reiterated my notice of intent to seek injunctive relief, evidentiary hearings, and judgment as a matter of law, and gave new notice of my intent to seek default judgment. They also stated my intent to pursue discovery, depositions, and all necessary procedural steps to ensure complete adjudication of the claims, and included an opportunity to return a Waiver of Service of Summons pursuant to FRCP 4(d).

On May 4, 2025, Deputy Chief James O. Spiker IV of the Office of the Attorney General, Courts & Judicial Affairs Division, responded to acknowledge receipt of the waiver request on behalf of the following parties: the State of Maryland, the Circuit Court for Baltimore County, Dennis M. Robinson Jr., H. Patrick Stringer, Michael S. Barranco, Stacey A. Mayer, Andrew M. Battista, Jan M. Alexander, Keith R. Truffer, Marc A. DeSimone Jr., Judith C. Ensor, Thomas M. DeGonia II, and Tanya C. Bernstein.

On May 7, 2025, Deputy Chief James O. Spiker IV of the Office of the Attorney General, Courts & Judicial Affairs Division, responded to the May 4, 2025 email and reiterated his acknowledged receipt of the waiver request on behalf of the following parties: the State of Maryland, the Circuit Court for

Baltimore County, Dennis M. Robinson Jr., H. Patrick Stringer, Michael S. Barranco, Stacey A. Mayer, Andrew M. Battista, Jan M. Alexander, Keith R. Truffer, Marc A. DeSimone Jr., Judith C. Ensor, Thomas M. DeGonia II, and Tanya C. Bernstein. Mr. Spiker asserted the sovereign's position in the matter as one where it is "unable to waive service as to the action from which the State defendants have been dismissed, as it would not be proper to serve the State defendants at all. In the event that the dismissal is reversed, we will consider your request at that time."

Later that same day, I sent a formal response reiterating that Judge Brendan A. Hurson's ruling—on which the refusal to waive service is based— is under interlocutory appeal before the Fourth Circuit and is itself the subject of structural error, fraud on the court, and jurisdictional misconduct claims, including allegations of bribery, record tampering, and undisclosed conflicts of interest. I explained that the ruling relied upon is neither final nor valid and was rendered *void ab initio* due to Judge Hurson's lack of subject-matter jurisdiction.

As stated in my May 7, 2025, response:

> "Your email establishes receipt of the complaint and waiver of service requests on behalf of the State of Maryland, the Circuit Court for Baltimore County, and numerous individual defendants, including members of the judiciary and the Office of Bar Counsel. As you are aware, waiver of service under Rule 4(d) is a procedural accommodation—not a concession of liability or

jurisdiction. Refusing waiver under these circumstances reinforces existing claims of obstruction and collusion, and reflects a broader pattern of bad faith consistent with the allegations now before the courts.

Accordingly, I strongly urge your office to reconsider and execute the waiver of service. If you continue to decline, I will proceed with formal service through the U.S. Marshals under Rule 4(e) and will seek recovery of all associated costs and sanctions as provided by Rule 4(d)(2). That said, the extraordinary nature of this case—including demonstrable misconduct by both current and pending defendants—places it squarely within the narrow class of proceedings in which non-discretionary petitions may be pursued as a matter of right under the established principles and usages of law. In such circumstances, a court of equity is not merely empowered but compelled to set aside procedural formalities where enforcement of the non-offending party's fundamental rights, preservation of judicial integrity, and prevention of irreparable harm demand immediate and overriding intervention.

As I have stated repeatedly—and which continues to be substantively omitted from responses—the opportunity to engage in good-faith negotiations remains open, but must be exercised promptly. Further delay will render any acceptance presumptively insincere and indistinguishable from the existing pattern of bad-faith conduct intended to evade accountability and liability. This statement reiterates my prior formal notices, including, but not limited to, my declared intent to seek injunctive relief, evidentiary hearings, and judgment. Whereas my original position sought to limit relief against the sovereign, your continued reliance on procedural abuse has materially altered my posture in response to that bad faith.

The State's established waiver of immunity through multiple invocations of federal jurisdiction, combined with the interrelated claims subject to congressional abrogation, entitles me to pursue all forms of relief available under state and federal law. I will exercise that right in full, including—but not limited to—my express notice in the amended informal brief, now further supported by newly uncovered evidence, which compels the inclusion of pre-existing claims challenging the 2024 judicial election in my federal action. I possess a unique statutory and constitutional right to do so, having timely filed challenges to

Affidavit of Ryan Dillon-Capps Hope, Good Faith, and Certificate of Notice

13

> judicial candidates in the Circuit Court for Baltimore County under Maryland law. That filing preserves my right not only to challenge the 2024 judicial election, but also to challenge the constitutionality of the State's judicial election system itself.
>
> Since the filing of the federal action, I have preserved claims against numerous additional individuals identified by their official titles, departments, and roles—claims asserted solely within the scope of their professional duties and under color of law. This was done as a courtesy to the sovereign, in good faith. However, continued bad-faith conduct will compel the addition of these individuals by name to the list of defendants, along with numerous unidentified Does who will be named as discovery progresses. This communication reiterates my willingness to engage in immediate good-faith negotiations. Please advise how you wish to proceed. In the absence of a timely and substantive demonstration of good faith, both action and inaction will be deemed further evidence of continued bad-faith conduct."

See Circuit ECF 28-7, at 1–6; Exhibit 206, at 1–4, 51-52.

## D  Civil Rights Division of the Maryland Office of the Attorney General

On January 17, 2025, I filed a complaint to the Civil Rights Division of

the Maryland Office of the Attorney General to provide an updated

complaint.

See Exhibit 206, at 11.

## E  Maryland Commission on Civil Rights

On January 17, 2025, I filed a complaint with the E  Maryland

Commission on Civil Rights on the on-going civil rights violations which

included the judge, employer, and attorney defendants criminal misconduct.

See Exhibit 206, at 12-21.

**F  Maryland Office of Administrative Hearings**

On October 10 and October 11, 2024, the Maryland Office of

Administrative Hearings received notice regarding intentional obstruction by

the Clerk's Office for the Circuit Court for Baltimore County that was

preventing me from filing through normal channels, along with other civil

rights concerns. The notice was sent and acknowledged via email

communications with administrativehearings@baltimorecountymd.gov,

daniel.andrews@maryland.gov, and chung.pak@maryland.gov.

See Circuit ECF 28-7, at 7–10.

**G  County Clerk Records and Judicial Information Systems**

Following communications between October 23 and October 28, 2024,

with Eleanor Fisher (eleanor.fisher@mdcourts.gov) and the Baltimore County

Clerk Records Leads (ccbaltcoclerkrecordsleads@mdcourts.gov) regarding the

court record, a support ticket was opened with the Judicial Information

Systems department. Eleanor Fisher produced an invoice to copy 27 signed

orders totaling 328 pages. However, as of October 28, neither the active court

record nor any subsequently cloned versions have reconciled the existence of

27 signed orders dated on or before that date, nor the 328-page count.

Between October 28 and October 30, 2024, the Judicial Information

Systems department received notice of these discrepancies under ticket

number INC0820376. This included both phone communications with Geno

Frazier and email correspondence with mdcourts@service-now.com. "Service Now" is the platform used for Maryland Judiciary's internal ticketing. The ticket was marked closed on November 2, 2024.

In a follow-up with Eleanor Fisher, I was informed that she had consulted her supervisor—understood to be Dennis M. Robinson Jr., not Judith C. Ensor—and was directed to advise me to visit the Law Library in person at the Circuit Court to verify my case documents using the onsite computers. This recommendation directly contradicted prior communications in the email thread and the Service Now ticket, both of which stated that I had the same level of access to the court record as any other party. I responded to Eleanor Fisher that the in-person option was not viable due to my agoraphobia, which makes that method of record access unworkable as a daily or regular solution. No additional solutions were rendered.

See Circuit ECF 28-7, at 11–12, 15–23.

## H  Digital Recording Office and Michael S. Barranco Chambers

On June 26, 2024, I emailed an ADA accommodation request for a transcript of the June 26, 2024, hearing to Rachel Kiefer (rachel.kiefer@mdcourts.gov) and Fallyn Allman (fallyn.allman@mdcourts.gov), both from the chambers of defendant Judge Michael S. Barranco. Lead counsel for Ohana Growth Partners, LLC, Robert Brennen (rbrennen@milesstockbridge.com) of Miles & Stockbridge, P.C., had

already requested the transcript and was copied on the email. On June 27,

2024, Rachel Kiefer forwarded the request to Sharon L. Ellingson of the

Digital Recording Office for the Circuit Court for Baltimore County

(baltcodigrec@mdcourts.gov), who responded with a quote of $25.00 for an

audio link or an estimated cost of approximately $300.00 for the transcript—

despite the transcript had already been paid for by Ohana Growth Partners,

LLC. Miles & Stockbridge P.C. obstructed access to the transcript until

September 30, 2024.

See Circuit ECF 28-7, at 13–14; Circuit ECF 28-13, at 67.

**I  Keith R. Truffer Chambers**

On July 12, 2024, I emailed Lauren Prinkey

(lauren.prinkey@mdcourts.gov), Judicial Assistant to defendant Judge Keith

R. Truffer, to inquire about an email that Robert Brennen

(rbrennen@milesstockbridge.com) had entered into evidence during the June

26–27, 2024, hearing. I had no record of ever receiving that email, and there

was no explanation as to how Ms. Prinkey would have obtained my personal

email address. All prior notices—including those related to the ex parte TRO,

the corresponding certificate of service, and docket entries filed by the

defendants—had been sent exclusively to my work email, which I no longer

had access to due to my suspension. The email in question is directly linked

to the same court record pages that Judge Truffer later removed from the file.

Ms. Prinkey's response curiously began with "once again," despite the fact that the July 12 message appears to be the first email I ever sent her.

See Circuit ECF 28-7, at 27.

### J  Maryland Judiciary Commission on Judicial Disabilities

On October 8, 2024, I submitted a complaint through the Maryland Judiciary Commission on Judicial Disabilities' web form (complaintsJD@mdcourts.gov) and received a confirmation email. A letter dated October 11, 2024, signed by Tanya C. Bernstein, Director/Investigative Counsel, was later mailed to my home address via USPS claiming to have found no merit in the allegations against an "unknown judge". On November 10, 2024, I followed up with the Commission by email, reiterating the allegations previously submitted and referencing the Motion to Compel. In that communication, I specifically named defendant Dennis M. Robinson Jr. as the judge who had ruled on the motion, and I attached both the motion and the June 26th and 27th hearing transcripts, which were also referenced in the body of the email. The email addressed the fraudulent nature of the lawsuit, and described the physical, mental, financial, and reputational harm inflicted upon me, my wife, my brother, and my mother. It also detailed civil rights violations including procedural due process violations, a biased tribunal, and acts of obstruction.

See Circuit ECF 28-7, at 28-33.

## K  Attorney Grievance Commission and Office of the Bar Counsel

On October 4, 2024, I emailed the Attorney Grievance Commission of Maryland (complaints@agc.maryland.gov) and attached the October 3, 2024, complaint form related to case C-03-CV-24-002264. The complaint alleged collusion between the law firm Miles & Stockbridge P.C. and six judges of the Circuit Court to benefit both Miles & Stockbridge P.C. and Ohana Growth Partners, LLC. On October 7, 2024, an unnamed representative from the Attorney Grievance Commission's Office of Bar Counsel responded, confirming that the complaint had been received and was being processed. That response is understood to have originated from defendant Thomas DeGonia II.

On October 23, 2024, I sent a follow-up email attaching two filings and the transcripts from the June 26 and June 27, 2024, hearings. The email highlighted an upcoming hearing that would require Ohana Growth Partners, LLC and Miles & Stockbridge P.C. to either produce evidence or face accountability for filing a fraudulent lawsuit. The very next day, Ohana Growth Partners, LLC filed a Notice of Voluntary Dismissal.

On October 28, 2024, I submitted another email, this time emphasizing the irreparable harm caused and attaching an amended affidavit documenting the abusive use of the judicial system. I formally requested that the Office of Bar Counsel invoke its authority under Md. Rule 19-732(g) to

intervene and enjoin the ongoing proceedings to prevent further harm, stating explicitly that "literal lives are on the line."

On November 4, 2024, I submitted an additional email outlining the frivolous, vexatious, and malicious nature of the litigation, including counterclaims asserting bad-faith litigation, procedural abuse, witness tampering, obstruction of evidence, and other ethical misconduct. While emphasizing the urgent need for remedial action due to the ongoing harm, I also urged the Commission to consider the broader public interest and the necessity of protecting institutional trust in the judiciary.

On January 22, 2025, Kelsey E. Rowe (kelsey.rowe@agc.maryland.gov), secretary for the Attorney Grievance Commission, emailed me with five attached complaint letters dated January 22, 2025. Each letter was signed by W. Hunter Daley, Assistant Bar Counsel, and corresponded to the following file numbers: 2024-1725 for Robert Scott Brennen, 2025-0080 for Jessica Lynne Duvall, 2025-0081 for Holly Drumheller Butler, 2025-0082 for Steven David Frenkil, and 2025-0083 for Victoria Klein Hoffberger. These letters acknowledged my emails dated October 4, October 23, October 28, and November 4, 2024, and indicated that the allegations were determined to have merit. The Commission confirmed that they had proceeded to the stage of initiating inquiries with the named attorneys.

Kelsey E. Rowe received a response via email in which I stated that the January 22, 2025, communication from the Office of Bar Counsel came too late to toll the proceedings. I emphasized that the Office's failure to intervene in a timely manner had significantly contributed to the ongoing financial and physical harm I continue to endure. In that communication, I also issued a renewed and formal request for the State of Maryland to initiate direct negotiations with me.

On February 20, 2025, I received a follow-up email from Kelsey Rowe enclosing a letter dated February 20, 2025, again signed by W. Hunter Daley and addressed to the same five attorneys, with Kelly Ann Powers also copied. The letter confirmed that the Office of Bar Counsel had received responses from the attorneys and, upon review, determined that the allegations continued to have merit. However, Bar Counsel Thomas DeGonia II decided to defer the initiation of formal charges in the Maryland courts in order to allow the United States District Court for the District of Maryland to address the materially similar allegations already pending in Case No. 24-CV-03744-BAH. The letter explicitly stated that the grievances remain open and that the Commission will resume proceedings upon the conclusion of the litigation, if necessary.

Under applicable Maryland Rules and the Commission's procedural guidelines, this posture affirms that the investigation and response process

has been completed, and the allegations have been sustained as meritorious, with the next procedural step being the filing of formal charges.

See Circuit ECF 28-7, at 34–42; Circuit ECF 24-9; Exhibit 206, at 8.

## III  Ohana Growth Partners, LLC

### A  Jay Lenrow

On February 27, April 29, and May 2, 2025, Jay Lenrow, In-House Counsel for Ohana Growth Partners, LLC, received updated notices via email at jay.lenrow@ohanagp.com, following an initial phone call on February 24, 2025, at 9:48 AM. These communications notified Mr. Lenrow that the litigation had been transferred to the United States Court of Appeals for the Fourth Circuit, reiterated opportunities to negotiate a resolution in good faith, included the complete original December 27, 2024, filing (in zipped format), and extended the opportunity to return a Waiver of Service of Summons pursuant to FRCP 4(d).

See Exhibit 206, at 5-6.

### B  Holly Drumheller Butler

On June 1 and June 5, 2024, I emailed Holly Drumheller Butler, outside counsel with Miles & Stockbridge P.C., to ask whether she or the firm continued to represent Ohana Growth Partners, LLC. On June 5, Ms. Butler responded that she does not disclose the identities of her clients or the scope

of her representation, and she directed me to contact Ohana Growth
Partners, LLC directly.

Ms. Butler claimed that she had been retained to conduct an
"independent investigation" related to fraudulent misconduct allegedly
uncovered in December 2023. However, in reality, she was hired to assist
Ohana Growth Partners, LLC in constructing a basis to terminate my
employment in retaliation for my internal reporting between October and
December 2023, which included accounting irregularities, a formal HR
complaint, and allegations of fraud. Despite the resources of both Miles &
Stockbridge P.C. and Ohana Growth Partners, LLC, their cumulative efforts
failed to uncover any legitimate basis for termination. Instead, they
fabricated a pretextual narrative to justify their actions, and now more than
16 months later with the defendant list continuing to grow none of them have
been able to put forth a defense or produce any material evidence to support
their actions or rebut the allegations. In fact, multiple of the allegations are
now undisputed.

See Circuit ECF 28-1, at 1–9; Exhibit 206, at 23–27.

## C  Internal

On June 6, 2024, I sent an email to Justin Drummond
(justin.drummond@ohanagp.com), Richard Hartman
(rich.hartman@ohanagp.com), Karen Debus (karen.debus@ohanagp.com),

Matt Norris (matt.norris@ohanagp.com), Stacey Wittelsberger, C. Victor Brick (victor@ohanagp.com), Lynne Brick (lynne@ohanagp.com), Terry Woods (terry.woods@ohanagp.com), Earl Ihle (earl.ihle@ohanagp.com), and Glenn Norris (glenn@ohanagp.com). The email formally requested the contact information for any outside legal counsel currently representing Ohana Growth Partners, LLC in connection with matters involving accounting irregularities, unauthorized use of my identity on compliance documents, fabricated or altered emails and records, or any other issues related to my employment. The purpose of this request was to initiate direct negotiations in an effort to resolve these matters amicably and efficiently, without the need for formal legal proceedings.

On June 12, 2024, I sent an email to Richard Hartman, Glenn Norris, C. Victor Brick, Justin Drummond, Stacey Wittelsberger, Lynne Brick, Terry Woods, and Earl Ihle formally requesting the identity and contact information for any outside legal counsel representing Ohana Growth Partners, LLC in matters involving or pertaining to me. This included issues such as accounting irregularities, the unauthorized use of my name on compliance documents, fabricated or altered emails and records, and any other matters in which I might be named, involved, or implicated in connection with my employment. My intent was to initiate direct negotiations

to resolve these matters amicably and efficiently, through a mutually

agreeable solution that would avoid the need for formal legal proceedings.

See Exhibit 206, at 28; Circuit ECF 28-1, at 109.

## IV  Ohana Growth Partners and Miles & Stockbridge P.C.

### A  Robert S. Brennen and Legal Team from Miles & Stockbridge

After first contacting Robert Brennen (rbrennen@milesstockbridge.com)

in the late evening of June 17, 2024, I discovered that the notices for the ex

parte temporary restraining order—issued approximately 12 hours earlier—

had been sent exclusively to my work email address

(ryan.dilloncapps@ohanagp.com). However, I was not permitted to access that

account, as the June 14, 2024, suspension notice explicitly instructed me not

to access any company systems. In my communication with Mr. Brennen, I

directed him to use my personal email address or text my personal phone

number—both of which were already known to his colleague, Holly

Drumheller Butler, who had previously used that same phone number to

contact me earlier in the year while acting as outside counsel for Miles &

Stockbridge P.C.

Later, I would come to notice that Steven Frenkil

(sfrenkil@milesstockbridge.com) was also part of Ohana Growth Partners,

LLC's legal team and was listed among the undersigned on their filings. He

had been the principal attorney who responded to me on December 20,

2023—well before Ms. Butler had been introduced to me as their outside counsel.

Approximately ten hours later, on the morning of June 18, 2024, Robert Brennen (rbrennen@milesstockbridge.com), Steven Frenkil (sfrenkil@milesstockbridge.com), and Victoria Hoffberger (vhoffberger@milesstockbridge.com) informed me via email that the ex parte TRO—intentionally obtained without valid notice—would be enforced through contempt proceedings unless I complied with its terms by noon that same day. The TRO itself was both legally flawed and logistically impossible to comply with: it simultaneously ordered me not to access company systems while also requiring me to access those same systems to grant access to Phil Leadore (pleadore@ohanagp.com) of Hartman Executive Advisors. However, I had already contacted Mr. Leadore multiple times to provide access, and he never responded.

During the joint show cause hearing for civil contempt and the preliminary injunction hearing held on June 26 and 27, 2024, Ohana Growth Partners, LLC and Miles & Stockbridge P.C. were forced to replace Mr. Leadore with Randall Romes, which demonstrates that Mr. Leadore had chosen not to participate in the pretextual and fraudulent litigation.

Approximately fifteen minutes after Robert Brennen informed me that contempt proceedings were moving forward due to Mr. Leadore's alleged lack

of access, I sent two emails. In the first, I informed him that I had filed a
letter with the Civil Clerk's Office at the Circuit Court for Baltimore County
addressed to Judge Truffer. In the second, responding to Brennen's inquiry as
to whether he would receive a copy of the letter, I provided notice that the
June 13 events were initiated just two hours after I began my intermittent
FMLA leave and included a coercive demand that I provide Mr. Leadore
access. Richard Hartman was already notified and aware that I was on
FMLA leave at the time.

In a cease-and-desist email and escalation to senior leadership, I
notified Mr. Hartman that I was waiting for Mr. Leadore's response in order
to grant access. In retaliation, Mr. Hartman placed Darren Koritzka on
involuntary leave, which caused me significant concern that Mr. Hartman
had become unstable. As a precaution, I instructed Mareann Piñera to work
from home and asked my wife to temporarily leave our home for her safety. I
also contacted Victor and Lynne Brick, senior directors Karen Cepress and
Alyson Ratliff, and engaged in a lengthy text message exchange with Justin
Drummond. At no point did anyone communicate that I was, or was about to
be, suspended.

In the emails to Mr. Brennen, I explained that I had been seeking
assistance from Mr. Drummond and Mr. Glenn Norris in the days leading up
to June 13, 2024, and had expected Hartman Executive Advisors to provide

that assistance. I confirmed that I was open to providing access and asked whether I could instead authorize Help Desk Manager Dante Martinez to step in, since both Darren Koritzka and I had been removed from administrative roles on the same day. I emphasized that this would address any gap in Azure administration and pointed out that sworn statements by Mr. Drummond and Mr. Hartman reflect a fundamental misunderstanding of what Global Administrator access entails. Their affidavits incorrectly claimed that no other administrators existed.

In reality, the IT support team included multiple individuals and departments had administrative access, and Richard Hartman's wife—LeeAnn Hartman, sister to Lynne Brick—was a designated Billing Administrator. Any administrative gaps could have been addressed by granting access to Mr. Martinez. In my final email to Mr. Brennen, I also requested his assistance in negotiating a resolution to the escalating labor dispute and hostile work environment affecting Ann Piñera, Darren Koritzka, myself, and the broader Help Desk team ("Cielo").

Miles & Stockbridge P.C. ignoring this information and pursuing litigation any further demonstrates the issue was not one derived from a lack of or incorrect information, and similarly defendant Barranco and Brennen went to great lengths to avoid solutions and contradictions in reality and the orders to pretend that the proceedings contained any sense of legitimacy.

By the time I sent the August 23, 2024, email to Robert Brennen (rbrennen@milesstockbridge.com), Kimale J. Edwards (kjedwards@milesstockbridge.com), Steven D. Frenkil (sfrenkil@milesstockbridge.com), and Victoria Hoffberger (vhoffberger@milesstockbridge.com)—with a copy of the same letter also sent via USPS to Robert Brennen at Miles & Stockbridge P.C., 100 Light Street, Baltimore, Maryland 21202—any remaining basis for good-faith justification of the firm's continued litigation had been exhausted. The firm's support for a lawsuit founded on perjury, fraudulent notification practices, and egregious ethical misconduct had irreparably damaged its credibility and reached a threshold warranting disqualification and sanctions.

The letter put the firm on notice that its unethical—and potentially criminal—conduct would not go unchallenged. It expressly stated that both Ohana Growth Partners, LLC and Miles & Stockbridge P.C. were culpable for the chain of unlawful and unethical acts committed directly by them, and for their willful participation in the broader conspiracies into which Miles & Stockbridge had embedded itself after becoming fully informed of the facts.

The firm's continued refusal to resolve the matter and its reckless pursuit of a fraudulent lawsuit had caused substantial harm, including psychological trauma that placed my life in grave danger through the inducement of dissociative episodes and malignant catatonia. The letter

warned that failure to immediately terminate the litigation and enter good-faith negotiations would result in the filing of a motion to compel discovery, a motion for protective order, and sanctions, along with formal complaints to professional disciplinary bodies and other oversight agencies.

The letter also established specific deadlines and outlined remedial actions required to demonstrate a genuine intent to resolve the dispute. These included: (1) a written response to the letter; (2) full restoration of all unpaid compensation, including the allocated portion of refinancing proceeds I was expected to receive; (3) production of the withheld court transcripts; (4) preservation of Cielo's contract and Mareann Piñera's employment during negotiations; (5) full disclosure of any agreements made in connection with the labor dispute; (6) cessation of all harassment and retaliation against Mareann Piñera, Darren Koritzka, myself, and Cielo; and (7) production of a comprehensive privilege log. The letter concluded by advising that failure to meet these terms would require me to finalize preparations for further legal action.

On September 10, 2024, I notified Kimale J. Edwards (kjedwards@milesstockbridge.com), assistant to Robert Brennen; Robert Brennen (rbrennen@milesstockbridge.com); Jessica Duvall (jduvall@milesstockbridge.com); Steven Frenkil (sfrenkil@milesstockbridge.com); Rachel Kiefer (rachel.kiefer@mdcourts.gov)

from Judge Barranco's chambers; and Victoria Klein
(vklein@milesstockbridge.com) of my intention to respond to the opposition to
my motion to dismiss. In that correspondence, I referenced Maryland Rule 2-
322(a), which requires certain preliminary motions to be filed before the filing
of a responsive pleading.

The email reiterated prior offers to negotiate a resolution and noted
that neither Ohana Growth Partners, LLC nor Miles & Stockbridge P.C. had
responded to any of those offers since the commencement of litigation—except
for Justin Drummond's acceptance of my June 7, 2024, proposal to resolve his
access concerns. That agreement, unfortunately, was not honored by Ohana
Growth Partners, LLC, which instead pursued litigation.

I also highlighted the clear conflict of interest inherent in Miles &
Stockbridge P.C.'s continued representation of Ohana Growth Partners, LLC,
while simultaneously facing independent legal exposure in their dealings
with me. I requested that the firm voluntarily withdraw as counsel and
stated that, should they comply with their ethical obligation to do so, I would
consent to an extension for Ohana Growth Partners, LLC to retain substitute
counsel.

After rejecting my October 2, 2024, offer to negotiate an end to the
litigation, I issued a formal settlement proposal on October 3, 2024. In that
offer, I expressed that, despite the circumstances, I had genuinely hoped for a

different outcome. I explained that even while operating at only one-third of my normal capacity—due to the harm previously outlined—Ohana Growth Partners, LLC and Miles & Stockbridge P.C. appeared blinded by fear and were misinterpreting my intentions. I warned them that their continued posture was a losing proposition. The offer was anchored at $213,065,535.11, representing the 13th highest potential valuation of my claims at that stage of the litigation.

I drew a historical analogy, comparing their strategy to Adolf Hitler's belief that victory in World War II could be achieved with a "bigger tank"—specifically the impractical 188-ton Panzer VIII Maus—while ignoring the reality of the atomic bomb's transformative power. I noted that I possessed multiple "nuclear-sized" legal strategies and emphasized the irony that I had repeatedly tried to help them mitigate their risk. I warned that their continued resistance, rooted in pride rather than reason, was leading them to become their own worst enemy—not me. The offer urged them to abandon this self-defeating path and engage in good-faith negotiations.

On October 7, 2024, I sent a follow-up email to Robert Brennen (rbrennen@milesstockbridge.com), Victoria Hoffberger (vhoffberger@milesstockbridge.com), Kimale Edwards (kjedwards@milesstockbridge.com), Holly Butler (hbutler@milesstockbridge.com), and Jessica Duvall

(jduvall@milesstockbridge.com), highlighting Ohana Growth Partners, LLC's

breach of the June 7, 2024, agreement brokered by the company's president,

Justin Drummond. That breach followed Glenn Norris's intentional refusal to

provide the required justification for system access—information mandated

under the principle of least privilege and required by contract to maintain

PCI compliance. Without such justification, I could not legally provide the

requested access to Ryan Brooks.

That conduct constituted a violation of consumer protection laws, and

the intentional nature of the actions further violated unfair business practice

statutes. Ryan Brooks's attempt to gain unauthorized access—without a

confirming response from ownership to clarify whether he misunderstood his

authorization status—also constituted a violation of Md. Code Ann., Crim.

Law § 7-302.

At the time this second email was sent, the updated settlement offer to

Ohana Growth Partners, LLC had risen to $213,100,535.11. I informed them

that if no one engaged in negotiations prior to my filing of forthcoming

counterclaims, the offer would automatically increase to $231,366,767.22. I

urged Miles & Stockbridge P.C. to remind their client of the legal

consequences of spoliation and retaliation.

The offer specified that it must be treated as tax-free and paid within

the timeframe during which the offer remained valid. It further provided that

if the final settlement were drafted in a manner that voided the tax-exempt status, the penalty would be double the taxable amount. Any litigation arising from enforcement of the settlement terms would result in doubling the outstanding amount due from any single late payment. All equity owners would be held personally liable for the entire settlement amount, with payment taking priority over all other obligations and not subject to contractual limitation.

The offer extended a one-time opportunity for a single closed-door negotiation session, available to either or both parties. The confidentiality terms were absolute: any violation—regardless of intent—would subject the offending party to enforcement of the terms in any global jurisdiction, with damages capped only by the full net worth of the violator. Upon acceptance by either party, all future communications would elicit a neutral response, in accordance with the final clause of the agreement, which states: "the offer is no longer available.

On October 18, 2024, Ohana Growth Partners, LLC and Miles & Stockbridge P.C. accepted another formal offer to negotiate a resolution, expressing a preference to do so through a court-appointed mediator. I proposed Judge Steines L. Rolle as the mediator, but Miles & Stockbridge P.C. responded that she was disqualified under Maryland Rule 18-203.9(a) and countered with the suggestion of using a retired judge. I then proposed

Judge Alexander Williams Jr., a retired federal judge currently serving as a mediator with The McCammon Group. Miles & Stockbridge accepted this proposal.

However, after a series of communications, The McCammon Group informed us that their internal policy prohibited mediation involving an unrepresented party. I responded to Perri Boyd of The McCammon Group to request an exemption from that policy. I emphasized that I had specifically selected Judge Williams because of his reputation for fairness and integrity, and I expressed full confidence in his ability to ensure a procedurally sound and impartial mediation process. I explained that if the policy existed to protect against emotionally unstable or uninformed pro se participants, it did not apply to me. I was well-prepared, composed, and capable of engaging in effective, structured negotiations without creating procedural or emotional complications.

I further noted that it was in the best interest of both parties to move toward a prompt and fair resolution. I acknowledged that Ohana Growth Partners, LLC's weakening position was motivating them to settle, and I was willing to listen to their proposals and allow them an opportunity to course-correct before litigation escalated. I made clear that my intent was not self-serving but rooted in broader concerns for the wellbeing of both Ohana's employees and the legal professionals at Miles & Stockbridge. My priority

was achieving a resolution that minimized harm and produced the most favorable outcome for the greatest number of people—something I believed could best be achieved through open communication.

Unfortunately, The McCammon Group declined to grant an exception to their policy. In response, I proposed an alternative: a brief, 20-minute in-person meeting at a large, neutral public establishment with Robert Brennen and Steven Frenkil—who had been designated to represent Ohana Growth Partners, LLC in negotiations—to determine whether there were sufficient grounds to move forward with formal discussions.

The official reply from Miles & Stockbridge made clear that they were maintaining their divergent view of reality. They refused to meet without a mediator, revealing that their intention appeared not to resolve the matter in good faith, but rather to create a record suggesting that a neutral mediator had validated their position—despite the absence of material facts or applicable law supporting it.

I informed them that if their position ever evolved beyond simply "I disagree," they could contact me. With no further engagement, the negotiations formally ended on October 23, 2024. The following day, Ohana Growth Partners, LLC filed their Notice of Voluntary Dismissal.

See Exhibit 206, at 29–50; Circuit ECF 26-15, at 1. See also Circuit ECF 28-1, at 27-65.

Affidavit of Ryan Dillon-Capps Hope, Good Faith, and Certificate of Notice

36

## V  Miles & Stockbridge

### A  Nancy Whiteman Greene

On May 2, 2025, I emailed Nancy Whiteman Greene (ngreene@milesstockbridge.com), providing Miles & Stockbridge P.C. with another opportunity to engage in good-faith negotiations toward a resolution. In that message, I noted that the firm had failed to raise any legal defense or disavow the misconduct of its attorneys, and had taken no action to remedy the substantial legal harm inflicted. I enclosed a Waiver of Service of Summons, and the original complaint filed on December 27, 2024 (in zipped format), along with a copy of the motion to disqualify and its three supporting affidavits. This was done to ensure that the Chairman, President, and CEO of the firm was fully informed of the latest developments. I also noted that the official position of the Office of Bar Counsel continues to reflect that the allegations against the attorneys have been found meritorious and remain pending.

See Exhibit 206, at 8.

## VI  United States Federal Government

### A  U.S. Department of Justice Civil Rights Division

On January 17, 2025, I completed the web form and filed record number 559449-VTN to report the civil rights violations that had occurred.

See Exhibit 206, at 10.

## B  United States Court of Appeals for the Fourth Circuit

On April 23, 2025, I received a response from Nwamaka Anowi that stated the Chief Judge has reviewed my original submission and determined that Judge Hurson's criminal and unethical misconduct was "extraordinary circumstances".

See Exhibit 206, at 22.

### DECLARATION OF AFFIRMATION

I solemnly declare and affirm under penalty of perjury, based on my personal knowledge, that the contents of the foregoing affidavit and all accompanying exhibits are true and correct to the best of my knowledge.

**May 8, 2025**

/s/ Ryan Dillon-Capps
**Ryan Dillon-Capps**

1334 Maple Avenue
Essex, Maryland
21221
ryan@mxt3.com
703-303-1113