No. 25-1162

IN THE

IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

Ryan Dillon-Capps

*Plaintiff-Appellant*,

v.

Ohana Growth Partners, LLC et al.,

*Defendants-Appellees*.

_____

On Appeal from
the U.S. District Court
for the District of Maryland

No. 1:24-CV-3744

_____

Ryan Dillon-Capps Motion to Correct Court Record

_____

Ryan Dillon-Capps
1334 Maple Avenue
Essex Maryland 21221
ryan@mxt3.com
703-303-1113

# Table of Contents

Introduction ........................................................................................................... 4
   I CONSTITUTIONAL RIGHTS VIOLATIONS ......................................................... 4
      A Court Appointed Counsel ............................................................ 6
      B Altered Court Record .................................................................... 7
      C Legal Nullity ................................................................................. 9
   II PROCEDURAL AND LEGAL SIGNIFICANCE ................................................... 10
Prayer for Relief ................................................................................................. 13
Respectfully Submitted ..................................................................................... 14

C<small>ASES</small>

Bond v. Floyd, 385 U.S. 116 (1966) --------------------------------------------------------- 8
California Motor Transp. Co. v. Trucking Unlimited, 404 U.S. 508 (1972)-------------- 5
Chambers v. Baltimore & Ohio R.R. Co., 207 U.S. 142 (1907) ---------------------------- 5
Chambers v. NASCO, Inc., 501 U.S. 32 (1991) ---------------------------------------------- 13
Christopher v. Harbury, 536 U.S. 403 (2002) -------------------------------------------------- 5
Civil Rights Cases, 109 U.S. 3 (1883) -------------------------------------------------------- 10
Dombrowski v. Pfister, 380 U.S. 479 (1965) ------------------------------------------------- 12
Eastern R.R. Presidents Conf. v. Noerr Motor Freight, Inc., 365 U.S. 127 (1961) ---- 5
Ex parte Commonwealth of Virginia, 100 U.S. 339 (1879) ---------------------------- 9, 10
Ex parte Hull, 312 U.S. 546 (1941) ------------------------------------------------------------- 8
Ex parte Young, 209 U.S. 123 (1908) --------------------------------------------------------- 10
Gentile v. State Bar of Nev., 501 U.S. 1030 (1991) ------------------------------------------ 9
Georgia R.R. and Banking Co. v. Redwine, 342 U.S. 299 (1952) ------------------------ 10
Harbury v. Deutch, 233 F.3d 596 (D.C.Cir.2000) ------------------------------------------- 6
Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238 (1944) --------------- 11, 12
Jordon v. Gilligan, 500 F.2d 701 (6th Cir. 1974) -------------------------------------------- 10
Lee v. Board of Regents of State Colleges, 441 F.2d 1257 (7th Cir. 1971) ------------- 10
Nat'l Ass'n for Advancement of Colored People v. Button, 371 U.S. 415 (1963) ------- 7
New York Times Co. v. Sullivan, 376 U.S. 254 (1964) --------------------------------------- 9
Ostergren v. Cuccinelli, 615 F.3d 263 (4th Cir. 2010) ---------------------------------------- 8
Police Dep't of Chi. v. Mosley, 408 U.S. 92 (1972) ------------------------------------------- 9
Shelley v. Kraemer, 334 U.S. 1 (1948)----------------------------------------------------------- 9
Stamler v. Willis, 415 F.2d 1365 (7th Cir. 1969) -------------------------------------------- 12
Thomas v. Collins, 323 U.S. 516 (1945) ---------------------------------------------------- 5, 7
United States v. Cruikshank, 92 U.S. 542 (1876)--------------------------------------------- 4
United States v. Smith, 682 F.2d 1236 (9th Cir. 1982) ------------------------------------- 13
Wolff v. Selective Service Local Board No. 16, 372 F.2d 817 (2d Cir. 1967) ---------- 12

R<small>ULES</small>

FRAP 10--------------------------------------------------------------------------------------- 4, 11

C<small>ONSTITUTIONAL</small> P<small>ROVISIONS</small>

Fifth Amendment -------------------------------------------------------------------------------4, 5
First Amendment --------------------------------------------------------------------------- passim
Fourteenth Amendment ------------------------------------------------------------------- 4, 5, 7

E<small>XHIBITS</small>

Circuit ECF 18-0 ---------------------------------------------------------------------------------- 6
Circuit ECF 22-1 ---------------------------------------------------------------------------------- 6

Ryan Dillon-Capps Motion to Correct Court Record

Circuit ECF 22-4 ---------------------------------------------------------------------------------- 6
Circuit ECF 22-6 ---------------------------------------------------------------------------------- 6
Circuit ECF 31-1 -------------------------------------------------------------------------------- 11
Circuit ECF 34-1 ---------------------------------------------------------------------------------- 7
Circuit ECF 34-2 ---------------------------------------------------------------------------------- 7
Circuit ECF 7-1 ------------------------------------------------------------------------------------ 6
Circuit ECF 9 --------------------------------------------------------------------------------------- 6

# Introduction

I, Ryan Dillon-Capps (née Wagner), the Plaintiff-Appellant-Petitioner, pursuant to FRAP 10(e) and this Court's inherent authority to ensure the completeness and integrity of the record on appeal, respectfully move for an order to correct the record due to material omissions, alterations, and structural deficiencies in the district court record that impair appellate review and give rise to serious violations of constitutional rights.

## I  Constitutional Rights Violations

Reasonable access to the courts is not merely a procedural expectation—it is my constitutional right, secured by the First, Fifth, and Fourteenth Amendments. The First Amendment guarantees my right to petition the government for redress of grievances and protects my expressive legal speech, including the filing of pleadings and the submission of evidence. The Fifth and Fourteenth Amendments guarantee my right to due process, which includes equal protection under the law, the opportunity to be heard by a tribunal free from the appearance of bias, and adjudication based on a complete and unaltered record.

My right to petition the government is fundamental and predates the Constitution. *See United States v. Cruikshank*, 92 U.S. 542, 554–55 (1876). My "right of petition is one of the freedoms protected by the Bill of Rights." *Eastern R.R. Presidents Conf. v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 138

(1961). My right to petition includes my right of access to the courts. See *California Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972) ("[t]he right of access to the courts is indeed but one aspect of the right of petition"); Chambers v. Baltimore & Ohio R.R. Co., 207 U.S. 142 (1907) ("[T]he right to sue and defend in the courts is the alternative of force. In an organized society it is the right conservative of all other rights and lies at the foundation of orderly government. It is one of the highest and most essential privileges of citizenship....").

The Supreme Court has grounded the right at various times in different provisions of the Constitution: the "Article IV Privileges and Immunities Clause, the First Amendment Petition Clause, the Fifth Amendment Due Process Clause, and the Fourteenth Amendment Equal Protection and Due Process Clauses." Christopher v. Harbury, 536 U.S. 403, 415 n. 12 (2002) ("Harbury III ") (citations omitted). "It was not by accident or coincidence that the rights to freedom in speech and press were coupled in a single guaranty with the rights of the people peaceably to assemble and to petition for redress of grievances. All these, though not identical, are inseparable. They are cognate rights." *Thomas v. Collins*, 323 U.S. 516, 530 (1945)

A  Court Appointed Counsel

Furthermore, "[t]he right not only protects the ability to get into court, but also ensures that such access be adequate, effective, and meaningful." Harbury v. Deutch, 233 F.3d 596, 607 (D.C.Cir.2000) ("Harbury I ") (quotation marks and citations omitted), reh'g denied 244 F.3d 956 (D.C.Cir.2001) (per curiam ) ("Harbury II ").

On December 27, 2024, my original filing included a motion to proceed in forma pauperis seeking personal service through the U.S. Marshals and the appointment of court-appointed counsel. See Circuit ECF 22-1 (motion); Circuit ECF 22-4 (IFP form); Circuit ECF 22-6 (RDC financial affidavit). Judge Hurson granted my request to proceed in forma pauperis, and denied all other relief in the motion without any indication that the request for U.S. Marshall's service or court appointed counsel was properly considered under the Fourth Circuit Whisenant Test. See Circuit ECF 18-0, at 2. Upon appeal to the Fourth Circuit Court, I filed a motion for court appointed representation invoking the Whisenant Test on March 13, 2025. See Circuit ECF 7-1.  This motion remains deferred by the Fourth Circuit Court on March 14, 2025, pending the review of the appeal on the merits. See Circuit ECF 9. However, "the efficacy of litigation as a means of advancing the cause of civil liberties often depends on the ability to make legal assistance available to suitable litigants. " 'Free trade in ideas' means free trade in the

opportunity to persuade to action, not merely to describe facts." *Thomas v. Collins*, 323 U.S. 516, 537 (1945). The First and Fourteenth Amendments require a measure of protection for "advocating lawful means of vindicating legal rights," *Nat'l Ass'n for Advancement of Colored People v. Button*, 371 U.S. 415, 437 (1963)— including "advis[ing] another that his legal rights have been infringed and refer[ring] him to a particular attorney or group of attorneys . . . for assistance," *Nat'l Ass'n for Advancement of Colored People v. Button*, 371 U.S. 415, 434 (1963).

B  Altered Court Record

On May 27, 2025, Chief Judge Albert Diaz issued a memorandum and order in response to my judicial misconduct complaint against District Judge Brendan A. Hurson. That order is filed in the appellate record as Circuit ECF 34-2, attached to the affidavit filed as Circuit ECF 34-1, and is hereby incorporated by reference into this motion.

On page 3 of that order, Chief Judge Diaz stated:

> "Complainant's challenges to the subject judge's rulings, including his directions to court staff as to how the contents of a CD-ROM should be docketed, are dismissed pursuant to 28 U.S.C. § 352(b)(1)(A)(ii) as merits-related."

This statement constitutes a material admission that the docketing of CD-ROM contents—previously understood only through indirect communications with court personnel—originated from Judge Hurson's own

directives. The Chief Judge of the Fourth Circuit has now formally acknowledged and validated the allegation that Judge Hurson issued instructions to alter or affect the docketing of evidentiary material, thereby rendering Judge Hurson's directive to Baylee Wilson a judicially established fact.

Tampering with, altering, or suppressing a litigant's filings is not merely a procedural irregularity—it constitutes direct interference with my freedom of speech, as court filings are protected legal expression. This is a violation of my Due Process and First Amendment rights. No court may abridge or impair my right to petition or to be heard through procedural rules, policies, rulings, or record manipulation. *See Ex parte Hull*, 312 U.S. 546, 549 (1941) ("the state and its officers may not abridge or impair petitioner's right to apply to a federal court for a writ of habeas corpus"); *Bond v. Floyd*, 385 U.S. 116 (1966) (First Amendment of the Federal Constitution forbids abridgement of freedom of speech).

In *Ostergren v. Cuccinelli*, 615 F.3d 263, 270–71 (4th Cir. 2010), the Fourth Circuit provided a compelling reaffirmation of my First Amendment protections:

> The First Amendment's protection of "freedom of speech, or of the press," was designed to allow individuals to criticize their government without fear. U.S. Const. amend. I; *see Gentile v. State Bar of Nev.,* 501 U.S. 1030, 1034 (1991) ("There is no question that speech critical of the exercise of the State's power lies at the very center of the First Amendment."); *New York Times Co. v. Sullivan,* 376 U.S. 254, 273 (1964) (calling liberty to criticize government conduct "the central meaning of the First Amendment"). This protection also precludes the government from silencing the expression of unpopular ideas. *See Police Dep't of Chi. v. Mosley,* 408 U.S. 92, 95, 92 (1972) ("[T]he First Amendment means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content.").

C  Legal Nullity

The State of Maryland and the United States Government "act[] by [their] legislative, executive, and judicial authorities. [They] can act in no other way." *Ex parte Commonwealth of Virginia*, 100 U.S. 339, 346–47 (1879) ("A State acts by its legislative, its executive, or its judicial authorities. It can act in no other way."); see also *Shelley v. Kraemer*, 334 U.S. 1, 14 (1948) ("[T]he action of state courts and of judicial officers in their official capacities

is to be regarded as action of the State within the meaning of the Fourteenth Amendment, is a proposition which has long been established by decisions of this Court.").

The actual authority of government is limited. When the conduct of the legislative, judicial, or executive branches "impairs the privileges and immunities of citizens of the United States, or ... injures them in life, liberty, or property without due process of law, or ... denies to any of them the equal protection of the laws," that conduct is "effectually null, void, and innocuous." *Civil Rights Cases*, 109 U.S. 3, 10–12 (1883). The Due Process Clauses "nullif[y] and make[] void" such actions "by whatever instrument or in whatever modes that action be taken." *Ex parte Commonwealth of Virginia*, 100 U.S. 339, 346–47 (1879).

## II  Procedural And Legal Significance

"The law clearly recognizes the right of an interested party to force government officials to act in accordance with the Constitution". *Jordon v. Gilligan*, 500 F.2d 701, 705 (6th Cir. 1974); See also *Georgia R.R. and Banking Co. v. Redwine*, 342 U.S. 299 (1952); *Ex parte Young*, 209 U.S. 123 (1908); *Lee v. Board of Regents of State Colleges*, 441 F.2d 1257 (7th Cir. 1971).

Chief Judge Diaz's administrative ruling renders Judge Hurson's unconstitutional directive a legally established fact. While I reserve the right to challenge other elements of the administrative ruling, this legally binding fact is not in dispute.

While Brendan Abel Hurson's conduct may have no legal effect, the absence of a corrected court record will continue to violate my constitutional rights and deprives the Fourth Circuit of a complete appellate record. Pursuant to FRAP 10(e), I am respectfully moving the Fourth Circuit Court to restore my constitutionally protected right and restore the District Court to reflect what was properly filed and accepted. I am incorporating by reference the Amended Affidavit of Ryan Dillon-Capps in support of Court Record Tampering and Obstruction into this motion. Circuit ECF 31-1.

If Judge Hurson has not already destroyed the originals, then the District Court record can be corrected. Otherwise, this is exactly the type of abuse addressed in *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 251-252 (1944), where the Supreme Court emphasized:

> "Ever since this fraud was exposed, the United States has had standing [...] to undo the wrong and to pursue the wrongdoer, and to do both effectively with due regard to the established modes of procedure."
>
> "Such a proceeding is required by settled federal law and would be tried, as it should be, in open court with living witnesses instead of through the unsatisfactory method of affidavits."

In *Hazel-Atlas*, the Supreme Court intervened over a decade after the original decision because it was revealed that the judgement had been procured by fraud. Here, by contrast, the fraud is not historical—it is ongoing and committed by the presiding judge and now established as a legal fact. The Supreme Court has made clear that judicial integrity cannot coexist with uncorrected fraud, the Fourth Circuit Court has the authority and mandatory duty to vacate judgments and grant all relief necessary to address fraud on the court. *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 248–50 (1944).

"The judiciary has always borne the basic responsibility for protecting individuals against unconstitutional invasions of their rights by all branches of the Government". *Stamler v. Willis*, 415 F.2d 1365, 1369–70 (7th Cir. 1969); see also *Wolff v. Selective Service Local Board No. 16*, 372 F.2d 817, 824-825 (2d Cir. 1967) ("Where basic constitutional rights are imperiled, the courts have not required a series of injured parties to litigate the permissible scope of the statute or administrative interpretation but have nullified the unconstitutional action and required the Government to start in the first instance with a statute or interpretation that will not so overhang free expression that the legitimate exercise of constitutionally protected rights is suppressed"); *Dombrowski v. Pfister*, 380 U.S. 479, 486 (1965) ("Because of the sensitive nature of constitutionally protected expression, we have not

required that all of those subject to overbroad regulations risk prosecution to test their rights. For free expression—of transcendent value to all society, and not merely to those exercising their rights—might be the loser").

The completeness and accuracy of the record is a jurisdictional prerequisite for the Fourth Circuit Court to adjudicate the merits. See United States v. Smith, 682 F.2d 1236, 1240 (9th Cir. 1982) ("A court of appeals cannot conduct meaningful review without an adequate record"). Moreover, where structural defects in the record are caused by judicial misconduct, the reviewing court must act to preserve due process and appellate jurisdiction. See Chambers v. NASCO, Inc., 501 U.S. 32, 44 (1991).

## Prayer for Relief

For the foregoing reasons, I respectfully request that this Court:

(1) Direct the District Clerk of Court to identify, restore, and produce all filings and exhibits originally submitted on or after December 27, 2024;

(2) Require that the restoration process be completed no later than Thursday, June 5, 2025, and that I be afforded the opportunity to review and verify the restoration against disclosed and undisclosed security features embedded in the original filings prior to certification;

(3) If the District Clerk determines that full restoration is not possible, direct this be formally stated in a publicly available order identifying the specific deficiencies that remain, to ensure transparency and begin clawing back the damage inflicted by fraud upon the court on both judicial integrity and myself;

(4)     Grant such other relief as may be necessary to ensure the integrity, accuracy, and completeness of the appellate record pursuant to Federal Rule of Appellate Procedure 10(e).

**Respectfully Submitted**

**June 2, 2025**

/s/ Ryan Dillon-Capps
**Ryan Dillon-Capps**

1334 Maple Avenue
Essex, Maryland 21221
ryan@mxt3.com
703-303-1113