No. 25-1162

IN THE

IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

————————————

Ryan Dillon-Capps

*Plaintiff-Appellant,*

v.

Ohana Growth Partners, LLC et al.,

*Defendants-Appellees.*

————————————

On Appeal from
the U.S. District Court
for the District of Maryland

No. 1:24-CV-3744

————————————————

Ryan Dillon-Capps Motion for Ruling to Vacate

————————————————

Ryan Dillon-Capps
1334 Maple Avenue
Essex Maryland 21221
ryan@mxt3.com
703-303-1113

## **Table of Contents**

Introduction ....................................................................................... 1

Grounds for Vacatur ........................................................................ 1

  I FRCP 60(B)(4) .............................................................................. 1

  II Usurpation of Power—Jurisdiction Error ............................. 3

  III Deprived of Notice ................................................................... 9

  IV Right to be Heard ................................................................... 13

    A Compelled Speech .............................................................. 16

    B Suppressed Speech ............................................................. 17

    C Impartial Tribunal ............................................................. 19

    D Denied Hearings ................................................................ 22

Conclusion ...................................................................................... 22

Prayer for Relief ............................................................................ 23

Respectfully Submitted ................................................................ 24

C<small>ASES</small>

Atlantic Richfield Co. v. Monarch Leasing Co., 84 F.3d 204 (6th Cir. 1996) - 11

Baltimore & Ohio R. Co. v. Equitable Bank, N.A., 77 Md. App. 320 (1988) ----4

Bond v. Floyd, 385 U.S. 116 (1966)------------------------------------------------- 14

Brown v. United States, 225 F.2d 861 (8th Cir. 1955) ---------------------------- 11

California Motor Transp. Co. v. Trucking Unlimited, 404 U.S. 508 (1972)--- 16

Cantwell v. Connecticut, 310 U.S. 296 (1940)------------------------------------- 14

Chambers v. Baltimore & Ohio R.R. Co., 207 U.S. 142 (1907)------------------ 16

Chambers v. NASCO, Inc., 501 U.S. 32 (1991) ------------------------------------2

Chicago & Grand Trunk R. Co. v. Wellman, 143 U.S. 339 (1892) ---------------5

Christopher v. Harbury, 536 U.S. 403 (2002) ("Harbury III") ------------------ 13

D.C. Ct. of Appeals v. Feldman, 460 U.S. 462 (1983)------------------------------5

Eastern R.R. Presidents Conf. v. Noerr Motor Freight, Inc., 365 U.S. 127 (1961) ---------------------------------------------------------------------------------- 16

Ex parte Bollman, 4 Cranch 75 (1807) ----------------------------------------------6

Flast v. Cohen, 392 U.S. 83 (1968) --------------------------------------------------8

Friends of the Everglades v. U.S. E.P.A., 699 F.3d 1280 (11th Cir. 2012) ------9

Gitlow v. New York, 268 U.S. 652 (1925)------------------------------------------- 14

Harbury v. Deutch, 233 F.3d 596 (D.C. Cir. 2000) ("Harbury I") -------------- 13

Hazel–Atlas Glass Co. v. Hartford–Empire Co., 322 U.S. 238 (1944) -----------2

Int'l Video Corp. v. Ampex Corp., 484 F.2d 634 (9th Cir. 1973) ------------------4

Jenkins v. United States, 325 F.2d 942 (3d Cir. 1963) ----------------------------- 11

Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375 (1994)-----------------9

Lujan v. Defs. of Wildlife, 504 U.S. 555 (1992) ------------------------------------4

Marbury v. Madison, 1 Cranch 137 (1803)------------------------------------------6

Marshall v. Jerrico, Inc., 446 U.S. 238 (1980)------------------------------------- 21

Monsanto Co. v. Geertson Seed Farms, 561 U.S. 139 (2010)----------------------5

Nat'l Inst. of Fam. & Life Advocs. v. Becerra, 138 S. Ct. 2361 (2018) --------- 14

Nat'l Sav. Bank of Albany v. Jefferson Bank, 127 F.R.D. 218 (S.D. Fla. 1989) ---------------------------------------------------------------------------------------- 10

Nemaizer v. Baker, 793 F.2d 58 (2d Cir. 1986)-------------------------------------2

New Orleans Public Service, Inc. v. Council of City of New Orleans, 491 U.S. 350 (1989) ----------------------------------------------------------------------------- 22

Ortiz v. Fibreboard Corp., 527 U.S. 815 (1999)------------------------------------9

Puckett v. United States, 556 U.S. 129 (2009)-------------------------------------- 22

Reed v. Goertz, 598 U.S. 230 (2023)---------------------------------------3, 4, 5, 6

Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923) ---------------------------------6

Sindicato Puertorriqueño de Trabajadores v. Fortuño, 699 F.3d 1 (1st Cir. 2012) ---------------------------------------------------------------------------------- 14

Stanley v. Georgia, 394 U.S. 557 (1969) ------------------------------------------- 14

Stanley v. Georgia, 394 U.S. 557, 559 (1969)-------------------------------------- 14

Steel Co. v. Citizens for a Better Env't, 523 U.S. 83 (1998)------------------ 4, 8, 9
Stoll v. Gottlieb, 305 U.S. 165 (1938) ----------------------------------------------8
Thomas v. Collins, 323 U.S. 516 (1945) ------------------------------------------ 13
Tumey v. Ohio, 273 U.S. 510 (1927)----------------------------------------------- 21
United States v. Boch Oldsmobile, Inc., 909 F.2d 657 (1st Cir. 1990)-----------2
United States v. Cruikshank, 92 U.S. 542 (1876)---------------------------------- 15
United States v. Haldeman, 181 U.S.App.D.C. 254 (D.C.Cir.1976)------------ 21
United States v. Reidel, 402 U.S. 351 (1971)------------------------------------- 14
United States v. Snowden, 770 F.2d 393 (4th Cir. 1985) ------------------------- 14
United Student Aid Funds, Inc. v. Espinosa, 559 U.S. 260 (2010) ----------- 1, 2
Waleski v. Montgomery, McCracken, Walker & Rhoads, LLP, 143 S. Ct. 2027,
reh'g denied, 144 S. Ct. 53 (2023) ------------------------------------------------9
Wells v. Shriners Hosp., 109 F.3d 198 (4th Cir. 1997) ---------------------------- 11
Wooley v. Maynard, 430 U.S. 705 (1977) ----------------------------------------- 17

OTHER AUTHORITIES

Jacob McHangama, Free Speech: A History from Socrates to Social Media
(1st ed. 2022) -------------------------------------------------------------------- 19
Neil M. Richards, Intellectual Privacy, 87 Tex. L. Rev. 387 (2008) ------------ 15
Simon McCarthy-Jones, The Autonomous Mind: The Right to Freedom of
Thought in the Twenty-First Century, 2 Frontiers in A.I, Sept. 26, 2019 ---- 15
Wayne Unger, Stay Out of My Head: Neurodata, Privacy, and the First
Amendment, 80 Wash. & Lee L. Rev. 1439 (2023) ------------------------ 14, 15, 19

RULES

FRAP 27 ------------------------------------------------------------------------------------1
FRCP 60 ---------------------------------------------------------------------------- 1, 2, 23
Maryland Rule 2-506 ------------------------------------------------------------------4

EXHIBITS

Circuit ECF 15-10 --------------------------------------------------------------- 19
Circuit ECF 15-4 ------------------------------------------------------------------ 19
Circuit ECF 15-5 ------------------------------------------------------------------ 19
Circuit ECF 15-7 ------------------------------------------------------------------ 22
Circuit ECF 20-1 --------------------------------------------------------------passim
Circuit ECF 24-2 --------------------------------------------------------------------7
Circuit ECF 24-4 --------------------------------------------------------------- 3, 6, 19
Circuit ECF 31-1 ---------------------------------------------------------------- 11, 12
Circuit ECF 33-1 ------------------------------------------------------------------ 19
Circuit ECF 34-1 ------------------------------------------------------------------ 10
Circuit ECF 34-2 ------------------------------------------------------------------ 10
Circuit ECF 37----------------------------------------------------------- 10, 19, 20, 21
District ECF 1-10 ------------------------------------------------------------------ 11

District ECF 1-11 ------------------------------------------------------------ 11
District ECF 1-12 ------------------------------------------------------------ 11
District ECF 1-2 ------------------------------------------------------------- 11
District ECF 1-4 ------------------------------------------------------------- 11
District ECF 1-5 ------------------------------------------------------------- 11
District ECF 1-6 ------------------------------------------------------------- 11
District ECF 16-0 ------------------------------------------------------------ 12
District ECF 16-12 ----------------------------------------------------------- 12
District ECF 16-13 ----------------------------------------------------------- 12
District ECF 16-14 ----------------------------------------------------------- 12
District ECF 16-8 ------------------------------------------------------------ 12
District ECF 1-7 ------------------------------------------------------------- 11
District ECF 1-8 ------------------------------------------------------------- 11
District ECF 18-0 -------------------------------------------------------- passim
District ECF 1-9 ------------------------------------------------------------- 11
District ECF 19-0 ------------------------------------------------------------- 7
District ECF 27-0 ------------------------------------------------------------- 8
District ECF 3-1 ------------------------------------------------------------- 11
District ECF 3-2 ------------------------------------------------------------- 12
District ECF 4-1 ------------------------------------------------------------- 12
District ECF 5-1 ------------------------------------------------------------- 12
District ECF 7-1 ------------------------------------------------------------- 12
District ECF 7-2 ------------------------------------------------------------- 12

## Introduction

I, Ryan Dillon-Capps (née Wagner), the Plaintiff-Appellant-Petitioner, pursuant to FRAP 27, FRCP 60(b)(4), and this Court's inherent authority, respectfully move for an order vacating the rulings.

## Grounds for Vacatur

### I  FRCP 60(b)(4)

The exception to the general rule barring collateral attacks on subject matter jurisdiction flows from FRCP 60(b)(4), which states in relevant part:

> "On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: ... (4) the judgment is void".

The Supreme Court addressed FRCP 60(b)(4) in *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 270 (2010), stating:

> "A void judgment is a legal nullity. Although the term "void" describes a result, rather than the conditions that render a judgment unenforceable, it suffices to say that a void judgment is one so affected by a fundamental infirmity that the infirmity may be raised even after the judgment becomes final".

The Espinosa Court found that FRCP 60(b)(4) applies when a judgment is premised on "certain type of jurisdictional error or on a violation of due process that deprives a party of notice or the opportunity to be heard." *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 270–71 (2010).

The Supreme Court qualified the jurisdictional error that applies to a FRCP 60(b)(4) motion as one that "lack[s] even an 'arguable basis' for jurisdiction." The Court cited as an example *United States v. Boch Oldsmobile, Inc.*, 909 F.2d 657, 661 (1st Cir. 1990), which held that "a clear usurpation of power will render a judgment void." *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 271 (2010) (citing Nemaizer v. Baker, 793 F.2d 58, 65 (2d Cir. 1986)).

The Supreme Court's assertion that the exercise of jurisdiction not given is to "usurp that which is not given," and that to do so would be "treason to the Constitution," mirrors the language the Court quoted to describe the type of jurisdictional error that renders a judgment void under FRCP 60(b)(4): "a clear usurpation of power will render a judgment void."

Additionally, the Fourth Circuit retains its inherent power to address fraud upon the court. See *Hazel–Atlas Glass Co. v. Hartford–Empire Co.*, 322 U.S. 238, 246–47 (1944) (holding that the Court could vacate its own judgment based on fraud upon the court); *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991) (confirming the inherent authority of federal courts to remedy fraud on the court).

## II  Usurpation of Power—Jurisdiction Error

In *Reed v. Goertz*, 598 U.S. 230, 243 (2023), the petitioner filed an original action in District Court under 42 U.S.C. § 1983 after a judgment on the merits had been reached—asserting constitutional violations. The U.S. District Court dismissed Reed's complaint, and the Fifth Circuit affirmed on the ground that the suit was filed too late. The State of Texas argued that Reed lacked standing under the *Rooker-Feldman* doctrine and invoked the State's sovereign immunity. *Reed v. Goertz*, 598 U.S. 230, 230–34 (2023). Simply stated, my case benefits from the same legal arguments the Supreme Court upheld in favor of Reed, and none of the impairments Texas asserted and Reed conceded to.

My motion to disqualify Brendan Abel Hurson was filed on April 29, 2025, along with three affidavits and their supporting exhibits. One of my affidavits—submitted in opposition to Mr. Hurson's plausibility—was docketed with the Fourth Circuit Court as Circuit ECF 24-4 and is incorporated by reference into this motion.

I am the prevailing party in the state court action, with the state court dismissing the state plaintiff's case, which was vitiated after Defendant Stringer granted the state plaintiff's voluntary dismissal without prejudice. See Circuit ECF 24-4, at 1–3. Maryland law is clear that "a voluntary dismissal vitiates and annuls all prior proceedings and orders in a case."

*Baltimore & Ohio R. Co. v. Equitable Bank, N.A.*, 77 Md. App. 320, 328 (1988). Under Maryland Rule 2-506(e), the dismissing party is responsible for all costs unless otherwise provided by stipulation or court order.

In Reed v. Goertz, 598 U.S. 230, 242–43 (2023), the Supreme Court held that Article III standing and the Rooker-Feldman doctrine are two intertwined principles of federal jurisdiction, divided between original and appellate jurisdiction. When a court lacks Article III standing, it also lacks subject matter jurisdiction. A common misunderstanding is that Rooker-Feldman itself prevents subject matter jurisdiction, when in truth this is a byproduct of lacking Article III standing. "Standing is the 'irreducible constitutional minimum' necessary to make a justiciable 'case' or 'controversy' under Article III, § 2." Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 84 (1998) (citing Lujan v. Defs. of Wildlife, 504 U.S. 555, 560 (1992)). When there is no Article III jurisdiction, there is no subject matter jurisdiction. Int'l Video Corp. v. Ampex Corp., 484 F.2d 634, 636 (9th Cir. 1973) ("If there is no controversy, there is no jurisdiction in a constitutional sense regardless of whether statutory jurisdiction might otherwise be properly founded").

"The Constitution limits the federal courts' jurisdiction to 'Cases' and 'Controversies,' Art. III, § 2, cl. 1, constraining judicial power to 'the determination of real, earnest and vital controvers[ies] between' contending

litigants." Reed v. Goertz, 598 U.S. 230, 243 (2023) (citing Chicago & Grand Trunk R. Co. v. Wellman, 143 U.S. 339, 345 (1892)). "Under that doctrine, any party requesting relief from a federal court must assert 'an injury' that is 'concrete, particularized, and actual or imminent,' and he must show that his injury is both 'fairly traceable to the challenged action' and 'redressable by a favorable ruling.'" Reed v. Goertz, 598 U.S. 230, 243 (2023) (citing Monsanto Co. v. Geertson Seed Farms, 561 U.S. 139, 149 (2010)).

My First Amended Informal Brief, filed on April 21, 2025, is docketed in the Fourth Circuit as Circuit ECF 20-1 and is incorporated by reference into this motion.[1]

Underlying the mandatory elements for Article III jurisdiction are "contending litigants" and "party"—not a District Court judge. The only ruling to overturn would be the one that rendered me the prevailing party; my appeal is challenging Mr. Hurson's *sua sponte* overturning of the state court's dismissal. See Circuit ECF 20-1, at 88–91. It is not materially relevant to ask whether Mr. Hurson explicitly stated that he was overturning the state court's dismissal, because "[i]t is the nature and effect which is controlling." *D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462, 482 (1983) ("the

---

[1] My subsequent affidavits have provided a few corrections through declarations of errata—corrections that benefited from additional information.

form of the proceeding is not significant"; rather, "[i]t is the nature and effect which is controlling") (internal quotation marks omitted). The prerequisite needed for Mr. Hurson to recast me as the state court loser—whose claims are barred under the *Rooker-Feldman* doctrine—is to first overturn the state court's granting of the state plaintiff's voluntary dismissal without prejudice. See Circuit ECF 24-4, at 8 (Mr. Hurson "invokes the *Rooker-Feldman* doctrine to bar review—but only after recasting me as the loser in the very state court case I prevailed in").

However, only the Supreme Court has "appellate jurisdiction over state-court judgments," and, in particular, "[t]he jurisdiction possessed by the District Courts is strictly original." *Reed v. Goertz*, 598 U.S. 230, 244–45 (2023) (citing *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 416 (1923)). "The criterion which distinguishes appellate from original jurisdiction is that it revises and corrects the decisions of another tribunal." *Reed v. Goertz*, 598 U.S. 230, 243–44 (2023) (citing *Ex parte Bollman*, 4 Cranch 75, 86 (1807)); see also *Marbury v. Madison*, 1 Cranch 137, 175–76 (1803).

Mr. Hurson asserted that he understood the state plaintiff's case to have been dismissed through their own voluntary dismissal. Additionally, my motion for reconsideration was filed on January 13, 2025, and it was explicitly stated that "the case dismissed without prejudice," "was dismissed

without prejudice," "the underlying state court matter was voluntarily dismissed without prejudice, and no final judgment on the merits was issued in that case," and "no adverse state court judgment exists because the underlying case was voluntarily dismissed without prejudice." See District ECF 19-0, at 1, 3, 4, 9.

Later, Mr. Hurson reframed his own dismissal with prejudice as a non-final judgment without prejudice in order to apply a lesser standard of review. See Circuit ECF 24-2, at 12. However, he has never refuted my statements regarding the state action being dismissed without prejudice—and neither has anyone else. Under the doctrine of ratification, Mr. Hurson has ratified his own action—he intended to overturn the state court's granting of the voluntary dismissal.

After Mr. Hurson overturned the state court on January 8, 2025, he declared that the court lacked jurisdiction because of the *Rooker-Feldman* doctrine. See Circuit ECF 20-1, at 92. However, Mr. Hurson continued to issue hypothetical advisory opinions on the merits of legal arguments and claims. See District ECF 18-0, at 5–16 (Jan. 8—dismissing claims and defendants); District ECF 18-0, at 16 (Jan. 8—directing Plaintiff to file an amended complaint that does not include dismissed causes of action or defendants—dismissal with prejudice).

Mr. Hurson then claimed that he was "unable to tease apart the remaining claims" and proceeded to deny my motions. See District ECF 18-0, at 16 ("unable to tease apart other claims"); District ECF 18-0, at 17–20 (Jan. 8—denying motions); District ECF 27-0 (Feb. 12, 2025—denying motion for TRO and preliminary injunction).

"[T]he 'doctrine of hypothetical jurisdiction' . . . carries the courts beyond the bounds of authorized judicial action and thus offends fundamental separation-of-powers principles . . . [W]ithout proper jurisdiction, a court cannot proceed at all, but can only note the jurisdictional defect and dismiss the suit . . . For a court to pronounce upon a law's meaning or constitutionality when it has no jurisdiction to do so is, by very definition, an ultra vires act." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 84 (1998); see also *Flast v. Cohen*, 392 U.S. 83, 96–97 (1968) (acknowledging the Article III "prohibition against advisory opinions").

The judiciary has no power to create jurisdiction. *Stoll v. Gottlieb*, 305 U.S. 165, 171 (1938) ("A court does not have the power, by judicial fiat, to extend its jurisdiction over matters beyond the scope of the authority granted to it by its creators"). And federal courts "must be sure of [their] own jurisdiction before getting to the merits." *Ortiz v. Fibreboard Corp.*, 527 U.S.

815, 831 (1999) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 88–89 (1998)).

The use of hypothetical jurisdiction raises serious concerns and begins with the inability to distinguish between statutory jurisdiction and Article III jurisdiction. See *Waleski v. Montgomery, McCracken, Walker & Rhoads, LLP*, 143 S. Ct. 2027, reh'g denied, 144 S. Ct. 53 (2023) ("The continued use of hypothetical jurisdiction raises serious concerns. To start, the lower courts' distinction between 'statutory jurisdiction' and 'Article III' jurisdiction seems untenable"). The *Waleski* Court cited the Eleventh Circuit, reaffirming that federal courts "cannot exercise hypothetical jurisdiction any more than we can issue a hypothetical judgment. 'Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree.'" *Friends of the Everglades v. U.S. E.P.A.*, 699 F.3d 1280, 1289 (11th Cir. 2012) (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)) (internal citations omitted).

### III  Deprived of Notice

On May 27, 2025, Chief Judge Albert Diaz issued a memorandum and order in response to my judicial misconduct complaint against District Judge Brendan A. Hurson. That order is now filed in the appellate record of the

Fourth Circuit Court as Circuit ECF 34-2, attached to the affidavit filed as

Circuit ECF 34-1, and is hereby incorporated by reference into this motion.

On page 3 of that order, Chief Judge Diaz stated:

> "Complainant's challenges to the subject judge's rulings, including his directions to court staff as to how the contents of a CD-ROM should be docketed, are dismissed pursuant to 28 U.S.C. § 352(b)(1)(A)(ii) as merits-related."

This statement constitutes a material admission that the docketing of

CD-ROM contents—previously understood only through indirect

communications with court personnel—originated from Judge Hurson's own

directives. The Chief Judge of the Fourth Circuit Court has now formally

acknowledged and validated the allegation that Judge Hurson issued

instructions to alter or affect the docketing of evidentiary material, thereby

rendering Judge Hurson's directive to Baylee Wilson a judicially established

fact.

My motion for a ruling to disqualify and reassign was docketed with

the Fourth Circuit Court on June 7, 2025, as Circuit ECF 37 and is

incorporated by reference into this motion.

Circuit ECF 37, at 3–7, states:

> However, the District Court record lacks any order reflecting the directive. This is a structural error because the "entered-on-docket" date is the legally operative date from which a party must take some action from the entry of an order. *Nat'l Sav. Bank of Albany v. Jefferson Bank*, 127 F.R.D. 218, 222 (S.D. Fla. 1989). I have

less than no notice—I do not even have a docketed order from which notice could be given. It is a structural error that prevented me from having any opportunity to act—nor can it reasonably be expected that I act before an order is docketed in response to the alteration of my pleading. See *Brown v. United States*, 225 F.2d 861, 863 (8th Cir. 1955) ("with nothing more stated, could reasonably be expected to regard this as a judgment entry or even to suspect it of possibly having been so intended"); ***Atlantic Richfield Co. v. Monarch Leasing Co.*, 84 F.3d 204, 207 (6th Cir. 1996)** ("[U]nder federal procedural law, a federal court judgment is 'rendered' only when it is set forth in writing on a separate, discrete document and entered on the civil docket").

Without a docketed order, there is nothing for a party to act on to preserve an error, nor is there any basis for appellate jurisdiction. See *Wells v. Shriners Hosp.*, 109 F.3d 198, 200 (4th Cir. 1997) ("[W]ithin ten days of receiving a copy of the order," a party must act to preserve a claim of error, and "[s]everal courts have held that a party must comply with this statutory provision in order to preserve a claim of error"); *Jenkins v. United States*, 325 F.2d 942, 945 (3d Cir. 1963) ("the record reveals no order entered on the motion as from a final judgment, we are without jurisdiction").

My motion to disqualify was filed with dozens of exhibits (Circuit ECF 24-5 to 25-9; Circuit ECF Series 25 to 29) attached to three affidavits. This includes my affidavit in support of Court Record Tampering and Obstruction, which was amended a day later to correct a typographical error. See Circuit ECF 31-1. It is hereby incorporated by reference into this motion.

The affidavit provides detailed information about missing wet signatures, staple marks, court-issued stamps, clerk's stamps, judge-assigned case designation stamps, and other elements which were present on the original documents—one or more of which are missing from District ECF 1-2 (29 proposed summons); District ECF 1-4 (complaint integrated appendix: pretext); District ECF 1-5 (complaint integrated appendix: parties); District ECF 1-6 (complaint integrated appendix: coverup); District ECF 1-7 (complaint integrated appendix: counts); District ECF 1-8 (prefatory appendix A: table of defendants); District ECF 1-9 (prefatory appendix B: cause of action table); District ECF 1-10 (memorandum of law in opposition to immunity); District ECF 1-11 (resume for Timothy Allen); District ECF 1-12 (table of exhibits); District ECF 3-1 (meet and confer letter to

attorney general Anthony Brown); District ECF 3-2 (proposed order for state-level negotiations and systemic oversight relief); District ECF 4-1 (memorandum of law in support of interlocutory partial summary judgment); District ECF 5-1 (proposed order for conditional permissive joinder); District ECF 7-1 (affidavit of Caroline Dillon-Capps); District ECF 7-2 (affidavit of Ryan Dillon-Capps financial harm). See Circuit ECF 31-1, at 5–10, 14–18.

The Docket History clearly establishes that I filed these documents with the original filing on December 27, 2024. However, the docket text reflects alterations to the court record on December 30 and December 31, 2024, without a court order, stating "additional attachment(s) added" and "corrected main documents". See Circuit ECF 31-1, at 10–14.

Two documents that were never filed, but instead placed in the trash bin inside the Clerk's Office, were also added to the District Court record. See Circuit ECF 31-1, at 1–4.

On January 3, 2025, portions of the exhibits originally submitted on December 27, 2024, and later entered into the District Court record as District ECF 16-0 through 16-15, were formally docketed as supplemental filings with a filing and entry date of January 3, 2025. However, court staff member Baylee Wilson preserved the original "received" date of December 27, 2024, in the docket text. See Circuit ECF 31-1, at 24–25. Unfortunately, pages are missing from District ECF 16-0 (missing 1 page—160/161); District ECF 16-8 (missing 42 pages—226/268); District ECF 16-12 (missing 5 pages—115/120); District ECF 16-14 (missing 2 pages—89/91). Circuit ECF 31-1, at 25–27. See also Circuit ECF 31-1, at 28–34 (expanded details of missing pages). Additionally, pages were shuffled out of order, which obfuscated critical notice text on page 1 in District ECF 16-13. See Circuit ECF 31-1, at 27. See also Circuit ECF 31-1, at 30 (expanded details of shuffled pages).

The Court docket reflects the in forma pauperis filing from December 27, 2024, as District ECF Series 2, but is missing part of the original submission. See Circuit ECF 31-1, at 28.

The original physical exhibit—a signed CD—and the thousands of pages of hybrid exhibits it contained needed to be docketed traditionally and preserved in physical form to ensure that metadata and embedded content would not be altered through standard docketing procedures. See Circuit ECF 31-1, at 34–36.

## IV  Right to be Heard

The Supreme Court has grounded the right [to petition the government] at various times in different provisions of the Constitution: the "Article IV Privileges and Immunities Clause, the First Amendment Petition Clause, the Fifth Amendment Due Process Clause, and the Fourteenth Amendment Equal Protection and Due Process Clauses." *Christopher v. Harbury*, 536 U.S. 403, 415 n.12 (2002) ("*Harbury III*") (citations omitted). "It was not by accident or coincidence that the rights to freedom in speech and press were coupled in a single guaranty with the rights of the people peaceably to assemble and to petition for redress of grievances. All these, though not identical, are inseparable. They are cognate rights." *Thomas v. Collins*, 323 U.S. 516, 530 (1945).

Furthermore, "[t]he right not only protects the ability to get into court, but also ensures that such access be adequate, effective, and meaningful." *Harbury v. Deutch*, 233 F.3d 596, 607 (D.C. Cir. 2000) ("*Harbury I*") (quotation marks and citations omitted), *reh'g denied*, 244 F.3d 956 (D.C. Cir. 2001) (per curiam) ("*Harbury II*").

Without freedom of speech, there is no petition to be heard, and without freedom of thought, belief, and expression, there is no freedom of speech—because freedom of speech and expression is the presentation of

ideas, thoughts, and beliefs. Due process is what protects these fundamental

personal rights and liberties.

See, e.g.:
- *Gitlow v. New York*, 268 U.S. 652, 666 (1925) ("[F]reedom of speech and of the press—which are protected by the First Amendment from abridgment by Congress—are among the fundamental personal rights and 'liberties' protected by [Due Process]").
- *Bond v. Floyd*, 385 U.S. 116 (1966) (First Amendment of the Federal Constitution forbids abridgment of freedom of speech).
- Wayne Unger*, Stay Out of My Head: Neurodata, Privacy, and the First Amendment*, 80 Wash. & Lee L. Rev. 1439, 1465 (2023) ("[T]he freedoms of speech and expression, for instance, are the presentation of ideas, thoughts, and beliefs").
- *Sindicato Puertorriqueño de Trabajadores v. Fortuño*, 699 F.3d 1, 11 (1st Cir. 2012) ("The First Amendment confirms the freedom to think for ourselves") (quoting Citizens United v. Fed. Election Comm'n, 558 U.S. 310, 356 (2010)).
- *Nat'l Inst. of Fam. & Life Advocs. v. Becerra*, 138 S. Ct. 2361, 2379 (2018) (Kennedy, J., concurring) ("[F]reedom of speech secures freedom of thought and belief").
- *United States v. Snowden*, 770 F.2d 393, 398 (4th Cir. 1985) (Ervin, J., concurring) (citing *Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940)) ("[T]he Supreme Court has long held that the freedom of one's beliefs is absolutely protected by the First Amendment").
- *Stanley v. Georgia*, 394 U.S. 557, 559, 564 (1969) (makers of our Constitution "sought to protect Americans in their beliefs, their thoughts, their emotions and their sensations").
- *United States v. Reidel*, 402 U.S. 351, 355–56 (1971) (affirming Stanley v. Georgia, 394 U.S. 557 (1969), and its focus on the constitutional right to "freedom of mind and thought and on the [right to] privacy of one's home").

My beliefs and thoughts are expressed through my filings, and when

they are suppressed or abridged, they cease to be mine. In order for me to

exercise freedom of speech through my right to petition the government for

redress, and my right to be heard, it must be my ideas, thoughts, and beliefs

that are reflected in my court filings and form the basis of what is ruled upon.

Otherwise, it is someone else's rights that are being exercised, and mine are

being denied. See Neil M. Richards, *Intellectual Privacy*, 87 Tex. L. Rev. 387, 407 n.2 (2008) ("If we value what people have to say, we need to ensure they develop something to say that is not skewed or chilled before it can be uttered").

When my legal expression is forced, suppressed, or altered, I lose far more than my voice—I am losing my thoughts, dignity, and my very identity. See Wayne Unger, *Stay Out of My Head: Neurodata, Privacy, and the First Amendment*, 80 Wash. & Lee L. Rev. 1439, 1521 (2023) (articulating the underlying principles of my statement: "If the freedom of thought, rooted in the history and tradition of the United States, is to mean anything, it should be wholistic in application because '[t]o lose freedom of thought is to lose our dignity, our democracy, and our very selves'"). See also Simon McCarthy-Jones, *The Autonomous Mind: The Right to Freedom of Thought in the Twenty-First Century*, 2 Frontiers in A.I, Sept. 26, 2019, n.32, at 1.

Tampering with and suppressing my filings is governmental interference—violating my First Amendment and Due Process rights. Preventing my ideas, thoughts, and beliefs from being heard denies my right to petition the government for redress and to receive due process protections. *United States v. Cruikshank*, 92 U.S. 542, 554–55 (1876). My "right of petition is one of the freedoms protected by the Bill of Rights." *Eastern R.R.*

*Presidents Conf. v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 138 (1961). My

right to petition includes my right of access to the courts. See *California*

*Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972) ("[T]he

right of access to the courts is indeed but one aspect of the right of petition");

*Chambers v. Baltimore & Ohio R.R. Co.*, 207 U.S. 142 (1907) ("[T]he right to

sue and defend in the courts is the alternative of force. In an organized

society it is the right conservative of all other rights and lies at the

foundation of orderly government. It is one of the highest and most essential

privileges of citizenship....").

A  Compelled Speech

In my amended informal brief, I asserted that Mr. Hurson's "ruling[s]

reference[] [defendants, claims, and motions] by name and cite[] portions of

the filing, but the rulings are directed at a court-constructed adaptation—an

interpretation that departs from objective reality and the intended meaning

of the filing—as though the Court had inadvertently issued a ruling meant

for a different case."

> See, e.g.:
> • District ECF 18-0, at 5–9 (sua sponte created "claims contesting the rulings in the state action… violates the Rooker-Feldman Doctrine");
> • District ECF 18-0, at 12–13 (reframed claims as "Plaintiff appears to allege… failure to investigate Plaintiff[']s complaints must be dismissed");
> • District ECF 18-0, at 17 (reframed as "pro se litigant, [request] to essentially take over the Maryland Judiciary");

> • District ECF 18-0, at 17–18 (reframed as "summary judgment… seeks to appeal the state court's dismissal of the state action and declination to rule on the motion in that case");
> • District ECF 18-0, at 18–19 (reframed joinder as "a pro se litigant, may not represent Chisholm");
> • District ECF 18-0, at 17 ("Plaintiff's remedy does not lie in federal oversight of the state court system");
> • District ECF 18-0, at 16 (conspiracy claims reframed as claims "resulting in adverse rulings [in] the state case do not plausibly rise to the level of asserting a conspiracy claim");
> • District ECF 18-0, at 17 (forced motive—"Plaintiff is not the first and surely not the last litigant to come away from contentious litigation unhappy").
> But see:
> • Circuit ECF 20-1, at 99–103 (gender discrimination—forced to "explain" my pronoun usage to correct misleading information);
> • Circuit ECF 20-1, at 87–90 (Rooker-Feldman—complete absence of jurisdiction);
> • Circuit ECF 20-1, at 90–95 (non-judicial ultra vires acts);
> • Circuit ECF 20-1, at 72–84 (District v. State).

Being forced to litigate Mr. Hurson's claims as my own is unconstitutional compelled speech. See *Wooley v. Maynard*, 430 U.S. 705, 714 (1977) ("[T]he right of freedom of thought protected by the First Amendment against state action includes both the right to speak freely and the right to refrain from speaking at all").

B  Suppressed Speech

My filings included legal arguments against judicial and sovereign immunity; all but one of those arguments were suppressed when Mr. Hurson dismissed the State of Maryland, the judge defendants, and the clerk.

> See, e.g.:
> • District ECF 18-0, at 9 ("claims against the state court judges must be dismissed under the doctrine of judicial immunity");
> • District ECF 18-0, at 11 ("Quasi-judicial immunity also protects the Clerk");

> • District ECF 18-0, at 13 ("The State of Maryland has not waived [Eleventh Amendment] immunity");
> But see:
> • Circuit ECF 20-1, at 136–155 (judicial and quasi-judicial immunity and conspiracy);
> • Circuit ECF 20-1, at 119–130 (waiver and congressional abrogation).

Contrary to what has been asserted, my filings are not deficient, conclusory, implausible, unsupported, procedurally defective, or unlikely to succeed on the merits. The only partial exception pertains to the Norris-LaGuardia Act argument, which is more appropriately situated under the Maryland Anti-Injunction Act. While my filings may be wanting in form and procedural precision, they are fully supported by evidence, detailed factual statements, corroboration by others, and remain undisputed and unrefuted. Procedural prerequisites have been satisfied to the extent of my responsibility.

> See, e.g.:
> • District ECF 18-0, at 3 ("Plaintiff's complaint suffers a number of deficiencies");
> • District ECF 18-0, at 14 ("not plausibly alleged ongoing violations of federal law that can be properly redressed through prospective injunctive relief");
> • District ECF 18-0, at 17 (systemic corruption allegations do not "raise a plausible claim that such a drastic remedy is warranted here"—referring to negotiations to resolve, special master to investigate, and injunctive relief to "preserve all records");
> • District ECF 18-0, at 20 ("Plaintiff's motion fails because Plaintiff has not provided the procedural prerequisites under Rule 65(b)(1)");
> But see:
> • Circuit ECF 20-1, at 83–87 (Selective Citation, Substance over Form, and Standard of Review);
> • Circuit ECF 20-1, at 26–30 (intentionally misrepresented filings);
> • Circuit ECF 20-1, at 40–51 (plausibility of conspiracy—self-contained irreconcilable contradictions, independent validation, meritorious conclusions);

> • Circuit ECF 20-1, at 136–143 (Labor Dispute—Anti-Injunction and Clearly Lacking Jurisdiction);
> • Circuit ECF 24-4 (affidavit—plausibility);
> • Circuit ECF 15-4 (appendix d—false procedural record);
> • Circuit ECF 15-5 (appendix e—fraudulent lawsuit);
> • Circuit ECF 15-10 (appendix j—civil rights conspiracy);
> • Circuit ECF 33-1 (affidavit—court record tampering);
> • Circuit ECF 33-1 (affidavit—hope, good faith, and certificate of notice).

Novelist George Orwell warned that restrictions on speech are counter to democracy in that "if you encourage totalitarian methods," like the suppression of speech, thoughts, and ideas, "the time may come when they will be used against you instead of for you." Wayne Unger, *Stay Out of My Head: Neurodata, Privacy, and the First Amendment*, 80 Wash. & Lee L. Rev. 1439, 1463 (2023) (citing Jacob McHangama, *Free Speech: A History from Socrates to Social Media note 97*, at 258 (1st ed. 2022) (internal quotation omitted)).

C  Impartial Tribunal

Circuit ECF 37, at 12, states:

> DeSimone Jr. and pending defendant Hurson attended the University of Maryland Francis King Carey School of Law at the same time. All three of them served as adjunct professors at the school with overlapping years, and Mr. Hurson was the commencement keynote speaker in 2024. See Circuit ECF 24-2, at 7–9.

Circuit ECF 37, at 13–14, states:

> The Federal Bar Association, celebrated the Maryland Chapter in 2021 and Robert Brennen's work in the FBA's Maryland Chapter. From 2021 to 2024, Robert Brennen, principal of Miles & Stockbridge P.C., was Newsletter Editor, President Elect, President, and

Immediate Past President during the period when Brendan Hurson presided over swearing in ceremonies, speaker on judicial panels, luncheon honoree, served on committees, and participant in other FBA programming. Robert Brennen's roles placed him as the decider and key influencer that is responsible for Mr. Hurson's selection, and then directly working with Brendan Hurson. See Circuit ECF 24-1, at 1–7.

During this same period, Mr. Hurson's financials transformed while he went from federal attorney to magistrate judge to Article III judge. Mr. Hurson paid off somewhere between $45,003 and $150,000 of his liabilities, and after he was sworn in as an Article III judge, his reported investments reflect an impossible gain falling between 964% and 1,161%—for an amount between $2,128,024 and $2,157,000. The only reasonable conclusion from the objective and verifiable facts, rooted in the mathematical calculations provided in the affidavit, is that Mr. Hurson received at least a seven-figure amount that is not disclosed. To clarify, the affidavit does not assert that he only received a seven-figure amount—the objective data establishes that he received at least that much. The calculations take into account both his salary and his wife's salary, with the attached exhibits supporting those numbers as well. See Circuit ECF 42-2, at 9–17.

Additionally, the affidavit demonstrates that Adam B. Abelson's participation in the Maryland Chapter of the FBA similarly resulted in his elevation to an Article III judge. See Circuit ECF 24-2, at 6–7.

No assertion has been made against any other district court judge or circuit court judge that they similarly received a substantial amount of money, nor has an assertion been made that they did not, because their inclusion in the affidavit is intended only to support the claims against Brendan Abel Hurson.

Circuit ECF 37, at 15–16, states:

On April 21, 2025, my notice of formal allegations was included in the first amended informal brief, docketed as Circuit ECF 20-1. In the first paragraph, I asserted: "Upon remand, Mr. Dillon-Capps intends to amend the complaint to include Brendan A. Hurson as a named defendant". Circuit ECF 20-1, at 24.

"[I]t certainly violates [Due Process] ... to subject [a person's] liberty or property to the judgment of a court the judge of which has a

direct, personal, substantial, pecuniary interest in reaching a conclusion against him in his case". *Tumey v. State of Ohio*, 273 U.S. 510, 523 (1927); see also *In re Murchison,* 349 U.S. 133, 136 (1955) (under the Due Process Clause no judge "can be a judge in his own case [or be] permitted to try cases where he has an interest in the outcome").

As a pending defendant in the proceedings, Brendan Abel Hurson's disqualification is constitutionally mandated, in addition to being mandated under 28 U.S.C. § 455(b)(5)(i), which requires recusal where a judge "is a party to the proceeding". Judge Hurson is expected to be deposed prior to trial and called to testify during the trial, which disqualifies him under 28 U.S.C. § 455(b)(5)(iv). Additionally, if the District Court is unable to produce the originals of everything filed since December 27, 2024, Judge Hurson will likely face criminal charges. These circumstances give rise to a direct and substantial personal interest in the outcome of the proceedings, thereby further requiring his disqualification under 28 U.S.C. § 455(b)(4) and 28 U.S.C. § 455(b)(5)(iii).

Circuit ECF 37, at 21–22, states:

The statutory provisions in 28 U.S.C. § 455 are what give life to the due process requirement of a "fair trial (before) a fair tribunal . . . ." *In re Murchison*, 349 U.S. 133, 136 (1955). A claim of bias and prejudice that survives rigid scrutiny—where the facts alleged must be accepted as true—will necessarily pass constitutional muster as well. See *United States v. Haldeman*, 181 U.S.App.D.C. 254, 353 n. 276 (D.C.Cir.1976) (en banc) (per curiam) ("Since in our view anything impinging on (due process) would have more readily violated <u>s 144</u> or <u>s 455</u>, we do not consider the constitutional implications Per se."), cert. denied, 431 U.S. 933 (1977).

In both cases, the Supreme Court deemed such conduct inexcusable, emphasizing that fairness, equal protection, and procedural due process require "an opportunity to present [one's] claims to a court unburdened by any 'possible temptation'"". *Tumey v. Ohio*, 273 U.S. 510, 532 (1927). Due process further guarantees the right to "a proceeding in which [one] may present [one's] case with assurance that no member of the court is predisposed to find against him." *Marshall v. Jerrico, Inc.*, 446 U.S. 238, 242 (1980).

> The Supreme Court has also made clear that a due process violation arising from the participation of an interested judge is a structural defect "not amenable" to harmless-error review, regardless of whether the judge's vote was dispositive. *Puckett v. United States*, 556 U.S. 129, 141 (2009) (emphasis deleted).
>
> A truly impartial tribunal would have no reason to delay in recusing itself—Mr. Hurson's delay is evidence in support of disqualification. Similarly, there should be no reason for the Fourth Circuit Court to delay in ruling to disqualify and reassign. *Berger v. United States*, 255 U.S. 22, 35 (1921). ("[I]t is his duty to 'proceed no further' in the case… for of what concern is it to a judge to preside in a particular case; of what concern to other parties to have him so preside"); *Ligon v. City of New York*, 736 F.3d 166, 171 (2d Cir. 2013) ("A district judge has no legal interest in a case or its outcome, and, consequently, suffers no legal injury by reassignment").

D  Denied Hearings

Mr. Hurson has repeatedly denied my requests for a hearing. See Circuit ECF 20-1, at 11–16 (Jan. 8—emergency ex parte request for neutral magistrate for in-camera review and testimony, and hearings for TRO and preliminary injunction to preserve evidence and maintain the status quo); Circuit ECF 20-1, at 88–91 (Jan. 29—motion for reconsideration of Jan. 8); Circuit ECF 20-1, at 29–31 (Feb. 12—TRO and preliminary injunction on undisputed claims to restore and maintain the status quo); see also Circuit ECF 15-7 (appendix g—special master and magistrate judge).

## Conclusion

In *New Orleans Public Service, Inc. v. Council of City of New Orleans*, 491 U.S. 350, 358–59 (1989), the Supreme Court reaffirmed that "federal

courts lack the authority to abstain from the exercise of jurisdiction that has been conferred."

While this Court may lack jurisdiction to review the merits of the underlying claims, it retains both the jurisdiction and the duty to adjudicate this FRCP 60(b)(4) motion, to address structural due process violations, and to remedy Mr. Hurson's fraud upon the court. It also retains inherent authority to disqualify a judge who is a party to the proceeding and whose conduct has undermined judicial integrity.

No tribunal may validly adjudicate claims while disclaiming jurisdiction, altering the record without order, suppressing filings, or refusing to hear the only party who has presented undisputed evidence. These acts are not judicial error—they are *ultra vires* and constitutionally void. When the court record itself is not authentic, and the presiding judge needs to be mandatorily disqualified party, no ruling can stand. The judgment is void, and relief is mandatory.

## Prayer for Relief

**WHEREFORE**, Plaintiff-Appellant respectfully requests that this Court:

1. **GRANT** this motion pursuant to Federal Rule of Civil Procedure 60(b)(4);

2. **ORDER** the preservation of Plaintiff-Appellant in forma pauperis status as previously granted;

3. **ORDER** the preservation of the current case—including its status, the complete court record, and any existing District Court stay—pending both (i) this Court's ruling on Plaintiff-Appellant's separately filed motion for disqualification and reassignment, and (ii) Plaintiff-Appellant's formal response to that ruling;

4. **VACATE** all rulings and orders entered by Brendan A. Hurson in the District Court and declare that those rulings are, and have always been, void—not merely voidable—and without legal effect;

5. **ORDER** the issuance of any notices to Plaintiff-Appellant that are required or permitted under any applicable law of which the judiciary is aware;

6. **GRANT** any further relief necessary to effectuate vacatur of the void judgment, consistent with Rule 60(b)(4) and this Court's inherent authority; and

7. **GRANT** such other and further relief as this Court deems just and proper to preserve both the appearance and reality of impartial justice.

### Respectfully Submitted

**June 9, 2025**

/s/ Ryan Dillon-Capps
**Ryan Dillon-Capps**

1334 Maple Avenue
Essex, Maryland
21221
ryan@mxt3.com
703-303-1113