No. 25-1162

IN THE
IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT
_____

Ryan Dillon-Capps

*Plaintiff-Appellant*,

v.

Ohana Growth Partners, LLC et al.,

*Defendants-Appellees.*
_____

On Appeal from
the U.S. District Court
for the District of Maryland
No. 1:24-CV-3744
_____

Emergency Unopposed Motion to Remove Restrictions on
Court Records, Retroactive PACER Exemption, & Court
Appointed Counsel
_____

Ryan Dillon-Capps
1334 Maple Avenue
Essex Maryland 21221
ryan@mxt3.com
703-303-1113

# Table of Contents

Introduction ........................................................................................................ 1

Emergency Motion Statements ........................................................................... 1

[Issue 1]     PACER account: June 16, 2025 ............................................ 1

[Issue 2]     Medical Life-Threatening Emergency: June 16, 2025 .................. 1

[Issue 3]     Financial Instability: Immediate ........................................... 8

Overview Legal Framework for Constitutional Violations .............................. 9

I JURISDICTION: GIVES POWER AND DISCRETION TO INTERPRET, AND THE
DUTY AND OBLIGATION TO UPHOLD RIGHTS ............................................... 11

II DUE PROCESS AND EQUAL PROTECTION: SAFEGUARDS FOR FUNDAMENTAL
RIGHTS, NOTICE, AND THE OPPORTUNITY TO BE HEARD ............................. 22

    A Due Process Consideration Test ............................................................ 25

    B Four Factor Government Delay Test ...................................................... 26

    C Substantive Due Process—Degrees of Scrutiny ................................... 26

    D Disparate, Adverse, and Disproportionate—Treatment and Impact.. 29

    E Claim-Of-One Equal Protection ............................................................ 29

III SUMMARY OF CONSTITUTIONAL FRAMEWORK .................................... 30

Overview of Legal Framework for First Amendment Rights ......................... 31

I ACCESS TO THE COURT CLAIMS ................................................................ 34

II RIGHT OF ACCESS TEST ........................................................................... 38

III DENIAL OF ACCESS CLAIMS ................................................................... 39

Overview of Legal Framework for Eighth Amendment ................................. 40

Overview of Legal Framework for Summary Judgement ............................... 42

General Information .......................................................................................... 42

IV NOTICES TO DEFENDANTS ...................................................................... 42

V PREVAILING PARTY OF VITIATED STATE ACTION ................................... 44

VI STATE COURT JUDGE—CONSENT TO JURISDICTION AND WAIVER OF
IMMUNITY ..................................................................................................... 44

VII MARYLAND OFFICE OF THE BAR COUNSEL—ATTORNEY AND STATE
CLAIMS FOUND MERITORIOUS, SOVEREIGN IMMUNITY FOR ALL RELIEF
WAIVED, AND CONSENT TO FEDERAL JURISDICTION .................................. 45

VIII WRONGFUL TERMINATION—NO GENUINE DISPUTE ............................ 50

IX MIRRORED TIMELINE—STATE AND FEDERAL COURTS ........................... 53

X MARYLAND JUDICIAL ELECTION ............................................................. 53

    A Claim 1—Maryland 2024 Judicial Election ......................................... 54

    B Claim 2—Class Action Judicial Voters ................................................. 54

    C Claim 3—Class Action Judicial Candidates ......................................... 54

    D Overview of Legal Framework ............................................................. 55

XI OTHER ESTABLISHED FIRST RIGHT CLAIMS ON CLASS ACTIONS ............. 59

Emergency Unopposed Motion to Remove Restrictions on Court Records, Retroactive PACER Exemption, &
Court Appointed Counsel

i

Retroactive PACER exemption ........................................................ 61
  I STATEMENT OF FACTS ............................................................. 61
Court Appointed Counsel .............................................................. 64
  I STATEMENT OF FACTS ............................................................. 64
  II WHISENANT TEST—4TH CIRCUIT PRECEDENT............................. 65
Court Record ............................................................................... 67
  I UNDOCKETED DIRECTIVE TO ALTER DISTRICT COURT RECORD ... 67
  II UNDOCKETED DIRECTIVE TO RESTRICT CIRCUIT COURT RECORD ... 70
  III COURT RECORD LEGAL FRAMEWORK ...................................... 74
    A Statutory Authority to Restrict ......................................... 74
    B Statutory Authority to Redact ........................................... 75
    C No Authority Exist for Undocketed Court Orders.............. 76
    D Interested Judge.............................................................. 77
    E Public Access.................................................................. 79
Conclusion .................................................................................. 81
Prayer for Relief.......................................................................... 84
Respectfully Submitted ................................................................ 85

Emergency Unopposed Motion to Remove Restrictions on Court Records, Retroactive PACER Exemption, &
Court Appointed Counsel

ii

Ableman v. Booth, 62 U.S. 506 (1858) ............................................................ 17

Ademiluyi v. Maryland State Bd. of Elections, 458 Md. 1 (2018) ............ 57, 58

Arizona State Legislature v. Arizona Indep. Redistricting Comm'n, 576 U.S. 787 (2015) .............................................................................................................. 55

Arizona v. Fulminante, 499 U.S. 279 (1991) .................................................... 78

Atlantic Richfield Co. v. Monarch Leasing Co., 84 F.3d 204 (6th Cir. 1996) 68, 77

Baltimore & Ohio R. Co. v. Equitable Bank, N.A., 77 Md. App. 320 (1988) .. 44

Baltimore Sun Co. v. Goetz, 886 F.2d 60 (4th Cir. 1989) .......................... 38, 80

Bearden v. Georgia, 461 U.S. 660 (1983)........................................................ 29

Boddie v. Connecticut, 401 U.S. 371 (1971) .............................................. 23, 24

Bolling v. Sharpe, 347 U.S. 497 (1954) ............................................. 10, 27, 28

Bounds v. Smith, 430 U.S. 817 (1977) ............................................................ 33

Brock v. City of Richmond, 983 F.2d 1055 (4th Cir. 1993) ............................. 65

Brown v. United States, 225 F.2d 861 (8th Cir. 1955) .............................. 68, 76

Burns v. Ohio, 360 U.S. 252 (1959) ................................................................ 34

Cafeteria Workers v. McElroy, 367 U.S. 886 (1961) ........................................ 9

Califano v. Yamasaki, 442 U.S. 682 (1979) ..................................................... 35

California Motor Transp. Co. v. Trucking Unlimited, 404 U.S. 508 (1972) ... 32

Cantwell v. Connecticut, 310 U.S. 296 (1940) ................................................ 37

Carlisle v. United States, 517 U.S. 416 (1996) ............................................... 20

Chambers v. NASCO, Inc., 501 U.S. 32 (1991) .............................................. 16

Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc., 467 U.S. 837 (1984) .... 21

Chicago & Grand Trunk R. Co. v. Wellman, 143 U.S. 339 (1892) ................. 12

Christopher v. Harbury, 536 U.S. 403 (2002)("Harbury III") .................. 39, 40

City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432 (1985)....................... 27

City of Cleburne, Tex. v. Cleburne Living Ctr., 473 U.S. 432 (1985) ............ 27

Cohens v. State of Virginia, 19 U.S. 264 (1821) ............................................. 13

Cooper v. Aaron, 358 U.S. 1 (1958) .......................................................... 17, 18

Dayton Bd. of Ed. v. Brinkman, 433 U.S. 406 (1977) .................................... 35

De Jonge v. State of Oregon, 299 U.S. 353 (1937) .................................... 31, 32

Dobbs v. Jackson Women's Health Org., 597 U.S. 215 (2022) ....................... 22

Dobbs v. Jackson Women's Health Org., 597 U.S. 215 (2022) ....................... 21

Doe v. Public Citizen, 749 F.3d 246 (4th Cir. 2014).................................. 79, 81

Eastern R.R. Presidents Conf. v. Noerr Motor Freight, Inc., 365 U.S. 127 (1961) ................................................................................................................ 32

Edenfield v. Fane, 507 U.S. 761 (1993) .......................................................... 28

Ex parte Bollman, 4 Cranch 75 (1807) ........................................................... 13

Ex parte Commonwealth of Virginia, 100 U.S. 339 (1879) ............................ 16

Ex parte Hull, 312 U.S. 546 (1941) ................................................................ 33

Emergency Unopposed Motion to Remove Restrictions on Court Records, Retroactive PACER Exemption, & Court Appointed Counsel

iii

Ex parte Young, 209 U.S. 123 (1908) ............................................................. 13

F.C.C. v. Beach Commc'ns, Inc., 508 U.S. 307 (1993) .................................... 10

Federal Constitution." Chambers v. Baltimore & O.R. Co., 207 U.S. 142 (1907) ............................................................................................................... 32

Fisher v. Univ. of Texas at Austin, 570 U.S. 297 (2013) ........................... 27, 28

Flast v. Cohen, 392 U.S. 83 (1968) ................................................................. 12

Fowler v. Lee, 18 F. App'x 164 (4th Cir. 2001) ............................................... 66

Friends of the Everglades v. U.S. E.P.A., 699 F.3d 1280 (11th Cir. 2012) ..... 12

Fulton v. City of Philadelphia, Pennsylvania, 593 U.S. 522 (2021) ............... 27

Gill v. Whitford, 585 U.S. 48 (2018) ...................................................... 33, 55, 56

Gitlow v. People of State of New York, 268 U.S. 652 (1925) .......................... 31

Globe Newspaper Co. v. Superior Ct. for Norfolk Cnty., 457 U.S. 596 (1982) 39

Goldberg v. Kelly, 397 U.S. 254 (1970) .......................................................... 24

Greater New Orleans Broadcasting Assn., Inc. v. United States, 527 U.S. 173 (1999) ............................................................................................................... 27

Griffin v. Illinois, 351 U.S. 12 (1956) ............................................................. 34

Griswold v. Connecticut, 381 U.S. 479 (1965) .......................................... 35, 36

Grutter v. Bollinger, 539 U.S. 306 (2003) ....................................................... 28

Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238 (1944) ............. 17

Henderson v. Bodine Aluminum, Inc., 70 F.3d 958 (8th Cir. 1995) .............. 7, 8

Hicks on Behalf of Feiock v. Feiock, 485 U.S. 624 (1988) .............................. 41

Hicks v. Colvin, No. CV 16-154-ART, 2016 WL 7436050 (E.D. Ky. Dec. 21, 2016) .......................................................................................................... 24, 25

Hilton v. Braunskill, 481 U.S. 770 (1987) ...................................................... 33

Hurtado v. People of State of Cal., 110 U.S. 516 (1884) .................................. 9

In re U.S. for an Ord. Pursuant to 18 U.S.C. Section 2703(D), 707 F.3d 283 (4th Cir. 2013); .............................................................................................. 80

Int'l Video Corp. v. Ampex Corp., 484 F.2d 634 (9th Cir. 1973) .................... 12

Int'l Union, United Mine Workers of Am. v. Bagwell, 512 U.S. 821 (1994) .. 41, 42

Iowa Cent. Ry. Co. v. Iowa, 160 U.S. 389 (1896) ............................................ 10

Jenkins v. United States, 325 F.2d 942 (3d Cir. 1963) .............................. 68, 77

Jenkins v. Woodard, 109 F.4th 242 (4th Cir. 2024) .................................. 65, 66

John Chipman Gray, The Nature and Sources of the Law 8–9 (2d ed. 1921) 14

Johnson v. Avery, 393 U.S. 483 (1969) ........................................................... 33

Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375 (1994) ................. 12

Lackey v. Stinnie, 145 S. Ct. 659 (2025) ......................................................... 44

Lapides v. Board of Regents, 535 U.S. 613 (2002) ......................................... 45

Leeper v. State of Texas, 139 U.S. 462 (1891) .................................................. 9

Lewis v. Casey, 518 U.S. 343 (1996) ......................................................... 33, 35

Liddy v. Lamone, 398 Md. 233, 245, 919 A.2d 1276 (2007) ........................... 58

Loper Bright Enters. v. Raimondo, 603 U.S. 369 (2024) ................................ 21

Lovell v. City of Griffin, Ga., 303 U.S. 444 (1938) ........................................ 37

Lujan v. Defs. of Wildlife, 504 U.S. 555 (1992) .............................................. 12

Marbury v. Madison, 5 U.S. (1 Cranch) 137 (1803) ................................ 17, 20

Marbury v. Madison, 5 U.S. 137 (1803) ..................................................... 14, 18

Marino v. Ortiz, 484 U.S. 301 (1988) .............................................................. 81

Martin v. City of Struthers, Ohio, 319 U.S. 141 (1943) ................................... 35

Mathews v. Eldridge, 424 U.S. 319 (1976) ........................................... 9, 10, 25

Mayle v. Felix, 545 U.S. 644 (2005) ................................................................. 33

MICHAEL McNAIR, Plaintiff, v. BACE, Corr. Officer, Defendant., No. CV DKC-23-365, 2025 WL 1592460 (D. Md. June 5, 2025 ............................... 66

Miller v. Simmons, 814 F.2d 962 (4th Cir. 1987) ........................................... 65

Missouri v. Jenkins, 515 U.S. 70 (1995) .......................................................... 34

Monsanto Co. v. Geertson Seed Farms, 561 U.S. 139 (2010) ......................... 12

Morrissey v. Brewer, 408 U.S. 471 (1972) ................................................. 10, 23

Nat'l Inst. of Fam. & Life Advocs. v. Becerra, 138 S. Ct. 2361 (2018) ........... 36

Nat'l Sav. Bank of Albany v. Jefferson Bank, 127 F.R.D. 218 (S.D. Fla. 1989) ................................................................................................................... 68, 76

New Orleans Public Service, Inc. v. Council of City of New Orleans, 491 U.S. 350 (1989) ....................................................................................................... 13

Newberry v. Davison Chem. Co., 65 F.2d 724 (4th Cir. 1933) ....................... 81

Nixon v. Warner Commc'ns, Inc., 435 U.S. 589 (1978) ................................... 38

Nken v. Holder, 556 U.S. 418 (2009) .............................................................. 81

Olmstead v. United States, 277 U.S. 438 (1928) ............................................. 36

Ortiz v. Fibreboard Corp., 527 U.S. 815 (1999) ............................................. 12

Oxendine v. Williams, 509 F.2d 1405 (4th Cir. 1975) ..................................... 59

Powell v. McCormack, 395 U.S. 486 (1969) .................................................... 55

Press–Enterprise Co. v. Superior Court, 478 U.S. 1 (1986) ........................... 38

Puckett v. United States, 556 U.S. 129 (2009) ................................................ 77

Reed v. Goertz, 598 U.S. 230 (2023) ......................................................... 12, 13

Reed v. Town of Gilbert, Ariz., 576 U.S. 155 (2015) ...................................... 28

Richardson v. Perales, 402 U.S. 389 (1971) .................................................... 10

Richmond Newspapers, Inc. v. Virginia, 448 U.S. 555 (1980) ................. 38, 39

Roe v. Wade, 410 U.S. 113 (1973) ................................................................... 21

Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923) .......................................... 13

Rushford v. New Yorker Magazine, Inc., 846 F.2d 249 (4th Cir. 1988) .......... 80

Sampson v. Murray, 415 U.S. 61 (1974) ........................................................... 8

See Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986) ............................. 42

Simmons v. United States, 142 S. Ct. 23 (2021) ............................................. 34

Simon v. Eastern Ky. Welfare Rights Organization, 426 U.S. 26 (1976) ....... 34

Emergency Unopposed Motion to Remove Restrictions on Court Records, Retroactive PACER Exemption, & Court Appointed Counsel

v

Sindicato Puertorriqueño de Trabajadores v. Fortuño, 699 F.3d 1 (1st Cir. 2012) ................................................................................................ 36

Stanley v. Georgia, 394 U.S. 557 (1969) ...................................... 36, 37

State of Mississippi v. Johnson, 71 U.S. 475 (1866) ....................... 13

Steel Co. v. Citizens for a Better Env't, 523 U.S. 83 (1998) ..... 11, 12

Stoll v. Gottlieb, 305 U.S. 165 (1938) ................................................ 13

Stromberg v. People of State of Cal., 283 U.S. 359 (1931) ............. 31

Stump v. Sparkman, 435 U.S. 349 (1978) ........................................ 19

Taylor v. Beckham, 178 U.S. 548 (1900) .......................................... 13

Texas v. California, 141 S. Ct. 1469 (2021) ..................................... 13

Texas v. White, 74 U.S. (7 Wall.) 700 (1869) .................................. 15

Thomas v. Arn, 474 U.S. 140 (1985) ................................................. 20

Thomas v. Collins, 323 U.S. 516 (1945) ........................................... 31

Thornburgh v. Abbott, 490 U.S. 401 (1989) .................................... 29

United States v. Boch Oldsmobile, Inc., 909 F.2d 657 (1st Cir. 1990) ........... 11

United States v. Cruikshank, 92 U.S. 542 (1875) ........................... 19

United States v. Eight Thousand Eight Hundred & Fifty Dollars ($8,850) in U.S. Currency, 461 U.S. 555 (1983) ............................................... 26

United States v. Harriss, 347 U.S. 612 (1954) ................................ 23

United States v. Payner, 447 U.S. 727 (1980) ................................. 20

United States v. Playboy Ent. Grp., Inc., 529 U.S. 803 (2000) ...... 28

United States v. Reidel, 402 U.S. 351 (1971) .................................. 37

United States v. Snowden, 770 F.2d 393 (4th Cir. 1985) ............... 37

United States v. Tsarnaev, 595 U.S. 302 (2022) ............................. 20

United States v. Will, 449 U.S. 200 (1980) ...................................... 13

United Student Aid Funds, Inc. v. Espinosa, 559 U.S. 260 (2010) ..... 10, 11, 84

Vieth v. Jubelirer, 541 U.S. 267 (2004) ...................................... 55, 56

Vill. of Willowbrook v. Olech, 528 U.S. 562 (2000) ........................ 30

Waleski v. Montgomery, McCracken, Walker & Rhoads, LLP, 143 S. Ct. 2027, reh'g denied, 144 S. Ct. 53 (2023) .................................................. 12

Warth v. Seldin, 422 U.S. 490 (1975) ............................................... 34

Wayne Unger, Stay Out of My Head: Neurodata, Privacy, and the First Amendment, 80 Wash. & Lee L. Rev. 1439 (2023) .................... 37, 38

Wells v. Shriners Hosp., 109 F.3d 198 (4th Cir. 1997) ............ 68, 77

Winters v. New York, 333 U.S. 507 (1948) ................................. 22, 23

Wolff v. McDonnell, 418 U.S. 539 (1974) ........................................ 34

S<span style="font-variant:small-caps">TATUTES</span>

13 M.L.E. Judges § 3 ............................................................................ 57

18 U.S.C. § 3771 .................................................................................... 74

18 U.S.C. § 3771 .................................................................................... 74

28 U.S. Code § 453 ............................................................................... 14

Emergency Unopposed Motion to Remove Restrictions on Court Records, Retroactive PACER Exemption, & Court Appointed Counsel

vi

28 U.S.C. § 1915 ........................................................ 61, 64
28 U.S.C. § 352 ............................................................... 67
42 U.S.C. § 1395dd ........................................................... 7
5 U.S.C. § 706 ................................................................ 21
Md. Code Ann., Cts. & Jud. Proc. § 6-104 ..................... 45
Md. Code Ann., Elec. Law § 12-202 ......................... 58, 59

## OTHER AUTHORITIES

, J. Park et al., Case Report: Malignant Catatonia Warrants Early
Psychiatric-Critical Care Collaborative Management: Two Cases and
Literature Review, 2017 Case Rep. Crit. Care, Art. ID 1951965,
https://doi.org/10.1155/2017/1951965 ............................ 2
1 William Blackstone, Commentaries *136; 4 id. at *438 ............. 24
16 Am. Jur. 2d Conflict of Laws § 3 (1998) ...................... 26
Barker v. Wingo, 407 U.S. 514 (1972) .......................... 26
Black's Law Dictionary (12th ed. 2024) ........................ 13
Judicial-Disability Proceedings, Rule 12 cmt., Judicial Conference of the U.S.
(Mar. 2019) ............................................................... 29
The Federalist No. 78 ............................................. 18, 20
The Federalist No. 84 ................................................ 24

## RULES

4th Cir. R. 25 ................................................ 80, 82, 83
4th Cir. R. 27 ............................................................ 81
FRAP 25 .................................................................. 74
FRAP 27 .................................................................... 1
FRAP 36 .................................................................. 80
FRAP 45 .................................................................. 80
FRCP 16 .................................................................. 66
FRCP 23 ............................................................. 59, 60
FRCP 5.2 ............................................................ 74, 75
FRCP 56 .................................................................. 42
FRCP 60 ...........................................................passim
Maryland Rule 19-703 ............................................... 46
Maryland Rule 19-711 ............................................... 46
Maryland Rule 2-506 ................................................ 44
Oregon Administrative Rule 410-125-0401 ..................... 7

## REGULATIONS

29 C.F.R. §§ 825.300 ................................................ 51
42 C.F.R. § 438.114 .................................................... 7

## CONSTITUTIONAL PROVISIONS

Md. Const. art Art. IV, § 2 ......................................... 56

Emergency Unopposed Motion to Remove Restrictions on Court Records, Retroactive PACER Exemption, &
Court Appointed Counsel

vii

Md. Const. art Art. IV, § 5 ....................................................... 56
Md. Const. art IV, § 5 ............................................................. 56
Md. Const. art. IV, § 11 .......................................................... 58
Md. Const. art. IV, § 2 ............................................................ 57
Md. Const. art. IV, § 3 ............................................................ 56
Md. Const. art. IV, § 4 ............................................................ 58
Md. Const. art. IV, § 5 ............................................................ 57
U.S. Const. art. III, § 3 .......................................................... 14

<u>EXHIBITS</u>

Circuit ECF 11-1 ................................................................... 81
Circuit ECF 12-0 ................................................................... 81
Circuit ECF 20-1 ............................................................. 43, 65
Circuit ECF 22-1 ............................................................... 1, 61
Circuit ECF 22-5 ..................................................................... 2
Circuit ECF 23 ..................................................................... 63
Circuit ECF 23-0 ................................................................... 63
Circuit ECF 24-1 ................................................................... 43
Circuit ECF 24-2 ................................................................... 43
Circuit ECF 24-4 ................................................................... 43
Circuit ECF 24-9 ............................................................. 46, 48
Circuit ECF 28-1 ......................................................... 45, 52, 53
Circuit ECF 28-4 ......................................................... 50, 51, 52
Circuit ECF 28-6 ............................................................. 44, 54
Circuit ECF 28-7 ................................................................... 54
Circuit ECF 28-9 ................................................................... 49
Circuit ECF 29-7 .............................................................passim
Circuit ECF 31-1 ..................................................... 43, 68, 69, 70
Circuit ECF 33-1 ............................................................. 42, 43
Circuit ECF 33-3 ....................................................... 8, 9, 50, 51
Circuit ECF 33-4 ................................................................... 50
Circuit ECF 33-7 ................................................................... 51
Circuit ECF 34-1 ................................................................... 71
Circuit ECF 34-2 ............................................................. 67, 71
Circuit ECF 34-3 ................................................................... 71
Circuit ECF 35 ................................................................. 43, 71
Circuit ECF 36 ................................................................. 43, 71
Circuit ECF 37 ................................................................. 43, 71
Circuit ECF 38 ................................................................. 43, 72
Circuit ECF 39 ................................................................. 43, 72
Circuit ECF 40-1 ........................................................... 1, 63, 64
Circuit ECF 41-1 ............................................................. 73, 82

Emergency Unopposed Motion to Remove Restrictions on Court Records, Retroactive PACER Exemption, &
Court Appointed Counsel

viii

Circuit ECF 42-1 ........................................................ 71, 72, 73, 74

Circuit ECF 4-3 ........................................................ 2, 3, 4, 8

Circuit ECF 7 ........................................................ 65

Circuit ECF 7-1 ........................................................ 64, 65

Circuit ECF 9 ........................................................ 64

District ECF 1-10 ........................................................ 68

District ECF 1-11 ........................................................ 68

District ECF 1-12 ........................................................ 69

District ECF 1-2 ........................................................ 68

District ECF 1-4 ........................................................ 68

District ECF 1-5 ........................................................ 68

District ECF 1-6 ........................................................ 68

District ECF 16-0 ........................................................ 69, 70

District ECF 16-12 ........................................................ 70

District ECF 16-13 ........................................................ 70

District ECF 16-14 ........................................................ 70

District ECF 16-8 ........................................................ 70

District ECF 1-7 ........................................................ 68

District ECF 1-8 ........................................................ 68

District ECF 18-0 ........................................................ 64

District ECF 1-9 ........................................................ 68

District ECF 28-3 ........................................................ 2

District ECF 3-1 ........................................................ 69

District ECF 3-2 ........................................................ 69

District ECF 37 ........................................................ 61, 64

District ECF 4-1 ........................................................ 69

District ECF 5-1 ........................................................ 69

District ECF 7-1 ........................................................ 69

District ECF 7-2 ........................................................ 69

Emergency Unopposed Motion to Remove Restrictions on Court Records, Retroactive PACER Exemption, &
Court Appointed Counsel

ix

## Introduction

I, Ryan Dillon-Capps (née Wagner), the Plaintiff-Appellant-Petitioner, pursuant to FRAP 27, 4th Cir. R. 27e, 4th Cir. R. 27b., and federal courts inherent authority, move the Fourth Circuit Court to remove restrictions on court records, grant retroactive and on-going PACER exemption, and assign court appointed counsel. As the only party, this motion is unopposed.

## Emergency Motion Statements

### [Issue 1]   PACER account: June 16, 2025

On April 22, 2025, I moved for a PACER exemption to cover all federal court fees, including retroactive relief. See Circuit ECF 22-1. The Fourth Circuit granted limited relief on April 23, 2025, exempting only prospective access to its own docket through October 20, 2025, without addressing other courts or past-due fees. See Circuit ECF 23. As a result, my PACER account was disabled on June 10, 2025, due to non-payment of accrued fees—effectively barring access to the district court docket. PACER staff confirmed the need for a revised court order to avoid further constitutional injury. See Circuit ECF 40-1.

### [Issue 2]   Medical Life-Threatening Emergency: June 16, 2025

The affidavit of Licensed Clinical Social Worker (LCSW-C) Caroline Dillon-Capps was filed to the District Court on December 27, 2024, as part of my original filing, and was docketed to the Fourth Circuit Court on February

Emergency Unopposed Motion to Remove Restrictions on Court Records, Retroactive PACER Exemption, & Court Appointed Counsel

1

24, 2025, as Circuit ECF 4-3, on April 22, 2025, as Circuit ECF 22-5 and is incorporated by reference into this Motion.

Caroline Dillon-Capps is a licensed clinical social worker (LCSW-C) with a master's degree in social work from the University of Maryland School of Social Work and more than eight years of outpatient therapy experience treating clients with a range of diagnoses, including Major Depressive Disorder, Generalized Anxiety Disorder, and Post-Traumatic Stress Disorder. See Circuit ECF 4-3, at 1. While the NASW Code of Ethics prohibits my wife from formally diagnosing or clinically treating me, her expert eyewitness testimony is unequivocal: "Among the symptoms observed, several align with malignant catatonia, which is recognized as a medical emergency requiring immediate intervention. This affidavit objectively presents these observations to highlight the urgent need for evaluation and treatment by appropriate medical professionals." See Circuit ECF 4-3, at 2–3.

On February 13, 2025, Exhibit HARM-MC-1, **J. Park et al.,** Case Report: *Malignant Catatonia Warrants Early Psychiatric-Critical Care Collaborative Management: Two Cases and Literature Review*, **2017** *Case Rep. Crit. Care*, Art. ID 1951965, https://doi.org/10.1155/2017/1951965, was docketed with the District Court as District ECF 28-3. On April 29, 2025, it was docketed with Fourth Circuit Court as Circuit ECF 29-7 and is incorporated by reference into this motion.

Emergency Unopposed Motion to Remove Restrictions on Court Records, Retroactive PACER Exemption, & Court Appointed Counsel

2

**Exhibit HARM-MC-1** is a clinical case report addressing *Malignant Catatonia* ("MC"), previously referred to as "lethal catatonia," which is identified as "the most severe manifestation within the spectrum of catatonic syndrome." Circuit ECF 29-7, at 1. MC is a life-threatening condition that may arise in the context of a neuropsychiatric syndrome or general mental illness and is characterized by behavioral disturbances, movement abnormalities, and autonomic dysregulation. Circuit ECF 29-7, at 1. Common symptoms include catalepsy, stupor, mutism, waxy flexibility, negativism, posturing, autonomic dysfunction, muscular rigidity, fever, and muscle injury. Circuit ECF 29-7, at 1. MC is "predominantly manifested by bizarre behavior and mutism, posturing, and catalepsy," and frequently presents alongside "psychiatric disturbances," including "psychiatric undertones of psychosis, agitation, stupor, mutism, or anxiety." Circuit ECF 29-7, at 2.

My wife's affidavit, submitted as an expert licensed clinical social worker, describes a range of severe trauma-related symptoms she has personally observed. She documents "severe panic attacks—which can last for hours" during which I become "unresponsive to external stimuli" and display "signs of psychomotor inhibition, dissociation, freezing, body rigidity, and erratic breathing patterns." See Circuit ECF 4-3, at 2. She further notes episodes of "altered mental states that resemble delirium and acute disorientation, lasting for hours," during which I "often appear confused

*Emergency Unopposed Motion to Remove Restrictions on Court Records, Retroactive PACER Exemption, & Court Appointed Counsel*

3

about time and place, even asking me once what year it was," and exhibit "repetitive speech patterns, circular reasoning, and an exaggerated or caricatured manner that is noticeably different from [my] usual behavior." See Circuit ECF 4-3, at 3. In her expert opinion, she concludes that "these symptoms strongly suggest a trauma-based response requiring urgent and critical intervention," and that "established diagnostic standards, as well as [her] own observations, indicate that these symptoms are likely to persist and worsen without comprehensive evaluation and prompt treatment." See Circuit ECF 4-3, at 5. The affidavit concludes with an assessment of the elevated risks associated with any delay in treatment, which include life-threatening deterioration:

> "Delays in obtaining necessary care could lead to significant complications, including more frequent episodes, intensified experiences of depersonalization, derealization, and other dissociative phenomena. Without timely intervention, his condition may become increasingly resistant to treatment, potentially necessitating long-term therapy or inpatient care and heightening the risk of severe, life-threatening consequences. To clarify the diagnosis and prognosis, we must seek psychiatric healthcare providers who specialize in trauma and neuropsychiatric disorders" Circuit ECF 4-3, at 5–6.

Because the "diagnosis and definitive therapy of MC [is] typically delayed," the "mortality of MC typically exceeded[s] 50%," with advances in treatment improving recovery in "up to 80%" of cases. See Circuit ECF 29-7, at 1. The two case studies examined involved patients admitted with "catatonic symptoms and autonomic instability," both of whom "exhibited

Emergency Unopposed Motion to Remove Restrictions on Court Records, Retroactive PACER Exemption, & Court Appointed Counsel

4

worsening catatonia, mutism … and autonomic instability" and "autonomic instability, catatonia, mutism, waxy flexibility, and agitation." In both cases, definitive diagnosis was delayed by approximately two weeks. See Circuit ECF 29-7, at 2. This finding is consistent with an additional study cited in the report, which found that the average lag time to first treatment was 15 days, with a further average delay of 27 days before the second treatment. See Circuit ECF 29-7, at 3. That same study reported an overall treatment improvement rate of 76%, with complete remission in 58% of cases. Critically, the reported mortality rate of 9% was limited to those patients who reached a medical facility in time. See Circuit ECF 29-7, at 3.

Even among the fortunate few able to seek treatment before a fatal "cardiac arrest with pulseless ventricular tachycardia," as documented in the first case study, or before the onset of severe complications—including "hypotension, hypertension, arrhythmias, myocardial ischemia, rhabdomyolysis, hemodynamic instability, decreased airway clearance, aspiration pneumonia, hypoxemia, pneumonia, dehydration, hypovolemia, electrolyte derangements, inability to take oral medications, thromboembolic disease, [and] pressure ulcers"—the prognosis remains grave. These complications are capable of causing immediate death absent timely intervention. Even with successful stabilization, patients often face more than a year of inpatient recovery. See Circuit ECF 29-7, at 2–3.

Emergency Unopposed Motion to Remove Restrictions on Court Records, Retroactive PACER Exemption, & Court Appointed Counsel

5

My medical emergency is active and ongoing because, once Malignant Catatonia (MC) triggers the fatal sequence of autonomic and neuropsychiatric events, intervention is often too late. Even under optimal conditions—with early recognition and immediate administration of the correct treatment protocol—the fatality rate remains approximately 9%, and more than 20% of patients never achieve full recovery. Unlike most patients, I have benefited from advanced awareness that my condition is life-threatening, which I believe is the only reason I am still alive. However, my symptoms have progressively worsened despite all efforts, because we do not have access to the necessary treatment protocols. On multiple occasions, my wife has been uncertain whether I would survive the night, remaining alert to my express wishes not to be admitted to the hospital under current conditions.

If I am hospitalized or incapacitated before legal counsel is appointed and minimum relief is secured, it will amount to exchanging my life for the welfare of my wife, my disabled brother, and my elderly disabled mother—all of whom rely on me for care and support. I will not permit my life to be sacrificed at the expense of innocent dependents. For this reason, I took steps long ago to ensure that my death would not terminate these proceedings or allow the underlying misconduct to evade accountability. In hindsight, those safeguards may have been too effective. My continued survival now serves as

Emergency Unopposed Motion to Remove Restrictions on Court Records, Retroactive PACER Exemption, & Court Appointed Counsel

6

the final restraint preventing a broader and more forceful response. My objective remains judicial moderation, rooted in a commitment to institutional integrity.

The case study affirms that "MC is an emergent and life-threatening illness." Circuit ECF 29-7, at 2. This aligns with the definition of "emergent admission" under Oregon Administrative Rule 410-125-0401(1), which closely parallels the federal definitions of "emergency medical condition" in 42 C.F.R. § 438.114(a) and 42 U.S.C. § 1395dd(e)(1). All three definitions are substantively equivalent in identifying medical conditions requiring immediate attention. Specifically, under 42 U.S.C. § 1395dd(e)(1), an "emergency medical condition" is defined as: "emergency medical condition" is defined as:

> "a medical condition manifesting itself by acute symptoms of sufficient severity (including severe pain) such that the absence of immediate medical attention could reasonably be expected to result in—(i) placing the health of the individual … in serious jeopardy; (ii) serious impairment to bodily functions; or (iii) serious dysfunction of any bodily organ or part."

MC, as documented in the clinical literature and confirmed by the case study in Circuit ECF 29-7, meets each prong of this statutory definition.

The "grave and progressive nature" of my illness "constitutes irreparable harm." *Henderson v. Bodine Aluminum, Inc.*, 70 F.3d 958, 961 (8th Cir. 1995) (describing a life-threatening emergency requiring medical

Emergency Unopposed Motion to Remove Restrictions on Court Records, Retroactive PACER Exemption, & Court Appointed Counsel

7

treatment). As the court held, "urgent medical treatment is the kind of equitable relief that cannot abide trial." *Henderson v. Bodine Aluminum, Inc.*, 70 F.3d 958, 962 (8th Cir. 1995). This case far exceeds the scope of a wrongful termination dispute—although I am entitled to judgment as a matter of law on those claims. My former employer bears individual and joint liability for conduct undertaken with the intent to cause harm, which directly triggered malignant catatonia, dissociative episodes, dissociative amnesia, and other severe health impairments.

This motion, however, is narrowly focused on the underlying constitutional violations that now obstruct my ability to obtain any meaningful relief. Circuit ECF 4-3. Until these foundational issues are addressed, every filing must be treated as an emergency—because each one seeks to remedy the very structural barriers that continue to deny me access to justice. See also *Sampson v. Murray*, 415 U.S. 61, 92 (1974) (*Quod praesumit,* Courts may exercise their injunctive powers in extraordinary cases involving unlawful discharge where irreparable harm is shown).

## [Issue 3]    Financial Instability: June 16, 2025

My affidavit asserting violations of the Family and Medical Leave Act, the Americans with Disabilities Act, and the Rehabilitation Act was docketed in the Fourth Circuit on May 8, 2025, as Circuit ECF 33-3, and is incorporated herein by reference.

Emergency Unopposed Motion to Remove Restrictions on Court Records, Retroactive PACER Exemption, & Court Appointed Counsel

8

As detailed in that affidavit, my financial stability has been entirely destroyed. My creditworthiness has collapsed, nearly all of my credit and banking accounts have been closed, I have lost two vehicles, and foreclosure proceedings are pending. We now survive only through the assistance of others, with no guarantee of maintaining access to electricity, phone service, email, basic necessities, or food from day to day. See Circuit ECF 33-3, at 53–57.

## Overview Legal Framework for Constitutional Violations

Due process of law is the judiciary's solemn obligation to safeguard fundamental rights from arbitrary, oppressive, or cruel exercises of power. See *Hurtado v. People of State of Cal.*, 110 U.S. 516, 536–37 (1884). It is the commitment to fair and impartial adherence to legal process—rooted in foundational principles of private rights and the rejection of special, partial, or discriminatory treatment. See *Leeper v. State of Texas*, 139 U.S. 462, 468 (1891).

Unlike rigid legal doctrines, due process "is not a technical conception with a fixed content unrelated to time, place and circumstances." *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976) (quoting *Cafeteria Workers v. McElroy*, 367 U.S. 886, 895 (1961)) (cleaned up). Rather, it is "flexible and calls for such procedural protections as the particular situation demands." *Mathews v.*

Emergency Unopposed Motion to Remove Restrictions on Court Records, Retroactive PACER Exemption, &
Court Appointed Counsel

9

*Eldridge*, 424 U.S. 319, 334 (1976) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)) (cleaned up).

At its core, due process asks whether the notice provided was "full and fair," and whether the opportunity to be heard was "fundamentally fair." See *Richardson v. Perales*, 402 U.S. 389 (1971). The "fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976).

As the Supreme Court explained more than a century ago, legal rights may be asserted and legal obligations enforced "provided the method of procedure adopted for these purposes gives reasonable notice and affords fair opportunity to be heard before the issues are decided." *Iowa Cent. Ry. Co. v. Iowa*, 160 U.S. 389, 393 (1896).

"Embodied in the Fourteenth Amendment and inferred in the Fifth Amendment," the guarantees of Equal Protection and Due Process apply to both state and federal governments—including the judiciary. *F.C.C. v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313–314 (1993); Bolling v. Sharpe, 347 U.S. 497, 497–499 (1954). The central inquiry, then, is not whether these guarantees exist, but what precisely they guarantee.

In *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 270 (2010), the Supreme Court addressed FRCP 60(b)(4), holding:

Emergency Unopposed Motion to Remove Restrictions on Court Records, Retroactive PACER Exemption, & Court Appointed Counsel

10

> "A void judgment is a legal nullity. Although the term "void" describes a result, rather than the conditions that render a judgment unenforceable, it suffices to say that a void judgment is one so affected by a fundamental infirmity that the infirmity may be raised even after the judgment becomes final".

The *Espinosa* Court found that FRCP 60(b)(4) applies when a judgment is premised on "a certain type of jurisdictional error or on a violation of due process that deprives a party of notice or the opportunity to be heard"—specifically, a jurisdictional defect that "lack[s] even an 'arguable basis' for jurisdiction." *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 270–71 (2010). A singular example was provided by the Espinosa Court from *United States v. Boch Oldsmobile, Inc.*, 909 F.2d 657, 661 (1st Cir. 1990), which held that "a clear usurpation of power will render a judgment void".

I  Jurisdiction: Gives Power and Discretion to Interpret, and the Duty and Obligation to Uphold Rights

The Supreme Court has looked at the usurpation of subject matter and article III jurisdiction, and rejected the doctrine and use of "hypothetical jurisdiction" because it "carries the courts beyond the bounds of authorized judicial action and thus offends fundamental separation-of-powers principles" and "without proper jurisdiction, a court cannot proceed at all, but can only note the jurisdictional defect and dismiss the suit"—"For a court to pronounce upon a law's meaning or constitutionality when it has no jurisdiction to do so is, by very definition, an ultra vires act". *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 84 (1998).

Emergency Unopposed Motion to Remove Restrictions on Court Records, Retroactive PACER Exemption, & Court Appointed Counsel

11

See also

**Fundamental Limits of Article III Jurisdiction:**

• *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 84 (1998) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)) ("Standing is the 'irreducible constitutional minimum' necessary to make a justiciable 'case' or 'controversy' under Article III, § 2.");

• *Reed v. Goertz*, 598 U.S. 230, 243 (2023) (citing *Chicago & Grand Trunk R. Co. v. Wellman*, 143 U.S. 339, 345 (1892)) ("The Constitution limits the federal courts' jurisdiction to 'Cases' and 'Controversies,' Art. III, § 2, cl. 1, constraining judicial power to 'the determination of real, earnest and vital controvers[ies] between' contending litigants.");

• *Int'l Video Corp. v. Ampex Corp.*, 484 F.2d 634, 636 (9th Cir. 1973) ("If there is no controversy, there is no jurisdiction in a constitutional sense regardless of whether statutory jurisdiction might otherwise be properly founded.");

• *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149 (2010), cited in *Reed v. Goertz*, 598 U.S. 230, 243 (2023) ("Under that doctrine, any party requesting relief from a federal court must assert 'an injury' that is 'concrete, particularized, and actual or imminent,' and he must show that his injury is both 'fairly traceable to the challenged action' and 'redressable by a favorable ruling.'").

**Prohibition Against Advisory or Hypothetical Jurisdiction**

• *Flast v. Cohen*, 392 U.S. 83, 96–97 (1968) (acknowledging the Article III "prohibition against advisory opinions");

• *Friends of the Everglades v. U.S. E.P.A.*, 699 F.3d 1280, 1289 (11th Cir. 2012) (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)) ("Federal courts cannot exercise hypothetical jurisdiction any more than we can issue a hypothetical judgment. 'Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree.'");

• *Waleski v. Montgomery, McCracken, Walker & Rhoads, LLP*, 143 S. Ct. 2027, reh'g denied, 144 S. Ct. 53 (2023) ("The continued use of hypothetical jurisdiction raises serious concerns. To start, the lower courts' distinction between 'statutory jurisdiction' and 'Article III' jurisdiction seems untenable.").

**Duty to Confirm Jurisdiction Before Reaching Merits**

• *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 831 (1999) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 88–89 (1998)) ("Federal courts have an affirmative duty to 'be sure of [their] own jurisdiction before getting to the merits.'");

Emergency Unopposed Motion to Remove Restrictions on Court Records, Retroactive PACER Exemption, & Court Appointed Counsel

12

> • *Stoll v. Gottlieb*, 305 U.S. 165, 171 (1938) ("A court does not have the power, by judicial fiat, to extend its jurisdiction over matters beyond the scope of the authority granted to it by its creators.").
>
> **Distinguishing Appellate vs. Original Jurisdiction**
>
> • *Reed v. Goertz*, 598 U.S. 230, 243–44 (2023) (citing *Ex parte Bollman*, 4 Cranch 75, 86 (1807)) ("The criterion which distinguishes appellate from original jurisdiction is that it revises and corrects the decisions of another tribunal.");
>
> • *Reed v. Goertz*, 598 U.S. 230, 244–45 (2023) (citing *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 416 (1923)) (only the Supreme Court has "appellate jurisdiction over state-court judgments," and, in particular, "[t]he jurisdiction possessed by the District Courts is strictly original.").

The Supreme Court stated that it "will not take jurisdiction if it should not: but it is equally true, that it must take jurisdiction if it should" because "We have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given. The one or the other would be treason to the constitution". *Cohens v. State of Virginia*, 19 U.S. 264, 404 (1821); *State of Mississippi v. Johnson*, 71 U.S. 475, 496 (1866); *Taylor v. Beckham*, 178 U.S. 548, 592–93 (1900); *Ex parte Young*, 209 U.S. 123, 143 (1908); *United States v. Will*, 449 U.S. 200, 216 (1980); *New Orleans Public Service, Inc. v. Council of City of New Orleans*, 491 U.S. 350, 358–59 (1989); *Texas v. California*, 141 S. Ct. 1469, 1470 (2021).

Black's Law Dictionary (12th ed. 2024) defines conduct as "personal behavior, whether by action or inaction, verbal or nonverbal; the manner in which a person behaves; collectively, a person's deeds." Perhaps the easiest way to frame when inaction is constitutionally prohibited is through rights and duties, where a "right is a correlative to duty; where there is no duty

Emergency Unopposed Motion to Remove Restrictions on Court Records, Retroactive PACER Exemption, & Court Appointed Counsel

13

there can be no right. But the converse is not necessarily true…. In order for a duty to create a right, it must be a duty *to act or forbear.*" John Chipman Gray, *The Nature and Sources of the Law* 8–9 (2d ed. 1921).

In the simplest of terms, a duty cannot be legally refused. *Marbury v. Madison*, 5 U.S. 137, 156 (1803). Pursuant to 28 U.S. Code § 453, every justice and judge voluntarily commits themselves to administer justice fairly, impartially, and equitably to everyone—binding themselves to uphold "the Constitution and laws of the United States". It is self-evident that "this oath certainly applies…to their conduct" and compels them to "discharge his duties agreeably to the constitution of the United States"—failure to uphold their oath and duty is "a crime". *Marbury v. Madison*, 5 U.S. 137, 180 (1803).

In January and February 1861, several Southern states seceded from the Union and adopted the Confederate Constitution. On March 4, 1861, President Abraham Lincoln, in his inaugural address, declared secession unconstitutional and asserted the Union's legal and perpetual continuity. In response, Confederate President Jefferson Davis ordered an attack on Fort Sumter, which occurred on April 12, 1861—initiating open war.

The Constitution provides that "[t]reason against the United States shall consist only in levying War against them, or in adhering to their Enemies, giving them Aid and Comfort." U.S. Const. art. III, § 3, cl. 1. On its face, Jefferson Davis's leadership of an organized military rebellion appears

Emergency Unopposed Motion to Remove Restrictions on Court Records, Retroactive PACER Exemption, & Court Appointed Counsel

14

to satisfy the constitutional definition of treason. He was, in fact, indicted for treason in 1866.

Yet, despite the indictment, his trial was cancelled on February 15, 1869. Instead of proceeding to a definitive ruling on the legality of secession or the treason charge, the federal government allowed the question to be resolved through judicial recognition of the Union's legal continuity, as articulated in *Texas v. White*, 74 U.S. (7 Wall.) 700, 725 (1869), where the Supreme Court held: "The Constitution, in all its provisions, looks to an indestructible Union, composed of indestructible States."

The decision to abandon the prosecution of Jefferson Davis in favor of resolving the issue through constitutional interpretation was deliberate. In short, the executive branch declined to pursue criminal charges, and the judicial branch may only hear the cases properly brought before it. The State of Texas—like the State of Maryland and the U.S. Government—cannot be criminally charged and hauled off to jail. The Supreme Court ruled on the case before it, affirming the principle that states cannot unilaterally secede from the Union, and that their purported "independence" was legally void *ab initio*.

As the Supreme Court explained, the government acts "by its legislative, its executive, or its judicial authorities. It can act in no other way. The constitutional provision, therefore, must mean that no [branch or agency

Emergency Unopposed Motion to Remove Restrictions on Court Records, Retroactive PACER Exemption, & Court Appointed Counsel

15

of the government], or of the officers or agents by whom its powers are exerted, shall deny to any person within its jurisdiction the equal protection of the laws. Whoever, by virtue of public position under [] government, deprives another of property, life, or liberty, without due process of law, or denies or takes away the equal protection of the laws, violates the constitutional inhibition; and as he acts in the name and for [the government], and is clothed with the [government's] power, his act is that of the [government]. This must be so, or the constitutional prohibition has no meaning. Then the [government] has clothed one of its agents with power to annul or to evade it". *Ex parte Commonwealth of Virginia*, 100 U.S. 339, 347 (1879).

When courts declare an act *void ab initio*, characterize it as "treasonous to the Constitution," or otherwise repudiate it on foundational constitutional grounds, such adjudication transforms the conduct into constitutional treason for all practical purposes. This reflects the only lawful mechanism by which our constitutional system acknowledges and addresses high treason committed from within the institutions of government itself.

Under this framework, when the court finds fraud upon the court, it has a "nondefeasible duty to impose sanctions." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 70–71 (1991). It also holds "the duty and the power to vacate its own judgment and to give the District Court appropriate directions"—such as

Emergency Unopposed Motion to Remove Restrictions on Court Records, Retroactive PACER Exemption, & Court Appointed Counsel

16

"setting aside the judgment to permit a new trial, altering the terms of the judgment, or restraining the beneficiaries of the judgment from taking any benefit whatever from it." *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 245, 249–50 (1944).

Article VI of the Constitution makes the Constitution the "supreme Law of the Land"—"the fundamental and paramount law of the nation." *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177, 180 (1803); *Cooper v. Aaron*, 358 U.S. 1, 18 (1958). "No judicial process, whatever form it may assume, can have any lawful authority outside of the limits of the jurisdiction of the court or judge by whom it is issued; and an attempt to enforce it beyond these boundaries is nothing less than lawless violence." *Ableman v. Booth*, 62 U.S. 506, 524 (1858).

The U.S. Government, and every state in the Union, is "bound, by oath or affirmation, to support this Constitution"—this is deliberately done for the "protection and safety against injustice" and "to preserve it in full force, in all its powers," to be a "guard against resistance to or evasion of its authority." *Ableman v. Booth*, 62 U.S. 506, 524 (1858). Due process of law is "so fundamental and pervasive" that no government can "deny to any person within its jurisdiction the equal protection of the laws"—"the command of the Constitution [is] indispensable for the protection of the freedoms guaranteed by our fundamental charter for all of us. Our constitutional ideal of equal

Emergency Unopposed Motion to Remove Restrictions on Court Records, Retroactive PACER Exemption, & Court Appointed Counsel

17

justice under law is thus made a living truth." *Cooper v. Aaron*, 358 U.S. 1, 18–19 (1958).

For it to be true that "an appointment of a judge once completed, is made forever. He holds under the Constitution," *Marbury v. Madison*, 5 U.S. 137, 151 (1803), and, "where a specific duty is assigned by law, and individual rights depend upon the performance of that duty," then it would be "equally clear that the individual who considers himself injured, has a right to resort to the laws of his country for a remedy." *Marbury v. Madison*, 5 U.S. 137, 166 (1803). For this reason, "judicial power of the United States is extended to all cases arising under the Constitution." *Marbury v. Madison*, 5 U.S. 137, 178 (1803).

Just because we use the word "discretion" to describe a writ of mandamus or any other judicial decision—"the discretion of a court always means a sound, legal discretion, not an arbitrary will," and when "the applicant makes out a proper case, the court are bound to grant it," because federal courts cannot "refuse justice to no man." *Marbury v. Madison*, 5 U.S. 137, 152–53 (1803).  In *The Federalist No. 78*, in describing the Judiciary,

Emergency Unopposed Motion to Remove Restrictions on Court Records, Retroactive PACER Exemption, & Court Appointed Counsel

18

Hamilton asserts: "It may truly be said to have neither FORCE nor WILL, but merely judgment."[1]

From another perspective, judicial immunity is forfeited when a judge acts in the "clear absence of all [subject matter] jurisdiction." *Stump v. Sparkman*, 435 U.S. 349 (1978). And the Due Process Clauses prohibit the government from "the arbitrary exercise of the powers of government, unrestrained by the established principles of private rights and distributive justice"—constitutionally articulated as a prohibition against "denying to any person within its jurisdiction the equal protection of the laws." *United States v. Cruikshank*, 92 U.S. 542, 554 (1875). Considering that judicial immunity is lost for action taken, then it must be lost for inaction when a judge unlawfully declines to uphold their oath and duty to the Constitution and declines the jurisdiction it has been given to uphold the private rights, privileges, and protections under the Constitution and laws of the government. If it "treason to the Constitution" to both usurp and decline jurisdiction, then declination and inaction are no different in legal effect than affirmative usurpation—both exceed the judicial role, violate their sworn oath to the Constitution, and destroy the immunity otherwise afforded.

_____

[1] The Federalist No. 78, [28 May 1788], Founders Online, National Archives [Original source: The Papers of Alexander Hamilton, vol. 4, January 1787–May 1788, ed. Harold C. Syrett. New York: Columbia University Press, 1962, pp. 655–663.] https://founders.archives.gov/documents/Hamilton/01-04-02-0241

Emergency Unopposed Motion to Remove Restrictions on Court Records, Retroactive PACER Exemption, & Court Appointed Counsel

19

Holding in alignment to this assertion, we see the use of a federal court's "supervisory power is invalid" if it conflicts with or circumvents constitutional or statutory provisions, or if it exceeds or restricts the court's jurisdiction. *Thomas v. Arn*, 474 U.S. 140, 148, 153 (1985). And "supervisory power does not extend so far" as to "confer on the judiciary discretionary power to disregard the considered limitations of the law it is charged with enforcing"—specifically prohibiting "the creation of prophylactic supervisory rules that circumvent or supplement legal standards set out in decisions" of the higher courts they are bound to follow. *United States v. Payner*, 447 U.S. 727, 735 (1980). Accordingly, federal courts "have no more discretion to disregard" binding rules and procedures. *Carlisle v. United States*, 517 U.S. 416, 425–26 (1996). "And while it is tempting to roll supervisory authority into the power of appellate review, the two are analytically distinct," and only the Supreme Court is constitutionally established as "supreme"—all others are "inferior courts" created by Congress with no inherent authority. *United States v. Tsarnaev*, 595 U.S. 302, 326–27 (2022).

Across these rulings—and consistent with *The Federalist No. 78*, *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177 (1803), and other Supreme Court precedent—the 'makers of the Constitution' and the Court's interchangeable use of "discretion" and "power" draw a clear definitional line:

Emergency Unopposed Motion to Remove Restrictions on Court Records, Retroactive PACER Exemption, & Court Appointed Counsel

20

abuse of discretion and abuse of power are synonymous with the usurpation or declination of jurisdiction.

We can find supporting insights on usurpation from *Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215 (2022) overturning the precedent interpretation from *Roe v. Wade*, 410 U.S. 113, 126 (1973); and declination from *Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024) overturning the precedent interpretation from *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984).

One might observe the irony in lower federal courts conflating 'discretion' with 'choice' while simultaneously embracing a version of the Chevron doctrine that improperly declines the very jurisdiction they do possess—namely, the power of statutory and constitutional interpretation. Under 5 U.S.C. § 706, courts are mandated to review "all relevant questions of law," including the duty to "interpret constitutional and statutory provisions" and to determine "the meaning or applicability of the terms of an agency action." As the Supreme Court recently reaffirmed, the statute "makes clear that agency interpretations of statutes—like agency interpretations of the Constitution—are not entitled to deference." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 371 (2024). The Supreme Court's deliberate choice of language in its ruling further clarifies that a court's declination of jurisdiction is not entitled to deference.

Emergency Unopposed Motion to Remove Restrictions on Court Records, Retroactive PACER Exemption, & Court Appointed Counsel

21

The public's fundamental error in understanding *Dobbs* lies in conflating the separation of powers with private rights. The simplest explanation—suitable for general understanding—is that *Roe* was premature: rather than adjudicating a private right, it usurped Congress's legislative power. The cases brought before the Supreme Court framed the issue as a "right of abortion"—a framing akin to asserting a constitutional "right to a public platform" and asking the judiciary to mandate its existence. The proper doctrinal framing, by contrast, would rest on a recognized private right, such as the "right of publication," with governmental interference arising through restrictions on circulation, as addressed in *Winters v. New York*, 333 U.S. 507 (1948). The *Dobbs* Court expressly recognized this conceptual error in *Roe*, stating:

> "*Roe* imposed on the entire country a detailed set of rules for pregnancy divided into trimesters much like those that one might expect to find in a statute or regulation…. The Court found support for a constitutional right of personal privacy. But *Roe* conflated the right to shield information from disclosure and the right to make and implement important personal decisions without governmental interference…. The Court abandoned any reliance on a privacy right and instead grounded the abortion right entirely on the Fourteenth Amendment's Due Process Clause." *Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215, 219–20 (2022) (cleaned up).

## II  Due Process and Equal Protection: Safeguards for Fundamental Rights, Notice, and the Opportunity to Be Heard

The duty to provide "full and fair" notice rooted in "definiteness", "due process", and "First Amendment guarantees of freedom of speech, freedom of

Emergency Unopposed Motion to Remove Restrictions on Court Records, Retroactive PACER Exemption, & Court Appointed Counsel

22

the press, and the right to petition the Government"—and so it also must similarly apply to the other First Amendment guarantees, including assembly. *United States v. Harriss*, 347 U.S. 612, 617 (1954).

When it comes to the Due Process Clauses, 'there can be no doubt that at a minimum they require that deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Boddie v. Connecticut*, 401 U.S. 371, 378 (1971). For example, when the government fails to provide fair notice about the limitations and restrictions that they want to apply to First Amendment protected freedom of expression—it violates "procedural due process and freedom of speech [and] press." *Winters v. New York*, 333 U.S. 507, 509–10 (1948).

"At its core, the right to due process reflects a fundamental value in our American constitutional system," and without this safeguard to protect against the deprivation of rights, life, liberty, and property, the "state of nature" would be the only means available—rendering social organization and cohesion virtually impossible. *Boddie v. Connecticut*, 401 U.S. 371, 374–76 (1971). This is why due process "is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). Its scope is informed by the extent to which the individual may be "condemned to suffer grievous loss," and requires "a

Emergency Unopposed Motion to Remove Restrictions on Court Records, Retroactive PACER Exemption, & Court Appointed Counsel

23

determination of the precise nature of the government function involved as well as of the private interest that has been affected by governmental action." *Goldberg v. Kelly*, 397 U.S. 254, 262–63 (1970) (cleaned up).

To ensure the preservation of organized society, due process requires the government to afford "all individuals a meaningful opportunity to be heard" as part of the constitutional guarantee, though it is "subject to waiver," which does not alter "its root requirement that an individual be given an opportunity for a hearing before he is deprived of any significant property interest." *Boddie v. Connecticut*, 401 U.S. 371, 378–79 (1971). For example, when a defendant "fails to make a timely appearance" after "receiving adequate notice," or "without justifiable excuse, violates a procedural rule requiring the production of evidence necessary for orderly adjudication," it is appropriate for the court to "enter a default judgment against" them. *Boddie v. Connecticut*, 401 U.S. 371, 378 (1971).

Due process exists to ensure "that the government cannot do things to you without telling you why and without giving you a chance to speak for yourself." *Hicks v. Colvin*, No. CV 16-154-ART, 2016 WL 7436050, at *1 (E.D. Ky. Dec. 21, 2016) (paraphrasing *The Federalist No. 84*, at 512 (Alexander Hamilton) (Clinton Rossiter ed., 1961) (quoting 1 William Blackstone, *Commentaries* *136; 4 id. at *438)). "Due process does not permit trust; it demands a space for doubt…When the government asserts a fact, and when

Emergency Unopposed Motion to Remove Restrictions on Court Records, Retroactive PACER Exemption, & Court Appointed Counsel

24

that fact affects someone's right to life, liberty, or property, due process requires the government to let that person speak for himself." *Hicks v. Colvin*, No. CV 16-154-ART, 2016 WL 7436050, at *1 (E.D. Ky. Dec. 21, 2016). And "meaningful" hearings require that individuals be given a genuine opportunity to rebut the government's assertions about facts that affect their rights. *Hicks v. Colvin*, No. CV 16-154-ART, 2016 WL 7436050, at *2 (E.D. Ky. Dec. 21, 2016).

A  Due Process Consideration Test

Due process generally requires consideration of three distinct factors: (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards (e.g., retroactive PACER exemptions, restoration of public access to restricted court records, or court-appointed counsel); and (3) the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). When the very procedural safeguards at issue have themselves become the subject of emergency motions, the due process concern is not merely theoretical—it is immediate and structural.

Emergency Unopposed Motion to Remove Restrictions on Court Records, Retroactive PACER Exemption, & Court Appointed Counsel

25

B  Four Factor Government Delay Test

The balancing test from *Barker v. Wingo*, 407 U.S. 514 (1972), was "developed to determine when Government delay has abridged the right to a speedy trial…That test involves a weighing of four factors: length of the delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *United States v. Eight Thousand Eight Hundred & Fifty Dollars ($8,850) in U.S. Currency*, 461 U.S. 555, 555–56 (1983)

C  Substantive Due Process—Degrees of Scrutiny

In addressing the doctrine of Substantive Due Process, the *Dobbs* Court identified *Roe*'s fatal flaw as its failure to anchor the asserted right in a recognized private right—a necessary threshold for determining whether the challenged governmental action must withstand rational basis review, intermediate scrutiny, or strict scrutiny. This is a foundational aspect of judicial review and requires a court to "determine at the outset whether the problem presented to it for solution relates to torts, contracts, property, or some other field, or to a matter of substance or procedure, in order to refer to the appropriate law"—thereby enabling the court to "know which choice-of-law rule to apply to the case." This process is generally referred to as "characterization," and sometimes as "classification," "qualification," or "interpretation." *16 Am. Jur. 2d Conflict of Laws* § 3, at 12 (1998).

From the perspective of Chief Justice Burger, Justice Stevens, and myself, the word *rational* "includes elements of legitimacy and neutrality that

Emergency Unopposed Motion to Remove Restrictions on Court Records, Retroactive PACER Exemption, & Court Appointed Counsel

26

must always characterize the performance of the sovereign's duty to govern impartially"—ergo, when governmental action lacks either legitimacy or neutrality, it fails even minimal scrutiny. *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 452 (1985) (Stevens, J., concurring).

Intermediate scrutiny is applied under the Equal Protection Clause as a "more explicit safeguard of prohibited unfairness than 'due process of law.'" And while the two are "not interchangeable phrases," there are instances where "discrimination may be so unjustifiable" that it violates substantive due process and therefore requires strict scrutiny. *Bolling v. Sharpe*, 347 U.S. 497, 499 (1954).

Strict scrutiny "is a searching examination," and the government "bears the burden to prove that the reasons... are clearly identified and unquestionably legitimate." *Fisher v. Univ. of Texas at Austin*, 570 U.S. 297, 310 (2013) (cleaned up); see also *Greater New Orleans Broadcasting Assn., Inc. v. United States,* 527 U.S. 173, 183 (1999) ("[T]he Government bears the burden of identifying a substantial interest and justifying the challenged restriction"); *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985) ("Under strict scrutiny, governmental action will be sustained only if it is narrowly tailored to serve a compelling interest"); *Fulton v. City of Philadelphia, Pennsylvania*, 593 U.S. 522, 524 (2021) ("A government policy

Emergency Unopposed Motion to Remove Restrictions on Court Records, Retroactive PACER Exemption, & Court Appointed Counsel

27

can survive strict scrutiny only if it advances compelling interests and is narrowly tailored to achieve those interests").

This heightened standard is reserved for cases implicating substantive due process, fundamental rights, or protected classifications—where under the law, fundamental rights are often referred to as a form of liberty, which "extends to the full range of conduct which the individual is free to pursue, and it cannot be restricted except for a proper governmental objective"—a restriction that imposes "an arbitrary deprivation of their liberty in violation of the Due Process Clause." *Bolling v. Sharpe*, 347 U.S. 497, 499–500 (1954).

See e.g.,
**Protected classifications:**
• *Grutter v. Bollinger*, 539 U.S. 306, 308 (2003) ("All government racial classifications must be analyzed by a reviewing court under strict scrutiny");
• *Fisher v. Univ. of Texas at Austin*, 570 U.S. 297, 310 (2013) ("any official action that treats a person differently on account of his race or ethnic origin is inherently suspect")
**Freedom of Speech**
• *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 163–64 (2015) (If "Government regulation of speech is content based" and "applies to particular speech because of the topic discussed or the idea or message expressed"—then it is "subject to strict scrutiny");
• *United States v. Playboy Ent. Grp., Inc.,* 529 U.S. 803, 816 (2000) ("When the Government restricts speech, the Government bears the burden of proving the constitutionality of its actions");
• *Edenfield v. Fane*, 507 U.S. 761, 770–771 (1993) ("[A] governmental body seeking to sustain a restriction on commercial speech must demonstrate that the harms it recites are real and that its restriction will in fact alleviate them to a material degree");
**Freedom of Press**

Emergency Unopposed Motion to Remove Restrictions on Court Records, Retroactive PACER Exemption, & Court Appointed Counsel

28

> • *Thornburgh v. Abbott*, 490 U.S. 401, 422–426 (1989) (strict scrutiny applies to publisher's right of press/speech and circulation, and its readers right to receive circulation)

## D Disparate, Adverse, and Disproportionate—Treatment and Impact

Where procedural due focuses on the objective process, such if 'full and fair' notice occurred and if there was a meaningful , substantive due process looks at the subjective reasoning and equal protection looks at the unequitable and differential application—not to be confused with differential execution which can be performed from a review of quantifiable data.

Due process and equal protection look to see if "one class of defendants a substantial benefit available to another class of defendants." *Bearden v. Georgia*, 461 U.S. 660, 665 (1983). The correct review understands that equal protection requires flexibility that is absent arbitrary, retaliatory, and discriminatory animus and effect—inclusive of unintentional discrimination (e.g., disparate impact, adverse impact, and disproportionate impact).[2]

## E Claim-Of-One Equal Protection

A special committee is often necessary to determine whether "a pattern of misconduct or a broader disability exists." *Judicial-Disability Proceedings*, Rule 12 cmt., Judicial Conference of the U.S. (Mar. 2019).

In direct opposition to this is an equal protection "class-of-one" claim. A class-of-one claim is not based on a broader pattern against a group or

---

[2] This argument has been replaced with a summary placeholder.

Emergency Unopposed Motion to Remove Restrictions on Court Records, Retroactive PACER Exemption, & Court Appointed Counsel

29

protected class, but is motivated by what has been described as a "spiteful effort," "subjective ill will," "illegitimate animus," and conduct that has been referred to as "irrational and wholly arbitrary," "vindictive action," or simply "was the result not of prosecutorial discretion honestly (even if ineptly—even if arbitrarily) exercised but of an illegitimate desire to 'get' him." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 563–66 (2000) (per curiam).

This is one of many unwinnable scenarios. The defense against my class-of-one equal protection claim is to establish a broader pattern of conduct—but the conduct is unconstitutional, and therefore it would establish a broader pattern of misconduct.

### III  Summary of Constitutional Framework

It seems abundantly clear that there are four ways for something to be void under a FRCP 60(b)(4) motion: (1) exercising jurisdiction that the court does not have; (2) declining to exercise jurisdiction that the court does have; (3) failing to provide "full and fair" notice; and (4) failing to provide an opportunity to be heard at a meaningful time and in a meaningful manner.

Each of these defects implicates foundational constitutional guarantees—notice, hearing, and lawful jurisdiction—and the absence of any one renders the proceedings void *ab initio* as a matter of statutory and constitutional law. Typically considered a legal error and potentially covered by judicial immunity, here we confront an extraordinary exception that falls

Emergency Unopposed Motion to Remove Restrictions on Court Records, Retroactive PACER Exemption, &
Court Appointed Counsel

30

far outside the bounds of proper adjudication. The state and district judges named have egregiously abandoned their constitutional duties in violation of their sworn oath, committing *treason against the Constitution*, forfeiting all claims to judicial immunity, and placing both democracy and the judicial institution it sustains at risk. Out of an abundance of restraint, commitment to moderation, and good faith that I continue to seek resolution short of advancing additional formal allegations and the claims associated with it.

## Overview of Legal Framework for First Amendment Rights

The right to "meet peaceably for consultation in respect to public affairs and to petition for a redress of grievances" are rights cognate "to those of free speech and free press" and are "equally fundamental." *De Jonge v. State of Oregon*, 299 U.S. 353, 364 (1937). In the same way that the freedoms of speech and press are guaranteed under the First Amendment and protected as personal rights and liberties under the Due Process Clauses. *See Gitlow v. People of State of New York*, 268 U.S. 652, 666 (1925); *Stromberg v. People of State of Cal.*, 283 U.S. 359, 368–69 (1931). Because "it was not by accident or coincidence that the rights to freedom in speech and press were coupled in a single guaranty with the rights of the people peaceably to assemble and to petition for redress of grievances"—while not identical, they are cognate rights that are inseparable. *Thomas v. Collins*, 323 U.S. 516, 530 (1945).

Emergency Unopposed Motion to Remove Restrictions on Court Records, Retroactive PACER Exemption, & Court Appointed Counsel

31

The "very foundation of constitutional government" is that "the constitutional rights of free speech, free press and free assembly" exist "in order to maintain the opportunity for free political discussion"—to peacefully petition the government "to the end that government may be responsive to the will of the people." *De Jonge v. State of Oregon*, 299 U.S. 353, 365 (1937); see also *Eastern R.R. Presidents Conf. v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 138 (1961) ("right of petition is one of the freedoms protected by the Bill of Rights). And the "right to petition extends to all departments of the Government"—including the "right of access to the courts" which is "one aspect of the right of petition." *California Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972). Because the "right to sue and defend in the courts" is the "alternative of force" in an "organized society"—and is "the right conservative of all other rights" which "lies at the foundation of orderly government" making it "one of the highest and most essential privileges of citizenship" that must be allowed by the General Government, for "equality of treatment" is "granted and protected by the Federal Constitution." *Chambers v. Baltimore & O.R. Co.*, 207 U.S. 142, 148 (1907).

The Supreme Court has consistently held that "habeas corpus proceedings are civil in nature", the federal courts apply the "general standards governing stays of civil judgments", and both district and appeal courts apply the same 4 part test for issuing a stay: "(1) whether the stay

Emergency Unopposed Motion to Remove Restrictions on Court Records, Retroactive PACER Exemption, & Court Appointed Counsel

32

applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Hilton v. Braunskill*, 481 U.S. 770, 774–76 (1987). Similarly, habeas corpus proceedings use the Federal Rules of Civil Procedures—including the pleading standards and associated precedents. *Mayle v. Felix*, 545 U.S. 644, 654–55 (2005). Additionally, the Supreme Court has cited and applied precedents from prisoner access of courts cases in non-prinsoner claims of constitutional rights violations—such as Lewis v. Casey, 518 U.S. 343, 357 (1996) ("limited to the inadequacy that produced [his] injury in fact"), and Lewis v. Casey, 518 U.S. 343, 357 (1996) ("remedy must of course be limited to the inadequacy that produced the injury in fact that the plaintiff has established") *Gill v. Whitford*, 585 U.S. 48, 66, 68 (2018).

The Right of Petition, Access to the Courts, and to Sue and Defend in Court comes with not only the protection ensuring "the ability to get into court, but also ensures that such access be adequate, effective, and meaningful." *Bounds v. Smith*, 430 U.S. 817, 822 (1977). This prohibits the government from interfering with "attempts to prepare legal documents". *Johnson v. Avery,* 393 U.S. 483, 484, 489–490 (1969). Or file them. *Ex parte Hull,* 312 U.S. 546, 547–549 (1941). Waiving filing fees for indigent litigants.

Emergency Unopposed Motion to Remove Restrictions on Court Records, Retroactive PACER Exemption, & Court Appointed Counsel

33

*Burns v. Ohio,* 360 U.S. 252, 258 (1959). Waiving transcript fees for indigent litigants. *Griffin v. Illinois,* 351 U.S. 12, 19 (1956). The "fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Simmons v. United States*, 142 S. Ct. 23, 24 (2021).

I  Access to the Court Claims

An Access to Court claim includes claims of governmental interference ancillary to claims for violations of fundamental rights and 'basic constitutional rights'. *Wolff v. McDonnell*, 418 U.S. 539, 578 (1974). And applies to individual plaintiffs as well as class actions because it  "adds nothing to the question of standing, for even named plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *Simon v. Eastern Ky. Welfare Rights Organization,* 426 U.S. 26, 40, n. 20 (1976) (quoting *Warth v. Seldin,* 422 U.S. 490, 502 (1975)).

Ultimately, the "nature of the remedy" is to be determined by the "nature and scope of the constitutional violation"—as is true for any claim for constitutional violations. *Missouri v. Jenkins,* 515 U.S. 70, 88, 89 (1995).

Emergency Unopposed Motion to Remove Restrictions on Court Records, Retroactive PACER Exemption, & Court Appointed Counsel

34

When the "the constitutional violation has not been shown to be systemwide" then "granting a remedy beyond what was necessary to provide relief" would "therefore improper"—*ergo,* when the constitutional violations are shown to be systemic and pervasive then the remedy necessary would be improper if it inadequately addressed the violations. *Lewis v. Casey*, 518 U.S. 343, 360 (1996); see also *Dayton Bd. of Ed. v. Brinkman*, 433 U.S. 406, 420 (1977) ("[O]nly if there has been a systemwide impact may there be a systemwide remedy"); *Califano v. Yamasaki,* 442 U.S. 682, 702 (1979) ("The scope of injunctive relief is dictated by the extent of the violation established, not by the geographical extent of the plaintiff class").

The First Amendment rights and freedoms, along with the "peripheral rights" that secure them—ensure, at a minimum, the freedom to seek and discover information, to experiment with modes of expression, and to determine how best to convey one's ideas, beliefs, and perspectives, as well as the reciprocal right for others to receive them. *Griswold v. Connecticut*, 381 U.S. 479, 482–83 (1965).

For example, "The right of freedom of speech and press includes not only the right to utter or to print, but the right to distribute, the right to receive, the right to read." *Griswold v. Connecticut*, 381 U.S. 479, 482 (1965) (citing *Martin v. City of Struthers, Ohio*, 319 U.S. 141, 143 (1943)). It also includes the "freedom of inquiry, freedom of thought, and freedom to teach."

Emergency Unopposed Motion to Remove Restrictions on Court Records, Retroactive PACER Exemption, & Court Appointed Counsel

35

*Griswold v. Connecticut*, 381 U.S. 479, 482 (1965) (citing *Wieman v. Updegraff*, 344 U.S. 183, 193 (1952)). Additionally, the right of assembly "extends to all irrespective of their race or ideology." *Griswold v. Connecticut*, 381 U.S. 479, 483 (1965). And "the right of association, like the right of belief, is more than the right to attend a meeting; it includes the right to express one's attitudes or philosophies by membership in a group or by affiliation with it or by other lawful means"—all of these examples, while "not expressly included in the First Amendment," are nevertheless necessary "in making the express guarantees fully meaningful." *Griswold v. Connecticut*, 381 U.S. 479, 483 (1965).

Underlying these expressions are beliefs, thoughts, emotions, and sensations—what the "makers of our Constitution" viewed as the "right to be left alone" and considered to be the "most comprehensive of rights and the right most valued by civilized man." *Stanley v. Georgia*, 394 U.S. 557, 564 (1969) (quoting *Olmstead v. United States*, 277 U.S. 438, 478 (1928) (Brandeis, J., dissenting)). This fundamental protection of thought, belief, and emotional expression is reflected across numerous authorities, including:

> • *Sindicato Puertorriqueño de Trabajadores v. Fortuño*, 699 F.3d 1, 11 (1st Cir. 2012) ("The First Amendment confirms the freedom to think for ourselves") (quoting *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 356 (2010)).
> • *Nat'l Inst. of Fam. & Life Advocs. v. Becerra*, 138 S. Ct. 2361, 2379 (2018) (Kennedy, J., concurring) ("[F]reedom of speech secures freedom of thought and belief").

Emergency Unopposed Motion to Remove Restrictions on Court Records, Retroactive PACER Exemption, & Court Appointed Counsel

36

> • *United States v. Snowden*, 770 F.2d 393, 398 (4th Cir. 1985) (Ervin, J., concurring) (citing *Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940)) ("[T]he Supreme Court has long held that the freedom of one's beliefs is absolutely protected by the First Amendment").
> • *Stanley v. Georgia*, 394 U.S. 557, 559, 564 (1969) (holding that the Constitution protects "Americans in their beliefs, their thoughts, their emotions and their sensations").
> • *United States v. Reidel*, 402 U.S. 351, 355–56 (1971) (affirming *Stanley* and recognizing the right to "freedom of mind and thought and on the [right to] privacy of one's home").
> • Wayne Unger, *Stay Out of My Head: Neurodata, Privacy, and the First Amendment*, 80 Wash. & Lee L. Rev. 1439, 1465 (2023) ("[T]he freedoms of speech and expression, for instance, are the presentation of ideas, thoughts, and beliefs").

While it is important for us to protect the rights of a person who wants to stay at home and look at nudie magazines, and the rights those who want to organize game night with their friends to play Dungeons and Dragons—as part of protecting a fundamental to our free society, the "right to receive information and ideas, regardless of their social worth"—or rather, regardless of what the government considers having social worth. Stanley v. Georgia, 394 U.S. 557, 564 (1969).

However, not every expression carries the same weight of public importance as when the liberty of the press is used "in the defense of liberty"—which is why "every sort of publication which affords a vehicle of information and opinion" is protected. *Lovell v. City of Griffin, Ga.*, 303 U.S. 444, 452 (1938). And why the novelist George Orwell warned that restrictions on speech are counter to democracy in that "if you encourage totalitarian methods," like the suppression of speech, thoughts, and ideas, "the time may

Emergency Unopposed Motion to Remove Restrictions on Court Records, Retroactive PACER Exemption, & Court Appointed Counsel

37

come when they will be used against you instead of for you." Wayne Unger, *Stay Out of My Head: Neurodata, Privacy, and the First Amendment*, 80 Wash. & Lee L. Rev. 1439, 1463 (2023) (citing Jacob Mchangama, *Free Speech: A History from Socrates to Social Media* 258 n.97 (1st ed. 2022)).

## II  Right of Access Test

The test for determining whether a first amendment right of access is available is: 1) "whether the place and process have historically been open to the press and general public," and 2) "whether public access plays a significant positive role in the functioning of the particular process in question." *Baltimore Sun Co. v. Goetz*, 886 F.2d 60, 64 (4th Cir. 1989) (citing *Press–Enterprise Co. v. Superior Court,* 478 U.S. 1, 8–10 (1986)) (*Press–Enterprise II* ). And "the public has a common-law right of access to judicial records." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 589 (1978).

When criminal conduct is implicated, particularly involving the judiciary, the "appearance of justice can best be provided by allowing people to observe it". *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 571–72 (1980). Additionally, when the victim demands that the record remain public, a sealed record falsely skews the public narrative against the victim and operates to the exclusive benefit of the perpetrators, shielding them from public accountability. In such circumstances, the compelling interest in a public record is absolute, as it "fosters an appearance of fairness, thereby

Emergency Unopposed Motion to Remove Restrictions on Court Records, Retroactive PACER Exemption, & Court Appointed Counsel

38

heightening public respect for the judicial process" and "permits the public to participate in and serve as a check upon the judicial process—an essential component in our structure of self-government". *Globe Newspaper Co. v. Superior Ct. for Norfolk Cnty.*, 457 U.S. 596, 605–10 (1982).

The administration of justice "cannot function in the dark" or "in any covert manner", and a restricted court record "risks undermining public confidence" which "can cause a reaction that the system at best has failed and at worst has been corrupted." *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 571 (1980).

### III  Denial of Access Claims

The Supreme Court has recognized two distinct categories of denial-of-access claims: forward-looking and backward-looking. *Christopher v. Harbury*, 536 U.S. 403, 413-14 (2002)("*Harbury III*").

A forward-looking claim addresses official conduct that obstructs a litigant's ability to bring a legal action, with the intended remedy being to restore the plaintiff's position so that the claim may proceed once the obstruction is lifted. *Christopher v. Harbury*, 536 U.S. 403, 413 (2002)("*Harbury III*").

In contrast, a backward-looking claim involves a situation where a previously viable cause of action is now foreclosed— "cannot now be tried (or tried with all material evidence), no matter what official action may be in the

Emergency Unopposed Motion to Remove Restrictions on Court Records, Retroactive PACER Exemption, & Court Appointed Counsel

39

future"— for instance, if the official action "caused the loss or inadequate settlement of a meritorious case". *Christopher v. Harbury*, 536 U.S. 403, 414 (2002)("*Harbury III*").

In either case, the right of access is not freestanding; "the right is ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002)("*Harbury III*").

In this case, however, the forward- and backward-looking access claims are not merely temporally distinct—they are structurally entangled. The same unlawful acts that obstructed the filing or fair adjudication of claims also constitute the factual basis for the denial-of-access claim itself. In effect, this is the *uroboros* of constitutional deprivation: a recursive injury where the violation consumes its own remedy and obstructs adjudication while perpetuating irreparable harm.

## Overview of Legal Framework for Eighth Amendment

It is a question of federal law, not state law, whether contempt proceedings and the relief granted are properly characterized as civil or criminal in nature. For proceedings and remedies to constitute civil contempt, "the punishment [must be] remedial and for the complainant's benefit"— *quare*, there must be a lawful benefit to the complainant. *Hicks on Behalf of*

Emergency Unopposed Motion to Remove Restrictions on Court Records, Retroactive PACER Exemption, & Court Appointed Counsel

40

*Feiock v. Feiock*, 485 U.S. 624, 625 (1988). A functional impossibility when the court lacks Article III and subject matter jurisdiction.

"[C]ivil contempt sanctions, or those penalties designed to compel future compliance with a court order, are considered to be coercive and avoidable through obedience, and thus may be imposed in an ordinary civil proceeding upon notice and an opportunity to be heard." *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 827 (1994).

When both civil (mandatory) and criminal (prohibitory) terms are imposed in the same proceeding, then the "criminal feature of the order is dominant and fixes its character for purposes of review"—such as an order which compels and prohibits. *Hicks on Behalf of Feiock v. Feiock*, 485 U.S. 624, 639 (1988). E.g., "'Do not strike,' would appear to be prohibitory and criminal, while an injunction ordering the union: "Continue working," would be mandatory and civil." *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 835 (1994).

Additionally, "elaborate and reliable factfinding" is required "for indirect civil contempt procedures" that involve "out-of-court disobedience to complex injunctions." Requiring a hearing to be held, witness to be called, evidence taken, and in compliance with "criminal procedural protections such as the rights to counsel and proof beyond a reasonable doubt" in order to appropriately "protect the due process rights of parties and prevent the

Emergency Unopposed Motion to Remove Restrictions on Court Records, Retroactive PACER Exemption, & Court Appointed Counsel

41

arbitrary exercise of judicial power." *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 833–34 (1994)

## Overview of Legal Framework for Summary Judgement

Under FRCP 56(a)-(b) allows a party to move for summary judgement on any claim, or part of a claim— at any time until 30 days after the close of all discovery—and federal courts are required to grant summary judgement "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law".

The ultimate inquiry is whether a reasonable jury could find for the nonmoving party based on the evidence presented, the legitimate inferences that could be drawn from that evidence in favor of the nonmoving party, and the applicable burden of proof. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986).

## General Information

IV  Notices to Defendants

My affidavit—*Hope, Good Faith, and Certificate of Notice*—was docketed with the Fourth Circuit Court on May 8, 2025, as Circuit ECF 33-1 and is incorporated by reference into this motion.

Additionally, my affidavit—*Formal Notice of Historical Valuation-Based Settlement Offers, Reciprocal Relief, Consecutive-Compounding Multipliers, Continuing Violation Multiplier, and Opportunity to Negotiate*—

Emergency Unopposed Motion to Remove Restrictions on Court Records, Retroactive PACER Exemption, & Court Appointed Counsel

42

was docketed with the Fourth Circuit Court on June 10, 2025, as Circuit ECF 39 and is incorporated by reference into this motion.

Individuals and entities associated with Ohana Growth Partners, LLC, Miles & Stockbridge P.C., the State of Maryland, and the United States government have received numerous full and fair actual notices concerning anticipated litigation, liability exposure, ex parte proceedings, evidentiary hearings, emergency and other forms of injunctive relief, as well as summary and default judgment—each accompanied by opportunities to negotiate or propose alternatives.

See
- Circuit ECF 33-1 (May 8—affidavit: Hope, Good Faith, and Certificate of Notice);
- Circuit ECF 39 (June 10—affidavit: Formal Notice of Historical Valuation-Based Settlement Offers, Reciprocal Relief, Consecutive-Compounding Multipliers, Continuing Violation Multiplier, and Opportunity to Negotiate);
See also
- Circuit ECF 20-1 (April 21—first amended informal brief);
- Circuit ECF 24-2 (April 29—affidavit: Brendan Abel Hurson Mandatory Disqualification);
- Circuit ECF 24-4 (April 29—affidavit: Brendan Hurson Plausibility);
- Circuit ECF 31-1 (April 30—affidavit (amended): Court Record Tampering and Obstruction);
- Circuit ECF 24-1 (April 29—motion: Disqualify the Honorable Brendan Abel Hurson with Vacatur and Reassignment);
- Circuit ECF 35 (June 2—motion: Disqualify Chief Judge Diaz [as witness]);
- Circuit ECF 36 (June 2—motion: correct court record [from court record tampering]);
- Circuit ECF 37 (June 7—motion: Ruling to Disqualify and Reassign [of Hurson & out of 4th Circuit]);
- Circuit ECF 38 (June 9—motion: Ruling to Vacate [FRCP 60(b)(4)]).

Emergency Unopposed Motion to Remove Restrictions on Court Records, Retroactive PACER Exemption, & Court Appointed Counsel

43

## V  Prevailing Party of Vitiated State Action

On October 24, 2024, Ohana Growth Partners, LLC—the state plaintiff—filed a Notice of Voluntary Dismissal without prejudice pursuant to Maryland Rule 2-506(a) in *C-03-CV-24-002264*. Judge Stringer's order granting the voluntary dismissal was docketed in the Circuit Court for Baltimore County on November 6, 2024. *See* Circuit ECF 28-6, at 55 (Oct. 24—Notice of Voluntary Dismissal; Nov. 6—Order docketed).

Maryland law is clear that "a voluntary dismissal vitiates and annuls all prior proceedings and orders in a case." *Baltimore & Ohio R. Co. v. Equitable Bank, N.A.*, 77 Md. App. 320, 328 (1988).

The dismissal order did not contain any stipulation regarding fees, and Maryland Rule 2-506(e) imposes cost liability on the dismissing party absent a contrary order or agreement. If "a plaintiff prevails when he accomplishes his lawsuit's objective[,] which is to achieve a 'material alteration in the legal relationship between the parties,'" *quare*, a defendant likewise prevails when they achieve a material alteration in the legal relationship between the parties. *Lackey v. Stinnie*, 145 S. Ct. 659, 673 (2025) (quoting *CRST Van Expedited, Inc. v. EEOC*, 578 U.S. 419, 431 (2016)) (cleaned up).

## VI  State Court Judge—Consent to Jurisdiction and Waiver of Immunity

Judge Michael S. Barranco instructed me to pursue my claims in federal court on June 26, 2024, during open court proceedings, explicitly

Emergency Unopposed Motion to Remove Restrictions on Court Records, Retroactive PACER Exemption, & Court Appointed Counsel

44

stating that he was making no determination on the merits—responding to multiple jurisdictional objections raised against the Circuit Court for Baltimore County. See Circuit ECF 28-1 (Exhibit 100), at 161 (June 26—page 56 of hearing transcript: directed to file claims in federal court). This constitutes waiver and consent to federal jurisdiction under *Lapides v. Board of Regents*, 535 U.S. 613, 620 (2002).

Under Md. Code Ann., Cts. & Jud. Proc. § 6-104(a), Circuit Court judges are statutorily authorized to transfer cases to another forum. That instruction, given before any claims were filed and after jurisdictional challenges were raised, represents a valid exercise of that authority. Once the case was vitiated, however, the entire proceeding—was rendered void. The only thing that remained was my prevailing party status and claims to file in federal court.

## VII  Maryland Office of the Bar Counsel—Attorney and State Claims found Meritorious, Sovereign Immunity for all Relief Waived, and Consent to Federal Jurisdiction

On January 22, 2025, Assistant Bar Counsel W. Hunter Daley confirmed receipt of my three previously unanswered emails and issued formal letters referencing active investigations into multiple defendants. Each letter corresponded to a specific disciplinary file: File No. 2025-0083 for Victoria Klien Hoffberger, File No. 2025-0082 for Steven David Frenkil, File No. 2025-0081 for Holly Drumheller Butler, File No. 2025-0080 for Jessica

Emergency Unopposed Motion to Remove Restrictions on Court Records, Retroactive PACER Exemption, & Court Appointed Counsel

45

Lynne Duvall, and File No. 2024-1725 for Robert Scott Brennen. These were transmitted by email from Kelsey E. Rowe, along with the referenced attachments. See Circuit ECF 24-9, at 1–6.

The Maryland Rules governing the Office of Bar Counsel define both the authority granted to the Office and the obligations it must fulfill in the course of an investigation. Under Maryland Rule 19-703(a), Bar Counsel is appointed "subject to the supervision and approval, if required, of the Commission." Pursuant to Maryland Rule 19-703(b), Bar Counsel's powers and duties—also subject to supervision and approval if required—include: "(1) [to] investigate professional misconduct or incapacity on the part of an attorney" and "(8) [to] initiate, intervene in, and prosecute actions to enjoin the unauthorized practice of law."

Maryland Rule 19-711(b)(1) provides that "Bar Counsel shall make an inquiry concerning every complaint that is not facially frivolous, unfounded, or duplicative." Under Maryland Rule 19-711(b)(2), if Bar Counsel concludes that a complaint is without merit, does not allege facts which, if true, would demonstrate either professional misconduct or incapacity, or is duplicative, Bar Counsel "shall decline the complaint and notify the complainant."

Maryland Rule 19-711(b)(6) further states that, if a civil or criminal action is pending in any court of record in the United States and involves material allegations substantially similar or related to those in the complaint, then "Bar

Emergency Unopposed Motion to Remove Restrictions on Court Records, Retroactive PACER Exemption, & Court Appointed Counsel

46

Counsel, with the approval of the Commission, may defer action on the complaint pending a determination of those allegations in the pending action… Bar Counsel shall notify the complainant of that decision."

Accordingly, the Maryland Rules provide that:

(1) Bar Counsel exercises powers and duties pursuant to their appointment;

(2) Bar Counsel is required to investigate allegations of attorney misconduct;

(3) Bar Counsel must inquire into any complaint that is not facially frivolous, unfounded, or duplicative;

(4) Bar Counsel must decline complaints that are without merit and notify the complainant; and

(5) Bar Counsel may, with Commission approval, defer action on a complaint when the material allegations are substantially similar or related to those alleged in a pending civil or criminal action in a court of record within the United States.

On February 20, 2025, Assistant Bar Counsel W. Hunter Daley informed me that counsel for Defendants Victoria Klien Hoffberger (File No. 2025-0083), Steven David Frenkil (File No. 2025-0082), Holly Drumheller Butler (File No. 2025-0081), Jessica Lynne Duvall (File No. 2025-0080), and Robert Scott Brennen (File No. 2024-1725) had submitted responses to the

Emergency Unopposed Motion to Remove Restrictions on Court Records, Retroactive PACER Exemption, & Court Appointed Counsel

47

formal complaints, and were deferring further action pending the adjudication of District Court Case No. CV-24-0377-BAH. The complaints remain open, and no additional steps will be taken until I and opposing counsel provide notice that the federal litigation has concluded. See Circuit ECF 24-9, at 7–8.

From this, it is evident that the Maryland Office of Bar Counsel—acting as an official agency of the State of Maryland—has consented, through official action, to have the underlying case and controversy adjudicated in federal court. This constitutes a waiver of immunity, following the prior recordation of all forms of relief sought against the State. The Office of Bar Counsel further found the allegations to be meritorious, allegations which were originally filed in the Circuit Court for Baltimore County and encompassed hundreds of pages of detailed factual statements. Only a subset of those allegations was included in the federal complaint as an act of good faith, intended to encourage resolution without the need for expanded litigation.

Additionally, because the underlying state claims are inseparable from the allegations against the attorneys—*quod ex necessitate supponit*—the allegations against the State and its actors are likewise deemed meritorious. The underlying allegations include, but are not limited to:

Emergency Unopposed Motion to Remove Restrictions on Court Records, Retroactive PACER Exemption, & Court Appointed Counsel

48

1. **Claims under 42 U.S.C. § 1983** against employer, attorney, clerk, and judge defendants. All conspirators acted with the intent and belief that their objectives could be accomplished by depriving me of civil and federal rights.

2. **Claims under 42 U.S.C. § 1985** for conspiracy against employer, attorney, clerk, and judge defendants, as well as Bernstine. All conspirators were members of a coordinated effort to interfere with my civil and federal rights.

3. **Claims under 42 U.S.C. § 1986** for failure to prevent civil rights violations, asserted against attorney, clerk, and judge defendants, DaGonia II, and Bernstine. All had knowledge of the conspiracy to interfere with my civil and federal rights, and had the power to prevent or aid in preventing it, but failed to act.

---

**Circuit ECF 28-9 (Exhibit 105A)—Office of Bar Counsel Investigation**

• p.1 – Jan. 22, 2025 — Email from Kelsey E. Rowe with attachments for File Nos. 2025-0083, 2025-0082, 2025-0081, 2025-0080, 2024-1725

• p.2 – Jan. 22, 2025 — Office of Bar Counsel letter from W. Hunter Daley re: File No. 2025-0083 (Victoria Klien Hoffberger)

• p.3 – Jan. 22, 2025 — Office of Bar Counsel letter from W. Hunter Daley re: File No. 2025-0082 (Steven David Frenkil)

• p.4 – Jan. 22, 2025 — Office of Bar Counsel letter from W. Hunter Daley re: File No. 2025-0081 (Holly Drumheller Butler)

• p.5 – Jan. 22, 2025 — Office of Bar Counsel letter from W. Hunter Daley re: File No. 2025-0080 (Jessica Lynne Duvall)

• p.6 – Jan. 22, 2025 — Office of Bar Counsel letter from W. Hunter Daley re: File No. 2024-1725 (Robert Scott Brennen)

• p.7 – Feb. 20, 2025 — Email from Kelsey E. Rowe with attachments ("Letter to C Dated 2-20-2025.pdf")

• p.8 – Feb. 20, 2025 — Office of Bar Counsel letter from W. Hunter Daley (post-investigation findings of merit in complaints and notice of deferred action pending adjudication in Case No. CV-24-0377-BAH) re: File Nos. 2025-0083, 2025-0082, 2025-0081, 2025-0080, 2024-1725

Emergency Unopposed Motion to Remove Restrictions on Court Records, Retroactive PACER Exemption, &
Court Appointed Counsel

49

VIII  Wrongful Termination—No Genuine Dispute

I was formally diagnosed with Post-Traumatic Stress Disorder and Panic Disorder with Agoraphobia on or about May 15, 2013. At that time, my impairments substantially limited several major life activities, including concentrating, interacting with others, sleeping, eating, and the operation of my digestive and bowel systems. From April 2014 through 2019, I relied continuously—on a 24/7 basis—on my service animal, Bumi. As documented in the November 23, 2013, letter from my diagnosing provider, I required reasonable accommodations under the Rehabilitation Act of 1973, the Americans with Disabilities Act of 1990 (ADA), and the ADA Amendments Act of 2008. See Circuit ECF 33-3, at 10-14 (affidavit FMLA-ADA-Rehab Act); Circuit ECF 28-4, at 3 (Service Dog ID); Circuit ECF 28-4, at 22 (Nov. 2013 Health Care Provider Letter); Circuit ECF 28-4, at 17 (Jan 31, 2024 Health Care Provider Letter); Circuit ECF 28-4, at 23-29 (Emails with ADA Coordinator & Jul 22 Granting in Part); Circuit ECF 28-4, at 10–13, 18–21 (WH-380-E Jan 22 and Mar 12 Health Care Provider); See Circuit ECF 33-4, at 1-5 (Exhibit 209–EEOC Complaint & Right to Sue letter).

On January 8, 2024, HR Generalist Karen Debus, on behalf of Ohana Growth Partners, LLC, issued a completed *Notice of Eligibility & Rights and Responsibilities* (Form WH-381), which confirms that the company is a qualified employer under the Family and Medical Leave Act (FMLA), that I

Emergency Unopposed Motion to Remove Restrictions on Court Records, Retroactive PACER Exemption, & Court Appointed Counsel

50

am eligible for FMLA leave, that I am a "key employee" as defined by the statute, and that the employer would not suffer "substantial and grievous economic injury" by restoring me to my position at the conclusion of leave. See 29 C.F.R. §§ 825.300(b)–(c). See Circuit ECF 28-4, at 1-2 (Jan 4. FMLA Request Email); Circuit ECF 28-4, at 14–15 (January 25 email); Circuit ECF 33-3, at 13–14 (affidavit FMLA-ADA-Rehab Act); Circuit ECF 33-7, at 6 (Jan 8. Eligibility Email & shows attached 2-10-2020 start date "VP of IT" document).

On January 25, 2024, Richard Hartman, Vice President of HR, confirmed receipt of my completed WH-380-E health care provider certification dated January 22, 2024. See Circuit ECF 28-4, at 14–15 (January 25 email); Circuit ECF 28-4, at 10-13, 18-21 (WH-380-E Jan 22 and Mar 12 Health Care Provider); Circuit ECF 33-3, at 10-14 (affidavit FMLA-ADA-Rehab Act). These documents further establish my entitlement to protected leave under the FMLA and document a chronic, long-term condition qualifying for intermittent leave protections.

On March 20, 2024, Richard Hartman responded to the completed and signed WH-380-E form dated March 12, 2024, stating that I should not submit any additional WH-380-E forms until after six months had passed—a period that ended on July 30, 2024, the date of my termination. The March 20, 2024, email also shows that Ohana Growth Partners, LLC was not

Emergency Unopposed Motion to Remove Restrictions on Court Records, Retroactive PACER Exemption, & Court Appointed Counsel

51

complying with notice requirements to notify me of how and when my FMLA leave was being applied, was not answering my questions on a timely and regular basis, was not maintaining records of my leave entitlement, and was interfering with the use of my intermittent FMLA leave. See Circuit ECF 28-1, at 68-69 (Mar. 20 Email – Planned Termination); Circuit ECF 28-4, at 10-13, 18-21 (WH-380-E Jan 22 and Mar 12 Health Care Provider).

June 13, 2024, email stated Ohana Growth Partners, LLC was interfering with my leave in retaliation of my notice that I needed to use my intermittent FMLA leave on June 12, 2024, they interfered with the June 12 FMLA leave after receiving notice. See Circuit ECF 28-1, at 25 (June 13 email—Interference on June 13 is retaliation for taking FMLA leave on June 12).

The suspension letter on June 13 stated the suspension was retaliation for taking FMLA leave on June 13. See Circuit ECF 28-1, at 159 (June 13 Suspension Letter— suspension is retaliation for taking FMLA leave on June 13).

Richard Hartman's June 14, 2024, affidavit stated Ohana Growth Partners, LLC was retaliating against me for taking FMLA leave. See Circuit ECF 28-1, at 158 (Richard Hartman's affidavit affirming FMLA retaliation);

June 26, 2024, Ohana Growth Partners, LLC lead counsel affirmed in open court that Ohana Growth Partners, LLC was intentionally violating my

Emergency Unopposed Motion to Remove Restrictions on Court Records, Retroactive PACER Exemption, & Court Appointed Counsel

52

FMLA leave rights. See Circuit ECF 28-1, at 160) (Robert Brennen in Jun. 26 hearing affirming under oath Ohana was intentionally violating my FMLA leave rights).

The July 30, 2024, the termination letter does not state a reason for the termination. See Circuit ECF 28-1, at 143–144 (July 30, 2024, termination letter—no reason given).

## IX  Mirrored Timeline—State and Federal Courts

|   | Event 1 | Date | Event 2 | Date | Days |
|---|---------|------|---------|------|------|
| S | First Filing (Tampered) | June 18 | Hearing on Falsified Record | June 26–27 | 8-9 |
| F | Clerk Add Missing Rec. | Dec 30-31 | Order on Falsified Record | Jan. 8 | 8-9 |
|   |  |  |  |  |  |
| S | Hearing | June 26–27 | Default Requested/Granted | Aug. 20 | 54-55 |
| F | Federal Filing | Dec. 27 | Stay Order | Feb. 20 | 55 |
|   |  |  |  |  |  |
| S | Default Vacated | Oct. 16 | Notice Dismiss | Oct. 24 | 8 |
| F | Informal Brief Filed | April 16 | Granted Pacer Exemption | April 23 | 7 |
|   |  |  |  |  |  |
| S | Judicial Complaint Filed | Oct. 8 | Dismissal Granted | Nov. 6 | 29 |
| F | Motion to Disqualify | April 29 | Judicial Complaint Denied | May 27 | 28 |

This was followed by the State Court's attempt to fabricate destroyed documents and alter the record to create the appearance of legitimacy— mirrored by the Federal Court's restriction of the court record, which similarly conveys a false appearance of procedural regularity.

## X  Maryland Judicial Election

All three of these claims have not been formally filed because I lack a constitutionally viable District Court to amend my complaint with, and two of them are Class Action claims which I am not allowed to represent pro se.

Emergency Unopposed Motion to Remove Restrictions on Court Records, Retroactive PACER Exemption, & Court Appointed Counsel

53

## A  Claim 1—Maryland 2024 Judicial Election

I have raised challenges against two of the Md. 2024 Judicial Election Candidates as being unqualified under the Maryland Constitution.

Maryland General Election was on November 5, 2024, and defendant Stringer's granting of the state plaintiff voluntary dismissal was docketed on November 6, 2024. On October 8, 2024, I filed my "Motion to Compel" where I challenged the judicial misconduct and referenced my filings in the Circuit Court for Baltimore County when I filed my judicial complaint on October 8, 2024. Challenging the named judges lack of integrity, wisdom, and sound legal judgment—defendant Barranco and DeSimone Jr. are two of the judicial candidates in the 2024 Judicial election. See Circuit ECF 28-7, at 28–30 (Oct. 8—Judicial Complaint); Circuit ECF 28-6, at 56 (Oct. 8—motion to compel); Circuit ECF 28-6, at 55 (Oct. 24—Notice of Voluntary Dismissal; Nov. 6—Order docketed ending state action and vitiating proceedings).

## B  Claim 2—Class Action Judicial Voters

Constitutional challenge to Maryland's judicial election process for denying voters adequate notice and meaningful opportunity to be heard—before elections and voting in the election—by effectively deciding elections in partisan primaries.

## C  Claim 3—Class Action Judicial Candidates

Constitutional challenge to Maryland's judicial election process for denying voters, and judicial candidates, a democratic voting process that is

Emergency Unopposed Motion to Remove Restrictions on Court Records, Retroactive PACER Exemption, & Court Appointed Counsel

54

free from governmental influence and manipulation. Specifically, Judicial Candidates are pre-selected and when challenged the unselected candidates are treated substantially differently which has made it unacceptably difficult for them to be listed on the primary election, and if they win in the primaries—which is nearly impossible—then vexatious complaints are raised against them and the Office of the Bar Counsel finds ways to have them disqualified or removed from the general election ballot.

D  Overview of Legal Framework

Voting rights protect "the ordered working of our Republic, and of the democratic process," and concern "what the voters would prefer"—applying equally to all state and federal elections, including judicial elections. *Gill v. Whitford*, 585 U.S. 48, 84 (2018). "At its most extreme, the practice of 'rigging elections' violates the most fundamental of all democratic principles—that 'the voters should choose their representatives,' not the other way around." *Gill v. Whitford*, 585 U.S. 48, 84 (2018) (cleaned up).

See also,
• *Arizona State Legislature v. Arizona Indep. Redistricting Comm'n,* 576 U.S. 787, 820 (2015) (quoting Mitchell N. Berman, *Managing Gerrymandering*, 83 **Tex. L. Rev.** 781, 782 (2005));
• *Vieth v. Jubelirer,* 541 U.S. 267, 317 (2004) ("We are in the business of rigging elections");
• *Powell v. McCormack,* 395 U.S. 486, 540–41 (1969) (quoting 2 Debates on the Federal Constitution 257 (J. Elliot ed. 1876)) (Hamilton: "[T]he true principle of a republic is, that the people should choose whom they please to govern them.").

Emergency Unopposed Motion to Remove Restrictions on Court Records, Retroactive PACER Exemption, & Court Appointed Counsel

55

When a lawsuit raises a "burden on a disfavored party and its members as they pursue their political interest and goals…and alleges those burdens on a statewide basis, then its litigation should be statewide too—as standing, liability, and remedy alike." *Gill v. Whitford*, 585 U.S. 48, 83–84 (2018).

"The concept of equal justice under law requires the State to govern impartially"—principles that are inclusive of "the equal protection principles enunciated in our voting rights." *Vieth v. Jubelirer*, 541 U.S. 267, 317–319 (2004) (Stevens, J., dissenting). The same due process and equal protection principles of 'full and fair' notice and a meaningful opportunity to be heard through casting one's vote are constitutional guarantees protected by the Fifth and Fourteenth Amendments—no less than when they safeguard the freedoms and rights under the First Amendment.

**Md. Const. art. IV, § 3** establishes that Maryland judges are elected "on the Tuesday after the first Monday in November" during the "general election" and shall serve "for the term of fifteen years from the time of the election," until "the Judge's successor is elected and qualified, or until they reach "the age of seventy years."

"**Md. Const. art IV, § 5**'s use of the phrase 'duly qualified' refers to the individual's eligibility for judicial office and whether that individual satisfies the requirements set forth in **Md. Const. art** Art. IV, § 2, whereas **Md. Const. art** Art. IV, § 5's use of the word 'qualification' means taking the oath

Emergency Unopposed Motion to Remove Restrictions on Court Records, Retroactive PACER Exemption, & Court Appointed Counsel

56

of office and does not mean determining whether the individual meets the applicable eligibility requirements." *Ademiluyi v. Maryland State Bd. of Elections*, 458 Md. 1, 45–56 (2018).

**Md. Const. art. IV, § 5**, when a judicial vacancy occurs for any reason other than expiration of the fifteen-year term, the Governor appoints "a person duly qualified" to fill the vacancy. After one year, at the next "general election," the judge's "successor shall be elected."

**Md. Const. art. IV, § 2** requires that judges must: (1) be citizens of the State of Maryland; (2) be qualified voters under the Maryland Constitution; (3) have resided in Maryland for at least five years; (4) have resided in the city, county, district, judicial circuit, intermediate appellate judicial circuit, or appellate judicial circuit for at least six months prior to their election; (5) be at least thirty years of age at the time of their election or appointment; (6) be admitted to practice law in this State; and (7) be individuals "most distinguished for integrity, wisdom and sound legal knowledge." **13 M.L.E. Judges § 3** repeats the requirements for "Judges under the State Constitution", clarifies "admitted to practice Law in this State" as requiring the judicial candidate to be a "member of the Bar of Maryland" then adds that "Judges must be United States citizens."

As defined by *Black's Law Dictionary*, "a commission is a warrant or authority, from the government or a court, that empowers the person named

Emergency Unopposed Motion to Remove Restrictions on Court Records, Retroactive PACER Exemption, & Court Appointed Counsel

57

to execute official acts." Under **Md. Const. art. IV, § 11**, the Governor issues a commission to an individual after they "have been, respectively, elected"—"which empowers that individual to serve as a judge." *Ademiluyi v. Maryland State Bd. of Elections*, 458 Md. 1, 10 (2018).

A judge commits "sanctionable conduct" by (1) engaging in misconduct while in office, (2) persistently failing to perform the duties of judicial office, (3) engaging in conduct prejudicial to the proper administration of justice, or (4) violating any provision of the Maryland Code of Judicial Conduct. Under **Md. Const. art. IV, § 4B(a)(1)(i)**, the Judicial Disabilities Commission is empowered to investigate complaints against any judge of any Maryland court. *Ademiluyi v. Maryland State Bd. of Elections*, 458 Md. 1, 13 (2018).

An election claim under **Md. Code Ann., Elec. Law § 12-202(b)** has a statute of limitations to ensure that any claim against a State electoral procedure is expressed expeditiously, and without unreasonable delay, so as to not cause prejudice to the defendant. *Ademiluyi v. Maryland State Bd. of Elections*, 458 Md. 1, 30 (2018) (quoting *Liddy v. Lamone*, 398 Md. 233, 245, 919 A.2d 1276, 1284 (2007) (cleaned up)).

**Md. Code Ann., Elec. Law § 12-202(a)** allows for "a registered voter" to "seek judicial relief from any act or omission relating to an election…on the grounds that the at or omission: (1) is inconsistent with this article or other law applicable to the elections process; and (2) may change or has changed

Emergency Unopposed Motion to Remove Restrictions on Court Records, Retroactive PACER Exemption, & Court Appointed Counsel

58

the outcome of the election." And **Md. Code Ann., Elec. Law § 12-202(b)**, allows the registered voter to seek judicial relief under "seek judicial relief under this section in the appropriate circuit court" within the "earlier of": "(1) 10 days after the act or omission or the date the act or omission became known to the petitioner; or (2) 7 days after the election results are certified, unless the election was a gubernatorial primary or special primary election, in which case 3 days after the election results are certified."

## XI  Other Established First Right Claims on Class Actions

These claims have been pending court-appointed counsel since December 27, 2024, with the exception of the data breach claim, which arose in response to my Maryland Insurance Fraud report. Kelly Benefits administers the employee insurance programs for Ohana Growth Partners, LLC, and the timing of the breach aligns with other material facts that have been withheld pending in camera review—which, despite being requested, never occurred.

Under FRCP 23(a)(4), class representatives must "fairly and adequately protect the interests of the class." Courts have uniformly held that pro se litigants cannot satisfy this requirement. See *Oxendine v. Williams*, 509 F.2d 1405, 1407 (4th Cir. 1975) ("[T]he competence of a layman representing himself [is] clearly too limited to allow him to risk the rights of others.... it is plain error to permit" such representation in a class action).

Emergency Unopposed Motion to Remove Restrictions on Court Records, Retroactive PACER Exemption, &
Court Appointed Counsel

59

While I do not contest this procedural bar, I note that the text of FRCP 23(a)(4) speaks to substantive adequacy, not merely procedural competence.

I acknowledge that it would be inappropriate for me to bear full responsibility for the procedural accuracy of these proceedings. However, my legal, technical, and strategic expertise is critical to securing favorable and just outcomes for the affected parties. Moreover, these consolidated matters require a constitutionally viable forum and coordinated litigation strategy, including multiple attorneys. Even at my full capacity, it would be irresponsible for one person to pursue this volume of systemic claims alone.

The need for court-appointed counsel is further underscored by my medical condition. Without relief through injunctive, default, or summary judgment—and without the assistance of qualified counsel—I face the imminent risk of suffering a malignant catatonic episode that could prove fatal. Failure to provide assistance at this juncture risks both irreparable harm and structural error.

1— **Former Employees v. Ohana Growth Partners, LLC**: Alleging systemic violations of employment and labor laws, including spoliation of evidence, perjury, and vexatious litigation through abusive judicial tactics.

2— **Maryland Litigants (Criminal, Civil, Administrative) v. State of Maryland**: Asserting systemic court record tampering and obstruction within Maryland courts, depriving parties of due process.

Emergency Unopposed Motion to Remove Restrictions on Court Records, Retroactive PACER Exemption, & Court Appointed Counsel

60

3— **Consumers in CA, WA, TN, FL, MD, and D. Md. v. Ohana Growth Partners, LLC & Planet Fitness**: Asserting intentional consumer protection violations and unfair or deceptive business practices occurring in 2024.

4— **Data Breach Victims v. Kelly Benefits and Unknown Entities:** Arising from a December 2024 data breach discovered in connection with this litigation, with potentially undisclosed responsible parties.

## Retroactive PACER exemption

### I  Statement of Facts

My original motion for PACER exemption was docketed with the Fourth Circuit Court on April 22, 2025, as Circuit ECF 22-1 and is incorporated by reference into this motion.

I was granted to proceed in forma pauperis by the District Court under 28 U.S.C. § 1915(d), and it remains active on appeal. See District ECF 37 (appeal transmit sheet—"court granted & did not revoke IFP status").

My motion satisfied the requirements for PACER exemption. See Circuit ECF 22-1, at 1–8.

I requested that the Fourth Circuit Court "waive all PACER-related fees incurred in any federal court". See Circuit ECF 22-1, at 1; See also Circuit ECF 22-1, at 8.

In the motion, I explain that my efforts to defend my rights have "resulted in the accrual of PACER-related fees, which are expected to continue". See Circuit ECF 22-1, at 5.

Emergency Unopposed Motion to Remove Restrictions on Court Records, Retroactive PACER Exemption, & Court Appointed Counsel

61

As shown in Circuit ECF 22-1, at 8, my first motion seeking exemption stated:

> **WHEREFORE**, Mr. Dillon-Capps respectfully requests that this Court indefinitely waive all PACER-related **fees incurred** in any federal court, including the United States district courts, courts of appeals, and the Supreme Court of the United States.
>
> **Alternatively**, Mr. Dillon-Capps requests that the United States Court of Appeals for the Fourth Circuit grant such relief to the fullest extent within its discretion, in order to alleviate the financial burden associated with necessary legal research and access to court records. (emphasis in original and added)

The Fourth Circuit Court granted in the alternative:

> Upon consideration of appellant's motion for a waiver of PACER fees for electronic access to the docket, the court finds that an exemption is appropriate to avoid unreasonable burdens and promote public access to information.
>
> Accordingly, the court grants appellant an exemption from PACER fees for such electronic access to this court's docket and filings in case No. 25-1162,
>
> *Ryan Dillon-Capps v. Ohana Growth Partners, LLC*, through October 20, 2025. This exemption applies only to this court's electronic docket and is not a waiver of PACER fees for electronic access to the dockets of other federal courts.

The Fourth Circuit Court GRANTED relief in the alternative on April 23, 2025, stating that "the court finds that an exemption is appropriate to avoid unreasonable burdens and promote public access to information" and GRANTED "exemption from PACER fees for such electronic access to this court's docket and filings in case No. 25-1162, *Ryan Dillon-Capps v. Ohana Growth Partners, LLC*, through October 20, 2025. However, the Fourth Circuit limited the exemption to "only to this court's electronic docket and is

Emergency Unopposed Motion to Remove Restrictions on Court Records, Retroactive PACER Exemption, & Court Appointed Counsel

62

not a waiver of PACER fees for electronic access to the dockets of other federal courts", and made no mention of retroactive relief to address the accrued fees—the fees now past-due and presenting an emergency situation to ensure my constitutional access to the court is not arbitrarily or capriciously impaired or restricted. See Circuit ECF 23-0 (April 23, 2025—order GRANTING exemption from PACER fees).

My affidavit concerning the disabling of my PACER account was docketed with the Fourth Circuit Court on June 11, 2025, as Circuit ECF 40-1, and is incorporated by reference into this motion.

On June 10, 2025, my PACER account was disabled due to non-payment, and the exemption previously granted by the Fourth Circuit Court on April 23, 2025, did not include language sufficient to protect my continued access to the courts. *See* Circuit ECF 23 (Apr. 23—order granting PACER exemption).

After speaking with PACER, I was granted an extension until the morning of June 16, 2025. PACER representatives informed me that the court's order did not fully address my request, as it did not apply to the District of Maryland's PACER system and failed to relieve the "fees incurred," which are now outstanding. I was advised that a court order specifically addressing both deficiencies is necessary to ensure that I retain

Emergency Unopposed Motion to Remove Restrictions on Court Records, Retroactive PACER Exemption, & Court Appointed Counsel

63

meaningful access to the courts. *See* Circuit ECF 40-1 (June 11—affidavit re PACER account disabled due to non-payment).

Access to the courts and access to PACER are one in the same. The Fourth Circuit Court has already granted me exemption—ensuring the order satisfies the intended purpose is a procedural remedy to ensure my constitutionally protected rights are not impaired because my PACER account is disabled again on June 16, 2025.

## Court Appointed Counsel

### I Statement of Facts

My motion for court-appointed representation was docketed with the Fourth Circuit Court as Circuit ECF 7-1 on March 13, 2025, and is incorporated by reference into this motion.

I was granted to proceed in forma pauperis by the District Court under 28 U.S.C. § 1915(d), and it remains active on appeal. See District ECF 37 (appeal transmit sheet—"court granted & did not revoke IFP status").

District Court and Fourth Circuit Court have failed to specify reasons why they are refusing to appoint me counsel under 28 U.S.C. § 1915(e)(1). See District ECF 18-0, at 2 (Jan. 18—denied without reason); Circuit ECF 9 (Mar. 14—deferred pending merits).

My motion with the Fourth Circuit applied the Whisenant test, argued that I no declarations have been to suggest my claims are frivolous, applied

Emergency Unopposed Motion to Remove Restrictions on Court Records, Retroactive PACER Exemption, & Court Appointed Counsel

64

4th Circuit Court abuse of discretion requiring reversing, argued the case was complex, with lots of claims, defendants, and that I was facing overwhelming legal, medical, and financial challenges. See Circuit ECF 7, at 1-6. Reviewed my undisputed wrongful termination claim a legally established colorable claim and summarized everything. See Circuit ECF 7, at 6–14.

In my motion I asserted "These steps are necessary to ensure that the disabled, pro se Plaintiff-Appellant is not required to proceed against judges and attorneys accused of perjury, fraud upon the court, tampering with official records, witness tampering, forgery of an affidavit, and related misconduct—without the benefit of legal representation". See Circuit ECF 7-1, at 5.

First Amened Informal Brief was docketed with the Fourth Circuit Court on April 21, 2025, and remains without scheduling or assignment. See Circuit ECF 20-1(April 21, 2025—first amended informal brief).

## II  Whisenant Test—4th Circuit Precedent

"Failure to make these assessments is legal error". *Jenkins v. Woodard*, 109 F.4th 242, 248 (4th Cir. 2024) (quoting *Brock v. City of Richmond*, 983 F.2d 1055 (4th Cir. 1993)). And is "reviewed under the abuse of discretion standard." *Brock v. City of Richmond*, 983 F.2d 1055 (4th Cir. 1993) (citing *Miller v. Simmons*, 814 F.2d 962, 966 (4th Cir. 1987), *cert. denied,* 484 U.S. 903 (1987).

Emergency Unopposed Motion to Remove Restrictions on Court Records, Retroactive PACER Exemption, & Court Appointed Counsel

65

Exceptional circumstances exist if (1) plaintiff has a "colorable claim" and (2) considering the claim's objective complexity and his subjective abilities, plaintiff "lacks the capacity to present it." *MICHAEL McNAIR, Plaintiff, v. BACE, Corr. Officer, Defendant.*, No. CV DKC-23-365, 2025 WL 1592460, at *6 (D. Md. June 5, 2025) (paraphrasing *Jenkins v. Woodard,* 109 F.4th 242, 247 (4th Cir. 2024) (citation and quotations omitted).

"A court need not appoint counsel in a § 1983 action unless the case presents complex issues or exceptional circumstances." *Fowler v. Lee*, 18 F. App'x 164, 166 (4th Cir. 2001). *Quare*, where a § 1983 action does present complex issues, appointment of counsel is mandatory. FRCP 16(c)(2)(L) further contemplates "adopting special procedures for managing potentially difficult or protracted actions that may involve complex issues, multiple parties, difficult legal questions, or unusual proof problems."

Lack of counsel has had created substantial barriers, including, but not limited to: denying me a meaningful opportunity to be heard, restore the status quo, conduct discovery, subpoena witness', summon parties, engage in adverse litigation, amend my complaint to accurately reflect all of my claims, and obtain medical treatment—abuse of discretion under 4th Circuit Precedent. See *Jenkins v. Woodard*, 109 F.4th 242, 251 (4th Cir. 2024)

Emergency Unopposed Motion to Remove Restrictions on Court Records, Retroactive PACER Exemption, & Court Appointed Counsel

66

## I  Undocketed Directive to Alter District Court Record

On May 27, 2025, Chief Judge Albert Diaz issued a memorandum and order in response to my judicial misconduct complaint against District Judge Brendan A. Hurson. Marked as Exhibit 205A, the Chief Judge's order was docketed with the Fourth Circuit Court on June 2, 2025, as Circuit ECF 34-2 and is incorporated by reference into this motion.

On page 3 of that order, Chief Judge Diaz stated:

> "Complainant's challenges to the subject judge's rulings, including his directions to court staff as to how the contents of a CD-ROM should be docketed, are dismissed pursuant to 28 U.S.C. § 352(b)(1)(A)(ii) as merits-related."

This statement constitutes a material admission that the docketing of CD-ROM contents—previously understood only through indirect communications with court personnel—originated from Judge Hurson's own directives. The Chief Judge of the Fourth Circuit Court has now formally acknowledged and validated the allegation that Judge Hurson issued instructions to alter or affect the docketing of evidentiary material, thereby rendering Judge Hurson's directive to Baylee Wilson a judicially established fact. However, the District Court record lacks any order reflecting the directive—depriving me of my right of notice and violating procedural due process protections.

Emergency Unopposed Motion to Remove Restrictions on Court Records, Retroactive PACER Exemption, & Court Appointed Counsel

67

> See
> - *Nat'l Sav. Bank of Albany v. Jefferson Bank*, 127 F.R.D. 218, 222 (S.D. Fla. 1989) ("entered-on-docket" date is the legally operative date from which a party must take some action from the entry of an order);
> - *Brown v. United States*, 225 F.2d 861, 863 (8th Cir. 1955) ("with nothing more stated, could reasonably be expected to regard this as a judgment entry or even to suspect it of possibly having been so intended");
> - *Atlantic Richfield Co. v. Monarch Leasing Co.*, 84 F.3d 204, 207 (6th Cir. 1996) ("[U]nder federal procedural law, a federal court judgment is 'rendered' only when it is set forth in writing on a separate, discrete document and entered on the civil docket");
> - *Wells v. Shriners Hosp.*, 109 F.3d 198, 200 (4th Cir. 1997) ("[W]ithin ten days of receiving a copy of the order," a party must act to preserve a claim of error, and "[s]everal courts have held that a party must comply with this statutory provision in order to preserve a claim of error");
> - *Jenkins v. United States,* 325 F.2d 942, 945 (3d Cir. 1963) ("the record reveals no order entered on the motion as from a final judgment, we are without jurisdiction").

My amended affidavit in support of Court Record Tampering and Obstruction was docketed with the Fourth Circuit Court on April 30, 2025, as Circuit ECF 31-1 and is incorporated by reference into this motion.

My affidavit details the absence of wet signatures, staple marks, court-issued stamps, clerk's stamps, judge-assigned case designation stamps, and other physical or procedural elements that were present on the original documents—one or more of which are missing from the following:

> - District ECF 1-2 (29 proposed summons);
> - District ECF 1-4 (complaint integrated appendix: pretext);
> - District ECF 1-5 (complaint integrated appendix: parties);
> - District ECF 1-6 (complaint integrated appendix: coverup);
> - District ECF 1-7 (complaint integrated appendix: counts);
> - District ECF 1-8 (prefatory appendix A: table of defendants);
> - District ECF 1-9 (prefatory appendix B: cause of action table);
> - District ECF 1-10 (memorandum of law in opposition to immunity);
> - District ECF 1-11 (resume for Timothy Allen);

Emergency Unopposed Motion to Remove Restrictions on Court Records, Retroactive PACER Exemption, & Court Appointed Counsel

68

> • District ECF 1-12 (table of exhibits);
> • District ECF 3-1 (meet and confer letter to attorney general Anthony Brown);
> • District ECF 3-2 (proposed order for state-level negotiations and systemic oversight relief);
> • District ECF 4-1 (memorandum of law in support of interlocutory partial summary judgment);
> • District ECF 5-1 (proposed order for conditional permissive joinder);
> • District ECF 7-1 (affidavit of Caroline Dillon-Capps);
> • District ECF 7-2 (affidavit of Ryan Dillon-Capps financial harm).
> See Circuit ECF 31-1, at 5–10, 14–18.

The District Court docket history clearly shows that I filed these documents with my original submission on December 27, 2024. However, the docket text reflects unauthorized alterations made on December 30 and December 31, 2024—without any corresponding court order—noting "additional attachment(s) added" and "corrected main documents." See Circuit ECF 31-1, at 10–14.

Two documents that were never filed but instead discarded in the trash bin inside the Clerk's Office, were subsequently added to the official District Court record. See Circuit ECF 31-1, at 1–4.

On January 3, 2025, portions of the exhibits initially submitted on December 27, 2024, and later entered into the record as District ECF 16-0 through 16-15, were re-docketed as supplemental filings. These entries were given a formal filing and entry date of January 3, 2025, but court staff member Baylee Wilson preserved the original "received" date of December 27, 2024, within the docket text. See Circuit ECF 31-1, at 24–25.

Emergency Unopposed Motion to Remove Restrictions on Court Records, Retroactive PACER Exemption, & Court Appointed Counsel

69

Unfortunately, pages are missing from:

> • District ECF 16-0 (missing 1 page—160/161);
> • District ECF 16-8 (missing 42 pages—226/268);
> • District ECF 16-12 (missing 5 pages—115/120);
> • District ECF 16-14 (missing 2 pages—89/91).
> Circuit ECF 31-1, at 25–27; See also Circuit ECF 31-1, at 28–34 (expanded details of missing pages).

Additionally, pages were shuffled out of order, obscuring critical notice text on page 1 of District ECF 16-13. See Circuit ECF 31-1, at 27; see also Circuit ECF 31-1, at 30 (providing expanded details on the page order discrepancies).

The District Court docket reflects the in forma pauperis filing dated December 27, 2024, as District ECF Series 2, but part of the original submission is missing—established by file count. See Circuit ECF 31-1, at 28.

The original physical exhibit—a signed CD—and the thousands of hybrid exhibit pages it contained required traditional docketing and preservation in physical form to protect against alteration of metadata and embedded content through standard electronic docketing procedures. See Circuit ECF 31-1, at 34–36.

## II  Undocketed Directive to Restrict Circuit Court Record

My amended affidavit on the Fourth Circuit Court Record was docketed with the Fourth Circuit on June 13, 2025, as Circuit ECF 42-1 and is incorporated by reference into this motion.

Emergency Unopposed Motion to Remove Restrictions on Court Records, Retroactive PACER Exemption, & Court Appointed Counsel

70

On June 6, 2025, at approximately 2 a.m., I discovered that my most recent five filings to the Fourth Circuit Court, Docket No. 25-1162, had docket entries, but no hyperlinks were available to the files. See Circuit ECF 42-1, at 2. The Screenshot taken on Friday June 6, 2025, at 2:19 a.m. shows the following missing a hyperlink:

> • Circuit ECF 34-1: Affidavit of Judicial Complaint and Chief Judge Diaz's May 27, 2025, Order Confirming Docketing Directives and Incomplete Court Record;
> • Circuit ECF 34-2: Exhibit 205A—Judicial Complaint: May 27, 2025, Memorandum and Order from the Fourth Circuit Court of Appeals' Chief Judge;
> • Circuit ECF 34-3: Exhibit 205B—Judicial Complaint: April 30, 2025, Submission Email;
> • Circuit ECF 35: Motion to disqualify Chief Judge Diaz on the basis that he is a material witness who will be deposed and likely called to testify;
> • Circuit ECF 36: Motion requesting the Fourth Circuit Court to direct the District Court to correct the court record.

My motion seeking a ruling to disqualify District Court Judge Brendan A. Hurson and reassign the case outside the Fourth Circuit was docketed on June 7, 2025, at 1:54 a.m. as Circuit ECF 37. The Screenshot taken on Saturday June 7, at 1:59 a.m. shows the motion successfully docketed with the hyperlink available and working. See Circuit ECF 42-1, at 3.

On the morning of Monday June 9, 2025, I discovered that the previously docketed motion (Circuit ECF 37), was now missing a working hyperlink to the file. The Screenshot taken on Monday June 9, 2025, at 11:44 a.m. shows the motion without a hyperlink. See Circuit ECF 42-1, at 3.

Emergency Unopposed Motion to Remove Restrictions on Court Records, Retroactive PACER Exemption, & Court Appointed Counsel

71

My motion seeking to vacate under the void, not voidable, rulings from the District Court under FRCP 60(b)(4) was docketed to the Fourth Circuit on June 9, 2025, at 5:45 p.m. as Circuit ECF 38. The Screenshot taken on Monday June 9, 2025, at 5:47 p.m. shows the hyperlink available and working. See Circuit ECF 42-1, at 3.

My formal notice to Ohana Growth Partners, LLC, Miles & Stockbridge P.C., the State of Maryland, and the U.S. Government was docketed in the Fourth Circuit Court on June 10, 2025, at 3:49 a.m., as Circuit ECF 39. The screenshot taken on June 10, 2025, at 3:50 a.m. shows the hyperlink available and functioning. See Circuit ECF 42-1, at 4.

On the afternoon of Tuesday, June 10, 2025, I discovered that the previously docketed motion (Circuit ECF 38) no longer had a working hyperlink to the file. The screenshot taken on June 10, 2025, at 2:11 p.m. shows the motion without a hyperlink. See Circuit ECF 42-1, at 4.

On June 10, 2025, I made three calls to the Fourth Circuit Clerk's Office. During the first call, I was informed that my case manager, Karen Stump, was out of the office until June 11. During the second and third calls, I spoke with Kierstan and Ameisha, who confirmed that the Circuit Court records missing hyperlinks had been restricted without any docketed order. See Circuit ECF 42-1, at 4–5.

Emergency Unopposed Motion to Remove Restrictions on Court Records, Retroactive PACER Exemption, & Court Appointed Counsel

72

On June 7, 2025, I reviewed other Circuit Court records for additional instances of restricted documents or missing hyperlinks. I took screenshots of examples with such issues from Case Nos. 25-1614, 25-1616, 25-1632, 25-1635, and 25-1642. However, all of those cases involved immigration or IRS matters or included orders justifying the restrictions, with docket notations that explained the reason for the limited access. I was unable to locate any other cases where litigants experienced similar restrictions without explanatory entries. See Circuit ECF 42-1, at 6–8.

As shown in the screenshot from Tuesday, June 12, 2025, at 6:38 p.m., when I attempted to file an amended affidavit for the Fourth Circuit court records, I discovered that the CM/ECF system displayed a lock icon—indicating restriction—associated with docket entries connected to Circuit ECF 41-1, 39, 37, 36, 35, and 34-1. See Circuit ECF 42-1, at 9–10.

As shown in the screenshot from Tuesday, June 12, 2025, at 6:41 p.m., when I ran an expanded PACER docket view showing all documents associated with each docket entry, Circuit ECF 41-1, 38, 37, 36, 35, and 34 were not reflected in the docket's page count or file sizes—consistent with a "court only" restriction. See Circuit ECF 42-1, at 10.

The screenshots from Tuesday, June 12, 2025, at 6:32 p.m. and 6:33 p.m. show the call log for Tuesday, June 11, 2025, documenting calls to the Clerk's Office for the Fourth Circuit Court of Appeals. As explained in greater

Emergency Unopposed Motion to Remove Restrictions on Court Records, Retroactive PACER Exemption, & Court Appointed Counsel

73

detail in my amended affidavit, my conversation with Karen Stump confirms that the court record is being restricted without an order and further reveals that Mrs. Stump had been directed not to provide any information regarding who imposed the restriction or why it was imposed. See Circuit ECF 42-1, at 9–13.

### III  Court Record Legal Framework

The statutory rules do not authorize the Fourth Circuit Court to issue a sua sponte sealing of documents that do not fall within the narrow band that congress has specified, and all circumstances require an order to be docketed.

### A  Statutory Authority to Restrict

FRAP 25(a)(5) governs privacy protections in appellate filings and incorporates the standards set forth in FRCP 5.2. Specifically, where privacy protection is governed by FRCP 5.2, the same rules apply in appellate proceedings, except that when an extraordinary writ is sought in a criminal case, Federal Rule of Criminal Procedure 49.1 governs instead. See FRAP 25(a)(5); see also FRCP 5.2(c)(1) (governing remote electronic access to court filings).

However, under the Crime Victims' Rights Act (CVRA), 18 U.S.C. § 3771, I am entitled to notice of any such criminal proceeding implicating my rights as a victim of the underlying factual conduct. 18 U.S.C. § 3771(a)(10) specifically guarantees "[t]he right to be informed in a timely manner of any

Emergency Unopposed Motion to Remove Restrictions on Court Records, Retroactive PACER Exemption, & Court Appointed Counsel

74

plea bargain or deferred prosecution agreement." No such notice has been provided. Accordingly, if an extraordinary writ or related criminal matter exists, the absence of notice is itself a violation of my statutory rights under the CVRA and independently supports the determination that my constitutional right of notice has been violated.

## B  Statutory Authority to Redact

Under FRCP 5.2(a), redaction of protected information is required unless a court order authorizes filing the unredacted material. No such order exists here. Moreover, the redaction requirements of FRCP 5.2(a) do not apply to the contents of my filings.

In addition, to the content not being applicable under FRCP 5.2(a), the exemptions under FRCP 5.2(b) exempts from redaction: (2) the record of an administrative or agency proceeding; (3) the official record of a state-court proceeding; (4) the record of a court or tribunal, if that record was not subject to redaction when originally filed; and (5) any document filed under FRCP 5.2(d), which allows the court to authorize unredacted filings under seal.

Additionally, FRCP 5.2(e) requires that any protective order issued for good cause be supported by a docketed court order. The provisions of FRCP 5.2(e)(1)–(2) do not apply here because I am the only party to the proceedings. As such, no third party could have made a valid request for restriction without the request itself appearing on the docket. If such a request or order

exists but was not docketed or served, then my right to notice has been violated.

C  No Authority Exist for Undocketed Court Orders

Both the District Court and Circuit Court records lack a record that reflects the "directives"—without an order showing the "entered-on-docket" date then there is no legally operative date for me to take action on. *Nat'l Sav. Bank of Albany v. Jefferson Bank*, 127 F.R.D. 218, 222 (S.D. Fla. 1989).

Without an order to provide me with notice, I had hearsay until the Chief Judge provided me with an order establishing Hurson's "directive" as an adjudicated fact. The Fourth Circuit court being restricted has been confirmed by three separate clerks giving direct statements and is not hearsay—it is established fact. Furthermore, it is established to be restricted without a court order docketed—as opposed to the order being restricted. Either scenario has the same structural error of failing to provide me with notice.

A denial of notice inherently comes with a denial of opportunity to act and be heard—nor can it reasonably be expected that I act before an order is docketed. See *Brown v. United States*, 225 F.2d 861, 863 (8th Cir. 1955) ("with nothing more stated, could reasonably be expected to regard this as a judgment entry or even to suspect it of possibly having been so intended"); *Atlantic Richfield Co. v. Monarch Leasing Co.*, 84 F.3d 204, 207 (6th Cir.

Emergency Unopposed Motion to Remove Restrictions on Court Records, Retroactive PACER Exemption, & Court Appointed Counsel

76

1996) ("[U]nder federal procedural law, a federal court judgment is 'rendered' only when it is set forth in writing on a separate, discrete document and entered on the civil docket").

The absence of opportunity to act and be heard, prevents me from raising the issue properly—*Quare* my right of meaningful access to the courts is also being denied because I do not have the prerequisites for a traditional appeal to the Supreme Court. See *Wells v. Shriners Hosp.*, 109 F.3d 198, 200 (4th Cir. 1997) ("[W]ithin ten days of receiving a copy of the order," a party must act to preserve a claim of error, and "[s]everal courts have held that a party must comply with this statutory provision in order to preserve a claim of error"); *Jenkins v. United States*, 325 F.2d 942, 945 (3d Cir. 1963) ("the record reveals no order entered on the motion as from a final judgment, we are without jurisdiction").

D  Interested Judge

As the only party to the proceedings—there is no other party to raise an issue, and without a party raising an issue the only other explanation is sua sponte litigation. It is impossible for a truly impartial tribunal to also be a litigant. The Supreme Court established the participation of an interested judge is a structural error that is "not amenable" to harm-less error—it violates my right to an impartial tribunal and due process. *Puckett v. United States*, 556 U.S. 129, 141 (2009) (emphasis deleted); see also *Arizona v.*

Emergency Unopposed Motion to Remove Restrictions on Court Records, Retroactive PACER Exemption, & Court Appointed Counsel

77

*Fulminante*, 499 U.S. 279, 280–81 (1991) ("[S]tructural defects in the constitution of the trial mechanism and thus defy analysis by harmless-error standards")

When the Maryland judiciary revealed its corruption, I was disappointed. When an Article III District Court judge engaged in the same, I found it offensive. I have extended every benefit of the doubt, clinging to the hope that the restriction of court records—though gravely misguided—was not driven by malice or criminal intent. But continued delay in correcting these actions is intolerable.

I have allowed my life to remain at risk, my financial stability and creditworthiness destroyed, and fifteen years of professional work rendered worthless—all to protect the American judicial system itself. I have shown restraint and moderation, even as I have demonstrated my capacity and resolve.

The hubris of nearly a dozen compromised judges has, paradoxically, served a necessary purpose: it allowed their misconduct to be revealed and neutralized. My goal is not vengeance—it is institutional correction. I will expose as many corrupt judges as necessary to deter others. If that means exposing a dozen more, I will do so to preserve the integrity of the more than 30,000 judges who remain in defense of the constitutional rights for millions

Emergency Unopposed Motion to Remove Restrictions on Court Records, Retroactive PACER Exemption, & Court Appointed Counsel

78

of Americans and other litigants who rely each year on access to a fair and impartial judiciary.

It is first and foremost upon the judge to recuse themselves, not the parties—and it is upon each judge that I have not filed a motion for mandatory disqualification to decide if it is necessary for them. Similarly, if any remaining judges exist then there should be no reason for the Fourth Circuit Court to delay in ruling to disqualify and reassign on the existing motions. *Berger v. United States*, 255 U.S. 22, 35 (1921). ("[I]t is his duty to 'proceed no further' in the case… for of what concern is it to a judge to preside in a particular case; of what concern to other parties to have him so preside"); *Ligon v. City of New York*, 736 F.3d 166, 171 (2d Cir. 2013) ("A district judge has no legal interest in a case or its outcome, and, consequently, suffers no legal injury by reassignment"). If no judges remain, then I respectfully request immediate notice—as the only actual party to the appeal, I am the only one who knows what happens next.

E  Public Access

Both I and the public possess a "common-law presumptive right of access" that extends to "all judicial documents and records," which may only be overcome when the government demonstrates that "countervailing interests heavily outweigh the public interests in access." *Doe v. Public Citizen*, 749 F.3d 246, 265–66 (4th Cir. 2014) (quoting *Rushford v. New*

Emergency Unopposed Motion to Remove Restrictions on Court Records, Retroactive PACER Exemption, & Court Appointed Counsel

79

*Yorker Magazine, Inc.*, 846 F.2d 249, 252–53 (4th Cir. 1988)). This standard requires that any order restricting access must be docketed and that the public be provided notice of the asserted countervailing interest—thus necessitating that the order itself be public. This is precisely why judicial records, particularly court orders, are subject to a well-established public right of access, which includes the May 27, 2025 Memorandum and Order issued by the Chief Judge. See *In re U.S. for an Ord. Pursuant to 18 U.S.C. Section 2703(D)*, 707 F.3d 283, 291 (4th Cir. 2013); See also *Baltimore Sun Co. v. Goetz*, 886 F.2d 60, 63–64 (4th Cir. 1989) (For a right of access to a document to exist under either the First Amendment or the common law, the document must be a "judicial record").

In addition, 4th Cir. R. 25(a) mandates that "all orders, decrees, opinions, judgments, and proceedings of the Court relating to cases filed and maintained in the CM/ECF system will be filed electronically in accordance with these rules, which will constitute entry on the docket kept by the clerk under FRAP 36 and FRAP 45(b)."

Consistent with these principles, I filed a motion for clarification on March 18, 2025, regarding the order denying my emergency motion for an injunction pending appeal. In that filing, I specifically stated:

> "It is the lack of specificity in this Court's Order— referencing only the likelihood of success on the merits as one of the four

Emergency Unopposed Motion to Remove Restrictions on Court Records, Retroactive PACER Exemption, & Court Appointed Counsel

80

> factors—that renders the basis for denial unclear. If the facts are undisputed, the evidence is unrefuted, and Fourth Circuit precedent supports" my claims, then I "meet and exceed the required likelihood of success under *Nken v. Holder*, 556 U.S. 418 (2009). Clarification is necessary to determine whether the Court found otherwise, and if so, on what basis." See Circuit ECF 11-1, at 6.

In denying my request on March 19, 2025, the Fourth Circuit stated that "the court speaks through its written orders and opinions and no additional clarification or guidance will be provided." See Circuit ECF 12-0. I relied on that representation—as I have consistently relied on this Court's precedents, procedures, and its adherence to the Constitution and applicable laws—in forming my understanding of the record and the scope of judicial action.

## Conclusion

4th Cir. R. 27(d) allows a party to file a response to a motion, but I am the only party in this appeal. Additionally, it is a "a general rule [that] only named parties to the case… and those permitted to intervene may appeal an adverse order or judgment." *Doe v. Public Citizen*, 749 F.3d 246, 257 (4th Cir. 2014) (citing *Marino v. Ortiz*, 484 U.S. 301, 304 (1988) (per curiam)). As the only party, I can be the only "party affected by an order or decree"—and the only party "[who] may appeal from it." *Newberry v. Davison Chem. Co.*, 65 F.2d 724, 729 (4th Cir. 1933).

Emergency Unopposed Motion to Remove Restrictions on Court Records, Retroactive PACER Exemption, & Court Appointed Counsel

81

The docket does not reflect a Certificate of Confidentiality pursuant to 4th Cir. R. 25(c)(1), nor a motion to seal under 4th Cir. R. 25(c)(2)(C). My inability to access PACER directly threatens my capacity to receive and respond to court notices within the five-day window afforded by statute. Without appointed counsel, this constitutes a total deprivation of my rights under the First Amendment—including freedom of speech, press, and petition—and likewise violates my rights to both procedural and substantive due process, as well as equal protection under a claim-of-one theory.

Whether the restriction is characterized as arbitrary, retaliatory, or otherwise unjustifiable, it denies me notice, opportunity to be heard, and every constitutionally protected right except the right to sit alone with my thoughts. Yet even that is hollow when I am stripped of the legal means to express, act upon, or vindicate those thoughts—they are rendered meaningless as a matter of liberty interest. From what I can tell, other litigants are not experiencing court records being sealed, limited to court only access, or otherwise restricted—except when it aligns with the FRCP, FRAP, and local rules. See Circuit ECF 41-1, at 6–8.

I am the victim in the state and federal proceedings. For the government to restrict my ability to exercise fundamental rights, in furtherance of protecting those who placed my life at risk and destroyed my financial stability and creditworthiness, is not merely unjust—it is

Emergency Unopposed Motion to Remove Restrictions on Court Records, Retroactive PACER Exemption, & Court Appointed Counsel

82

unconstitutional. If confidentiality is legitimately warranted, 4th Cir. R. 25(c)(3)(B)(i)–(ii) requires the filing party to submit a redacted version for the public record. The government is under a duty to provide me notice, an opportunity to be heard, and equal access under the law. Yet the docket reflects no entry marked "sealed," "ex parte," or "court access only," in compliance with 4th Cir. R. 25(c)(3)(D)–(F).

I am already before this Court on appeal because Judge Hurson compelled my speech, inserted claims sua sponte, overturned a state judgment, and deprived me of my property interest. That interest included my status as a prevailing party, which entitled me to compensation from Ohana Growth Partners, LLC—now unlawfully extinguished.

In order for me to be the 'master of my own case' and be afforded equal opportunities then it is imperative that the fundamentals are afforded to me, as well as any other accommodations necessary to ensure it is meaningful. I am not asking for the Fourth Circuit Court to "review each filing for compliance", nor is it expected under 4th Cir. R. 25(c)(3)(G). But I am asking that the court record reflect orders that I can respond to, and "unless filed under seal" that the "case documents are publicly available on the Internet"—as I have come to expect pursuant to 4th Cir. R. 25(c)(3)(H).

These are "fundamental and essential to a fair trial". *Gideon v. Wainwright*, 372 U.S. 335, 342 (1963). The "violation of due process that

Emergency Unopposed Motion to Remove Restrictions on Court Records, Retroactive PACER Exemption, & Court Appointed Counsel

83

deprives a party of notice or the opportunity to be heard"—is void under

FRCP 60(b)(4). In *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260,

270–71 (2010).

## Prayer for Relief

**WHEREFORE**, Plaintiff-Appellant respectfully requests that this Court:

1. **GRANT** this motion pursuant to Federal Rule of Civil Procedure 60(b)(4);

2. **ORDER** the preservation of Plaintiff-Appellant in forma pauperis status as previously granted;

3. **ORDER** the preservation of the current case—including its status, the complete court record, and any existing District Court stay—pending both (i) this Court's ruling on Plaintiff-Appellant's separately filed motion for disqualification and reassignment, and (ii) Plaintiff-Appellant's formal response to that ruling;

4. **VACATE** all rulings and orders entered by Brendan A. Hurson in the District Court and declare that those rulings are, and have always been, void—not merely voidable—and without legal effect;

5. **ORDER** the issuance of any notices to Plaintiff-Appellant that are required or permitted under any applicable law of which the judiciary is aware;

6. **GRANT** any further relief necessary to effectuate vacatur of the void judgment, consistent with Rule 60(b)(4) and this Court's inherent authority; and

7. **GRANT** such other and further relief as this Court deems just and proper to preserve both the appearance and reality of impartial justice.

Emergency Unopposed Motion to Remove Restrictions on Court Records, Retroactive PACER Exemption, &
Court Appointed Counsel

84

## Respectfully Submitted

June 16, 2025

/s/ Ryan Dillon-Capps
**Ryan Dillon-Capps**

1334 Maple Avenue
Essex, Maryland 21221
ryan@mxt3.com
703-303-1113

Emergency Unopposed Motion to Remove Restrictions on Court Records, Retroactive PACER Exemption, & Court Appointed Counsel

85